Hearing Date: **August 6, 2025, 2025 at 10:00 a.m. (ET)**
Objection Deadline: **July 30, 2025, 2025 at 4:00 p.m. (ET)**

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
David Kim
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 23-10193 (JPM) |
| Oi S.A. *et al.*,[1] | ) | |
| | ) | Chapter 15 |
| Debtors in a Foreign Proceeding. | ) | (Jointly Administered) |
| | ) | |

### MOTION TO TERMINATE THE RECOGNITION ORDER
### AND DISMISS THE CHAPTER 15 CASES

---

[1] The debtors in the above-captioned cases (the "**Chapter 15 Cases**"), along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................2

JURISDICTION AND VENUE ..............................................................................................5

BACKGROUND .......................................................................................................................6

    I.      Overview of the Chapter 15 Debtors' Restructuring History in Brazil ..................6

    II.     The Current Chapter 15 Cases ...................................................................................7

    III.    Events After Entry of This Court's FFE Order......................................................8

        A.      Equitization of Creditors and Distribution of New Debt ............................ 9

        B.      Appointment of New Independent Board of Directors............................. 10

        C.      Sale of UPI ClientCo ................................................................................. 11

        D.      Outlook ...................................................................................................... 12

        E.      Further Restructuring Considerations ....................................................... 16

RELIEF REQUESTED............................................................................................................17

BASIS FOR RELIEF...............................................................................................................17

    I.      The Grounds for Granting the Recognition Order Have Ceased to Exist and
         Additional Circumstances Exist to Justify the Requested Relief..........................20

    II.     The Court Should Provide the Foreign Representative with "Additional
         Assistance" Under Sections 1507 and 105(a) of the Bankruptcy Code by
         Terminating the Recognition Order .......................................................................22

    III.    This Court Should Dismiss the Chapter 15 Cases Under Sections 305 and
         1521 of the Bankruptcy Code ...............................................................................23

        A.      The Goals of Chapter 15 Are Best Served by Dismissal .......................... 24

        B.      The Interests of Interested Parties Are Protected and Best Served by
         Dismissing These Chapter 15 Cases ........................................................ 25

RESERVATION OF RIGHTS .................................................................................................27

NOTICE ...................................................................................................................................27

NO PRIOR REQUEST ............................................................................................................27

CONCLUSION.........................................................................................................................27

## TABLE OF AUTHORITIES

**CASES**

*In re Artimm, S.r.L.,*
  335 B.R. 149 (Bankr. C.D. Cal. 2005) ................................................................... 26

*In re Atlas Shipping A/S,*
  404 B.R. 726 (Bankr. S.D.N.Y. 2009) ............................................................. 23, 26

*Awal Bank, BSC v. HSBC Bank USA (In re Awal Bank, BSC),*
  455 B.R. 73 (Bankr. S.D.N.Y. 2011) ..................................................................... 19

*In re Comair Ltd.,*
  No. 21-10298 (JLG), 2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ........... 26

*In re ENNIA Caribe Holding N.V.,*
  596 B.R. 316 (Bankr. S.D.N.Y. 2019) ................................................................... 26

*In re Markus,*
  610 B.R. 64 (Bankr. S.D.N.Y. 2019) ..................................................................... 26

*In re Oi Brasil Holdings Coöperatief U.A.,*
  578 B.R. 169 (Bankr. S.D.N.Y. 2017) ............................................................. 22, 23

In re Oi S.A.,
  No. 16-11791 (SHL) (Bankr. S.D.N.Y. July 9, 2018) ............................................. 6

*In re Oi S.A.,*
  587 B.R. 253 (Bankr. S.D.N.Y. 2018) ................................................................... 22

*In re Olinda Star Ltd.,*
  614 B.R. 28 (Bankr. S.D.N.Y. 2020) ..................................................................... 26

*In re SPhinX, LTD.,*
  351 B.R. 103 (Bankr. S.D.N.Y. 2006) ................................................................... 19

**STATUTES AND RULES**

11 U.S.C. § 101 .......................................................................................................... 1

11 U.S.C. § 103 ............................................................................................... 3, 19, 24

11 U.S.C. § 105 ......................................................................................... 1, 3, 17, 22

11 U.S.C. § 305 ......................................................................................... 3, 17, 23, 24

11 U.S.C. § 349 ........................................................................................................ 5

11 U.S.C. § 1145 ...................................................................................................... 1

11 U.S.C. § 1501 ................................................................................................. 5, 24

11 U.S.C. § 1505 ................................................................................................. 3, 19

11 U.S.C. § 1507 ............................................................................................. *passim*

11 U.S.C. § 1509 ...................................................................................................... 1

11 U.S.C. § 1515 ...................................................................................................... 1

11 U.S.C. § 1517 ....................................................................................... 1, 3, 17, 20

11 U.S.C. § 1520 ...................................................................................................... 1

11 U.S.C. § 1521 ....................................................................................... 1, 3, 17, 23

11 U.S.C. § 1522 ............................................................................................... 23, 25

11 U.S.C. § 1528 ................................................................................... 3, 4, 18, 19, 24

28 U.S.C. § 157 ..................................................................................................... 2, 5

28 U.S.C. § 1334 ................................................................................................... 2, 5

28 U.S.C. § 1410 ...................................................................................................... 2

28 U.S.C. § 1746 ...................................................................................................... 1

## FEDERAL RULES

Fed. R. Bankr. P. 9024 ........................................................................................... 20

Fed. R. Civ. P. 60 ................................................................................................... 20

## OTHER AUTHORITIES

*In re Standing Order of Reference Re: Title 11*,
    12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) ........................................................... 2, 5

Rodrigo Caldas de Toledo Aguiar (the "**Petitioner**" or "**Foreign Representative**"),[2] the duly-authorized foreign representative with respect to the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**")[3] of Oi S.A. – Em Recuperação Judicial ("**Oi**"), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial ("**Coop**"), and Portugal Telecom International Finance B.V. – Em Recuperação Judicial ("**PTIF**") (collectively, the "**Chapter 15 Debtors**" or "**RJ Debtors**" and, together with their non-debtor affiliates, the "**Oi Group**" or the "**Company**"), commenced on March 1, 2023, under Federal Law No. 11.101 of February 9, 2005, as amended (the "**Brazilian Bankruptcy Law**") of the laws of the Federative Republic of Brazil before the 7th Business Court of the City and State of Rio de Janeiro, Brazil (the "**Brazilian RJ Court**"), respectfully submits this motion (the "**Motion**") seeking an order substantially in the form attached as **Exhibit A** (the "**Proposed Order**") under sections 105(a), 305(a), 1507(a), 1517(d) and 1521(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") that: (i) terminates the Recognition Order (as defined below); (ii) dismisses the Chapter 15 Cases; and (iii) grants related relief as may be just and proper.

---

[2]    Unless otherwise indicated herein, capitalized terms shall have the meaning ascribed to them in: (i) the *Petitioner's Declaration and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1509, 1515, 1517, 1520, and 1521* [ECF No. 3] (the "**Verified Petition**"); (ii) the *Declaration of Sérgio Savi Pursuant to 28 U.S.C. § 1746 in Support of the Petitioner's Declaration and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1509, 1515, 1517, 1520, and 1521* [ECF No. 4] (the "**Recognition Declaration**"); (iii) the *Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 1145(a), 1507(a), 1521(a), and 1525(a) (I) Enforcing the Brazilian RJ Plan in the United States and (II) Granting Related Relief* [ECF No. 37] (the "**FFE Motion**"); (iv) the *Declaration of Sérgio Savi Pursuant to 28 U.S.C. § 1746 in Support of the Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 1145(a), 1507(a), 1521(a), and 1525(a) (I) Enforcing the Brazilian RJ Plan in the United States and (II) Granting Related Relief* [ECF No. 38] (the "**FFE Declaration**"); or (v) the Brazilian RJ Plan (as defined below), as applicable, and unless otherwise specified, all citations to ECF docket numbers herein are in reference to case number 23-10193.

[3]    The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0090940-03.2023.8.19.0001 (formerly 0809863-36.2023.8.19.0001).

1

In support of this Motion, the Foreign Representative relies upon the *Declaration of Paulo Calil Franco Padis* (the "**Padis Declaration**") and the *Declaration of Marcelo José Milliet* (the "**Milliet Declaration**").    In further support of the relief requested herein, the Foreign Representative respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Since 2024, the RJ Debtors have been diligently implementing the Brazilian RJ Plan approved and confirmed in the Brazilian RJ Proceeding.  But despite their best efforts, certain economic assumptions underlying that plan did not materialize.  One of the key sale transactions contemplated under the Brazilian RJ Plan did not yield cash consideration as expected, and the value of the Company's assets has declined significantly since the proposal of the Brazilian RJ Plan.  To exacerbate the situation, the macroeconomic environment in Brazil has deteriorated and the Brazilian Real has continued to decline in value.  At the same time, the RJ Debtors have incurred other significant claims that are not eligible for restructuring in Brazil.  This leaves the RJ Debtors in a delicate situation; they do not expect to have enough liquidity to both satisfy these claims and fully implement the short-term obligations under the Brazilian RJ Plan.  Consequently, the RJ Debtors' capital structure requires further restructuring.

2.      The relief available to the RJ Debtors in Brazil, however, is limited.  Unlike the Bankruptcy Code, the Brazilian Bankruptcy Law prohibits a debtor from filing a new RJ proceeding for five years following the confirmation of a plan.  So, the RJ Debtors are prohibited by statute from commencing a new RJ proceeding for the next four years.[4]  That leaves the RJ Debtors only two options in Brazil: propose an amendment to the Brazilian RJ Plan or convert the Brazilian RJ Proceeding into a value-destructive liquidation (a *falência*).  Although the RJ Debtors

---

[4]      Indeed, the Oi Group filed its Brazilian RJ Proceeding five years after the confirmation of its prior Brazilian RJ plan in 2018.

are pursuing an amendment,[5] a considerable portion of the RJ Debtors' current debt obligations—approximately R$17.2 billion (about US$3.14 billion)—cannot be restructured because they were either created post-petition or are excluded from RJ proceedings under Brazilian law.[6]  Nor can the Company expunge its existing equity shares via a plan amendment in Brazil without the shareholders' consent.  Thus, the Oi Group has determined that, in parallel with the Brazilian RJ Plan amendment process, the filing of chapter 11 cases in the United States may also be necessary to achieve a holistic restructuring[7] that will maximize value for all of its creditors and preserve the RJ Debtors' remaining going-concerns—including Oi Soluções and other operating subsidiaries such as Serede, Tahto and Oi Services (each as defined below).

3.       But the Chapter 15 Debtors cannot take this further step without relief from this Court.  Although the Brazilian RJ Plan was approved and consummated, the Brazilian RJ Proceeding—which has been recognized as a foreign main proceeding in these Chapter 15 Cases—remains pending.  The Oi Group's assets will remain subject to the jurisdiction of the Brazilian RJ Court for at least two years following the entry of the Brazilian Confirmation Order, which is May 29, 2026.  *See* Recognition Decl. ¶ 39.  Section 1528 of the Bankruptcy Code—which applies only in chapter 15 cases[8]—provides that a chapter 11 case filed after the recognition of a "foreign main

---

[5]    On July 1, 2025, the RJ Debtors filed a motion with the Brazilian RJ Court seeking to amend the Brazilian RJ Plan to realign short-term payment terms for local labor creditors and small suppliers with updated cash flow projections and to impose an additional stay of at least 180 days with respect to such creditors.  Padis Decl. ¶ 25.  A Portuguese copy of the motion and an English translation thereof is attached to the Padis Declaration as <u>Exhibit A</u>.

[6]    For example, unlike chapter 11, a debtor cannot reject burdensome executory contracts and leases and restructure the resulting damages claims in a Brazilian RJ Proceeding—meaning that those obligations must continue to be satisfied regardless of whether the terms are grossly above market or are for goods, services or real estate that the debtor no longer needs to operate its business.  *See id.* ¶ 24.

[7]    Although a proposed amendment to the Brazilian RJ Plan was filed with the Brazilian RJ Court, the RJ Debtors fully expect that this proposal will be modified so that creditor treatment is consistent with any U.S. plan that is confirmed in later chapter 11 cases involving the RJ Debtors.  Milliet Decl. ¶ 25 & n.7 (explaining that plans and plan amendments proposed in Brazilian RJ proceedings can and are routinely modified multiple times prior to soliciting votes from creditors).

[8]    *See* 11 U.S.C. § 103(*l*) ("Chapter 15 applies only in a case under such chapter, except that—(1) sections 1505, 1513, and 1514 apply in all cases under this title; and (2) section 1509 applies whether or not a case under this title is pending.").

proceeding" does not extend to property outside the territorial jurisdiction of the United States that remains subject to the jurisdiction of the foreign court.[9]  Therefore, any chapter 11 filed by the Oi Group may be restricted to the limited assets of the RJ Debtors that are located in the United States. Accordingly, the Foreign Representative has filed this Motion asking this Court to terminate the Recognition Order and dismiss the Chapter 15 Cases so that the Oi Group is able to pursue a chapter 11 filing that will provide the full relief such entities need to avoid a value-destructive liquidation.

4.     Granting the relief requested in the Motion is both necessary and appropriate given the unique circumstances of these Chapter 15 Cases.  First, the termination of the Recognition Order is warranted undersection 1517(d) because the circumstances previously supporting recognition have changed and under section 1507 as an exercise of comity in support of the Brazilian RJ Proceeding.  Indeed, the Brazilian RJ Court is supportive of a parallel chapter 11 filing for the RJ Debtors to avoid liquidation.[10]  Second, the dismissal of the Chapter 15 Cases at the request of the Foreign Representative is appropriate relief that the Court can and should order under sections 1521(a)(7) and 1522.  The right to request a dismissal is additional relief that would be available to a trustee (and thus available to the Foreign Representative) under section 305.[11] And such a dismissal is in the best interests of the RJ Debtors, their creditors, and all of their other stakeholders—who may otherwise face an uncertain outcome in the event of an uncontrolled

---

[9]    *See* 11 U.S.C. § 1528 ("After recognition of a foreign main proceeding, a case under another chapter of this title may be commenced only if the debtor has assets in the United States. The effects of such case shall be restricted to the assets of the debtor that are within the territorial jurisdiction of the United States and, to the extent necessary to implement cooperation and coordination under sections 1525, 1526, and 1527, to other assets of the debtor that are within the jurisdiction of the court under sections 541(a) of this title, and 1334(e) of title 28, to the extent that such other assets are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter.").

[10]   *See* Milliet Decl. ¶ 24.

[11]   The interests of creditors and other stakeholders also will be sufficiently protected as required by section 1522.  The Foreign Representative is requesting the dismissal so that the Oi Group has the ability to file chapter 11 cases with worldwide effect and in which the interests of all stakeholders will be sufficiently protected by the Bankruptcy Code and this Court.

liquidation—and would best serve the purposes of chapter 15—in particular, the goals of cooperation with the Brazilian RJ Court and the rescue of financially troubled businesses. *See* 11 U.S.C. § 1501(a).

5.      Notably, creditors and other stakeholders who have relied on the Recognition Order and the Chapter 15 Cases will not be prejudiced.  None of the relief requested is retroactive.  Thus, the termination of the Recognition Order and dismissal of the Chapter 15 Cases should not nullify or otherwise affect the events that occurred after this Court's entry of the FFE Order enforcing the Brazilian RJ Plan in the United States, including (but not limited to) consummation of that plan and the transactions contemplated thereunder.[12]

6.      Accordingly, the Court should grant the Motion.

## JURISDICTION AND VENUE

7.      The district court has jurisdiction to hear bankruptcy matters under 28 U.S.C. § 1334.  The district court has referred jurisdiction over this proceeding to this Court pursuant to 28 U.S.C. § 157 and the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11,* 12 Misc. 00032 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and (2)(P).

8.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United States Code as the principal U.S. assets of the Chapter 15 Debtors are located within New York County and thus within this District.  Recognition Order ¶ B.  Each of the Chapter 15 Debtors has maintained funds in client trust account with White & Case LLP at Citibank (New York) for over eight years. In addition, Chapter 15 Debtor Oi also has also maintained a bank account with Banco do Brasil (New York Branch) for at least the same length of time.

---

[12]     *Cf.* 11 U.S.C. § 349(a) (stating that dismissal of a case does not bar the discharge of debts that were dischargeable in the case dismissed, unless for cause).

## BACKGROUND

**I.        Overview of the Chapter 15 Debtors' Restructuring History in Brazil**

9.        As further explained in the Verified Petition and FFE Motion, the Oi Group has been involved in two RJ proceedings since 2016. The first proceeding (the "**2016 RJ Proceeding**"), culminated in the approval and confirmation of an RJ Plan in 2018 (the "**2018 RJ Plan**"). Verified Petition ¶ 17. This Court entered an order giving full force and effect to the 2018 RJ Plan on July 9, 2018. *Id.*; *see In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. July 9, 2018) [ECF No. 280]. After the approval of the 2018 RJ Plan, the Company continued to face significant pressure on its cash flows due to several industry headwinds coupled with its ongoing financial crisis. Recognition Decl. ¶ 43. As a result, the Company negotiated an amendment to the 2018 RJ Plan with creditors that was later approved in September 2020 and confirmed in Brazil in October 2020 (the "**2020 RJ Plan Amendment**"). Verified Petition ¶ 19. Through the 2016 RJ Proceeding, the Oi Group reduced its indebtedness from R$65 billion (approximately US$11.86 billion) in 2016 to R$35 billion (approximately US$6.39 billion) in 2022. Recognition Decl. ¶ 44.[13]

10.        Despite the successful resolution of the 2016 RJ Proceeding, a number of factors thwarted the Company's financial rehabilitation, which led the Company to begin negotiating the terms of a new restructuring with its creditors in October 2022. Verified Petition ¶¶ 22–25, 34–35. Because the Brazilian Bankruptcy Law precludes debtors that had an RJ plan confirmed from filing a new RJ proceeding for five years from when the plan was confirmed, Padis Decl. ¶ 12, the

---

[13]    The foreign exchange rate used in the amounts in this Motion is 5.4801:1 from R$ to US$ as of June 27, 2025.

Chapter 15 Debtors waited until March 1, 2023 to file a joint voluntary petition initiating the current Brazilian RJ Proceeding (the "**RJ Petition**").[14] FFE Mot. ¶ 16.

11.    The Chapter 15 Debtors and their various creditor constituencies negotiated a restructuring of Oi's capital structure, which was as comprehensive as permissible under Brazilian Bankruptcy Law and memorialized in a formal reorganization plan (the "**Brazilian RJ Plan**") submitted to a vote at a general creditors' meeting (a "**GCM**") in the Brazilian RJ Proceeding on April 19, 2024.[15] FFE Decl. ¶ 12.

12.    At the April 19, 2024 GCM, the Brazilian RJ Plan was approved by the requisite majorities under the Brazilian Bankruptcy Law[16] and on May 28, 2024, the Brazilian RJ Court entered the order confirming the Brazilian RJ Plan (the "**Brazilian Confirmation Order**").[17] FFE Decl. ¶¶ 13, 18.

## II.    The Current Chapter 15 Cases

13.    On February 8, 2023, the Foreign Representative filed the Verified Petition with this Court and commenced these Chapter 15 Cases to seek recognition of the Brazilian RJ Proceeding. *See generally* Verified Petition.

14.    On March 29, 2023, the Court held a hearing to consider the Verified Petition and entered an order which, among other things, found that the center of main interest of each of the

---

[14]    Prior to filing the RJ Petition, the Chapter 15 Debtors sought preliminary injunctive relief on January 31, 2023, which the Brazilian Bankruptcy Court granted on February 2, 2023.  Verified Petition ¶ 35–36.

[15]    A Portuguese copy of the Brazilian RJ Plan and a certified English translation thereof is attached to the FFE Declaration as <u>Exhibit A</u>.

[16]    For purposes of voting on a plan of reorganization under Brazilian Bankruptcy Law, claims are divided into four classes, and only those classes impaired by the plan are eligible to vote.  Recognition Decl. ¶ 33.  Under the Brazilian RJ Plan, only creditors with Class 3 (unsecured) claims were eligible to vote, and 56.15% of claims amount and 79.87% of total creditor headcount voted to approve the Brazilian RJ Plan. *See* Recognition Decl. ¶ 33; FFE Decl. ¶ 13; ECF No. 36 ¶ 7.

[17]    A Portuguese copy of the Brazilian Confirmation Order and a certified translation thereof is attached as <u>Exhibit C</u> to the FFE Declaration.

Chapter 15 Debtors is in Brazil and recognized the Brazilian RJ Proceeding as a "foreign main proceeding" of each of the Chapter 15 Debtors. *See* ECF No. 30 (the "**Recognition Order**").

15.    After entry of the Brazilian Confirmation Order and upon motion of the Foreign Representative, this Court entered an order granting comity and giving full force and effect to the Brazilian RJ Plan and the Brazilian Confirmation Order in the United States on May 29, 2024. *See generally* FFE Motion; *see also* ECF No. 42 (the "**FFE Order**").

### III.    Events After Entry of This Court's FFE Order

16.    Immediately after the entry of the Brazilian Confirmation Order, the Chapter 15 Debtors began implementing the terms of the Brazilian RJ Plan. Milliet Decl. ¶ 8.

17.    As noted, the Brazilian Bankruptcy Law provides for a statutory classification of claims for voting purposes in RJ proceedings, and only impaired claims are allowed to vote on the plan proposed by the debtor. Recognition Decl. ¶ 33; FFE Decl. ¶ 14 n.8. The Brazilian RJ Plan only impaired claims held by unsecured creditors, otherwise referred to under the Brazilian Bankruptcy Law as "Class 3" claims. FFE Decl. ¶ 11.[18]

18.    Holders of Class 3 claims were given the opportunity to choose among different payment options. For example: (1) those who agreed not to pursue litigation against Oi and to provide the RJ Debtors with financing totaling at least US$505 million (allocated on a pro rata basis among the participants in this payment option) could elect to receive New Priority Secured Notes (as defined below), a pro rata share of "roll-up" notes, and new shares in Oi ( "**Option I**"); (2) those who agreed not to litigate against Oi but declined to participate in the financing of the RJ Debtors could restructure 8% of their claims into debt maturing in December 2044, with the

---

[18]    Certain claims, including claims with fiduciary guarantees, were not subject to the Brazilian RJ Proceeding under the Brazilian Bankruptcy Law (the "**RJ Exempt Claims**"). *Id.* ¶ 21. Accordingly, such claims rode through the Brazilian RJ Proceeding unimpaired and were not permitted to vote on the Brazilian RJ Plan. *Id.*

remaining 92% converted into participatory debt maturing in December 2050, payable from Oi's future profits after the satisfaction of senior debt obligations; (3) suppliers were offered payment in five annual instalments after 2045; (4) suppliers willing to continue their relationship with the RJ Debtors within a certain timeframe were offered payment in full; (5) certain strategic suppliers were offered payment in kind through certain assets, coupled with a debt haircut and maturity extension; and (6) a default option for those who failed to affirmatively elect or did not qualify for any of the foregoing options.  FFE Decl. ¶¶ 22–30.

### A. Equitization of Creditors and Distribution of New Debt

19.     The Brazilian RJ Plan provided for, among other things, (i) the issuance of new priority secured notes (the "**New Priority Secured Notes**") of at least US$655 million, of which (a) US$505 million was to be subscribed by creditors choosing Option I, and (b) US$150 million was to be open to third parties and creditors (except those eligible to choose Option I), and (ii) the equitization of certain claims held by creditors electing Option I into up to 80% of fully diluted share capital of the Company.  FEE Decl. ¶ 22; Brazilian RJ Plan §§ 5.4.1, 5.4.2.

20.     On August 8, 2024, the Company announced the completion of the restructuring, through which (i) creditors selecting Option I were issued approximately US$601 million of New Priority Secured Notes, (ii) BGC Fibra Participações, an affiliate of V.Tal – Rede Neutra de Telecomunicações S.A. ("**V.Tal**")[19] (which is 27.5% owned by Oi and its affiliates), subscribed to financing for third parties amounting to approximately R$902.6 million (approximately

---

[19]     V.Tal was previously a subsidiary of the Oi Group called Brasil Telecom Comunicação Multimídia S.A. ("**BTCM**").  In June 2022, the majority control of BTCM was sold as a UPI (as defined below) pursuant to the 2018 RJ Plan and 2020 RJ Plan Amendment.  Verified Petition ¶ 20.  Following the closing of the sale, BTCM was merged into Globenet Cabos Submarinos S.A., the buyer, began operating independently, and was renamed as V.Tal.  *Id.*

US$162.51 million), and (iii) Class 3 claims subscribed to the "roll-up" notes totaling approximately US$1.33 billion.  Milliet Decl. ¶ 9.

### B.  Appointment of New Independent Board of Directors

21.    On June 7, 2024, in accordance with the Brazilian RJ Plan, three members of the Company's board of directors resigned from their positions.  *Id.* ¶ 10.  In their place, Mr. Francisco Roman Lamas Mendez-Villamil, Mr. Paul Aronzon, and Mr. Renato Carvalho Franco were appointed to serve as alternate directors until the issuance of shares to the Option I creditors and the convening of an extraordinary general shareholders' meeting for the formal election of a new board of directors.  *Id.*

22.    On December 11, 2024, following the issuance of shares to the Option I creditors, the Company held an extraordinary general shareholders' meeting to elect seven new members of the Company's board: (1) Mr. Francisco Roman Lamas Mendez-Villamil; (2) Mr. Marcelo José Milliet; (3) Mr. Paul Aronzon; (4) Mr. Paul Murray Keglevic; (5) Mr. Raphael Manhães Martins;[20] (6) Mr. Renato Carvalho Franco; and (7) Mr. Scott David Vogel.  *Id.* ¶ 11.

23.    Since the appointment of the new independent board members, Oi's board of directors have overseen a number of significant milestones related to the Chapter 15 Debtors' restructuring, including the sale of relevant assets and so-called "Isolated Production Units" ("**UPIs**"),[21] including UPI ClientCo (discussed further below).  *Id.*  ¶¶ 12–13.

---

[20]    Mr. Raphael Manhães Martins was a former board member, reelected by the preferred shareholders.  *Id.* ¶ 11 n.3

[21]    A UPI is a legal concept within the Brazilian Bankruptcy Law that facilitates the free-and-clear sale of assets during judicial reorganizations, ensuring their value is maximized by protecting the acquiror from past liabilities associated with the assets.   In reviewing its business strategy, Oi created certain UPIs formed by the assets of the businesses that would no longer be part of Oi's core business to be marketed and sold.  Recognition Decl. ¶ 43.

### C. Sale of UPI ClientCo

24.     The Brazilian RJ Plan provided for the possibility of the sale of assets free and clear, either directly or in the format of UPIs, through competitive processes pursuant to the Brazilian Bankruptcy Law.  *Id.* ¶ 12; FFE Decl. ¶ 31.  For example, UPI V.Tal, which consists of the Chapter 15 Debtors' equity stake in V.Tal, is projected to be sold in 2026 (if not earlier), and UPI Subscription TV, which encompassed the Chapter 15 Debtors' television business, was sold on February 28, 2025.  Milliet Decl. ¶ 12.  The proceeds generated from such sales are to be used for the repayment of the creditors subject to the priorities and waterfalls agreed to in the Brazilian RJ Plan.  FFE Decl. ¶ 31.

25.     One of the most valuable UPI sales for the Chapter 15 Debtor's restructuring was UPI ClientCo, which is related to the Company's fiber optic client base and related systems.  Milliet Decl. ¶ 13.  The initial sale process for UPI ClientCo launched in June 2024 garnered only one bid from Ligga Telecomunicações S.A. ("**Ligga**"), which bid did not meet the minimum price in cash required in the Brazilian RJ Plan and was subsequently rejected.  *Id.* ¶ 14.[22]

26.     A second round of bidding was launched for the sale of UPI ClientCo and, on September 25, 2024, the Chapter 15 Debtors announced that they received another bid from V.Tal valued at R$5.68 billion (approximately US$1.04 billion).  *Id.* ¶ 15.  The price paid by V.Tal included the transfer to Oi of (i) R$334 million (approximately US$60.95 million) debentures (inclusive of accrued interest, fees, and premiums) issued to V.Tal by Oi as a loan during the Brazilian RJ Proceeding, (ii) R$381.7 million (approximately US$69.65 million) in credits (inclusive of accrued adjustment, interest, and fees) that V.Tal held against Oi related to costs for

---

[22]     Under the Brazilian RJ Plan, the minimum sale price of UPI ClientCo was R$7.3 billion cash in a first round of a competitive procedure.  FFE Decl. ¶ 32 n.14.

connecting homes under a June 2022 fiber-to-home infrastructure agreement, and (iii) R$4.99 billion (approximately US$910.57 million) issued in new common shares of V.Tal, which would be paid for through the contribution of shares from UPI ClientCo. *Id.* The bid from V.Tal did not include a cash component. *Id.*

27.     Although the bid was valued lower than the minimum price and did not include a cash component, the Brazilian RJ Plan permitted the Option I creditors and certain suppliers to vote on acceptance of non-cash bids during the second round of the competitive sale process. *Id.* ¶ 16. These creditors approved the V.Tal bid, which was subsequently declared the winning bid by the Brazilian RJ Court. *Id.* During November and December, 2024, the Brazilian RJ Court, Brazil's antitrust regulator (Conselho Administrativo de Defesa Econômica or "**CADE**") and Brazil's telecom regulator (Agência Nacional de Telecomunicações or "**ANATEL**") approved the transaction without restriction. *Id.*

28.     As a result, in addition to reducing Oi's debt, the sale of UPI ClientCo to V.Tal, which closed on February 28, 2025, increased Oi's equity stake in V.Tal from 17% to 27.5%. *Id.* ¶ 17. Such stake is subject to reductions arising out of indemnity obligations falling on the Company pursuant to the relevant documents governing the sale of UPI ClientCo, thus reducing the value of the equity stake available to repay existing creditors.

### D.  Outlook

29.     Under the Brazilian RJ Plan, creditors also agreed to convert a significant portion of the Company's debt into equity. *Id.* ¶ 18. This, along with the asset sales and other debt restructuring described above, lessened the Company's cash burn and allowed for a considerable reduction in the Company's indebtedness. *Id.* ¶ 19. Unfortunately, the restructuring measures provided in the Brazilian RJ Plan have proven to be insufficient to resolve the Company's financial crisis. *Id.*

30.    For instance, the net sales of UPIs (including UPI ClientCo) and assets (including real estate assets) generated significantly less in proceeds than originally anticipated and failed to generate sufficient cash to service all of the Company's debts. *See id.* In addition, the Company had anticipated a cash inflow of approximately R$1.5 billion (approximately US$273.72 million) from the sale of the UPI ClientCo. *Id.* For the reasons outlined above, however, the transaction was ultimately structured as a debt reduction combined with an increase in Oi's equity stake in V.Tal, resulting in no cash proceeds. *Id.* Moreover, the value of the majority of the Company's assets have declined significantly since the proposal of the Brazilian RJ Plan. *Id.* Further exacerbating the situation, delays in closing the transaction led to an estimated additional cash burn of approximately R$500 million (approximately US$91.24 million). *Id.* In total, these developments adversely impacted the Company's liquidity by roughly R$2 billion (approximately US$364.96 million)—a significant and material deviation from the original assumptions under the Brazilian RJ Plan. *Id.* As of March 31, 2025, Oi reported in its balance sheet total assets of approximately R$19.6 billion (approximately US$3.58 billion) and total liabilities of R$26.7 billion (approximately US$4.87 billion) (present value adjusted). *Id.*

31.    Additionally, operational roadblocks are impacting revenue and compounding liquidity issues. *Id.* ¶ 20. Due to its obligations under legacy concession agreements and delays by ANATEL in approving the migration of the Company from a public to a private regime, [23] the Company was compelled to maintain legacy fixed-line and copper infrastructure for a longer period than anticipated, which is expensive and unprofitable due to customers transitioning to fiber-optic services. *Id.* The migration to the private regime was completed only in December

---

[23]    The recent introduction of the private regime for telecom operators under Brazilian law (Law 13.879/2019 and ANATEL Resolution 741/2021) provided financial relief to Oi, as it was no longer required to fulfill burdensome obligations previously imposed by the Government. This shift allowed the Company to divest unused assets and redirect its focus toward more profitable activities.

2024, despite the initial expectation that it would be finalized by June 2024.  *Id.*  These structural weaknesses and systemic inefficiencies have significantly hindered the business.  *Id.*

32.     As if that was not enough, the Company also was negatively affected by the underperforming Brazilian economy and currency devaluation of the Brazilian Real.  *Id.*  ¶ 21.  In 2024, Brazil's aggressively restrictive monetary policy with soaring interest rates, as well as generalized concerns about the country's rising debt levels caused economic activity to grow significantly less than previously forecasted.  *Id.*  The Brazilian Real also experienced depreciation of approximately 20% of its value in the end of 2024 compared to the same period in the year before.  *Id.*  The loss in value of the Brazilian currency weighed heavily on the Company's financial status, as a considerable part of its indebtedness is denominated in U.S. dollars.  *Id.*

33.     Not all of these underlying issues can be fully addressed by an amendment to the existing Brazilian RJ Plan.  As noted, under the Brazilian Bankruptcy Law, a debtor with a confirmed RJ plan is precluded from filing another RJ petition within five years of RJ plan confirmation.  Padis Decl. ¶ 12.  Here, the Company is statutorily barred from filing a new RJ proceeding in Brazil until May 28, 2029.[24]  *Id.*  The RJ Debtors incurred postpetition obligations of approximately R$1.51 billion (approximately US$275.54 million) and have existing equity claims that cannot be discharged, unlike under a chapter 11 plan.  Milliet Decl. ¶ 22.  Moreover, the Company is experiencing an urgent, significant liquidity crisis on account of liabilities that are not subject to the RJ Proceeding.  *Id*.  Claims secured by fiduciary liens[25] and/or guarantees and other RJ Exempt Claims, which account for R$17.2 billion (approximately US$3.14 billion) of Oi's debt, cannot be restructured in the Brazilian RJ Proceeding.  Padis Decl. ¶¶ 21-23.  Executory

---

[24]     In addition, the Brazilian RJ Proceeding must remain open until May 29, 2026 (*i.e.*, two years following confirmation of the Brazilian RJ Plan).  *Id.* ¶ 12 n.4.

[25]     A fiduciary lien is a form of security interest under which the lender is determined to be the legal title owner of the asset collateral securing its claim until the debt or obligation has been satisfied by the borrower.  *Id.* ¶ 21.

contracts and leases for property and services that the Company no longer uses (such as its cellular towers) must continue to be complied with and all claims thereof paid in full. *Id*. ¶ 24. These leases constitute a monthly expenditure of R$50 million (approximately US$9.12 million), for an aggregate three-year cost of R$1.3 billion (approximately US$237.22 million). *Id.* Although the Company no longer utilizes the underlying infrastructure, it remains contractually obligated to honor the take-or-pay provisions, which cannot be rejected under the Brazilian Bankruptcy Law. *Id.*

34. This means that although the Company still has revenue streams and valuable assets, including its minority stake in V.Tal and various real estate properties, the Company currently does not have sufficient funds to continue operating. Milliet Decl. ¶ 22. If the Company runs out of the liquidity necessary to meet its obligations under the Brazilian RJ Plan, the Brazilian RJ Court could convert the Brazilian RJ Proceedings to a *falência*, under which the Company's business may be immediately shutdown. Padis Decl. ¶¶ 13–14; Recognition Decl. ¶ 40.

35. *Falência* proceedings may take several years to complete and are generally known to destroy stakeholder value. Padis Decl. ¶¶ 14-16. Asset values in *falência* proceedings are materially lower than those realized through restructuring due to the fire-sale nature of the sale and the lack of any going-concern value because of the suspension of operations. *See id*. ¶¶ 14, 17. Creditor recoveries are often in the single-digit percentages and the Company's status as one of Brazil's largest telecommunications providers, major employers, and taxpayer would significantly complicate and prolong a liquidation. *Id*. ¶¶ 16–17. In a *falência*, unsecured creditors would likely receive no distribution, which demonstrates the value-destructive nature of the process and the urgency of avoiding such an outcome. *Id*. ¶ 19.

### E.  Further Restructuring Considerations

36.    Given Oi's outlook and lack of available remedies in Brazil, the Company has explored its strategic options to preserve and maximize value for all stakeholders and to continue its business.  Specifically, the Company is exploring (among other options) a potential chapter 11 filing, as a chapter 11 proceeding has the potential to provide a framework to stabilize the cash flows and give the company more time to run marketing processes for certain assets related to discontinued services provided by the Oi Group, *see* Milliet Decl. ¶ 23, as well as address obligations that cannot be restructured in Brazil.  This will provide an opportunity for the Company to continue operating and growing its remaining business, which includes (i) providing digital services to corporations and governmental entities in Brazil (such as cloud computing, internet security, big data processing, and others) through its subsidiary Oi Soluções S.A. ("**Oi Soluções**"), which already has over 43,000 clients (60% of which are governmental entities such as municipalities, agencies and other institutions), as well as (ii) business process outsourcing services, or BPO, for financial, operational and IT support through subsidiary Oi Services – ClientCo Serviços de Rede Norte S.A. ("**Oi Services**"), (iii) network maintenance services through subsidiary Serede – Serede Serviços de Rede S.A. ("**Serede**"), and (iv) customer experience and BPO services for call centers through subsidiary Tahto – Brasil Telecom Call Center S.A. ("**Tahto**").   Together with its other subsidiaries, the Oi Group has approximately 14,000 employees and generates over R$3.3 billion (approximately US$602.18 million) in revenue per year. *See id.*

37.    If the Company were to seek chapter 11 relief, it would do so as a plenary proceeding in conjunction with the ongoing Brazilian RJ Proceeding.  Following confirmation of a chapter 11 plan, the Company would reflect the same terms on the Brazilian RJ Plan to effectuate a global restructuring. *Id.* ¶ 25.  A more fulsome restructuring of the Company's obligations, with

16

sufficient creditor support and financing, will lead to the most positive outcome for all stakeholders and for the continuity of the RJ Debtors. *Id.* ¶ 25. It is for this reason that the Company is considering a potential chapter 11 filing as one option for addressing its situation. The Oi Group has discussed the possibility of filing chapter 11 cases in the United States with certain Brazilian authorities, including the Brazilian RJ Court,[26] who are supportive of the effort to utilize cross-border restructuring solutions to increase creditor recoveries, as well as with certain of its large creditor counterparties. *Id.* ¶ 24.

## **RELIEF REQUESTED**

38.     The Foreign Representative requests that this Court enter an order, substantially in the form of the Proposed Order attached as **Exhibit A**, under sections 105(a), 305(a), 1507(a), 1517(d) and 1521(a) of the Bankruptcy Code that: (i) terminates the Recognition Order; (ii) dismisses the Chapter 15 Cases; and (iii) grants related relief as may be just and proper (collectively, the "**Requested Relief**").

## **BASIS FOR RELIEF**

39.     The Brazilian process alone will not sufficiently address the Chapter 15 Debtors' restructuring needs. *Supra* ¶¶ 33–35. A new RJ is not statutorily permitted, an amendment to the Brazilian RJ Plan will not address all of the RJ Debtors' obligations, and a *falência* will be counter-productive, resulting in material loss of value for all stakeholders, widespread job losses, and a substantial reduction in tax revenues. *See id.* Therefore, the Foreign Representative asks this Court to take all reasonable steps to allow for potential filing of chapter 11 cases if the Oi Group elects to pursue that path.

---

[26]     On June 11, 2025, the Company's representatives and counsel discussed this possibility with the Brazilian RJ Court and the reporting Justice from the Court of Appeals, and the judges expressed support for the strategy. *See id.* ¶ 24 n.6.

40.     Chapter 11 is often used as a restructuring forum for financially troubled companies incorporated and operating outside of the United States. *See, e.g.*, *In re Azul S.A.*, No. 25-11176 (SHL) (Bankr. S.D.N.Y. 2025) (pending); *In re GOL Linhas Aéreas Inteligentes S.A.*, No. 24-10118 (MG) (Bankr. S.D.N.Y. May 21, 2025) [ECF No. 1646] (order confirming chapter 11 plan of reorganization for foreign-based company); *In re WOM S.A.*, No. 24-10628 (KBO) (Bankr. D. Del. Mar. 7, 2025) [ECF No. 1250] (same); *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG) (Bankr. S.D.N.Y. June 18, 2022) [ECF No. 5754] (same); *In re Grupo Aeroméxico, S.A.B. de C.V.*, No. 20-11563 (SCC) (Bankr. S.D.N.Y. Feb. 4, 2022) [ECF No. 2668] (same); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Mar. 16, 2022) [ECF No. 652] (same); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. Nov. 2, 2021) [ECF No. 2300] (same); *In re Seadrill Ltd.*, No. 21-30427 (DRJ) (Bankr. S.D. Tex. Oct. 26, 2021) [ECF. No. 1158] (same).   Currently, the Oi Group has significant liabilities owed to parties subject to U.S. jurisdiction. *Supra* ¶¶ 36–37.  The Company has also opened a dialogue with Brazilian authorities, who are supportive of utilizing the chapter 11 process to maximize creditor recoveries and avoid a liquidation. *Supra* ¶ 37.  A chapter 11 case therefore likely would provide the Oi Group with a conducive and constructive restructuring forum—both for its outstanding obligations and to reorganize its remaining business (including Oi Soluções and other operating subsidiaries such as Serede, Tahto and Oi Services).

41.     But if the Oi Group were to file petitions while this Court's Recognition Order remains in effect, the chapter 11 cases may do little to address the Company's financial distress. Section 1528 of the Bankruptcy Code provides:

> After recognition of a foreign main proceeding, a case under another chapter of this title may be commenced only if the debtor has assets in the United States.  The effects of such case shall be restricted to the assets of the debtor that are within the

> territorial jurisdiction of the United States and, to the extent
> necessary to implement cooperation and coordination under sections
> 1525, 1526, and 1527, to other assets of the debtor that are within
> the jurisdiction of the court under sections 541(a) of this title, and
> 1334(e) of title 28, to the extent that such other assets are not subject
> to the jurisdiction and control of a foreign proceeding that has been
> recognized under this chapter.

11 U.S.C. § 1528.

42.    The Company has substantially all of its assets in Brazil, which remain subject to

the jurisdiction of the Brazilian RJ Court in the pending Brazilian RJ Proceeding, and only limited

assets in the United States.  Verified Petition ¶¶ 14–16.  Accordingly, section 1528 may not allow

for the type of global restructuring that is necessary to preserve the value of the Chapter 15 Debtors

and that is in the best interest of creditors and all of its other stakeholders.  While a "recognized

foreign representative can also file a plenary proceeding under chapter 7 or 11 regarding a debtor

that is the subject of a chapter 15 case," it is "unclear how often a foreign representative would

choose this option because of the extent of the relief available under chapter 15."  *Awal Bank, BSC*

*v. HSBC Bank USA (In re Awal Bank, BSC)*, 455 B.R. 73, 79 (Bankr. S.D.N.Y. 2011).  Further,

courts have stated that "the concurrent case under the Bankruptcy Code should generally serve the

interests of the foreign main proceeding—subject, of course, to the court's duty to condition or

modify relief to protect creditors."  *In re SPhinX, LTD.*, 351 B.R. 103, 115 n.17 (Bankr. S.D.N.Y.

2006).

43.    Since Bankruptcy Code section 1528 may prevent the Chapter 15 Debtors from

pursuing the value-maximizing and the best available restructuring option, this Court should

terminate the Recognition Order and dismiss the Chapter 15 Cases because section 1528 will not

apply to newly-filed plenary chapter 11 cases.  *See* 11 U.S.C. § 103(*l*) ("Chapter 15 applies only

in a case under such chapter, except that—(1) sections 1505, 1513, and 1514 apply in all cases

under this title; and (2) section 1509 applies whether or not a case under this title is pending.").

To aid the Chapter 15 Debtors' restructuring efforts, the Foreign Representative respectfully

requests that this Court terminate the Recognition Order and dismiss the Chapter 15 Cases.[27]

**I.     The Grounds for Granting the Recognition Order Have Ceased to Exist and Additional Circumstances Exist to Justify the Requested Relief**

44.     Section 1517(d) permits the "modification or termination of recognition if it is

shown that the grounds for granting it were fully or partially lacking or have ceased to exist" giving

"due weight to possible prejudice to parties that have relied upon the order granting recognition."

11 U.S.C. § 1517(d).  Applying the section 1517(d) standard to these facts, termination of the

Recognition Order is warranted.[28]

45.     The grounds for granting the Recognition Order have ceased to exist.  All measures

associated with the Brazilian RJ Plan that required relief by this Court under the Bankruptcy

Code—such as application of the automatic stay during the negotiation of the Brazilian RJ Plan,

the issuance of restructured debt governed by New York law, and this Court's recognition of the

Brazilian RJ Plan to ensure its binding effect on U.S. claimholders—have been fully implemented.

*See supra* ¶¶ 15–28.  But under the Brazilian Bankruptcy Law, the Brazilian RJ Proceeding must

remain open until May 29, 2026 (*i.e.*, two years following confirmation of the Brazilian RJ Plan).

*See supra* ¶ 33.  Notwithstanding this requirement of Brazilian Bankruptcy Law, the Chapter 15

Debtors' need for chapter 15 relief no longer exists after (i) the issuance of and subscription to the

---

[27]    For the avoidance of doubt, the Foreign Representative submits that termination of the Recognition Order and dismissal of the Chapter 15 Cases should not in any way retroactively nullify or otherwise affect (or be interpreted as retroactively nullifying or otherwise affecting) the events that occurred after this Court's entry of the FFE Order, including but not limited to consummation of the Brazilian RJ Plan and the related sales and transactions thereunder.  The relief requested herein is intended only to ensure that section 1528 does not limit the relief the Oi Group may seek in any later chapter 11 filings.

[28]    Additionally, Rule 60(b) of the Federal Rules of Civil Procedure ("**FRCP**"), if applicable, provides additional grounds for the requested relief.  FRCP 60(b), made applicable to bankruptcy cases through Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides, in relevant parts, that the court "may relieve a party or its legal representative from a final judgment, order, or proceeding" when "the judgment has been satisfied . . . or applying it prospectively is no longer equitable," and for "any other reason that justifies relief."  FRCP 60(b)(5), (6).

New Priority Secured Notes, (ii) the issuance of the roll-up debt, (iii) V.Tal's acquisition of UPI ClientCo, and (iv) the capital increase converting much of the Company's debt to equity.

46.    Additional circumstances exist to justify the Requested Relief.  While the Chapter 15 Debtors restructured their debts in Brazil under the Brazilian RJ Plan and through these Chapter 15 Cases, they now lack the liquidity to meet their short-term obligations.  Milliet Decl. ¶ 22. These liquidity constraints are exacerbated by certain liabilities, such as the RJ Exempt Claims, that are excluded from the scope of the Brazilian RJ Proceeding under the Brazilian Bankruptcy Law, and cannot be restructured, including through any amendment to the RJ Plan.  Padis Decl. ¶ 21–23.  A *falência* for a company the size and importance of the Oi Group will lead to the loss of a tremendous amount of value which otherwise could and should be equitably distributed to Oi's creditors.  *Supra* ¶ 35.

47.    Given that (i) the Oi Group has approximately R$27.8 billion (approximately US$5.07 billion) in debts that can be effectively restructured through chapter 11, (ii) the Brazilian RJ Plan has been sufficiently implemented such that no creditor will be negatively impacted by termination of the Recognition Order, and (iii) the Company cannot appropriately restructure its capital structure again in Brazil,[29] this is *exactly* the type of the "perfect storm" change in circumstances that warrants the termination of the Recognition Order.  The Court therefore should exercise its discretion to terminate the Recognition Order.

---

[29]    If the status quo were to be maintained, the Chapter 15 Debtors will quickly exhaust their liquidity runway and may be forced into a value-destructive *falência* that will be detrimental to all parties involved.

II.    **The Court Should Provide the Foreign Representative with "Additional Assistance" Under Sections 1507 and 105(a) of the Bankruptcy Code by Terminating the Recognition Order**

48.    In the alternative, this Court should terminate the Recognition Order as a provision of "additional assistance" to the Foreign Representative in aid of the Brazilian RJ Proceeding under section 1507(a).

49.    In determining whether to exercise discretion to provide "additional assistance," courts consider whether such assistance, consistent with the principles of comity, will reasonably assure: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by the Bankruptcy Code; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.  11 U.S.C. § 1507(b).  The Court "balanc[es] the various factors set forth in Section 1507(b)." *In re Oi S.A.*, 587 B.R. 253, 266 (Bankr. S.D.N.Y. 2018).

50.    Additionally, section 105(a) provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 105(a) "is understood as providing courts with discretion to accommodate the unique facts of a case consistent with the policies or directives set by the other applicable substantive provisions of the Bankruptcy Code."  *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 201 (Bankr. S.D.N.Y. 2017).

51.    As discussed above, terminating the Recognition Order to permit the potential filing of a subsequent possible chapter 11 restructuring maximizes value for all of Oi's stakeholders by avoiding a value-destructive *falência*.  *Supra* ¶¶ 35–37.  U.S.-based creditors will be afforded a

more orderly and equitable alternative to a freefall liquidation, which would result in a very low, if any, recoveries.  *Id.*  Moreover, the distribution of the Oi Group's assets in any future chapter 11 case will be in accordance with the priority schemes required under the Bankruptcy Code.  The Oi Group would also be able to access more liquidity through debtor-in-possession financing, which can be used to fund their efforts to maximize the value of their assets for creditors.  Lastly, the Oi Group will be permitted to continue their operations under a more cost-efficient structure, thereby preserving employment, maintaining services to consumers, and contributing to tax revenues.

52.    Removing the procedural roadblock under section 1528 and permitting the Oi Group to access the full benefits and protections of chapter 11 is in the best interests of the Company and all of its stakeholders.  In sum, the various factors set forth in section 1507(b) support the provision of additional assistance to the Foreign Representative, and thus the Court should terminate the Recognition Order under section 1507 and section 105(a).

### III.    This Court Should Dismiss the Chapter 15 Cases Under Sections 305 and 1521 of the Bankruptcy Code

53.    Section 305(a) of the Bankruptcy Code provides that a chapter 15 case may be dismissed if the interests of creditors and the debtor and the purposes of chapter 15 would be best served by such dismissal.  11 U.S.C. § 305(a).  Likewise, section 1521(a) of the Bankruptcy Code provides the Court with "exceedingly broad" discretion to grant certain enumerated forms of relief as well as "any appropriate relief" necessary to effectuate the purposes of chapter 15 and to protect a debtor's assets and the interests of creditors.  11 U.S.C. § 1521(a); *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009).  Relief under section 1521 may be granted if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  This Court should dismiss the Chapter 15 Cases under sections 305(a)(1) and

(2) to ensure that section 1528 does not negatively impact a possible plenary chapter 11

restructuring[30] because all parties are sufficiently protected, and their interests, as well as the goals

of chapter 15, are best served by dismissal of the Chapter 15 Cases.

### A. The Goals of Chapter 15 Are Best Served by Dismissal

54.    Bankruptcy Code section 305(a)(2) provides that the Court may dismiss a case

under title 11 if the purposes of chapter 15 would be best served by such dismissal.  11 U.S.C. §§

305(a)(2)(A)-(B).  The objectives of chapter 15 include: (i) cooperation between courts of the

United States and foreign courts; (ii) the fair and efficient administration of cross-border

insolvency cases; (iii) the protection and maximization of the value of a debtor's assets; and (iv)

the facilitation of the rescue of a financially troubled business.  *See* 11 U.S.C. § 1501(a).  Each of

these objectives is accomplished by dismissing the Chapter 15 Cases.

55.    ***Cooperation Between U.S. and Foreign Courts.***  The Oi Group has discussed its

plans with Brazilian authorities, including the Brazilian RJ Court, who are supportive of the effort

to utilize cross-border restructuring solutions to increase creditor recoveries.  Milliet Decl. ¶ 24 &

n.6.  If the Company elects to pursue a future chapter 11, the Company intends to reflect such

provisions in the Brazilian RJ Plan to be consistent with any future chapter 11 plan, to ensure that

there are no discrepancies and to restructure liabilities that will not be bound by the U.S.

jurisdiction.  *Id.* ¶ 25.  Accordingly, dismissal of the Chapter 15 Cases will facilitate cooperation

between this Court and the Brazilian RJ Court is consistent with the objectives of chapter 15.

56.    ***Fair and Efficient Administration of Cross-Border Insolvency Cases and***
***Protection and Maximization of Value.***  Dismissal of the Chapter 15 Cases to permit a chapter 11

---

[30]    Section 103(*l*) of the Bankruptcy Code provides that except for except for certain exceptions that do not apply here, chapter 15 "applies only in a case under such chapter."  Accordingly, dismissing the Chapter 15 Cases will render section 1528 of the Bankruptcy Code ineffective to a subsequent plenary chapter 11 case because there will no longer be a pending concurrent chapter 15 case as of the date of such chapter 11 filing.

filing will protect U.S.-based creditors by providing a more orderly and equitable alternative to a freefall liquidation or *falência*, thereby maximizing value of the Chapter 15 Debtors and preserving the Chapter 15 Debtors' operations. The Chapter 15 Debtors will be able to sustain their business activities with a streamlined cost structure, which will help protect jobs, ensure continued service to customers, and support the generation of taxable income. *Falência* is clearly not in any stakeholder's interest. *Supra* ¶ 35. Thus, this factor weighs in favor of dismissal of the Chapter 15 Cases because it will allow the Oi Group to utilize the tools of chapter 11, if it so chooses, to ensure an orderly and equitable distribution to creditors in accordance with the priorities schemes required under the Bankruptcy Code.

57. ***Facilitation of the Rescue of Financially Troubled Business.*** In addition to monetizing certain of its assets, the Oi Group plans to reorganize itself around the Oi Soluções business and other subsidiaries. These subsidiaries have average revenues of over R$3.3 billion (approximately US$602.18 million), over 14,000 employees, and the ability to grow following a successful restructuring. *See supra* ¶ 36. With the Company facing acute financial distress, allowing the Oi Group the option to access chapter 11 to preserve its remaining going-concerns and ensure that it has the liquidity to stave off the worst-case scenario—freefall *falência*—is consistent with this purpose of chapter 15.

### B. The Interests of Interested Parties Are Protected and Best Served by Dismissing These Chapter 15 Cases

58. This Court has explained that the "sufficient protection" required under section 1522(a) of the Bankruptcy Code "embod[ies] three basic principles":

> the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.

*In re Olinda Star Ltd.*, 614 B.R. 28, 46 (Bankr. S.D.N.Y. 2020) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009) (citing *In re Artimm, S.r.L.*, 335 B.R. 149, 160 (Bankr. C.D. Cal. 2005)). Moreover, "[a] determination of sufficient protection requires a balancing of the respective parties' interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (internal quotations and citations omitted).[31] When applying the "sufficient protection" standard set forth in section 1522 for matters of discretionary relief, the court must ensure that the relief is narrowly tailored so that it does not unduly favor the foreign representative over the other parties. *See In re Comair Ltd.*, No. 21-10298 (JLG), 2021 WL 5312988, at \*12 (Bankr. S.D.N.Y. Nov. 14, 2021); *see also In re Markus*, 610 B.R. 64, 77 (Bankr. S.D.N.Y. 2019) (explaining that Section 1522 seeks to balance relief granted to the foreign representative with the interests of the party affected by the relief).

59.      Here, the interests of creditors will be sufficiently protected. First, the specific relief requested—the termination of the Chapter 15 Cases—does not have an impact on creditor distributions. Second, as explained above, the Foreign Representative is requesting a dismissal so that the Oi Group has the option to pursue a chapter 11 filing, which (if filed) would be administered before this Court and the interests of creditors would be protected as proscribed by the Bankruptcy Code. Finally, the balance of interests weighs in favor of granting the Requested Relief. Entry of the Proposed Order will provide the Oi Group with an important option to reset their remaining debts and obtain liquidity to ensure that the Company restructures its operations in a value-maximizing way that benefits all creditors.

---

[31]      When applying the "sufficient protection" standard set forth in section 1522 for matters of discretionary relief, the court must ensure that the relief is narrowly tailored so that it does not unduly favor the foreign representative over the other parties. *See In re Comair Ltd.*, No. 21-10298 (JLG), 2021 WL 5312988, at \*12 (Bankr. S.D.N.Y. Nov. 14, 2021); *see also In re Markus*, 610 B.R. 64, 77 (Bankr. S.D.N.Y. 2019) (explaining that Section 1522 seeks to balance relief granted to the foreign representative with the interests of the party affected by the relief).

## **RESERVATION OF RIGHTS**

60.     The Foreign Representative hereby reserves his right to supplement this Motion with additional or supplemental pleadings prior to the hearing on the Motion.

## **NOTICE**

61.     Notice of this Motion has been provided to the parties listed in **Exhibit B** attached hereto.  The Foreign Representative respectfully submits that no other or further notice is required.

## **NO PRIOR REQUEST**

62.     No previous request for the relief requested herein with respect to the Brazilian RJ Plan and Brazilian Confirmation Order has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that the Court: (a) enter the Proposed Order, substantially in the form attached as **Exhibit A**; and (b) grant such other and further relief as may be just and proper.

Dated:  July 7, 2025
        New York, New York

Respectfully submitted,

By:    */s/ Philip M. Abelson*
       Philip M. Abelson

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
David Kim
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,
as Petitioner and Foreign Representative*