**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Oi S.A. *et al.*,[1]<br><br>        Debtors in a Foreign Proceeding. | ) <br> ) <br> ) Case No. 23-10193 (JPM) <br> ) <br> ) Chapter 15 <br> ) (Jointly Administered) <br> ) |

## DECLARATION OF PAULO CALIL FRANCO PADIS

I, Paulo Calil Franco Padis, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct to the best of my knowledge, information and belief:

1. I am an attorney duly admitted to practice in Brazil. I am a Brazilian citizen and partner in the law firm of Padis Mattar Advogados ("**Padis**"), in the city of São Paulo, Brazil.

2. Padis is serving as Brazilian counsel to Rodrigo Caldas de Toledo Aguiar (the "**Petitioner**" or "**Foreign Representative**"),[2] the duly-authorized foreign representative with respect to the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**")[3] of Oi S.A. – Em Recuperação Judicial ("**Oi**"), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial ("**Coop**"), and Portugal Telecom International Finance B.V. – Em Recuperação Judicial ("**PTIF**") (collectively, the "**Chapter 15 Debtors**" or "**RJ Debtors**" and, together with their non-debtor affiliates, the "**Oi Group**" or the **"Company**"), commenced on March 1, 2023, under Federal Law No. 11.101 of February 9, 2005

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

[2] Unless otherwise indicated herein, capitalized terms shall have the meaning ascribed to them in the Motion (as defined below).

[3] The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0090940-03.2023.8.19.0001 (formerly 0809863-36.2023.8.19.0001).

1

(the "**Brazilian Bankruptcy Law**") of the laws of the Federative Republic of Brazil before the 7th Business Court of the City and State of Rio de Janeiro, Brazil (the "**Brazilian RJ Court**"). Padis also serves as legal counsel to the Brazilian RJ Debtors in the Brazilian RJ Proceeding.

3. I am over the age of 18 and, except as otherwise indicated, all facts set forth in this declaration (this "**Declaration**") are based upon my personal knowledge, my opinion based upon my experience and knowledge of the Debtors and my review of relevant documents or information supplied to me. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. I submit this declaration in support of the *Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* (the "**Motion**") filed contemporaneously herewith, which seeks entry of an order: (i) terminating the Recognition Order; (ii) dismissing the Chapter 15 Cases; and (iii) granting related relief as may be just and proper.

5. This Declaration comprises matters that reflect my view of Brazilian law or statements of fact. Where the matters stated in this Declaration are statements regarding Brazilian law, such statements represent my expert view of Brazilian law as an attorney admitted and authorized to practice in Brazil. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this Declaration that are statements of fact are not within my personal knowledge, they are derived, as appropriate, from other sources and are true to the best of my knowledge, information and belief.

**Personal Background and Qualifications**

6. I am an attorney duly admitted to practice law in the Federative Republic of Brazil. I am a member in good standing of the Brazilian Bar Association, São Paulo section, enrolled under registration number 176.476.

2

7. I earned a law degree from the University of São Paulo (USP) in 1999 and completed an LL.M. at the London School of Economics and Political Science (LSE) in 2003.

8. My legal practice focuses on complex cross-border restructurings, insolvency proceedings, distressed M&A transactions, and non-banking structured financing (mostly credit/hedge funds). I regularly advise stakeholders in Brazilian companies on high-value and high-profile litigation, liquidation and restructuring issues. Examples of such proceedings, among many others, are: (i) advising the ad hoc group of bondholders in the complex restructuring of Samarco Mineração's debt, involving liabilities exceeding US$10 billion; (ii) representing Mubadala in the restructuring of its investment in the EBX Group, including the joint acquisition of Porto Sudeste do Brasil S.A., in a transaction valued at approximately US$1 billion; and (iii) advising an ad-hoc group of bondholders in the restructuring of notes totaling US$280 million issued by USJ Açúcar e Álcool (Usina São João).

9. I have been recognized as a leader in the insolvency and restructuring field by Chambers, IFRL, Who's Who Legal, Legal 500 and other relevant legal directories.

10. I submit this Declaration to assist this Court in its consideration of the Motion, focusing on relevant factual background and features of restructuring and liquidation proceedings under Federal Law No. 11.101 of February 9, 2005 of the laws of the Federative Republic of Brazil (the "**Brazilian Bankruptcy Law**").

11. Although Portuguese is my native language, I am fluent in English and have elected to execute and submit this Declaration in English.

## Brazilian Bankruptcy Law

12. Under the Brazilian Bankruptcy Law, a debtor that has obtained court confirmation of a judicial reorganization plan (*plano de recuperação judicial*) is precluded from filing a new

3

judicial reorganization (*recuperação judicial*, or "**RJ**") for a period of five years from the date of its confirmation. In this case, the Brazilian RJ Plan was judicially confirmed by the Brazilian Court on May 28, 2024. Accordingly, the RJ Debtors are statutorily barred from filing a new RJ proceeding in Brazil until May 28, 2029.[4]

13. Pursuant to the Brazilian Bankruptcy Law, the Brazilian Court may, at the request of any creditor or the public prosecutor's office, convert a pending judicial reorganization proceeding (*recuperação judicial*) into a judicial liquidation proceeding (*falência*) in the event of a material default by the debtor under the confirmed judicial reorganization plan. Importantly, this conversion can occur irrespective of the debtor's intent, good faith, or efforts to cure the breach. The failure to comply with any material obligation under the plan constitutes legal grounds for liquidation.

14. In my opinion, a conversion to *falência* would be severely detrimental to the interests of all stakeholders, including creditors, employees, shareholders, and other constituents of the RJ Debtors. Brazilian *falência* proceedings require the cessation of substantially all business activities and the commencement of an asset liquidation process administered by a court-appointed trustee (*administrador judicial*), under close judicial supervision, as the debtor is no longer in possession. This often results in the dismantling of the business, with assets sold piecemeal at depressed values and with limited regard for enterprise value or creditor maximization.

15. The *falência* process is procedurally protracted and historically inefficient. It is widely recognized in Brazil as a value-destructive process, marked by extensive legal formalities, contested creditor claims, administrative delays, and judicial bottlenecks. As the process unfolds

---

[4] In addition, the Brazilian RJ Proceeding must remain open until May 29, 2026 (*i.e.*, two years following confirmation of the Brazilian RJ Plan).

4

over several years, asset values deteriorate due to obsolescence, ongoing operational costs, and market erosion.

16. Asset values realized in *falência* proceedings tend to be materially lower than those realized through restructuring, going-concern sales, or managed wind-downs. In addition, Oi's systemic importance—as one of Brazil's largest telecommunications providers, major employers, and taxpayers—would significantly complicate and prolong a liquidation. The potential regulatory, labor, and political repercussions of such a collapse could increase legal uncertainty, administrative costs, and stakeholder resistance, further depressing recoveries and delaying resolution.

17. In addition, *falência* is not a debtor-in-possession procedure. Instead, a court-appointed liquidator assumes control, regardless of whether they have experience relevant to the debtors' business. The liquidator's lack of familiarity with the RJ Debtors could hinder coordinating and reaching settlements with the most relevant stakeholders in a timely manner, potentially impacting creditors' recoveries.

18. Practitioner experience confirms that creditor recoveries in Brazilian *falência* proceedings are consistently low. In most cases, recoveries fall into the single-digit percentage range—particularly in cases involving large, operationally complex enterprises such as Oi.

19. In a *falência*, unsecured creditors would likely receive no distributions, which demonstrates the value-destructive nature of the process and the urgency of avoiding such an outcome.

**Remaining Obligations Under the Brazilian RJ Plan**

20. The RJ Debtors lack the liquidity necessary to sell its remaining non-core assets. Without the proceeds of such sales, the RJ Debtors will not be able to fulfill their remaining

obligations under the Brazilian RJ Plan, in which case the Brazilian RJ Court could convert the Brazilian RJ Proceedings to a *falência*.

21. The liquidity constraints facing the RJ Debtors are further exacerbated by the existence of certain liabilities that are excluded from the scope of the Brazilian RJ Proceeding under the Brazilian Bankruptcy Law ("**Exempt Claims**"). In particular, holders of claims secured by fiduciary liens (*alienações fiduciárias*) retain the right to enforce their claims outside the RJ framework, notwithstanding the pendency of the proceeding. A fiduciary lien is a form of security interest under which the lender is determined to be the legal title owner of the asset collateral securing its claim until the debt or obligation has been satisfied by the borrower.

22. Under the Brazilian Bankruptcy Law, Exempt Claims, which represent approximately R$17.2 billion in indebtedness, and obligations incurred by the RJ Debtors after the commencement of the RJ, cannot be modified, deferred, or discharged through the Brazilian RJ Plan, nor can they be incorporated into any subsequent amendment to the plan.

23. The continued accrual and enforceability of these Exempt Claims place substantial and ongoing strain on Oi's liquidity position and threaten to undermine the stability and viability of the broader restructuring effort. Unlike claims subject to the Brazilian RJ Plan, these liabilities cannot be stayed or compromised and must be satisfied in full in the ordinary course.

24. Further, in accordance with the Brazilian Bankruptcy Law, executory contracts and leases for property and services that the Company no longer uses, such as towers, must continue to be complied with and all claims thereof paid in full. These leases constitute monthly expenditure of R$50 million, for an aggregate three-year cost of R$1.3 billion. Although the Oi Group no longer utilizes the underlying infrastructure, it remains contractually obligated to honor the take-or-pay provisions, which cannot be rejected under the Brazilian Bankruptcy Law.

25. Considering the above, an amendment to the Brazilian RJ Plan would not, by itself, resolve the RJ Debtors' liquidity crisis because an amendment cannot restructure the Exempt Claims, nor solve for the underlying operational challenges that the RJ Debtors are facing. Notwithstanding, on July 1, 2025, the RJ Debtors filed a motion with the Brazilian RJ Court seeking to amend the Brazilian RJ Plan. The amendment aims to realign the short-time payment terms for local labor creditors and small suppliers with updated cash flow projections, and to impose an additional stay of at least 180 days with respect to such creditors. A copy of the motion and an English translation thereof is attached to this Declaration as **Exhibit A**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that, based on my knowledge, information and belief, the foregoing is true and correct.

Dated: July 7, 2025
      São Paulo, Brazil

                                            Paulo Calil Franco Padis
                                            Padis Mattar Advogados
                                            12th Floor, Av. Brigadeiro Faria Lima, 1663
                                            Jardim Paulistano
                                            São Paulo, Brazil