UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>Oi S.A. *et al.*,[1]<br><br>    Debtors in a Foreign Proceeding. | ) <br> ) <br> ) Case No. 23-10193 (JPM) <br> ) <br> ) Chapter 15 <br> ) (Jointly Administered) <br> ) |

### DECLARATION OF MARCELO JOSÉ MILLIET

I, Marcelo José Milliet, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct to the best of my knowledge, information and belief:

1. I am over the age of 18 and, except as otherwise indicated, all facts set forth in this declaration (this "**Declaration**") are based upon my personal knowledge, my opinion based upon my experience and knowledge of the Debtors and my review of relevant documents or information supplied to me. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. I submit this Declaration in support of the *Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* (the "**Motion**") filed contemporaneously herewith, which seeks entry of an order: (i) terminating the Recognition Order; (ii) dismissing the Chapter 15 Cases; and (iii) granting related relief as may be just and proper.[2]

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

[2] Except as otherwise indicated, capitalized terms used herein carry the meaning ascribed to them in the Motion.

3. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this Declaration that are statements of fact are not within my personal knowledge, they are derived, as appropriate, from other sources and are true to the best of my knowledge, information and belief.

## BACKGROUND AND QUALIFICATIONS

4. I hold a bachelor's degree in business administration from Fundação Getúlio Vargas – São Paulo (FGV-SP), with an extension course for executives in M&A from the same institution.

5. I am a partner and director at several firms, including Íntegra Associados, M. Milliet Consultoria e Participações Ltda., and Intermixture Business Consulting, and I serve as Director for multiple companies such as CDPC and Paranapanema Netherlands B.V. Previously, I held executive roles (Chief Executive Officer and Investor Relations) at Paranapanema S.A. and at Renova Energia, and I have served as Interim Manager in the judicial reorganization processes of Companhia Albertina Industrial e Mercantil. Additionally, I have extensive board experience, having been the Chairman of the Board of Directors at Brasil PCH S.A., the General Manager of HBO Brasil and member of the Executive Committee of HBO Latin America, and a member of various advisory boards.

6. I currently serve as the Company's Chief Executive and Investor Relations Officer.

7. To assist this Court in its consideration of the Motion, I submit this Declaration describing the implementation of the Brazilian RJ Plan and the Company's consideration of a chapter 11 proceeding in the United States.

## IMPLEMENTATION OF THE BRAZILIAN RJ PLAN

8. Since the entry of the Brazilian Confirmation Order, the Company has diligently implemented the terms of the Brazilian RJ Plan.

9. On August 8, 2024, the Company announced the completion of the restructuring, through which (i) creditors selecting Option I were issued approximately US$601 million of New Priority Secured Notes, (ii) BGC Fibra Participações, an affiliate of V.Tal – Rede Neutra de Telecomunicações S.A. ("**V.Tal**") (which, as of the date hereof, is 27.5% owned by Oi and its affiliates), subscribed to financing for third parties amounting to approximately R$902.6 million (approximately US$162.51 million), and (iii) Class 3 claims subscribed to the "roll-up" notes totaled approximately US$1.33 billion.

10. On June 7, 2024, in accordance with the Brazilian RJ Plan, three members of the Company's board of directors resigned from their positions. In their place, Mr. Francisco Roman Lamas Mendez-Villamil, Mr. Paul Aronzon, and Mr. Renato Carvalho Franco were appointed to serve as alternate directors until the issuance of shares to the Option I creditors and the convening of an extraordinary general shareholders' meeting for the formal election of a new board of directors.

11. On December 11, 2024, following the issuance of shares to the Option I creditors, the Company held an extraordinary general meeting to elect seven new members of the Company's board: (1) Mr. Francisco Roman Lamas Mendez-Villamil; (2) myself; (3) Mr. Paul Aronzon; (4) Mr. Paul Murray Keglevic; (5) Mr. Raphael Manhães Martins;[3] (6) Mr. Renato Carvalho Franco; and (7) Mr. Scott David Vogel.

---

[3] Mr. Raphael Manhães Martins was a former board member, reelected by the preferred shareholders.

12. Since the appointment of the new independent board members, Oi's board of directors have overseen a number of significant milestones related to the RJ Debtors' restructuring, including the sale of relevant assets and so-called "Isolated Production Units" ("**UPIs**").[4] The Brazilian RJ Plan allowed for the sale of assets free and clear, either directly or in the format of UPIs. For example, UPI V.Tal, which consists of the RJ Debtors' equity stake in V.Tal, is projected to be sold in 2026 (if not earlier), and UPI Subscription TV, which encompassed the RJ Debtors' television business, was sold on February 28, 2025.

13. One of the most valuable UPI sales for the RJ Debtors' restructuring was UPI ClientCo, which is related to the Company's fiber optic client base and related systems.

14. The initial sale process for UPI ClientCo launched in June 2024 garnered only one bid from Ligga Telecomunicações S.A. ("**Ligga**"), which bid did not meet the minimum price in cash required in the Brazilian RJ Plan and was subsequently rejected.

15. A second round of bidding was launched for the sale of UPI ClientCo and, on September 25, 2024, the RJ Debtors announced that they received one bid from V.Tal valued at R$5.68 billion. The price paid by V.Tal included, subject to certain adjustments provided in the relevant sale and purchase agreement, the transfer of (i) R$334 million debentures (inclusive of accrued interest, fees and premiums) issued to V.Tal as a loan during the Brazilian RJ Proceeding, (ii) R$381.7 million in credits (inclusive of accrued adjustment, interest and fees) that V.Tal held against Oi related to costs for connecting homes under a June 2022 fiber-to-home infrastructure agreement, and (iii) R$4.99 billion issued in new common shares of V.Tal, which would be paid

---

[4] A UPI is a legal concept within the Brazilian Bankruptcy Law that facilitates the free-and-clear sale of assets during judicial reorganizations, ensuring their value is maximized by protecting the acquiror from past liabilities associated with the assets when the sale takes place in a competitive process. In reviewing its business strategy, Oi created certain UPIs formed by the assets of the businesses that would no longer be part of Oi's core business to be marketed and sold.

4

for through the contribution of shares from UPI ClientCo. The bid from V.Tal did not include a cash component.

16. Although the bid was valued lower than the minimum price and did not include a cash component, the Brazilian RJ Plan permitted the Option I creditors and certain suppliers to vote on acceptance of non-cash bids during the second round of the competitive sale process. These creditors approved the V.Tal bid, which was subsequently declared the winning bid by the Brazilian RJ Court. During November and December, 2024, the Brazilian RJ Court, Brazil's antitrust regulator (Conselho Administrativo de Defesa Econômica or "**CADE**"), and Brazil's telecom regulator (Agência Nacional de Telecomunicações or "**ANATEL**") approved the transaction without restriction.

17. In addition to reducing Oi's debt, the sale of UPI ClientCo to V.Tal, which closed on February 28, 2025, resulted in Oi increasing its equity stake in V.Tal to 27.5%. Prior to the sale of UPI ClientCo, Oi's equity stake in V.Tal was 17%.

18. Pursuant to the Brazilian RJ Plan, creditors also agreed to convert a significant portion of the Company's debt into equity.

19. While the measures described above lessened the Company's cash burn and allowed for a considerable reduction in the RJ Debtors' indebtedness, these restructuring measures have proven to be insufficient to resolve the Oi Group's financial crisis. For instance, the net sales of UPIs (including UPI ClientCo) and assets (including real estate assets) generated significantly less in proceeds than originally anticipated and failed to generate sufficient cash to service all of the RJ Debtors' debts. In addition, the RJ Debtors had anticipated a cash inflow of approximately R$1.5 billion from the sale of the UPI ClientCo. However, for the reasons outlined above, the transaction was ultimately structured as a debt reduction combined with an increase in Oi's equity

stake in V.Tal, resulting in no cash proceeds. Moreover, the value of the majority of the Company's assets have declined significantly since the proposal of the Brazilian RJ Plan. Further exacerbating the situation, delays in closing the transaction led to an estimated additional cash burn of approximately R$500 million. In total, these developments adversely impacted the Company's liquidity by roughly R$2 billion—a significant and material deviation from the original assumptions under the Brazilian RJ Plan. Oi continues to experience financial distress due in part to an overleveraged capital structure. As of March 31, 2025, the Company reported in its balance sheet total assets of approximately R$19.6 billion and total liabilities of R$26.7 billion (present value adjusted).

20. Additionally, operational roadblocks are impacting revenue and compounding liquidity issues. Due to its obligations under legacy concession agreements and delays by ANATEL in approving the migration of the Company from a public to a private regime,[5] the Company was compelled to maintain fixed-line and copper infrastructure for a longer period than anticipated, which is expensive and unprofitable due to customers transitioning to fiber-optic services. The migration to the private regime was completed only in December 2024, despite the initial expectation that it be finalized by June 2024. These structural weaknesses and systemic inefficiencies have significantly hindered the business.

21. The Company also was negatively affected by the underperforming Brazilian economy and currency devaluation of the Brazilian Real. In 2024, Brazil's aggressively restrictive monetary policy with soaring interest rates, as well as generalized concerns about the country's rising debt levels caused economic activity to grow significantly less than previously forecasted.

---

[5] The recent introduction of the private regime for telecom operators under Brazilian law (Law 13.879/2019 and ANATEL Resolution 741/2021) provided financial relief to Oi, as it was no longer required to fulfill burdensome obligations previously imposed by the Government. This shift allowed the Company to divest unused assets and redirect its focus toward more profitable activities.

6

The Brazilian Real also experienced depreciation of approximately 20% of its value in the end of 2024 compared to the same period in the year before. The loss in value of the Brazilian currency weighed heavily on the Company's financial status, as a considerable part of its indebtedness is denominated in U.S. dollars.

22. The RJ Debtors incurred postpetition obligations of approximately R$1.51 billion and have existing equity claims that cannot be discharged, unlike under a chapter 11 plan. Further, the Company is experiencing an urgent, significant liquidity crisis on account of liabilities that are not subject to the Brazilian RJ Proceeding. The Company now lacks the liquidity to meet its short-term obligations. Although the Company still has revenue streams and valuable assets, including its minority stake in V.Tal and various real estate properties, it currently does not have sufficient funds to continue operating.

## CHAPTER 11 CONSIDERATION

23. The Company has reviewed its restructuring options extensively with its financial and legal advisors and is currently considering the possibility of a more fulsome restructuring of the Company's obligations under chapter 11, which with sufficient creditor support and financing, will lead to the most positive outcome for all creditors, continuity of the RJ Debtors, provide a framework to stabilize cash flows, and give the company more time to run marketing processes for certain assets related to discontinued services by the Company. This will provide an opportunity for the Company to continue operating and growing its remaining business, which include (i) providing digital services to corporations and governmental entities in Brazil (such as cloud computing, internet security, big data processing, and others) through its subsidiary Oi Soluções S.A. ("**Oi Soluções**"), which already has over 43,000 clients (60% of which are governmental entities such as municipalities, agencies and other institutions), as well as (ii)

business process outsourcing services, or BPO, for financial, operational and IT support through subsidiary Oi Services – ClientCo Serviços de Rede Norte S.A. ("**Oi Services**"), (iii) network maintenance services through subsidiary Serede – Serede Serviços de Rede S.A. ("**Serede**"), and (iv) customer experience and BPO services for call centers through subsidiary Tahto – Brasil Telecom Call Center S.A. ("**Tahto**").  Together with its other subsidiaries, the Oi Group has approximately 14,000 employees and generates over R$3.3 billion in revenue per year.

24. The Oi Group has discussed this possibility of filing chapter 11 cases in the United States with certain Brazilian authorities, including the Brazilian RJ Court,[6] who are supportive of the effort to utilize cross-border restructuring solutions to increase creditor recoveries, as well as with certain of its large creditor counterparties.

25. If the Company elects to pursue a future chapter 11, the Company intends to reflect the same terms on the Brazilian RJ Plan to be consistent with any future chapter 11 plan,[7] to ensure that there are no discrepancies and to restructure liabilities that will not be bound by the U.S. jurisdiction.

---

[6] On June 11, 2025, the Company's representatives and counsel discussed this possibility with the Brazilian RJ Court and the reporting Justice from the Court of Appeals, and the judges expressed support for the strategy

[7] RJ plans and plan amendments proposed in Brazilian RJ proceedings can and are routinely modified prior to soliciting votes from impacted creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that, based on my knowledge, information and belief, the foregoing is true and correct.

Dated: July 7, 2025
São Paulo, Brazil

_____
Marcelo José Milliet