# EXHIBIT A

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25   2025 Decision of Judge Monica Cost    Pg 2 of 19

*Translated from Portuguese*

**FIRST CHAMBER OF PRIVATE LAW OF THE SUPREME COURT OF THE STATE OF RIO DE JANEIRO (TJRJ)**

**Interlocutory Appeal No. 0059754-91.2025.8.19.0000**

**Appellant: V.TAL - Rede Neutra de Telecomunicações S.A.**

**Appellee: OI S.A. - in court-supervised reorganization, et al.**

**Reporting judge: Justice Mônica Maria Costa**

### DECISION

1. This is an interlocutory appeal against the decisions on pages 114.138-114.142 and 116.202-116.209 (section IV - 114.138), both issued by the 7th Business Court of the Judicial District of Rio de Janeiro, State of Rio de Janeiro (RJ), which -- after evaluating the claim made by OI Group on pp. 113.147-113.190, consisting of the publication of a notice calling on creditors to submit an amendment to the plan for court-supervised reorganization ("reorganization plan") approved in March 2024 and the granting of temporary injunction ordering the suspension of the enforceability of outstanding obligations set forth in the reorganization plan for 180 days, without this leading to a situation of bankruptcy or any restrictions on assets in the meantime -- issued the following decision:

"(...) In view of the context thus defined, I consider it essential that the Prosecution and Defense Service (MP), the joint Bankruptcy Trustees, and the Watchdog (already appointed) first give their opinion -- even if only briefly -- on the submitted amendment to the reorganization plan and the accompanying documents, within a common period of five (5) calendar days, regarding its legality and whether or not the submitted AMENDMENT is sufficiently viable from an economical and financial standpoint. Including in light of the reports drafted by the reorganization debtor and attached starting with ID 113.679, in possible comparison with the Bankruptcy Trustee Reports (Bankruptcy Trustee Reports) presented by the Bankruptcy Trustees.

Please also include a statement addressing the following:

(1) With regard to the Joint Bankruptcy Trustees:

a) clarify, clearly and objectively, whether the subparagraphs of article 22, part II, of the Reorganization and Bankruptcy Act ("LRF") have been complied with and observed;

b) state whether or not the approved plan for court-supervised reorganization has been effectively complied with through the date of the petition for AMENDMENT (July 1, 2025) and whether or not it is feasible to continue compliance for the three months after the indicated date;

1

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost    Pg 3 of 19

*Translated from Portuguese*

c) itemize the values of the assets and liabilities of the reorganized company at the beginning of the 2nd court-supervised reorganization (here considered to be the case assignment of the preparatory precautionary order) and on July 1, 2025 (date of filing of the AMENDMENT, in a preliminary analysis). The quantification must be based both on the amount computed both with the deductions in connection with the plan for court-supervised reorganization and without such deductions (i.e., the amount resulting from the resumed enforceability of the original debts);

d) provide a breakdown of the cash flow on the date of the filing of the 2nd court-supervised reorganization (here considered to be the case assignment of the preparatory precautionary measure) and on July 1, 2025 (date of the filing of the AMENDMENT, in a preliminary analysis);

e) itemize the number of direct and indirect employees of the reorganization debtor on the date of the application for the 2nd court-supervised reorganization (here considered to be the case assignment of the preliminary injunction) and on July 1. 2025 (date of filing of the AMENDMENT, in a preliminary analysis).

f) itemize the amounts paid to CLASS I labor creditors and to secured and unsecured partner creditors in the past three months and the amounts to be paid in the next three (here considered to be whole months, i.e., we are in the month of June 2025 and the three preceding months are: May, April and March 2025; this is how the projection will be made for future months).

(2) As for the watchdog, I order it to prioritize, at this time, the statement regarding the request for an amendment to the plan filed in this main proceeding, focusing on the results of the reorganized company for the past six months and on the projections for the next three months, in light of what is contained in the case record as well as any and all documents and information that it deems necessary to access. The watchdog is expressly authorized to request them directly from the Reorganization Debtor, which must deliver them. The watchdog is also vested with all the powers listed in sections 7.2.2 and 7.2.3 of the ratified plan for court-supervised reorganization. If the information and documents are protected by confidentiality or under seal (sections 7.2.4.1 and 7.2.4.1.1 of the ratified plan), the watchdog must submit them to the court after requesting that they be attached in a confidential incidental proceeding.

Since the watchdog is vested in such powers, it must request from the Reorganization Debtor information on any substantial changes in remuneration (including bonuses) made in the past six months (with upward or downward fluctuations) in favor of its managers, Executive Committee, Board of Directors, and senior management bodies ("New Management"), including sums directed to legal entities that may be part of it, and indicate whether such changes were reported to the Bankruptcy Trustees in the period. These findings should be included in the statement.

2

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25   2025 Decision of Judge Monica Cost…    Pg 4 of 19

*Translated from Portuguese*

Please note that the following persons are invited to comment within a common period of five calendar days: Bankruptcy Trustees, Watchdog and the Public Prosecutor's Office ("MP") (the latter must cooperate in issuing its opinion within the common deadline, both due to the delimitation of the object of evaluation established above and because this is an electronic proceeding that makes this possible, especially due to the alleged urgency.

Notify all persons urgently, including by telephone and email.

Also issue unequivocal notice of the AMENDMENT TO THE PLAN FOR COURT-SUPERVISED REORGANIZATION submitted by OI Group in reorganization and of the filing of the petition for court-supervised reorganization of two subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO).

Therefore, I allow the reorganized company, within the same period, to express its opinion on any exercise of the option set out in section 4.2.12, d, of the plan for court-supervised reorganization.

Finally, this court is aware of ID 114.123 (letter from the 1st Chamber of Private Law, regarding actions taken with regard to the reorganization debtor's lawyers). In this regard, the court has issued its own decision, in part VI of ID 113141. In turn, the court registrar's office certified that the procedural representation in the case underway in this first instance was proper (ID 114136).

I return the complete case record for IMMEDIATE compliance with all that is contained herein. (pp.114.138-114.142)"

"In light of the foregoing:

1. I order the Recovering Company to address the conclusion of the Bankruptcy Trustee Report ("RMA") of July 2025 that points to substantial nonperformance of the obligations in the approved reorganization plan and justifies and provides evidence of any allegations made;

2. Subsequently, the Reorganization Debtor must state whether it will exercise the option set forth in section "4.2.12, "d", of the reorganization plan;

3. Then, the Bankruptcy Trustees (including regarding the duty provided in part II, subparagraph "b" of the Reorganization and Bankruptcy Act - LRE);

4. Then, the Prosecution and Defense Service (MP) regarding all that was added;

5. Notify the watchdog to IMMEDIATELY begin the task entrusted to and accepted by the watchdog, and provide an estimation of fees for this purpose, in view of the extension established herein;

6. I suspend the payment of bonuses to the Reorganization Debtor's senior management, keeping, for the time being, their remuneration set at the meeting held on April 29, 2025;

3

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost...    Pg 5 of 19

*Translated from Portuguese*

7. I order any sale or encumbrance of assets to be preceded by judicial authorization, under penalty of ineffectiveness of any act that fails to comply with such authorization;

8. I order the Bankruptcy Trustees to send notice, duly translated into English, to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages 115.744 et seq.), informing it that "the 7th Business Court of Rio de Janeiro, RJ, is processing the court-supervised reorganization of the Oi Group, in which the Reorganization Debtor has failed to fulfill obligations assumed in June 2025, without any justification provided to date. (116.202-116.209, part IV)"

The Appellant (V.TAL - Rede Neutra de Telecomunicações S.A.) defends the need for the appealed decision to be partially reversed based on the following arguments:

(a) avoidance of Brazilian jurisdiction and abusive engagement in foreign procedure, since the Oi Group's intention to have the procedure set forth in Chapter 11 of the U.S. Bankruptcy Code for restructuring obligations that cannot be restructured in Brazil assigned to the New York Court causes clear avoidance of the rights of the creditors and suppliers as well as avoidance of the jurisdiction of the Brazilian authority responsible for conducting the Court-Supervised Reorganization underway. It believes that, if the illegalities that hinder the Chapter 11 request itself are found to have been corrected, the matter should be submitted in advance not only to Oi's shareholders (art. 122, IX, of Law 6,404/76), but also to the creditors of the Court-Supervised Reorganization (art. 35, I, "f", of the LRF).

(b) violation of Brazilian legislation, since the reasons that would justify a restructuring request under Chapter 11, consisting of the need for novation of claims that, under Brazilian law, are post-petition claims excluded from the court-supervised reorganization proceeding in progress, represent a veritable affront to Brazilian jurisdiction, especially since the Oi Group cannot file a lawsuit of the same nature with the New York Court.

(c) the existence of a relevant precedent, considering that the Oi Group vehemently defended Brazilian jurisdiction and the exclusive jurisdiction of this Court to process the Court-Supervised Reorganization, thus ruling out any allegation of concurrent jurisdiction and, consequently, waiver of the right to file for Chapter 11 before the New York courts.

(d) the law was ignored, since the Reorganization and Bankruptcy Act, with the innovations brought in by Law No. 14,112/20, does not allow the coexistence of two main proceedings, and it is certain that the main reorganization proceeding must take place in the country where the debtor's core interests lie, which in this case is Brazil;

(e) violation of the rule of law, given that the conduct of the reorganization debtors violates articles 49 and 48, II, both of the Reorganization and Bankruptcy Act. It emphasizes that the purpose of article 49 of the Reorganization and Bankruptcy Act is to ensure that the company's business activities can continue even after the debtor's court-supervised reorganization has begun, and it is certain that the preservation of business activity is only possible if those who contract with the company in crisis have the assurance that their

4

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost    Pg 6 of 19

*Translated from Portuguese*

claims will not be subject to composition with creditors and paid before all others. It also adds that the Recovering Debtors' request is in direct violation of article 48, II, of the Reorganization and Bankruptcy Act, whose interruption is a rational and well-founded legislative decision aimed at preventing unviable companies from eternally using the reorganization procedures, which are intended for viable companies. Finally, it points out that any request for reorganization under Chapter 11 in the United States will not be in line with the approved Plan, in which the creditors authorized Oi only to "implement the provisions of this Plan" (section 10.15.2, p. 56.917).

It requests that the effects of the appeal be granted in advance, in order to: (i) order that, until there is an express statement by the lower court, the Oi Group refrain from filing the main petition for court-supervised reorganization in any foreign jurisdiction and from incurring costs to file the lawsuit (including, but not limited to, hiring legal and financial advisors), or, if it has already filed it when the measure is granted, to discontinue it, under penalty of a daily fine in the amount to be determined by this Court; (ii) order that the Trustee of the Court-Supervised Reorganization be summoned to inform the Bankruptcy Court for the Southern District of New York that (a) there is no official pronouncement by this TJRJ, either in the first or second instance, in favor of the filing of a Chapter 11proceeding before that NY Court; (b) the approved Plan has not been fully implemented; and (c) there has been no significant change in the Oi Group's core interests since the filing of the Court-Supervised Reorganization; and (iii) the court a quo be notified to refrain from considering the requests made by the reorganization debtors on pages 113.147-113.191 of the original case record before hearing the Brazilian General Accounting Office (TCU) and the Brazilian Securities Commission (CVM).

On the merits, it asks for the appeal to be granted: a) to order the Oi Group that, until a statement is issued on the matter by the decision by the court a quo, the Oi Group refrain from filing the main petition for court-supervised reorganization in any foreign jurisdiction and from incurring costs to file the lawsuit (including, but not limited to, hiring legal and financial advisors), or, if it has already filed it when the measure is granted, to discontinue it, under penalty of a daily fine in the amount to be determined by this Court; (ii) to order that the Bankruptcy Trustee be notified to inform the Bankruptcy Court for the Southern District of New York that (a) there is no official pronouncement by this TJRJ, either in the first or second instance, in favor of the filing of a Chapter 11 proceeding before that NY Court; (b) the approved Plan has not been fully implemented; and (c) there has been no significant change in the Oi Group's core interests since the filing of the Court-Supervised Reorganization; and c) [sic] the Secretariat for External Control of Consensual Resolution and Dispute Prevention (SecexConsenso) of the Brazilian General Accounting Office (TCU) and the Brazilian Securities Commission (CVM) be summoned so that, if they so wish, they can comment on the requests made by the reorganization debtors on pages 113,147-113,191 of the original case record.

23-10193-jpm Doc 56-1 Filed 07/27/25 Entered 07/27/25 20:27:57 Exhibit A - Certified Translation of July 25 2025 Decision of Judge Monica Cost... Pg 7 of 19

*Translated from Portuguese*

This is the statement of facts. Here is my decision.

2. According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an interlocutory appeal is permitted against all interlocutory decisions handed down in court-supervised reorganization proceedings and bankruptcy proceedings, by virtue of art. 1,015, sole paragraph, of the Code of Civil Procedure (CPC)".

Although the court of first instance referred to the judicial pronouncements under appeal as an "order", it is undeniable that they have the effect of a judgment, with repercussions on the legal sphere of the parties, in accordance with the provisions of article 203, paragraph 2, of the Code of Civil Procedure.

Thus, the intrinsic requirement for admissibility of appeals (suitability) has been met.

Having addressed the admissibility of the form of procedure, I will now analyze the appellant's request for a preliminary injunction.

Pursuant to art. 1019, I, of the CPC, when the interlocutory appeal is received by the court and assigned immediately, if art. 932, parts III and IV, do not apply, the reporting judge may, within 5 (five) days, grant suspensive effect to the appeal or grant early relief, wholly or in part, in connection with the request made in the appeal and notify the judge of its decision.

The granting of suspensive effect or injunctive relief to temporarily vacate the judgment a quo is subject to the fulfillment of two requirements, namely a prima facie right in connection with the allegations and a threat of irreparable or difficult-to-repair harm(article 995, sole paragraph, of the Code of Civil Procedure).

Here is the legal theory regarding the matter[1]:

"The conditions for granting suspensive effect in appeals are, in our opinion, typically precautionary: the risk of serious harm that is impossible or difficult to repair and the likelihood of the appeal being approved. Namely, imminent irreparable harm and a prima facie right.

Such harm, whose likelihood must be demonstrated in order to obtain the suspensive effect of the appeal, is not necessarily identified with impairment of the substantive right claimed in the appeal. The party need only demonstrate that the harm will be aggravated if the measure is not granted.

The law does not mention the possibility of the opposite happening: the appeal has suspensive effect by express provision and the appellant needs the effectiveness of the decision. Having demonstrated the likelihood of the appeal being approved and of the occurrence of harm, we believe that the appellant is entitled to the measure corresponding to

---

[1] Comentário ao novo Código de Processo Civil / coordinators Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, p. 1473.

6

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25   2025 Decision of Judge Monica Cost    Pg 8 of 19

*Translated from Portuguese*

the temporary granting of the relief sought in the appeal. This injunctive relief to temporarily vacate the judgment a quo or advance injunctive relief is not expressly provided for, but is allowed in the system in relation to all appeals with suspensive effect, for identical reasons. It can be granted in cases where appeals do not have suspensive effect".

In summary cognizance, the appellant's allegations can be seen to be credible enough to demonstrate the likelihood of the appeal being partially upheld.

Originally, the reorganization debtors submitted an addendum to the approved reorganization plan, arguing for the publication of a notice to convene a Creditors' Meeting for a vote and requesting the granting of temporary injunctive relief to suspend, for 180 days, the enforceability of the obligations set out in the reorganization plan and to remove the consequences of the default, including judicial restrictions on its assets.

In their petition on pages 113,147-113,190, they state that after the approval, on May 28, 2024, of the reorganization plan approved by the creditors on April 19, 2024, despite the fact that they have been implementing various measures provided for therein that are necessary to restructure their liabilities, maintain their working capital and make their new strategic business plan viable, with a significant reduction in their net debt and clear development of the strategic operating activities indicated as their current "core business", they have nevertheless faced a serious cash crisis.

They claim that the assumptions that served as the basis for the economic rationale of the various payment obligations assumed in the reorganization plan were not verified after it was ratified by the Reorganization Court: (i) the sale of UPI ClientCo would result in the receipt of BRL 7.3 billion in cash in the 2024-2025 biennium; (ii) they would drastically reduce the costs of maintaining the infrastructure needed to provide Switched Fixed Telephone Service by adapting the concession to the authorization model as of June 2024; and (iii) disbursements to cover labor liabilities would remain at historical levels.

They argue that the New Management began to consider alternatives in an attempt to address the pressure for immediate liquidity and, consequently, ensure the continuity of its reorganization, in observance of the principle of the social function and preservation of enterprises, concluding that it is necessary to approve the proposed amendment to the Plan, as follows: (i) change in the conditions for payment of the Claims held by Labor Creditors (section 4.1), Partner Supplier Creditors (section 4.2.6), Take or Pay Creditors with Guarantee (section 4.2.8), Take or Pay Creditors without Guarantee - Option I (section 4.2.9), Take or Pay Creditors without Guarantee - Option II (section 4.2.10), and Participating Post-Petition Creditors (section 4.10); (ii) the use of appeal bonds to obtain immediate funds and pay creditors (section 5.4); and (iii) the possibility of hiring a specialized company to manage the Properties through a vehicle to be created for this purpose (section 5.3.5).

7

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25 2025 Decision of Judge Monica Cost    Pg 9 of 19

Translated from Portuguese

The court a quo deemed it necessary to first hear the Bankruptcy Trustees, the Watchdog (appointed to act in the case according to the decision under ID 114.162) and the Prosecution and Defense Service (MP) regarding the legality of the terms of the amendment and whether or not the company has sufficient financial viability (ID 114.138).

In a subsequent petition (id.115 .354), the Reorganization Debtors state that, in addition to the need to amend the reorganization plan in order to overcome their temporary short-term cash flow difficulties, they consider resorting to judicial measures abroad, with the aim of restructuring credits that will not be settled in the amendment, by initiating the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America ("CHAPTER 11"), before the United States Bankruptcy Court for the Southern District of New York ("AMERICAN COURT"). of the United States Bankruptcy Court for the Southern District of New York ("AMERICAN COURT"). They also state that, in order to prepare for a potential CHAPTER 11 filing, the REORGANIZATION DEBTORS filed, on the same date, a request to discontinue the CHAPTER 15 proceeding, which will be decided in due course by the AMERICAN COURT.

They justify the need for this strong measure on the grounds that a significant part of GRUPO OI's debts is currently made up of claims that were not covered by the present reorganization process and were incurred, almost in their entirety, during the mandate of the former trustee of the reorganization debtors. They point out that, in order to ensure the continuity of their operations, they are considering resorting to legal measures abroad, with the aim of dealing with these debts in an organized manner, since they cannot be included in the court-supervised reorganization process in Brazil.

With regard to the addendum and clarifications requested by the lower court, the Watchdog stated the following (id.115.773):

"CONCLUSION.

118. In view of all the above, this Assistant has concluded, within the short period of five (5) calendar days, by exclusively analyzing the figures submitted by the Reorganization Debtors, without being able to confirm them, that despite the positive results recorded in the last 6 (six) months, the ability of the Reorganization Debtors to honor short-term obligations, including those provided for in the approved restructuring plan, is compromised or unfeasible, so any improvement depends on structural measures aimed at financial rebalancing that enable economic sustainability.

119. In this regard, it is important to note that this Court employee has identified, in line with the consolidated and realized cash flow of the Reorganization Debtors, that in the last 6 (six) months, expenses have been higher than income and, as a result, the cash balance has been decreasing

continuously, from BRL 1,396,000,000.00 (one billion, three hundred ninety-six million) in January 2025 to BRL 951,000,000.00 (nine hundred fifty-one million) in June 2025.

8

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25    2025 Decision of Judge Monica Cost    Pg 10 of 19

*Translated from Portuguese*

121. This situation shows that the revenue generated from the provision of services has been insufficient to cover the costs directly related to the operation, increasing the need for other revenue to reverse this scenario.

120. Thus, given the projections presented by the Reorganization Debtors, the balance of available cash on the books, indicated above, would be consumed in the next three (3) months, as shown above, to the extent that, in this period, a negative result of BRL 917,000,000.00 (nine hundred seventeen million) would be reached, denoting the absence of short-term liquidity.

122. Finally, it should also be noted that, since February and March 2025, when the Reorganization Debtors received payment for the sale of the asset - UPI ClientCo - in shares and not in cash, as provided for in the restructuring plan, their cash flow has been impaired, which has obviously made it even more difficult for them to pay their projected short-term obligations, as highlighted above."

Regarding the request for amendment, the Bankruptcy Trustee also commented on the request for an amendment (id. 115.999), making the following points:

(i) the failure to evidence complete fulfillment of the obligations set out in the approved reorganization plan was immediately reported by the Joint Bankruptcy Trustees in the last Bankruptcy Trustee Report (p. 40 of the statement of fact in incidental proceeding No. 0132219-66.2023.8.19.0001);

(ii) according to the data collected, the Reorganization Debtor began negotiations with creditors of the Take or Pay class, with the aim of extending payments, but without recording this fact in the record, and these negotiations were suspended due to the request for a reorganization plan, which now includes the restructuring of these credits;

(iii) regarding the payment of the Supplier Creditors, the Reorganization Debtors claim that installment 10 and subsequent installments were included in the reorganization plan, which is why proof of these payments has not been provided either;

(iv) a list was presented of the obligations that have not been fulfilled, in the total amount of BRL 79,591,329.73;

(v) the analysis of cash flow projections shows a progressive and abrupt deterioration in liquidity, with negative changes in net cash in all months: starting at a positive BRL 10 million on July 1, 2025, with a reduction to -BRL 129 million as of July 31, 2025; -BRL 291 million in August, -BRL 497 million in September and -BRL 650 million in October, indicating an inability to generate sufficient resources to meet the immediate commitments (next 3 months) in the approved reorganization plan;

(vi) the Plan - especially with regard to the most relevant assets, which came to make up the Isolated Production Units (UPIs) - did not achieve the return expectations initially projected, making it clear that the assets of the Reorganization Debtors suffered a considerable

9

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25    2025 Decision of Judge Monica Cost    Pg 11 of 19

Translated from Portuguese

reduction, without this reduction being accompanied, in the same proportion, by an equivalent reduction in their liabilities; and

(vii) the sale of the assets took place in a scenario in which the funds obtained from the sales were absorbed, to a large extent, by the financial charges on the debts and the maintenance of the operations, which in turn, up to the date of the statement (July 14, 2025), have not yet reached the break-even point and continue to generate negative cash flow.

The Prosecution and Defense Service (MP) offered an opinion, based on summary cognizance, under id.116.114, highlighting, from the outset, the existence of illegalities in the addendum presented, which it believes must be corrected before any resolution is made at a General Meeting of Creditors, according to art. 35, I, "a" of Law 11,101/2005, with regard to the following clauses:

"a) section 4.1 et seq: impossibility of creating subclasses of labor creditors with claims below 150 times the monthly minimum wage;

b) sections 4.2.6, 4.2.7 and 4.2.8: a substantial change in the form of payment for supplier partners and take-or-pay creditors; and

c) section 5.4: withdrawal of labor appeal bonds".

Following the above-mentioned statements, the judge a quo issued on a supplementary basis the appealed decision on pp. 116.202-116.209 (part IV).

The Appellant contests part of the decisions on pp. 114.138-114.142 and 116.202-116.209 (part IV), which ordered: (a) the issuance of unequivocal notice to the Brazilian Telecommunications Agency (ANATEL) and to the Administrative Economic Defense Council (CADE) of the AMENDMENT TO THE PLAN FOR COURT-SUPERVISED REORGANIZATION submitted by OI Group in reorganization and of the filing of the petition for court-supervised reorganization of two subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO); (b) the issuance by the Bankruptcy Trustees of notice, duly translated into English, to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages 115.744 et seq.), informing it that "the 7th Business Court of Rio de Janeiro, RJ, is processing the court-supervised reorganization of the Oi Group, in which the Reorganization Debtor has failed to fulfill obligations assumed in June 2025, without any justification provided to date.

 (116.202-116.209, part IV)"

It argues that, despite the dexterity with which the Reorganization Court has been conducting the Court-Supervised Reorganization, having, in recent months, adopted various measures to increase procedural speed and the supervision of the activities of the reorganization debtors, the court order ended up making two specific mistakes, namely: (i) failure to summon the Brazilian General Accounting Office (TCU) and the Securities and Exchange Commission to comment on the Amendment to the Plan; and (ii) failure to adopt

10

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost...    Pg 12 of 19

*Translated from Portuguese*

measures that prevent the Oi Group from filing for Chapter 11 abroad before the matter is decided by the reorganization court, after hearing the parties involved and affected by the Court-Supervised Reorganization.

Having made this brief chronological overview of the facts, we will now examine the request for a preliminary injunction.

After comparing the evidence attached to the record, in a decision based on summary cognizance, four unavoidable conclusions are reached, based on the appealed decisions and the statements of the Watchdog and the Bankruptcy Trustee: (1) There is no proof of fulfillment of all obligations set out in the reorganization plan; (2) The ability of the reorganization debtors to meet their short-term obligations, including those provided for in the approved restructuring plan, is compromised; (3rd) there is a proposal to add an amendment to the reorganization plan on the grounds of new facts that supposedly made its enforcement unfeasible; (4) initiation of the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America ("CHAPTER 11"), before the United States Bankruptcy Court for the Southern District of New York ("AMERICAN COURT"), with the purpose of restructuring credits that will not be dealt with in the amendment and that cannot be included in the court-supervised reorganization process in Brazil.

The facts denote the existence of a serious threat to all creditors subject to court-supervised reorganization, as well as an issue related to sovereignty and legal certainty.

The appealed decision is correct, and the proceedings were conducted swiftly, carefully and thoroughly by the original court, which is why I ratify the court's rationale for the decision, which is the subject matter of this appeal, but add to them some issues of public policy.

The activities carried out by the OI Group were subject to a prior concession from ANATEL, based on Federal Law No. 9,247/1997 (Telecommunications Act), regulatory decrees, Federal Law No. 12,485/2011 (Conditional Access Service Act) and a global regulatory framework for the provision of telecommunications services, issued by the Brazilian Telecommunications Agency ("ANATEL"), in accordance with the public policies of the Ministry of Communications.

However, a proposal for an amicable solution was presented by the Anatel with the aim of setting the terms for the early termination and conversion of the concession contract for the Switched Fixed Telephony System (STFC) signed with the company Oi S.A. in Court-Supervised Reorganization (Oi S.A.) into an authorization, in accordance with the General Telecommunications Act.

The amicable solution resulted in an agreement ratified by the Brazilian General Accounting Office (TCU) in a session held on July 3, 2024.

The concession contract for the Switched Fixed Telephony System (STFC) signed with Oi S.A. - in Court-Supervised Reorganization (Oi) was then transformed into an authorization, as provided for in Law 13.879/2019.

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost.    Pg 13 of 19

Translated from Portuguese

On September 30, 2025, the Single Authorization Agreement for service, resulting from the approval of the Voluntary Composition Agreement (Settlement) for the adaptation of the fixed telephony (STFC) concession, was signed between Oi (directly and through the neutral network company in which it holds a stake, V.tal), Anatel and the Ministry of Communications (which represents the interests of the Federal Government), with the consent of the Office of the Federal Attorney General (AGU).

Oi's adaptation and the impact on consumers were explained on the gov.br portal, and can be summarized as follows[2]:

1. Oi is currently the largest fixed telephony concessionaire in the country and provides local and long-distance services in all Brazilian states except São Paulo. The company has almost six million fixed telephony lines in more than 4,600 municipalities.

2. Oi's immediate removal from fixed telephony - resulting from the termination of the concession contracts without the migration to authorization - could leave millions of people living in isolated locations without access to any other means of communication. In addition, there could be a loss of connection for emergency public services, such as the police and fire department, and failures in the operation of communication and data service providers who use the former concessionaire's service as an interconnection point to the telecommunications network. Therefore, its decommissioning would need to be done in an orderly manner, since its network still supports essential services for the population.

3. In addition, Oi has been facing notorious financial problems since 2016 and is undergoing a second court-supervised reorganization process. Last April, the company was able to obtain approval of a new court-supervised reorganization plan with creditors, seeking to restructure its debts and raise funds. The plan was ratified by the Supreme Court of the State of Rio de Janeiro. One of the pillars of this plan was precisely the resolution of the fixed telephony concession. Its unviability could lead to the company's bankruptcy, with systemic impacts on the entire telecommunications sector in Brazil. In this case, the state would have to take over, even temporarily, the provision of the public fixed telephony service. In this event, it would be necessary to invest public funds to maintain fixed telephony, with an estimated annual cost of between BRL 2 billion and BRL 4 billion.

4. The private authorization regime guarantees a more efficient and less costly structure for the company while maintaining essential services for users and bringing benefits to Brazil's telecommunications infrastructure.

5. It provides significant advantages for all those involved and for Brazilian society as a whole, ensuring the continuity of fixed telephony in areas where Oi is the only provider of voice services until the end of 2028, benefiting more than 3.2 million Brazilians in more than 10,000 locations, mainly in the North and Northeast regions.

---

[2] https://www.gov.br/anatel/pt-br/assuntos/adaptacao/adaptacao-da-oi

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25   2025 Decision of Judge Monica Cost...   Pg 14 of 19

*Translated from Portuguese*

6. In addition, the settlement ensures the maintenance of current contracts for Public Utility Services and allows for the planned management of interconnection points with other providers, ensuring the integrity of the network.

7. The adaptation of fixed telephony contracts brings about, among other things, a reduction in legal and regulatory charges that are no longer justified, given the current scenario of reduced interest in fixed telephony. In addition, this service will now be operated under the private regime, i.e., according to rules already applicable to other telecommunications services, such as mobile telephony and broadband service, which, unlike fixed telephony, are still in the process of expanding their consumer base and did not need to be provided under the public regime in order to promote mass accessibility.

Under the aforementioned settlement, not only was the migration of the operation of the services to the private regime agreed upon by means of an authorization agreement, but also, primarily, public commitments were made, namely: (i) to ensure the continuity of voice service provision, until 2028, in 10,650 locations without communication alternatives in Oi's service provision region; (ii) to ensure that BRL 5.8 billion in investments are made, of which BRL 800 million is for maintaining the service and BRL 5 billion for commitments for school connectivity, laying submarine cables and data centers, which will result in improved connectivity in the North and Northeast Regions; (ii) to reduce the impact of any judgment against the Federal Government for exercising the right to use the arbitration clause provided for in the Concession Contract for Switched Fixed Telephone Service; (iii) to allow for the recovery of claims owed to the Office of the Federal Attorney General (AGU); (iv) to install fiber-optic access in 4,000 schools that are not connected to the Internet or whose interconnection has a download speed below the established minimum standard. When selecting schools, preference was given to those located in states in the Northeast (64%) and in rural areas (80%); (v) in addition to the network infrastructure, an internal network will be installed to distribute the internet signal to students, teachers and staff. The total cost of the investment is estimated at BRL 1.19 billion; (vi) to lay submarine cables in the North and South of Brazil and to implement land routes to connect access to cable on the coast and make improvements to adjacent routes; (vii) to make investments in the construction of new data centers; and (viii) to make possible additional investments of up to BRL 2.3 billion, in the event that the arbitration promoted by Oi results in amounts due in excess of BRL 12.5 billion.

It is important to note that V.tal, now the appellant, is also responsible for executing the commitments assumed in the aforementioned Agreement (described in its attachment 5), and for collaborating with the counterparties necessary for the adaptation, which is essential for the success of the Oi Group's second court-supervised reorganization.

Therefore, the conversion of the Fixed Switched Telephony System (STFC) concession contract signed by Oi S.A. into an authorization does not have the power to disqualify the provision of an essential public service of a continuous nature, giving rise to an irrefutable

13

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost... Pg 15 of 19

*Translated from Portuguese*

public interest that surpasses the mere business nature of the institution, justifying more vigorous action by the Judiciary.

Combined with the unquestionable uniqueness surrounding the present court-supervised reorganization in terms of the inexorable public interest that

results from the provision of services to the population by the OI Group is the need for timely fulfillment of the obligations agreed to in the reorganization plan approved by the creditors and ratified by the court.

Regarding this last point, the Reorganization Debtors filed a request to suspend payment of the obligations assumed in this process for a period of 180 days, in addition to filing an addendum to the plan, due to a serious cash crisis in order to honor them, with the aim of reaching the originally excluded labor creditors, renegotiating the conditions and payment terms of suppliers, partner creditors, and take or pay creditors with and without guarantee.

In a statement in the original proceedings, the Reorganization Debtors claim that these measures would not be enough to stop the current economic and financial situation that has arisen, which is why it is still necessary to initiate reorganization proceedings in the US Court (Chapter 11), in which they intend to negotiate debts not covered by the present court-supervised reorganization.

However, the process underway in the Brazilian jurisdiction has been expressly recognized by the Oi Group and the competent authorities as the main process.

Part of the decisions that established Brazilian jurisdiction for the processing of the first and second court-supervised reorganization of the debtor companies are transcribed below:

"The issue is new and deserves to be addressed.

The first point worth highlighting in this analysis is that FINCO and PTIF are merely financial vehicles created by the OI Group to raise funds abroad in order to finance its production activities. They are wholly owned subsidiaries, created in the Netherlands, without any operational activity.

The Oi Group's operational activity is in Brazil. This is the main establishment for the companies in reorganization; this is where the activity that generates wealth is located, the center of interest that justifies, in theory and in practice, the creation of a system of protection for companies. This is the appropriate forum for the reorganization process.

And, for this reason, I find that all issues relating to the holding company and its subsidiaries must be decided in accordance with Brazilian law. Brazilian law does not allow any concurrent jurisdiction of a foreign judicial authority or equivalent when the insolvent debtor has its primary establishment in Brazil."

"JURISDICTION AND PROCEDURAL CONSOLIDATION

14

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost...    Pg 16 of 19

*Translated from Portuguese*

This request for court-supervised reorganization was made by Oi S.A., PTIF and Oi Coop. PTIF and Oi Coop are non-operational companies that, in the past, were used as vehicles to raise funds from abroad to finance the Oi Group's activities in Brazil. The obligations of PTIF and Oi Coop, although originally contracted abroad through the issuance of bonds, have always been fulfilled in Brazil, backed by the Brazilian operations of its parent company Oi.

It should be recalled that, when the first court-supervised reorganization of the Oi Group was processed, the jurisdiction of this court to process the court-supervised reorganization of the Dutch subsidiary Oi Coop was even questioned in the context of the procedure established on the basis of Chapter 15 of the US Bankruptcy Code, whose judgment handed down by the Southern District of New York, in the United States, confirmed that it is in Brazil that the center of the main interests of Oi Coop and the Oi Group is located.

When admitting the first court-supervised reorganization, this Court had already understood that: "And, insofar as the companies that make up the OI GROUP operate in a coordinated and integrated manner in the Brazilian telecommunications system, and under single corporate, operational, financial, administrative and managerial control - exercised by the controlling company OI - including in relation to the non-operational financial vehicle companies incorporated abroad - judicial protection must reach the conglomerate as a whole." (p. 89496-89525 of case no. 020371165.2016.8.19.0001).

At the time, this was a veritable leading case, since there was little or nothing about transnational insolvency in the Brazilian courts, nor did the applicable law deal with this hypothesis. The Judiciary has been called upon to fill the legal gap through a systematic and analytical interpretation of the legal system and, in particular, the applicable constitutional principles. Subsequently, Law 14,112/2020 added the Transnational Insolvency chapter (VI-A) to Law 11.101/2005 to regulate this hypothesis.

At that time, procedural consolidation had not yet been regulated, which occurred with the changes brought about by Law 14,112/2020, according to art. 69-G: Debtors who meet the requirements set out in this Law and are part of a group under common corporate control may apply for court-supervised reorganization under procedural consolidation.

As a result, the requirements for procedural consolidation have been met, as prescribed by article 69-G of Law 11,101/05.

It is indisputable that there is a single corporate, operational, financial, administrative and managerial control exercised by the controlling company Oi S.A. in relation to the non-operational financial vehicle companies incorporated abroad, and it is evident that there is an economic group in fact and in law, with all the Plaintiffs having presented documentation individually, which allows for active joint litigation for the purposes of filing the Court-Supervised Reorganization.

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25   2025 Decision of Judge Monica Cost...   Pg 17 of 19

Translated from Portuguese

Thus, reiterating the terms of the decision granting early relief issued under ID 44532251 of Antecedent Precautionary Relief No. 080986336.2023.8.19.0001, procedural consolidation is a measure that should be applied to the present case."

As noted in this latest edition, when the first court-supervised reorganization of the Oi Group was processed, the jurisdiction of the court a quo to process the court-supervised reorganization of the Dutch subsidiary Oi Coop was even questioned in the context of the procedure established on the basis of Chapter 15 of the US Bankuptcy Code, whose judgment handed down by the Southern District of New York, in the United States, confirmed that it is in Brazil that the center of the main interests of Oi Coop and the Oi Group is located.

There is therefore no doubt that all of the OI Group's operational activity is located in Brazil.

The prevalence of Brazilian jurisdiction in this case is also supported by the legal interests involved, which are strongly linked to issues of public law, the provision of a public communication service, social issues and the Oi Group's social function, including its obligations to the TCU and public bodies on various levels of the Brazilian federation.

Therefore, considering that we are in the period of sovereignty of Brazilian jurisdiction and that the approved plan has not been fully implemented by the Reorganization Debtors, it must be concluded, in principle, that the measure brought before the Foreign Court could have a direct impact on the credits restructured in the present court-supervised reorganization, This is why it is necessary, given the seriousness and urgency of the matter, and -- in order not to act in excess of jurisdiction -- to simply order an amendment to the notice addressed to the United States Federal Bankruptcy Court, Southern District of New York.

Having established above the verisimilitude of the appellant's allegations, the danger of delay materializes from the facts reported that the claims subject to court-supervised reorganization may be left unpaid, jeopardizing compliance with the reorganization plan and, consequently, the payment of the thousands of creditors reached by the legal benefit, especially when it involves the provision of essential services to the community.

Therefore, in order to preserve legal certainty and the authority of Brazilian jurisdiction, while respecting the sovereignty of the countries involved and the harmonization of the cross-border legal system, I order only that a recommendation be made in the record of the Chapter 15 Proceeding to the effect that, before issuing any decision in the process related to Chapter 15 of the Oi Group, the NY Court await the decision of the Brazilian Court on (i) the verification and consequences of non-compliance with the reorganization plan, already reported, and (ii) the request for an Amendment to the reorganization plan of the main process underway in Brazil.

3. In light of the foregoing, **I GRANT, in part, the request for preliminary injunctive relief** in order to **amend** the notice to be issued by the Bankruptcy Trustee to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages

16

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25    2025 Decision of Judge Monica Cost    Pg 18 of 19

*Translated from Portuguese*

115,744 et seq.), with the recommendation to the NY Court that, before issuing any decision in Oi Group's Chapter 15 proceeding, it await (i) the decision of the Brazilian Court on the verification and consequences of the previously reported non-compliance with the Plan for Court-Supervised Reorganization (JRP) and (ii) the request for amendment of the JRP in the main proceeding underway in Brazil.

Nevertheless, send a copy of the present decision to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on pp. 115.744 et seq.), with the reservation that there is no judicial pronouncement by this jurisdiction agreeing to the initiation of other proceedings involving the restructuring of OI Group in other jurisdictions.

4. In view of the Voluntary Settlement signed for the concession contracts to be adapted to the authorization regime, issue unequivocal notice of the AMENDMENT TO THE REORGANIZATION PLAN submitted by OI Group - in court-supervised reorganization and of the filing of the request for court-supervised reorganization of two subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S. A. - TAHTO) to the Secretariat for External Control of Consensual Resolution and Dispute Prevention (SecexConsenso) of the Brazilian General Accounting Office (TCU) and to the Brazilian Securities and Exchange Commission (CVM).

5. Finally, I order, ex officio, that the CVM be sent notice including a copy of the last two Bankruptcy Trustee Reports (RMA).

6. **Send urgent notice to the court a quo** of this decision, requesting information;

7. **Notify the Bankruptcy Trustee**;

8. **Notify the Office of Bankruptcy Estate Trustees**;

9. **Notify the appellees** to submit a reply within the legal period of 15 days set forth in art. 1019, II, of the Code of Civil Procedure (CPC);

10. Then, notify the **Attorney General's Office**.

Rio de Janeiro,_____, 2025.

**Monica Maria Costa**

**Reporting Judge**


[Digitally signed by Monica Maria Costa di Piero, 29835, July 25, 2025 10:51:42]
[All pages digitally stamped and numbered by the Supreme Court of the State of Rio de Janeiro (TJRJ)]

17

23-10193-jpm    Doc 56-1    Filed 07/27/25    Entered 07/27/25 20:27:57    Exhibit A - Certified Translation of July 25, 2025 Decision of Judge Monica Cost.    Pg 19 of 19

*Translated from Portuguese*

**CERTIFICATION**

This is to certify that the foregoing translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "2025.7.25 - Agravo V.tal - Decisão - concessão de efeito suspensivo.pdf," which was written in Portuguese. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 25, 2025.


WILLIAM RICHARD FELIX STEINMETZ

Email: william.steinmetz@pm.me