**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
David Kim
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,
as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Oi S.A., *et al.*,[1]<br><br>　　　　Debtors in a Foreign Proceeding. | Case No. 23-10193 (JPM)<br><br>Chapter 15<br>(Jointly Administered) |

**FOREIGN REPRESENTATIVE'S RESPONSE TO V.TAL'S STATEMENT AND
REQUEST FOR CONTINUANCE OF HEARING AND OBJECTION DEADLINE**

Rodrigo Caldas de Toledo Aguiar (the "**Petitioner**" or "**Foreign Representative**"), the duly-authorized foreign representative with respect to the jointly-administered judicial

---

[1] The debtors in the above-captioned cases along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

1

reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**")[2] of Oi S.A. – Em Recuperação Judicial ("**Oi**"), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial ("**Coop**"), and Portugal Telecom International Finance B.V. – Em Recuperação Judicial ("**PTIF**") (collectively, the "**RJ Debtors**" and, together with their non-debtor affiliates, the "**Oi Group**" or the "**Company**"), commenced on March 1, 2023, under Federal Law No. 11.101 of February 9, 2005, as amended (the "**Brazilian Bankruptcy Law**") of the laws of the Federative Republic of Brazil before the 7th Business Court of the City and State of Rio de Janeiro, Brazil (the "**Brazilian RJ Court**"), respectfully submits this response in opposition to the *Notice of Brazilian Appellate Court Decision and Request for Continuance of Hearing and Objection Deadline [ECF 46]* [ECF No. 55] (the "**Notice**") filed by BCG Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A. ("**V.tal**"), requesting a continuance of the hearing and objection deadline with respect to the *Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases*, [ECF No. 46] (the "**Termination Motion**").[3]

## PRELIMINARY STATEMENT

1.   Although styled as a statement to this Court, the Notice is a disguised motion by V.tal seeking to indefinitely stay further progress on the Termination Motion based solely on the July 25, 2025 decision (the "**Brazilian Appellate Court Order**") of Judge Monica Maria Costa

---

[2]   The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0090940-03.2023.8.19.0001 (formerly 0809863-36.2023.8.19.0001).

[3]   Defined terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Termination Motion.

2

di Piero of the Court of Justice of the State of Rio de Janeiro (the "**Brazilian Appellate Court**").[4] That request should be denied for at least four reasons.

2. First, V.tal's self-serving and incomplete characterization of the Brazilian Appellate Court Order is highly misleading. Nowhere does V.tal disclose that its primary request on appeal was for an injunction preventing the RJ Debtors from filing a U.S. chapter 11 case that was not granted.[5] *See* Ex. B-2 at 28-29, 73, 75, 80.[6] Moreover, as explained in detail below, V.tal makes several baseless attacks on the RJ Debtors based on a gross mischaracterization of the Brazilian Appellate Court Order.

3. Second, there is no need for the Court to adjourn the August 6 hearing on the Termination Motion now. While the Brazilian Appellate Court suggested that this Court allow the Brazilian RJ Court to rule on the RJ Debtors' proposed amendment to the Brazilian RJ Plan (the "**Brazilian Amendment Motion**") before deciding on the merits of the Termination Motion, a decision is imminent. The Brazilian Amendment Motion is fully briefed and awaiting a ruling from the Brazilian RJ Court. Because the RJ Debtors filed the Brazilian Amendment Motion on

---

[4] A copy of the Brazilian Appellate Court Order and a certified translation thereof are attached hereto as **Exhibit A**. A copy of the appeal filed by V.tal and a certified translation thereof are attached hereto as **Exhibit B**.

[5] There is a material difference between the relief sought in the Termination Motion and the filing of chapter 11 cases. By filing the Termination Motion, the Foreign Representative seeks assistance from this Court to preserve ***the potential option*** of a chapter 11 filing by the Oi Group to address the Company's liquidity issues and restructuring needs. The Foreign Representative believes that it is in the best interests of all of the Oi Group's stakeholders to preserve all options for preventing a value-destructive liquidation proceeding in Brazil regardless of what path the Company ultimately embarks.

[6] On July 23, 2025, V.tal filed an interlocutory appeal in Brazil, seeking to enjoin the RJ Debtors from pursuing restructuring proceedings in any foreign jurisdictions, including the United States. *See* Ex. B-2 at 28-29, 73, 75, 80. The Brazilian Appellate Court directed the judicial administrators (the "**JAs**") to amend the communication that the Brazilian RJ Court ordered them to issue to this Court, recommending that this Court await the Brazilian RJ Court's ruling on the Brazilian Amendment Motion before ruling on the Termination Motion. Ex. A-2 at 42. But V.tal did not wait for the JAs to carry out that instruction. Instead, just hours after the Brazilian Appellate Court Order was entered, V.tal filed its Notice, selectively quoting and mischaracterizing the decision, and seeking relief from this Court that it could not obtain from the Brazilian courts—an indefinite delay of these proceedings.

3

an emergency basis, the RJ Debtors expect a ruling in the soon. That ruling would obviate any need for the requested continuance.

4. Third, any delay in ruling on the Termination Motion could irreparably harm the RJ Debtors. As previously explained, the RJ Debtors are out of liquidity and in desperate need of restructuring. While the RJ Debtors are doing everything possible to improve their liquidity position, there is no guarantee that there will still be a business to restructure if the adjournment is granted. Indeed, that is the point of the Termination Motion (and the Brazilian Amendment Motion).

5. Fourth, the Court should carefully scrutinize V.tal's motives before ruling on the request. V.tal is not simply only a creditor looking to protect its investment in the RJ Debtors, but it recently launched a competing business. That is why, of all of the Company's stakeholders, V.tal stands alone in possibly benefiting from an otherwise assuredly value-destructive liquidation. And that is what it may achieve if the requested delay is granted.

## RESPONSE

### I.  V.tal Materially Mischaracterizes the Brazilian Appellate Court Order

6. V.tal argues that the Brazilian Appellate Court Order "raises *extremely troubling* concerns about the Debtors' Chapter 15 Termination Motion and the representations they have made to this Court about the Brazilian proceedings." Notice at 4 (emphasis in original). This assertion is not true.

7. Relying on select portions of the Brazilian Appellate Court Order taken out of context, V.tal accuses the RJ Debtors' CEO, Marcelo José Milliet, of making false statements under penalty of perjury. *See* Notice at 4-5. These accusations are baseless. The Brazilian Appellate Court Order merely notes that the lower court has not issued an order approving filings outside of the United States. *See* Ex. A-2 at 42 ("Without prejudice, forward a copy of this decision

4

to [this Court], with the caveat that there is no judicial pronouncement on the part of this jurisdiction agreeing to the initiation of other procedures involving the restructuring of Grupo Oi in other jurisdictions."). That observation is unsurprising, since the RJ Debtors have not sought such relief from the Brazilian RJ Court. Mr. Milliet's declaration did not suggest that such an order existed, and neither did the Termination Motion.

8. Mr. Milliet's testimony is completely consistent with the Brazilian Appellate Court Order. As Mr. Milliet explains, he and other representatives of the Oi Group discussed the possibility of a chapter 11 filing with Brazilian judicial authorities to seek relief in the U.S. to avoid a liquidation. *See Declaration of Marcelo José Milliet* [ECF No. 48] (the "**Milliet Declaration**") ¶ 24. That testimony refers to *ex parte* meetings (*despachos*), which are customary and entirely appropriate in the Brazilian legal system. The RJ Debtors also indicated the possibility of a chapter 11 filing in a subsequent filing made with the Brazilian RJ Court. Mr. Milliet never testified that any Brazilian court entered an order or made any official statements approving any actions in this case. Therefore, Mr. Milliet's testimony remains entirely accurate and the Brazilian Appellate Court Order does not contradict that testimony.

9. V.tal also incorrectly contends that there is a pending investigation into the RJ Debtors' finances for potential fraud or abuse in the Brazilian RJ Proceeding and that the Foreign Representative failed to notify this Court of that inquiry. *See* Notice at 3, 5. There is no such investigation; V.tal again selectively quotes phrases from the Brazilian RJ Court to distort the truth. In connection with the Brazilian Amendment Motion, the Brazilian RJ Court issued the RJ Order requiring, among other things, additional information regarding the RJ Debtors' financial situation and compliance with the Brazilian RJ Plan. *See* 1518 Statement ¶¶ 6-7 (with relevant documents attached). Additionally, the Brazilian RJ Court appointed an independent judicial supervisor

5

(the "**Watchdog**" or the **Judicial Supervisor**") to assess the information being provided by the RJ Debtors and to help inform the Brazilian RJ Court's decision regarding the Brazilian Amendment Motion. *See Notice of Filing Certified Translation of the July 18, 2025 Brazilian RJ Court Order* [ECF No. 54-1] at 9. Although the RJ Order mentions at the end of one paragraph—and nowhere else—that the Judicial Supervisor will consider "as well as the possible practice of abuse or fraud," *id.* at 8, it is clear that this is not the primary focus or purpose of the Judicial Supervisor. Nowhere in the RJ Order is there any indication or suggestion that fraud was committed. Nor are there any claims or allegations of fraud or abuse directed at the current management or board of directors contained anywhere in the RJ Order. *See id.* Furthermore, the Judicial Supervisor presented his report on the financial situation of the RJ Debtors and did not indicate any fraud. The report, however, attested to the extremely concerning financial situation of the RJ Debtors. Moreover, the idea that the Foreign Representative somehow failed to disclose the RJ Debtors' non-compliance with the Brazilian RJ Plan is absurd. Throughout the Termination Motion, the Foreign Representative clearly explains that the Oi Group lacks liquidity and cannot satisfy its monetary obligations under the Brazilian RJ Plan. *See* Termination Mot. ¶¶ 30- 34, 46, 47 n.29; Milliet Decl. ¶¶ 19-22. Indeed, that was the reason for the Termination Motion and the Brazilian Amendment Motion. *See* Termination Mot. ¶¶ 1-4.

10. V.tal's suggestion that the Foreign Representative failed to properly inform this Court of the RJ Order is just as easily disproved. On July 23, 2025, the Foreign Representative filed a statement confirming that the Brazilian RJ Court entered the RJ Order and provided an informal English translation of the entire text of the decision. *See* 1518 Statement ¶ 7. He then followed up by filing a certified English translation of the RJ Order on July 25, 2025. *See Notice*

6

*of Filing Certified Translation of the July 18, 2025 Brazilian RJ Court Order* [ECF No. 54-1]. This is the order V.tal says the Foreign Representative failed to disclose.

11. V.tal next accuses the RJ Debtors of making "inaccurate assertions" regarding implementation of the Brazilian RJ Plan and seems to suggest that the RJ Debtors are still actively restructuring their debts in the Brazilian RJ Proceeding. *See* Notice at 3. Neither is true. The RJ Debtors have substantially consummated their Brazilian RJ Plan. Billions of dollars of debt has been restructured, with creditors receiving new debt instruments (including V.tal) and equity in the Oi Group pursuant to their payment options. Termination Mot. ¶¶ 19-20, 29; Milliet Decl. ¶¶ 9, 18. The debts currently owed to V.tal were issued under the Brazilian RJ Plan—which V.tal acknowledges in its Notice. *See* Notice at 2 (citing FFE Order ¶ 17). Six of the seven current members of the board of directors, which includes three U.S.-based directors with significant U.S. restructuring experience, and the current management were appointed by V.tal's fellow secured creditors who became the majority shareholders of the Oi Group. *See* Termination Mot. ¶¶ 21-22; Milliet Decl. ¶¶10-11.[7] And while there are certain transactions contemplated under the Brazilian RJ Plan that have not been completed, there are no "yet-to-be-determined results" that stakeholders are waiting to see. The Brazilian RJ Plan has been substantially consummated in every sense of the term.

12. As explained in detail in the Termination Motion, the Brazilian RJ Proceeding remains pending even after substantial consummation of the Brazilian RJ Plan, as applicable Brazilian law requires the case to remain open for two years. *See* Termination Mot. ¶¶ 3, 33, n.24; *see also Declaration of Paulo Calil Franco Padis* [ECF No. 47] ¶ 12, n.4. The Foreign

---

[7] Tellingly, the Brazilian RJ Court describes the Brazilian RJ Plan as "homologated" throughout its RJ Order. *See* RJ Order. *See, e.g.*, ECF No. 54-1 at 4, 5, 7, 8, 9.

7

Representative never implied otherwise. To the contrary, the Foreign Representative has expressly confirmed that the Brazilian RJ Proceeding would remain pending at the same time as any potential chapter 11 cases. *See* Termination Mot. ¶¶ 2, 55 (describing the Brazilian Amendment Motion and the Termination Motion as part of a comprehensive restructuring strategy previously discussed with representatives of the Brazilian courts).

13. V.tal next attempts to disparage the Oi Group's board of directors without any factual basis. Again, V.tal relies entirely on selective quotes from the RJ Order. While it is true that the RJ Order suspends bonus payments for the time being, the Brazilian RJ Court explains that this is due to the Oi Group's financial situation and Brazilian Amendment Motion:

> Naturally, the private market is used to compensate skilled professionals with quite high figures. No further digressions are made in such respect. However, at the moment currently faced by the insolvent, it is impossible not to conclude that such practice shows itself as inappropriate and unsuitable. All in all, there is a nodal point in the submitted ADDENDUM, in the approved plan, of including the labor creditors and reducing—a lot—their credits.
>
> Such context makes unfeasible the maintenance, at least for the time being, of payments of bonuses. It shall be maintained, until later decision, the amounts for compensations established for the Executive Board and the Board of Directors at the Meeting held on April 29, 2025.

ECF No. 54-1 at 9. The Brazilian RJ Court never suggests that the compensation amounts were improper or that there has been any wrongdoing, as V.tal implies.

14. Moreover, V.tal conveniently fails to mention that the board's compensation structure was approved by Oi's shareholders—*i.e.*, V.tal's fellow secured creditors.[8] Six of Oi's seven-member board of directors (including three U.S. nationals) were appointed by the Company's creditors—now also the majority shareholders—in accordance with the Brazilian RJ

---

[8] *See Minutes of Annual and Extraordinary General Meeting* (Apr. 29, 2025) ¶ 6.3 (available at https://ri.oi.com.br/en/financial-information/cvm-sec-filings/).

8

Plan. *See* Termination Mot. ¶¶ 21- 22*;* Milliet Decl. ¶¶ 10-11. Nor has any current member of the board received payments under this compensation plan, as these bonuses are owed only when and if the Oi Group is able to materially reduce its indebtedness.[9]

15. By cherry-picking select words and phrases from the orders of both Brazilian Judges, V.tal attempts to cast doubt on the intentions of the Foreign Representative, the Oi Group, and their representatives in filing the Termination Motion. Nothing could be further from the truth. The facts remain clear. The Oi Group is experiencing an extreme liquidity crisis and cannot continue complying with the Brazilian RJ Plan because it does not have the money. The Foreign Representative is seeking relief from this Court in support of—not in opposition to—its Brazilian RJ Proceeding to avoid a value-destructive liquidation (a *falência*). And the Oi Group is pursuing this strategy at the direction of its board—which was elected by V.tal's fellow secured creditors following the implementation of the Brazilian RJ Plan. The Oi Group's only goal by filing the Termination Motion is to preserve all options available to maximize value for the benefit of all its creditors, including V.tal.

## II.     A Continuance Is Premature and Harmful to the Oi Group

16. V.tal's request for an adjournment is based solely on the recommendation from the Brazilian Appellate Court that this Court not rule on the Termination Motion until after the Brazilian RJ Court rules on the Brazilian Amendment Motion. But this Court can honor that recommendation, without delaying the August 6 hearing on the Termination Motion. As the RJ Debtors filed the Brazilian Amendment Motion on an emergency basis and all necessary briefing is complete, the Brazilian RJ Court's decision is likely to be issued soon. If that happens, this

---

[9] *See id.*; *see also Annual and Extraordinary General Meeting: Participation Manual and Management Proposal* (Apr. 29, 2025) (available at https://ri.oi.com.br/en/financial-information/cvm-sec-filings/).

9

Court can both respect the request of the Brazilian Appellate Court and keep the August 6 hearing date. While there is no guarantee that the RJ Court will rule this week, the Court should at least wait to see if it does before considering the request for adjournment.

17. Avoiding an unnecessary adjournment is critical in this case because V.tal's request is far more than a scheduling matter. As fully explained in the Termination Motion, the RJ Debtors face a severe liquidity crisis. *See, e.g.,* Termination Mot. ¶¶ 30- 34, 46, 47 n.29; Milliet Decl. ¶¶ 19-22. Each additional day of delay further threatens the viability of any potential restructuring—whether in Brazil or in the United States. A continuance of the hearing on the Termination Motion could have devastating consequences for the Company. Waiting a week to rule on V.tal's request allows the Court to both respect the Brazilian Appellate Court's request and avoid needlessly subjecting the RJ Debtors to the financial risk of delay.

### III.    V.tal's Conflicting Interests Must be Considered

18. V.tal's aggressive opposition to the Termination Motion would seem to make no sense. As both a creditor and significant business partner of the Company, V.tal will likely face substantial economic harm if the Company liquidates. Among other things, V.tal depends on critical services from Oi Soluções and maintains highly profitable commercial agreements with the Company, including copper scrap purchase arrangements that generate significant revenue for V.tal's operations. And as the purchaser of the Oi Group's ClientCo business, V.tal still relies on Oi's transition services, internal systems, employees and assistance to operate. If the Oi Group ceases to exist as a going-concern and enters a formal liquidation in Brazil, V.tal will not be able to effectively operate its business, will lose access to lucrative business arrangements with the Company, and the value of its business for its shareholders—which ironically includes the Oi Group, who holds approximately 27% of V.tal's equity—will suffer material damage.

19. For this reason, since the filing of the Termination Motion, the Company and its advisors have continually attempted to engage V.tal in commercial discussions regarding the Oi Group's liquidity situation and proposed restructuring solutions. As a large minority shareholder of V.tal, the Company also has a clear and obvious interest in preserving the value of V.tal's business going forward to benefit the Oi Group's creditors. But V.tal has refused to meet with the Company and instead, in each instance, demanded that the Foreign Representative withdraw the Termination Motion. While other of the Oi Group's secured creditors have executed confidentiality agreements and engaged in numerous discussions with the Company and its advisors, V.tal has refused to even receive information regarding the Company's extremely dire liquidity position—again, demanding a withdrawal of the Termination Motion as a prerequisite to any discussion and even suggesting that V.tal would prefer a Brazilian liquidation case that would destroy its own value.

20. V.tal's stated preference for a value-destructive liquidation that would clearly harm its own business interests is difficult to understand. A likely explanation recently became clearer. The Foreign Representative just discovered that V.tal recently established a competitor to the Company's remaining operational business.[10] V.tal may be willing to cope with short-term financial losses (which should be substantial to both its business and all of the Oi Group's creditors) to secure the long-term advantage of eliminating a major competitor in Brazil's

---

[10] *See, e.g.*, *Nio Arrives in the B2B Market with Small And Medium-Sized Companies on Target*, TELETIME News (Jul. 24, 2025) (available at https://teletime.com.br/24/07/2025/nio-empresas-chega-no-mercado-b2b-mirando-pequenas-e-medias/) (reporting on Nio's entry into the B2B market); *Nio Empresas Arrives In The B2B Market With A New Portfolio And Exclusive Channels To Serve The Segment*, Portal MS News (Jul. 25, 2025) (available at https://portalmsnews.com.br/nio-empresas-chega-no-mercado-b2b-com-novo-portfolio-e-canais-exclusivos-para-atendimento-ao-segmento/); Marcio Fabbris LinkedIn (July 2025) (Nio CEO announcing the launch of Nio Empresas, a new business unit for the B2B market) (available at https://www.linkedin.com/posts/marciofabbris_nioera-niointernet-activity-7354280993031094273-Fz97?utm_source=share&utm_medium=member_desktop&rcm=ACoAABram1EBBE-CxfgmLlgZn4I-jB21GwxpJSE).

11

telecommunications market. The Company's liquidation likely would allow V.tal's wholly-owned subsidiary to capture significant market share, reduce competitive pricing pressures, and consolidate its position in this sector—an obvious ulterior motive. V.tal's conduct therefore may very well be motivated not by legitimate concerns about the chapter 11 process and its interests as a creditor, but by an effort to eliminate its competitor.

## CONCLUSION

For the reasons stated above, this Court should momentarily refrain from ruling on V.tal's request to avoid a premature adjournment or continuance of the hearing on the Termination Motion. The hearing should proceed as scheduled subject to further developments that may occur in the Brazilian RJ Proceeding.

*[Remainder of Page Intentionally Left Blank]*

Dated: July 28, 2025
      New York, New York

Respectfully submitted,

By: */s/ Philip M. Abelson*
     Philip M. Abelson

**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
David Kim
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar, as Petitioner and Foreign Representative*