## Exhibit A

**Brazilian Appellate Court Order**

## Exhibit A-1

**Brazilian Appellate Court Order (Portuguese)**

**PRIMEIRA CÂMARA DE DIREITO PRIVADO DO TRIBUNAL DE JUSTIÇA DO ESTADO DO RIO DE JANEIRO**

**Agravo de instrumento nº 0059754-91.2025.8.19.0000**

**Agravante: V.TAL - Rede Neutra de Telecomunicações S.A.**
**Agravado: OI S.A. - em recuperação judicial e Outros**

**Relatora: Des. Mônica Maria Costa**

<u>**DECISÃO**</u>

**1.** Trata-se de agravo de instrumento interposto contra as decisões de fls.114.138/114.142 e 116.202/116.209 (item IV - 114.138), ambas proferidas pelo MM Juízo da 7ª Vara Empresarial da Comarca da Capital do Rio de Janeiro que, apreciando a pretensão deduzida pelo Grupo OI a fls.113.147/113.190, consistente na publicação de edital de convocação de credores para apresentação de aditamento ao plano de recuperação judicial aprovado em março/2024 e de concessão de medida liminar a fim de que se determine a suspensão da exigibilidade de obrigações vincendas previstas no PRJ, pelo período de 180 dias, sem que incida em situação de falência, assim como de eventuais constrições patrimoniais no interregno, decidiu na forma dos dispositivos assim vazados:

> "(...) Diante do contexto assim definido, reputo imprescindível a prévia manifestação - ainda que breve - do órgão do Ministério Público, da Administração Judicial conjunta e, também, do Observador Judicial, já nomeado, acerca do aditamento ao PRJ apresentado, e os documentos que o instruem, no prazo comum de 05 (cinco) dias corridos, sob o aspecto de sua legalidade e mínima viabilidade econômico-financeira do ADITAMENTO apresentado. Inclusive à luz dos relatórios elaborados pela recuperanda e juntados a partir de ID 113.679, em possível cotejo com os RMAs apresentados pela AJ.
>
> Além disso, deverá vir manifestação acerca do seguinte:
>
> (1) Relativamente à Administração Judicial Conjunta, deverá:
>
> a) esclarecer, clara e objetivamente, o cumprimento e observância das alíneas do inciso II do art. 22 da LRF;
>
> b) afirmar, ou não, o efetivo cumprimento do PRJ homologado até a data da petição de ADITAMENTO (01.07.2025) e a viabilidade de



MONICA MARIA COSTA DI PIERO:29835    Assinado em 25/07/2025 10:51:42
Local: GAB. DES(A). MONICA MARIA COSTA DI PIERO



manutenção de seu cumprimento pelos 3 meses a seguir da apontada data;

c) discriminar os valores do ativo e do passivo da recuperanda no início da 2ª RJ (aqui considerada distribuição da cautelar preparatória) e em 01.07.2025 (data da protocolização do ADITAMENTO em análise prefacial). Para a quantificação, deverá se basear tanto no valor computado com abatimentos decorrentes do PRJ e, também, sem este abatimento (ou seja, o valor decorrente da exigibilidade dos débitos originários retomada);

d) discriminar fluxo de caixa na data do ajuizamento da 2ª RJ (aqui considerada distribuição da cautelar preparatória) e em 01.07.2025 (data da protocolização do ADITAMENTO em análise prefacial);

e) discriminar a quantidade de funcionários diretos e indiretos da recuperanda na data de requerimento da 2ª RJ (aqui considerada distribuição da cautelar preparatória) e em 01.07.2025 (data da protocolização do ADITAMENTO em análise prefacial)

f) discriminar valores pagos aos credores trabalhistas CLASSE I e aos credores parceiros com e sem garantia, pagos nos últimos 3 meses, e o que deverá ser pago nos próximos 3 meses (aqui considerados meses inteiros; ou seja, estamos em curso do mês de junho/2025 e os 3 meses antecedentes são: maio, abril e março/2025, e assim se fará a projeção dos meses futuros).

(2) Quanto ao watchdog, fica determinado que priorizará, neste momento, a manifestação relativa ao pedido de aditamento ao plano deduzido neste processo principal, com foco nos resultados da recuperanda dos últimos 6 meses imediatamente passados e, ainda, nas projeções dos 3 meses imediatamente futuros, à luz do contido nos autos, assim como de todo e qualquer documento e informação a qual reputar necessário acessar. Ficando expressamente autorizado a solicitá-los diretamente à Recuperanda, que deverá entregá-los. Bem como investido em todos os poderes elencados nas cláusulas 7.2.2 e 7.2.3 do PRJ homologado, devendo, caso se configure situação de sigilo/confidencialidade de informações (cláusulas 7.2.4.1 e 7.2.4.1.1 do PRJ homologado), apresentá-las ao Juízo após requerimento de juntada em incidente sigiloso.

Assim investido, deverá o Observador judicial requisitar da Recuperanda informação sobre eventual alteração substancial remuneratória (inclusive bônus) praticada em prol de seus gestores nos últimos 6 meses (com oscilações para cima ou para baixo), Diretoria, Conselho Administrativo e seus órgãos gerenciais superiores ("Nova Gestão"), inclusive valores direcionados a pessoas jurídicas que possam integrar, bem como se tais alterações foram noticiadas à Administração Judicial no período. Estas constatações deverão constar de sua manifestação





Destaco que são instados os seguintes personagens a se manifestarem em prazo comum de cinco dias corridos: Administração Judicial, Watchdog e Ministério Público, solicitando este Juízo, a este último, a colaboração de emitir seu parecer no prazo comum, tanto em razão da delimitação do objeto de avaliação acima estabelecida como por se cuidar de processo eletrônico que isto viabiliza, notadamente em razão da urgência alegada.

Intimem-se todos, com urgência, inclusive por telefone e e-mail.

Intime-se também, dando-se ciência inequívoca do ADITAMENTO AO PRJ apresentado pelo Grupo OI em recuperação, assim como do ajuizamento do pedido de recuperação judicial de 2 subsidiárias (SEREDE e BRASIL TELECOM CALL CENTER S.A. - TAHTO), a ANATEL e ao CADE.

Destarte, faculto à recuperanda, no mesmo prazo, manifestar-se sobre eventual exercício da faculdade inserida na cláusula 4.2.12, d, do PRJ.

Por fim, ciente quanto ao ID 114.123 (ofício da e. 1ª Câmara de Direito Privado, sobre providencias adotadas quanto aos patronos da recuperanda). A respeito, este Juízo já adotou deliberação própria, no item VI de ID 113141. Por sua vez, a r. Serventia certificou a regularidade da representação processual no âmbito do processo em curso nesta primeira instancia (ID 114136).

Devolvo os autos da conclusão para cumprimento IMEDIATO de todo aqui contido. (fls.114.138/114.142)"

"Por todo o exposto:

1. Diga a Recuperanda sobre a conclusão do RMA de julho de 2025 que aponta para o descumprimento substancial de obrigações do PRJ homologado, justificando e trazendo comprovação de eventual alegação deduzida;

2. Sucessivamente, diga a Recuperanda se exercerá opção prevista na cláusula "4.2.12, "d"" do PRJ;

3. Em seguida, a AJ (inclusive sobre o dever inserto no inciso II, inciso "b" da LRE);

4. Então, ao Ministério Público sobre todo o acrescido;

5. Intime-se o WatchDog para início IMEDIATO do múnus que lhe foi incumbido e aceito, estimando honorários para tanto, ante ampliação aqui estabelecida;





6. Suspendo o pagamento de bonificações em prol da Alta Administração da Recuperanda, mantendo, por hora, suas remunerações fixadas em assembléia de 29 de abril de 2025;
7. Determino que toda e qualquer alienação ou oneração de ativos será necessariamente precedida de autorização judicial, sob pena de ineficácia de ato que isto deixe de observar;

8. Determino expedição de comunicação, pela Administração Judicial, devidamente traduzida para a língua inglesa, à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), informando que "se encontra em tramitação perante este Juízo da 7ª Vara Empresarial do Rio de Janeiro, RJ, processo de recuperação judicial do Grupo Oi, no qual a Recuperanda deixou de cumprir obrigações assumidas no mês de junho de 2025, sem justificativa para tanto, até o presente momento. (116.202/116.209 -item IV)"

Defende a Agravante (**V.TAL - Rede Neutra de Telecomunicações S.A.**) a necessidade de reforma parcial da decisão agravada alicerçada nos seguintes argumentos:

(a) esvaziamento da jurisdição nacional e uso abusivo do procedimento estrangeiro, uma vez que a intenção do Grupo Oi de distribuir, perante a Corte de Nova York, o procedimento previsto no U.S. Chapter 11 do Bankruptcy Code para reestruturação das obrigações que não podem ser reestruturadas no Brasil, ocasiona manifesto esvaziamento do direito dos aos credores e fornecedores, bem como esvaziamento da jurisdição da autoridade brasileira responsável pela condução da Recuperação Judicial em curso. Entende que, caso se entendam superadas a ilegalidades que obstam o pedido de Chapter 11 em si, a questão deve ser previamente submetida não apenas aos acionistas da Oi (art. 122, IX, da Lei 6.404/76), mas também aos credores da Recuperação Judicial (art. 35, **I**, "f", da LRF**)**.
(b) violação à legislação nacional, tendo em vista que os motivos que justificariam um pedido de reestruturação na forma do Chapter 11, consistentes na necessidade de novação de créditos que, nos termos da legislação brasileira, são extraconcursais, e excluídos do processo de recuperação judicial em curso, representa verdadeira afronta à jurisdição nacional, salientando que o Grupo Oi não pode ajuizar um processo da mesma natureza perante a Corte de Nova York.
(c) existência de precedente relevante, considerando que o Grupo Oi defendeu veementemente a jurisdição brasileira e a competência exclusiva desse E. Tribunal para processamento da Recuperação Judicial, de modo a afastar eventual alegação de competência concorrente e, por conseguinte, renúncia ao direito de ajuizar o Chapter 11 perante a Justiça nova-iorquina.



(d) legislação suprimida, uma vez que a Lei de Recuperação e Falências, com as inovações trazidas pela Lei nº 14.112/20, não admite a coexistência de dois processos principais, sendo certo que o processo de recuperação principal deve tramitar no país em que o devedor tenha o centro de seus interesses principais que, no caso, é o Brasil;

(e) violação à ordem pública, tendo em vista que a conduta das recuperandas viola os artigos 49 e 48, II, ambos da LRJF. Destaca que a finalidade do art.49, da LRJF, é assegurar que, mesmo depois de iniciada a recuperação judicial do devedor, seja dada continuidade às suas atividades empresariais, sendo certo que a preservação da atividade empresarial só é possível se aqueles que contratam com a empresa em crise tiverem a garantia de que seus créditos não se submeterão ao concurso de credores, sendo pagos antes de todos os outros. Acrescenta, ainda, que a pretensão das Recuperandas de viola frontalmente a previsão do art. 48, II, da LREF, cujo interregno se constitui decisão legislativa racional e fundamentada, que visa a impedir que empresas inviáveis se valham eternamente dos procedimentos recuperacionais, estes destinados às empresas viáveis. Salienta, por fim, que eventual pedido de reorganização, sob a forma de Chapter 11 nos Estados Unidos, esbarra no Plano aprovado, no qual os credores autorizaram a Oi tão somente com vistas "à implementação das disposições deste Plano" (Cláusula 10.15.2, fls. 56.917).

Pede seja concedida a antecipação dos efeitos da tutela recursal, para: (i) determinar que, até que haja expresso pronunciamento do MM. Juízo a quo, o Grupo Oi se abstenha de distribuir pedido principal de recuperação judicial em qualquer jurisdição estrangeira, inclusive de incorrer em custos para o ajuizamento do processo (inclusive, mas não apenas, com a contratação de assessores jurídicos e financeiros), ou, caso já o tenha distribuído ao tempo da concessão da medida, dele desista, sob pena de multa diária no valor a ser arbitrado por esse E. Tribunal; (ii) seja o Administrador Judicial da Recuperação Judicial oficiado, para que informe ao Tribunal de Falências do Distrito Sul de Nova York que (a) não há qualquer pronunciamento oficial desse E. Tribunal de Justiça, seja em primeira ou segunda instância, em favor da distribuição de um Chapter 11 perante aquela Corte; (b) que o Plano aprovado não foi completamente implementado; e (c) não houve qualquer alteração significativa no centro de interesses principais do Grupo Oi desde o ajuizamento da Recuperação Judicial; e (iii) seja o MM. Juízo a quo oficiado, para que se abstenha de apreciar os pedidos formulados pelas recuperandas às fls. 113.147/113.191 dos autos de origem antes da oitiva do Tribunal de Contas da União e da Comissão de Valores Mobiliários.

No mérito, requer o provimento do recurso para: a) para determinar ao o Grupo Oi que, até que haja manifestação sobre o tema do





MM. Juízo da recuperação judicial, se abstenha de distribuir pedido principal de recuperação judicial em qualquer jurisdição estrangeira, inclusive de incorrer em custos para o ajuizamento do processo (inclusive, mas não apenas, com a contratação de assessores jurídicos e financeiros), ou, caso já o tenha distribuído ao tempo da concessão da medida, dele desista, sob pena de multa diária em montante a ser arbitrado por este E. Tribunal; b) para determinar ao Administrador Judicial que, enquanto não houver manifestação formal do MM. Juízo da Recuperação Judicial sobre este tema, informe ao Tribunal de Falências do Distrito Sul de Nova York que (a) não há qualquer pronunciamento oficial desse E. Tribunal de Justiça, seja em primeira ou segunda instância, em favor da distribuição de um Chapter 11 perante aquela Corte; (b) que o Plano aprovado não foi completamente implementado; e (c) não houve qualquer alteração significativa no centro de interesses principais do Grupo Oi desde o ajuizamento da Recuperação Judicial; e c) seja determinada a intimação da Secretaria de Controle Externo de Solução Consensual e Prevenção de Conflitos (SecexConsenso) do Tribunal de Contas da União e da Comissão de Valores Mobiliários para que, querendo, se manifestem sobre os pedidos formulados pelas recuperandas às fls. 113.147/113.191 dos autos de origem.

É o relatório. Passo a decidir.

**2.** Nos termos do decidido pela Segunda Seção do Superior Tribunal, no julgamento do Recurso Especial 1707066/MT, submetido ao rito dos recursos repetitivos (Tema 1022), "é cabível agravo de instrumento contra todas as decisões interlocutórias proferidas nos processos de recuperação judicial e nos processos de falência, por força do art. 1.015, parágrafo único, CPC".

Conquanto o juízo de primeira instância tenha nomeado os pronunciamentos judiciais recorridos como "despacho", não há como se refutar a inegável carga decisória que deles se extraem, repercutindo na esfera jurídica das partes, a teor do que dispõe o art. 203, § 2º, do Código de Processo Civil.

Deste modo, presente o requisito intrínseco de admissibilidade recursal (cabimento).

Ultrapassada a regularidade formal, passo à análise do pedido de antecipação da tutela recursal formulado pelo recorrente.

Com arrimo no art.1019, I, do CPC, recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art.932, incisos III e IV, o relator, no prazo de 5 (cinco) dias poderá atribuir efeito suspensivo ao recurso ou deferir em antecipação de





tutela, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão.

A concessão do efeito suspensivo ou ativo submete-se à presença de dois requisitos, quais sejam, a verossimilhança das alegações e perigo de dano irreparável ou de difícil reparação (artigo 995, parágrafo único, do Código de Processo Civil).

Vale colacionar doutrina acerca do tema[1]:

"Os pressupostos para a concessão de efeito suspensivo aos recursos são, em nosso entender, tipicamente cautelares: risco de dano grave, de impossível ou de difícil reparabilidade e probabilidade de provimento do recurso. Ou seja, periculum in mora e fumus boni iuris.

Este dano, cuja probabilidade deve ser demonstrada para obtenção do efeito suspensivo do recurso, não se identifica necessariamente com o comprometimento do direito material que se afirma ter no recurso. Basta que a parte demonstre que o dano será agravado, se a medida não for concedida.

A lei não menciona a hipótese de que ocorra situação inversa: o recurso tem efeito suspensivo por disposição expressa e a parte recorrente precisa da eficácia da decisão. Demonstrada a probabilidade de provimento do recurso e de ocorrência de dano, entendemos que o recorrente faz, sim, jus à providência correspondente ao adiantamento provisório do provimento do recurso. É o que se chamou de efeito ativo ou de tutela antecipada recursal, não expressamente prevista, mas admitida no sistema, em relação a todos os recursos com efeito suspensivo, por identidade de razões. É possível ser concedida nos casos de os recursos não tem terem efeito suspensivo".

Em sede de cognição sumaríssima, se vislumbra a verossimilhança nas alegações do agravante a evidenciar a probabilidade de provimento parcial do recurso.

Na origem, as recuperandas apresentaram aditamento ao PRJ homologado ao PRJ homologado, pugnando pela publicação de edital para convocação de Assembléia de Credores para sua votação, pugnando pela publicação de edital para convocação de Assembléia de Credores para sua votação, requerendo, ainda, a concessão de tutela de

---

[1] Comentário ao novo Código de Processo Civil/ coordenação Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, pág. 1473;





urgência para que seja suspensa, por 180 dias, a exigibilidade das obrigações previstas no PRJ, com afastamento de consequências do inadimplemento, inclusive constrições judiciais sobre seu patrimônio.

Em seu petitório de fls.113.147/113.190, afirmam que posteriormente à homologação, em 28.05.2024, do PRJ aprovado pelos credores em 19.04.2024, a despeito de vir implementando diversas medidas nele previstas necessárias à reestruturação de seu passivo, manutenção do capital de giro e à viabilização de seu novo plano estratégico de negócios, com expressiva redução de sua dívida líquida e franco desenvolvimento das atividades operacionais estratégicas apontadas como o seu atual "core busines", se depararam, contudo, com grave crise de caixa.

Alegam que as premissas que serviram de base para o racional econômico das diversas obrigações de pagamento assumidas no PRJ, não foram verificadas após sua homologação pelo Juízo Recuperacional, dentre elas: (i) a alienação da UPI ClientCo acarretaria no recebimento de R$ 7.3 bilhões em dinheiro no biênio de 2024-2025; (ii) que reduziriam drasticamente os custos de manutenção da infraestrutura necessária à prestação dos serviços de telefonia STFC com a adaptação da concessão para o modelo de autorização a partir de junho de 2024; e (iii) o desembolso em função do passivo trabalhista se manteria nos níveis históricos.

Defendem que a Nova Governança passou a estudar alternativas na busca de equacionar a pressão por liquidez imediata e, por conseguinte, assegurar a continuidade do seu soerguimento, em respeito ao princípio da função social e da preservação da empresa, concluindo pela necessidade de aprovação do aditamento ao Plano apresentado, mediante a seguinte proposta: (i) a alteração das condições de pagamento dos Créditos detidos por Credores Trabalhistas (Cláusula 4.1), Credores Fornecedores Parceiros (Cláusula 4.2.6), Credores Take or Pay com Garantia (Cláusula 4.2.8), Credores Take or Pay sem Garantia – Opção I (Cláusula 4.2.9), Credores Take or Pay sem Garantia – Opção II (Cláusula 4.2.10) e Credores Extraconcursais Aderentes (Cláusula 4.2.10); (ii) a utilização de depósitos recursais para a obtenção de recursos imediatos e pagamento dos credores (Cláusulas 5.4); e (iii) a possibilidade de contratação de empresa especializada para gerir os Imóveis por meio de veículo a ser criado para esse fim (Cláusula 5.3.5).

O juízo *a quo* reputou necessária a prévia oitiva da Administração Judicial, do WatchDog (nomeado para atuar no feito consoante decisão de id. 114.162) e do órgão do Ministério Público acerca da legalidade dos termos do aditivo e da mínima viabilidade financeira da empresa (ID 114.138).



Em petição posterior (id.115.354), afirmam as Recuperandas que, além da necessidade de aditamento ao PRJ para viabilizar a superação de suas dificuldades temporárias de fluxo de caixa de curto prazo, consideram recorrer a medidas judiciais no exterior, com o objetivo na reestruturação de créditos que não serão equacionados no aditamento, mediante a instauração do procedimento previsto no Capítulo 11 da Lei de Falências dos Estados Unidos da América ("CHAPTER 11"), perante o MM. Juízo do Tribunal de Falências dos Estados Unidos do Distrito Sul de Nova York (United States Bankruptcy Court for the Southern District of New York) ("CORTE AMERICANA"). Informam, ainda, que de forma se preparar para o potencial ajuizamento do CHAPTER 11, as RECUPERANDAS ajuizaram, na mesma data, pedido de desistência do CHAPTER 15, o qual será oportunamente decidido pela CORTE AMERICANA.

Justificam a necessidade da medida forte no argumento de que parte significativa das dívidas do GRUPO OI é atualmente composta por créditos que não foram abarcados pelo presente processo recuperacional e que foram incorridas, em sua quase totalidade, durante a gestão da antiga administração das recuperandas. Pontuam que, de forma a assegurar a continuidade de suas operações, consideram recorrer a medidas judiciais no exterior, com o objetivo de tratar tais débitos de forma organizada, uma vez que não podem ser incluídos no processo de recuperação judicial no Brasil.

Em relação ao aditamento e esclarecimentos solicitados pelo juízo *a quo*, assim se manifestou o Watchdog (id.115.773):

"CONCLUSÃO.

118. Diante do todo o exposto, esta Auxiliar concluiu, no exíguo prazo de 5 (cinco) dias corridos, por meio da exclusiva análise dos números apresentados pelas Recuperandas, sem que fosse possível confirmá-los, que apesar dos resultados positivos registrados nos últimos 6 (seis) meses, que a capacidade das Recuperandas de honrar as obrigações a curto prazo, inclusive as previstas no plano de reestruturação homologado, se encontra comprometida ou inexequível, de forma que eventual melhora depende de medidas estruturais destinadas ao reequilíbrio financeiro, que possibilitem a sustentabilidade econômica.

119. Nesse sentido, impende consignar que a Auxiliar deste Douto Juízo identificou, de par com o fluxo de caixa consolidado e realizado das Recuperandas, que, nos últimos 6 (seis) meses, as despesas são superiores às receitas e, por conta disso, o saldo em caixa vêm sofrendo uma diminuição



contínua, passando de R$ 1.396.000.000 ,00 (um bilhão, trezentos e noventa e seis milhões), em janeiro de 2025, para R$ 951.000.000,00 (novecentos e cinquenta e um milhões), em junho de 2025.

121. Essa situação revela que a receita gerada com a prestação de serviços tem s ido insuficiente para cobrir os custos diretamente relacionados à operação, ampliando a necessidade de outras receitas para reverter esse cenário.

120. Assim, diante da projeção apresentada pelas Recuperandas, o saldo do caixa contábil disponível, indicado acima, seria consumido nos próximos 3 (três) meses, conforme restou demonstrado acima, na medida que, nesse período, atingir-se-ia um resultado negativo de R$ 917.000.000,00 (novecentos e dezessete milhões), denotando a ausência de liquidez de curto prazo.

122. Por fim , impende consignar, ainda, que, desde fevereiro e março de 2025, quando as Recuperandas receberam o pagamento da venda do ativo – UPI ClientCo - em ações e não em espécie, como previsto no plano de reestruturação, o caixa ficou prejudicado, o que, por evidência, dificultou, ainda mais, o pagamento das suas obrigações projetadas no curto prazo, como já destacado acima".

Acerca do pedido de aditamento, também se manifestou o Administrador Judicial (id 115.999), tecendo as seguintes considerações:

(i)   a não comprovação do cumprimento integral das obrigações previstas no PRJ homologado foram informadas imediatamente pela A.J. Conjunta no último RMA (fls. 40 do relatório constante do incidente nº 0132219-66.2023.8.19.0001);

(ii)  pelos dados coletados, a Recuperanda iniciou tratativas com credores da classe Take or Pay, com objetivo de alongar os pagamentos, sem, contudo, noticiar tal fato nos autos, sendo tais tratativas suspensas em razão do pedido de APRJ, que passou a contemplar a reestruturação dos referidos créditos;

(iii) em relação ao pagamento dos Credores Fornecedores, as Recuperandas afirmam que a parcela 10 e subsequentes foram incluídas no APRJ, motivo pelo qual também não se apresentou a comprovação dos referidos pagamentos;

(iv) foi apresentada a relação das obrigações que deixaram de ser cumpridas, no valor total de R$ 79.591.329,73;

(v)  a análise das projeções de fluxo de caixa evidencia uma trajetória de deterioração progressiva e abrupta da liquidez, com variações líquidas de caixa negativas em todos os meses: iniciando em R$ 10 milhões positivo em 01/07/2025, com redução para -R$ 129 milhões em 31/07/2025; -R$ 291 milhões em agosto, -R$ 497 milhões em setembro e -R$ 650 milhões em



outubro, indicando incapacidade de geração de recursos suficientes para fazer frente aos compromissos imediatos (próximos 3 meses) do PRJ Homologado;

(vi) o Plano — especialmente no que se refere aos ativos mais relevantes, que vieram a compor as Unidades Produtivas Isoladas (UPIs) — não alcançou as expectativas de retorno inicialmente projetadas, ficando evidente que o ativo das Recuperandas sofreu uma redução considerável, sem que essa diminuição tenha sido acompanhada, na mesma proporção, por uma redução equivalente em seu passivo; e

(vii) a alienação dos ativos ocorreu em um cenário no qual os recursos obtidos com as vendas foram absorvidos, em grande parte, pelos encargos financeiros das dívidas e pela manutenção das operações, sendo que estas, por sua vez, até a data da manifestação (14.07.2025), ainda não atingiram o ponto de equilíbrio (break-even), continuando a gerar fluxo de caixa negativo.

O Ministério Público ofertou parecer, em sede de cognição sumária, no id.116.114, destacando, desde logo, a existência de ilegalidades no aditivo apresentado, as quais entende que devem ser superadas até a eventual deliberação em AGC, nos termos do art. 35, I, "a" da Lei 11.101/2005, no que diz respeito às seguintes cláusulas:

> "a) cláusula 4.1 e seguintes: impossibilidade de criação de subclasses de credores trabalhistas com créditos inferiores à 150 salários-mínimos;
> b) cláusulas 4.2.6, 4.2.7 e 4.2.8: mudança substancial na forma de pagamento dos credores fornecedores parceiros e credores take or pay; e
> c) cláusula 5.4: levantamento de depósitos recursais trabalhistas".

Após a vinda das manifestações acima relatadas, a magistrada *a quo* proferiu, de forma complementar, a decisão recorrida de fls. 116.202/116.209 (item IV).

Insurge-se a Recorrente contra parte das decisões de fls.114.138/114.142 e 116.202/116.209 (item IV), que assim determinaram: *(a) a intimação da ANATEL e do CADE, dando ciência inequívoca do ADITAMENTO AO PRJ apresentado pelo Grupo OI em recuperação, assim como do ajuizamento do pedido de recuperação judicial de 2 subsidiárias (SEREDE e BRASIL TELECOM CALL CENTER S.A. - TAHTO); (b) a expedição de comunicação, pela Administração Judicial, devidamente traduzida para a língua inglesa, à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), informando que "se encontra em tramitação perante este Juízo da 7ª Vara Empresarial do Rio de Janeiro, RJ, processo de recuperação judicial do*





*Grupo Oi, no qual a Recuperanda deixou de cumprir obrigações assumidas no mês de junho de 2025, sem justificativa para tanto, até o presente momento. (116.202/116.209 -item IV)"*.

Defende que, não obstante a destreza com o que o D. Juízo da Recuperação vem conduzindo a Recuperação Judicial, tendo, nos últimos meses, adotado diversas medidas para aumentar a celeridade processual e a fiscalização das atividades das recuperandas, o provimento judicial acabou por incorrer em dois equívocos pontuais, quais sejam: (i) ausência de intimação do Tribunal de Contas da União e da Comissão de Valores Mobiliários para manifestação sobre o Aditamento ao Plano; e (ii) ausência de adoção de medidas que impeçam o Grupo Oi de ajuizar um Chapter 11 no exterior antes que a matéria seja deliberada pelo D.Juízo da Recuperação, após oitiva das partes envolvidas e afetadas pela Recuperação Judicial.

Feita essa breve digressão cronológica dos fatos, passa-se ao exame do pedido de antecipação da tutela recursal.

Do cotejo probatório coligido aos autos, em sede de cognição sumária, chega-se a quatro conclusões inarredáveis com supedâneo nas decisões recorridas combatidas e manifestação do Watchdog e do Administrador Judicial: (1ª.) não há comprovação do cumprimento integral das obrigações previstas no PRJ; (2ª.) a capacidade das recuperandas de honrar as obrigações a curto prazo, inclusive as previstas no plano de reestruturação homologado, se encontra comprometida; (3ª) há proposta de aditamento ao PRJ com fundamento na superveniência de fatos que supostamente inviabilizaram a sua execução; (4ª.) instauração do procedimento previsto no Capítulo 11 da Lei de Falências dos Estados Unidos da América ("CHAPTER 11"), perante o MM. Juízo do Tribunal de Falências dos Estados Unidos do Distrito Sul de Nova York (United States Bankruptcy Court for the Southern District of New York) ("CORTE AMERICANA"), com o objetivo de reestruturação de créditos que não serão equacionados no aditamento e que não podem ser incluídos no processo de recuperação judicial no Brasil.

Os fatos relatados denotam a existência de grave ameaça a toda universalidade de credores sujeitos à recuperação judicial, bem como trata de questão relacionada à soberania e a segurança jurídica.

A decisão recorrida encontra-se escorreita, sendo o processo conduzido de forma célere, criteriosa e minuciosa pelo juízo originário, razão pela qual ratifico suas razões de decidir, objeto da presente irresignação recursal, porém a elas acresço algumas questões de ordem pública.



As atividades desenvolvidas pelo Grupo OI estavam sujeitas a prévia outorga concessiva da ANATEL, com fundamento na Lei Federal n.º 9.247/1997 (Lei de Telecomunicações), decretos regulamentares, na Lei Federal n.º 12.485/2011 (Lei do SeAC") e a um quadro regulamentar global para a prestação de serviços de telecomunicações, editado pela Agência Nacional de Telecomunicações ("ANATEL"), de acordo com as políticas públicas do Ministério das Comunicações.

Todavia, foi apresentada proposta de solução consensual formulada pela Agência Nacional de Telecomunicação (Anatel) com o objetivo de fixar os termos para a extinção antecipada e a transformação do contrato de concessão do Sistema de Telefonia Fixa Comutada (STFC) celebrado com a empresa Oi S.A. - em Recuperação Judicial (Oi) em autorização, conforme previsão contida na Lei Geral de Telecomunicações

A solução consensual resultou em acordo desenhado e homologado junto ao Tribunal de Contas da União (TCU), em sessão realizada em 03.07.24.

O contrato de concessão do Sistema de Telefonia Fixa Comutada (STFC) celebrado com a empresa Oi S.A. - em Recuperação Judicial (Oi) foi então transformado em autorização, consoante previsão contida na Lei 13.879/2019.

Em 30.09.2025, o Termo Único de Autorização de serviço, decorrente da aprovação do Termo de Autocomposição (Acordo) para a adaptação da outorga de telefonia fixa (STFC) foi firmado entre a Oi (diretamente e por meio de empresa de rede neutra em que detém participação acionária, a V.tal), a Anatel e o Ministério das Comunicações (este, representando os interesses da União Federal), com a anuência da Advocacia-Geral da União (AGU).

A adaptação da Oi e o impacto para o cidadão foram explicitados no portal gov.br, e podem ser assim sintetizados[2]:

> 1.   A Oi é hoje a maior concessionária da telefonia fixa do país e presta o serviço nas modalidades local e de longa distância em todos os estados brasileiros, exceto São Paulo. A empresa tem quase seis milhões de acessos de telefonia fixa, atendidos em mais de 4,6 mil municípios.
> 2.   O desligamento imediato da telefonia fixa pela Oi – resultante do encerramento dos contratos de concessão sem a realização da migração para autorização – poderia deixar

---

[2] https://www.gov.br/anatel/pt-br/assuntos/adaptacao/adaptacao-da-oi





milhões de pessoas que moram em localidades isoladas sem acesso a qualquer outro meio de comunicação. Além disso, poderia haver perda de conexão dos serviços públicos de emergência, como polícia e bombeiros, e falhas no funcionamento dos prestadores de serviço de comunicação e dados que utilizem o serviço da antiga concessionária como ponto de interconexão à rede de telecomunicações. Assim, sua desativação precisaria ser feita de forma ordenada, uma vez que sua rede ainda serve de suporte para serviços essenciais à população.

3.    Além disso, a Oi enfrenta notórios problemas financeiros desde 2016 e está passando por processo de 2a recuperação judicial. No último mês de abril, a companhia conseguiu aprovar novo plano de recuperação judicial junto a credores, buscando reestruturar suas dívidas e captar financiamentos. O plano foi homologado no Tribunal de Justiça do Rio de Janeiro. Um dos pilares desse plano era justamente a resolução da concessão da telefonia fixa. Sua inviabilização poderia acarretar a falência da empresa, com impactos sistêmicos a todo o setor de telecomunicações nacional. Neste caso, o Estado teria que assumir, mesmo que temporariamente, a prestação do serviço público de telefonia fixa. Nesta hipótese, haveria necessidade de investimento de recursos públicos para manter a telefonia fixa, com custo anual estimado entre R$ 2 bilhões e R$ 4 bilhões.

4.    O regime privado de autorização garante uma estrutura mais eficiente e menos onerosa para a empresa enquanto mantém serviços essenciais para os usuários e traz benefícios para a infraestrutura de telecomunicações nacional.

5.    Sua realização apresenta vantagens significativas para todos os envolvidos e para a sociedade brasileira como um todo, assegurando a continuidade da telefonia fixa em áreas onde a Oi é a única provedora de serviços de voz até o final de 2028, beneficiando mais de 3,2 milhões de brasileiros em mais de 10 mil localidades, principalmente nas regiões Norte e Nordeste.

6.    Além disso, o acordo garante a manutenção dos contratos vigentes para Serviços de Utilidade Pública e permite a gestão planejada dos pontos de interconexão com outras prestadoras, assegurando a integridade da rede.

7.    A adaptação de contratos de telefonia fixa traz, entre outros, a redução de encargos legais e regulatórios que não se justificam mais, ante o atual cenário de redução do interesse na telefonia fixa. Ademais, este serviço passa a ser explorado no regime privado, ou seja, segundo regras já aplicáveis aos demais serviços de telecomunicações, como por exemplo a telefonia móvel e a banda larga, que ao contrário da telefonia fixa, continuam em processo de expansão da base de consumidores e não precisaram ser prestados em regime público para promoverem a massificação do acesso.





Por intermédio do referido termo convencionou-se não apenas a migração da exploração dos serviços para o regime privado mediante termo de autorização, mas também, como objeto principal, foram pactuados compromissos de ordem pública, quais sejam: (i) assegurar a continuidade da prestação de serviço de voz, até 2028, em 10650 localidades sem alternativas de comunicação na região de prestação de serviço da Oi; (ii) garantir R$ 5,8 bilhões de investimentos, sendo R$ 800 milhões para a manutenção do serviço e R$ 5 bilhões em compromissos de conectividade de escolas, implantação de cabos submarinos e data centers, que resultarão em melhorias na conectividade nas Regiões Norte e Nordeste; (ii) reduzir o impacto de eventual condenação da União na ante o exercício do direito de lançar a cláusula de arbitragem prevista no Contrato de Concessão do STFC; (iii) permitir a recuperação de créditos devidos à Advocacia Geral da União (AGU); (iv) implantação de acesso com fibra ótica em quatro mil escolas que não estão interligadas à internet ou cuja interligação apresenta velocidade de download inferior ao padrão mínimo estabelecido. Na seleção das escolas privilegiou-se as situadas em estados do Nordeste (64%) e na zona rural (80%); (v) além da infraestrutura de rede, será instalada uma rede interna para distribuir o sinal de internet aos alunos, professores e funcionários. O custo total do investimento está estimado em R$ 1,19 bilhão; (vi) lançamento de cabos submarinos nas regiões Norte e Sul do Brasil, além da implantação de rotas terrestres para conectar o acesso do cabo no litoral e melhorias em rotas adjacentes; (vii) realização de investimentos na construção de novos centros de dados (data centers); e (viii) possibilidade de investimentos adicionais até o limite de R$ 2,3 bilhões, na hipótese de a arbitragem promovida pela Oi resultar em valores que excedam R$ 12,5 bilhões.

Impende registrar que a V.tal, ora recorrente, também é responsável pela execução dos compromissos assumidos no referido Termo (descritos em seu anexo 5), colaborando com as contrapartidas necessárias à adaptação, essencial para o êxito da segunda recuperação judicial do Grupo Oi.

Portanto, a transformação do contrato de concessão do Sistema de Telefonia Fixa Comutada (STFC) celebrado pela Oi S.A. em autorização não tem o condão de desnaturar a prestação do serviço público essencial e de natureza continuada, fazendo exsurgir um irrefutável interesse público que suplanta a natureza jurídica meramente negocial do instituto justificando uma atuação mais profícua do Poder Judiciário.

Aliada a inquestionável singularidade que envolve a presente recuperação judicial no que tange ao inexorável interesse público que





Página
66

decorre da prestação dos serviços à coletividade pelo Grupo OI, está a necessidade satisfação pontual das obrigações pactuadas no PRJ aprovado pelos credores e homologados judicialmente.

Quanto este último ponto, as Recuperandas apresentaram pedido de suspensão do pagamento das obrigações assumidas no presente processo pelo prazo de 180 dias, além de ter apresentado aditivo ao plano, em razão de grave crise de caixa para honrar com as mesmas, com o escopo de alcançar os originariamente excluídos credores trabalhistas, repactuar as condições e prazos de pagamento de fornecedores, credores parceiros, *take or pay* com e sem garantia.

Em manifestação nos autos originários, afirmam as Recuperandas que tais medidas não seriam suficientes para estancar a atual situação econômico-financeira que se delineou, razão pela qual se faz, ainda, necessária, a deflagração de procedimento de recuperação em Corte Norte Americana (Chapter 11), no qual pretende negociar débitos não compreendidos pela presente recuperação judicial.

No entanto, o processo em trâmite perante a Jurisdição Brasileira foi expressamente reconhecido pelo Grupo Oi e pelas autoridades competentes como o processo principal.

Por oportuno, transcreve-se parte das decisões que assentaram a jurisdição nacional para o processamento da primeira e da segunda recuperação judicial das empresas devedoras, *in verbis:*

"O tema é novo e merece enfrentamento.

O primeiro ponto que merece destaque nesta análise é que as empresas FINCO e PTIF são meros veículos financeiros criados pelo Grupo OI para captação de recursos no exterior de forma a financiar suas atividades produtivas. São subsidiárias integrais, criadas na Holanda, sem qualquer atividade operacional.

A atividade operacional do Grupo Oi está no Brasil. É aqui o principal estabelecimento das empresas em Recuperação; aqui está situada a atividade geradora de riqueza, o centro de interesses que justifica, na teoria e na prática, a criação de um sistema de proteção a empresas. Este é o foro apropriado para o trâmite do processo de reorganização.

E, por isso, entendo que todas as questões relativas à holding e suas subsidiárias devem ser decididas de acordo com a legislação brasileira. O direito brasileiro não permite qualquer jurisdição concorrente de autoridade judiciária estrangeira ou equivalente quando o devedor insolvente possui o seu estabelecimento principal no Brasil".





**"JURISDIÇÃO E CONSOLIDAÇÃO PROCESSUAL**

O presente pedido de recuperação judicial foi formulado por Oi S.A., PTIF e Oi Coop. PTIF e Oi Coop são sociedades não operacionais que, no passado, foram utilizadas como veículos para captação de recursos a partir do exterior, voltados ao financiamento das atividades do Grupo Oi no Brasil. As obrigações da PTIF e da Oi Coop, apesar de contraídas originalmente no exterior mediante a emissão de *bonds,* sempre foram cumpridas no Brasil, com lastro nas operações brasileiras de sua controladora Oi.

Relembre-se que, quando do processamento da 1ª recuperação judicial do Grupo Oi, a competência desse juízo para processar a recuperação judicial da subsidiária holandesa Oi Coop chegou a ser questionada no âmbito do procedimento instaurado com base no *Chapter* 15 do Código de Falências Norte Americano, cujo julgamento proferido pelo juízo do Distrito Sul de Nova York, nos Estados Unidos, confirmou que é no Brasil que está localizado o centro de principais interesses da Oi Coop e do Grupo Oi.

Ao deferir o processamento da 1ª recuperação judicial, este Juízo já havia entendido que: "*E, na medida em que as empresas integrantes do GRUPO OI atuam de forma coordenada e integrada no sistema brasileiro de telecomunicações, e sob controle societário, operacional, financeiro, administrativo e gerencial único - exercido pela sociedade controladora OI - inclusive com relação às sociedades-veículos financeiros não operacionais constituídas no exterior - a proteção judicial deve alcançar ao conglomerado como um todo.*" (fls. 89496-89525 do processo nº 0203711-65.2016.8.19.0001).

Tratou-se, na época, de verdadeiro *leading case,* pois pouco ou nada havia de insolvência transnacional nos tribunais brasileiros e nem a legislação em vigor tratava dessa hipótese. O Poder Judiciário foi demandado a suprir a lacuna legal, através da interpretação sistemática e analítica do ordenamento e, notadamente, dos princípios constitucionais aplicáveis. Posteriormente, a Lei 14.112/2020 trouxe à Lei 11.101/2005 o capítulo da Insolvência Transnacional (VI-A) para regulamentar a hipótese.

Naquela ocasião, também a consolidação processual ainda nem estava normatizada, o que ocorreu com as alterações trazidas pela Lei 14.112/2020, nos termos do art. 69-G: *Os devedores que atendam aos requisitos previstos nesta Lei e que integrem grupo sob controle societário comum poderão requerer recuperação judicial sob consolidação processual.*





Pelo exposto, mostram-se atendidos os requisitos para a consolidação processual, nos termos do art. 69-G da Lei nº 11.101/05.

Indiscutível que há controle societário, operacional, financeiro, administrativo e gerencial único exercido pela sociedade controladora Oi S.A. em relação às sociedades-veículos financeiros não operacionais constituídas no exterior, sendo evidente a existência de um grupo econômico de fato e direito, tendo todas as Requerentes apresentado documentação individualmente, o que permite o litisconsórcio ativo para fins de ajuizamento da Recuperação Judicial.

Assim, reiterando os termos da decisão antecipatória proferida no ID 44532251 da Tutela Cautelar Antecedente nº 0809863-36.2023.8.19.0001, a consolidação processual é medida que deve ser aplicada ao presente caso".

Conforme assinalado nesta última decisão, quando do processamento da 1ª recuperação judicial do Grupo Oi, a competência do juízo a quo para processar a recuperação judicial da subsidiária holandesa Oi Coop chegou a ser questionada no âmbito do procedimento instaurado com base no *Chapter* 15 do Código de Falências Norte Americano, cujo julgamento proferido pelo juízo do Distrito Sul de Nova York, nos Estados Unidos, confirmou que é no Brasil que está localizado o centro de principais interesses da Oi Coop e do Grupo Oi.

Não há dúvidas, portanto, de que toda a atividade operacional do Grupo OI se encontra localizada no Brasil.

A prevalência da jurisdição brasileira, no presente caso, encontra respaldo também nos interesses jurídicos envolvidos, fortemente vinculados a questões de ordem pública, prestação de serviço público de comunicação, questões sociais e função social do Grupo Oi, inclusive com obrigações perante o TCU e órgãos públicos de vários níveis da federação nacional brasileira.

Portanto, considerando que estamos no prazo de soberania da jurisdição brasileira e o plano aprovado não foi completamente implementado pelas Recuperandas, forçoso concluir, em linha de princípio, que a medida intentada junto à Corte Estrangeira poderá impactar diretamente nos créditos reestruturados na presente recuperação judicial, frustrando o cumprimento das obrigações pactuadas e o soerguimento das sociedades devedoras, razão pela qual se faz necessário, diante da gravidade e urgência da questão e, de forma a não suprimir instância, apenas determinar seja aditada a comunicação endereçada à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York.





Assentada acima a verossimilhança das alegações da recorrente, o perigo na demora se concretiza a partir dos fatos noticiados de que os créditos submetidos a recuperação judicial possam ser frustrados prejudicando o cumprimento do PRJ e, por conseguinte, o pagamento dos milhares de credores alcançados pelo benefício legal, sobretudo quando se envolve a prestação de serviços essenciais à coletividade.

Assim sendo, de forma a preservar a segurança jurídica e a autoridade da jurisdição nacional, respeitando, de outro lado, a soberania dos países envolvidos e a harmonização do sistema jurídico transfronteiriço, determino apenas que seja comunicado nos autos do Processo Chapter 15 a recomendação para que o Juízo da Corte de NY, antes de proferir qualquer decisão no processo relacionado ao Chapter 15 do Grupo Oi, aguarde a decisão do Juízo brasileiro tanto com relação à verificação e consequências do descumprimento do PRJ, já noticiado, quanto do pedido de Aditamento ao PRJ do processo principal em trâmite no Brasil.

**3.** Por todo o exposto, **DEFIRO, parcialmente, o pedido de antecipação da tutela recursal** a fim de que seja <u>aditada</u> a comunicação a ser expedida pela Administração Judicial à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), com a recomendação ao Juízo da Corte de NY, para que, antes de proferir qualquer decisão no processo relacionado ao Chapter 15 do Grupo Oi, aguarde a decisão do Juízo brasileiro tanto com relação à verificação e consequências do descumprimento do PRJ, já noticiado, quanto do pedido de Aditamento ao PRJ do processo principal em trâmite no Brasil.

Sem prejuízo, encaminhe-se cópia da presente decisão à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), com a ressalva de que não há, por parte desta jurisdição, qualquer pronunciamento judicial assentindo com a deflagração de outros procedimentos que envolvam a reestruturação do Grupo OI em outras jurisdições.

**4.** Por conta da assinatura do Termo de Autocomposição (Acordo) para a adaptação dos contratos de concessão para o regime de autorização, intime-se dando-se ciência inequívoca do ADITAMENTO AO PRJ apresentado pelo Grupo OI em recuperação, assim como do ajuizamento do pedido de recuperação judicial de 2 subsidiárias (SEREDE e BRASIL TELECOM CALL CENTER S.A. - TAHTO), a Secretaria de Controle Externo de Solução Consensual e Prevenção de Conflitos (SecexConsenso) do Tribunal de Contas da União (TCU), e a Comissão de Valores Mobiliários (CVM).





**70**

**5.** Por fim, determino, de ofício, seja oficiada à Comissão de Valores Mobiliários (CVM), encaminhando-se, outrossim, a cópia dos 2 (dois) últimos RMA´s.

**6.** **Oficie-se, com urgência, ao juízo *a quo*,** dando-lhe ciência desta decisão e solicitando informações;

**7. Intime-se o Administrador Judicial;**

**8. Intime-se a Curadoria de Massas**;

**9. Aos agravados** para apresentarem resposta, no prazo legal de quinze dias, previsto no art.1019, II, do CPC;

**10.** Após, a douta **Procuradoria de Justiça**.

Rio de Janeiro, ____ de _____ de 2025.

**Monica Maria Costa**
**Desembargadora Relatora**



## Exhibit A-2

**Brazilian Appellate Court Order (Certified English Translation)**

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
51

**FIRST CHAMBER OF PRIVATE LAW OF THE COURT OF JUSTICE OF
THE STATE OF RIO DE JANEIRO**

**Instrumental appeal no. 0059754-91.2025.8.19.0000**

**Appellant: V.TAL - Rede Neutra de Telecomunicações S.A. Appellee:
OI S.A. - under judicial recovery and Others**

**Rapporteur: Judge Monica Maria Costa**

<u>**DECISION**</u>

**1.** This is an appeal filed against the decisions on pages
114.138/114.142 and 116.202/116.209 (item IV - 114.138), both handed
down by the Honorable Judge of the 7th Business Court of the District of the
Capital of Rio de Janeiro, which, considering the request submitted by Grupo
Oi on pages 113.147/113.190, consisting of the publication of a notice
summoning creditors to present an amendment to the judicial recovery plan
approved in March/2024 and of granting a preliminary measure in order to
determine the suspension of the enforceability of obligations due provided for
in the judicial recovery plan, for the period of 180 days, without incurring a
situation of bankruptcy, as well as of possible asset constraints in the interim,
decided in the form of the provisions thus recorded:

> "(...) In view of the context thus defined, I consider it essential that the
> Public Prosecutor's Office, the joint Judicial Administration and also
> the Judicial Observer, already appointed, provide a prior statement -
> albeit brief - regarding the amendment to the judicial recovery plan
> presented, and the supporting documents, within the common period
> of 05 (five) calendar days, from the perspective of its legality and
> minimum economic-financial viability of the AMENDMENT presented.
> Including in light of the reports prepared by the recovering party and
> attached from ID 113.679, in possible comparison with the RMAs
> presented by JA.
>
> In addition, there should be a statement regarding the following:
>
> (1) Regarding the Joint Judicial Administration, they must:
>
> a) clarify, clearly and objectively, compliance with and observance
> of the paragraphs of item II of art. 22 of the LRF;
>
> b) affirm, or not, the effective compliance with the judicial recovery
> plan approved up to the date of the AMENDMENT petition
> (07.01.2025) and the feasibility of

[Seal: [PJERJ DIGITALLY SIGNED]

Rap. Judge Monica Maria                    1

MONICA MARIA COSTA DI PIERO:29835    Signed on 07/25/2025 10:51:42 AM
Location: JUDGE MONICA MARIA COSTA DI PIERO'S

maintenance of its compliance for 3 months after the indicated date;

c) discriminate the values of the assets and liabilities of the recovering party at the beginning of the 2nd JR (here considered distribution of the preparatory precautionary measure) and on 07.01.2025 (date of filing of the ADDENDUM in prefatory analysis). For quantification, it should be based on both the value computed with deductions resulting from the judicial recovery plan and, also, without this deduction (that is, the value resulting from the enforceability of the original debts resumed);

d) itemize cash flow on the date of filing of the 2nd JR (here considered distribution of the preparatory precautionary measure) and on 07.01.2025 (date of filing of the ADDENDUM in prefatory analysis);

e) specify the number of direct and indirect employees of the recovering party on the date of request for the 2nd JR (here considered distribution of the preparatory precautionary measure) and on 07.01.2025 (date of filing of the ADDENDUM in preliminary analysis)

f) itemize amounts paid to CLASS I labor creditors and partner creditors with and without guarantee, paid in the last 3 months, and what should be paid in the next 3 months (here considered whole months; that is, we are in the month of June/2025 and the 3 previous months are: May, April and March/2025, and this is how the projection of future months will be made).

(2)    As for the watchdog, it is determined that it will prioritize, at this time, the statement regarding the request for an amendment to the plan submitted in this main process, focusing on the results of the recovering party for the past 6 months and, also, on the projections for the next 3 months, in light of the content of the records, as well as any and all documents and information that it deems necessary to access. Being expressly authorized to request them directly from the Recovering Party, who must deliver them. As well as being vested with all the powers listed in clauses 7.2.2 and 7.2.3 of the approved judicial recovery plan, and should, if a situation of secrecy/confidentiality of information arises (clauses 7.2.4.1 and 7.2.4.1.1 of the approved judicial recovery plan), present them to the Court after requesting that they be included in a confidential incident.

Thus invested, the Judicial Observer must request information from the Recovering Party about any substantial change in remuneration (including bonuses) made in favor of its managers in the last 6 months (with upward or downward fluctuations), Board of Directors, Administrative Council and its higher management bodies ("New Management"), including amounts directed to legal entities that may be part of it, as well as whether such changes were reported to the Judicial Administration in the period. These findings must be included in their statement.

[Seal: [PJERJ DIGITALLY SIGNED]

I would like to point out that the following individuals are urged to respond within a common period of five calendar days: Judicial Administration, Watchdog and Public Prosecutor's Office, requesting this Court, the latter, to collaborate in issuing its opinion within the common timeframe, both due to the delimitation of the object of evaluation established above and because it is an electronic process that this makes possible, notably due to the alleged urgency.

Inform everyone urgently, including by telephone and email.

Also notify, giving unequivocal notice of the AMENDMENT TO THE judicial recovery plan presented by Grupo Oi under recovery, as well as the filing of the request for judicial recovery of 2 subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO), ANATEL and CADE.

Therefore, the recovering party is entitled, within the same period, to express its opinion on the possible exercise of the right included in clause 4.2.12, d, of the judicial recovery plan.

Finally, aware of ID 114.123 (letter from the 1st Private Law Chamber, on measures adopted regarding the lawyers of the recovering party). In this regard, this Court has already adopted its own decision, in item VI of ID 113141. In turn, the r. Registry certified the regularity of the procedural representation within the scope of the case underway in this first instance (ID 114136).

I return the records from chambers for IMMEDIATE compliance with everything contained herein. (Pages 114.138/114.142)"

"For all the above:

1. The Recovering Party must state about the conclusion of the RMA of July 2025, which points to substantial non-compliance with obligations of the approved judicial recovery plan, justifying and providing proof of any allegation made;

2. Subsequently, the Recovering Party must state whether it will exercise the option provided for in clause "4.2.12, 'd'" of the judicial recovery plan;

3. Then, AJ (including regarding the duty provided in section II, section "b" of the LRE);

4. Thus, to the Public Prosecutor's Office regarding everything added;

5. Notify the WatchDog to IMMEDIATELY begin the duties assigned

[Seal: [PJERJ DIGITALLY SIGNED]

Rap. Judge Monica Maria

3

[Stamp: Court of Justice of the State of Rio de Janeiro. Electronically Stamped Page]
54

to him and accepted, estimating fees for this purpose, given the expansion established herein;

6. I suspend the payment of bonuses in favor of the Senior Management of the Recovering Party, maintaining, for now, their remuneration set at the meeting of April 29, 2025;

7. I determine that any and all disposal or encumbrance of assets will necessarily be preceded by judicial authorization, under penalty of ineffectiveness of any act that fails to observe this;

8. I order the issuance of a communication, by the Judicial Administration, duly translated into English, to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on pages 115.744 et seq.), stating that "a judicial recovery process for Grupo Oi is currently underway before this Court of the 7th Business Court of Rio de Janeiro, RJ, in which the Recovering Party failed to fulfill obligations assumed in June 2025, without justification for this, to date. (116.202/116.209 - item IV)"

Defends the Appellant (**V.TAL - Neutral Telecommunications Network SA)** the need for partial reform of the appealed decision based on the following arguments:

(a) emptying of national jurisdiction and abusive use of foreign procedure, since the intention of Grupo Oi to distribute, before the New York Court, the procedure provided for in US Chapter 11 of the Bankruptcy Code for restructuring obligations that cannot be restructured in Brazil, causes a clear emptying of the rights of creditors and suppliers, as well as emptying of the jurisdiction of the Brazilian authority responsible for conducting the ongoing judicial recovery. It is understood that, if the illegalities that prevent the Chapter 11 request itself are understood to have been overcome, the issue must be previously submitted not only to Oi's shareholders (art. 122, IX, of Law 6.404/76), but also to the creditors of the judicial recovery (art. 35, I, "f", of the LRF).

(b) violation of national legislation, given that the reasons that would justify a request for restructuring under Chapter 11, consisting of the need to novate credits that, under Brazilian law, are extra-bankruptcy, and excluded from the ongoing judicial recovery process, represent a true affront to national jurisdiction, highlighting that Grupo Oi cannot file a lawsuit of the same nature before the New York Court.

(c) existence of a relevant precedent, considering that Grupo Oi vehemently defended the Brazilian jurisdiction and the exclusive jurisdiction of this H. Court for processing the judicial recovery, in order to eliminate any allegation of concurrent jurisdiction and, consequently, waiver of the right to file Chapter 11 before the New York Court.

[Seal: [PJERJ DIGITALLY SIGNED]

23-10193-jpm    Doc 57-1    Filed 07/28/25    Entered 07/28/25 09:02:03    Exhibit Part
Brazilian Appellate Court Order    Pg 28 of 44

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
55

(d) suppressed legislation, since the Recovery and Bankruptcy Law, with the innovations brought by Law No. 14.112/20, does not allow the coexistence of two main processes, given that the main recovery process must be processed in the country where the debtor has the center of its main interests, which, in this case, is Brazil;

(e) violation of public order, given that the conduct of the recovering parties violates articles 49 and 48, II, both of the LRJF. It highlights that the purpose of art. 49 of the LRJF is to ensure that, even after the debtor's judicial recovery has begun, its business activities are continued, given that the preservation of business activity is only possible if those who contract with the company in crisis have the guarantee that their credits will not be subject to the competition of creditors, being paid before all others. It also adds that the claim of the Recovering Parties directly violates the provisions of art. 48, II, of the LREF, whose interregnum constitutes a rational and well-founded legislative decision, which aims to prevent unfeasible companies from eternally availing themselves of recovery procedures, which are intended for viable companies. Finally, it highlights that any request for reorganization, in the form of Chapter 11 in the United States, clashes with the approved Plan, in which the creditors authorized Oi solely with a view to "implementing the provisions of this Plan" (Clause 10.15.2, page 56.917).

Requests that the effects of the appeal be granted in advance, to: (i) determine that, until there is an express pronouncement from the Honorable Court a quo, Grupo Oi refrains from filing a petition for a main proceeding of judicial recovery in any foreign jurisdiction, including incurring costs for filing the proceeding (including, but not limited to, the hiring of legal and financial advisors), or, if it has already filed it at the time the measure was granted, withdraws it, under penalty of a daily fine in the amount to be determined by that H. Court; (ii) notify the Judicial Administrators of the judicial recovery, to inform the Bankruptcy Court of the Southern District of New York that (a) there is no official pronouncement of this H. Court of Justice, whether in the first or second instance, in favor of the filing of a Chapter 11 before that Court; (b) that the approved Plan has not been fully implemented; and (c) there has been no significant change in the center of main interests of Grupo Oi since the filing of the judicial recovery; and (iii) notify the Honorable Court a quo, to refrain from considering the requests made by the recovering parties on pages 113.147/113.191 of the original proceedings before the hearing of the Federal Audit Court and the Securities and Exchange Commission.

On the merits, it requests the provision of the appeal to: a) determine to Grupo Oi that, until there is a statement on the subject of the

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
56

MM.   Judicial Recovery Court, refrain from filing the a petition for a main proceeding of judicial recovery in any foreign jurisdiction, including incurring costs for filing the proceeding (including, but not limited to, hiring legal and financial advisors), or, if it has already filed it at the time the requested relief was granted, withdraw from it, under penalty of a daily fine in an amount to be determined by this H. Court; b) to determine to the Judicial Administrator that, while there is no formal statement of the Honorable Judicial Recovery Court on this matter, inform the Bankruptcy Court of the Southern District of New York that (a) there is no official pronouncement from this Court of Justice, either in the first or second instance, in favor of the distribution of a Chapter 11 before that Court; (b) that the approved Plan has not been fully implemented; and (c) there has been no significant change in the center of main interests of Grupo Oi since the filing of the judicial recovery; and c) order the subpoena of the External Control Secretariat for Consensual Resolution and Conflict Prevention (SecexConsenso) of the Federal Audit Court and the Securities and Exchange Commission so that, if they wish, they may comment on the requests made by the recovering parties on pages 113.147/113.191 of the original case.

This is the report. I will decide.

**2.**  According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an appeal on points of law is admissible against all interlocutory decisions issued in judicial recovery proceedings and bankruptcy proceedings, by force of art. 1.015, sole paragraph, Code of Civil Procedure".

Although the first instance court named the appealed judicial pronouncements as "dispatch", there is no way to refute the undeniable decision-making weight that is extracted from them, having repercussions on the legal sphere of the parties, according to the provisions of art. 203, § 2, of the Code of Civil Procedure.

Thus, the intrinsic requirement of admissibility of appeal (admissibility) is present.

Having overcome the formal regularity, I will now proceed to analyze the request for injunctive relieffiled by the appellant.

Based on art. 1019, I, of the Code of Civil Procedure, once the appeal instrument has been received by the court and distributed immediately, if it is not the case for the application of art. 932, items III and IV, the reporting Justice, within 5 (five) days, may attribute a suspensive effect to the appeal or grant it in an injunction to advance

[Seal: [PJERJ DIGITALLY SIGNED]

relief, in whole or in part, the appeal seeks, communicating its decision to the judge.

The granting of the suspensive or active effect is subject to the presence of two requirements, namely, the plausibility of the allegations and the risk of damage that is irreparable or difficult to repair (article 995, sole paragraph, of the Code of Civil Procedure).

It is worth collating doctrine on the subject[1]:

> "The prerequisites for granting a suspensive effect to appeals are, in our understanding, typically precautionary: risk of serious damage, of impossible or difficult reparation and probability of the appeal being granted. In other words, periculum in mora and fumus boni iuris.
>
> This damage, the likelihood of which must be demonstrated to obtain the suspensive effect of the appeal, is not necessarily identified with the compromise of the substantive right that is claimed to exist in the appeal. It is sufficient for the party to demonstrate that the damage will be aggravated if the measure is not granted.
>
> The law does not mention the hypothesis that the opposite situation occurs: the appeal has a suspensive effect by express provision and the appealing party needs the effectiveness of the decision. Having demonstrated the likelihood of the appeal being granted and the occurrence of damage, we understand that the appellant is indeed entitled to the measure corresponding to the provisional advancement of the appeal's granting. This is what is called the active effect or the preliminary injunction, not expressly provided for, but admitted in the system, in relation to all appeals with suspensive effect, for identical reasons. It can be granted in cases where the appeals do not have a suspensive effect."

In terms of summary cognition, the likelihood of the appellant's allegations is seen to demonstrate the likelihood of partial granting of the appeal.

Initially, the recovering parties submitted an amendment to the approved judicial recovery plan, seeking the publication of a notice to call a Creditors' Meeting for voting, seeking the publication of a notice to call a Creditors' Meeting for voting, requesting, further, the granting of urgent relief

---

[1] Comentário ao novo Código de Processo Civil/ coordenação Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, p. 1473;

[Seal: [PJERJ DIGITALLY SIGNED]

for a suspension, for 180 days, of the enforceability of the obligations provided for in the judicial recovery plan, with the elimination of consequences of non-compliance, including judicial restrictions on its assets.

In their petition on pages 113.147/113.190, they state that after the approval, on 05.28.2024, of the judicial recovery plan approved by creditors on 04.19.2024, despite implementing several measures provided therein necessary for the restructuring of its liabilities, maintenance of working capital and the viability of its new strategic business plan, with a significant reduction in its net debt and full development of the strategic operational activities identified as its current "core business", they nevertheless faced a serious cash crisis.

They claim that the premises that served as the basis for the economic rationale of the various payment obligations assumed in the judicial recovery plan were not verified after their approval by the Recovery Court, including: (i) the sale of UPI ClientCo would result in the receipt of R$7.3 billion in cash in the 2024-2025 biennium; (ii) that would drastically reduce the maintenance costs of the infrastructure necessary for the provision of STFC telephone services with the adaptation of the concession to the authorization regime starting in June 2024; and
(iii) disbursement due to labor liabilities would remain at historical levels.

They argue that the New Governance began to study alternatives in the search to address the pressure for immediate liquidity and, consequently, ensure the continuity of its recovery, in respect of the principle of social function and preservation of the company, concluding that it is necessary to approve the amendment to the Plan presented, through the following proposal: (i) the change in the payment conditions of the Credits held by Labor Creditors (Clause 4.1), Partner Supplier Creditors (Clause 4.2.6), Take or Pay Creditors with Guarantee (Clause 4.2.8), Take or Pay Creditors without Guarantee – Option I (Clause 4.2.9), Take or Pay Creditors without Guarantee – Option II (Clause 4.2.10) and Adhering Extra-Bankruptcy Creditors (Clause 4.10);
(ii) the use of appeal deposits to obtain immediate resources and pay creditors (Clauses 5.4); and (iii) the possibility of hiring a specialized company to manage the Properties through a vehicle to be created for this purpose (Clause 5.3.5).

The court *a quo* deemed it necessary to have a prior hearing of the Judicial Administration, of the WatchDog (appointed to act in the case according to the decision of id. 114.162) and the Public Prosecutor's Office regarding the legality of the terms of the addendum and the minimum financial feasibility of the company (ID 114.138).

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
59

In a subsequent petition (id.115.354), the Recovering Parties state that, in addition to the need to amend the judicial recovery plan to enable them to overcome their temporary short-term cash flow difficulties, they are considering resorting to legal measures abroad, with the aim of restructuring credits that will not be addressed in the amendment, through the initiation of the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America ("CHAPTER 11"), before the Honorable United States Bankruptcy Court for the Southern District of New York ("US COURT"). They also inform that in order to prepare for the potential filing of CHAPTER 11, the RECOVERING PARTIES filed, on the same date, a request to withdraw CHAPTER 15, which will be decided in due course by the US COURT.

They justify the need for this strong measure on the grounds that a significant portion of Grupo Oi's debts are currently made up of credits that were not covered by the current recovery process and that were incurred, almost entirely, during the management of the former administration of the recovering parties. They point out that, in order to ensure the continuity of their operations, they are considering resorting to legal measures abroad, with the aim of dealing with such debts in an organized manner, since they cannot be included in the judicial recovery process in Brazil.

Regarding the addition and clarifications requested by the court *a quo*, this is what the Watchdog (id.115.773) said:

"CONCLUSION.

118. In view of all the above, this Assistant concluded, within the short period of 5 (five) calendar days, through the exclusive analysis of the numbers presented by the Recovering Parties, without it being possible to confirm them, that despite the positive results recorded in the last 6 (six) months, the Recovering Parties' capacity to honor short-term obligations, including those provided for in the approved restructuring plan, is compromised or unfeasible, so that any improvement depends on structural measures aimed at financial rebalancing, which enable economic sustainability.

119. In this sense, it is important to note that the Assistant of this Honorable Judge identified, together with the consolidated and realized cash flow of the Recovering Parties, that, in the last 6 (six) months, expenses are higher than revenues and, as a result, the cash balance has been suffering a continuous

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
60

decrease, going from R$ 1,396,000,000.00 (one billion, three hundred and ninety-six million), in January 2025, to R$ 951,000,000.00 (nine hundred and fifty-one million), in June 2025.

121. This situation reveals that the revenue generated from the provision of services has been insufficient to cover costs directly related to the operation, increasing the need for other sources of revenue to reverse this scenario.

120.    Therefore, in view of the projection presented by the Recovering Parties, the available accounting cash balance, indicated above, would be consumed in the next 3 (three) months, as demonstrated above, as, in this period, a negative result of R$ 917,000,000.00 (nine hundred and seventeen million) would be reached, denoting the lack of short-term liquidity.

122. Finally, it is also important to note that, since February and March 2025, when the Recovering Parties received payment for the sale of the asset – UPI ClientCo – in shares and not in cash, as provided for in the restructuring plan, cash flow was impaired, which, evidently, made it even more difficult to pay its projected short-term obligations, as highlighted above."

Regarding the request for an amendment, the Judicial Administrator also expressed his opinion (id 115.999), making the following considerations:

(i)   failure to prove full compliance with the obligations set out in the approved judicial recovery plan were immediately reported by Joint JAs in the last RMA (pages 40 of the report contained in incident no. 0132219-66.2023.8.19.0001);

(ii)  based on the data collected, the Recovering Party initiated negotiations with Take or Pay creditors, with the aim of extending payments, without, however, reporting this fact in the records, with such negotiations being suspended due to the APRJ request, which began to contemplate the restructuring of said credits;

(iii)  in relation to the payment of the Supplier Creditors, the Recovering Parties state that installment 10 and subsequent installments were included in the APRJ, which is why proof of said payments was also not presented;

(iv)  the list of obligations that were no longer fulfilled was presented, totaling R$ 79,591,329.73;

(v)  the analysis of cash flow projections shows a trajectory of progressive and abrupt deterioration in liquidity, with negative net cash variations in all months: starting with a positive R$ 10 million on 07/01/2025, reducing to - R$ 129 million on 07/31/2025; - R$ 291 million in August, - R$ 497 million in September and - R$ 650 million in

[Seal: [PJERJ DIGITALLY SIGNED]

October, indicating an inability to generate sufficient resources to meet the immediate commitments (next 3 months) of the approved judicial recovery plan;

(vi) the Plan — especially with regard to the most relevant assets, which came to comprise the Isolated Production Units (UPIs) — did not achieve the return expectations initially projected, making it clear that the assets of the Recovering Parties suffered a considerable reduction, without this reduction having been accompanied, in the same proportion, by an equivalent reduction in their liabilities; and

(vii) the sale of assets occurred in a scenario in which the resources obtained from sales were absorbed, to a large extent, by the financial burden of debts and by the maintenance of operations, which, in turn, until the date of this statement (07.14.2025), had not yet reached the equilibrium point (break-even), continuing to generate negative cash flow.

The Public Prosecutor's Office offered an opinion, in summary cognition, in id.116.114, highlighting, from the outset, the existence of illegalities in the submitted addendum, which it understands must be overcome until the eventual deliberation in AGC, in accordance with art. 35, I, "a" of Law 11.101/2005, with regard to the following clauses:

"a) clause 4.1 et seq.: impossibility of creating subclasses of labor creditors with credits of less than 150 minimum wages;

b) clauses 4.2.6, 4.2.7 and 4.2.8: substantial change in the form of payment of partner supplier creditors and take-or-pay creditors; and

c)    clause 5.4: withdrawal of labor appeal deposits".

After the above-mentioned demonstrations, the judge *a quo* issued, in a complementary manner, the appealed decision on pages 116.202/116.209 (item IV).

The Appellant objects to part of the decisions on pages 114.138/114.142 and 116.202/116.209 (item IV), which thus determined:

*(a) the summons of ANATEL and CADE, giving unequivocal notice of the AMENDMENT TO THE JUDICIAL RECOVERY PLAN presented by Grupo Oi under recovery, as well as the filing of the request for judicial recovery of 2 subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO); (b) the*
issuance of communication, by the Judicial Administration, duly translated into English, to the United States Federal Bankruptcy Court, Southern District of New York (proceeding on pages 115.744 et seq.), stating that "a judicial recovery process is currently underway before this Court of the 7th Business Court of Rio de Janeiro, RJ,

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
62

*by the Oi Group, in which the Recovering Party failed to fulfill obligations
assumed in June 2025, without justification for this, to date. (116.202/116.209
- item IV)".*

It argues that, despite the dexterity with which the Recovery
Court has been conducting the judicial recovery, having, in recent months,
adopted several measures to increase procedural speed and the supervision
of the activities of the recovering parties, the judicial provision ended up
incurring in two specific errors, namely: (i) failure to notify the Federal Audit
Court and the Securities and Exchange Commission to comment on the
Amendment to the Plan; and (ii) failure to adopt measures that prevent the Oi
Group from filing a Chapter 11 abroad before the matter is deliberated by the
Reorganization Court, after hearing the parties involved and affected by the
judicial recovery.

Having made this brief chronological digression of the facts, we
move on to examining the request for preliminary relief on appeal.

From the comparison of evidence gathered in the case, in terms
of summary cognition, four irrefutable conclusions are reached, supported by
the contested decisions and the opinion of the Watchdog and the Judicial
Administrator: (1st) there is no proof of full compliance with the obligations
set forth in the judicial recovery plan; (2nd) the ability of the recovering parties
to honor short-term obligations, including those set forth in the approved
restructuring plan, is compromised; (3rd) there is a proposal to amend the
judicial recovery plan based on the supervening of facts that allegedly made
its execution unfeasible; (4th) initiation of the procedure set forth in Chapter
11 of the United States Bankruptcy Law ("CHAPTER 11"), before the
Honorable. United States Bankruptcy Court for the Southern District of New
York ("US COURT"), with the purpose of restructuring credits that will not be
addressed in the amendment and that cannot be included in the judicial
recovery process in Brazil.

The reported facts denote the existence of a serious threat to
the entire universality of creditors subject to judicial recovery, as well as
addressing issues related to sovereignty and legal certainty.

The appealed decision is correct, and the process was
conducted quickly, judiciously and thoroughly by the original court, which is
why I ratify its reasons for deciding, which are the subject of this appeal, but
I add to them some issues of public order.

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
63

The activities carried out by the Oi Group were subject to prior concessionary authorization from ANATEL, based on Federal Law No. 9.247/1997 (Telecommunications Law), regulatory decrees, Federal Law No. 12.485/2011 (SeAC Law) and a global regulatory framework for the provision of telecommunications services, published by the National Telecommunications Agency ("ANATEL"), in accordance with the public policies of the Ministry of Communications.

However, a proposal for a consensual solution formulated by the National Telecommunications Agency (ANATEL) was presented with the aim of establishing the terms for the early termination and transformation of the concession contract for the Switched Fixed Telephone System (STFC) signed with the company Oi S.A. - under judicial recovery (Oi) into an authorization, as provided for in the General Telecommunications Law

The consensual solution resulted in an agreement drawn up and approved by the Federal Audit Court (TCU), in a session held on 07.03.24.

The concession contract for the Switched Fixed Telephone System (STFC) signed with the company Oi S.A. - under judicial recovery (Oi) was then transformed into authorization, as provided for in Law 13.879/2019.

On 09.30.2025, the Single Service Authorization Term, resulting from the approval of the Self-Composition Term (Agreement) for the adaptation of the fixed telephony concession (STFC) was signed between Oi (directly and through a neutral network company in which it holds a shareholding, V.tal), Anatel and the Ministry of Communications (the latter representing the interests of the Federal Union), with the consent of the Attorney General's Office (AGU).

Oi's adaptation and the impact on citizens were explained on the gov.br portal, and can be summarized as follows:[2]

1.  Oi is currently the largest fixed-line telephone operator in the country and provides local and long-distance services in all Brazilian states, except São Paulo. The company has almost six million fixed-line telephone accesses, served in more than 4,600 municipalities.
2.  The immediate shutdown of fixed telephony by Oi – resulting from the termination of concession contracts without carrying out the migration to authorization – could leave

---

[2]https://www.gov.br/anatel/pt-br/assuntos/adaptacao/adaptacao-da-oi

[Seal: [PJERJ DIGITALLY SIGNED]

Rap. Judge Monica Maria

13

23-10193-jpm    Doc 57-1    Filed 07/28/25    Entered 07/28/25 09:02:03    Exhibit Page
Brazilian Appellate Court Order    Pg 37 of 44

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
64

millions of people who live in isolated locations without access to any other means of communication. Furthermore, there could be a loss of connection for emergency public services, such as police and fire services, and failures in the operation of communication and data service providers that use the former concessionaire's service as an interconnection point to the telecommunications network. Therefore, its deactivation would need to be done in an orderly manner, since its network still supports essential services to the population.

3.    Furthermore, Oi has been facing notorious financial problems since 2016 and is undergoing a 2nd judicial recovery process. Last April, the company managed to approve a new judicial recovery plan with creditors, seeking to restructure its debts and obtain financing. The plan was approved by the Court of Justice of Rio de Janeiro. One of the pillars of this plan was precisely the resolution of the fixed-line telephone concession. Its unfeasibility could lead to the company's bankruptcy, with systemic impacts on the entire national telecommunications sector. In this case, the State would have to assume, even temporarily, the provision of the public fixed telephone service. In this case, there would be a need to invest public resources to maintain fixed telephony, with an estimated annual cost of between R$ 2 billion and R$4 billion.

4.    The private authorization regime guarantees a more efficient and less costly structure for the company while maintaining essential services for users and bringing benefits to the national telecommunications infrastructure.

5.    Its implementation presents significant advantages for all involved and for Brazilian society as a whole, ensuring the continuity of fixed telephony in areas where Oi is the only voice service provider until the end of 2028, benefiting more than 3.2 million Brazilians in more than 10,000 locations, mainly in the North and Northeast regions.

6.    Furthermore, the agreement guarantees the maintenance of current contracts for Public Utility Services and allows for the planned management of interconnection points with other providers, ensuring the integrity of the network.

7.    The adaptation of fixed-line telephony contracts brings, among other things, the reduction of legal and regulatory burdens that are no longer justified, given the current scenario of reduced interest in fixed-line telephony. Furthermore, this service is now operated under the private regime, that is, according to rules already applicable to other telecommunications services, such as mobile telephony and broadband, which, unlike fixed telephony, continue to expand their consumer base and do not need to be provided under the public regime to promote widespread access.

[Seal: [PJERJ DIGITALLY SIGNED]]

[Stamp: Court of Justice of the State of Rio de Janeiro. Electronically Stamped Page]
65

Through the aforementioned term, not only was the migration of the provision of services to the private regime agreed upon through an authorization term, but also, as the main objective, public order commitments were agreed upon, namely: (i) ensure the continuity of voice service provision, until 2028, in 10,650 locations without communication alternatives in Oi's service region; (ii) guarantee R$ 5.8 billion in investments, of which R$ 800 million will be for service maintenance and R$ 5 billion will be invested in school connectivity, the deployment of submarine cables, and data centers, which will result in connectivity improvements in the North and Northeast regions; (ii) reduce the impact of any ruling by the Federal Government on the exercise of the right to launch the arbitration clause provided for in the STFC Concession Agreement; (iii) allow the recovery of credits owed to the Federal Attorney General's Office (AGU); (iv) implement fiber optic access in 4,000 schools that are not connected to the internet or whose interconnection has a download speed below the minimum established standard. When selecting schools, preference was given to those located in the Northeast (64%) and rural areas (80%); (v) in addition to the network infrastructure, an internal network will be installed to distribute the internet signal to students, teachers and staff. The total cost of the investment is estimated at R$ 1.19 billion; (vi) laying of submarine cables in the North and South regions of Brazil, in addition to the implementation of land routes to connect cable access on the coast and improvements in adjacent routes; (vii) making investments in the construction of new data centers; and

(viii) possibility of additional investments up to the limit of R$ 2.3 billion, in the event that the arbitration promoted by Oi results in amounts exceeding R$ 12.5 billion.

It is important to note that V.tal, now the appellant, is also responsible for executing the commitments assumed in the aforementioned Term (described in its appendix 5), collaborating with the necessary counterparts for the adaptation, essential for the success of the second judicial recovery of the Oi Group.

Therefore, the transformation of the concession contract for the Switched Fixed Telephone System (STFC) entered into by Oi S.A. into an authorization does not have the power to distort the provision of an essential and continuous public service, giving rise to an irrefutable public interest that supersedes the merely business-related legal nature of the institute, justifying a more productive action by the Judiciary.

In addition to the unquestionable singularity surrounding this judicial recovery regarding the inexorable public interest

[Seal: [PJERJ DIGITALLY SIGNED]]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
66

arising from the provision of services to the community by the Oi Group, there is the need for timely satisfaction of the obligations agreed upon in the PRJ approved by creditors and judicially ratified.

Regarding this last point, the Recovering Parties submitted a request to suspend payment of the obligations assumed in this case for a period of 180 days, in addition to having submitted an amendment to the plan, due to a serious cash crisis to honor them, with the aim of reaching the originally excluded labor creditors, renegotiating the conditions and payment terms of suppliers, partner creditors, *take or pay* with and without warranty.

In a statement in the original proceedings, the Recovering Parties state that such measures would not be sufficient to stem the current economic and financial situation that has emerged, which is why it is still necessary to initiate recovery proceedings in the American Court (Chapter 11), in which they intend to negotiate debts not covered by the current judicial recovery.

However, the proceedings underway before the Brazilian Courts were expressly recognized by the Oi Group and the competent authorities as the main proceedings.

For the purposes of this opinion, we transcribe part of the decisions that established national jurisdiction for the processing of the first and second judicial recovery of debtor companies, *verbatim:*

"The topic is new and deserves to be addressed.

The first point worth highlighting in this analysis is that the companies FINCO and PTIF are merely financial vehicles created by the Oi Group to raise funds abroad in order to finance its productive activities. They are wholly owned subsidiaries, created in the Netherlands, without any operational activity.

The Oi Group's operational activity is in Brazil. This is the main location of the companies undergoing recovery; this is where the wealth-generating activity is located, the center of interests that justifies, in theory and in practice, the creation of a corporate protection system. This is the appropriate forum for the processing of the reorganization process.
Therefore, I understand that all issues relating to the holding company and its subsidiaries must be decided in accordance with Brazilian law. Brazilian law does not permit any concurrent jurisdiction of a foreign or equivalent judicial authority when the insolvent debtor has its main establishment in Brazil."

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
67

### "JURISDICTION AND PROCEDURAL CONSOLIDATION

This request for judicial recovery was made by Oi S.A., PTIF and Oi Coop. PTIF and Oi Coop are non-operational companies that, in the past, were used as vehicles for raising funds from abroad, aimed at financing the Oi Group's activities in Brazil. The obligations of PTIF and Oi Coop, despite being originally contracted abroad through the issuance of *bonds,* have always been fulfilled in Brazil, supported by the Brazilian operations of its parent company Oi.

It should be remembered that, when processing the 1st judicial recovery of the Oi Group, the jurisdiction of this court to process the judicial recovery of the Dutch subsidiary Oi Coop was questioned within the scope of the procedure instituted based on the *Chapter* 15 of the US Bankruptcy Code, whose judgment handed down by the court of the Southern District of New York, in the United States, confirmed that the center of main interests of Oi Coop and the Oi Group is located in Brazil.

When granting the processing of the 1st judicial recovery, this Court had already understood that: "*And, to the extent that the companies that make up the Oi Group operate in a coordinated and integrated manner within the Brazilian telecommunications system, and under sole corporate, operational, financial, administrative and managerial control - exercised by the controlling company Oi - including in relation to non-operational financial vehicle companies established abroad - judicial protection must extend to the conglomerate as a whole.*." (pages 89496-89525 of case no. 0203711-65.2016.8.19.0001).

At the time, it was a real *leading case*, as there was little or no transnational insolvency in Brazilian courts and not even the legislation in force dealt with this hypothesis. The Judiciary was required to fill the legal gap, through the systematic and analytical interpretation of the legal system and, notably, of the applicable constitutional principles. Subsequently, Law 14.112/2020 brought the chapter on Transnational Insolvency (VI-A) to Law 11.101/2005 to regulate the hypothesis.

At that time, procedural consolidation had not yet been standardized, which occurred with the changes brought about by Law 14.112/2020, under the terms of art. 69-G: *Debtors who meet the requirements set forth in this Law and who are part of a group under common corporate control may request judicial recovery under procedural consolidation.*

[Seal: [PJERJ DIGITALLY SIGNED]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
68

Based on the above, the requirements for procedural consolidation are met, in accordance with Article 69-G of Law No. 11.101/05.

It is indisputable that there is sole corporate, operational, financial, administrative and managerial control exercised by the controlling company Oi S.A. in relation to the non-operational financial vehicle companies incorporated abroad, with the existence of a de facto and de jure economic group being evident, with all Plaintiffs having presented documentation individually, which allows for active joinder of parties for the purposes of filing for judicial recovery.

Thus, reiterating the terms of the anticipatory decision issued in ID 44532251 of the Preliminary Injunction No. 0809863-36.2023.8.19.0001, procedural consolidation is a measure that must be applied to the present case".

As noted in this latest decision, during the processing of the 1st judicial recovery of the Oi Group, the jurisdiction of the court a quo to process the judicial recovery of the Dutch subsidiary Oi Coop was questioned within the scope of the procedure instituted based on the *Chapter* 15 of the US Bankruptcy Code, whose judgment handed down by the court of the Southern District of New York, in the United States, confirmed that the center of main interests of Oi Coop and the Oi Group is located in Brazil.

There is no doubt, therefore, that all of the Oi Group's operational activity is located in Brazil.

The prevalence of Brazilian jurisdiction, in this case, is also supported by the legal interests involved, which are strongly linked to issues of public order, provision of public communication services, social issues and the social function of the Oi Group, including obligations before the TCU and public bodies at various levels of the Brazilian national federation.

Therefore, considering that we are within the term of sovereignty of Brazilian jurisdiction and the approved plan has not been fully implemented by the Recovering Parties, it is necessary to conclude, in principle, that the measure taken before the Foreign Court may directly impact the credits restructured in the present judicial recovery, frustrating the fulfillment of the agreed obligations and the recovery of the debtor companies, which is why it is necessary, given the gravity and urgency of the matter and, so as not to suppress the instance, only to determine that the communication addressed to the Federal Bankruptcy Court of the United States, Southern District of New York, be amended.

[Seal: [PJERJ DIGITALLY SIGNED]

Rap. Judge Monica Maria

18

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
69

Having established the plausibility of the appellant's allegations above, the danger of delay becomes concrete based on the reported facts that the credits subject to judicial recovery may be frustrated, jeopardizing compliance with the judicial recovery plan and, consequently, the payment of thousands of creditors affected by the legal benefit, especially when it involves the provision of essential services to the community.

Therefore, in order to preserve legal certainty and the authority of national jurisdiction, while respecting, on the other hand, the sovereignty of the countries involved and the harmonization of the cross-border legal system, I only determine that the recommendation be communicated in the Chapter 15 Proceedings case records that the NY Court, before issuing any decision in the case related to Chapter 15 of the Oi Group, await the decision of the Brazilian Court both regarding the verification and consequences of the non-compliance with the judicial recovery plan, already reported, and the request for Amendment to the judicial recovery plan of the main process in progress in Brazil.

**3.** For all the above, **I PARTIALLY GRANT the request for preliminary relief on appeal** so that it may **amend** the communication to be issued by the Judicial Administration to the United States Federal Bankruptcy Court, Southern District of New York (procedure on pages 115.744 et seq.), with a recommendation to the NY Court, so that, before issuing any decision in the process related to Chapter 15 of Grupo Oi, it await the decision of the Brazilian Court both in relation to the verification and consequences of the non-compliance with the judicial recovery plan, already reported, and the request for Amendment to the judicial recovery plan of the main process in progress in Brazil.

Without prejudice, forward a copy of this decision to the United States Bankruptcy Court, Southern District of New York (proceeding on pages 115.744 et seq.), with the caveat that there is no judicial pronouncement on the part of this jurisdiction agreeing to the initiation of other procedures involving the restructuring of Grupo Oi in other jurisdictions.

**4.** Due to the execution of the Self-Composition Term (Agreement) for the adaptation of the concession contracts to the authorization regime, be notified giving unequivocal notice of the AMENDMENT TO THE JUDICIAL RECOVERY PLAN presented by the Oi Group under recovery, as well as the filing of the request for judicial recovery of 2 subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO), the External Control Secretariat for
Consensual Resolution and Conflict Prevention (SecexConsenso) of the Federal Audit Court (TCU), and the Securities and Exchange Commission (CVM).

[Seal: [PJERJ DIGITALLY SIGNED]]

[Stamp: Court of Justice of the State of Rio de Janeiro.
Electronically Stamped Page]
70

**5.** Finally, I hereby order that the Securities and Exchange Commission (CVM) be notified, and a copy of the last 2 (two) RMAs be forwarded.

**6.** **Notify the court urgently *a quo*,** informing of this decision and requesting information;

**7.** **Notify the Judicial Administrator;**

**8.** **Notify the Mass Curatorship**;

**9.** **To the appellees** to present a response, within the legal period of fifteen days, provided for in art. 1019, II, of the Code of Civil Procedure;

**10.** Afterwards, the esteemed **Public Prosecutor's Office.**

Rio de Janeiro, ____ _____, 2025.


**Monica Maria Costa,**
**Rapporteur Judge**

[Seal: [PJERJ DIGITALLY SIGNED]

**MORNINGSIDE**
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

Date: 2025/07/27

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Portuguese (Brazil)

To:

- English (USA)

The documents are designated as:

- 'tmp74BD43C371CE49D180081F49E2E1522C.doc'

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director

Questel Confidential: Limited External Use

4001 S 700 East, Suite 500 #B17
Salt Lake City, UT 84107