## Exhibit B

**V.tal's Appeal of the RJ Order**

## **Exhibit B-1**

**V.tal's Appeal of the RJ Order (Portuguese)**

# PINHEIRONETO
### ADVOGADOS

| SÃO PAULO | RIO DE JANEIRO | BRASÍLIA | PALO ALTO | TÓQUIO |
|---|---|---|---|---|
| R. Hungria, 1.100 | R. Humaitá, 275 | SAFS. Quadra 2 Bloco B | 228 Hamilton Avenue, | 1-6-2 Marunouchi, |
| 01455-906 | 16º andar | Ed. Via Office - 3º andar | 3rd floor | Chiyoda-ku, 21st floor |
| São Paulo - SP | 22261-005 | 70070-600 | CA 94301 USA | 100-0005 |
| t. +55 (11) 3247 8400 | Rio de Janeiro - RJ | Brasília - DF | t. +1 650 798 5068 | Tokyo - Japan |
| | t. +55 (21) 2506 1600 | t. +55 (61) 3312 9400 | | t. +81 (3) 3216 7191 |

Exmo. Sr. Desembargador Primeiro Vice-Presidente Do Tribunal De Justiça Do Estado Do Rio De Janeiro

**Processo de Origem nº 0090940-03.2023.8.19.0001**

**Distribuição por prevenção à Primeira Câmara de Direito Privado**

**V.TAL – REDE NEUTRA DE TELECOMUNICAÇÕES S.A.**, sociedade inscrita no CNPJ sob o nº 02.041.460/0001-93, com sede na Rua Casa do Ator, nº 919, Vila Olímpia, cidade de São Paulo, Estado de São Paulo, CEP 04546-003 ("V.tal" ou "Agravante"), por seus advogados (**docs. nºs 1 e 2**), vem respeitosa e tempestivamente, com fundamento nos artigos 1.015 e seguintes do Código de Processo Civil ("CPC"), interpor este

### AGRAVO DE INSTRUMENTO

**com pedido de antecipação da tutela recursal**

contra as rr. decisões de fls. 114.138/114.142 ("Decisão nº 1" – **doc. nº 3**) e 116.202/116.209 ("Decisão nº 2" e, em conjunto com a r. Decisão nº 1, "Decisões Agravadas" – **doc. nº 4**), proferida nos autos da recuperação judicial[1] ("Recuperação Judicial") da **Oi. S.A.** e **Outras** ("Agravadas" ou "Grupo Oi" ou "Recuperandas"), pelas seguintes razões de fato e de direito.

---

[1] Proc. nº 0090940-03.2023.8.19.0001, em curso perante a 7ª Vara Empresarial da Comarca da Capital do Estado do Rio de Janeiro ("Juízo da Recuperação").

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRO NETO**

A D V O G A D O S

1.    **Tempestividade.** Não tendo sido sequer publicada a r. Decisão nº 2, é tempestivo este agravo de instrumento, interposto hoje, **23.7.25**, antes do termo inicial do prazo legal, conforme art. 218, § 4º, do CPC.

2.    **Prevenção.** A Primeira Câmara de Direito Privado deste E. Tribunal de Justiça do Estado do Rio de Janeiro ("TJRJ") à relatoria da eminente Desembargadora Mônica Maria Costa Di Piero, está preventa para o julgamento deste recurso, a teor do artigo 930, parágrafo único, do CPC, na medida em que tem julgado os recursos provenientes da Recuperação Judicial[2].

3.    **Cabimento do Agravo.** Por se tratar de recurso interposto contra decisão proferida no âmbito de recuperação judicial, é inequívoco o cabimento deste agravo de instrumento, nos termos do art. 1.015, parágrafo único, do CPC, art. 189, §1º, II, da Lei nº 11.101/05 ("LRF") e Tema 1.022 do Superior Tribunal de Justiça ("STJ").

4.    **Instrução do Recurso.** Em cumprimento ao artigo 1.017, do CPC, muito embora os autos do processo de que tirado este recurso sejam eletrônicos, o que dispensaria sua instrução, o recurso é instruído com todas as cópias obrigatórias, inclusive procurações outorgadas às partes, decisões agravadas e comprovante de recolhimento de custas processuais (**doc. nº 5**). Caso este E. TJRJ repute necessária a apresentação de alguma peça adicional, o Agravante requer seja concedido prazo para que seja complementada a documentação, nos termos do artigo 1.017, § 3°, do CPC.

5.    **Declaração de Autenticidade.** Os advogados do Agravante, signatários deste recurso, nos termos do artigo 1.017, II, do CPC, declaram serem autênticas as cópias dos documentos que instruem o recurso.

6.    **Representação Processual.** Em atenção ao disposto no artigo 1.016, IV, do CPC, a Agravante informa os nomes e endereços dos patronos do Agravante, das Agravadas e do Administrador Judicial, como segue:

---

[2]    Agravos de instrumento nºs 0069602-39.2024.8.19.0000;  0069530-52.2024.8.19.0000;  0069733-14.2024.8.19.0000; e 0072455-21.2024.8.19.0000.

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



**PINHEIRONETO**

ADVOGADOS

(i)    **Pelo Agravante:** os advogados _Thiago Braga Junqueira_, inscrito na OAB/SP sob o n° 286.786, _João Guilherme Thiesi Da Silva_, inscrito na OAB/SP sob o n° 410.293, _Maria Fernanda Marchesan Del Grande_, inscrita na OAB/SP sob o n° 493.904 e _Sophia Weinschenker Bollmann_, inscrita na OAB/SP sob o n° 519.960, todos com endereço profissional da Rua Hungria, 1.100, Jardim Europa, São Paulo/SP (**doc. n° 2**); e

(ii)    **Pelas Agravadas:** os advogados _Marcos Pitanga Ferreira_, inscrito na OAB/RJ sob o n° 144.825, _Luiz Carlos Malheiros França_, inscrito na OAB/RJ sob o n° 163.989, _João Felipe Lynch Meggiolaro_, inscrito na OAB/RJ sob o n° 216.273, _Fernanda Anuda_, inscrita na OAB/RJ sob o n° 241.307, _Diana Lise Freitas_, inscrita na OAB/RJ sob o n° 256.584, _Thiago Peixoto Alves_, inscrito na OAB/RJ sob o n° 301.049, _João Felipe Martins de Almeida_, inscrito na OAB/RJ sob o n° 200.664, _Helena Acker Caetano_, inscrita na OAB/RJ sob o n° 230.206, _Edson Bossonaro Júnior_, inscrito na OAB/RJ sob o n° 264.022, e _Luís Fellipe Freitas_, inscrito na OAB/RJ sob o n° 261.146, todos integrantes do escritório Ferro, Castro Neves, Daltro e Gomide Advogados, com endereço profissional na Av. Rio Branco, n° 85, 13°, 15°, 17° e 18° andares, Centro, Rio de Janeiro/RJ, CEP 20040-004; bem como os advogados _Paulo Padis_, inscrito na OAB/RJ sob o n° 139.860-A, _Talitha Aguillar Leite_, inscrita na OAB/SP sob o n° 344.859, e _Mariana Leoni Beserra_, inscrita na OAB/SP sob o n° 443.636, estes últimos integrantes do escritório Padis Mattar Advogados, com endereço profissional na Av. Brigadeiro Faria Lima, n° 1.663, 12° andar, Jardim Paulistano, São Paulo/SP, CEP 01452-001. (**doc. n° 6 e 7**);

(iii)    **Pelo Administrador Judicial:** _Wald Administração De Falências E Empresas Em Recuperação Judicial Ltda_., representada por Arnoldo Wald Filho, inscrito na OAB/RJ sob o n° 58.789, e Adriana Campos Conrado Zamponi, inscrita na OAB/RJ sob o n° 92.831, ambos com endereço profissional na Rua General Venâncio Flores, n° 305, 10° andar, Leblon, Rio de Janeiro; _K2 Consultoria Econômica_, representada por João Ricardo Uchoa Viana, com sede na Rua Primeiro de Março, n° 23, 14° andar, Centro, Rio de

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRONETO**

A D V O G A D O S

Janeiro; e _Preserva-Ação Administração Judicial_, representada por Bruno Rezende, inscrito na OAB/RJ sob o n° 124.405, com sede na Avenida Rio Branco, nº 116, 15º andar, Centro, Rio de Janeiro (**doc. n° 8**);

7.    **Das Intimações.** V.tal requer que as intimações referentes a este recurso sejam realizadas exclusiva e conjuntamente em nome dos procuradores que subscrevem este agravo, sob pena de nulidade, nos termos do artigo 272, § 5°, do CPC.

Nestes termos,

P. Deferimento.

São Paulo, 23 de julho de 2025.

THIAGO BRAGA
JUNQUEIRA:069    Assinado de forma digital
13767609    por THIAGO BRAGA
JUNQUEIRA:06913767609
Dados: 2025.07.23 10:17:28
-03'00'

**Thiago Braga Junqueira**            **João Guilherme Thiesi da Silva**

**OAB/SP nº 286.786**                **OAB/SP nº 410.293**

**Maria Fernanda M. Del Grande**        **Sophia Weinschenker Bollmann**

**OAB/SP n° 493.904**                **OAB/SP nº 519.960**

- 4 -

**PINHEIRONETO**

A D V O G A D O S

Tribunal de Justiça do Estado do Rio de Janeiro

Página

6

Conteúdo Eletrônico/Inicial

**ANEXO I**

**Lista de Documentos Obrigatórios e Facultativos**

| Doc. nº 1 | Documentos Societários de V.tal |
|---|---|
| Doc. nº 2 | Procuração de V.tal aos seus Advogados |
| Doc. nº 3 | Decisão nº 1 |
| Doc. nº 4 | Decisão nº 2 |
| Doc. nº 5 | Guia e Comprovante de Recolhimento de Custas |
| Doc. nº 6 | Documentos Societários do Grupo Oi |
| Doc. nº 7 | Procurações do Grupo Oi aos seus Advogados |
| Doc. nº 8 | Decisões de Nomeação do Administrador Judicial |
| Doc. nº 9 | Manifestação Oi informando o pedido de encerramento do *Chapter 15* |
| Doc. nº 10 | Pedido de Extinção do *Chapter 15* |
| Doc. nº 11 | Decisão Reconhecimento Principal Estabelecimento do Grupo Oi |

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

JUR_SP - 55203626v4 - 5769054.524399

**P I N H E I R O N E T O**

A D V O G A D O S

**E. Tribunal de Justiça do Estado do Rio de Janeiro** ("TJRJ")

**Agravante:**    V.tal – Rede Neutra De Telecomunicações S.A. ("V.tal" ou "Agravante")

**Agravadas:**    Oi S.A. e Outros ("Agravadas" ou "Grupo Oi" ou "Recuperandas")

**Administrador Judicial:**    Wald Administração De Falências E Empresas Em Recuperação Judicial Ltda, K2 Consultoria Econômica e Preserva-Ação Administração Judicial  (todas em conjunto, "Administrador Judicial")

**RAZÕES DE AGRAVO DE INSTRUMENTO**

Egrégio Tribunal,

**I.    BREVE CONTEXTUALIZAÇÃO E OBJETO DESTE AGRAVO**

8.    Os processos de recuperação judicial se pautam pela redistribuição, entre devedor e credores, das perdas inevitáveis quando diante de uma crise econômico-financeira da atividade empresária. A crise do Grupo Oi começou há quase 10 anos, quando se iniciou um verdadeiro esforço coletivo para o seu soerguimento, com o deferimento do processamento da sua primeira recuperação judicial[3] ("Primeira RJ").

9.    Alguns anos depois, com o deferimento do processamento da Recuperação Judicial, distribuída logo quando findada a "quarentena" prevista pelo art. 48, II, da LREF, diversas outras medidas foram adotadas para tentar viabilizar o saneamento da crise econômica que afetava o Grupo Oi, distribuindo-se o ônus entre centenas de milhares de credores, que tiveram de concordar com inúmeras concessões em prol da manutenção da atividade empresarial da Oi (por ex., arcar com amplos descontos e longas dilações de prazo para pagamento parcial dos seus créditos).

---

[3] Processo nº 0203711-65.2016.8.19.0001, distribuído em 20.6.2016.

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



**PINHEIRONETO**
A D V O G A D O S

Página
8

10.    O esforço, no entanto, tem sido uma via de mão única em favor das Recuperandas enquanto os credores do Grupo Oi suportam altos custos para manter a companhia de pé, as Recuperandas buscam meios de furtar-se ao pagamento das suas dívidas (mesmo daquelas já restruturadas) e, pior, sempre através de artifícios processuais que possam dar ao seu inadimplemento "ares de legalidade".

11.    No último dia 1º de julho, o Grupo Oi apresentou petição em que admitiu o desempenho insatisfatório das medidas até agora adotadas, apontando expressamente que "*relevantes premissas que serviram de base para o racional econômico das diversas obrigações de pagamento assumidas no PRJ, não foram verificadas após a homologação*" (fls. 113.150 – grifo no original). Ainda, apontam que estas circunstâncias "*vêm pressionando o caixa das Recuperandas e dificultando o cumprimento de obrigações financeiras de curto prazo previstas no Plano, o que, por sua vez, coloca em risco a conclusão exitosa do processo de soerguimento*" (fls. 113.151 – grifo no original).

12.    No mesmo sentido, foi a manifestação do Administrador Judicial, que apontou que "*as Recuperandas não comprovaram o cumprimento integral das obrigações previstas no Plano de Recuperação Judicial*" (fls. 116.028) e do *Watchdog*, que entendeu que as recuperandas têm "*ínfima capacidade de cumprimento das obrigações mínimas, inclusive com credores sujeitos ao plano*" (fls. 115.801).

13.    A grave situação econômica do Grupo Oi já vinha sendo notada nos autos da Recuperação Judicial. Há tempos, diversos credores vinham apontando o inadimplemento de créditos tanto concursais quanto extraconcursais[4]. As circunstâncias foram bem observadas pelo D. Juízo da Recuperação que, com a diligência incontestável que vem conduzindo o processo de origem —— tarefa certamente árdua, por se tratar de uma das maiores recuperações judiciais deste país —— reconheceu a existência de "*notícia de descumprimento de obrigações – extraconcursais – importantes*" (fls. 114.171).

---

[4]    Fls.   92.257/92.258;   96.737/96.743;   96.844/96.845;   97.430/97.431;   97.855/97.857;   102.889/102.890;
103.870/103.871; 103/969/103.970; 103.987/103.988; 104.149/104.150; 108.216/108.223; 110.125/110.126;
111.722/111.723

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

PINHEIRONETO
A D V O G A D O S

14.    Posteriormente, apontou, já na r. Decisão nº 1, que "*o 'laudo econômico-financeiro' que instrui a petição da recuperanda (ID 113.614), com a devida vênia, não se presta a atestar minimamente a viabilidade do cumprimento das obrigações futuras da recuperanda*", uma vez que "*não possui qualquer compromisso com as conclusões nele adotadas, todas baseadas em dados fornecidos pela própria empresa, ou obtidos publicamente, e que não tiveram veracidade aferida*" **doc. nº 3**, p. 4/5).

15.    Diante da magnitude do pedido cautelar formulado pelas recuperandas, bem como da apresentação de aditamento ("Aditamento ao Plano") ao plano de recuperação judicial do Grupo Oi ("Plano"), a r. Decisão nº 1 corretamente determinou "*a prévia manifestação - ainda que breve - do órgão do Ministério Público, da Administração Judicial conjunta e, também, do Observador Judicial, já nomeado, acerca do aditamento ao PRJ apresentado, e os documentos que o instruem*", além da intimação da ANATEL e do CADE (**doc. nº 3**, p. 4).

16.    Ocorre que, pouco antes de ter sido proferida a r. Decisão nº 1, tornou-se de conhecimento público[5] o fato de que o Grupo Oi formulou, perante o Tribunal de Falências do Distrito Sul de Nova York ("Corte de Nova York"), pedido de desistência do procedimento auxiliar à recuperação judicial de origem (Case No. 23-10193), conhecido como Chapter 15, para que seja autorizado a distribuir, perante aquela mesma Corte, o Chapter 11, *i.e.*, procedimento análogo à recuperação judicial disciplinada pela LREF nos termos da legislação americana.

17.    No mesmo dia, o Grupo Oi informou, nos autos da Recuperação Judicial, o pedido formulado perante a Corte de Nova York (**doc. nº 9**), anexando a petição apresentada ao Tribunal estrangeiro (**doc. nº 10**).

---

[5] ONABTELLI, Circe. Pedido da Oi abre caminho ao Chapter 11, medida na Justiça dos EUA comparável à recuperação judicial. Estadão, São Paulo, 7 jul. 2025. Disponível em: https://www.estadao.com.br/economia/negocios/pedido-oi-caminho-chapter-11-medida-eua-comparavel-recuperacao-judicial/. Acesso em: 15 jul. 2025.; MATOS, Lorena. Oi (OIBR3) pede fim do Chapter 15 nos EUA e coloca Chapter 11 no radar. Money Times, 8 jul. 2025, 08:44. Disponível em: https://www.moneytimes.com.br/oi-oibr3-pede-fim-do-chapter-15-nos-eua-e-coloca-chapter-11-no-radar-lmrs/. Acesso em: 15 jul. 2025.; PODER360. Oi pede fim do Chapter 15 nos EUA e avalia nova proteção judicial. Poder360, 8 jul. 2025, 17h32. Disponível em: https://www.poder360.com.br/poder-infra/oi-pede-fim-do-chapter-15-nos-eua-e-avalia-nova-protecao-judicial/. Acesso em: 15 jul. 2025.



**P I N H E I R O N E T O**
A D V O G A D O S

18.    Na petição, as Recuperandas manifestam expressamente a sua pretensão de ajuizar uma *Chapter 11* nos Estados Unidos, que se justificaria por dois motivos: (i) a lei brasileira não lhe permite a impetração de nova recuperação judicial até 28.05.29; e (ii) a intenção de novar os créditos que, por força do art. 49 da LREF, não se submetem ao Plano.

19.    Na petição apresentada perante a Corte de Nova York, os representantes do Grupo Oi apontaram, com base em declarações prestadas pelo Sr. Marcelo José Milliet, atual presidente da Oi, que o pedido a ser formulado no foro estrangeiro já teria sido informado e contaria com o suporte do D. Juízo da Recuperação (docs. 4/5), muito embora não haja qualquer decisão neste sentido.

20.    Portanto, as Recuperandas não só adotam manobra absolutamente contrária à lei, à jurisdição nacional e à ordem pública, como também o fazem mediante alegações, a princípio, duvidosas. **Com efeito, não há qualquer evidência nos autos da Recuperação Judicial que confirme a alegação dos administradores do Grupo Oi no sentido de que "*a Vara de RJ brasileira apoia um pedido paralelo baseado no Capítulo 11 para as Devedoras em RJ para evitar a liquidação*" (doc. nº 10, p. 6).**

21.    Em que pese a destreza com o que o D. Juízo da Recuperação vem conduzindo a Recuperação Judicial, tendo, nos últimos meses, adotado diversas medidas para aumentar a celeridade processual e a fiscalização das atividades das recuperandas (*i.e.*, a reformulação dos procedimentos de habilitação e impugnação de crédito[6] e a indicação de um "*watchdog*"[7]), a r. Decisão nº 2 acabou por incorrer em dois equívocos pontuais, mas relevantes, que, por conta da urgência da matéria, justificam a interposição deste agravo de instrumento.

22.    O primeiro deles foi a ausência de adoção de medidas que impeçam o Grupo Oi de ajuizar um *Chapter 11* no exterior antes que a matéria seja deliberada pelo D.

---

[6] Fls. 102.900/102.913.
[7] Fls. 114.162/114.176.

**PINHEIRONETO**

A D V O G A D O S

Página

11

Juízo da Recuperação, após oitiva das partes envolvidas e afetadas pela Recuperação Judicial, se limitando a determinar a "*expedição de comunicação, pela Administração Judicial, devidamente traduzida para a língua inglesa, à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), informando que 'se encontra em tramitação perante este Juízo da 7ª Vara Empresarial do Rio de Janeiro, RJ, processo de recuperação judicial do Grupo Oi, no qual a Recuperanda deixou de cumprir obrigações assumidas no mês de junho de 2025, sem justificativa para tanto, até o presente momento'"* (**doc. nº 4**).

23.     Como se demonstrará adiante, se não forem adotadas, de imediato, medidas enérgicas que impeçam o Grupo Oi de criar um fato consumado, através da apresentação de um pedido de *Chapter 11* na Justiça norte-americana, estará em sério risco a soberania das decisões do Poder Judiciário brasileiro proferidas no curso da Recuperação Judicial, além do próprio cumprimento do Plano já aprovado**.**

24.     O segundo equívoco é a ausência de intimação do Tribunal de Contas da União e da Comissão de Valores Mobiliários para manifestação sobre o Aditamento ao Plano, pelos motivos que serão abordados nos itens 145 a 151 abaixo.

## II.     RAZÕES PARA A REFORMA DAS RR. DECISÕES AGRAVADAS

### (a)     *Intervenção Necessária – Esvaziamento da Jurisdição Nacional*

25.     Em meio às denúncias de descumprimento de seu Plano[8], nomeação de watch-dog[9], apresentação de Aditamento ao Plano[10] e fiscalização da remuneração de seus gestores, se tornou pública a intenção do Grupo Oi de distribuir, perante a Corte de Nova York, o procedimento previsto no U.S. Chapter 11 do Bankruptcy Code para reestruturação —— nas palavras da própria recuperanda —— das "*obrigações que não podem ser reestruturadas no Brasil*" (**doc. nº 10**, p. 12).

---

[8]   Fls.   92.257/92.258;   96.737/96.743;   96.844/96.845;   97.430/97.431;   97.855/97.857;   102.889/102.890; 103.870/103.871; 103/969/103.970; 103.987/103.988; 104.149/104.150; 108.216/108.223; 110.125/110.126; 111.722/111.723
[9] Fls. 113.308/113.431
[10] Fls. 114.162/114.176

TJRJ 20250064584 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



# PINHEIRONETO
### A D V O G A D O S

26.     A instauração do procedimento do Chapter 11 tem como objetivo confesso a "reestruturação da reestruturação", de modo a submeter os créditos não-sujeitos à Recuperação Judicial do Grupo Oi aos efeitos de uma nova reorganização, em manifesto esvaziamento do direito dos aos credores e fornecedores, bem como esvaziamento da jurisdição da autoridade brasileira responsável pela condução da Recuperação Judicial em curso.

27.     Muito embora tanto a legislação brasileira quanto a americana disponham de procedimentos harmônicos de cooperação transnacional (i.e., Capítulo VI-A da Lei n° 11.101/05 e Chapter 15 do Bankruptcy Code, respectivamente), o Grupo Oi pretende distribuir processo análogo a uma recuperação judicial "principal" (a terceira em um intervalo de 10 anos), em paralelo à Recuperação Judicial em curso perante o D. Juízo da Recuperação.

28.     E a intenção por trás desse movimento foi expressa pelas Recuperandas: a lei brasileira não lhes permite apresentar nova recuperação judicial antes de 28.05.29, o que iria de encontro com a sua pretensão de novar os créditos que, por força do art. 49 da LREF, não se submetem ao Plano aprovado pelos credores e homologado pelo D. Juízo da Recuperação há pouco mais de 1 ano.

29.     A forma que as Recuperandas trataram esse assunto em sua mais recente manifestação (**doc. nº 9**) é surpreendente, na medida em que movimento nesse sentido representaria uso abusivo de um procedimento estrangeiro, não para reconhecer ou viabilizar os efeitos de um plano de recuperação judicial brasileiro, mas sim para   promover (uma nova) reorganização substantiva nos EUA, em flagrante violação ao ordenamento jurídico nacional (em especial, ao nosso sistema de insolvência), à autoridade do Poder Judiciário Brasileiro e à lógica da Recuperação Judicial em curso.

30.     O Grupo Oi se limitou a informar nos autos da Recuperação Judicial que manteria seus credores, o Administrador Judicial e o D. Juízo da Recuperação "informados" da decisão que seus administradores viessem a tomar a respeito do início do procedimento de Chapter 11 ⸺ como, inclusive, se um pedido de

- 11 -

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

PINHEIRO NETO
A D V O G A D O S

reorganização não dependesse da aprovação da assembleia de acionistas da Oi, mas do juízo de mera conveniência da nova administração.

31.    Talvez mais relevante, apesar de inexistir qualquer evidência nos autos de origem nesse sentido, o Grupo Oi alegou à corte americana que "*a Vara de RJ brasileira apoia um pedido paralelo baseado no Capítulo 11 para as Devedoras em RJ para evitar a liquidação*" (**doc. nº 10**, p. 6) e ainda que "*os representantes e advogados da Sociedade discutiram essa possibilidade com a Vara de RJ do Rio de Janeiro e o Ministro relator do Tribunal de Justiça, e os juízes manifestaram corroboração à estratégia*" (**doc. nº 10**, p. 12).

32.    As rr. Decisões Agravadas, embora tenham adotado diversas medidas para fiscalização das atividades das Recuperandas e reconhecido o papel do D. Juízo da Recuperação na fiscalização da legalidade dos atos praticados pelas Recuperandas, acabaram por deixar de adotar medida que impeça o Grupo Oi de esvaziar a competência do Poder Judiciário brasileiro, violando, em um só turno, a jurisdição e a legislação nacionais, além de não ter determinado a intimação do Tribunal de Contas da União e da Comissão de Valores Mobiliários para manifestação sobre o Aditamento ao Plano —— partes que desempenham papel essencial no soerguimento do Grupo Oi.

33.    Mais do que um manifesto desrespeito à ordem pública brasileira, eventual pedido de reorganização, sob a forma de *Chapter 11* nos Estados Unidos, esbarra no Plano aprovado, no qual os credores autorizaram a Oi tão somente com vistas "*à implementação das disposições deste Plano*" (Cláusula 10.15.2, fls. 56.917).

34.    À administração da companhia não cabe simplesmente escolher desconsiderar os termos do Plano ao qual o Grupo Oi está expressamente vinculado. Um plano de recuperação judicial é o instrumento mais relevante de uma companhia em reorganização, cujos termos e condições não podem ser desrespeitados em razão de alterações na composição dos órgãos administrativos.

35.    Nem mesmo em um cenário de normalidade da vida societária, justifica-se o

TJRJ 20250064584 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

JUR_SP - 55203626v4 - 5769054.524399

**PINHEIRO NETO**

A D V O G A D O S

descumprimento (e/ou alteração unilateral) de instrumentos contratuais em razão de tais compromissos terem sido celebrados pela antiga gestão —— quiçá num momento de crise, cujos efeitos impactam centenas de milhares de credores (a quem os administradores também prestam deveres fiduciários).

36.     Nessas circunstâncias, no mínimo —— *e caso se entendam superadas a ilegalidades que obstam o pedido de Chapter 11 em si, o que se admite apenas por eventualidade* —— a questão deve ser previamente submetida não apenas aos acionistas da Oi (art. 122, IX, da Lei 6.404/76), mas também aos credores da Recuperação Judicial (art. 35, I, "f", da LRF).

37.     Com base nos argumentos resumidos acima e detalhados abaixo, confia a V.tal na concessão da antecipação dos efeitos da tutela recursal, com posterior provimento deste Agravo, para que **(i)** sejam as recuperandas impedidas de ajuizar qualquer pedido de recuperação judicial principal perante a justiça de Nova York ou de qualquer outro tribunal estrangeiro, até que, após ouvidos os credores, Administrador Judicial, Ministério Público, a questão seja deliberada pelo D. Juízo da Recuperação; e **(ii)** seja o D. Juízo da Recuperação imediatamente oficiado, para que, antes de qualquer deliberação, intime o TCU e a CVM a se manifestarem sobre o Aditamento ao Plano e o pedido cautelar apresentados na origem.

*(b)*     ***Violação à Legislação Nacional - Manobra para Afastar a Jurisdição Brasileira***

38.     No seu pedido direcionado à Corte estadunidense, o Grupo Oi é incisivo nos motivos que justificariam um pedido de reestruturação na forma do Chapter 11: **se esquivar das regras e limitações da LFRE para que possa ajuizar um terceiro processo principal de soerguimento e reestruturar créditos que o legislador brasileiro escolheu priorizar e proteger em prol do desenvolvimento econômico nacional**.

39.     Uma medida literalmente sem precedentes para se furtar ao cumprimento das obrigações assumidas perante os seus credores que não apenas confiaram e

TJRJ 20250064584 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**P I N H E I R O N E T O**

A D V O G A D O S



apoiaram o segundo pedido de recuperação judicial (inclusivo por meio da concessão de novos financiamentos), mas continuaram a fornecer insumos, serviços e dinheiro para a companhia em prol do seu soerguimento.

40.      Os representantes das Recuperandas, na petição apresentada à Corte de Nova York, afirmam expressamente que o Grupo Oi está desistindo do Chapter 15 (procedimento auxiliar ao processo de origem) para apresentar um (novo) procedimento **principal** análogo à recuperação judicial na forma da legislação americana (*Chapter 11*), muito embora já esteja em curso o processo de recuperação judicial do Grupo Oi perante o Poder Judiciário brasileiro.

41.      A pretensão, como eles próprios admitem, é "*fornecer uma estrutura para estabilizar os fluxos de caixa e dar à empresa mais tempo para executar os processos de comercialização de certos ativos relacionados aos serviços descontinuados prestados pelo Grupo Oi, vide Declaração de Milliet ¶23, **bem como abordar obrigações que não podem ser reestruturadas no Brasil***" (**doc. nº 10**, p. 12).

42.      Ou seja, pretende-se novar os créditos que, nos termos da legislação brasileira, são extraconcursais por força da existência da Recuperação Judicial.

43.      As Recuperandas defendem que o pedido decorreria de uma <u>suposta carência do sistema recuperacional brasileiro</u>, que, diferente da lei americana, não preveria determinados remédios: "*Dada a perspectiva da Oi e a falta de recursos disponíveis no Brasil, a Sociedade explorou suas opções estratégicas para preservar e maximizar o valor para todas as partes interessadas e para a continuidade de seus negócios*" (**doc. nº 10**, p. 11).

44.      Em outras palavras, apesar de ter recorrido a dois pedidos de recuperação judicial no Brasil, agora, o Grupo Oi decide que não está satisfeito com o sistema recuperacional brasileiro porque, como alega, o sistema nacional não atenderia aos seus interesses ⸺ não se adequando à visão da nova administração da companhia. Pretende, assim, submeter o seu processo de soerguimento a outra

**PINHEIRO NETO**
A D V O G A D O S



jurisdição, cuja lei aplicável lhe é mais favorável.

45.     Também, preocupado com um possível cenário falimentar, **pretende impedir que esta E. Corte nacional possa —— através das prerrogativas que lhe confere a lei —— decretar a falência das Recuperandas.** Confira-se, neste sentido, o seguinte trecho da petição apresentada à Corte de Nova York:

> "**I**sso significa que, embora a Sociedade ainda possua fontes de receita e ativos valiosos, incluindo sua participação minoritária na V.Tal e diversos imóveis, a Sociedade atualmente não possui fundos suficientes para continuar operando. Declaração de Milliet ¶22. Caso a Sociedade fique sem a liquidez necessária para cumprir com suas obrigações nos termos do Plano de RJ Brasileiro, a Vara de RJ Brasileira poderá converter o Processo de RJ Brasileiro em falência, segundo a qual os negócios da Sociedade poderão ser imediatamente encerrados" (**doc. nº 10**, p. 11)

46.     A estratégia é conhecida como "*forum shopping*", que consiste na escolha oportunista da jurisdição que melhor assiste aos interesses do requerente. Assim, ora ajuíza a ação em determinada jurisdição, ora em outra, a depender do que lhe é mais conveniente. Esta prática adotada pelo Grupo Oi representa verdadeira afronta à jurisdição nacional na medida em que a Recuperação Judicial já se encontrava em curso.

47.     Uma vez que o principal estabelecimento do Grupo Oi está incontroversamente localizado na cidade do Rio de Janeiro e a Recuperação Judicial já fora ajuizada —— questão já preclusa e afetada por coisa julgada material ——, é nela, e unicamente nela, em que deverá ser processada a sua recuperação judicial e é impossível reconciliar tal medida com qualquer outro processo de insolvência de natureza principal.

48.     E, ainda que isto não fosse suficiente para impedir o eventual pedido de *Chapter 11* perante a justiça americana, fato é que o Grupo Oi já submeteu o seu processo de soerguimento à justiça brasileira, não podendo agora, quase 10 anos depois de iniciar esta saga recuperatória perante o Tribunal de Justiça do Rio de Janeiro, deliberadamente optar por afastar a competência soberana desta Corte, para entregar a uma corte estrangeira.

**PINHEIRO NETO**
A D V O G A D O S



49.    Nos termos do art. Art. 6º, § 8º, da LREF, "[a] *distribuição do pedido de falência ou de recuperação judicial ou a homologação de recuperação extrajudicial previne a jurisdição para qualquer outro pedido de falência, de recuperação judicial ou de homologação de recuperação extrajudicial relativo ao mesmo devedor*".

50.    O dispositivo, ao empregar os termos "*qualquer outro*", não poderia ter sido mais claro. Uma vez que o Grupo Oi já requereu a Recuperação Judicial perante o D. Juízo da Recuperação, é apenas este juízo que poderá processar "*qualquer outro pedido […] de recuperação judicial*". O CPC reforça esta regra, ao regular os institutos da conexão e da prevenção (arts. 55, § 3º, 58, 59, e 286, I e III)[11].

51.    A garantia de prevenção é a única forma de se preservar a competência do juízo recuperacional, bem como a higidez das suas decisões, evitando-se, assim, ordens conflitantes. A doutrina especializada reconhece a importância da prevenção para processamento dos novos pedidos de recuperação judicial, sendo incisiva em apontar que o juízo prevento **será o único a apreciar eventuais outros pedidos de recuperação judicial**. Veja-se:

> "O art. 6º, § 8º, consagra o princípio da unidade do juízo falimentar ou da recuperação judicial. Pelo referido princípio, evitam-se decisões contraditórias de juízes diversos, como sucessivas decretações de falência de um mesmo devedor, a decretação de falência de um devedor por inadimplemento de crédito sujeito a uma recuperação judicial cujo processamento foi anteriormente deferido ou que seja concedida mais de uma recuperação judicial de um mesmo devedor.
> A distribuição do primeiro pedido de falência ou recuperação judicial determina a prevenção dos demais pedidos. Estes deverão ser distribuídos para o juízo prevento, **o qual será o único a apreciar todos os pedidos**." (SACRAMONE, Marcelo Barbosa. *Comentários à Lei de recuperação de empresas e falência*. 2. ed. São Paulo: Saraiva Educação, 2021. p. 110 – grifos acrescentados)

---

[11] Art. 55. Reputam-se conexas 2 (duas) ou mais ações quando lhes for comum o pedido ou a causa de pedir. […] § 3º Serão reunidos para julgamento conjunto os processos que possam gerar risco de prolação de decisões conflitantes ou contraditórias caso decididos separadamente, mesmo sem conexão entre eles.
Art. 59. O registro ou a distribuição da petição inicial torna prevento o juízo.
Art. 58. A reunião das ações propostas em separado far-se-á no juízo prevento, onde serão decididas simultaneamente.
Art. 286. Serão distribuídas por dependência as causas de qualquer natureza: - quando se relacionarem, por conexão ou continência, com outra já ajuizada; […] III - quando houver ajuizamento de ações nos termos do art. 55, § 3º, ao juízo prevento.

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



**PINHEIRONETO**
A D V O G A D O S

52.          Portanto, nos termos do art. 6º, § 8º, da LREF, o MM. Juízo *a quo* é prevento para apreciação de qualquer outro eventual novo pedido de recuperação judicial do Grupo Oi, de forma que, neste caso e no âmbito internacional, está-se diante de competência **exclusiva** da justiça brasileira.

53.          Sendo **exclusiva** a competência para processamento da recuperação judicial do Grupo Oi dada a existência da Recuperação Judicial, não podem as recuperandas ajuizar processo da mesma natureza perante a Corte de Nova York. De outro modo, estar-se-ia admitindo que uma corte estrangeira usurpasse da competência nacional, determinando a forma do cumprimento de obrigações por empresa nacional, em território nacional e cujos credores, em sua esmagadora maioria, são igualmente nacionais. Veja-se, neste sentido, o entendimento da doutrina especializada, especificamente sobre a competência exclusiva:

> "**Se a lei, contudo, determina que tão somente a justiça doméstica é internacionalmente competente, com exclusão de qualquer outra**, para julgar uma lide, usa-se o termo '**competência exclusiva**'. Isso significa que, para os processos indicados, a *lex fori* reconhece como internacionalmente competentes apenas os seus juízes e tribunais, **não admitindo o exercício de jurisdição concorrente por qualquer juiz ou tribunal estrangeiro**." (RECHSTEINER, Beat Walter. *Direito internacional privado: teoria e prática*. 20. ed. rev. e atual. de acordo com a Lei da Migração. São Paulo: Saraiva Educação, 2019. p. 282 – grifos acrescentados)

### (c)    Precedente Relevante

54.     Relembre-se, aliás, que esta questão já foi apreciada no âmbito da primeira recuperação judicial do Grupo Oi. À época, houve ampla discussão acerca da possibilidade de interferência da Justiça Holandesa naquele processo, ocasião em que o Grupo Oi defendeu veementemente ser esta Corte Estadual a única competente para processamento da sua recuperação (fls. 188.805/188.808 do processo nº 0203711.65.2016.8.19.0001), o que foi reconhecido por esse E. Tribunal (**doc. nº 11**).

55.     E, ainda que seja o caso de competência concorrente, não poderia o Grupo Oi deliberadamente optar, agora, por apresentar pedido análogo à recuperação

TJRJ 20250006458846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



**PINHEIRONETO**
A D V O G A D O S

judicial no exterior, **quando já optou pelo processamento deste mesmo remédio em território brasileiro**. A medida, além de violar o disposto no art. 22 do CPC, segundo o qual "[c]*ompete, ainda, à autoridade judiciária brasileira processar e julgar as ações:* […] *III - em que as partes, expressa ou tacitamente, se submeterem à jurisdição nacional*", representaria verdadeira artimanha processual, em manifesta violação ao princípio da boa-fé objetiva (art. 8º do CPC e 422 do Código Civil).

56.     Como visto no item 61 acima, o Grupo Oi já defendeu veementemente a jurisdição brasileira e a competência exclusiva desse E. Tribunal para processamento da Recuperação Judicial. Na petição inicial da Recuperação Judicial, apontou-se expressamente que esse E. Tribunal de Justiça é o ÚNICO competente para processamento da recuperação judicial, do Grupo Oi, tanto em função da localidade do seu principal estabelecimento (art. 3º LREF), quanto pela prevenção em razão da sua primeira recuperação judicial (art. 6º, § 8º, LREF). Veja-se trecho da petição inicial dos autos de origem:

> "Não há dúvidas de que a competência para processar e julgar o processo de recuperação judicial do Grupo Oi é do MM. Juízo da 7ª Vara Empresarial da Comarca da Capital desse e. TJRJ, prevento em razão da 1ª Recuperação Judicial ("1ª RJ") e dos requerimentos de falência distribuídos por dois credores, os quais ainda tramitam perante essa serventia2 (LRF, art. 6º, § 8º).
> Nem poderia ser diferente já que: (i) o Estado do Rio de Janeiro é o local do principal estabelecimento da Companhia, onde se desenvolvem as suas atividades e onde são tomadas as principais decisões do Grupo Oi; (ii) embora formalmente sediadas no exterior, a PTIF e a Oi Coop são sociedades não operacionais, que foram utilizadas apenas como veículos para captação de recursos a partir do exterior, voltados ao financiamento das atividades da Oi no Brasil;4 e (iii) as obrigações da PTIF e da Oi Coop, apesar de contraídas originalmente no exterior mediante a emissão de bonds, sempre foram cumpridas no Brasil, com lastro exclusivo nas operações brasileiras de sua controladora Oi.
> […]
> **Portanto, como já reconhecido na decisão de ID nº 44532251, esse MM. Juízo da 7ª Vara Empresarial da Comarca da Capital desse E. TJRJ é o único competente para processar e julgar esta recuperação judicial."** (fls. 3.242/3.244 – grifos acrescentados)

57.     Portanto, ainda que fosse o caso de competência concorrente (como admite-se ser o caso de outros *Chapter 11* ajuizados por outras empresas brasileiras), fato é a que o Grupo Oi **optou** por ajuizar o seu processo de recuperação judicial em



**PINHEIRONETO**
A D V O G A D O S

território brasileiro, o que implica a **renúncia** ao seu pretenso —— no caso concreto, inexistente —— direito de ajuizar o Chapter 11 perante a Justiça nova-iorquina. Entender de outra forma seria chancelar a já mencionada prática do "*forum shopping*", bem como o comportamento contraditório, vedados pelo ordenamento jurídico brasileiro.

58.    Sobre esta conduta, o E. STJ já teve a oportunidade de se manifestar, tendo-a repreendido veementemente. No emblemático caso *Marítima v. Braspetro*, a E. Quarta Turma do STJ negou provimento ao recurso especial interposto pela Marítima, para reconhecer que, tendo ela própria ajuizado ação no exterior, não poderia, depois de vencida, pretender obstar a homologação da sentença, para ajuizar nova ação no Brasil. O fundamento adotado foi o de que não se pode admitir que alguém ajuíze ação em determinada jurisdição e, quando sucumbir —— ou perceber que sucumbirá —— ajuizar a mesma ação em outra jurisdição, para tentar nova sorte.

59.    Isso porque, tendo a parte livremente escolhido determinada jurisdição, deverá a ela se submeter, não podendo se valer de alçada diversa, ainda que seja caso de competência concorrente. A prática, como reconheceu a E. Corte Superior, é violadora da boa-fé objetiva e deve ser censurada:

> "Verifica-se no presente caso, portanto, que todos **os contratantes se submeteram livremente à Justiça inglesa até o julgamento das demandas por magistrados ingleses**, efetuando despesas processuais e pagamento dos respectivos advogados. Igualmente se constata que a competência não é exclusiva, mas concorrente e, em tese, prorrogável. **Em tais circunstâncias, não parece razoável que outra demanda seja proposta no Brasil pela parte que sucumbiu no exterior, contrariando os princípios da boa-fé objetiva e da segurança jurídica, os quais também devem ser observados no plano internacional**, sobretudo por aqueles que usufruem do irreversível fenômeno da globalização, onde as fronteiras estão desaparecendo de forma natural, inclusive sob o aspecto das relações negociais." (REsp n. 1.090.720/RJ, relator Ministro Antonio Carlos Ferreira, Quarta Turma, julgado em 14/6/2016, DJe de 23/8/2016 — grifos acrescentados)

60.    A mesma questão já havia sido analisada pela E. Ministra Nancy Andrighi, no âmbito da MC nº 15.398/RJ. Ao apreciar o pedido cautelar, a E. Ministra foi categórica em reconhecer a impossibilidade de determinada parte escolher, ao seu talante, a

**PINHEIRO NETO**

A D V O G A D O S

jurisdição que melhor lhe convier naquele momento. Veja-se trecho da r. decisão:

> "Com efeito, em um primeiro momento, a requerente, ou empresas por ela
> controladas, ajuízam uma ação para defesa de seus direitos perante a justiça inglesa.
> **Depois, porém, ao verem frustrada sua pretensão perante aquele Tribunal,
> repetem a ação, desta vez no Brasil, tentando melhor sorte. Assim, ainda que
> não seja possível, ao menos no plano do direito positivado, aplicar no Brasil os
> já citados princípios do forum shopping e do forum non conveniens para
> extinguir a ação, deferir uma medida liminar que suspenda os atos tendentes à
> execução daquela sentença implicaria privilegiar o comportamento
> contraditório. Do mesmo modo que, no direito civil, o comportamento
> contraditório implica violação do princípio da boa-fé objetiva, é possível
> também imaginar, ao menos num plano inicial de raciocínio, a violação do
> mesmo princípio no plano processual.** O elenco de condutas que atentam contra
> a boa-fé processual que está contido no art. 17 do CPC poderia ser posto ao lado de
> um elenco de novas condutas que, para além das regras postas, subsumem-se dos
> princípios gerais do ordenamento jurídico. **A violação da boa-fé objetiva, portanto,
> representada pelo comportamento contraditório da parte, também poderia se
> estender aos atos processuais - o que implica o indeferimento da medida liminar
> aqui pleiteada.**" (MC n. 15.398/RJ, relatora Ministra Nancy Andrighi, Terceira Turma,
> julgado em 2/4/2009, DJe de 23/4/2009 – grifos acrescentados)

61.     Embora o caso dos autos trate de questão diversa, o racional aplicado deve
ser o mesmo: **não pode o Grupo Oi, depois de ter escolhido a jurisdição
brasileira para ajuizar a Recuperação Judicial, pretender agora apresentá-la em
jurisdição estrangeira, sob o pretexto de que a lei americana lhe é mais
favorável** (cf. itens 46 a 48 *supra*).

*(d)*    *Legislação Suprimida*

62.     Como antecipado no capítulo acima, a Lei de Recuperação e Falências, com
as inovações trazidas pela Lei nº 14.112/20, passou a prever regime próprio para a
insolvência transnacional. A nova sistemática admite a existência de um processo
principal e outro, auxiliar. Não admite, por outro lado, a coexistência de dois
processos principais.

63.     Quanto ao processo principal, a LRF prevê, em seu art. 167-B, II, que ele
corresponde a "*qualquer processo estrangeiro aberto no país* **em que o devedor
tenha o centro de seus interesses principais**". Evidentemente e como já

PINHEIRONETO
A D V O G A D O S

longamente defendido pelo próprio Grupo Oi, o centro de interesses do Grupo Oi não está nos Estados Unidos, mas no Brasil, onde se encontram a vasta maioria dos seus credores, bens, contratos, serviços etc.

64.    Sobre o "centro de interesses principais", para fins de fixação da competência para processamento da recuperação judicial transnacional, confira-se a definição de Marcelo Barbosa Sacramone:

> "Principal é o processo estrangeiro que ocorre no centro de interesses principais do devedor, e que se **presume como o de sua sede administrativa ou domicílio do empresário individual por ocasião da realização do processo estrangeiro**, a menos que essa sede tenha sido transferida ou manipulada para alterar a competência. Nesse aspecto, **deverá ser verificado o país de administração dos interesses do devedor e que seria prontamente reconhecido pela coletividade de credores**, independentemente de sua sede estatutária, no momento do início do processo estrangeiro." (SACRAMONE, Marcelo Barbosa. *Comentários à Lei de Recuperação de Empresas e Falência*. 2. ed. São Paulo: Saraiva Educação, 2021. p. 640–641 – grifos acrescentados)

65.    Ademais, o art. 167-E do mesmo diploma admite apenas que o devedor atue como **representante** do processo nacional, mas não admite, de modo algum, que a recuperanda ajuíze nova recuperação judicial em outra jurisdição[12]. Como ensina a doutrina especializada, ajuizado o processo recuperatório em determinada jurisdição, "*qualquer processo de insolvência aberto posteriormente no âmbito de aplicação do regulamento deve ser considerado um processo secundário e, portanto, restringir seus efeitos às fronteiras territoriais do país em que tenha sido aberto*"[13].

66.    Neste sistema de recuperação transnacional, positivado pela Lei nº 14.112/20, não há uma suposta jurisdição internacional para processamento da recuperação judicial. Pelo contrário, preserva-se a jurisdição brasileira, servindo o sistema apenas para que haja efetiva cooperação internacional. Neste sentido, é esclarecedora a lição de Sergio Campinho:

---

[12] Art. 167-E. São autorizados a atuar em outros países, independentemente de decisão judicial, na qualidade de representante do processo brasileiro, desde que essa providência seja permitida pela lei do país em que tramitem os processos estrangeiros: I - o devedor, na recuperação judicial e na recuperação extrajudicial

[13] FELSBERG, Thomas Benes; CAMPANA FILHO, Paulo Fernando. A recuperação judicial de sociedades sediadas no exterior: as lições da experiência estrangeira e os desenvolvimentos no Brasil. In: CEREZETTI, Sheila C. Neder; MAFFIOLETTI, Emanuelle Urbano (coord.). Dez anos da Lei nº 11.101/2005: estudos sobre a lei de recuperação e falência. São Paulo: Almedina, 2015. p. 474-475



**P I N H E I R O N E T O**

A D V O G A D O S

> "**É fundamental ter-se em mente que não há uma jurisdição internacional em matéria de insolvência. O instituto da insolvência transfronteiriça concerne à disponibilização de meios e instrumentos que facilitem e concretizem a cooperação internacional entre juízes e autoridades. O juiz brasileiro, portanto, preserva a sua jurisdição, sem prejuízo do dever de colaborar na garantia, através da utilização das ferramentas legais, da efetividade das decisões de juízes estrangeiros proferidas em suas respectivas jurisdições. Essa colaboração respeitará sempre, pois, os limites territoriais de cada atuação.**" (CAMPINHO, Sérgio. *Temas relevantes e controvertidos decorrentes da reforma da Lei de Falência e Recuperação de Empresas (Lei n. 14.112/2020).* Rio de Janeiro: Expressa, 2021. E-book. p. 42.)

67.    No mesmo sentido, o entendimento do Col. STJ:

> "A recente incorporação da regulação da insolvência transnacional à Lei 11.101/2005 impõe ao Estado brasileiro o reconhecimento dos processos de insolvência transnacional, inclusive processos administrativos de liquidação e reorganização, assegurando a representante estrangeiro o acesso aos processos individuais em curso no território nacional (Lei 11.101/2005, arts. 167-A, 167-B e 167-F) como consequência do dever de cooperação e colaboração entre as jurisdições nacionais envolvidas, **mas não modifica a jurisdição definida internamente por cada Estado.**" (REsp n. 1.966.276/SP, relator Ministro Raul Araújo, Quarta Turma, julgado em 9/4/2024, DJe de 13/6/2024.)

68.    Por todos os lados que se olhe, fica evidente que, quando já ajuizada a recuperação judicial do Grupo Oi, a competência para processamento de qualquer nova recuperação judicial (ou processo análogo) do Grupo Oi é única e exclusivamente desse E. TJRJ.

69.    **Aceitar a interferência de tribunais estrangeiros no processo recuperatório de origem representaria verdadeira afronta à jurisdição nacional, especialmente considerando que as obrigações previstas no Plano do Grupo Oi serão cumpridas, em sua esmagadora maioria, no Brasil.**

70.    Nesse particular, note-se que, seguindo a lei modelo da UNCITRAL, a LREF prevê que as normas de insolvência transnacional devem ser interpretadas de acordo com a boa-fé (art. 167-A, §1º, LREF) e com atenção a determinados objetivos norteadores, listados nos incisos do art. 167-A, dentre os quais se inserem os de (i) garantir o "*aumento da segurança jurídica para a atividade econômica e para o*

TJRJ 202500645846 23/07/2025 10:37:36 l>TW Petição Inicial Eletrônica

**PINHEIRO NETO**

A D V O G A D O S

*investimento*" e (ii) "*proteger os interesses dos credores e dos demais interessados*" no processo de reestruturação.

71.     A medida pretendida pelo Grupo Oi com o processo de reestruturação norte-americano não atende quaisquer desses objetivos. Pelo contrário, afronta-os diretamente.

72.     Não há, portanto, sob qualquer ângulo que se analise a questão, como dar guarida à pretensão do Grupo Oi, sob pena de se ratificar uma manifesta violação à ordem pública brasileira e o esvaziamento do instituto da recuperação judicial tal como pensada pelo legislador pátrio.

73.     O sistema de insolvência é meio de implementação de política pública relevante para o desenvolvimento econômico nacional[14], fornecendo instrumentos para a proteção do sistema financeiro, promoção de empregos e realocação eficiente dos recursos, atendendo aos objetivos do art. 170 da Constituição de República.

74.     Esta relevância social da recuperação judicial se revela ainda maior no caso do Grupo Oi, que, por ser hoje um dos maiores processos de insolvência do país, produz efeitos sobre toda a sociedade brasileira, afetando milhares de empregos e investimentos por todo o território nacional.

75.     Além disso, o Grupo Oi, embora em crise há quase uma década, ainda é o maior prestador de serviços de telefonia fixa do Brasil, sendo certo que milhões de pessoas dependem do serviço público por ele prestado. Como a própria Oi afirma no seu pedido de Aditamento ao Plano, "o Grupo Oi atende mais de 43 mil clientes através do ramo "Oi Soluções" – dentre eles, 46% das prefeituras, 68% dos governos estaduais e 69% dos órgãos do Governo Federal, além de 82% das mil maiores

---

[20] "Ao afetar a satisfação dos créditos, o sistema de insolvência repercute no risco do crédito, no acesso e custo do financiamento, nas contratações entre os agentes, nas garantias exigidas, e afeta diretamente as sanções ou os incentivos ao devedor, com a alteração da própria propensão ao empreendimento. Empiricamente, demonstrou-se que quanto maior a proteção aos credores, menores os juros exigidos e mais longos os empréstimos. Quanto maior a proteção e maior clareza quanto ao resultado decorrente de uma crise de inadimplemento, maiores investimentos tendem a ser realizados. A eficiência do sistema repercute, assim, diretamente na economia dos países, emprego e consumo e, por consequência, no desenvolvimento de todo o bem-estar social." (SACRAMONE, Marcelo Barbosa. Recuperação judicial: dos objetivos ao procedimento – incentivos regulatórios do sistema de insolvência brasileiro. 1. ed. São Paulo: Saraiva Jur, 2024. p. 8)

**P I N H E I R O N E T O**

A D V O G A D O S

empresas privadas do país e as 10 maiores dos setores bancário, comércio, construção, indústria e serviços. O seu soerguimento, portanto, é questão que deve ser decidida nos limites do território nacional.

76.    Aceitar o movimento pretendido pelo Grupo Oi sem reprimendas causaria consequências gravíssimas para o cenário jurídico e o mercado de investimentos nacionais, o que deve ser considerado pelo Poder Judiciário quando da análise do presente recurso (arts. 20 e 21 da LINDB).

77.    Por fim, não é demais pontuar que o argumento do Grupo Oi para justificar tal grave medida é manifestamente improcedente, afinal, inexiste qualquer óbice para que as Recuperandas renegociem os seus créditos não-sujeitos com os seus respectivos titulares, inclusive, de maneira estruturada e coletiva e sob a supervisão do Poder Judiciário, através, por exemplo, da instauração de uma mediação na forma admitida (e incentivada) pelo art. 20-B da LREF.

78.    Um pedido de *Chapter 11* na justiça americana é, portanto, não apenas prejudicial para a jurisdição nacional e para a comunidade de credores, mas também desnecessário.

**(e)    Violação à Ordem Pública - Tentativa Deliberada de Descumprir a Lei**

79.    O Grupo Oi também não disfarça a sua pretensão de, através da dessa nova recuperação judicial perante a Corte de Nova York, burlar a legislação brasileira.

80.    Ao longo da petição apresentada à Corte de Nova York, as Recuperandas discorrem longamente sobre como a lei brasileira não mais serviria aos interesses do Grupo Oi, o que justificaria a busca por socorro à legislação norte-americana. Se olvidam que é a companhia que está subordinada à lei brasileira, não o contrário.

81.    Como já se adiantou, o principal objetivo das recuperandas é **"*abordar obrigações que não podem ser reestruturadas no Brasil*"** (**doc. nº 10**, p. 12). Ou seja, pretendem tornar concursais os créditos extraconcursais.

TJRJ 20250064584646 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



**PINHEIRONETO**

A D V O G A D O S



82.    A lei brasileira, no entanto, prevê que "[e]*stão sujeitos à recuperação judicial todos os créditos existentes na data do pedido, ainda que não vencidos*" (art. 49 LREF). *A contrario sensu*, **não estarão sujeitos à recuperação judicial os créditos que se constituírem após a data do pedido, bem como aqueles expressamente excluídos pelo § 3º da referida norma**. Trata-se de critério imprescindível à segurança jurídica e à proteção do próprio sistema recuperacional.

83.    A finalidade do dispositivo é assegurar que, mesmo depois de iniciada a recuperação judicial do devedor, seja dada continuidade às suas atividades empresariais. Esta preservação da atividade só é possível se aqueles que contratam com a empresa em crise tiverem a garantia de que seus créditos não se submeterão ao concurso de credores, sendo pagos antes de todos os outros.

84.    Caso contrário, ninguém se interessaria em contratar com a recuperanda. Apresentado o pedido de recuperação judicial, não haveria mais um funcionário disposto a trabalhar, uma instituição financeira interessada em oferecer financiamento, tampouco um fornecedor comprometido em continuar a fornecer. A empesa em crise, às margens do sistema financeiro, seria obrigada a fechar as portas. Nas palavras de João Pedro Scalzilli, Luis Felipe Spinelli e Rodrigo Tellechea:

> "Por inferência, todos os créditos constituídos após a distribuição da ação de recuperação judicial estão temporalmente excluídos do regime em questão 2097. Isso porque a empresa 'continua funcionando normalmente e, portanto, negociando com bancos, fornecedores e clientes. Nesse contexto, <u>**se, após o pedido de recuperação judicial, os débitos contraídos pela sociedade empresária (ou empresa individual) se submetessem a seu regime, não haveria quem com ela quisesse negociar**</u>'(SCALZILLI, João Pedro; SPINELLI, Luis Felipe; TELLECHEA, Rodrigo. *Recuperação de empresas e falência: teoria e prática na Lei 11.101/2005*. 4. ed. rev., atual. e ampl. São Paulo: Almedina, 2023. p. 596 – grifos acrescentados)

85.    Trata-se, portanto, de norma de ordem pública, imprescindível à preservação de todo o sistema recuperacional. Sem a garantia de que os créditos posteriores ao pedido de recuperação judicial a ela não se submeterão, inviável será o soerguimento de qualquer sociedade empresarial neste país.



**PINHEIRONETO**
A D V O G A D O S

86.     Além do mais, o critério temporal concede tratamento especial àqueles que tomam o risco de participar do processo de soerguimento, seja a instituição que concede crédito à recuperanda (*DIP Financing*), ou, até mesmo, o trabalhador que escolhe continuar na empresa. A estes credores, que optam por engajar na difícil missão que é a recuperação, é garantido que os seus créditos não serão novados.

87.     Os credores do Grupo Oi que optaram por cooperar com o processo recuperatório, tomando altos riscos, tinham a legítima expectativa de que seus créditos seriam preservados, sendo pagos nos termos em que originalmente contratados ou gozariam de substancial preferência em eventual falência. Afinal, é esta a garantia que expressamente lhes confere a lei.

88.     A manobra pretendida pelas recuperandas, portanto, é absolutamente desleal, configurando verdadeira sabotagem aos credores que se comprometeram a a contribuir com o Grupo Oi para o seu soerguimento.

89.     Também salta aos olhos a pretensão das Recuperandas de descumprir a previsão do art. 48, II, da LREF[15], que proíbe o pedido de recuperação judicial por empresa que obteve o mesmo benefício a menos de 5 anos. Neste sentido, os representantes do Grupo Oi expressamente apontaram à Corte de Nova York que a distribuição de nova recuperação judicial em solo americano seria necessária porque ", a Lei de Falências Brasileira proíbe um devedor de entrar com um novo processo de RJ por cinco anos após a confirmação de um plano" (**doc. nº 10**, p. 5).

90.     Ora, se a lei brasileira, a qual se submete o Grupo Oi, proíbe expressamente a propositura de uma nova recuperação judicial antes de findado o prazo de 5 anos desde a concessão da anterior, é evidente que a pretensão das Agravadas é ilegal. Perceba-se, inclusive, que a lei não proíbe que a recuperanda ajuíze outra recuperação judicial (ou processo análogo) especificamente no Brasil. A proibição, por óbvio, se aplica a qualquer jurisdição.

---

[15] Art. 48. Poderá requerer recuperação judicial o devedor que, no momento do pedido, exerça regularmente suas atividades há mais de 2 (dois) anos e que atenda aos seguintes requisitos, cumulativamente: [...] **II** – não ter, há menos de 5 (cinco) anos, obtido concessão de recuperação judicial

**PINHEIRONETO**
A D V O G A D O S

91.    Esta "quarentena" não é mero capricho do legislador. Trata-se de uma decisão legislativa racional e fundamentada, que visa a impedir que empresas inviáveis se valham eternamente dos procedimentos recuperacionais, estes destinados às empresas viáveis. Neste sentido:

"**A ideia subjacente à fixação desses prazos de 'quarentena' é a presunção de que empresas que precisariam se valer corriqueiramente dos remédios recuperatórios não seriam economicamente viáveis. Em razão disso, deveriam ser eliminadas do mercado, uma vez que impõem aos outros agentes custos injustificáveis** (lembre-se que toda recuperação, em certa medida, importa sacrifício para os credores e para a sociedade como um todo). De qualquer forma, trata-se de entendimento que decorre de opção do legislador." (SCALZILLI, João Pedro; SPINELLI, Luis Felipe; TELLECHEA, Rodrigo. *Recuperação de empresas e falência: teoria e prática da Lei 11.101/2005*. 4. ed. rev., atual. e ampl. São Paulo: Almedina, 2023. p. 588)

\*\*\*

"Os incisos II e III também obstam ao empresário ou sociedade empresária que tenha obtido a concessão de recuperação judicial, seja a comum ou a especial (LREF, artigos 70 a 72), há menos de cinco anos, de obter nova recuperação judicial. **Presume a lei que o empresário que a obteve no quinquênio anterior não possui aptidão suficiente para a superação da crise econômico-financeira e a manutenção da fonte produtora.**" (CUNHA, Fernando Antonio Maia da; DIAS, Maria Rita Rebello Pinho. *Comentários à Lei de Recuperação de Empresas e Falência: Lei n. 11.101, de 09 de fevereiro de 2005*. São Paulo: Editora Contracorrente, 2022.)

92.    E este critério envolve questão de relevante interesse público. Isso porque são altíssimos os "custos" sociais de uma recuperação judicial, que demanda esforço e sacrifícios coletivos. Justamente tratando da importância da "quarentena" para o pedido de nova recuperação judicial, Fábio Ulhoa Coelho aponta que "*não se legitima ao pedido de recuperação judicial o devedor que a tenha obtido há menos de 5 anos.* [...] *Para que se justifique o sacrifício da sociedade brasileira presente, em maior ou menor extensão, em qualquer recuperação de empresa não derivada de solução de mercado, o devedor que a postula deve mostrar-se digno do benefício*"[16].

93.    Se o legislador nacional entende que a sociedade brasileira não deve suportar o ônus de um novo processo recuperatório em intervalo inferior a 5 anos desde o

---

[16] COELHO, Fábio Ulhoa. *Comentários à Lei de Falências e de Recuperação de Empresas*. 14. ed. rev., atual. e ampl. São Paulo: Thomson Reuters Brasil, 2021. p. 167-173.

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRO NETO**
A D V O G A D O S

processo anterior, é esta a norma que deve ser aplicada. Não se pode admitir, por outro lado, que outra jurisdição faça esta escolha pela sociedade brasileira, que será a real afetada por uma eventual nova recuperação judicial do Grupo Oi.

94.     Em outras palavras, permitir que o Grupo Oi prossiga com o seu projeto de ajuizar o Chapter 11 perante a Corte de Nova York seria admitir que toda a sociedade brasileira suporte um ônus que a legislação pátria, propositalmente, escolheu afastar. E isto tudo, por imposição de lei estrangeira.

95.     A pretensão de ajuizar o Chapter 11, valendo-se da legislação americana para burlar a lei brasileira, ofende a ordem pública. Trata-se de tentativa de impor a uma coletividade —— dada à natureza do processo recuperacional —— lei e jurisdição estrangeiras, despindo os nacionais das proteções que o legislador brasileiro entendeu por bem lhes conferir.

96.     Não fosse isso o bastante, eventual pedido de reorganização, sob a forma de *Chapter 11* nos Estados Unidos, esbarra no Plano aprovado, no qual os credores autorizaram a Oi tão somente com vistas "*à implementação das disposições deste Plano*" (Cláusula 10.15.2, fls. 56.917).

97.     Sobre o tema, aliás, é no mínimo *inverídica* a afirmação do Grupo Oi de que o Plano aprovado estaria substancialmente cumprido. No âmbito do pedido de desistência do procedimento previsto no Capítulo 15 do *Bankruptcy Code* dos Estados Unidos da América, o Grupo Oi declarou que "*o Plano de RJ brasileiro foi suficientemente implementado de forma que nenhum credor será impactado negativamente pela extinção da Ordem de Reconhecimento*". A realidade é oposta. Tanto o Plano não foi cumprido – e não será na forma originalmente aprovada – que o Grupo Oi apresentou justamente aditamento ao Plano original.

98.     São diversos aspectos ainda pendentes, como, por exemplo, o pagamento dos Credores Take-or-Pay e a alienação da UPI V.tal, fonte substancial (e talvez principal) de recursos para pagamento das diversas obrigações devidas pelo Grupo Oi. O Plano aprovado está longe de ser integralmente cumprido – muito menos

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRO NETO**
A D V O G A D O S

"suficientemente implementado". É mais uma premissa falsa empregada pelo Grupo Oi nessa empreitada.

99.    Diversamente do que pretende fazer crer o Grupo Oi na petição de fls. 115.354/115.357 (**doc. nº 9**), a condução das atividades de uma empresa em recuperação judicial **não** está sujeita às mesmas regras que vigoram durante a normalidade da vida societária.

100.    A apresentação de um pedido de recuperação judicial implica a imposição de diversas limitações ao exercício do poder de controle empresarial (isto é, a capacidade de decidir os rumos de uma companhia). Em vista disso, a legislação estabelece obrigações específicas à devedora e aos seus administradores. Dentre as diversas restrições, a mais óbvia de todas é a observância e o cumprimento do plano de recuperação judicial. A administração da companhia não pode simplesmente escolher desconsiderar os termos do Plano ao qual a companhia está expressamente vinculada.

101.    E, *in casu*, o Plano aprovado é categórico no sentido de que o Grupo Oi estaria autorizado a instaurar procedimentos de insolvência estrangeiros exclusivamente com o intuito de viabilizar a produção de efeitos, em solo estrangeiro, daquele Plano. Não há qualquer chancela para promoção de um terceiro processo estrangeiro (agora, principal).

102.    O Plano é o contrato mais relevante da Oi na atualidade e seus termos e condições não podem ser desrespeitados em razão de alterações na composição dos órgãos administrativos ou porque a visão estratégica da nova administração não condiz com aquela que existia na época da elaboração e aprovação do Plano.

103.    Nem mesmo em um cenário de normalidade da vida societária, justifica-se o descumprimento (e/ou alteração unilateral) de instrumentos contratuais em razão de tais compromissos terem sido celebrados pela antiga gestão ⸺ quiçá num momento de crise, cujos efeitos impactam centenas de milhares de credores.

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica



**P I N H E I R O N E T O**
A D V O G A D O S

104.    Nessas circunstâncias, no mínimo ⸺ *e caso se entendam superadas a ilegalidades que obstam o pedido de Chapter 11 em si, o que se admite apenas por eventualidade* ⸺ a questão deve ser previamente submetida aos credores desta recuperação judicial, na forma do art. 35, I, "f", da LRF.

105.    Evidentemente, não se pode admitir que uma empresa brasileira, credores brasileiros, créditos constituídos no Brasil, serviços prestados em território nacional, trabalhadores brasileiros ⸺ em suma, toda a sociedade brasileira, dado o alcance nacional desta recuperação judicial ⸺ sejam submetidos a lei estrangeira após o ajuizamento da Recuperação Judicial, pelo alvedrio do Grupo Oi.

## III.    NECESSÁRIA ANTECIPAÇÃO DOS EFEITOS DA TUTELA RECURSAL

106.    A fim de que seja preservada a tutela jurisdicional aqui buscada, é impositivo que essa i. Relatoria, desde já, conceda a antecipação dos efeitos da tutela recursal, nos termos do art. 1.019, I, do CPC.

107.    No caso dos autos, estão presentes tanto a probabilidade do direito, quanto o perigo de dano, a justificarem a concessão de tutela antecipatória.

108.    A probabilidade do direito reside nas questões aqui já expostas, especialmente na manifesta ameaça de violação à ordem pública e à jurisdição nacional.

109.    O perigo na demora, por sua vez, decorre do fato de que o Grupo Oi já está tomando medidas para a distribuição do Chapter 11, tendo, inclusive, formulado pedido de desistência do Chapter 15 (**doc. nº 10**). Do mesmo modo, estão ameaçados os direitos dos credores extraconcursais do Grupo Oi, especialmente aqueles que são proprietários de bens no exterior, uma vez que, determinado o *stay period* pela justiça americana, eventual "descumprimento" da medida poderá ser retaliado com a indevida apreensão de bens localizados em território americano.

110.    E, embora seja evidente o risco de dano, sequer seria necessária a sua

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

PINHEIRONETO
A D V O G A D O S

comprovação. Afinal, o que se busca aqui é a concessão de tutela inibitória, para impedir a prática de ato ilícito, especificamente a distribuição de processo que atentará à ordem pública brasileira e à jurisdição nacional.

111.     Nestes casos, **para que seja concedida a tutela de urgência, basta que seja comprovada a ameaça de concretização do ato ilícito, sendo presumida a ocorrência do dano, que reside na própria prática do ato**. Essa conclusão decorre de expressa previsão legal, nos termos do art. 497, parágrafo único, do CPC, que determina que "[p]*ara a concessão da tutela específica destinada a inibir a prática, a reiteração ou a continuação de um ilícito, ou a sua remoção, é irrelevante a demonstração da ocorrência de dano ou da existência de culpa ou dolo*".

112.     Como confirma Luiz Guilherme Marinoni, "[n]*os casos de tutela antecipada inibitória e de remoção não há como falar em dano; basta probabilidade de que venha a ocorrer ilícito ou probabilidade de que tenha ocorrido ilícito*"[17].

113.     Estas circunstâncias, portanto, justificam a concessão dos efeitos da tutela recursal para que o Grupo Oi seja impedido de ajuizar eventual processo principal de recuperação judicial perante qualquer justiça estrangeira ou de efetuar gastos relacionados a um pedido dessa natureza até que essa questão seja apreciada pelo MM. Juízo de primeira instância, cf. itens 124 a 132 abaixo.

**(a)     *Preservação Da Jurisdição Nacional: Anti-Suit Injunctuion***

114.     Pelas razões aqui expostas, é imprescindível que esse E. Tribunal de Justiça tome medidas incisivas, para obstar o Grupo Oi de propor o *Chapter 11* perante a Corte de Nova York até até que essa questão seja apreciada pelo MM. Juízo de primeira instância, a fim de que sejam preservadas a jurisdição nacional e a ordem pública.

115.     Trata-se de medida conhecida, no âmbito internacional, como *anti-suit*

---

[17] MARINONI, Luiz Guilherme. Tutela contra o ilícito: inibitória e de remoção - art. 497, parágrafo único, CPC/2015. São Paulo: Editora Revista dos Tribunais, 2015. p. 126.

TJRJ 20250006458846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRONETO**
A D V O G A D O S

*injunction*, que "*significa uma ordem, de natureza cautelar, dada para impedir o início ou o prosseguimento de um determinado processo judicial ou arbitral, preservando uma arbitragem em curso ou um processo judicial já em tramitação.*"[18].

116.    Arnoldo Wald, parafraseando Emmanuel Gaillard, afirma que "*a anti-suit injunction costuma ser definida como 'uma ordem dada a uma das partes pela jurisdição de um Estado de não intentar uma determinada ação perante a jurisdição de outro Estado ou de um tribunal arbitral e, se já o fez, de desistir da referida ação'*"[19].

117.    Esta medida, embora oriunda dos sistemas de *common law*, onde são bastante frequentes, também já foram utilizadas por tribunais nacionais, para garantia da sua jurisdição. No julgamento do caso *ENESA Engenharia v. Sul América Seguros*[20], o Tribunal de Justiça de São Paulo, diante de controvérsia das partes quanto ao foro competente à lei aplicável ao litígio, concedeu medida cautelar para obstar a Sul América Seguros de instaurar processo arbitral na Inglaterra, sob a legislação inglesa, fixando multa diária por descumprimento em R$ 400.000,00 (atualmente, cerca de R$ 1.309.790,44 em valores atualizados[21]).

118.    Naquele julgamento, apontou o E. TJSP ser justificável a medida, por tratar a controvérsia de "**[q]uestão de soberania, de independência, que em momento algum pode ser mitigada em nome de interesses outros sob pena de comprometermos a SOBERANIA NACIONAL**".

119.    No caso *UEG Araucária v. Copel*[22], por sua vez, o Tribunal de Justiça do Paraná manteve decisão liminar proferida em primeiro grau, que, diante da discordância das partes quanto à jurisdição para solução do conflito, determinou à

---

[18] SILVA, Larissa Clare Pochmann da; COSTA, Sylvia Chaves Lima. O controle das anti-suit injunctions concedidas por juízes em face de arbitragens no cenário da União Europeia: o caso C-185/07 do Tribunal de Justiça da Comunidade Europeia. Revista do Programa de Direito da União Europeia, v. 16, p. 15–25, 2012

[19] WALD, Arnoldo. As anti-suit injunctions no direito brasileiro. In: DOUIN, Daniel (coord.). Doutrinas Essenciais Arbitragem e Mediação. vol. 2. São Paulo: Revista dos Tribunais, 2014. p. 1055-1072.

[20] TJSP;  Agravo de Instrumento 0304979-49.2011.8.26.0000; Relator (a): Paulo Alcides; Órgão Julgador: 6ª Câmara de Direito Privado; Foro Central Cível - 9ª Vara Cível; Data do Julgamento: 19/04/2012; Data de Registro: 21/05/2012

[21] Atualização pela Calculadora do Cidadão, disponibilizada pelo BACEN.

[22] AgIn 142.683-1 - TJPR - j. 28.06.2003 - rel. Des. Leonardo Lustosa (Revista de Direito Bancário, do Mercado de Capitais e da Arbitragem, n. 21, p. 421)

TJRJ 20250500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

## PINHEIRONETO
### A D V O G A D O S

UEG Araucária que se abstivesse de praticar quaisquer atos para dar continuidade a procedimento arbitral instaurado na França, sob pena de multa diária.

120.    Não obstante a experiência brasileira com a *anti-suit injunction* se relacione, em sua maioria, com a arbitragem, nada impede a concessão desta medida para obstar a parte de propor ação em jurisdição estatal estrangeira. Como ensina a doutrina, "[e]*sta ordem pode ser concedida por árbitros ou por juízes estatais. Trata-se de preocupação para evitar processos duplicados, nos casos em que se tenha a mesma questão sendo levada pelas mesmas partes a julgamento em foros distintos*"[23].

121.    A partir da *anti-suit injunction*, é possível que "*o juiz ou tribunal proíba a uma das partes do processo litigar **perante o Poder Judiciário de outro Estado**" tendo importante função de "**combater abusos na procura de um foro no exterior, ou seja, o forum shopping abusivo**"[24].

122.    Portanto, para que seja preservada a ordem pública brasileira e a jurisdição nacional, é impositivo que essa i. Relatoria determine, em caráter de urgência, que o Grupo Oi se abstenha de distribuir, perante a Corte de Nova York ou qualquer outro tribunal estrangeiro, pedido principal de recuperação judicial até que essa questão seja apreciada pelo MM. Juízo de primeira instância, sob pena de multa diária em valor a ser arbitrado por este E. Tribunal.

**(b)    *Contenção De Gastos Estratosféricos - Medida Necessária***

123.    Além de violar a jurisdição nacional e a ordem pública, eventual pedido de recuperação judicial "principal" pelo Grupo Oi no exterior representa verdadeiro risco ao pagamento de suas dívidas em razão dos altos custos decorrentes do procedimento do Chapter 11.

---

[23] SILVA, Larissa Clare Pochmann da; COSTA, Sylvia Chaves Lima. O controle das anti-suit injunctions concedidas por juízes em face de arbitragens no cenário da União Europeia: o caso C-185/07 do Tribunal de Justiça da Comunidade Europeia. Revista do Programa de Direito da União Europeia, **v. 16, p. 15–25, 2012.**
[24] RECHSTEINER, Beat Walter. Direito internacional privado: teoria e prática. 20. ed. rev. e atual. de acordo com a Lei da Migração. São Paulo: Saraiva Educação, 2019. p. 277-278

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRONETO**

A D V O G A D O S

124.    Como se sabe, o ajuizamento de um processo de recuperação judicial, especialmente nos Estados Unidos da América, demanda despesas altíssimas e que, certamente, não correspondem ao atual estado de crise financeira do Grupo Oi.

125.    Os custos do Chapter 11 incluem, por exemplo, honorários advocatícios, taxas administrativas e eventuais consultores financeiros, que podem superar centenas de milhões de dólares. A LATAM – cujo *Chapter 11* presume-se equiparável em magnitude ao pretendido pelo Grupo 11 – informou ter despendido aproximadamente US$ 220 milhões em seu processo de Chapter 11[25].

126.    Não há dúvidas de que o eventual pedido de Chapter 11 perante a Corte Norte-Americana tem o condão de reduzir o patrimônio do Grupo Oi em ao menos algumas dezenas de milhões de reais, em prejuízo de todos os credores, especialmente em um possível cenário de falência.

127.    Portanto, é imprescindível que seja determinado, em sede liminar, que o Grupo Oi se abstenha de incorrer em quaisquer custos (incluindo, mas não se limitando a, honorários advocatícios, consultores financeiros e taxas judiciais), também sob pena de multa diária a ser fixada por este E. Tribunal.

(c)    **Ausência De Apoio Da Corte Brasileira: Expedição De Ofício à Corte de Nova York**

128.    Como já se adiantou (itens 20 a 21 *supra*), os representantes do Grupo Oi informaram à Corte de Nova York que tanto o juízo de origem quanto V.Exa. teriam manifestado apoio à distribuição do procedimento do Chapter 11 em paralelo à recuperação judicial em curso:

> "Em 11 de junho de 2025, os representantes e advogados da Sociedade discutiram essa possibilidade com a Vara de RJ do Rio de Janeiro e o Ministro relator do Tribunal de Justiça, e os juízes manifestaram corroboração à estratégia".

---

[25] "LATAM reported a net loss of US$296 million during the quarter, compared to a net income of US$86.3 million in 2019. The loss is mainly due to Chapter 11 reorganization expenses and to the costs associated with the DIP financing."    (https://www.latamairlinesgroup.net/news-releases/news-release-details/latam-reports-positive-operational-result-following-chapter11?utm_source=chatgpt.com)

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRONETO**

A D V O G A D O S

129.    Também, alegaram que "*a Vara de RJ brasileira apoia um pedido paralelo baseado no Capítulo 11 para as Devedoras em RJ para evitar a liquidação*" (**doc. nº 10**, p. 6).

130.    No mesmo sentido, apontaram novamente à Corte estrangeira que "[o] *Grupo Oi discutiu a possibilidade de entrar com um pedido de recuperação judicial com base no Capítulo 11 nos Estados Unidos com certas autoridades brasileiras, **incluindo a Vara de RJ brasileira**, que apoiam o esforço de utilizar soluções de reestruturação transnacional para aumentar as recuperações de credores, bem como com algumas de suas principais contrapartes credoras. Id. ¶24.*" (**doc. nº 10**, p. 12).

131.    Como se não fosse suficiente, mais uma vez os representantes das recuperandas alegaram que "[o] *Grupo Oi discutiu seus planos com as autoridades brasileiras, **incluindo a Vara de RJ brasileira**, que apoiam o esforço de utilizar soluções de reestruturação transnacional para aumentar as recuperações de credores*" (**doc. nº 10**, p. 16).

132.    A pretensão é clara: induzir a Corte nova-iorquina a acreditar que esse E. Tribunal do Estado do Rio de Janeiro seria conivente com a usurpação da sua própria competência, deixando-a confortável para decidir questões de grande repercussão em todo o território brasileiro, acreditando que não estaria violando a jurisdição brasileira.

133.    Ocorre que não há, nos autos da recuperação judicial de origem, ou em qualquer outro lugar, indícios de que esse E. Tribunal de Justiça estaria de acordo com o ajuizamento de um Chapter 11 perante a Corte de Nova York**.**

134.    Portanto, para que a Corte de Nova York não seja induzida em erro, é imprescindível que as rr. Decisões Agravadas sejam complementadas, para que se determine que o Administrador Judicial não apenas informe que está em curso a recuperação judicial de origem, mas também que <u>jamais houve qualquer pronunciamento desse E. Tribunal de Justiça, seja em primeira ou segunda instância,</u>

**P I N H E I R O N E T O**
A D V O G A D O S

em favor do ajuizamento de um Chapter 11 perante qualquer corte estrangeira.

**(d)    *Necessária Intimação do TCU e da CVM***

135.    Por fim, é imprescindível que sejam intimados o Tribunal de Contas da União e a Comissão de Valores Mobiliário, antes que o MM. Juízo *a quo* se pronuncie sobre os pedidos formulados pelo Grupo Oi.

136.    No caso do TCU (e mais especificamente da SECEX-Consendo), a intimação se faz necessária para que verifique, caso entenda necessário, se a situação de descumprimento do Plano,  o Aditamento ao Plano apresentado e a medida cautelar têm potencial de afetar os compromissos assumidos pelas recuperandas no âmbito do Termo de Autocomposição para Adaptação dos Contratos de Concessão do STFC para Regime de Autorização, no âmbito do processo administrativo nº 020.662/2023-8/TCU, cuja celebração foi coordenada pela Secretaria de Controle Externo de Solução Consensual e Prevenção de Conflitos (SecexConsenso).

137.    Ademais, os fatos novos apresentados nos autos de origem, que, segundo as recuperandas, justificariam a concessão da medida cautelar, incluem um "*impacto total adicional de pelo menos R$ 510 milhões no caixa da Oi*", que decorreriam de atrasos na migração do regime público do STFC, "*por culpa exclusiva da ANATEL*" (fls. 113.166).

138.    Os imprevistos quanto ao cumprimento do Plano, informados na manifestação de fls. 113.147/113.191, podem igualmente afetar o cumprimento das obrigações previstas Termo de Autocomposição, o que também justifica a intimação da SecexConsenso do TCU.

139.    Como se sabe, o TCU exerce poder fiscalizador sobre as contas públicas, incluindo o monitoramento dos contratos e acordos firmados entre a ANATEL e a OI. Uma modificação de tamanha grandeza no curso desta recuperação judicial, capaz de afetar a relação entre as recuperandas e a Administração Pública, devem ser, portanto, submetidas à SecexConsenso . Afinal, "[n]*o Brasil, os poderes próprios do*



**PINHEIRO NETO**
A D V O G A D O S

*Tribunal de Contas no controle de contratos são para agir sobre os sujeitos (sobre os responsáveis pelo contrato)* […]*. O Tribunal fiscaliza e adverte os gestores, dialoga com eles e, se entender devido, os pune com sanções fortes*"[26].

140.     Para além disso, diante da relevância das questões informadas pelo Grupo Oi no seu pedido cautelar de fls. 113.147/113.191, faz-se igualmente imprescindível a intimação da Comissão de Valores Mobiliários, tendo em vista que grande parte das recuperandas são companhias de capital aberto e, portanto, submetidas à jurisdição e à fiscalização da CVM.

141.     Portanto, o alarmante estado de crise relatado levanta suspeitas quanto à boa condução das atividades empresariais, acionando a competência da CVM, nos termos do art. 1º, VII, da Lei nº 6.385, que deverá ser ouvida, antes que haja qualquer deliberação acerca da viabilidade do Aditamento ao Plano, bem como do pedido cautelar formulado às fls. 113.147/113.191.

**IV.     CONCLUSÃO E PEDIDOS**

142.     Por todo o exposto, a V.tal confia em que, nos termos do art. 1.019, I, do CPC, essa i. Relatoria concederá, *inaudita altera parte*, a antecipação dos efeitos da tutela recursal, para:

(i)     determinar que, até que haja expresso pronunciamento do MM. Juízo *a quo*, o Grupo Oi se abstenha de distribuir pedido principal de recuperação judicial em qualquer jurisdição estrangeira, inclusive de incorrer em custos para o ajuizamento do processo (inclusive, mas não apenas, com a contratação de assessores jurídicos e financeiros), ou, caso já o tenha distribuído ao tempo da concessão da medida, dele desista, sob pena de multa diária no valor a ser arbitrado por esse E. Tribunal;

(ii)     seja o Administrador Judicial da Recuperação Judicial oficiado, para que

---

[26] SUNDFELD, Carlos Ari; ROSILHO, André (Orgs.). Tribunal de Contas da União no Direito e na Realidade. 1. ed. São Paulo: Almedina, 2020.

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRO NETO**

A D V O G A D O S

informe ao Tribunal de Falências do Distrito Sul de Nova York que (a) não
há qualquer pronunciamento oficial desse E. Tribunal de Justiça, seja em
primeira ou segunda instância, em favor da distribuição de um Chapter 11
perante aquela Corte; (b) que o Plano aprovado não foi completamente
implementado; e (c) não houve qualquer alteração significativa no centro
de interesses principais do Grupo Oi desde o ajuizamento da
Recuperação Judicial; e

(iii)     e seja o MM. Juízo *a quo* oficiado, para que se abstenha de apreciar os
pedidos formulados pelas recuperandas às fls. 113.147/113.191 dos
autos de origem antes da oitiva do Tribunal de Contas da União e da
Comissão de Valores Mobiliários.

143.        Concedida a tutela de urgência recursal acima requerida, confia a
Agravante em que, ao final, será provido este recurso, nos seguintes termos:

a)     para determinar ao o Grupo Oi que, **até que haja manifestação sobre
o tema do MM. Juízo da recuperação judicial**, se abstenha de distribuir
pedido principal de recuperação judicial em qualquer jurisdição
estrangeira, inclusive de incorrer em custos para o ajuizamento do
processo (inclusive, mas não apenas, com a contratação de assessores
jurídicos e financeiros), ou, caso já o tenha distribuído ao tempo da
concessão da medida, dele desista, sob pena de multa diária em
montante a ser arbitrado por este E. Tribunal;

b)     para determinar ao Administrador Judicial que, enquanto não houver
manifestação formal do MM. Juízo da Recuperação Judicial sobre este
tema, informe ao Tribunal de Falências do Distrito Sul de Nova York que
(a) não há qualquer pronunciamento oficial desse E. Tribunal de Justiça,
seja em primeira ou segunda instância, em favor da distribuição de um
Chapter 11 perante aquela Corte; (b) que o Plano aprovado não foi
completamente implementado; e (c) não houve qualquer alteração
significativa no centro de interesses principais do Grupo Oi desde o

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

**PINHEIRONETO**

A D V O G A D O S

ajuizamento da Recuperação Judicial; e

c) seja determinada a intimação da Secretaria de Controle Externo de Solução Consensual e Prevenção de Conflitos (SecexConsenso) do Tribunal de Contas da União e da Comissão de Valores Mobiliários para que, querendo, se manifestem sobre os pedidos formulados pelas recuperandas às fls. 113.147/113.191 dos autos de origem.

Nestes termos,

P. Deferimento.

São Paulo, 23 de julho de 2025.

THIAGO BRAGA
JUNQUEIRA:0691
3767609
Assinado de forma digital
por THIAGO BRAGA
JUNQUEIRA0691 3767609
Dados: 2025.07.23 10:31:20
-03'00'

**Thiago Braga Junqueira**                    **João Guilherme Thiesi da Silva**

**OAB/SP nº 286.786**                          **OAB/SP nº 410.293**

**Maria Fernanda M. Del Grande**              **Sophia Weinschenker Bollmann**

**OAB/SP n° 493.904**                          **OAB/SP nº 519.960**

- 39 -

TJRJ 202500645846 23/07/2025 10:37:36 I>TW Petição Inicial Eletrônica

## **Exhibit B-2**

**V.tal's Appeal of the RJ Order (Certified English Translation)**

# PINHEIRO NETO
## ADVOGADOS

| SÃO PAULO | RIO DE JANEIRO | BRASÍLIA | PALO ALTO | TÓQUIO |
|---|---|---|---|---|
| R. Hungria, 1.100 | R. Humaitá, 275 | SAFS. Quadra 2 Bloco B | 228 Hamilton Avenue, | 1-6-2 Marunouchi, |
| 01455-906 | 16º andar | Ed. Via Office - 3º andar | 3rd floor | Chiyoda-ku, 21st floor |
| São Paulo - SP | 22261-005 | 70070-600 | CA 94301 USA | 100-0005 |
| t. +55 (11) 3247 8400 | Rio de Janeiro - RJ | Brasília - DF | t. +1 650 798 5068 | Tokyo - Japan |
| | t. +55 (21) 2506 1600 | t. +55 (61) 3312 9400 | | t. +81 (3) 3216 7191 |

Dear Sir, Appeal Court Judge First Vice-President of the Court of Justice of the
State of Rio de Janeiro

**Originating Proceeding No. 0090940-
03.2023.8.19.0001 filed by jurisdiction to the First Chamber of
Private Law**

**V.TAL – REDE NEUTRA DE TELECOMUNICAÇÕES S.A.**, a company registered
with CNPJ no. 02.041.460/0001-93, with registered office at Rua Casa do Ator, no.
919, Vila Olímpia, city of São Paulo, state of São Paulo, CEP 04546-003 ("V.tal" or
"Appellant"), by their lawyers (**docs. nos. 1 and 2**), respectfully and timely, based
on articles 1,015 et seq. of the Code of Civil Procedure ("CPC"), interposes this

**INSTRUMENTAL APPEAL**
**with a request for advance relief from the appeal**

against the decisions on pages 114.138/114.142 ("Decision No. 1" **– doc. no. 3**)
and 116.202/116.209 ("Decision No. 2" and, together with Decision No. 1,
"Appealed Decisions" **– doc. no. 4**), issued in the judicial recovery proceedings[1]
("Judicial Recovery ") from **Oi. SA** and **Others** ("Appellees" or "Grupo Oi" or "Under
Reorganization"), for the following reasons of fact and law.

---

[1] Proc. No. 0090940-03.2023.8.19.0001, in progress before the 7th Business Court of the District of the Capital of the
State of Rio de Janeiro ("Recovery Court").

**PINHEIRO NETO**
A D V O G A D O S

1.      **Timeliness.** Since Decision No. 2 has not even been published, this appeal filed today is timely, **23.7.25**, before the initial end of the legal term, as per art. 218, § 4, of the CPC.

2.      **Prevention.** The First Private Law Chamber of this Honorable Court of Justice of the State of Rio de Janeiro ("TJRJ") to the report of the eminent Judge Mônica Maria Costa Di Piero, has jurisdiction over the judgment of this appeal, pursuant to article 930, sole paragraph, of the CPC, insofar as it has judged the appeals arising from the Judicial Recovery[2].

3.      **Admissibility of Appeal**. Since this is an appeal filed against a decision issued within the scope of judicial recovery, the admissibility of this appeal is unequivocal, pursuant to art. 1,015, sole paragraph, of the CPC, art. 189, §1º, II, of Law No. 11,101/05 ("LRF") and Theme 1,022 of the Superior Court of Justice ("STJ").

4.      **Instruction of the Appeal.** In compliance with article 1,017 of the CPC, although the case files from which this appeal is taken are electronic, which would dispense with its instruction, the appeal is instructed with all mandatory copies, including powers of attorney granted to the parties, appealed decisions, and proof of payment of legal costs (**doc. no. 5**). If this Honorable TJRJ deems it necessary to present any additional documents, the Appellant requests that a period be granted to complete the documentation, in accordance with article 1,017, § 3, of the CPC.

5.      **Declaration of Authenticity.** The Appellant's lawyers, signatories of this appeal, pursuant to article 1,017, II, of the CPC, declare that the copies of the documents supporting the appeal are authentic.

6.      **Procedural Representation.** In accordance with the provisions of article 1,016, IV, of the CPC, the Appellant informs the names and addresses of the attorneys of the Appellees, the Respondents and the Judicial Administrator, as follows:

---

[2]     Instrumental appeals no. 0069602-39.2024.8.19.0000; 0069530-52.2024.8.19.0000; 0069733-14.2024.8.19.0000; and 0072455-21.2024.8.19.0000

PINHEIRO NETO
A D V O G A D O S

(i)      **For the Appellant:** lawyers _Thiago Braga Junqueira_, registered with the
OAB/SP under number 286,786, _João Guilherme Thiesi Da Silva_, registered with the
OAB/SP under number 410,293, _Maria Fernanda Marchesan Del Grande_, registered
with the OAB/SP under number 493,904 and _Sophia Weinschenker Bollmann_,
registered with the OAB/SP under number 519,960, all with professional address at
Rua Hungria, 1100, Jardim Europa, São Paulo/SP (**doc. no. 2**); and

(ii)     **For the Appellees:** lawyers _Marcos Pitanga Ferreira_, registered with the
OAB/RJ under number 144,825, _Luiz Carlos Malheiros France_, registered with the
OAB/RJ under number 163,989, _João Felipe Lynch Meggiolaro_, registered with the
OAB/RJ under number 216,273, _Fernanda Anuda_, registered with the OAB/RJ under
number 241,307, _Diana Lise Freitas_, registered with the OAB/RJ under number
256,584, _Thiago Peixoto Alves_, registered with the OAB/RJ under number 301,049,
_John Philip Martins de Almeida_, registered with the OAB/RJ under number 200,664,
_Helena Acker Caetano_, registered with the OAB/RJ under number 230,206, _Edson
Bossonaro Junior_, registered with the OAB/RJ under number 264,022, and _Luis
Fellipe Freitas_, registered with the OAB/RJ under number 261,146, all members of
the firm Ferro, Castro Neves, Daltro e Gomide Advogados, with professional
address at Av. Rio Branco, No. 85, 13th, 15th, 17th and 18th floors, Centro, Rio de
Janeiro/RJ, CEP 20040-004; as well as lawyers _Paulo Padis_, registered with the
OAB/RJ under number 139,860-A, _Talitha Aquillar Leite_, registered with the OAB/SP
under number 344,859, and _Mariana Leoni Beserra_, registered with the OAB/SP
under number 443,636, the latter members of the Padis Mattar Advogados office,
with professional address at Av. Brigadier Faria Lima, No. 1,663, 12th floor, Jardim
Paulistano, São Paulo/SP, ZIP Code 01452-001. (**doc. no. 6 and 7**);

(iii)    **By the Judicial Administrator:** _Wald Administração De Falências E
Empresas Em Recuperação Judicial Ltda_., represented by Arnoldo Wald Filho,
registered with the OAB/RJ under no. 58,789, and Adriana Campos Conrado
Zamponi, registered with the OAB/RJ under no. 92,831, both with professional
address at Rua General Venâncio Flores, no. 305, 10th floor, Leblon, Rio de
Janeiro; _K2 Consultoria Econômica_, represented by João Ricardo Uchoa Viana, with
headquarters at Rua Primeiro de Março, no. 23, 14th floor, Centro, Rio de

**PINHEIRO NETO**
A D V O G A D O S

Janeiro; and _Preserva-Ação Administração Judicial_, represented by Bruno Rezende, registered with the OAB/RJ under number 124,405, with headquarters at Avenida Rio Branco, number 116, 15th floor, Centro, Rio de Janeiro (**doc. no. 8**);

7.    **Of the Subpoenas.** V.tal hereby requests that the subpoenas relating to this appeal be carried out exclusively and jointly on behalf of the attorneys who signed this appeal, under penalty of nullity, pursuant to article 272, § 5°, of the CPC.

In these terms,
I hereby request your approval.
Sao Paulo, July 23, 2025.

THIAGO
BRAGA
JUNQUEIRA:069
13767609

Digitally signed
by THIAGO BRAGA
JUNQUEIRA:06913767609
Data: 2025.07.23 10:17:38
-03'00'

**Thiago Braga Junqueira**
**OAB/SP No. 286,786**

**João Guilherme Thiesi da Silva**
**OAB/SP No. 410,293**

**Maria Fernanda M. Del Grande**
**OAB/SP n° 493.904**

**Sophia Weinschenker Bollmann**
**OAB/SP no. 519.960**

**PINHEIRO NETO**
A D V O G A D O S

## ANNEX I

### List of Mandatory and Optional Documents

| | |
|---|---|
| **Doc. No. 1** | V.tal Corporate Documents |
| **Doc. No. 2** | Power of Attorney from V.tal to your Lawyers |
| **Doc. No. 3** | Decision No. 1 |
| **Doc. No. 4** | Decision No. 2 |
| **Doc. No. 5** | Guide and Proof of Payment of Costs |
| **Doc. No. 6** | Grupo Oi Corporate Documents |
| **Doc. No. 7** | Powers of Attorney from Grupo Oi to its Lawyers |
| **Doc. No. 8** | Decisions on Appointment of the Judicial Administrator |
| **Doc. No. 9** | Oi Manifestation informing the request for closure of *Chapter 15* |
| **Doc. No. 10** | Request for Termination of *Chapter 15* |
| **Doc. No. 11** | Decision on Main Recognition of the Establishment of Grupo Oi |

JUR_2025006645846 07/23/2025 10:37:36 am ▶TW Electronic Initial

**PINHEIRO NETO**
A D V O G A D O S

E. **Honorable Court of Justice of the State of Rio de Janeiro** ("<u>TJRJ</u>")

**Appellant:**          V.tal – Rede Neutra De Telecomunicações S.A. ("<u>V.tal</u>" or "<u>Appellant</u>")

**Appellees:**          Oi SA and Others ("<u>Appelee</u>" or "<u>Grupo Oi</u>" or "<u>Under Reorganization</u>")

**Judicial Administrator:** Wald Administração De Falências E Empresas Em Recuperação Judicial Ltda, K2 Consultoria Econômica and Preserva-Ação Administração Judicial (all together, "<u>Judicial Administrator</u>")

**REASONS FOR INSTRUMENTAL APPEAL**

Honorable Court,

I.      **BRIEF CONTEXTUALIZATION AND OBJECT OF THIS APPEAL**

8.      judicial recovery processes are guided by the redistribution, between debtor and creditors, of inevitable losses when faced with an economic and financial crisis in business activity. The crisis Grupo Oi has been going through began almost 10 years ago, when a true collective effort began to revive it, with the approval of the processing of its first judicial recovery.[3] ("<u>First Judicial Recovery</u>")**.**

9.      A few years later, with the approval of the judicial recovery process, filed immediately after the "quarantine" period provided for in art. 48, II, of the LREF ended, several other measures were adopted to try to facilitate the recovery of the economic crisis affecting Grupo Oi, distributing the burden among hundreds of thousands of creditors, who had to agree to numerous concessions in order to maintain Oi's business activity (e.g., bear large discounts and long extensions of time for partial payment of their credits).

---
[3] Case file No. 0203711-65.2016.8.19.0001, distributed on 6/20/2016.

PINHEIRO NETO
A D V O G A D O S

10.     The effort, however, has been a one-way street in favor of the Companies
Under Reorganization while the creditors of Grupo Oi bear high costs to keep the
company afloat, the Companies Under Reorganization seek ways to avoid paying
their debts (even those already restructured) and, worse, always through procedural
artifices that may give their default an "air of legality".

11.     On July 1st, Grupo Oi filed a petition in which it admitted the unsatisfactory
performance of the measures adopted so far, expressly pointing out that "*relevant
premises that served as the basis for the economic rationale of the various payment
obligations undertaken in the PRJ, were **not** verified after approval*" (pages 113.150
– emphasis in the original sentence). Furthermore, they point out that these
circumstances "*have been putting pressure on the cash flow of the Companies
Under Reorganization and making it difficult to fulfill short-term financial obligations
provided for in the Plan, which, in turn, puts the successful conclusion of the
recovery process at <u>risk</u>*" (pages 113.151 – emphasis in original).

12.     In the same sense, it was the statement of the Judicial Administrator, who
pointed out that "*the Companies Under Reorganization did not prove full compliance
with the obligations set forth in the Judicial Recovery Plan*" (pages 116.028) and the
*Watchdog*, which understood that the recovering companies have "*negligible
capacity to fulfill minimum obligations, including with creditors subject to the plan*"
(pages 115.801).

13.     The serious economic situation of Grupo Oi had already been noted in the
Judicial Recovery proceedings. For some time now, several creditors have been
reporting defaults on both bankruptcy and non-bankruptcy credits.[4] The
circumstances were well observed by the Recovery Court which, with the
unquestionable diligence with which it has been conducting the original process ——
—— certainly an arduous task, as it is one of the largest judicial recoveries in this
country —— recognized the existence of "*news of non-compliance with important –
extra-bankruptcy – obligations*" (pages 114.171).

---

[4]  pages   92,257/92,258; 96,737/96,743; 96,844/96,845; 97,430/97,431; 97,855/97,857; 102,889/102,890; 103,870/103,871;
103/969/103,970; 103,987/103,988; 104,149/104,150; 108,216/108,223; 110,125/110,126; 111.722/111.723

[Certificate of Exhibit B - Electronically Stamped Page] 9

**PINHEIRO NETO**
ADVOGADOS

14.    Later, it pointed out, already in Decision No**.** 1, which "*the 'economic-financial report' that supports the petition of the recovering party (ID 113,614), with all due respect, does not serve to attest to the viability of fulfilling the future obligations of the recovering party*", since "*it does not have any commitment to the conclusions adopted therein, all based on data provided by the company itself, or obtained publicly, and which have not been verified for accuracy*" **doc. no. 3**, p. 4/5).

15.    Given the magnitude of the precautionary request made by the recovering parties, as well as the submission of an addendum ("Amendment to the Plan") to the judicial recovery plan of Grupo Oi ("Plan"), Decision No. 1 correctly determined "*the prior statement - albeit brief - of the Public Prosecutor's Office, the joint Judicial Administration and also the Judicial Observer, already appointed, regarding the amendment to the PRJ presented, and the supporting documents*", in addition to the summons from ANATEL and CADE (**doc. no. 3**, p. 4).

16.    It turns out that, shortly before Decision No. 1 was pronounced, it became public knowledge[5] the fact that Grupo Oi filed, before the Bankruptcy Court for the Southern District of New York ("New York Court"), a request to withdraw from the procedure ancillary to the original judicial recovery (Case No. 23-10193), known as Chapter 15, to be authorized to file, before that same Court, Chapter 11, *i.e.*, a procedure analogous to the judicial recovery regulated by the LREF under American law.

17.    On the same day, Grupo Oi reported, in the Judicial Recovery proceedings, the request made before the New York Court (**doc. no. 9**), attaching the petition submitted to the foreign Court (**doc. no. 10**).

---

[5] ONABTELLI, Circe. Oi's filing paves the way for Chapter 11, a measure in the US courts comparable to judicial recovery. *Estadão*, Sao Paulo, July 7. 2025. Available at: https://www.estadao.com.br/economia/negocios/pedido-oi-caminho-chapter-11-medida-eua-comparavel-judicial-recovery/. Accessed on: July 15 2025.; MATOS, Lorena. Oi (OIBR3) requests the end of Chapter 15 in the US and puts Chapter 11 on the radar. Money Times, July 8 2025, 08:44 am. Available at: https://www.moneytimes.com.br/oi-  oibr3-pede-fim-do-chapter-15-nos-eua-e-coloca-chapter-11-no-radar-lmrs/. Accessed on:July 15    2025.; PODER360. Oi requests the end of Chapter 15 in the US and evaluates new judicial protection. Poder360, July 8 2025, 5:32 p.m. Available at: https://www.poder360.com.br/poder-infra/oi-pede-fim-do-chapter-15-nos-eua-e-avalia-nova- judicial-protection/. Accessed on: July 15 2025.

1_JUJ_20250006845846 07/23/2025 10:37:36 am ▸TW Electronic Initial_ _ _

[Certified Translate of Exhibit B -
Electronically Stamped Page]
10

**PINHEIRO NETO**

A D V O G A D O S

18.    In the petition, the Recovering Parties expressly state their intention to file a
*Chapter 11* in the United States, which would be justified by two reasons:
(i) Brazilian law does not allow the filing of a new judicial recovery until 05/28/29;
and (ii) the intention to renew credits that, by virtue of art. 49 of the LREF, are not
subject to the Plan.

19.    In the petition filed with the New York Court, representatives of Grupo Oi
pointed out, based on statements made by Mr. Marcelo José Milliet, current
president of Oi, that the request to be made in the foreign forum would already have
been informed and would have the support of the Recovery Court (docs. 4/5),
although there is no decision in this regard.

20.    Therefore, the Companies Under Reorganization not only adopt a maneuver
that is absolutely contrary to the law, national jurisdiction and public order, but they
also do so based on allegations that are, in principle, dubious. **In fact, there is no
evidence in the Judicial Recovery records that confirms the allegation of
Grupo Oi administrators that "*Brazilian RJ Court supports a parallel Chapter
11 petition for RJ Debtors to avoid liquidation*" (doc. no. 10, p. 6).**

21.    Despite the skill with which the Recovery Court has been conducting the
Judicial Recovery, having, in recent months, adopted several measures to increase
procedural speed and the supervision of the activities of the recovering companies
(*i.e.*, the reformulation of credit qualification and challenge procedures[6] and the
indication of a "*watchdog*"[7]), Decision No. 2 ended up incurring two specific but
relevant errors, which, due to the urgency of the matter, justify the filing of this
appeal.

22.    The first of these was the failure to adopt measures that prevent Grupo Oi
from filing a *Chapter 11* lawsuits abroad before the matter is deliberated by the D.

---

[6] pages 102.900/102.913.
[7] pages 114.162/114.176.

- 9 -

1-JR3_20250006458946 07/23/2025 10:37:36 am 1-TW Electronic Initial

[Electronically Stamped Page]
11

**PINHEIRO NETO**
ADVOGADOS

Recovery Court, after hearing the parties involved and affected by the Judicial Recovery, limited to determining the "*issuance of communication, by the Judicial Administration, duly translated into English, to the United States Federal Bankruptcy Court, Southern District of New York (proceeding on pages 115,744 et seq.), stating that 'a judicial recovery process for Grupo Oi is currently underway before this Court of the 7th Business Court of Rio de Janeiro, RJ, in which the Recovering Party failed to fulfill obligations assumed in June 2025, without justification for this, to date'*" (**doc. no. 4**).

23.   As will be demonstrated below, if strong measures are not immediately adopted to prevent Grupo Oi from creating a fait accompli, by submitting a request for *Chapter 11* in the US Justice system, the sovereignty of the decisions of the Brazilian Judiciary issued during the course of the Judicial Recovery will be at serious risk, in addition to compliance with the Plan already approved**.**

24.   The second mistake is the lack of notification of the Federal Court of Auditors and the Securities and Exchange Commission to comment on the Amendment to the Plan, for the reasons that will be addressed in items 145 to 151 below.

## II.   REASONS FOR THE REFORM OF THE APPEALED DECISIONS

### *(a)   Necessary Intervention – Emptying of National Jurisdiction*

25.   Amidst the underline reports of non-compliance of your Plan[8], underline appointment of watchdog[9], presentation underline Amendment to the Plan[10] and supervision of underline remuneration of its managers, the intention of Grupo Oi to file, before the New York Court, the procedure provided for in US Chapter 11 of the Bankruptcy Code for restructuring —— in the words of the recovering party itself —— of the "*obligations that cannot be restructured in Brazil*" (**doc. no. 10**, p. 12).

---

[8]   pages   92,257/92,258; 96,737/96,743; 96,844/96,845; 97,430/97,431; 97,855/97,857; 102,889/102,890; 103,870/103,871; 103/969/103,970; 103,987/103,988; 104,149/104,150; 108,216/108,223; 110,125/110,126; 111.722/111.723
[9] pages 113.308/113.431
[10] pages 114.162/114.176

JUR_SP - 55203626v4 - 5769054.524399

[Certificate of Inclusion Pro
Electronically Stamped Page]
12

PINHEIRONETO
A D V O G A D O S

26.    The initiation of Chapter 11 proceedings has the avowed objective of
"restructuring the restructuring", in order to subject the credits not subject to the
Judicial Recovery of Grupo Oi to the effects of a new reorganization, in a clear
emptying of the rights of creditors and suppliers, as well as <u>emptying the jurisdiction
of the Brazilian authority responsible for conducting the Judicial Recovery in
progress</u>.

27.    Although both Brazilian and American legislation provide for harmonious
procedures regarding transnational cooperation (i.e., Chapter VI-A of Law No.
11,101/05 and Chapter 15 of the Bankruptcy Code, respectively), Grupo Oi intends
to file a lawsuit analogous to a "main" judicial recovery (the third in a 10-year
period), in parallel to the Judicial Recovery underway before the Recovery Court.

28.    And the intention behind this movement was expressed by the recovering
companies: Brazilian law does not allow them to file a new judicial recovery before
<u>05/28/29</u>, which would go against its intention to renew the credits that, by virtue of
art. 49 of the LREF, are not subject to the Plan approved by the creditors and
ratified by the Recovery Court just over a year ago.

29.    The way the Companies Under Recovery dealt with this matter in their most
recent statement (**doc. no. 9**) is surprising, insofar as a move in this direction would
represent an abusive use of a foreign procedure, not to recognize or enable the
effects of a Brazilian judicial recovery plan, but rather to promote (a new)
substantive reorganization in the USA, in flagrant violation of the national legal
system (in particular, our insolvency system), the authority of the Brazilian Judiciary,
and the logic of the ongoing Judicial Recovery.

30.    Grupo Oi limited itself to informing in the Judicial Recovery records that it
would keep its creditors, the Judicial Administrator and the Recovery Court
"informed" of the decision that its administrators would take regarding the initiation
of the Chapter 11 procedure —— including, if a request for

FJUR_SP 20250004584 07/23/2025 10:37:36 am ETW Electronic Initial

JUR_SP - 55203626v4 - 5769054.524399

**PINHEIRO NETO**
A D V O G A D O S

reorganization did not depend on the approval of Oi's shareholders' meeting, but on the judgment of mere convenience of the new administration.

31.     Perhaps more relevant, despite there being no evidence in the original records to that effect, Grupo Oi alleged to the American court that "***the RJ Court Brazilian court supports a parallel Chapter 11 filing for the Debtors in RJ to avoid liquidation***" (**doc. no. 10**, p. 6) and even though "***the representatives and lawyers from the Company discussed this possibility with the RJ Court of Rio de Janeiro and the reporting Minister of the Court of Justice, and the judges expressed support for the strategy***" (**doc. no. 10**, p. 12).

32.     Although  they adopted several measures to monitor the activities of the Companies Under Reorganization and recognized the role of the Reorganization Court in monitoring the legality of the acts carried out by the Companies Under Reorganization, the Appealed Decisions ultimately failed to adopt a measure to prevent Grupo Oi from undermining the jurisdiction of the Brazilian Judiciary, violating, in a single round, national jurisdiction and legislation, in addition to failing to order the summons of the Federal Court of Auditors and the Securities and Exchange Commission to comment on the Amendment to the Plan — parties that play an essential role in the recovery of Grupo Oi.

33.     More than a manifest disrespect for Brazilian public order, a possible request for reorganization, in the form of *Chapter 11* in the United States, it clashes with the approved Plan, in which creditors authorized Oi solely with a view to "*the implementation of the provisions of this Plan*" (Clause 10.15.2, pages 56,917)**.**

34.     The company's management cannot simply choose to disregard the terms of the Plan to which Grupo Oi is expressly bound. A judicial recovery plan is the most important instrument for a company undergoing reorganization, the terms and conditions of which cannot be disregarded due to changes in the composition of the administrative bodies.

35.     Not even in a scenario of normal corporate life is their justification for

JUR_SP - 55203626v4 - 5769054.524399

[Certified Translate of Exhibit B - Electronically Stamped Page] 14

**PINHEIRO NETO**
A D V O G A D O S

non-compliance (and/or unilateral alteration) of contractual instruments due to such commitments having been entered into by the former management —— perhaps at a time of crisis, the effects of which impact hundreds of thousands of creditors (to whom the administrators also provide fiduciary duties).

36.    Under these circumstances, at the very least—— *and if the illegalities that prevent the Chapter 11 request itself are understood to have been overcome, which is only permitted as a matter of urgency* —— the matter must be previously submitted not only to Oi shareholders (art. 122, IX, of Law 6,404/76), but also to the creditors of the Judicial Recovery (art. 35, I, "f", of the LRF).

37.    Based on the arguments summarized above and detailed below, you trust that V.tal will be granted the advance of the effects of the appeal, with subsequent provision of this Appeal, so that **(i)** the recovering companies shall be prevented from filing any main judicial recovery petition before the courts of New York or any other foreign court, until, after hearing the creditors, the Judicial Administrator, and the Public Prosecutor's Office, the matter is deliberated by the Recovery Court; and **(ii)** the Recovery Court shall be immediately notified, so that, before any deliberation, it shall notify the TCU and the CVM to comment on the Amendment to the Plan and the precautionary request presented at the origin.

*(b)    Violation of National Legislation - Maneuver to Remove Brazilian Jurisdiction*

38.    In its request to the US Court, Grupo Oi is incisive in its reasons that would justify a request for restructuring under Chapter 11: **to avoid the rules and limitations of the LFRE so that it can file a third main recovery process and restructure credits that the Brazilian legislator chose to prioritize and protect in favor of national economic development**.

39.    A literally unprecedented measure to avoid fulfilling the obligations assumed towards its creditors who not only trusted and

**PINHEIRO NETO**
A D V O G A D O S

supported the second request for judicial recovery (including through the granting of new financing), but continued to provide inputs, services, and money to the company in order to support its recovery.

40.    The representatives of the Companies Under Reorganization, in the petition filed with the New York Court, expressly state that Grupo Oi is withdrawing from Chapter 15 (ancillary proceeding to the original proceeding) to file a (new) **main** proceeding analogous to judicial recovery under American law (*Chapter 11*), although Grupo Oi's judicial recovery process is already underway before the Brazilian Judiciary.

41.    The claim, as they themselves admit, is to "*provide a framework to stabilize cash flows and give the company more time to carry out the commercialization processes of certain assets related to the discontinued services provided by Grupo Oi, see Milliet Statement ¶23, **as well as addressing obligations that cannot be restructured in Brazil***" (**doc. no. 10**, p. 12).

42.    In other words, the intention is to renew credits that, under Brazilian legislation, are extra-bankruptcy claims due to the existence of Judicial Recovery.

43.    The recovering companies argue that the request would arise from a supposed lack of the Brazilian recovery system, which, unlike American law, would not provide for certain remedies: "*Given Oi's perspective and the lack of available resources in Brazil, the Company explored its strategic options to preserve and maximize value for all stakeholders and for the continuity of its business.*" (**doc. no. 10**, p. 11).

44.    In other words, despite having filed for two judicial recovery requests in Brazil, Grupo Oi has now decided that it is not satisfied with the Brazilian recovery system because, as it claims, the national system would not serve its interests — and does not fit the vision of the company's new management. It therefore intends to submit its recovery process to another

[Certified Translation of an Electronically Stamped Page]
16

PINHEIRO NETO
A D V O G A D O S

jurisdiction, whose applicable law is more favorable to it.

45.      Also, concerned about a possible bankruptcy scenario, it **intends to prevent this honorable national Court from being able to —— through the prerogatives conferred upon it the law —— declare the bankruptcy of the Companies Under Reorganization.** In this regard, see the following excerpt from the petition presented to the New York Court:

> "This means that, although the Company still has valuable sources of income and assets, including its minority interest in V.Tal and various properties, the Company currently does not have sufficient funds to continue operating. Milliet's Statement ¶22. **If the Company does not have the liquidity necessary to fulfill its obligations under the Brazilian Judicial Recovery Plan, the Brazilian Judicial Recovery Court may convert the Brazilian Judicial Recovery Lawsuit into a bankruptcy proceeding, under which the Company's business may be immediately closed**" (**doc. no. 10**, p. 11)

46.      The strategy is known as "*forum shopping*", which consists of the opportunistic choice of the jurisdiction that best serves the interests of the applicant. Thus, sometimes the action is filed in a certain jurisdiction, sometimes in another, depending on what is most convenient. This practice adopted by Grupo Oi represents a true affront to national jurisdiction, given that the Judicial Recovery was already underway.

47.      Since the main establishment of Grupo Oi is uncontroversially located in the city of Rio de Janeiro and the Judicial Recovery has already been filed —— an issue already precluded and affected by material res judicata ——, and in it, and only in it, in which its judicial recovery should be processed and it is impossible to reconcile such a measure with any other insolvency process of main nature.

48.      And, even if this were not enough to prevent the eventual request for *Chapter 11* before the American justice system, the fact is that Grupo Oi has already submitted its recovery process to the Brazilian justice system, and cannot now, almost 10 years after starting this recovery saga before the Rio de Janeiro Court of Justice, deliberately choose to set aside the sovereign jurisdiction of this Court and hand it over to a foreign court.

- 15 -

[Certification of translation of Exhibit B -
Electronically Stamped Page]
17

**P I N H E I R O N E T O**
A D V O G A D O S

49.     Under the terms of Article 6, § 8, of the LREF, "[the] *filing of the bankruptcy or judicial recovery petition or the approval of extra judicial recovery **prevents jurisdiction for any other request for bankruptcy, judicial recovery or approval of extra judicial recovery relating to the same debtor**".*

50.     The instrument, when using the terms "*any other*", could not have been clearer. Since Grupo Oi has already requested Judicial Recovery before the Recovery Court, it is only this court that can process "***any other** order* [...] *of judicial recovery*". The CPC reinforces this rule, when regulating the institutes of connection and prevention (arts. 55, § 3, 58, 59, and 286, I and III)[11].

51.     The guarantee of jurisdiction is the only way to preserve the jurisdiction of the recovery court, as well as the soundness of its decisions, thus avoiding conflicting orders. Specialized doctrine recognizes the importance of jurisdiction for processing new judicial recovery requests, being incisive in pointing out that the preemptive jurisdiction court **will be the _only_ one to consider any other requests for judicial recovery**. See:

> "Article 6, § 8, enshrines the principle of unity of the bankruptcy or judicial recovery court. Under this principle, contradictory decisions by different judges are avoided, such as successive bankruptcy decrees for the same debtor, the bankruptcy decree of a debtor due to default on a credit subject to judicial recovery whose processing was previously deferred, or the granting of more than one judicial recovery for the same debtor.
> The filing of the first bankruptcy or judicial recovery request determines the prevention of other requests. These should be filed to the competent court, **which will be the only one to consider all requests**." (SACRAMONE, Marcelo Barbosa. *Comentários à Lei de recuperação de empresas e falência (Comments on the Business Recovery and Bankruptcy Law)*. 2nd ed. São Paulo: Saraiva Educação, 2021. p. 110 – emphasis added)

---

[11] Art. 55. Two or more actions are considered connected when the request or cause of action is common to them. [...] § 3 Cases that may generate a risk of issuing conflicting or contradictory decisions if decided separately, even without any connection between them, will be combined for joint judgment.
Art. 59. The registration or filing of the initial petition renders the court competent.
Art. 58. The combined actions proposed separately will take place in the competent court, where they will be decided simultaneously.
Art. 286. Causes of any nature will be filed by dependency: - when they are related, by connection or continuity, to another already filed; [...] III - when there is filing of actions under the terms of art. 55, § 3, to the competent court.

[Electronically Stamped Page]
18

**PINHEIRO NETO**

A D V O G A D O S

52.          Therefore, under the terms of art. 6, § 8, of the LREF, the Court *a quo* has jurisdiction to hear any other possible new request for judicial recovery of Grupo Oi, so that, in this case and at the international level, it is before jurisdiction **exclusive** of Brazilian justice.

53.          Being **exclusive** the jurisdiction to process the judicial recovery of Grupo Oi given the existence of the Judicial Recovery, the recovering companies cannot file a lawsuit of the same nature before the New York Court. Otherwise, it would be admitting that a foreign court could usurp the national competence, determining the form of fulfillment of obligations by national company, in national territory and whose creditors, in their overwhelming majority, are also national. See, in this sense, the understanding of specialized doctrine, specifically regarding exclusive jurisdiction:

> "If the law, however, determines that only domestic justice has international jurisdiction, to the exclusion of any other, to hear a dispute, the term 'exclusive competence' is used. This means that, for the indicated processes, the *lex fori* recognizes as internationally competent only its judges and courts, not admitting the exercise of jurisdiction concurrent by any foreign judge or court." (RECHSTEINER, Beat Walter. *Direito internacional privado: teoria e prática (Private international law: theory and practice)*. 20th rev. and updated ed. in accordance with the Migration Law. São Paulo: Saraiva Educação, 2019. p. 282 – emphasis added)

### *(c)     Relevant Precedent*

54.     It should be remembered, in fact, that this issue was already considered within the scope of the first judicial recovery of Grupo Oi. At the time, there was extensive discussion about the possibility of interference by the Dutch courts in that lawsuit, at which time Grupo Oi vehemently defended that this State Court was the only competent court to process its recovery (pages 188,805/188,808 of case file no. 0203711.65.2016.8.19.0001), which was recognized by this Honorable Court (**doc. no. 11**).

55.     And, even if it is a case of concurrent jurisdiction, Grupo Oi could not deliberately choose, now, to present a request similar to judicial recovery

## PINHEIRONETO
### A D V O G A D O S

abroad, **when you have already opted for processing this same remedy (legal recourse) in Brazilian territory**. The measure, in addition to violating the provisions of art**.** 22 of the CPC, according to which "[c]*It is also the responsibility of the Brazilian judicial authority to hear and judge the actions:* [...] *III - in which the parties, expressly or tacitly, submit to national jurisdiction*", would represent a true procedural trick, in clear violation of the principle of objective good faith (art. 8 of the CPC and 422 of the Civil Code).

56.      As seen in item 61 above, Grupo Oi has already vehemently defended Brazilian jurisdiction and the exclusive competence of this Honorable Court to process the Judicial Recovery. In the initial petition for Judicial Recovery, it was expressly pointed out that this Honorable Court of Justice is the ONLY one competent to process the judicial recovery of Grupo Oi, both due to the location of its main establishment (art. 3º LREF), and due to prevention due to its first judicial recovery (art. 6º, § 8º, LREF). See excerpt from the initial petition of the original proceedings:

> "There is no doubt that the jurisdiction to hear  and judge the judicial recovery process of Grupo Oi lies with the Court of the 7th Business Court of the Capital of this e. TJRJ, competent due to the 1st Judicial Recovery ("1st Judicial Recovery") and the bankruptcy requests filed by two creditors, which are still pending before this office2 (LRF, art. 6, § 8).
> It couldn't be any different since: (i) the State of Rio de Janeiro is the location of the Company's main establishment, where its activities are carried out and where the main decisions of Grupo Oi are made; (ii) although formally headquartered abroad, PTIF and Oi Coop are non-operating companies, which were used only as vehicles for raising funds from abroad, aimed at financing Oi's activities in Brazil;4 and (iii) the obligations of PTIF and Oi Coop, although originally contracted abroad through the issuance of bonds, have always been fulfilled in Brazil, with exclusive backing in the Brazilian operations of their parent company, Oi.
> [...]
> **Therefore, as already recognized in the decision ID No. 44532251, this Court of the 7th Business Court of the Capital of this Honorable TJRJ is the <u>only</u> one that is competent to process and judge this judicial recovery.**" (Pages 3.242/3.244 – emphasis added)

57.      Therefore, even if it were a case of concurrent jurisdiction (as is admitted to be the case in other *Chapter 11* filed by other Brazilian companies), the fact is that Grupo Oi **opted** for filing its judicial recovery process in

[Certification Date of Initial Doc.
Electronically Stamped Page]
20

**PINHEIRO NETO**
A D V O G A D O S

Brazilian territory, which implies the **resignation** to your alleged —— in this specific case, non-existent —— right to file Chapter 11 before the New York courts. To understand it any other way would be to endorse the aforementioned practice of "*forum shopping*", as well as contradictory behavior, prohibited by the Brazilian legal system.

58.     Regarding this conduct, the Superior Court of Justice has already had the opportunity to express its opinion and has strongly reprimanded it. In the emblematic case *Marítima v. Braspetro*, the Honorable Fourth Panel of the STJ (Brazilian Superior Court of Justice) denied the special appeal filed by Marítima, recognizing that, having filed a lawsuit abroad, it could not, after winning, seek to prevent the ratification of the judgment, to file a new lawsuit in Brazil. The basis adopted was that it is unacceptable for someone to file a lawsuit in a given jurisdiction and, when they lose —— or realize that they will lose —— file the same lawsuit in another jurisdiction, to try again.

59.     This is because, having the party freely chosen a certain jurisdiction, it must submit to it, and cannot avail itself of a different jurisdiction, even if it is a case of concurrent jurisdiction. The practice, as recognized by the Superior Court, violates objective good faith and must be condemned:

> "It appears in the present case, therefore, that a**ll the contractors freely submitted themselves to the English justice system until the lawsuits were judged by English magistrates**, incurring legal expenses and paying the respective lawyers. It is also noted that the competence is not exclusive, but concurrent and, in theory, extendable. **In such circumstances, it does not seem reasonable that another lawsuit is filed in Brazil by the party that succumbed abroad, contrary to the principles of objective good faith and legal certainty, which must also be observed at the international level**, especially by those who benefit from the irreversible phenomenon of globalization, where borders are disappearing naturally, including in terms of business relations." (REsp No. 1,090,720/RJ, Judge rapporteur Antonio Carlos Ferreira, Fourth Panel, tried on 6/14/2016, DJe (electronic court gazette) of 8/23/2016 — emphasis added)

60.     The same issue had already been analyzed by Justice Nancy Andrighi, within the scope of MC no. 15.398/RJ. When considering the precautionary request, the Justice was categorical in recognizing the impossibility of a certain party to choose, at its discretion, the

- 19 -

PINHEIRO NETO
A D V O G A D O S

jurisdiction that bests suit it at that time. See excerpt from the decision:

> "Indeed, initially, the applicant, or companies controlled by it, file a lawsuit to defend their rights before the English courts. **Later, however, when they perceive their claim was denied by that Court, they repeat the action, this time in Brazil, trying to do better. So, even though it is not possible, at least in terms of positive law, to apply in Brazil the already mentioned principles of forum shopping and forum non conveniens to extinguish the lawsuit, granting a preliminary measure that suspends the acts tending to execution of that sentence would imply privileging the behavior contradictory. In the same way that, in civil law, the contradictory behavior implies violation of the principle of objective good faith, it is possible also imagine, at least at an initial level of reasoning, the violation of same principle in the procedural level.** The list of conducts that violate procedural good faith contained in Article 17 of the CPC could be placed alongside a list of new conducts that, in addition to the established rules, are subsumed under the general principles of the legal system. **The violation of good faith aims, therefore, represented by the contradictory behavior of the party, could also be extend to procedural acts - which implies the rejection of the preliminary measure hereby claimed.**" (MC No. 15,398/RJ, Judge rapporteur Nancy Andrighi, Third Panel, decided on 4/2/2009, DJe (electronic court gazette) of 4/23/2009 – emphasis added)

61.     Although the case in question deals with a different issue, the rationale applied must be the same: **Grupo Oi, after having chosen the Brazilian jurisdiction to file the Judicial Recovery, cannot now intend to file it in a foreign jurisdiction, under the pretext that American law is more favorable to it** (cf. items 46 to 48 *above*).

### (d)     Suppressed Legislation

62.     As anticipated in the chapter above, the Recovery and Bankruptcy Law, with the innovations brought by Law No. 14,112/20, now provides for its own regime for transnational insolvency. The new system allows for the existence of a main lawsuit and an auxiliary lawsuit. On the other hand, it does not allow for the coexistence of two main lawsuits.

63.     As for the main lawsuit, the LRF provides, in its art. 167-B, II, that it corresponds to "*any foreign lawsuit filed in the country **in which the debtor has the center of its main interests**".* Evidently and as already

↑_JUR_SP_20250004584607/23/2025 07/23/2025 10:37:36 am ▷TW Electronic Initial_ _ _ ˧

**PINHEIRO NETO**
A D V O G A D O S

long defended by Grupo Oi itself, the center of interests of Grupo Oi is not in the
United States, but in Brazil, where the vast majority of its creditors, assets,
contracts, services etc. are located.

64.    Regarding the "center of main interests", for the purposes of establishing
jurisdiction for processing transnational judicial recovery, see the definition by
Marcelo Barbosa Sacramone:

> "Principal is the foreign lawsuit that occurs in the center of the debtor's main
> interests, and that is **presumed to be that of its administrative headquarters or
> domicile of individual entrepreneur when carrying out the foreign lawsuit**,
> unless that seat has been transferred or manipulated to change jurisdiction. In this
> aspect, **the country of administration of the interests of the debtor and which
> would be promptly recognized by the community of creditors**, regardless of its
> registered office, at the time of initiation of the foreign procedure." (SACRAMONE,
> Marcelo Barbosa. *Comentários à Lei de Recuperação de Empresas e Falência
> (Comments on the Business Recovery and Bankruptcy Law).* 2nd ed. São Paulo:
> Saraiva Educação, 2021. p. 640–641 – emphasis added)

65.    Furthermore, art. 167-E of the same law only allows the debtor to act as
**representative** of the national process, but does not allow, in any way, that the
recovering party files a new judicial recovery in another jurisdiction[12]. As specialized
doctrine provides, once the recovery lawsuit is filed in a given jurisdiction, "*any
insolvency proceedings opened subsequently within the scope of application of the
regulation should be considered a secondary lawsuit and therefore restrict its effects
to the territorial borders of the country in which it has been filed*"[13].

66.    In this transnational recovery system, established by Law No. 14,112/20,
there is no supposed international jurisdiction for processing judicial recovery. On
the contrary, the Brazilian jurisdiction is preserved, with the system serving only to
ensure effective international cooperation. In this sense, Sergio Campinho's lesson
is enlightening:

---

[12] Art. 167-E. The following are authorized to act in other countries, regardless of a court decision, as representatives of the Brazilian
case, provided that this measure is permitted by the law of the country in which the foreign cases are being processed: I - the
debtor, in judicial recovery and out-of-court recovery

[13] FELSBERG, Thomas Benes; CAMPANA FILHO, Paulo Fernando. A recuperação judicial de sociedades sediadas no exterior: as
lições da experiência estrangeira e os desenvolvimentos no Brasil (Judicial recovery of companies headquartered abroad:
lessons from foreign experience and developments in Brazil). In: CEREZETTI, Sheila C. Neder; MAFFIOLETTI, Emanuelle
Urbano (coordination). Dez anos da Lei nº 11.101/2005: estudos sobre a lei de recuperação e falência (Ten years of Law No.
11,101/2005: studies on the recovery and bankruptcy law). São Paulo: Almedina, 2015. p. 474-475

JUR_SP - 55203626v4 - 5769054.524399

## PINHEIRO NETO
### A D V O G A D O S

"**It is essential to keep in mind that there is no international jurisdiction in insolvency matters. The institute of cross-border insolvency concerns the provision of means and instruments that facilitate and implement the international cooperation between judges and authorities. The Brazilian judge, therefore, preserves his/her jurisdiction, without prejudice to the duty to collaborate in the guarantee, through the use of legal tools, the effectiveness of decisions foreign judges handed down in their respective jurisdictions. That collaboration shall always respect the territorial limits of each action.**" (CAMPINHO, Sergio. *Temas relevantes e controvertidos decorrentes da reforma da Lei de Falência e Recuperação de Empresas (Lei n. 14.112/2020)* (*Relevant and controversial issues arising from the reform of the Bankruptcy and Business Recovery Law (Law No. 14,112/2020)*). Rio de Janeiro: Expressa, 2021. E-book. p. 42.)

67.    In the same sense, the understanding of Col. STJ:

"The recent incorporation of the regulation of transnational insolvency into Law 11.101/2005 requires the Brazilian State to recognize transnational insolvency proceedings, including administrative liquidation and reorganization proceedings, ensuring foreign representatives access to individual proceedings underway in the national territory (Law 11.101/2005, arts. 167-A, 167-B and 167-F) as a consequence of the duty of cooperation and collaboration between the national jurisdictions involved, **but does not modify the jurisdiction internally defined by each State**." (REsp No. 1,966,276/SP, Judge rapporteur Raul Araújo, Fourth Panel, decided on 4/9/2024, DJe (electronic court gazette) of 6/13/2024.)

68.    From every angle, it is clear that, once the judicial recovery of Grupo Oi has already been filed, the jurisdiction to process any new judicial recovery (or similar process) of Grupo Oi lies solely and exclusively with this Honorable TJRJ.

69.    **Accepting the interference of foreign courts in the original recovery process would represent a true affront to national jurisdiction, especially considering that the obligations set forth in Grupo Oi Plan will be fulfilled, in their overwhelming majority, in Brazil.**

70.    In this regard, it should be noted that, following the UNCITRAL model law, the LREF provides that cross-border insolvency rules must be interpreted in good faith (art. 167-A, §1º, LREF) and with attention to certain guiding objectives, listed in the subsections of art. 167-A, among which are those of (i) ensuring the "*increased legal certainty for economic activity and for the*

- 22 -

[Certified Translate of the Attached
Electronically Stamped Page]
24

# PINHEIRO NETO
### ADVOGADOS

*investment*" and (ii) "*protect the interests of creditors and other interested parties*" in the restructuring process.

71.    The measure intended by Grupo Oi with the North American restructuring process does not meet any of these objectives. On the contrary, it confronts them directly.

72.    There is, therefore, no way to analyze the issue from any angle, how to support Grupo Oi's claim, under penalty of ratifying a clear violation of Brazilian public order and the emptying of the institution of judicial recovery as conceived by the Brazilian legislator.

73.    The insolvency system is a means of implementing public policy relevant to national economic development,[14] providing instruments for the protection of the financial system, promotion of jobs and efficient reallocation of resources, meeting the objectives of art. 170 of the Constitution of the Republic.

74.    This social relevance of judicial recovery is even greater in the case of Grupo Oi, which, as it is currently one of the largest insolvency processes in the country, this has an effect on the whole of Brazilian society, affecting thousands of jobs and investments throughout the country.

75.    Furthermore, Grupo Oi, although in crisis for almost a decade, is still the largest provider of fixed telephony services in Brazil, and millions of people depend on the public service it provides. As Oi itself states in its request for Amendment to the Plan, "Grupo Oi serves more than 43 thousand customers through the "Oi Soluções" branch – among them, 46% of city halls, 68% of state governments and 69% of Federal Government agencies, in addition to 82% of the thousand largest

---

[20] "By affecting the satisfaction of credits, the insolvency system has repercussions on credit risk, access to and cost of financing, contracts between agents, required guarantees, and directly affects sanctions or incentives for the debtor, with the change in the very propensity for undertaking. Empirically, it has been shown that the greater the protection for creditors, the lower the interest required and the longer the loan term. The greater the protection and the greater the clarity regarding the outcome of a default crisis, the greater the investments tend to be made. The efficiency of the system thus has a direct impact on the economy of countries, employment and consumption and, consequently, on the development of social well-being as a whole." (SACRAMONE, Marcelo Barbosa. Recuperação judicial: dos objetivos ao procedimento – incentivos regulatórios do sistema de insolvência brasileiro (Judicial recovery: from objectives to procedure – regulatory incentives of the Brazilian insolvency system). 1st ed. São Paulo: Saraiva Jur, 2024. p. 8)

- 23 -

[Certified Translate of Exhibit B.
Electronically Stamped Page]
25

**PINHEIRO NETO**
A D V O G A D O S

private companies in the country and the 10 largest in the banking, commerce, construction, industry and services sectors. Its rise, therefore, is a matter that must be decided within the limits of the national territory.

76.     Accepting the move proposed by Grupo Oi without reprimand would have very serious consequences for the legal scenario and the national investment market, which must be considered by the Judiciary when analyzing this appeal (arts. 20 and 21 of the LINDB).

77.     Finally, it is worth noting that Grupo Oi's argument to justify such a serious measure is clearly unfounded, after all, there is no obstacle for the Companies Under Reorganization to renegotiate their non-subject credits with their respective holders, including in a structured and collective manner and under the supervision of the Judiciary, though, for example, the establishment of mediation in the form admitted (and promoted) by art. 20-B of the LREF.

78.     A request for *Chapter 11* in the American justice system is therefore not only detrimental to the national jurisdiction and the community of creditors, but also unnecessary.

*(e)*     **Violation of Public Order - Deliberate Attempt to Break the Law**

79.     Grupo Oi also does not hide its intention to circumvent Brazilian legislation through this new judicial recovery before the New York Court.

80.     Throughout the petition filed with the New York Court, the Debtors discuss at length how Brazilian law no longer serves the interests of Grupo Oi, which would justify seeking relief from US legislation. They forget that it is the company that is subject to Brazilian law, not the other way around.

81.     As already mentioned, the main objective of the companies under recovery is to **"*address obligations that cannot be restructured in Brazil*"** (**doc. no. 10**, p. 12). In other words, they intend to make extra-bankruptcy credits public.

JUR_SP - 55203626v4 - 5769054.524399

[Certified to be a true and correct copy of the original. Electronically Stamped Page]
26

**PINHEIRO NETO**
A D V O G A D O S

82.     Brazilian law, however, provides that "*All credits existing on the date of the request, even if not due, are subject to judicial recovery.*" (art**.** 49 LREF)**.** *A contrario sensu*, **credits that arise after the date of the request, as well as those expressly excluded by § 3 of the aforementioned rule, will not be subject to judicial recovery.** This is an essential criterion for legal certainty and the protection of the recovery system itself.

83.     The purpose of the instrument is to ensure that, even after the debtor's judicial recovery has begun, its business activities can continue. This preservation of activity is only possible if those who contract with the company in crisis have the guarantee that their credits will not be subject to the competition of creditors, being paid before all others.

84.     Otherwise, no one would be interested in contracting with the company under recovery. Once the request for judicial recovery was filed, there would no longer be an employee willing to work, a financial institution interested in offering financing, nor a supplier committed to continuing to supply. The company in crisis, on the margins of the financial system, would be forced to close its doors. In the words of João Pedro Scalzilli, Luis Felipe Spinelli and Rodrigo Tellechea:

> "By inference, all credits constituted after the filing of the judicial recovery action are temporarily excluded from the regime in question 2097. This is because the company 'continues to operate regularly and, therefore, negotiate with banks, suppliers, and customers. In this context, **if, after the request for judicial recovery, the debts incurred by the business corporation (or individual company) were subject to its regime, there would be no one willing to negotiate with it**' (SCALZILLI, João Pedro; SPINELLI, Luis Felipe; TELLECHEA, Rodrigo. *Recuperação de empresas e falência: teoria e prática na Lei 11.101/2005 (Business recovery and bankruptcy: theory and practice in Law 11.101/2005).* 4th rev. ed., updated and expanded. São Paulo: Almedina, 2023. p. 596 **–** emphasis added)

85.     It is, therefore, a public order rule, essential to the preservation of the entire recovery system. Without the guarantee that credits arising after the request for judicial recovery will not be subject to it, the recovery of any business corporation in this country will be unfeasible.

JUR_SP - 55203626v4 - 5769054.524399

[Certified Signature on the Date of Printing - Electronically Stamped Page]
27

PINHEIRO NETO
ADVOGADOS

86.    Furthermore, the temporal criterion grants special treatment to those who take the risk of participating in the recovery process, whether it is the institution that grants credit to the recovering company (*DIP Financing*), or even the worker who chooses to stay at the company. These creditors, who choose to engage in the difficult task of recovery, are guaranteed that their credits will not be renewed.

87.    The creditors of Grupo Oi who chose to cooperate with the recovery process, taking high risks, had the legitimate expectation that their credits would be preserved, being paid under the terms originally agreed upon or would enjoy substantial preference in the event of bankruptcy. After all, this is the guarantee that the law expressly grants them.

88.    The maneuver intended by the recovering companies, therefore, is absolutely unfair, constituting true sabotage to the creditors who committed to contributing to Grupo Oi for its recovery.

89.    Also striking is the Recovering Companies' intention of failing to comply with the provisions set forth by art. 48, II, of the LREF[15], which prohibits the request for judicial recovery by a company that obtained the same benefit less than 5 years ago. In this sense, the representatives of Grupo Oi expressly pointed out to the New York Court that the filing of a new judicial recovery on American soil would be necessary because, "the Brazilian Bankruptcy Law prohibits a debtor from filing a new Judicial Recovery lawsuit for five years after the confirmation of a plan" (**doc. no. 10**, p. 5).

90.    Now, if Brazilian law, to which Grupo Oi is subject, expressly prohibits the filing of a new judicial recovery before the end of the 5-year period from the granting of the previous one, it is clear that the Appellees' claim is illegal. It should also be noted that the law does not prohibit the company undergoing recovery from filing another judicial recovery (or similar process) specifically in Brazil. The ban obviously applies to any jurisdiction.

---

[15] Art. 48. A debtor may apply for judicial recovery if, at the time of the application, the debtor has been regularly carrying on business for more than 2 (two) years and meets the following requirements, cumulatively: […] II – not having obtained a judicial recovery grant less than 5 (five) years ago

JUR_SP - 55203626v4 - 5769054.524399

**PINHEIRO NETO**
A D V O G A D O S

91.    This "quarantine" is not a mere whim of the legislator. This is a rational and well-founded legislative decision, which aims to prevent unviable companies from eternally resorting to recovery processes, which are intended for viable companies. In this regard:

> "**The idea behind setting these 'quarantine' deadlines is the presumption that that companies that would need to routinely use the recovery remedies (legal recourses) would not be economically viable. For this reason, they should be eliminated from the market, since they impose costs on other agents unjustifiable** (remember that every recovery, to some extent, involves sacrifice for creditors and society as a whole). In any case, this is an understanding that arises from the legislator's choice." (SCALZILLI, João Pedro; SPINELLI, Luis Felipe; TELLECHEA, Rodrigo. *Recuperação de empresas e falência: teoria e prática na Lei 11.101/2005 (Business recovery and bankruptcy: theory and practice in Law 11.101/2005).* 4th rev. ed., updated and expanded. São Paulo: Almedina, 2023. p. 588)

> \*\*\*

> "Subsections II and III also prevent a entrepreneur or business corporation that has been granted judicial recovery, whether common or special (LREF, articles 70 to 72), for less than five years from obtaining a new judicial recovery. **The law presumes that the entrepreneur who obtained it in the previous five-year period does not have sufficient aptitude to overcome the economic and financial crisis and maintain the source of production.**" (CUNHA, Fernando Antonio Maia da; DIAS, Maria Rita Rebello Pinho. *Comentários à Lei de Recuperação de Empresas e Falência: Lei*
> *No. 11,101, of February 9, 2005 (Comments on the Business Recovery and Bankruptcy Law: Law No. 11,101, of February 9, 2005).* São Paulo: Editora Contracorrente, 2022.)

92.    And this criterion involves a matter of relevant public interest. This is because the social "costs" of a judicial recovery, which requires collective effort and sacrifice, are extremely high. Precisely when dealing with the importance of "quarantine" for the request for new judicial recovery, Fábio Ulhoa Coelho points out that "*A debtor who has been granted it less than 5 years ago is not entitled to apply for judicial recovery. […] In order to justify the present sacrifice of Brazilian society, to a greater or lesser extent, in any company recovery that is not derived from a market solution, the debtor who applies for it must prove to be worthy of the benefit*".[16]

93.    If the national legislator understands that Brazilian society should not bear the burden of a new recovery process within an interval of less than 5 years from the

---

[16] COELHO, Fabio Ulhoa. *Comentários à Lei de Falências e de Recuperação de Empresas (Comments on the Bankruptcy and Business Recovery Law).* 14th rev. ed., updated and expanded. São Paulo: Thomson Reuters Brazil, 2021. p. 167-173.

[Certified Translation of Exhibit B -
Electronically Stamped Page]
29

**PINHEIRO NETO**
A D V O G A D O S

previous process, this is the standard that should be applied. On the other hand, it is unacceptable for another jurisdiction to make this choice for Brazilian society, which will be the actual party affected by any new judicial recovery of Grupo Oi.

94.    In other words, allowing Grupo Oi to proceed with its Chapter 11 filing before the New York Court would be to admit that all of Brazilian society bears a burden that Brazilian legislation has purposefully chosen to avoid. And all of this because of a foreign law.

95.    The intention to file Chapter 11, using American legislation to circumvent Brazilian law, offends public order. This is an attempt to impose foreign law and jurisdiction on a community — given the nature of the recovery process —, stripping nationals of the protections that the Brazilian legislator saw fit to grant them.

96.    If that were not enough, a possible request for reorganization, in the form of *Chapter 11* in the United States, it clashes with the approved Plan, in which creditors authorized Oi solely with a view to "*to the implementation of the provisions of this Plan*" (Clause 10.15.2, pages 56,917).

97.    On the subject, in fact, it is at least *untrue* Grupo Oi's statement that the approved Plan would be substantially complied with. As part of the request to withdraw from the process provided for in Chapter 15 of the *Bankruptcy Code* of the United States of America, Grupo Oi declared that "*the Brazilian Judicial Recovery Plan has been sufficiently implemented so that no creditor will be negatively impacted by the termination of the Recognition Order*". The reality is the opposite. So much has the Plan not been fulfilled — and it will not be in the form originally approved — that Grupo Oi has rightly submitted an addendum to the original Plan.

98.    There are several aspects still pending, such as, for example, the payment of Take-or-Pay Creditors and the sale of V.tal UPI (Isolated Production Unit), a substantial (and perhaps main) source of resources for payment of the various obligations owed by Grupo Oi. The approved Plan is far from being fully complied with — much less

- 28 -

JUS_20250006458460 07/23/2025 10:37:36 am ETW Electronic Initial

[Date of Printing -
Electronically Stamped Page]
30

## PINHEIRO NETO
### A D V O G A D O S

"sufficiently implemented". This is yet another false premise used by Grupo Oi in this endeavor.

99.    Contrary to what Grupo Oi intends to make us believe in the petition on pages 115.354/115.357 (**doc. no. 9**), the activities of a company undergoing judicial recovery are **not** subject to the same rules that apply during regular corporate life.

100.    Filing a request for judicial recovery implies the imposition of several limitations on the exercise of corporate control power (i.e., the ability to decide the direction of a company). In view of this, the legislation establishes specific obligations for the debtor and its administrators. Among the various restrictions, the most obvious of all is the observance and compliance with the judicial recovery plan. The company's management cannot simply choose to disregard the terms of the Plan to which the company is expressly bound.

101.    AND, *in casu*, the approved Plan is categorical in the sense that Grupo Oi would be authorized to institute foreign insolvency proceedings exclusively with the aim of enabling the Plan to take effect on foreign soil. There is no agreement to promote a third (now main) foreign case.

102.    The Plan is Oi's most relevant contract today and its terms and conditions cannot be disregarded due to changes in the composition of the administrative bodies or because the strategic vision of the new administration does not match that one that existed at the time the Plan was drawn up and approved.

103.    Not even in a scenario of normal corporate life is there any justification for non-compliance (and/or unilateral alteration) of contractual instruments because such commitments were entered into by the former management — perhaps at a time of crisis, the effects of which impact hundreds of thousands of creditors.

PINHEIRONETO
ADVOGADOS

104.    Under these circumstances, at the very least—— *and if the illegalities that prevent the Chapter 11 request itself are understood to have been overcome, which is only permitted as a matter of urgency* —— the matter must be previously submitted to the creditors of this judicial recovery, in accordance with art. 35, I, "f", of the LRF.

105.    <u>Evidently, it cannot be admitted that a Brazilian company, Brazilian creditors, credits established in Brazil, services provided in national territory, Brazilian workers —— in short, all of Brazilian society, given the national scope of this judicial recovery —— are subject to foreign law after the filing of Judicial Recovery, at the discretion of Grupo Oi.</u>

## III.    NECESSARY ANTICIPATION OF THE EFFECTS OF THE APPEAL INJUNCTION

106.    In order to preserve the legal protection sought here, it is imperative that this Rapporteur hereby grants the advance of the effects of the appeal injunction, pursuant to Article 1,019, I, of the CPC.

107.    In the present case, both the probability of the right and the risk of harm are present, justifying the granting of preliminary injunction.

108.    The likelihood of the right lies in the issues already set out here, especially the manifest threat of violation of public order and national jurisdiction.

109.    The danger of delay, in turn, stems from the fact that Grupo Oi is already taking steps to file Chapter 11, ans has even applied withdraw from Chapter 15 (**doc. no. 10**). Likewise, the rights of Grupo Oi's extra-bankruptcy creditors are threatened, especially those who own assets abroad, since, once the *stay period* by the American justice system, any "non-compliance" with the measure may be retaliated against with the undue seizure of assets located in American territory.

110.    And, although the risk of damage is evident, it would not even be necessary to

[Certified to be a true copy of the original in Bo-
Electronically Stamped Page]
32

**PINHEIRO NETO**
ADVOGADOS

prove it. After all, what is sought here is the granting of an injunctive relief to prevent the commission of an unlawful act, specifically the filing of proceedings that will violate Brazilian public order and national jurisdiction.

111.   In these cases, **for urgent relief to be granted, it is sufficient to prove the threat of carrying out the unlawful act, with the occurrence of damage being presumed, which lies in the commission of the act itself**. This conclusion arises from an express legal provision, under the terms of art. 497, sole paragraph, of the CPC, which determines that "*for the granting of specific protection intended to inhibit the practice, reiteration, or continuation of an offence, or its removal, is irrelevant to demonstrate the occurrence of damage or the existence of fault or intent*".

112.   As Luiz Guilherme Marinoni confirms, "*In cases of preliminary injunctions and removal, there is no way to talk about damage; the probability that an unlawful act will occur or the probability that an unlawful act has occurred is sufficient.*"[17]

113.       These circumstances, therefore, justify the granting of the effects of the appeal protection so that Grupo Oi is prevented from filing any main judicial recovery proceedings before any foreign court or from incurring expenses related to a request of this nature until this issue is considered by the Trial court, see items 124 to 132 below.

**(a)       *Preservation of National Jurisdiction: Anti-Suit Injunction***

114.   For the reasons set out herein, it is essential that this Court of Justice take decisive measures to prevent Grupo Oi from proposing the *Chapter 11* before the New York Court until this issue is considered by the trial court, in order to preserve national jurisdiction and public order.

115.   This is a measure known internationally as *anti-suit*

---

[17] MARINONI, Luiz Guilherme. Tutela contra o ilícito: inibitória e de remoção - art. 497, parágrafo único, CPC/2015 (Protection against illicit acts: inhibitory and removal - art. 497, sole paragraph, CPC/2015).
São Paulo: Editora Revista dos Tribunais, 2015. p. 126.

[Certification Date of Exhibit B -
Electronically Stamped Page]
33

PINHEIRO NETO
A D V O G A D O S

injection, which "*means an order, of a precautionary nature, given to prevent the commencement or continuation of a certain judicial or arbitration proceeding, preserving an ongoing arbitration or a judicial proceeding already in progress.*"[18]

116.    Arnoldo Wald, paraphrasing Emmanuel Gaillard, states that "*an anti-suit injunction is usually defined as 'an order given to a party by the jurisdiction of a State not to bring a particular action before the jurisdiction of another State or an arbitration tribunal and, if it has already done so, to withdraw the said action'.*"[19]

117.    This measure, although originating from the systems of *common law*, where they are quite frequent, have also been used by national courts to guarantee their jurisdiction. At the trial of the case *ENESA Engineering v. South America Insurance,*[20] the Court of Justice of São Paulo, in view of the parties' dispute regarding the competent forum and the law applicable to the dispute, granted a precautionary measure to prevent Sul América Seguros from instituting arbitration proceedings in England, under English law, setting a daily fine for non-compliance at R$400,000.00 (currently, approximately R$1,309,790.44 in updated values).[21]).

118.    In that judgment, the Honorable TJSP pointed out that the measure was justifiable, as it dealt with the controversy relating to the "***question of sovereignty, of independence, which at no time can be mitigated in the name of other interests under penalty of compromising NATIONAL SOVEREIGNTY***".

119.    In the case *UEG Araucária v. Copel,*[22] in turn, the Court of Justice of Paraná upheld a preliminary decision issued by the trial court, which, given the disagreement between the parties regarding jurisdiction to resolve the conflict, determined that

---

[18] SILVA, Larissa Clare Pochmann da; COSTA, Sylvia Chaves Lima. The control of anti-suit injunctions granted by judges in the face of arbitrations in the European Union scenario: case C-185/07 of the Court of Justice of the European Communities. Revista do Programa de Direito da União Europeia, v. 16, p. 15–25, 2012

[19] WALD, Arnoldo. As anti-suit injunctions no direito brasileiro. (Anti-suit injunctions in Brazilian law). In: DOUIN, Daniel (coord.). Doutrinas Essenciais Arbitragem e Mediação (Essential Doctrines of Arbitration and Mediation). vol. 2. São Paulo: Revista dos Tribunais, 2014. p. 1055-1072.

[20] TJSP; Instrument Appeal 0304979-49.2011.8.26.0000; Rapporteur: Paulo Alcides; Judging Body: 6th Private Law Chamber; Central Civil Court - 9th Civil Court; Judgment Date: 04/19/2012; Registration Date: May 21, 2012

[21] Updated using the Citizen Calculator, provided by BACEN.

[22] AgIn 142.683-1 - TJPR - j. 28.06.2003 - rel. Court of Appeals Judge Leonardo Lustosa (Revista de Direito Bancário, do Mercado de Capitais e da Arbitragem, n. 21, p. 421)

JUR_20250006454846 07/23/2025 10:37:36 am ▷ TW Electronic Initial

[Certification Certificate of Authenticity
Electronically Stamped Page]
34

## PINHEIRO NETO
### A D V O G A D O S

UEG Araucária should refrain from carrying out any acts to continue arbitration proceedings instituted in France, under penalty of a daily fine.

120.    Despite the Brazilian experience with the *anti-suit injunction* is mostly related to arbitration, nothing prevents the granting of this measure to prevent the party from filing a lawsuit in a foreign state jurisdiction. As the doctrine teaches, "*This order may be granted by arbitrators or by state judges. This is a concern to avoid duplicate processes, in cases where the same issue is being taken by the same parties to trial in different forums.*"[23]

121.    From the *anti-suit injunction*, it is possible that "*the judge or court prohibits one of the parties in the proceedings from litigating **before the Judiciary of another State**" having an important function of "**combating abuses in the search for a forum abroad, i.e., abusive forum shopping**.*"[24]

122.    Therefore, in order to preserve Brazilian public order and national jurisdiction, it is imperative that this Rapporteur determines, as a matter of urgency, that Grupo Oi refrain from filing, before the New York Court or any other foreign court, the main request for judicial recovery until this issue is considered by the Trial court, under penalty of a daily fine in an amount to be determined by this Honorable Court.

**(b)    *Stratospheric Spending Containment - A Necessary Measure***

123.    In addition to violating national jurisdiction and public order, any request for "main" judicial recovery by Grupo Oi abroad represents a real risk to the payment of its debts due to the high costs arising from the Chapter 11 procedure.

---

[23] SILVA, Larissa Clare Pochmann da; COSTA, Sylvia Chaves Lima. O controle das anti-suit injunctions concedidas por juízes em face de arbitragens no cenário da União Europeia: o caso C-185/07 do Tribunal de Justiça da Comunidade Europeia (The control of anti-suit injunctions granted by judges in the face of arbitrations in the European Union scenario: case C-185/07 of the Court of Justice of the European Communities). Revista do Programa de Direito da União Europeia, v. 16, p. 15–25, 2012.

[24] RECHSTEINER, Beat Walter. Direito internacional privado: teoria e prática (Private international law: theory and practice). 20th rev. and updated ed. in accordance with the Migration Law. São Paulo: Saraiva Education, 2019. p. 277-278

**PINHEIRONETO**
A D V O G A D O S

124.    As is well known, filing a judicial recovery process, especially in the United States of America, requires extremely high expenses, which certainly do not correspond to Grupo Oi's current state of financial crisis.

125.    Chapter 11 costs include, for example, attorney fees, administrative fees, and possible financial advisor fees, which can exceed hundreds of millions of dollars. LATAM – whose *Chapter 11* is presumed to be comparable in magnitude to that sought by Group 11 – reported having spent approximately US$220 million on its Chapter 11 proceeding.[25]

126.    There is no doubt that a potential Chapter 11 filing with the US Court has the potential to reduce Grupo Oi's assets by at least tens of millions of reais, to the detriment of all creditors, especially in a possible bankruptcy scenario.

127.    It is therefore essential that a preliminary injunction be issued ordering Grupo Oi to refrain from incurring any costs (including, but not limited to, attorney's fees, financial consultants, and court fees), also under penalty of a daily fine to be set by this Honorable Court.

(c)    **Lack of Support from the Brazilian Court: Dispatch of Official Letter to the Court of New York**

128.    As already mentioned (items 20 to 21 *above*), the representatives of Grupo Oi informed the New York Court that both the court of origin and Your Honor had expressed support for the filing of the Chapter 11 procedure in parallel with the ongoing judicial recovery:

> "On June 11, 2025, the Company's representatives and lawyers discussed this possibility with the Rio de Janeiro Court of Justice and the Court of Justice rapporteur judge, and the judges expressed support for the strategy."

---

[25] "LATAM reported a net loss of US$296 million during the quarter, compared to a net income of US$86.3 million in 2019. The loss is mainly due to Chapter 11 reorganization expenses and to the costs associated with the DIP financing." (https://www.latamairlinesgroup.net/news-releases/news-release-details/latam-reports-positive-operational-result-following-chapter-11?utm_source=chatgpt.com)

- 34 -

**PINHEIRO NETO**
ADVOGADOS

129.    They also claimed that "*Brazilian Judicial Recovery Court supports a parallel Chapter 11 petition for Judicial Recovery Debtors to avoid liquidation*" (**doc. no. 10**, p. 6).

130.    In the same sense, they again pointed out to the foreign Court that "*Grupo Oi discussed the possibility of filing a Chapter 11 bankruptcy recovery petition in the United States with certain Brazilian authorities, **including the Brazilian Judicial Recovery Court**, supporting the effort to utilize cross-border restructuring solutions to increase creditor recoveries, as well as those of some of their major creditor counterparties. Id. ¶24.*" (**doc. no. 10**, p. 12).

131.    As if that were not enough, once again the representatives of the companies under recovery claimed that "[the] Grupo *Oi discussed its plans with Brazilian authorities, **including the Brazilian Judicial Recovery Court**, which support the effort to use* transnational recovery solutions to increase creditor recoveries" (**doc. no. 10**, p. 16).

132.    The intention is clear: to induce the New York Court to believe that this Honorable Court of the State of Rio de Janeiro would be complicit in the usurpation of its own jurisdiction, leaving it comfortable to decide matters of great repercussion throughout the Brazilian territory, believing that it would not be violating Brazilian jurisdiction.

133.    It turns out that there is no evidence, in the original judicial recovery records, or anywhere else, that this Honorable Court of Justice would agree with the filing of a Chapter 11 before the New York Court.

134.    Therefore, in order for the New York Court not to be misled, it is essential that the Appealed Decisions are supplemented, so that it is determined that the Judicial Administrator not only informs that the original judicial recovery is underway, but also that <u>there has never been any</u> <u>ruling of this Court of Justice, whether in the trial or appellate court,</u>

JUR_SP - 55203626v4 - 5769054.524399

**PINHEIRO NETO**
A D V O G A D O S

in favor of filing a Chapter 11 in any foreign court.

**(d)    TCU and CVM Intimation Required**

135.    Finally, it is essential that the Federal Court of Auditors and the Securities
and Exchange Commission be notified before the *a quo Court* rules on the requests
made by Grupo Oi.

136.    In the case of TCU (*Brazilian Federal Court of Accounts*) (and more
specifically SECEX-Consendo), the summons is necessary to verify, if it deems
necessary, whether the situation of non-compliance with the Plan, the Amendment
to the Plan presented, and the precautionary measure have the potential to affect
the commitments undertaken by the recovering parties within the scope of the Self-
Composition Term for Adaptation of the STFC Concession Contracts to the
Authorization Regime, within the scope of administrative process no. 020.662/2023-
8/TCU, whose execution was coordinated by the Secretariat for External Control of
Consensual Resolution and Conflict Prevention (SecexConsenso).

137.    Furthermore, the new facts presented in the original proceedings, which,
according to the recovering companies, would justify the granting of the
precautionary measure, include a "*additional total impact of at least R$510 million
on OI's cash flow*", which would result from delays in the migration of the STFC
public regime, "*due to the exclusive fault of ANATEL*" (pages 113,166)**.**

138.    Unforeseen events regarding compliance with the Plan, reported in the
statement on pages 113,147/113,191, may also affect compliance with the
obligations set out in the Self-Composition Term, which also justifies the summons
of SecexConsensus of the TCU.

139.    As is known, the TCU exercises oversight power over public accounts, including
monitoring contracts and agreements signed between ANATEL and OI. A modification of
such magnitude in the course of this judicial recovery, capable of affecting the relationship
between the recovering parties and the Public Administration, must, therefore, be submitted
to SecexConsenso. After all, "*In Brazil, the powers of the*

- 36 -

**PINHEIRO NETO**
A D V O G A D O S

*Court of Auditors in the control of contracts are to act on the subjects (on those responsible for the contract)* […]. *The Court monitors and warns managers, engages in talks with them and, if deemed appropriate, punishes them with severe sanctions.*"[26]

140.    Furthermore, given the relevance of the issues reported by Grupo Oi in its precautionary request on pages 113,147/113,191, it is also essential to notify the Securities and Exchange Commission, given that most of the companies under recovery are publicly traded companies and, therefore, subject to the jurisdiction and supervision of the CVM.

141.    Therefore, the alarming state of crisis reported raises suspicions regarding the proper conduct of business activities, triggering the jurisdiction of the CVM, under the terms of art. 1, VII, of Law No. 6,385, which must be heard, before there is any deliberation regarding the viability of the Amendment to the Plan, as well as the precautionary request formulated on pages 113.147/113.191.

**IV.    CONCLUSION AND REQUESTS**

142.    For all the above reasons, V.tal trusts that, in accordance with art. 1,019, I, of the CPC, this Honorable Rapporteur will grant, *inaudita altera parte*, the anticipation of the effects of the appeal protection, to:

(i)    determine that, until there is an express ruling from the *a quo court*, Grupo Oi refrains from filing the main request for judicial recovery in any foreign jurisdiction, including incurring costs for filing the lawsuit (including, but not limited to, the hiring of legal and financial advisors), or, if it has already filed it at the time the measure was granted, withdraws it, under penalty of a daily fine in the amount to be determined by this Court;

(ii)    be the Judicial Administrator of the Judicial Recovery officiated, so that he can

---

[26] SUNDFELD, Carlos Ari; ROSILHO, André (Orgs.). Tribunal de Contas da União no Direito e na Realidade (Federal Court of Auditors in Law and in Reality). 1st ed. São Paulo: Almedina, 2020.

[Certified Date of Filing Signature]
Electronically Stamped Page]
39

**PINHEIRO NETO**
ADVOGADOS

inform the Bankruptcy Court for the Southern District of New York that (a) there is no official ruling from that Court, either in the trial or appellate court, in favor of the filing of a Chapter 11 before that Court; (b) that the approved Plan has not been fully implemented; and (c) there has been no significant change in the main center of interests of Grupo Oi since the filing of the Judicial Reorganization; and

(iii)     be a *quo* court officiated, to refrain from considering the requests made by the recovering parties on pages 113.147/113.191 of the original proceedings before the hearing of the Federal Court of Auditors and the Securities and Exchange Commission.

143.       Having granted the above-requested urgent relief, the Appellant trusts that, in the end, this appeal will be granted, in the following terms:

a)       to determine to Grupo Oi that, **until there is a statement on the subject of the Judicial recovery court**, refrain from filing the main request for judicial recovery in any foreign jurisdiction, including incurring costs for filing the lawsuit (including, but not limited to, hiring legal and financial advisors), or, if it has already been filed at the time the measure is granted, give it up, under penalty of a daily fine in an amount to be determined by this Honorable Court;

b)       to determine to the Judicial Administrator that, while there is no formal manifestation of the Judicial Reorganization Court on this matter, inform the Bankruptcy Court for the Southern District of New York that (a) there is no official ruling from this Honorable Court of Justice, whether in the trial or appellate court, in favor of the filing of a Chapter 11 before that Court; (b) that the approved Plan was not fully implemented; and (c) there has been no significant change in the center of main interests of Grupo Oi since the

## PINHEIRO NETO
### A D V O G A D O S

filing of Judicial Recovery; and

c)    that the Secretariat for External Control of Consensual Resolution and Conflict Prevention (SecexConsenso) of the Federal Court of Auditors and the Securities and Exchange Commission be summoned so that, if they so wish, they may comment on the requests made by the recovering parties on pages 113.147/113.191 of the original case.

In these terms,

I hereby request your approval.

Sao Paulo, July 23, 2025.

**Thiago Braga Junqueira**

**OAB/SP No. 286,786**

**João Guilherme Thiesi da Silva**

**OAB/SP no. 410.293**

**Maria Fernanda M. Del Grande**

**OAB/SP no. 493.904**

**Sophia Weinschenker Bollmann**

**OAB/SP no. 519.960**

JUR_SP - 55203626v4 - 5769054.524399

**MORNINGSIDE**
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

**Date: 2025/07/27**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Portuguese (Brazil)

To:

- English (USA)

The documents are designated as:

- '00597549120258190000.pdf'

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director