**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
Michael Carlinsky
Benjamin Finestone
Mario O. Gazzola
Jeremy Baldoni
Lindsay Weber
295 5th Avenue, 9th Floor
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
mariogazzola@quinnemanuel.com
jeremybaldoni@quinnemanuel.com
lindsayweber@quinnemanuel.com
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

K. John Shaffer (*pro hac vice* application pending)
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017
johnshaffer@quinnemanuel.com
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A.*

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Oi S.A. *et al.*,<br><br>Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Jointly Administered<br><br>Case No. 23-10193 (JPM) |

**OBJECTION AND OPPOSITION TO MOTION TO TERMINATE
THE RECOGNITION ORDER AND DISMISS THE CHAPTER 15 CASES**

---

[1]   The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. (8447 – Netherlands), Portugal Telecom International Finance B.V. (5023 – Netherlands) ("Oi Group" or "Oi").

## **TABLE OF CONTENTS**

**Page**

I. THRESHOLD REQUEST TO HONOR THE BRAZILIAN COURT'S REQUEST TO DEFER THIS MATTER, OR ALTERNATIVELY FOR COURT-TO-COURT COMMUNICATION UNDER SECTION 1525 ............................1

II. PRELIMINARY STATEMENT ................................................................2

III. FACTUAL BACKGROUND .................................................................5

    A.    Oi Group and the First RJ Proceeding ..............................................5

    B.    Oi Group's Second RJ In Brazil And V.tal's Role ................................7

    C.    Recognition Of Oi Group's Second Brazilian RJ ..................................7

    D.    Oi Group's Second RJ Plan and Implementation ..................................7

    E.    The New Financing And Fiduciary Liens ...........................................8

    F.    The Brazilian RJ Proceeding Continues To Actively Oversee And Administer Oi's Judicial Restructuring In Brazil ..................................9

    G.    Applicable Brazilian Law And Practices ..........................................11

IV. ARGUMENT .............................................................................12

    A.    Termination Should Be Denied Under The Governing Statute, Section 1517(d) ................................................................................12

        1.    Oi Fails To Establish The Statutory Prerequisite To Termination Because It Fails To Show That Any Ground *For Recognition* Has Ceased To Exist ...............................................................14

        2.    Even If Oi Could Meet The Statutory Prerequisite, The Court Should Decline To Terminate, In Its Discretion .......................16

            (a)    Termination Is Inappropriate Because "Parties That Have Relied Upon" Recognition Would Be Severely Prejudiced .........16

            (b)    Termination Is Inappropriate Because Usurping Brazil's Proper Oversight Over Oi's Bankruptcy And Plan In Brazil Would Deeply Violate The Notions Of Comity And International Cooperation That Underpin Chapter 15 ..................19

            (c)    Termination Is Inappropriate Because Termination Cannot Achieve Oi's Aims.............................................................23

    B.    Oi's Arguments For Termination Under Provisions Other Section 1517(d) Fail Because They Are Irrelevant ............................................25

    C.    Oi's Unsupported Factual Assertions Present An Insufficient Evidentiary Record To Warrant Termination.......................................27

    D.    Oi's Proposed Order Should Be Rejected Because It Would Grant Relief That is Beyond The Scope Of Oi's Motion And Would Impermissibly Grant Oi Inconsistent Rights.....................................29

V.      CONCLUSION....................................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Czyzewski v. Jevic Holding Corp.*,
  580 U.S. 451 (2017)................................................................................23

*Harrington v. Purdue Pharma L. P.*,
  603 U.S. 204 (2024)................................................................................27

*In re Air Vt., Inc.*,
  40 B.R. 323 (Bankr. D. Vt. 1984)................................................................24

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007)..........................................................14

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  389 B.R. 325 (Bankr. S.D.N.Y. 2008)......................................................14, 19

*In re Brit. Am. Ins. Co. Ltd.*,
  488 B.R. 205 (Bankr. S.D. Fla. 2013)...........................................................26

*In re: Comair Ltd.*,
  2023 WL 1971618 (Bankr. S.D.N.Y. Feb. 12, 2023).....................................16, 26

*In re Cozumel Caribe, S.A. de C.V.*,
  508 B.R. 330 (Bankr. S.D.N.Y. 2014)....................................................14, 16, 21

*In re Estrategias en Valores, S.A.*,
  601 B.R. 550, 556 (Bankr. S.D. Fla. 2019)..............................................14, 26, 29

*In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*,
  607 B.R. 160 (Bankr. S.D.N.Y. 2019)............................................. 13-14, 16, 25

*In re Int'l Banking Corp. B.S.C.*,
  439 B.R. 614 (Bankr. S.D.N.Y. 2010)...........................................................20

*In re Jason Realty, L.P.*,
  59 F.3d 423 (3d Cir. 1995)........................................................................24

*In re Kuvykin*,
  2019 WL 989414 (Bankr. S.D.N.Y. Feb. 26, 2019)..........................................23

*In re Loy*,
  2011 WL 2619253 (Bankr. E.D. Va. July 1, 2011).......................................16, 27

*In re Maxwell Commc'n Corp. plc by Homan*
  93 F.3d 1036 (2d Cir. 1996)......................................................................21

*In re Oi Brasil Holdings Cooperatief U.A.*,
578 B.R. 169 (Bankr. S.D.N.Y. 2017)..........................................3, 6, 7, 13, 14, 16, 19, 25, 26

*In re Oi S.A.*,
No. 16-11791 (Bankr. S.D.N.Y. July 22, 2016), ECF 38 ...........................................6

*In re Zhejiang Topoint Photovoltaic Co., Ltd.*,
600 B.R. 312 (Bankr. D.N.J. 2019) ...............................................................15, 29

*Jones v. Barnes*,
463 U.S. 745 (1983).....................................................................................25

*JP Morgan Chase Bank v. Altos Hornos de Mexico*,
412 F.3d 418 (2d Cir. 2005)............................................................2, 19-20, 22

*Malkentzos v. DeBuono*,
102 F.3d 50 (2d Cir. 1996)...............................................................................30

## Statutes

11 U.S.C. § 105................................................................................................25, 26

11 U.S.C. § 305.....................................................................................................25

11 U.S.C. § 541.......................................................................................................4

11 U.S.C. § 1501...................................................................................................19

11 U.S.C. § 1507................................................................................................25-26

11 U.S.C. § 1517.................................................2-3, 6-7 12, 13-17, 18, 25-29

11 U.S.C. § 1521................................................................................................25, 27

11 U.S.C. § 1525..................................................................................................2, 29

11 U.S.C. § 1528..................................................................................................4, 24

## Other Authorities

Fed. R. Civ. P. 60.................................................................................................25

## I.    THRESHOLD REQUEST TO HONOR THE BRAZILIAN COURT'S REQUEST TO DEFER THIS MATTER, OR ALTERNATIVELY FOR COURT-TO-COURT COMMUNICATION UNDER SECTION 1525

BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A. ("V.tal") respectfully ask this Court to honor the request of the Reporting Justice who oversees appeals out of Oi's Brazilian RJ proceedings, to defer ruling on Oi's Chapter 15 termination motion until the Brazilian courts have (1) ruled on Oi's pending plan amendments, *and* (2) completed an investigation of Oi's noncompliance with the plan.  *See* ECF 55, 56.  The Brazilian court requested:

> [I]n order to preserve legal certainty and the authority of Brazilian jurisdiction, while respecting the sovereignty of the countries involved and the harmonization of the cross-border legal system, I order only that *a recommendation be made in the record of the Chapter 15 Proceeding to the effect that, before issuing any decision in the process related to Chapter 15 of the Oi Group, the NY Court await the decision of the Brazilian Court on (i) the verification and consequences of non-compliance with the reorganization plan, already reported, and (ii) the request for an Amendment to the reorganization plan of the main process underway in Brazil.*

ECF 56-1 ("July 25 Brazilian Decision") at 16-17 (emphasis added).

The Brazilian court also made clear that it has *not* expressed its "support" for termination of recognition under Chapter 15 or a Chapter 11 process in the United States.  To the contrary, the court ordered that this Court be informed that "there is *no judicial pronouncement by this jurisdiction [Brazil] agreeing to the initiation of other proceedings involving the restructuring of OI Group in other jurisdictions*."  ECF 56-1 at 17 (emphasis added).

Oi's July 28 response (ECF 57) to V.tal's notice of the Brazilian court's decision is inaccurate and misleading.  Oi claims the Brazilian court will have ruled on its plan amendments by August 6.   But the accompanying Declaration of Thiago Braga Junqueira ("Decl.") demonstrates that is highly unlikely.  *See* ¶ 87.  Moreover, Oi completely ignores the Brazilian court's additional request to defer consideration until after its investigation of Oi's noncompliance

with the RJ plan is completed, which also will probably not occur before August 6.  Decl. ¶¶ 85-87.

Thus, pursuant to the July 25 Brazilian Decision, and in furtherance of international comity, this Court should adjourn the hearing pending the Brazilian court's rulings.  *See JP Morgan Chase Bank v. Altos Hornos de Mexico*, 412 F.3d 418, 423-24 (2d Cir. 2005) ("We have **repeatedly** held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.") (emphasis added).

Nevertheless, to the extent there is any ambiguity whatsoever, V.tal invites this Court to seek clarification of the decision directly from the Brazilian courts.  *See* 11 U.S.C. § 1525 ("The court is entitled to communicate directly with, or to request information or assistance directly from, a foreign court or a foreign representative, subject to the rights of a party in interest to notice and participation.").  V.tal is confident that Oi's self-serving statements of "support" for a Chapter 11 filing will be further discredited.

## II.    <u>PRELIMINARY STATEMENT</u>

On the merits, Oi's Motion to Terminate the Recognition Order ("Mtn.") fails at the outset because terminating Chapter 15 recognition requires a showing that the "grounds for granting" recognition "have ceased to exist" (11 U.S.C. § 1517(d)), but Oi has failed to even address such grounds, and has refused in discovery to produce any documents relating to those grounds (claiming they are "irrelevant").  The only three grounds for granting recognition are set forth in Section 1517(a)(1-3)—Oi's Brazilian RJ is a foreign main proceeding, the foreign representative is a person, and the petition satisfied Section 1515.  There is no dispute that none has ceased to exist.  Today, as when Oi sought recognition from this Court, these three statutory "requirements are satisfied with respect to the Brazilian Proceeding, the Petitioner, and the Verified Petition." Petition for Recognition, ECF 3 ¶ 51.  Oi's motion thus must be denied, because Section 1517(d)

provides the exclusive standard for termination, and Oi fails to meet it.  *See In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 203 (Bankr. S.D.N.Y. 2017) (rejecting Oi's attempt in its prior Chapter 15 case to advocate an alternative standard for termination of recognition).

Even assuming *arguendo* that the grounds for recognition have ceased to exist, the Court should still deny Oi's motion because the Court would then be required, in deciding termination, to "give due weight to the possible prejudice to parties that have relied on upon the order granting recognition."  11 U.S.C. § 1517(d).  V.tal would suffer grave prejudice by termination because, among other things, V.tal holds almost BRL 760 million in claims (Decl. ¶ 71) from financing it extended after recognition, in reliance on Brazilian law and this Court's recognition of Oi's foreign main proceeding, and Oi now seeks to impair such financing in a Chapter 11 case.  Mtn. ¶¶ 20, 33.

And even if Oi were able to establish the statutory requirement for termination and overcome considerations of undue prejudice, the Court should still deny Oi's motion on the basis of principles of comity, because Oi should not be permitted to override and frustrate the extensive, ongoing Brazilian RJ Proceeding, and governing Brazilian law, by now casting aside Oi's home-court sovereign due to a change of heart, especially when it asserted to this Court that recognition "follows the dictates of Chapter 15 to foster comity and cooperation between this Court and the Brazilian Bankruptcy Court with the ultimate goal of an orderly judicially-supervised reorganization and an efficient administration of the Chapter 15 Debtors' assets."  Petition for Recognition ¶ 93.  The explicit premise of Oi's Chapter 15 termination motion—Oi seeks to evade Brazilian law to restructure debts in the United States that cannot be restructured in Brazil—is antithetical to principles of comity.  Indeed, what Oi is asking this Court to endorse is a "restructuring" of a pending Brazilian "restructuring."  That is not comity; that is imperialism.

3

Moreover, after Oi filed its motion, an even more improper motive emerged: due to "evidence of inappropriate information" submitted by Oi, a July 18 ruling in the Brazilian RJ proceeding tasked a judicial appointed "[w]atchdog" to "assess the accuracy of the data provided" by the debtors "as well as any possible practice abuse or fraud." ECF 54-1 at 8. And the July 25 Brazilian Decision contradicts Oi's contention that the Brazilian courts support its plan.

Oi should not be permitted to use United States bankruptcy courts to override Brazilian restructuring law and evade the directives and ongoing oversight of Brazilian bankruptcy courts. Were this Court to endorse a U.S. restructuring of a pending Brazilian RJ proceeding and of post-petition debts that could not be restructured under Brazilian law, it would significantly hinder the ability of future Brazilian debtors to obtain post-petition financing and to find operational and contractual counterparties while in RJ. Again, this is all antithetical to comity, which is grounded in respect for foreign insolvency proceedings.

In addition to the foregoing, Oi's motion should be denied because the unlawful Chapter 11 cases upon which the motion is premised are doomed to fail. Termination would not provide for the global restructuring via the United States that Oi envisions, because (1) the "effects of such case" would be limited to assets "within the territorial jurisdiction of the United States" and not substantially all of Oi's assets which would remain "subject to the jurisdiction and control of a foreign [main] proceeding that has been recognized" under Chapter 15 (11 U.S.C. § 1528); (2) even if (1) were not the case, substantially all of Oi's assets are subject to fiduciary liens such that they would not comprise property of Oi's putative estate (11 U.S.C. § 541(d)), and (3) the Brazilian courts would not recognize Oi's evasion of the effects of its own restructuring in Brazil.

Oi also presents a woefully insufficient factual record to warrant termination. Many of its factual assertions in favor of termination come with no evidentiary support, and nearly all of the

4

rest are supported by only vague hearsay or *ipse dixit* in a declaration by Oi's lawyer or CEO. As noted above, Oi relies heavily on a hearsay assertion that the Brazilian courts support its plan, but the July 25 Brazilian Decision has fully refuted that. *Compare* Decl. of Marcelo Jose Milliet ("Milliet Decl.") ECF 48 ¶ 24 n.6; to ECF 56-1 at 17.

Finally, Oi's suggestion that V.tal is motivated by "conflicting interests" is false. Indeed, Oi's allegation that V.tal has a "preference for a value-destructive liquidation" (ECF 57 ¶ 20), is impossible to square with the actual facts and occurrences surrounding Oi's RJ proceedings. V.tal, *more than any other party in interest*, has repeatedly supported Oi's restructuring, including, among other things, by advancing post-petition credits (in numerous respects), serving as stalking horse bidder for Oi's ClientCo business (in order to provide liquidity to Oi), and deferring cash interest payments on DIP financing. Furthermore, V.tal is currently supportive of Oi's Brazilian plan amendment. No party has been more supportive of Oi's reorganization as it has proceeded in the center of Oi's main interests: Brazil. V.tal does not support, however, Oi's improper attempt to use the U.S. courts to restructure and modify debts in violation of Brazilian law and in contravention of the reliance interests of many Brazilian creditors.[2]

For all of these reasons, Oi's motion fails and it should be swiftly rejected.

## III.   FACTUAL BACKGROUND

### A.    Oi Group and the First RJ Proceeding

Oi S.A. is a publicly-held Brazilian telecommunications company and one of the country's largest providers of fixed-line and relevant broadband services. Oi has played a significant role in

---

[2]   Oi's assertion of a "conflicting interest" by referring to certain hearsay articles (ECF 57 ¶ 22 n. 10) is baseless. Oi conceals that the purported "competitor" established by V.tal, Nio, was voluntarily sold by Oi to V.tal just months ago and, prior thereto, was owned by Oi for years operating alongside Oi's other businesses without competition.

expanding telecommunications infrastructure across Brazil.  Decl. ¶ 59.  Essentially all of Oi's assets and operations are in Brazil.  ECF 56-1 at 15 of 19.

On June 20, 2016, Oi S.A. and affiliated entities filed for reorganization before the Brazilian Courts for the first time, to restructure over R$ 65 billion in prepetition claims ("RJ Court" and the "First Brazilian RJ").  Decl. ¶ 61.  The next day, Oi filed petitions for recognition in this Court under Chapter 15.  *See Oi S.A.*, No. 16-11791 (Bankr. S.D.N.Y. June 21, 2016), ECF 1.  This Court granted recognition of the First Brazilian RJ as a foreign main proceeding.  *Id.*, ECF 38.

After the First Brazilian RJ was recognized by this Court, creditors of Oi Brasil Holdings Coöperatief U.A.'s ("Coop") initiated legal actions in the Netherlands that resulted in Dutch bankruptcy proceedings for Coop.  In July 2017, the Dutch trustee filed a competing Chapter 15 petition, seeking: (1) recognition of the Dutch bankruptcy as Coop's foreign main proceeding, and (2) termination of this Court's prior recognition of the Brazilian proceedings regarding Coop.  578 B.R. at 175.  Oi opposed termination, stating that Oi Coop's "corporate nerve center remains in Brazil because … Oi Coop ... is 'part of, and inseparable from, [its corporate] group in Brazil.'"  Objection at 30, *In re Oi Brasil Holdings Cooperatief U.A.*, No. 17-11888 (Bankr. S.D.N.Y. Sept. 15, 2017), ECF 104, at 52.  Oi also argued that courts must "give due weight to possible prejudice to parties that have relied upon the order granting recognition," noting the "potential prejudice resulting from a ruling in favor of [termination] is substantial."  *Id.* at 64, 66.  On December 4, 2017, this Court denied the motion to terminate or modify recognition, holding that termination requires showing that "the grounds for granting [recognition] were fully or partially lacking or have ceased to exist."  *In re Oi*, 578 B.R. at 194 (quoting 11 U.S.C. § 1517(d)).  The Court also stated: "American courts have long recognized the importance of comity particularly in the bankruptcy context because the equitable and orderly distribution of a debtor's property requires

assembling all claims against the limited assets in a single proceeding." *Id.* at 212 (quotations omitted). Oi emerged from the First Brazilian RJ on December 14, 2022. Decl. ¶ 63.

### B.   Oi Group's Second RJ In Brazil And V.tal's Role

On March 1, 2023, Oi S.A. and its affiliated debtors (together, the "Oi Group" or "Oi") commenced a second RJ proceeding, seeking to restructure over R$ 44 billion (approximately U.S. $8 billion) in prepetition claims (the "Second Brazilian RJ"). Decl. ¶ 60 n. 32.

V.tal is a Brazilian fiber infrastructure company operating one of Latin America's largest neutral fiber networks. V.tal was created from Oi's asset spin-off during its First Brazilian RJ.

Oi and V.tal have maintained ongoing business relationships, including shared systems and real estate. Decl. ¶ 75. V.tal is both a prepetition and post-petition creditor in Oi's Second Brazilian RJ. Decl. ¶ 76. V.tal's prepetition claims derive from several contracts entered into by V.tal and Oi, one of which grants Oi the right to use V.tal's infrastructure to provide telecommunications services to large Brazilian companies. *Id.* V.tal's post-petition claims include take-or-pay obligations and a post-petition financing, as discussed below. *Id.* These post-petition claims held by V.tal are not impaired by the Oi's RJ Plan. *Id.*

### C.   Recognition Of Oi Group's Second Brazilian RJ

On March 29, 2023, this Court granted Chapter 15 recognition of Oi's Second Brazilian RJ. ECF 30 ("Recognition Order"). In its Recognition Order, the Court found that all requirements for recognition under Section 1517(a) were satisfied. Recognition Order p. 3; 11 U.S.C. § 1517(a).

### D.   Oi Group's Second RJ Plan and Implementation

On April 19, 2024, Oi's creditors approved its plan of reorganization (the "Oi Group's RJ Plan"). Decl. ¶ 66. It provides for: (i) the restructuring of Oi's prepetition claims and certain credits held by tower companies; and (ii) new financing of up to $655 million, including up to $505 million from noteholders and up to $150 million from V.tal or its affiliates (the "New

7

Financing"). *Id.* at ¶¶ 66-67. Section 10.3.1 of the plan provides that the debtors "undertake to adopt the measures that are within their reach and are necessary for this Plan to be recognized as effective, enforceable and binding in the applicable foreign jurisdictions." ECF 38-1 at 70.

On May 28, 2024, Oi's RJ Court issued an order confirming the RJ Plan (the "Confirmation Order"). Decl. ¶ 68. Since the Confirmation Order, Oi has taken measures to implement the RJ Plan, including the sale of two UPIs, TVCo and ClientCo. Decl. ¶ 73. These steps have been supervised by the RJ Court and the Trustees, who file monthly reports with information about Oi's financial situation, operations, and plan implementation measures. *Id.*

On June 17, 2024, this Court entered an Order granting full force and effect to the Oi's RJ Plan. ECF 42 ("FFE Order"). The Order provides that "all entities . . . are permanently enjoined from … taking any action or asserting any claim that is in contravention or inconsistent with, or would interfere with, or impede the administration, implementation and/or consummation of the Brazilian RJ Plan, the Brazilian Confirmation Order, or the terms of this Order." ECF 42 ¶ 7. It also held: "Nothing in this Order shall limit or impair the present or future rights of holders (or their agents) of debt or equity issued in accordance with the Brazilian RJ Plan or the Post-petition Transaction Documents, ***which instruments and obligations, once issued and in effect, shall be enforceable obligations of the Chapter 15 Debtors that are not subject to any modification or override except in accordance with their express terms***." ECF 42 ¶ 17 (emphasis added).

### E.    The New Financing And Fiduciary Liens

On August 8, 2024, the New Financing closed with the issuance of debentures to BGC (a V.tal affiliate) and New Priority Secured Notes to noteholders and the disbursement of R$758,505,000.00 in consideration for debentures by BGC. Decl. ¶ 71. Under Brazilian Bankruptcy Law, the New Financing is considered a post-petition claim and thus not subject to impairment in the Second Brazilian RJ. *Id.* ¶ 76. To secure the financing, Oi granted security

interests in the form of fiduciary liens on real estate properties, Oi's receivables deriving from
lawsuits and arbitration proceedings, and Oi Group's shares in V.tal, among other collateral. *Id.* ¶
71. Under Brazilian Bankruptcy Law, fiduciary liens are exempt from impairment in future
judicial reorganization proceedings filed by Oi in Brazil (except property subject to fiduciary liens
generally cannot be repossessed during the stay). *Id* ¶ 32. V.tal extended this credit relying on
super-priority protections and the fiduciary lien framework. Decl. ¶ 77; *see infra* § III.G.

V.tal and Oi are also parties to a post-RJ-petition "Scrap Assignment Agreement," related
to a "Take-or-Pay Contract"; this is not subject to impairment in the RJ under safe-harbor rules, in
part pursuant to V.tal's agreement to support the RJ plan. *Id.* ¶ 76; *see* ECF 57 ¶ 18 (Referencing
V.tal's "commercial agreements" with Oi); Mtn. ¶ 2 n. 6 ("[U]nlike chapter 11, a debtor cannot
reject burdensome executory contracts … in a Brazilian RJ Proceeding.").

F.   **The Brazilian RJ Proceeding Continues To Actively Oversee And Administer
Oi's Judicial Restructuring In Brazil**

The Second Brazilian RJ remains active, and the docket today contains over 100,000 pages,
with countless orders issued by the RJ Court and the Court of Justice of the State of Rio de Janeiro
("RJ Appellate Court"). Decl. ¶ 80. Given the magnitude of Oi's reorganization, tens of thousands
of proofs of claims have been filed. *Id*. The Brazilian court maintains oversight through the
Trustees, a judicial Watchdog, and the Public Prosecutor's Office. Decl. ¶¶ 17, 84.

On July 1, 2025, Oi filed a motion in the Second Brazilian RJ presenting a draft amendment
to the its RJ Plan (the "Proposed Plan Amendment"), providing for material changes to certain
payment obligations. Decl. ¶ 81. On July 9, the Brazilian court held that the feasibility report on
the Proposed Plan Amendment was not sufficient to verify the Debtors' potential for recovery and
ordered the Trustees and Watchdog to comment on the Proposed Plan Amendment and on the
economic feasibility of the Debtors, taking into account the issues the court deemed to need further

clarification.  On July 15, 2025, the Court-Appointed Trustees and Watchdog filed Reports on the

Proposed Plan Amendment (the "Reports").  Decl. Exs. A-D.  The Reports concluded that Oi had

not provided evidence of payment of certain prepetition claims in accordance with the RJ Plan.

Decl. Exs. A-D.  The Reports also noted that Oi Group has stated that negotiations with Take or

Pay Creditors had been suspended in view of the Proposed Plan Amendment, and payment to

suppliers was included in the Proposed Plan Amendment.  *Id.*

The Reports also found that "as for bonuses" for senior management and directors, there

was "a substantial upward variation, almost doubling in the period between 2024 and 2025."  Decl.

Ex. B, ¶ 110.  For the Board of Directors, "the remuneration items underwent a substantial upward

variation, greater than double, in the period between 2024 and 2025."  Decl. Ex. B, ¶ 112.

On July 18, 2025, the RJ Court issued an order that did not grant Oi's requests (the "July

18 Order").  ECF 54-1 at 9-12.  The court found that Oi failed to comply with its obligations under

the RJ plan "without justification."  ECF 54-1 at 10.  The RJ Court also ordered the watchdog to

begin immediate and direct supervision from inside the company, including to "assess the veracity

of the data provided" by Oi and investigate "any abuse or fraud."  *Id.* at 8.  The court suspended

the payment of bonuses to Oi's  management and ordered comprehensive disclosure of strategic

and operational measures, financial statements, and asset valuations.  *Id.* at 8-12.  The court also

ordered that this Court be informed that the Second Brazilian RJ remains pending and that Oi had

breached its plan obligations without justification.  *Id.* at 10.

On July 23, 2025, V.tal filed an appeal seeking measures that the July 18 Order did not

grant.  Decl. ¶ 88.  V.tal argued that Oi's intention to file for Chapter 11 violates Brazilian

jurisdiction and Bankruptcy Law, which provides that the filing of an RJ vests exclusive

jurisdiction in the Brazilian court over further reorganization proceedings.  *Id.* ¶ 88-89.  V.tal

argued that Oi seeks to evade the rules and limitations of the Brazilian Bankruptcy Code so that it can file a third main reorganization process and restructure credits that the Brazilian legislature has chosen to prioritize and protect for the sake of national economic development.  *Id.* ¶ 88-89.

On July 25, 2025, Judge Costa of the RJ Appellate Court partially granted V.tal's requests (the "July 25 Brazilian Order").  ECF 56-1 at 2.  The July 25 Brazilian Order requested that this Court, "before issuing any decision in Oi Group's Chapter 15 proceeding, await . . . (i) the decision of the Brazilian Court on the verification and consequences of the previously reported non-compliance with the Plan for Court-Supervised Reorganization (JRP) and (ii) the request for amendment of the JRP in the main proceeding underway in Brazil."  *Id.* at 17.  This request was made "in order to preserve legal certainty and the authority of the national jurisdiction, while respecting the sovereignty of the countries involved and the harmonization of the cross-border legal system."  *Id.*  Judge Costa found that "[t]here is no doubt ... that the entire operational activity of the OI Group is located in Brazil."  *Id.*  Judge Costa also stated that "the prevalence of Brazilian jurisdiction in this case is also supported by the legal interests involved, which are strongly linked to issues of public order, the provision of a public communication service, social issues and the social function of the Oi Group, including obligations before the TCU [Brazil's Budget Oversight Court] and public bodies at various levels of the Brazilian national federation."  *Id.*  Judge Costa added that "there is no judicial pronouncement by this jurisdiction agreeing to the initiation of other proceedings involving the restructuring of OI Group in other jurisdictions."  *Id.* at 18.

### G.   <u>Applicable Brazilian Law And Practices</u>

Brazilian Bankruptcy Law governs insolvency proceedings in Brazil.  Under Brazilian law, claims arising from facts that occurred prior to filing are subject to an RJ, except for those excluded under "safe harbor" provisions.  Decl. ¶ 14.  Safe harbor provisions include claims secured by fiduciary sales (sometimes called "fiduciary liens") and certain other contracts, among others.  *Id.*

11

¶¶ 14-16, 79.  Post-petition claims are not affected by the RJ Plan.  *Id*.  Brazilian law was substantially modified on December 24, 2020 to introduce reforms to encourage post-petition financing.  Decl. ¶ 15.  Post-petition financing entered to aid in the debtor's recovery enjoys priority over all pre-petition and other post-petition claims in a future liquidation, with limited exceptions, which include essential administrative expenses and emergency labor claims (the "super-priority"). Decl. ¶ 39.  Brazilian Bankruptcy Law provides that debtors are prohibited from filing for a new RJ proceeding within five years from the confirmation of a plan of reorganization under a previous RJ proceeding.  Decl. ¶ 21. This provision reflects the presumption that companies repeatedly requiring reorganization remedies are not economically viable. *Id*.

Under Brazilian law, a fiduciary sale is a transaction in which the debtor assigns title and indirect possession of certain assets, to secure a payment obligation.  Decl. ¶ 28.  Claims secured by fiduciary liens cannot be impaired pursuant to Brazilian Bankruptcy Law (but enforcement is not permitted during the stay).  *Id*. ¶ 32.  This protection reflects a policy decision to foster access to credit by ensuring protection to creditors who provide financing backed by fiduciary collateral. *Id*. ¶¶ 32-33.  Market participants understand that fiduciary liens cannot be impaired through a RJ Plan, and this expectation has become a commercial standard, shaping financing practices and contractual risk allocation.  *Id*. ¶ 33.  Market participants also understand that post-petition financing cannot be impaired for at least five years after confirmation of an RJ plan.  *Id*. ¶ 41.

## IV.  <u>ARGUMENT</u>

### A.  <u>Termination Should Be Denied Under The Governing Statute, Section 1517(d)</u>

Oi's motion should be denied because it fails to establish each of the two requirements for termination of Chapter 15 recognition.  ***First***, termination may ***only*** be granted if the "grounds for granting [recognition] were fully or partially lacking or have ceased to exist," as required by 11 U.S.C. § 1517(d).  Oi asserts that the "grounds for granting" recognition" "ceased to exist" (Mtn.

¶ 45), but Oi does not even ***address*** any of the statutory grounds for granting recognition, let alone satisfy its burden to show that any such grounds have ceased to exist.  Mtn. ¶¶ 44-47.  Oi's motion should be denied on this basis alone.  ***Second***, even if the Court were to find that the first requirement were met, Oi cannot show that the Court should exercise its discretion to terminate, giving "due weight to possible prejudice to parties that have relied upon the order granting recognition," as required.  11 U.S.C. § 1517(d).  Exercising discretion to terminate under the facts here would contravene Section 1517(d), case law, and the purposes of Chapter 15 because it would prejudice parties, like V.tal, that relied on Chapter 15 recognition to extend post-petition credit to Oi, and it would severely violate principles of comity by usurping from Brazilian courts oversight of an extensive, lengthy restructuring proceeding for a Brazilian company.

Section 1517(d) is the "controlling authority for a request to modify or terminate a prior order of recognition."  *In re Oi Brasil Holdings*, 578 B.R. at 198; *see In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 167 (Bankr. S.D.N.Y. 2019).  It provides:

> The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition.

11 U.S.C. §1517(d).  Section 1517(d) thus sets forth a two part test for termination.  ***First,*** the movant ***must*** show either that that the grounds for recognition "were fully or partially lacking" or that such grounds "have ceased to exist."  *See Foreign Econ.*, 607 B.R. at 172.  ***Second***, if (and only if) a court determines that the grounds for recognition were lacking or ceased to exist, a court may, in its discretion, terminate, but it must give "due weight to possible prejudice to parties that have relied upon the order granting recognition."  11 U.S.C. § 1517(d); *Oi Brasil*, 578 B.R. at 198; *Foreign Econ. Indus. Bank* , 607 B.R. at 172.  The moving party bears the "burden of proof to

13

establish that the Petition for Recognition should not have been granted, or that there has been a change that would warrant termination of the recognition." *In re Estrategias en Valores, S.A.*, 601 B.R. 550, 556 (Bankr. S.D. Fla. 2019), *aff'd,* 2020 WL 13614259 (S.D. Fla. Apr. 13, 2020).  Here, Oi has failed to satisfy its burden as to either part of the test.

      **1.**    **Oi Fails To Establish The Statutory Prerequisite To Termination Because It Fails To Show That Any Ground *For Recognition* Has Ceased To Exist**

Oi's motion should be denied because Oi fails to show that "the grounds for granting [recognition] were fully or partially lacking or have ceased to exist" (11 U.S.C. § 1517(d)); in fact, Oi fails to even address any of the three statutory grounds for recognition.  Mtn. ¶¶ 44-47.  Section 1517(a) sets forth the only three statutory grounds for recognition.  *See Oi Brasil*, 578 B.R. at 194 ("Recognition is mandatory if all three requirements of Section 1517(a) are met."); *Foreign Econ. Indus. Bank*, 607 B.R. at 168.  Oi addresses no statutory ground for recognition nor how any such ground has allegedly changed since the time of recognition.  Mtn. ¶¶ 44-45.

The three statutory grounds for recognition are as follows:

> **(a)** Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if--
> > **(1)** such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
> > **(2)** the foreign representative applying for recognition is a person or body; and
> > **(3)** the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).  The grounds for recognition are applied objectively and formulaically: if each is met, recognition is to be granted.  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008); *Oi Brasil*, 578 B.R. at 214.  They apply both when assessing a motion for recognition and a motion to terminate recognition.  *See In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 335 (Bankr. S.D.N.Y. 2014); *Foreign Econ. Indus. Bank*, 607 B.R. at 173.

Because Oi fails to show that any of the grounds for recognition have ceased to exist, Oi's motion should be denied. The first ground for recognition has not ceased to exist because the Second Brazilian RJ remains ongoing, as Oi recognizes, and is also stated in the July 25 Brazilian Decision. *See* 11 U.S.C. 1517(a); Mtn. ¶¶ 1-3; ECF 56-1 at 2-4. The second ground for recognition has not ceased to exist because "the foreign representative applying for recognition is a person or body." 11 U.S.C. 1517(a)(2); Mtn. p. 1. The third ground for recognition has not ceased to exist because "the petition meets the requirements of section 1515." 11 U.S.C. 1517(a)(3). None of the requirements of Section 1515, which generally concern requirements for the petition, have changed since recognition. *See* Mtn. ¶¶ 44-47. Oi offers no argument to the contrary.

Oi's argument that grounds for recognition have "ceased to exist" addresses only irrelevant facts. Mtn. ¶¶ 44-46. Oi asserts that "[a]ll measures associated with the Brazilian RJ Plan that required relief by this Court under the Bankruptcy Code … have been fully implemented." Mtn. ¶ 45. This is irrelevant and untrue. The "foreign proceeding" ground for recognition remains extant because the RJ Plan is far from implemented. *See In re Zhejiang Topoint Photovoltaic Co., Ltd.*, 600 B.R. 312, 319-20 (Bankr. D.N.J. 2019) (denying motion to terminate because "the Foreign Main Proceeding does continue to qualify as a foreign proceeding"); Decl. ¶ 74; ECF 56-1 at 2-4. For example, Oi's proposed plan amendment remains pending (Decl. ¶ 87); Oi has not made required plan payments (*id.* ¶ 85); and UPI V.tal remains to be sold (Mtn. ¶ 24). Oi's assertion is also untrue at least because an RJ court requested relief from this Court. ECF 56-1 at 16-17. Oi also asserts "[a]dditional circumstances exist to justify the requested relief," but such circumstances are irrelevant to Section 1517(d) and Oi does not show otherwise. Mtn. ¶ 46.

As in *Cozumel*, termination is improper here because Oi "has not shown that the Court's grounds for granting recognition have ceased to exist," and Oi's "[d]issatisfaction" with the results

abroad does not entitle it to "invalidate or circumvent proceedings in the [foreign] courts" because

such dissatisfaction "does not implicate the Recognition Order." *In re Cozumel*, 508 B.R. at 336;

*see also Foreign Econ. Indus. Bank*, 607 B.R. at 173 (denying motion to vacate recognition

because "the three prongs of section 1517(a) were satisfied"); *Oi Brasil*, 578 B.R. at 221.

### 2. Even If Oi Could Meet The Statutory Prerequisite, The Court Should Decline To Terminate, In Its Discretion

Oi's motion should be denied because it fails to show that the grounds for termination have

"ceased to exist"; however, even if it could make such a showing, the Court should still deny Oi's

motion in its discretion (1) because termination would "prejudice . . . parties," including post-

petition creditors like V.tal, that have "relied upon the order granting recognition" (11 U.S.C.

1517(d)); (2) because termination would offend the principles of comity and international

cooperation that underpin Chapter 15; and (3) because Oi's strategy is fatally flawed and futile:

even if termination is granted, a newly-commenced Chapter 11 filing cannot reach Oi's assets in

Brazil, and Oi most likely cannot legally impair in the U.S. the key debts it seeks to restructure.

### (a) Termination Is Inappropriate Because "Parties That Have Relied Upon" Recognition Would Be Severely Prejudiced

Oi's motion should be denied because the Court is required to "give due weight to possible

prejudice to parties that have relied upon the order granting recognition" (11 U.S.C. § 1517(d)),

and termination would severely, and unjustifiably, prejudice creditors like V.tal that entered post-

RJ financing with Oi. *See In re: Comair Ltd.*, 2023 WL 1971618, at *9 (Bankr. S.D.N.Y. Feb. 12,

2023); *In re Loy*, 2011 WL 2619253, at *3 (Bankr. E.D. Va. July 1, 2011) ("Any final decision by

the Court that … terminates … the Recognition Order shall examine the rights of parties in interest

potentially prejudiced by termination or modification of the Recognition Order.").

Although the Court "*shall*" consider possible prejudice from termination, Oi offers only a

conclusory assessment of such  prejudice; thus, Oi fails to satisfy its burden and its motion should

16

be denied.  *See* Mtn. ¶¶ 5, 47.  Oi suggests that there would be no such prejudice because "[n]one of the relief requested is retroactive" (Mtn. ¶ 5), but Oi admits that this is false because it seeks to achieve, through termination, new powers to discharge Oi's already-incurred obligations.  *See* Mtn. ¶ 33.  Oi also asserts that "no creditor will be negatively impacted by termination of the Recognition Order" (Mtn. ¶ 47), but this assertion is unsupported by evidence or any explanation.

Termination is unwarranted because it would impose massive, unjustifiable prejudice on parties, like V.tal, that extended credit to Oi in reliance "upon the order granting recognition."  11 U.S.C. § 1517(d).  Such prejudice is apparent from Oi's motion itself.  Oi concedes that "post-petition" debts cannot be restructured under Brazilian law.  Mtn. ¶¶ 2, 33; s*ee* Decl. ¶ 76.  Oi also concedes that "[c]laims secured by fiduciary liens … cannot be restructured in the Brazilian RJ Proceeding."  Mtn. ¶ 33; *see* Decl. ¶ 36.  This Court entered its Recognition Order on March 29.  ECF 30, Mtn. ¶ 14.  "[O]n May 28, 2024, the Brazilian RJ Court entered the order confirming the Brazilian RJ Plan."  Mtn. ¶ 12.  This Court entered its Full Force And Effect Order on June 17, 2024, in which the Court held: "Nothing in this Order shall limit or impair the … future rights of holders … of debt or equity issued in accordance with the Brazilian RJ Plan or the Post-petition Transaction Documents, ***which instruments and obligations … shall be enforceable obligations of the Chapter 15 Debtors that are not subject to any modification or override except in accordance with their express terms***."  ECF 42 at p. 14 (emphasis added); Mtn. ¶ 15.

In reliance on this Court's Recognition Order and Full Force And Effect Order (and the resulting understanding that Oi's bankruptcy would be governed by the Brazilian RJ, under Brazilian law, such that post-petition debts could not be immediately restructured and fiduciary sales could not be restructured), V.tal extended over BRL 750 million in financing to Oi via V.tal's debentures and agreed to restructure other post-petition debts in support of Oi's RJ.  *See* Mtn. ¶¶

17

19-20; Decl. ¶ 71.  V.tal also entered post-petition contracts with Oi.  *See supra* § III.E.  These claims are also not dischargeable (under safe harbor rules in Brazil and, thus, under Chapter 15) and would be impaired by termination.  Decl. ¶ 76.  Further, "V.tal has negotiated the creation of the Collateral in the form of a fiduciary lien to secure V.tal's Debentures."  Decl. ¶ 77. Oi seeks to circumvent Brazilian law and the RJ and discharge these debts via a Chapter 11 (Mtn. ¶ 33), even though they could not be discharged in the RJ.  *See* Mtn. ¶ 33; Decl. ¶ 89.

V.tal would thus suffer exactly the "prejudice" that the Court "shall" consider because Oi seeks to impair, though termination (followed by a Chapter 11 filing), debts to V.tal that are not dischargeable so long as the Chapter 15 recognition remains in place.  After this Court entered its Chapter 15 recognition order, V.tal understood that the Second Brazilian RJ, governed by Brazilian law, would govern its potential provision of credit to Oi, and thus, under Brazilian law, such credit would not be subject to restructuring for at least "five years [from] RJ plan confirmation" and that claims secured by fiduciary liens could not be restructured at all (or otherwise protected under the RJ).  Mtn. ¶ 33; Decl. ¶¶ 71, 76, 77.  Terminating the Chapter 15 recognition would, in effect, nullify the binding Brazilian bankruptcy laws which were a central premise upon which V.tal extended Oi post-petition credit and restructured other claims.  Oi thus seeks to use termination precisely to prejudice creditors like V.tal.  The Court should decline to terminate recognition due to the massive scale of such prejudice, which Oi fails to address.

Further, because this Court has already granted recognition to the Second Brazilian RJ, this Court should defer to the judgment of the RJ courts in determining whether, how, and to what extent discharging Oi's debts via a Chapter 15 termination and a Chapter 11 filing would prejudice the respective creditors.  ECF 30; 42.  The assertions that Oi made in 2017 apply equally here:

> The very purpose of commencing the various proceedings outside of Brazil …was
> to centralize the restructuring of the Oi Group around the Brazilian RJ Proceeding.

… [T]ermination of the Recognition Order would prejudice any and all parties that negotiated in good faith following the entry of the Recognition Order and have since relied on this order in developing their litigation and investment strategies ….

*In re Oi Brasil*, No. 17-11888 (Bankr. S.D.N.Y. Oct. 6, 2017), ECF 121-1 at ¶ 92.

       (b)    <u>Termination Is Inappropriate Because Usurping Brazil's Proper Oversight Over Oi's Bankruptcy And Plan In Brazil Would Deeply Violate The Notions Of Comity And International Cooperation That Underpin Chapter 15</u>

This Court should also decline to exercise its discretion to terminate because allowing Oi to terminate and file a "plenary" Chapter 11 proceeding (Mtn. ¶ 37) would enable an outrageous and inappropriate usurpation by Oi, through United States courts, of the Brazilian courts' extensive, ongoing administration of Oi's bankruptcy, in contravention of the notions of comity and international cooperation that underlie Chapter 15. *See* 11 U.S.C. § 1501; *Oi Brasil*, 578 B.R. at 212 ("American courts have long recognized the importance of comity particularly in the bankruptcy context because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding.") (cleaned up); Decl. ¶ 74; *cf. In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (noting that relief after recognition "is largely discretionary and turns on subjective factors that embody principles of comity").

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Altos Hornos*, 412 F.3d at 423 (internal citation omitted).

Principles of comity dictate that this Court should defer to the Brazilian RJ and not terminate recognition of such proceeding. "U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding. Since [t]he equitable and

orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding, American courts regularly defer to such actions."  *Id.* at 424 (citation and internal quotation marks omitted)); *see also In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 624 (Bankr. S.D.N.Y. 2010) ("The Second Circuit has frequently underscored the importance of judicial deference to foreign bankruptcy proceedings.").  Oi has identified no relevant exception to these principles.  *See generally* Mtn. ¶¶ 39-59.   As Oi's foreign representative put it, "recognition of the Brazilian Proceeding as the foreign main proceeding follows the dictates of Chapter 15 to foster comity and cooperation between this Court and the Brazilian Bankruptcy Court with the ultimate goal of an orderly judicially-supervised reorganization and an efficient administration of the Chapter 15 Debtors' assets."  ECF 3 (Petition for Recognition) ¶ 93.  This Court granted Oi's request for comity to the Brazilian RJ Plan.  *See* FFE Order (ECF 42) p. 8.

Oi's motion should be denied because Oi now explicitly seeks to **subvert**, rather than **further**, principles of comity through its effort to terminate.  Oi seeks to circumvent applicable, binding Brazilian law in the RJ by restructuring, in the United States, claims that cannot be restructured in the RJ under Brazilian law, simply because it has decided that it would be more economically advantageous for it to adopt U.S., rather than Brazilian, bankruptcy law.  *See* Mtn. ¶ 2 ("[A] considerable portion of the RJ Debtors' current debt obligations … cannot be restructured because they were either created post-petition or are excluded from RJ proceedings under Brazilian law. … Thus, the Oi Group has determined that … the filing of chapter 11 cases in the United States may also be necessary to achieve a holistic restructuring"); *id.* ¶¶ 33, 37, 39, 46-47.

Oi's motion violates a number of crucial principles of comity, including (1) deference to foreign law, where foreign interests predominate and (2) deference to an ongoing foreign bankruptcy proceeding.  *See In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1053

(2d Cir. 1996) ("[C]omity argues decidedly against the risk of derailing … cooperation [of parallel bankruptcy proceedings] by the selfish application of our law to circumstances touching more directly upon the interests of another forum."); *In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. at 337 ("To inquire into a specific foreign proceeding …   necessarily undermines the equitable and orderly distribution of a debtor's property by transforming a domestic court into a foreign appellate court where the creditors are always provided the proverbial 'second bite at the apple.'") (internal citation omitted).   Oi's complaints about the treatment of its debts in Brazil do not warrant termination because the RJ is entitled to deference while it actively oversees Oi's bankruptcy.   *See Cozumel*, 508 B.R. at 337 ("[T]his Court will not withdraw recognition because of the [Mexican] Court's treatment of the [creditor's] claim, particularly since any decisions made in the [Mexican] Proceeding may be subject to further proceedings in the Mexican courts."); *see* Decl. ¶ 74.

Crucially, the provisions of Brazilian bankruptcy law that Oi seeks to cast aside, through U.S. courts, are some of the same provisions that have allowed a meaningful debtor-in-possession financing market to recently emerge in Brazil.  Decl. ¶ 42.  If this Court permits Oi to nullify these laws, as it seeks to, the DIP financing market in Brazil will be weakened, to the detriment of Brazil's businesses and its economy, because potential financers would lose confidence in the protections provided to DIP financing under Brazilian law.  Decl. ¶ 42.  One could imagine what would happen to U.S. DIP financing if, while a Chapter 11 case was pending, a debtor could ask a foreign court to intervene and restructure it, but that is exactly what Oi is asking to do here.

Further, comity weighs against Oi's proposal because Brazilian law would not permit the restructuring via Oi seeks.  *See* Report of Daniel Carnio Costa (Decl. Exs. E and F) ¶ 138 ("[I]t is not possible for the Brazilian court to recognize any restructuring proceeding before the U.S. jurisdiction, based on Chapter 11 …, as such an initiative constitutes a manifest affront to national

public policy, by violating fundamental rules of the Brazilian legal system."). Oi's motion itself is prohibited by the Brazilian RJ plan (which was given full force and effect by this Court, ECF 42 p. 8.). Specifically, the RJ plan provides: "the Companies under Reorganization undertake to adopt the measures that are within their reach and are necessary for this Plan to be recognized as effective, enforceable and binding in the applicable foreign jurisdictions . . ." ECF 38-1. By seeking to evade the RJ plan through its motion, Oi is impermissibly adopting measures that **undermine**, rather **render enforceable**, the RJ plan. *See* Mtn. ¶¶ 2, 37. Further, allowing Oi to terminate to escape the Brazilian RJ's scrutiny of Oi's potential wrongdoing in the Brazilian RJ would violate principles of comity. In the July 18 ruling, the Brazilian court ruled that Oi had failed to comply with its obligations under the RJ plan, "without justification," and the court ordered that a watchdog be appointed "due to evidence of inappropriate information provided by the Recovering Party," including to assess any "abuse or fraud." ECF 54-1 at 8-10.

Oi's efforts to have a U.S. court oversee Oi's restructuring would also offend principles of comity by imposing U.S. oversight over Brazilian regulatory authorities, tax authorities, and core public infrastructure services in Brazil. *See* ECF 56 at 16 (Reporting Justice in the RJ stating: "[T]he legal interests involved [in the RJ] … are strongly linked to issues of public law, the provision of a public communication service, social issues and the Oi Group's social function, including its obligations to … public bodies on various levels of the Brazilian federation."). Brazilian regulatory authorities are a relevant stakeholder of the Oi Group and have been deeply involved in negotiations with Oi during its RJs. Decl. ¶ 62. Imposing U.S. oversight of these Brazilian government bodies and functions would offend comity, as would exempting only such public claims from any holistic restructuring in the U.S. *See Altos Hornos*, 412 F.3d at 424.

Principles of comity further weigh against termination because Oi seeks to restructure Brazilian debts that could not be restructured were the case originally filed in the U.S. Oi seeks to evade its post-RJ-petition debts by running to New York to file a new Chapter 11, but a U.S. company could not escape its analogous post-Chapter 11-petition administrative claims by filing a new Chapter 11 petition in a different state. *See In re Kuvykin*, 2019 WL 989414, at *6 (Bankr. S.D.N.Y. Feb. 26, 2019) (noting that debtors may not dismiss Chapter 11 proceedings as a matter of course and that courts must assess whether a debtor may dismiss a chapter 11 proceeding). Oi seeks a different result here, by contending that it can evade post-petition debts by running across an international border instead of a state border. Because avoiding administrative claims by filing a sister bankruptcy petition within a country is permitted by neither Brazilian nor U.S. law, allowing Oi to pursue its plan to discharge such claims by filing a parallel bankruptcy petition in a different country (in the United States) would respect the legal system of neither country and would thus violate principles of comity. Similarly, Oi should not be permitted to evade the RJ plan without consent of affected creditors, like V.tal, because such an approach is not even permitted under U.S. law. *Cf. Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) (debtor cannot use dismissal to evade the distribution priorities imposed by applicable bankruptcy law).

(c)    Termination Is Inappropriate Because Termination Cannot Achieve Oi's Aims

The Court should also decline to exercise any discretion to terminate because termination cannot achieve what Oi seeks to accomplish. **First**, termination would not expand the territorial reach of any forthcoming Chapter 11 case. The explicit purpose of Oi's motion is to escape Section 1528, which, according to Oi, "provides that a chapter 11 case filed after the recognition of a 'foreign main proceeding' does not extend to property outside the territorial jurisdiction of the United States that remains subject to the jurisdiction of the foreign court." Mtn. ¶ 3. According

23

to Oi, "dismissing the Chapter 15 Cases will render section 1528 of the Bankruptcy Code ineffective to a subsequent plenary chapter 11." Mtn. ¶ 53 n. 30.  This is incorrect.  Section 1528 applies to a "case under another chapter of this title" commenced "[a]fter recognition of a foreign main proceeding."  Thus, Section 1528 applies to any Chapter 11 case commenced **after** recognition, regardless of whether such recognition is terminated.  Oi argues that Section 103(l) indicates otherwise because it "provides that … chapter 15 'applies only in a case under such chapter.'" Mtn. 53 n. 30.  Not so.  Section 1528 expressly states that it applies to "a case under another chapter of this title."  Oi concedes that Section 1528 applies to a Chapter 11 case before a Chapter 15 recognition is terminated.  Section 103(l) thus does not nullify Section 1528 **before** termination, and Oi points to nothing that negates Section 1528 if recognition is terminated.

Second, termination would not enable Oi to restructure its unwanted debts.  For example, Oi suggests that it may seek to restructure "[c]laims secured by fiduciary liens" in a Chapter 11 case, and V.tal holds such liens.  *See* Mtn. ¶ 33; Decl. ¶¶ 69, 74, 86.  According to Oi's declarant: "A fiduciary lien is a form of security interest under which the lender is determined to be the legal title owner of the asset collateral securing its claim until the debt or obligation has been satisfied by the borrower."  Declaration of Paulo Caili Franco Padis ("Padis Decl.") ¶ 21 ECF 47; *see* Decl. ¶ 28.  Because the fiduciary lien collateral is not owned by Oi, it is not subject to restructuring under Brazilian law.  Decl. ¶ 32; Mtn ¶ 33.  The result would no different in a Chapter 11 case (and Oi does not show otherwise), both because the liens would still be subject to Brazilian law and because U.S. law would reach the same result.  *See In re Air Vt., Inc.*, 40 B.R. 323, 328 (Bankr. D. Vt. 1984); *In re Jason Realty, L.P.*, 59 F.3d 423, 427 (3d Cir. 1995) (enforcing absolute assignment to creditor, holding "[a] federal court in bankruptcy is not allowed to upend the

property law of the state in which it sits"). Thus, Oi's plans would either improperly impose massive prejudice on V.tal, or they would be ineffective. Either way, Oi's motion should be denied.

**B.**   **Oi's Arguments For Termination Under Provisions Other Than Section 1517(d) Fail Because They Are Irrelevant**

Section 1517(d) sets forth the exclusive test for terminating a Chapter 15 recognition, and courts consistently hold that other rules and statutes are irrelevant to termination because they do not supply the applicable standard. *See In re Oi Brasil*, 578 B.R. at 198 (Section 1517(d) is "the controlling authority for a request to modify or terminate a prior order of recognition."); *supra* § III.A. Nevertheless, Oi argues its motion should (or could) be decided under five other standards, presumably because Oi recognizes that it loses under the applicable standard. *See* (1) Mtn. ¶ 44 n. 28 (Rule 60(b)); (2) *id.* ¶ 49 (11 U.S.C. § 1507(b)); (3) *id.* ¶ 50 (11 U.S.C. § 105(a)); (4) *id.* ¶ 53 (11 U.S.C. § 305(a)); (5) *id.* ¶ 53 (11 U.S.C. § 1521(a)). "Multiplicity hints at lack of confidence in any one." *Jones v. Barnes*, 463 U.S. 745, 752 (1983) (internal citation omitted).

Oi's efforts to seek termination on grounds other than Section 1517(d) should be rejected because such other grounds do not apply. Oi has tried this gambit before, in this district, and the court refused to accept it. In 2017, in ***opposing*** a Chapter 15 termination, Oi sought to apply "a higher hurdle" than Section 1517(d) by asserting that Rule 60(b) applies. *Oi Brasil*, 578 B.R. at 197. The Court declined Oi's invitation. *Id.* at 203 ("[S]ubsection [1517](d) provides the standard for a request to terminate … recognition—a discretionary standard that examines where there was a mistake in the initial grant of recognition or has been a subsequent change in circumstances. As such, there is no need for Rule 60(b) to fill a gap in the statutory standard."); *see also Foreign Econ. Indus. Bank*, 607 B.R. at 167. Rule 60(b) does not apply for the same reasons here.

Now, Oi is in the opposite position—it seeks, rather than opposes, termination—and it seeks to apply a bevy of ***lower*** standards for termination. These efforts all fail. Oi's attempt to

apply 11 U.S.C. § 105(a) (Mtn. ¶¶ 50-52) fails because "Section 105(a) only contemplates exercise

of the granted discretion when *appropriate*," and "[u]nder Section 105(a), the standard for

appropriate action is whether the exercise of discretion would contravene another section of the

Bankruptcy Code." *Oi Brasil*, 578 B.R. at 201.  If termination should not be granted under the

governing statute—Section 1517(d)—then it would contravene such statute to exercise any

discretion under Section 105(a) to grant termination.  Thus, Section 105(a) does not apply to

determine Chapter 15 termination.  *See id.* ("Section 105(a) cannot be used to 'override explicit

mandates of other sections of the Bankruptcy Code.'") (internal citation omitted).

Similarly, Section 1507(b) does not apply because it is "[s]ubject to the specific limitations

stated elsewhere in this chapter"; here, Section 1517(d) limits termination.  *Comair,* 2023 WL

1971618, at *9 ("[Section 1517(d)] limits the Court's exercise of such discretion. . .").

Section 305 also does not apply because "section 305 is not applicable in a case under

chapter 15." *In re Brit. Am. Ins. Co. Ltd.*, 488 B.R. 205, 239 (Bankr. S.D. Fla. 2013); *id.* ("There

is no provision in federal law allowing a federal court to abstain from an entire Chapter 15 case.

Nor is there any provision in federal law permitting abstention from matters arising under chapter

15 or arising in a chapter 15 case.").  Even if Section 305 could apply to a Chapter 15 case, it does

not provide the standard for termination because Section 1517(d) does.  *See Estrategias*, 601 B.R.

at 553-54 (stating, where debtor sought to terminate Chapter 15 recognition under Section 305(a),

"[t]he relief the Debtor actually appears to have sought in the Motion to Terminate is set forth in

11 U.S.C. § 1517(d)"); *see also Oi Brasil*, 578 B.R. at 215.

Section 1521(a) (Mtn. ¶ 53) also does not apply to a motion to terminate.  Oi contends that

Section 1521(a) "provides the Court with 'exceedingly broad' discretion" that empowers the Court

to dismiss a Chapter 15 case under Section 1521(a)(7).  Mtn. ¶ 53.  Oi is wrong, because such a

reading would be inconsistent with the standard in Section 1517(d) and because the examples in Section 1521(a)(1)-(6) are not similar to dismissal. *See Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 217 (2024) ("When faced with a catchall phrase like that, courts do not necessarily afford it the broadest possible construction it can bear... Instead, we generally appreciate that the catchall must be interpreted in light of its surrounding context and read to 'embrace only objects similar in nature' to the specific examples preceding it.") (internal citation omitted). Further, Section 1521 provides that certain relief may be granted "where necessary to effectuate the purpose of this chapter." 11 U.S.C. § 1521(a). Granting termination under Section 1521(a) when it is prohibited by Section 1517(d) would ***contravene***, and not "***effectuate***" the purpose of Chapter 15 because it would negate the requirements for termination.

### C. Oi's Unsupported Factual Assertions Present An Insufficient Evidentiary Record To Warrant Termination

Oi's motion should also be denied because Oi has presented insufficient evidence to carry its burden on its motion. *See In re Loy*, 2011 WL 2619253, at *3 ("The Court will only consider terminating recognition on a fully articulated record because the rights of third parties are implicated."). Instead, Oi seeks relief based on assertions of fact that are unsupported, speculation, hearsay, *ipse dixit*, and in some case clearly false; this Court should not credit such assertions.

As discussed above, termination here depends on two sets of facts. ***First***, Oi must show that the "grounds for granting [recognition] . . . have ceased to exist" (11 U.S.C. 1517(d); Mtn. ¶¶ 44-45), and the grounds for granting recognition are set forth in Section 1517(a)(1-3). Oi has set forth evidence about none of these grounds; indeed, it has said nothing at all about how they have ceased to exist, and it has refused to produce any discovery regarding them. *See supra* § III.A. Thus, Oi's motion fails for lack of factual support. ***Second***, if (and only if) Oi can satisfy the first requirement, Oi must then also show that the Court should exercise its discretion to terminate,

giving "due weight to possible prejudice to parties that have relied upon the order granting recognition." 11 U.S.C. § 1517(d). Oi's lawyers make conclusory assertions, again and again, about how such prejudice will not exist, but they cite no facts to support such assertions. *See, e.g.*, Mtn. ¶ 5 ("[C]reditors and other stakeholders who have relied on the Recognition Order and the Chapter 15 Cases will not be prejudiced."); *see also* Mtn. ¶¶ 4 n. 11, 47, 56, 57. Oi has thus failed to make the required factual showing of a lack of possible prejudice and thus its motion should be denied. *See contra* Decl. ¶¶ 33-37. Further, Oi's lawyers assert that their plan is factually good because they contend that the only alternative, a judicial liquidation proceeding (a "*falência*") is factually bad. Mtn. ¶¶ 2, 34-35, 39, 47, 51, 56-57. But Oi offers no credible factual record to support these assertions. Oi cites its lawyer's declaration, and he asserts that a *falência* would be bad based on his say-so, without citing any empirical evidence to support his empirical claims, and without establishing that he is an expert in assessing such empirical claims. *See* Padis Decl. ¶¶ 14-19. Thus, these facts about a *falência* should not be credited. *See contra* Decl. ¶¶ 51-58.

Finally, Oi presents only conclusory, inadmissible hearsay regarding the Brazilian court's purported position with respect to its motion, and such hearsay should be disregarded. *See supra*, 4-5. Oi's lawyers repeatedly assert that "the Brazilian RJ Court is supportive of a parallel chapter 11 filing" (or the like). *See* Mtn. ¶¶ 4, 37, 40, 55. The declaration footnote that Oi cites for this proposition states, in full: "On June 11, 2025, the Company's representatives and counsel discussed this possibility with the Brazilian RJ Court and the reporting Justice from the Court of Appeals, and the judges expressed support for the strategy." Milliet Decl. ¶ 24 n. 6, ECF 48. The basis for Mr. Milliet's hearsay footnote is entirely unclear: no public record of the discussion exists, and the Court should disregard it. Further, after the alleged discussion, both of the judges referenced—the Brazilian bankruptcy judge and the Reporting Justice—issued decisions in which

they directed the decisions be provided to this Court, yet neither expressed support for Oi's plan. ECF 54-1 and 56-1. And the Reporting Justice disagreed with Mr. Milliet's assertion of "support." ECF 56-1 at 16 ("[C]onsidering that we are in the period of sovereignty of Brazilian jurisdiction and that the approved plan has not been fully implemented by the Reorganization Debtors, it must be concluded … that the measure brought before the Foreign [New York] Court could have a direct impact on the credits restructured in the present court-supervised reorganization."); *id* at 17 ("[T]here is no judicial pronouncement by this jurisdiction agreeing to the initiation of other proceedings involving the restructuring of OI Group in other jurisdictions.").

To the extent the Court seeks to determine the position of the Brazilian Court on Oi's motion, the Court should ask it, as permitted by Chapter 15. *See* 11 U.S.C. § 1525(b); *In re Zhejiang*, 600 B.R. at 315–16 (noting that the court had "authority to contact the Foreign Court"). Such communications are not prohibited by Brazilian law. Decl. ¶ 46.

### D.   Oi's Proposed Order Should Be Rejected Because It Would Grant Relief That is Beyond The Scope Of Oi's Motion And Would Impermissibly Grant Oi Inconsistent Rights

The order proposed by Oi with its motion should be rejected because the order is inconsistent with the motion and would improperly grant Oi a hodgepodge of inconsistent rights. *See* Mtn. p. 27 and Exhibit A (ECF 46-1) ("Proposed Order"). Oi's motion seeks only two specific forms of relief: termination of the Chapter 15 recognition and dismissal of the Chapter 15 cases. *See, e.g.*. Mtn. p. 1. These two forms of relief are ultimately the same: they are governed by 11 U.S.C. 1517(d). *See Estrategias*, 601 B.R. at 553. The "Basis For Relief" section of Oi's brief addresses only termination or dismissal. Mtn. ¶¶ 44-59. Nevertheless, Oi improperly proposes an order that grants Oi additional relief that was not the subject of Oi's motion.

*First*, Oi asks the Court to order that the rights of the "Chapter 15 Debtors . . . shall not be. . . impaired under any section of the Bankruptcy Code, including, but not limited to section

1528, in any subsequent case or proceeding in the United States." Proposed Order ¶ 3. This cryptic language apparently calls for the Court to render an advisory opinion on an issue not before the Court: whether Oi is correct that "dismissing the Chapter 15 Cases will render section 1528 of the Bankruptcy Code ineffective to a subsequent plenary chapter 11 case." Mtn. ¶ 53 n. 30. No plenary Chapter 11 case exists (and it may never exist), and thus the effect of Section 1528 on such a case is not a live controversy that should be addressed by this Court. *See Malkentzos v. DeBuono*, 102 F.3d 50, 55 (2d Cir. 1996); Mtn. ¶ 55 (noting contingencies that would occur "*if* the Company elects to pursue a future chapter 11") (emphasis added). To be sure, Oi's interpretation of the statute is incorrect. *See supra* § III.A. But the Court should not reach this purely legal and theoretical question because it is not before the Court.

*Second*, Oi asks the Court to order that the termination order "shall not in any way retroactively nullify or otherwise affect the events that occurred after this Court's entry of the FFE Order…." Proposed Order ¶ 4. This cryptic language appears designed to allow Oi to improperly maintain the force of the Chapter 15 recognition—including, for example, its insider releases—while simultaneously abandoning it, likely to allow it to pick and choose the regime that will govern each of its obligations: perhaps it would opt for the regime of Chapter 15 recognition for one claim but opt for contrary U.S. law for another. Granting Oi such inconsistent rights would be unfair and impossible to administer. The Court should thus decline to include paragraphs 3-4 of the Proposed Order in any termination order.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Oi's motion should be denied in its entirety.

Dated:  July 30, 2025
      New York, New York

**Quinn Emanuel Urquhart &
Sullivan, LLP**

*/s/  Benjamin Finestone*
Michael Carlinsky
Benjamin Finestone
Mario O. Gazzola
Jeremy Baldoni
Lindsay Weber
295 5th Avenue, 9th Floor
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
mariogazzola@quinnemanuel.com
jeremybaldoni@quinnemanuel.com
lindsayweber@quinnemanuel.com
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

K. John Shaffer (*pro hac vice* application
pending)
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017
johnshaffer@quinnemanuel.com
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel to BGC Fibra Participações S.A. and
V.tal – Rede Neutra de Telecomunicações S.A.*