WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
Claire M. Campbell (*pro hac vice* pending)
David Kim
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | )   Case No. 23-10193 (LGB) |
| Oi S.A. *et al.*,[1] | ) |
| | )   Chapter 15 |
| Debtors in a Foreign Proceeding. | )   (Jointly Administered) |
| | ) |

## REPLY IN SUPPORT OF MOTION TO TERMINATE THE RECOGNITION ORDER AND DISMISS THE CHAPTER 15 CASES

---

[1]    The debtors in the above-captioned cases (the "**Chapter 15 Cases**"), along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

REPLY ......................................................................................................................................4

    I.    The Court May Terminate Recognition and/or Dismiss the Chapter 15 Cases ...................................................................................................................4

        A.    Section 1517(d) Is a Discretionary, Non-Exclusive Provision ................... 4

        B.    Termination of the Recognition Order Is Appropriate Under Section 1517(d) ................................................................................................... 7

            i.    The Nature and Purpose of the Brazilian RJ Proceeding Has Changed ......................................................................................... 7

            ii.    Termination of the Recognition Order Will Not Prejudice V.tal.... 7

            iii.    Termination Is Consistent with Principles of Comity................... 10

            iv.    The Court Need Not Determine Chapter 11 Issues to Grant the Motion ........................................................................................ 11

    II.    Section 1528 of the Bankruptcy Code Does Not Apply to a Chapter 11 Case Absent a Concurrently Pending Chapter 15 Case ..................................................12

    III.    The Limited Facts Necessary to Resolve This Motion Are Clear and Not Disputed ..........................................................................................................14

    IV.    The Court Should Enter the Proposed Order ..........................................................15

CONCLUSION........................................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Drawbridge Special Opportunities Fund LP v. Barnet* (*In re Barnet*),
  737 F.3d 238 (2d Cir. 2013)............................................................................................13, 14

*Duncan v. Walker*,
  533 U.S. 167 (2001).......................................................................................................12, 13

*In re ABC Learning Ctrs. Ltd.*,
  728 F.3d 301 (3d Cir. 2013)..................................................................................................4

*In re Alpha Latam Management, LLC*,
  Case No. 21-11109 (JKS) (Bankr. D. Del. Sep. 9, 2022) [ECF No. 652] ..............................12

*In re Atlas Shipping A/S*,
  404 B.R. 726 (Bankr. S.D.N.Y. 2009).....................................................................................5

*In re Corp Group Banking S.A.*,
  Case No. 21-10969 (JKS) (Bankr. D. Del. July 14, 2022) [ECF No. 825].............................12

*In re Cozumel Caribe, S.A. de C.V.*,
  508 B.R. 330 (Bankr. S.D.N.Y. 2014)..........................................................................5, 6, 11

*In re Estrategias En Valores, S.A.*,
  601 B.R. 550 (Bankr. S.D.N.Y. 2019).....................................................................................6

*In re Foreign Econ. Indus. Bank Ltd.*, *"Vneshprombank" Ltd.*,
  607 B.R. 160 (Bankr. S.D.N.Y. 2019).....................................................................................6

*In re GOL Linhas Aéreas Inteligentes S.A.*,
  Case No. 24-10118 (MG), 2025 Bankr. LEXIS 1250 (Bankr. S.D.N.Y. May 22, 2025)........12

*In re GOL Linhas Aéreas Inteligentes S.A.*,
  Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Mar. 6, 2024) [ECF No. 228]............................9

*In re Grupo Aeroméxico, S.A.B. de C.V.*,
  Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. Mar. 17, 2022) [ECF No. 2668] .....................12

*In re Gymboree Grp., Inc.*,
  Case No. 19-30258 (Bankr. E.D. Va. Jan. 17, 2019) [ECF No. 11].........................................9

*In re Maxwell Commc'n Corp. plc by Homan*,
  93 F.3d 1036, 1053 (2d Cir. 1996).........................................................................................11

*In re Odebrecht Engenharia e Construção S.A.*,
    669 B.R. 457, 473-74 (Bankr. S.D.N.Y. 2025)..........................................................6

*In re Oi Brasil Holdings Cooperatief U.A.*,
    578 B.R. 169 (Bankr. S.D.N.Y. 2017) ..............................................................4, 6

*In re Patriot Coal Corp.*,
    Case No. 15-32450 (Bankr. E.D. Va. May 12, 2015) [ECF No. 22] .......................9

*In re Sbarro LLC*,
    Case No. 14-10557 (Bankr. S.D.N.Y. Mar. 10, 2014) [ECF No. 10].....................9

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ................................................................13

*In re WOM S.A.*,
    Case No. 24-102628 (KBO) (Bankr. D. Del. Mar. 7, 2025) [ECF No. 1250].........12

*JPMorgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005)...............................................................................11

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) ..............................................................................................4

*Loy v. O'Sullivan*,
    Case No. 12-0091 (RAJ), 2013 U.S. Dist. LEXIS 183035 (E.D. Va. Jan. 18, 2013)...............8

*Youssef v. Sallie Mae, Inc. (In re Homaidan)*,
    650 B.R. 372 (Bankr. E.D.N.Y. 2022)................................................................15

## STATUTES AND RULES

11 U.S.C. § 101..................................................................................................3, 7, 13

11 U.S.C. § 103..............................................................................................6, 12, 13, 14

11 U.S.C. § 105(a) .................................................................................................1

11 U.S.C. § 109(a) ...............................................................................................13

11 U.S.C. § 305....................................................................................................1, 6

11 U.S.C. § 541...................................................................................................14

11 U.S.C. § 1502..................................................................................................13

11 U.S.C. § 1506...................................................................................................5

11 U.S.C. § 1507................................................................................................1, 6

11 U.S.C. § 1511 ................................................................................................................. 13

11 U.S.C. § 1517 ........................................................................................................... passim

11 U.S.C. § 1521 ............................................................................................................... 1, 6

11 U.S.C. § 1528 ............................................................................................. 12, 13, 14, 15

11 U.S.C. § 1529 ................................................................................................................. 13

## MISCELLANEOUS

Giuliano Colombo & Thiago Braga Junqueira, *Ten Years of Brazilian Bankruptcy Law: Some Lessons Learned and Some Wishes for Improvement*, 2016 Emerging Markets Restructuring J. 11, 12-13 (Spring 2016), https://www.clearygottlieb.com/-/media/organize-archive/cgsh/files/emerging-markets-restructuring-journal/debut-issue-2016/3ten-years-of-the-brazilian-bankruptcy-code--lessons-challenges-and-prospects.pdf .................................. 10

Rodrigo Caldas de Toledo Aguiar (the "**Petitioner**" or "**Foreign Representative**") respectfully submits this reply (the "**Reply**") to the *Objection and Opposition to Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* [ECF No. 58] (the "**Objection**") filed by BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A. ("**V.tal**") in support of the *Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* (the "**Motion**") [ECF No. 46].[2] [3]

## PRELIMINARY STATEMENT

1.      The relief requested in the Motion is straightforward—the Foreign Representative is requesting termination of the Recognition Order and dismissal of the Chapter 15 Cases that it originally initiated.  With the Brazilian RJ Plan substantially consummated and the U.S. aspects of the restructuring complete, the Chapter 15 Debtors require no further relief in these Chapter 15 Cases.  For the reasons set forth in the Motion and this Reply, the Foreign Representative believes there is abundant statutory support for this Court to grant the Motion, including under sections 1517(d), 1507, 105(a), 1521, and 305 of the Bankruptcy Code, which are available to the Foreign Representative in Oi's efforts to maximize creditors distributions and value for all stakeholders.

2.      No party that has participated in the Chapter 15 Cases and received the benefits of this Court's decisions has objected to the Motion.[4]  Instead, the sole objection has been filed by V.tal—a party that has never appeared and holds no U.S. law-governed claims that could be

---

[2]   Capitalized terms used not otherwise defined in this Reply shall have the meanings given to such terms in the Motion.

[3]   The Foreign Representative also relies upon and incorporates by reference the *Declaration of Paulo Calil Franco Padis* [ECF No. 47] (the "**Padis Declaration**") and the *Declaration of Marcelo José Milliet* [ECF No. 48] (the "**Milliet Declaration**").

[4]   The parties who have relied upon the Recognition Order and other decisions of this Court include, among others, (i) the secured 2025 Noteholders (as defined in the FFE Motion), who received new debt and equity securities governed by New York law in exchange for their New York law claims that were restructured under the Brazilian RJ Plan, as well as (ii) their respective indenture trustees, (iii) the Depository Trust Company and (iv) Cede & Co, who assisted with the cancellation and issuance of new New York law-governed securities.

impacted by the Chapter 15 Cases.  After presenting a rigid interpretation of section 1517(d) unsupported by the Bankruptcy Code, V.tal focuses on "prejudice" it might suffer from its alleged reliance on the Recognition Order that never impacted its rights.   V.tal's actual complaint, however, is that the Chapter 15 Debtors might file chapter 11 cases that may impact the many claims and transactions into which V.tal and its affiliates have entered with the Oi Group.  These concerns are exaggerated, distort the facts, and are irrelevant to the limited relief requested in the Motion.  Rather, the Foreign Representative seeks termination and dismissal so that the Chapter 15 Debtors have the option to file plenary chapter 11 cases if necessary to preserve and maximize value for all stakeholders, including the Oi Group's critical partner and affiliate, V.tal.[5]

3.        V.tal attempts to camouflage its self-serving aims by labeling the use of a cross-border restructuring solution—employed by numerous other Brazilian companies—as "imperialism."  To that end, V.tal narrates a tale in which the Oi Group is seeking to usurp the Brazilian RJ Court's jurisdiction and deprive V.tal of its rights as "DIP lender" in an active Brazilian restructuring case.  That is simply fantasy.  The Brazilian RJ Plan has been substantially consummated, as all prior prepetition claims have been exchanged for new plan securities.  A new board has been elected by those prepetition creditors—now the majority shareholders.  And as acknowledged by its legal expert, V.tal holds a portion of the "new, exit financing" issued under the Brazilian RJ Plan.  Junqueira Decl. ¶ 67.[6]  V.tal again mischaracterizes the Brazilian court

---

[5]    Again, the Motion seeks only to preserve this option.  The Oi Group is willing to engage on any other options that would address its liquidity position and solve its unsustainable capital structure, but no such alternative has been suggested by V.tal or any other party.  V.tal has refused all requests to meet, receive confidential information regarding the Oi Group's precarious financial position, or even speak to the Oi Group until the Foreign Representative withdraws the Motion.  Instead, V.tal has elected to litigate in this Court and the Brazilian courts and has even sent letters threatening and harassing the Oi Group's board and management with false claims of criminal liability.

[6]    *Declaration of Thiago Braga Junqueira in Support of V.tal's Opposition to Oi's Motion to Terminate Chapter 15 Recognition* [ECF No. 59] (the "**Junqueira Declaration**").

orders and repeats the same baseless allegations of a fraud investigation made in its July 25 Statement. The Foreign Representative responded to each misstatement in its July 28 response, *see Foreign Representative's Response to V.tal's Statement and Request for Continuance of Hearing and Objection Deadline* [ECF No. 57] ¶¶ 6-15, which responses V.tal does not address.

4.      Clearly, the circumstances underlying the Recognition Order have changed; while the Brazilian RJ Proceeding remains pending, its purpose is now supervisory in nature and no longer "for the purpose of reorganization or liquidation." In addition, despite the successful consummation of the Brazilian RJ Plan, the Oi Group requires a further restructuring—a "chapter 22" which is not available in Brazil—to avoid a value-destructive liquidation. The Motion is not meant to "evade" anything. Rather, the Oi Group needs access to liquidity and restructuring relief to repay, as much as possible, its current debts established under the Brazilian RJ Plan. The Motion is the first step in at least one way to address this situation.

5.      Finally, V.tal's claims of "repeatedly support[ing]" the Oi Group ring hollow. V.tal shares blame for Oi's current liquidity challenges and may stand to benefit if Oi's asset prices become depressed in a liquidation scenario. For example, it has repeatedly leveraged Oi's financial distress to obtain lucrative agreements at Oi's expense and did not provide cash consideration in connection with its acquisition of UPI ClientCo. Junqueira Decl. Ex. B ¶¶ 14–15, 45, 122. Granting the Motion would give Oi the option to address these liquidity challenges through plenary chapter 11 cases that would result in greater recoveries for all creditors, even V.tal.

6.      As set forth below, the Court should overrule the Objection and grant the Motion.

# REPLY

**I.    The Court May Terminate Recognition and/or Dismiss the Chapter 15 Cases**

**A.    Section 1517(d) Is a Discretionary, Non-Exclusive Provision**

7.    The central legal premise of the Objection is that section 1517(d) creates a mandatory, exclusive framework for terminating recognition.  V.tal insists that termination is impossible because "the only three grounds for granting recognition"—as set forth in 1517(a)(1)-(3)—remain satisfied.  V.tal's mechanical checklist conflates the requirements for initially granting recognition with the circumstances that justify termination.  Although termination may be warranted where such factors are no longer satisfied, V.tal incorrectly presumes that grounds justifying termination are limited to just these circumstances.

8.    V.tal argues that section 1517(d) must be applied "objectively and formulaically." Obj. at 14.  But when Congress creates this type of mandatory, formulaic requirement, it uses clear and unambiguous language.  *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall,' . . . normally creates an obligation impervious to judicial discretion.").  Whereas section 1517(a) provides that a court "*shall*" grant recognition when three enumerated requirements are met, section 1517(d) contains no such mandatory or formulaic restriction.  *See*, *e.g.*, *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 198–99 (Bankr. S.D.N.Y. 2017) ("The discretion left to a court under Section 1517(d) is markedly different from other provisions governing recognition under Chapter 15.").  The use of "shall" in section 1517(a) reflects the need for predictability and efficiency in the initial recognition phase, while the more open-ended language of section 1517(d) acknowledges that circumstances may change after recognition, ensuring that the court retains flexibility to address unforeseen issues or evolving considerations that may warrant modification or termination.  *Compare In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) ("Mandatory recognition when an insolvency proceeding

4

meets the criteria fosters comity and predictability."), *with In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) ("While recognition of the foreign proceeding turns on the objective criteria under § 1517, 'relief [post-recognition] is largely discretionary and turns on subjective factors that embody principles of comity.'") (internal citations omitted).

9.      Indeed, section 1517(d) does not impose the mandatory, formulaic restrictions for which V.tal advocates.  Instead, section 1517(d) states that "[t]he provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist." 11 U.S.C. § 1517(d).  The Court's ability to modify or terminate recognition under this section requires that the Court "give due weight to possible prejudice to parties that have relied upon the order granting recognition." *Id.*  That prejudice must be considered shows that Congress did not intend for this to be a mechanical test.

10.     This point is underscored by *Cozumel*, on which V.tal heavily relies.  There, this Court considered terminating recognition based on the public policy exception embodied in section 1506, even where the three statutory requirements in section 1517(a)(1)-(3) otherwise remained satisfied.  *See In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 335 (Bankr. S.D.N.Y. 2014). While declining to terminate recognition in *Cozumel*, Judge Glenn's consideration of the public policy exception demonstrates that courts may consider circumstances other than the three statutory requirements for recognition.  *See id*. at 335 (citing *In re Ashapura Minechem Ltd.*, No. 11–14668 (JMP), 2011 WL 5855475, at *5 (Bankr. S.D.N.Y. Nov. 22, 2011) (stating that a recognition order could be terminated "in the interests of justice")).[7]

---

[7]    *See id*. at 337 (citing *SNP Boat Serv. S.A. v. Hotel Le St. James (In re SNP Boat Serv. S.A.)*, 453 B.R. 446, 448 (Bankr. S.D. Fla. 2011) ("When a foreign representative . . . proceeds to stonewall all efforts to assist judicial determination as to whether due process was afforded, the wisdom of an American court continuing to recognize the foreign main proceeding becomes questionable.")).

11.     Moreover, V.tal cites no case holding that a foreign representative's only path to request termination of its own recognition request is via section 1517(d).  Instead, the Objection cites decisions where the movants seeking modification of recognition were dissenting creditors or other interested parties.[8]  Relying on this precedent, V.tal incorrectly concludes that section 1517(d) is the *only* statutory basis for termination and summarily disregards the Foreign Representative's additional rights under sections 1521(a) and 1507.  *See* Obj. at 26.

12.     V.tal further relies on *Harrington v. Purdue Pharma L.P.*, for the unremarkable proposition that statutory catch-all provisions are interpreted in light of the specific examples that preceded it.  *See* Obj. at 27.  But this Court recently rejected that very argument with respect to section 1521(a).  *See In re Odebrecht Engenharia e Construção S.A.*, 669 B.R. 457, 473–74 (Bankr. S.D.N.Y. 2025) (distinguishing the Supreme Court's analysis of the catch-all provision in section 1123(b) and granting relief under section 1521(a)).  Instead, sections 1521(a) and 1507 provide this Court with broad, discretionary authority to assist the Foreign Representative, and both statutes are independent of section 1517(d) and available only to the Foreign Representative.[9]

---

[8]    *See, e.g.*, *Oi Brasil*, 578 B.R. at 244 (denying foreign trustee and bondholders' attempt to vacate prior COMI determination); *Cozumel*, 508 B.R. at 336 (denying loan servicer's request to terminate recognition given its dissatisfaction with the foreign court's treatment of its claim); *In re Estrategias En Valores, S.A.*, 601 B.R. 550, 556 (Bankr. S.D.N.Y. 2019) (denying individual debtor's attempt to remove itself from recognized foreign proceeding); *In re Foreign Econ. Indus. Bank Ltd.*, *"Vneshprombank" Ltd.*, 607 B.R. 160, 172–75 (Bankr. S.D.N.Y. 2019) (denying debtor's request to vacate recognition for lack of personal jurisdiction).

[9]    Section 1521(a)(7) operates as an independent grant of authority, allowing the Court to draw upon the full range of bankruptcy remedies—including dismissal under section 305 of the Bankruptcy Code—and the Court's authority thereunder is not limited by section 1517(d).  While section 103 does not specify that section 305 applies in chapter 15, section 305 is applicable in chapter 15 cases through section 1521(a)(7) to the same extent other title 11 provisions available to a trustee in chapter 11 are.  *Cf.* FFE Order ¶ 12 (exempting Foreign Representative from U.S. securities registration requirements pursuant to section 1145, as section 1145 relief is available in chapter 11 and is not explicitly excluded under section 1521(a)(7)).

6

**B.**     **Termination of the Recognition Order Is Appropriate Under Section 1517(d)**

*i.*     *The Nature and Purpose of the Brazilian RJ Proceeding Has Changed*

13.     Even under V.tal's improperly rigid interpretation of section 1517(d), the circumstances underlying the Recognition Order have changed, justifying termination.  *See* Mot. ¶¶ 45–47 (providing additional circumstances that warrant termination of recognition and necessitate further restructuring).  Although still pending, the Brazilian RJ Proceeding's essential character has fundamentally changed.  *See id.*  Despite V.tal's best efforts to convince this Court otherwise, the active debt restructuring phase of the Brazilian RJ Proceeding—the negotiation, approval, and implementation of the Brazilian RJ Plan—that originally justified recognition and required relief in the United States has concluded.  Milliet Decl. ¶¶ 8–22; Padis Decl. ¶ 12 n.4.  At this point, the purpose of the Brazilian RJ Proceeding is supervisory in nature—*i.e.*, the proceeding remains pending under the Brazilian Bankruptcy Law for two years following confirmation during which the Brazilian RJ Court and various court-appointed officials monitor the RJ Debtors to ensure they comply with the terms of the Brazilian RJ Plan.  Recognition Decl. ¶ 39.  Therefore, the Brazilian RJ Proceeding is no longer pending "for the purpose of reorganization or liquidation" and thus is not a "foreign proceeding" as defined under section 101(23) and as required by section 1517(a)(1).[10]

*ii.*     *Termination of the Recognition Order Will Not Prejudice V.tal*

14.     V.tal next argues that termination of the Recognition Order would "severely, and unjustifiably, prejudice" it, given that it provided financing to the RJ Debtors (the "**Brazilian Exit**

---

[10]     The fact that the proposed amendments to the Brazilian RJ Plan are pending does not change this fact because those proposed amendments relate only to claims of local creditors and small suppliers that do not require any relief from this Court and are not otherwise impacted by the Chapter 15 Cases.  *See* Padis Decl. ¶ 25; *see also* 11 U.S.C. § 1517(d) (permitting modification or termination of recognition where "the grounds for granting it were fully or *partially* lacking or have ceased to exist") (emphasis added).

**Financing**") purportedly "in reliance" on the Recognition Order and FFE Order.  Obj. at 16–17.

This is nonsense.  The Brazilian Exit Financing is governed by Brazilian law, does not mention

the U.S., and contains no condition precedent related to chapter 15.  Indeed, the Junqueira

Declaration submitted by V.tal omits the Recognition Order and FFE Order from the documents

that V.tal "relied on" in issuing the Brazilian Exit Financing.  *See* Junqueira Decl. ¶¶ 77–79.  Thus,

it is not surprising that V.tal has never participated in any of the Oi Group's U.S. cases—V.tal's

interests have never been impacted by the Chapter 15 Cases or the relief sought therein by the

Foreign Representative.  Accordingly, it defies logic to conclude that V.tal ever relied on the

Recognition Order or could be legitimately prejudiced by its termination.[11]

15.    Even if it had relied on the Recognition Order and FFE Order, V.tal would not

suffer any prejudice from a termination of the Recognition Order.  As the Proposed Order

unequivocally states, the requested relief "shall not in any way retroactively nullify or otherwise

affect" the events that occurred before this Court's termination of the Recognition Order, including

the protections of such recognition that parties actually relied upon.  *See* Proposed Order ¶ 4.

Furthermore, this language was requested informally by the parties that have an actual interest in

these Chapter 15 Cases.  Accordingly, the termination of the Recognition Order has no bearing on

the rights and obligations of Oi and V.tal under the Brazilian Exit Financing.

16.    The actual prejudice about which V.tal is concerned is the impact of a hypothetical

chapter 11 case.  The possibility of a chapter 11 filing where a creditor's right may be adjusted

according to the Bankruptcy Code is a risk that always exists and is not the type of "prejudice"

referenced in section 1517(d).  *Cf. Loy v. O'Sullivan*, Case No. 12-0091 (RAJ), 2013 U.S. Dist.

---

[11]    V.tal is unlike the creditors in Oi's initial cases referenced in V.tal's objection, who "relied on [the order granting recognition] in developing their litigation and investment strategies . . ."  Obj. at 18–19.  Here, there is no evidence to suggest that V.tal relied upon the Recognition Order.

LEXIS 183035, at *14–15 (E.D. Va. Jan. 18, 2013) (properly considering prejudice to trustee who actually relied on authorizations afforded under the recognition order).  Nor is anything uniquely prejudicial about a chapter 11 case filed by a debtor with foreign operations or assets.  Many foreign debtors, including Brazilian companies, have filed chapter 11 cases to restructure debts that they could not address under their own insolvency regimes.[12]  *See* Mot. ¶ 40 (citing chapter 11 cases of foreign companies).  Far from being a "new power[] to discharge Oi's already-incurred obligations," Obj. at 17, a restructuring of debt issued in connection with a prior restructuring would be akin to how repeat-debtors in so-called "chapter 22" cases restructure debts incurred after an initial chapter 11 plan proves to be insufficient.[13]

17.    V.tal's other allegations of prejudice and "circumvent[ion of] Brazilian law and the RJ" with respect to the post-petition contracts and fiduciary liens fail for the same reasons.  But more importantly, they are irrelevant for purposes of this Motion.  The core issue is whether termination of the Recognition Order—not the hypothetical filing of a chapter 11 case—would be prejudicial to V.tal.  Here, it is not.[14]  V.tal neither "relied upon" the Recognition Order, nor would its rights be harmed by its termination.

---

[12]    In fact, Judge Glenn recently recognized this very point in *GOL*, where he noted that "[i]t has become common place with foreign companies, and foreign airlines in particular . . . to file Chapter 11 cases in the U.S. and this reflects broad recognition that Chapter 11 offers an effective means to restructure distressed debtors and maximize recoveries for all stakeholders. . . this court in particular sort of become the foreign home of. . . five or six foreign airlines now.  And I think their cases have been effectively administered in this court.  And I can understand why in many cases they want to come here rather than in their home countries." *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Mar. 6, 2024) [ECF No. 228] at 86:16-21; 87:11-16.

[13]    *See*, *e.g.*, *In re Gymboree Grp., Inc.*, Case No. 19-30258 (Bankr. E.D. Va. Jan. 17, 2019) [ECF No. 11] (second chapter 11 case which sought to restructure, among other debts, the exit financing from the first case); *In re Patriot Coal Corp.*, Case No. 15-32450 (Bankr. E.D. Va. May 12, 2015) [ECF No. 22] (same); *In re Sbarro LLC*, Case No. 14-10557 (Bankr. S.D.N.Y. Mar. 10, 2014) [ECF No. 10] (same).

[14]    Critically, termination and dismissal will not prejudice creditors, as "none of the relief is retroactive."  Mot. ¶ 5.  It is not credible for V.tal to (i) claim prejudice when none of its rights have been impacted by or because of any reliance on the Chapter 15 Cases or (ii) argue that it would be better off in a Brazilian liquidation or *falência*.  While V.tal asserts that Mr. Padis fails to support his claim that a judicial liquidation proceeding is a "factually bad" scenario, Obj. at 28, its own expert declaration fails to refute that testimony.  Most tellingly, Mr. Junqueira, who has 10 fewer years of industry experience than Mr. Padis, does not provide any specific examples of *falência* proceedings that improved creditor outcomes.  In fact, Mr. Junqueira co-authored an article

iii.    *Termination Is Consistent with Principles of Comity*

18.    In attempting to convince the Court of a serious violation of the principles of comity, V.tal makes a variety of hyperbolic statements regarding the Motion including that it would (i) be an "outrageous and inappropriate usurpation . . . of the Brazilian courts' extensive, ongoing administration of Oi's bankruptcy," (ii) "circumvent applicable, binding Brazilian law," (iii) "weaken[]" the Brazilian DIP market and cause potential financiers to "lose confidence in the protections provided to DIP financing under Brazilian law," (iv) "escape the Brazilian RJ's scrutiny of Oi's potential wrongdoing in the Brazilian RJ," (v) "impos[e]  U.S. oversight over Brazilian regulatory authorities, tax authorities, and core public infrastructure services in Brazil," and (vi) "evade the RJ plan without consent of affected creditors."  Obj. at 19–23.  This parade of horribles is misplaced and irrelevant.

19.    First, termination of the Recognition Order cannot impact the Brazilian RJ Proceeding.  Second, to the extent the impact of a potential future chapter 11 filing is at all relevant, V.tal seems to ignore that this filing would be a new restructuring case—a "chapter 22"—of the debt issued under the Brazilian RJ Plan.  Such a filing would not change the negotiated terms of the Brazilian RJ Plan and/or try to put creditors back to the *status quo* before the filing of the Brazilian RJ Proceeding.  The Brazilian RJ Plan has been substantially consummated and creditors have their new claims and collateral issued under the Brazilian RJ Plan.  Milliet Decl. ¶¶ 8–9.

---

acknowledging that creditors in Brazil perceive liquidation as so value-destructive that even a suboptimal payment option in a judicial reorganization would be preferable.  *See* Giuliano Colombo & Thiago Braga Junqueira, *Ten Years of Brazilian Bankruptcy Law: Some Lessons Learned and Some Wishes for Improvement*, 2016 EMERGING MARKETS RESTRUCTURING J. 11, 12–13 (Spring 2016), https://www.clearygottlieb.com/-/media/organize-archive/cgsh/files/emerging-markets-restructuring-journal/debut-issue-2016/3ten-years-of-the-brazilian-bankruptcy-code--lessons-challenges-and-prospects.pdf ("[T]he general feeling among creditors is that there is limited or no recovery value under a potentially time-consuming, costly and bureaucratic Bankruptcy Liquidation process.  Therefore, in practice, creditors tend to approve a questionable and sub-optimal Plan of Reorganization rather than vote for its rejection which would relegate them to coping with the downsides of Bankruptcy Liquidation.").

20.     Each of the cases cited by V.tal relates to circumstances where a party requested that the U.S. court interfere in an ongoing foreign restructuring proceeding; not a "chapter 22" scenario.[15]  For instance, V.tal cites *Altos Hornos* for the proposition that "[p]rinciples of comity dictate that this Court should defer to the Brazilian RJ and not terminate recognition of such proceeding." Obj. at 19.  But termination of recognition was not at issue in that case.  In *Altos Hornos*, the Second Circuit affirmed the district court's dismissal of a bank's request for declaratory relief regarding an ownership dispute pending in a Mexican proceeding.  *JPMorgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005).  Unlike the plaintiff in *Alto Hornos*, the Foreign Representative is not asking this Court "to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding."  *Id.* at 424, 428.  Rather, the Foreign Representative is requesting that this Court terminate a U.S. court order to remove a procedural roadblock that may limit the Oi Group's option to pursue a *future* restructuring of its debts under applicable U.S. law.[16]

    *iv.*    *The Court Need Not Determine Chapter 11 Issues to Grant the Motion*

21.     Finally, the Objection attempts to undermine the Motion by suggesting that a chapter 11 case could not be effective.  While its opinions are of negligible relevance, V.tal's assertions are nonetheless unconvincing.  V.tal argues that Brazilian law would not permit the type of restructuring Oi contemplates, citing the Report of Daniel Carnio Costa.  But Mr. Costa only concludes that the chapter 11 cases would not be recognized under UNCITRAL Model Law and

---

[15]  *See, e.g.*, *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1053 (2d Cir. 1996) (holding that comity precludes application of U.S. avoidance law to foreign transfers where there were parallel insolvency proceedings); *In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 336 (Bankr. S.D.N.Y. 2014) (denying request to terminate recognition where claimant contested treatment of its claim in the Mexican proceeding and where the parties have "not exhausted their remedies in the Mexican courts where this dispute belongs").

[16]  V.tal's statements that "Oi's motion itself is prohibited by the Brazilian RJ plan" and that Oi "seek[s] to evade the RJ plan through its motion" by "impermissibly adopting measures that ***undermine***, rather ***render enforceable***, the RJ plan," Obj. at 22, are again misleading, incorrect, and relate to chapter 11 relief, not the Motion.

Brazilian Bankruptcy Law.  *See* Obj. at 21 (citing Decl. Exs. E and F ¶ 138).  Such recognition, however, is unnecessary and has never been suggested.  Courts have administered numerous chapter 11 cases and confirmed chapter 11 plans filed by foreign debtors who successfully exited chapter 11 without seeking local recognition.[17]  Further, V.tal's position regarding fiduciary liens, Obj. at 4, 24, is similarly not dispositive to the Motion; these are chapter 11 issues and not correct.[18]

## II.    Section 1528 of the Bankruptcy Code Does Not Apply to a Chapter 11 Case Absent a Concurrently Pending Chapter 15 Case

22.    The Objection only briefly mentions the applicability of section 1528 to any future chapter 11 case, oversimplifying the statutory analysis and concluding that this provision applies to "a case under another chapter of this title."  Obj. at 24.  V.tal's analysis is superficial and wrong.  To level set, while section 1528 indicates it may apply to chapter 11 proceedings, section 103(*l*) dictates that the provisions of chapter 15 *only* apply in chapter 15 cases (except for limited and specifically enumerated provisions).  Canonical rules of statutory interpretation mandate that courts should try to reconcile the language in such a way so as not to render the statutory language contradictory or superfluous.  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (adopting "cardinal principle" that statutes must be construed such that "no clause, sentence, or word shall be superfluous, void, or insignificant") (internal citations omitted).  The only effective way to avoid contradiction is to read section 1528 as applying only to a debtor's subsequent chapter 11 case if there is a concurrent, ongoing chapter 15 case in which a foreign proceeding has been recognized.

---

[17]    *See*, *e.g.*, *In re WOM S.A.*, Case No. 24-102628 (KBO) (Bankr. D. Del. Mar. 7, 2025) [ECF No. 1250]; *In re Alpha Latam Management, LLC*, Case No. 21-11109 (JKS) (Bankr. D. Del. Sep. 9, 2022) [ECF No. 652]*; In re Corp Group Banking S.A.*, Case No. 21-10969 (JKS) (Bankr. D. Del. July 14, 2022) [ECF No. 825]*; In re Grupo Aeroméxico, S.A.B. de C.V.*, Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. Mar. 17, 2022) [ECF No. 2668].

[18]    *See*, *e.g.*, *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG), 2025 Bankr. LEXIS 1250, at *11–14 (Bankr. S.D.N.Y. May 22, 2025) (describing the consensual restructuring of certain "Safra Secured Claims" and "Rendimento Secured Claims," both of which were secured by fiduciary assignment of receivables).

23.    Further, the Supreme Court has held that when Congress uses particular language in one section of a statute but omits it in another section of the same act, it is presumed that Congress acted intentionally in the use or omission of its language. *Id.*[19]  This Court should apply the same reasoning in rationalizing sections 1528 and 103(*l*).  Congress acted intentionally when it did *not* include section 1528 in section 103(*l*)'s list of chapter 15 provisions that apply outside of a pending chapter 15 case. *Id.*  Congress also acted intentionally when it included language in section 1528 that applies it to the *specific* and *limited* scenario of concurrent chapter 15 and chapter 11 cases for the same debtor, which the Bankruptcy Code contemplates.[20]

24.    This reading is also consistent with *Drawbridge,* where the Second Circuit analyzed whether a chapter 15 debtor needed to meet both section 1502's definition of "debtor" and the eligibility requirements of section 109(a).[21]  *Drawbridge Special Opportunities Fund LP v. Barnet* (*In re Barnet*), 737 F.3d 238, 247 (2d Cir. 2013).  The Second Circuit determined that interpreting section 1502 to supplant section 109(a) would render section 109(a) meaningless, because the definitions of "debtor" in sections 1502 and 101(13) would replace section 109(a)'s definition of debtor, thus violating the "most basic interpretive canon[ ]" requiring courts to interpret statutes

---

[19]    In *Duncan*, the Supreme Court found that the statutory framework of the Antiterrorism and Effective Death Penalty Act distinguishes between "state" and "federal" proceedings, so Congress's reference to the time during which state habeas petition is pending tolls federal habeas limitation period, but the time during which federal habeas petition is pending does not similarly toll that period, because a contrary interpretation would render Congress's use of "state" in the tolling provision superfluous.

[20]    *See*, *e.g.*, 11 U.S.C. § 1511 (once a foreign proceeding has been recognized, the foreign representative may commence a voluntary case under section 301); 11 U.S.C. § 1529 (a "case in the United States" may be pending at the time the petition for recognition of a foreign proceeding is filed); *see also In re SPhinX, Ltd.*, 351 B.R. 103, 115–17 (Bankr. S.D.N.Y. 2006) ("Chapter 15 also provides flexibility *by acknowledging the possibility of a concurrent plenary case under other chapters of the Bankruptcy Code while a foreign proceeding is pending*, permitting a foreign representative in a recognized foreign proceeding to commence (11 U.S.C. § 1511) or participate in (11 U.S.C. §§ 1512, 1523) such a case, and providing for cooperation and direct communication between the bankruptcy court and foreign courts or foreign representatives and bankruptcy trustees and foreign courts or foreign representatives.  11 U.S.C. §§ 1525–1530.") (emphasis added).

[21]    *See* 11 U.S.C. § 1502(1) ("'debtor' means an entity that is the subject of a foreign proceeding"); *see also* 11 U.S.C. § 109(a) ("Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.").

such that "no part will be inoperative or superfluous." *Id.* at 249–50 (finding that section 103(a) makes all of chapter 1 of the Bankruptcy Code applicable to chapter 15). Similarly, reading section 1528 to apply when no chapter 15 case is pending, would render meaningless section 103(*l*)'s mandate that chapter 15 of title 11 only applies in chapter 15 cases.

25.    A strict interpretation of section 103(*l*)—applying the limited, enumerated chapter 15 provisions to all chapters of the Bankruptcy Code while also confining section 1528 to apply only to concurrent proceedings under both chapter 11 and chapter 15—is consistent with both the Bankruptcy Code and *Drawbridge*. If these Chapter 15 Cases are dismissed, section 1528 would *not* apply to any future chapter 11 cases commenced by the Oi Group and is therefore not a limitation on the worldwide reach of any future chapter 11 estate under section 541.[22]

## III.    The Limited Facts Necessary to Resolve This Motion Are Clear and Not Disputed

26.    Although V.tal claims that the evidentiary record is insufficient to warrant termination, Obj. at 4, it ignores that the Motion presents primarily a legal question that requires very few factual findings by the Court. And despite V.tal's effort to make it appear otherwise, the facts necessary for resolution are largely undisputed. Again, while V.tal protests loudly, there is no real dispute that the Brazilian RJ Plan has been substantially consummated and that while the Brazilian RJ Proceeding remains open, all of the material restructuring transactions—including the exchange of new debt securities—have occurred. *See* Milliet Decl. ¶¶ 8–18. Nor is there a dispute over the fact that V.tal is a Brazilian creditor that was not impacted by the Recognition Order and never appeared in the Chapter 15 Cases. As discussed above, while V.tal may challenge the Debtors' view about the effectiveness and advisability of a chapter 11 filing, the Court need

---

[22]    Accepting V.tal's argument that section 1528 applies to any chapter 11 case commenced after recognition, "regardless of whether such recognition is terminated," Obj. at 24, could mean that a chapter 15 debtor could not commence a chapter 11 case in perpetuity. The Court should decline to accept such an absurd result.

14

not resolve that issue to grant the Motion.  *See supra* ¶¶ 17-18.  Nor does the Court need to resolve

any of V.tal's baseless (and, with respect to the Motion, irrelevant) accusations about Oi's conduct

in Brazil.  V.tal throws a host of factual issues against the wall in an effort to distract the Court

from the straightforward legal issues presented by the Foreign Representative.

## IV.   The Court Should Enter the Proposed Order

27.    V.tal's objections to paragraphs 3 and 4 of the Proposed Order lack merit.  These

provisions do not create "inconsistent rights" or permit improper cherry-picking, as V.tal suggests.

Obj. at 29–30.  Instead, the Proposed Order ensures that termination operates as intended—

prospectively ending recognition of the Brazilian RJ Proceeding under chapter 15 without

disturbing completed transactions or creating unintended barriers to future proceedings.

28.    V.tal mischaracterizes paragraph 3 of the Proposed Order as seeking an "advisory

opinion."  This is incorrect.  Paragraph 3 addresses a specific issue related to interpretation of

section 1528 which V.tal itself has contested.  Accordingly, this is not an advisory request, but

rather defines the effect of the Court's own order.  Courts routinely clarify the scope of their relief

to prevent future litigation over interpretation, including with respect to section 1528.[23]

29.    V.tal's opposition to paragraph 4 contradicts its own arguments.  V.tal asserts it

would be "severely prejudiced" by termination because it "extended over BRL 750 million in

financing" in reliance on the Recognition Order.  Obj. at 17.  Yet, it objects to the provision that

would preserve the validity of transactions conducted in reliance on the Recognition Order.

## <u>CONCLUSION</u>

Accordingly, the Court should overrule the Objection and grant the Motion.

---

[23]   *See, e.g.*, *Youssef v. Sallie Mae, Inc. (In re Homaidan)*, 650 B.R. 372, 412 (Bankr. E.D.N.Y. 2022) (finding that
in crafting orders enjoining conduct, courts must take care to state the reasons why it issued the order and state
its terms specifically because failure to do so could result in the order notwithstanding appellate scrutiny).

Dated: August 4, 2025
New York, New York

Respectfully submitted,

By:    */s/ Philip M. Abelson*
Philip M. Abelson

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
Claire M. Campbell (*pro hac vice* pending)
David Kim
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,
as Petitioner and Foreign Representative*