## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Oi S.A. *et al.*,<br><br>Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Jointly Administered<br><br>Case No. 23-10193 (JPM) |

**BRIEF OF AMICUS CURIAE BRAZILIAN ASSOCIATION OF SPECIAL SITUATIONS AND LITIGATION FINANCE IN OPPOSITION TO OI' MOTION TO TERMINATE THE RECOGNITION ORDER AND DISMISS THE CHAPTER 15 CASES**

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. (8447 – Netherlands), Portugal Telecom International Finance B.V. (5023 – Netherlands) ("Oi Group" or "Oi").

## **TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTEREST OF AMICUS CURIAE**................................................................................1 |
| **II.** | **ARGUMENT**......................................................................................................................2 |
| **III.** | **CONCLUSION** .................................................................................................................6 |

I.    **INTEREST OF AMICUS CURIAE**

The *Associação Brasileira de Special Situations e Litigation Finance*, (*i.e.*, the Brazilian Association of Special Situations and Litigation Finance) ("Association") is a non-profit entity whose activities are characterized by their cultural, educational, and academic nature. The Association's statutory purposes are to: **(i)** promote cultural and academic activities; **(ii)** issue self-regulatory rules, so that market players may voluntarily adhere to such best practice standards; **(iii)** promote the Association's participation in matters of social interest, such as intervention in proceedings as *amicus curiae*; **(iv)** organize the Special Situations and Litigation Finance Congress, as well as workshops, courses, lectures, seminars, and any form of meeting aimed at disseminating the Association's objectives; **(v)** establish an information network to enable debates on matters related to its corporate purpose; and **(vi)** encourage and promote the production and publication of articles, bulletins, and books.

The Association holds institutional and academic events aimed at fostering a debate environment on topics falling within its corporate purpose, such as seminars and the Special Situations and Litigation Finance Congress. The 1st Special Situations and Litigation Finance Congress took place in August 2024, with approximately 300 participants and speakers from Brazil and abroad. The 2nd Special Situations and Litigation Finance Congress will be held on August 21, 2025, with 550 registered participants and both Brazilian and foreign speakers.

Within this scope, the Association also maintains thematic committees (Legal Claims Committee, Litigation Finance Self-Regulation Committee, Distressed M&A Committee, and Tax Claims Committee), and conducts activities to develop self-regulatory rules, such as the Manual of Best Practices in Litigation Finance, currently under preparation.

In summary, the Association is a non-partisan and non-profit entity from which its members receive no remuneration, and whose purpose is, in short, **(i)** to organize and represent

participants in the special situations and litigation finance markets in Brazil; and **(ii)** to foster institutional and legislative development on matters related to its corporate purpose.

The Association is, therefore, concerned with strengthening the institutions and legal frameworks related to its purposes, in order to promote greater predictability and legal certainty in the Brazilian business environment.

The Association became aware of the present judicial proceeding, in which, in sum, Oi seeks, during the pendency of its second judicial reorganization proceeding currently underway in Brazil, to restructure part of its liabilities that cannot be restructured in Brazil, including debts contracted by the company as financing for its judicial reorganization (DIP Financing).

The granting of loans to companies in distress is an important and essential tool provided for by Brazilian insolvency law. The protection afforded by Brazilian law, and the legal certainty it seeks to ensure, directly relates to the Association's corporate purpose and therefore justifies its intervention in this proceeding.

## II.     ARGUMENT

The Brazilian corporate insolvency framework is governed by Law No. 11,101/05. Although this statute is recognized by jurists and Brazilian courts as modern and up to date, it has, naturally, undergone certain amendments since its enactment. One such amendment occurred in 2020, through the enactment of Law No. 14,112, which sought to address the needs of the market and court users.

One of the most significant amendments introduced by Law No. 14,112 was the inclusion of express provisions on the granting of loans to companies in distress (*DIP Financing*). These provisions sought to establish incentives for such loans and to create legal safeguards and priorities for creditors providing them. Prior to this reform, Law No. 11,101/05 contained no provisions regarding financing to debtors in judicial reorganization.

It is well known that overcoming the financial and economic crisis faced by companies depends not only on legal mechanisms to restructure liabilities, but also on the provision of financial resources to the debtor. In this context, DIP Financing emerges as an indispensable tool for the success of any insolvency framework, in any jurisdiction, and Brazil is no exception

Law No. 14,112/20 brought a significant and important change to the Brazilian insolvency system and the country's business environment. With its amendments, Law No. 11,101/05 began allowing courts to authorize – after consulting the Creditors' Committee, if constituted, or otherwise the judicial administrator/trustee (art. 28) – companies in judicial reorganization to obtain loans aimed at enabling their recovery (art. 69-A). The credit arising from such loans enjoys several legal priorities, including: **(i)** classification as an *extraconcursal* claim, meaning it is not affected by the judicial reorganization plan (art. 84, II); **(ii)** irreversibility of the legal benefits even in the event of a future reversal of the decision authorizing the loan (art. 69-B); **(iii)** the possibility of subordinated lien over assets already encumbered in favor of other creditors, without the need for their consent; **(iv)** termination of the financing agreement in the event of bankruptcy (art. 69-D); and **(v)** authorization for the loan to be granted by any person, including a related party of the company in judicial reorganization or its shareholders (art. 69-E). Furthermore, DIP Financing claims have priority over other extraconcursal claims, except for urgent labor debts and administrative expenses of the bankruptcy estate (arts. 84, 150, and 151).

Under Brazilian law, debts incurred by the debtor after filing for judicial reorganization—such as DIP Financing—are considered extraconcursal claims and are therefore unaffected by the judicial reorganization plan, remaining enforceable regardless of the restructuring measures sought.

The statutory prohibition against a company in reorganization filing for a second reorganization within 5 (five) years of the granting of the prior one (counted from the date of

3

publication of the decision confirming the plan approved by creditors and granting the reorganization; art. 48, II) also safeguards the interests of those who lend to distressed companies.

This entire legal framework reflects the legislator's clear policy choice to foster and secure the granting of such loans, based on the correct understanding that the success of any restructuring proceeding depends on the provision of new financing. The privileged treatment afforded to these credits is justified by the public interest in preserving companies that conduct economic activities, generate jobs, and pay taxes.

In other words, the protection that Brazilian law affords to DIP Financing is justified by the understanding that safeguarding the interests of all stakeholders around a distressed company depends on ensuring that the company has access to credit lines; credit that will only be granted if there is legal certainty, predictability, and protective legal mechanisms for lenders.

In this scenario, the position advanced by Oi in this proceeding is cause for concern. Granting its request to terminate the chapter 15 case – in order for Oi to file a chapter 11 case with the express purpose of restructuring debts that cannot be restructured in Brazil,[2] including apparently to restructuring DIP Financing debt before the 5 (five) year period set forth in art. 48, I of Law No. 11,101/05, while its second judicial reorganization is still pending – would represent an undeniable institutional setback for the Brazilian insolvency system and, consequently, for the country's business environment.

---

[2] Oi explains that it intends to file a chapter 11 because of "underlying issues" that cannot be "fully addressed by an amendment to the existing Brazilian RJ Plan," including "postpetition obligations," ""[c]laims secured by fiduciary liens," or "[e]xecutory leases for property and services." ECF No. 46 ¶ 33. As Oi admits, none of these categories of debt may be restructured in Brazil. And if Oi establishes the precedent that Brazilian companies may come to the United States to file chapter 11 cases to discharge any category of debt that cannot be discharged under Brazilian law—even if Oi ultimately decides not to discharge the RJ DIP financing—the legal risk to lenders that the next case could go so far would have serious impacts on the market.

4

First, granting this request would indirectly circumvent the framework of Law No. 11,101/05, which both encourages the granting of loans to companies in reorganization and, to make such loans feasible, establishes economic and legal incentives that safeguard lenders' positions. Attempting to restructure debts arising from such loans would thus constitute a misuse of the DIP Financing mechanism, in violation of the principles of Brazilian insolvency law.

Second, Oi's request would also contravene art. 48, II of Law No. 11,101/05, which, as already noted, prohibits successive reorganizations within 5 (five) years of confirmation of the reorganization plan, in order to prevent opportunistic conduct.

Oi's intention to restructure its liabilities before this Court, while its second judicial reorganization is pending before the Brazilian judiciary, constitutes an attempt to circumvent Brazilian law, which prevents it from taking such measures in that jurisdiction. The reorganization plan in the pending case – Oi's second judicial reorganization – was confirmed on May 28, 2024, meaning that under Brazilian law, the filing of another reorganization proceeding – the third of its kind – would only be possible from May 28, 2029 onward. Allowing Oi to file proceedings to restructure its extraconcursal liabilities in another jurisdiction within the statutory prohibition period would thus amount to a violation of Brazilian law.

If this precedent is established, it will have serious implications for the Brazilian DIP financing market, which is still new and underdeveloped compared to the United States, in light of the recency of the changes to Brazilian insolvency law that grants lenders the guarantees they need to offer DIP financing.  If Oi's plan is allowed to move forward, the judicial certainty that a DIP loan may not be restructured within five years under Brazilian insolvency law would be gone. Some lenders may exit the market altogether, while others may only offer credit to insolvent companies at more onerous terms.  While such uncertainty would undoubtedly affect the special

5

situations and litigation finance market that the Association represents, the most significant impacts would be felt not by lenders, but by future Brazilian debtors. Law No. 14,112/20's facilitation of the DIP financing market has had important positive impacts for debtors throughout Brazil, and fixed issues that limited their access to capital for decades before it was passed. Prior to its passage, DIP financing was rarely available to Brazilian debtors because there was no legal mechanism to ensure that that debt could not be restructured, or to give additional protections to that debt. If Oi is permitted to come to the United States to do what it could not do in Brazil, that risks turning back the clock to the pre-Law No. 14,112/20 regime, where debtors suffered from the inability to secure necessary financing at acceptable terms.

For these reasons, the Association appears in this proceeding to express its concern with the effects that granting Oi's request would have on the institutional framework of the Brazilian insolvency system and, consequently, on the country's business environment.

### III.    CONCLUSION

For the above reasons, the Association respectfully requests that this Court deny Oi's Motion.

Dated: August 13, 2025.

*Gabriela Menna Barreto Scanlon*
/s/ Gabriela M. B. Scanlon
Gabriela M. B. Scanlon
4301 50th Street, N.W, 1st Floor
Washington, D.C. 20016
Tel: +1 215 459-1171
Email: gabriela@mbscanlon.com