**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
Claire M. Campbell (*pro hac vice* pending)
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,
as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Oi S.A., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Case No. 23-10193 (LGB)<br><br>Chapter 15<br><br>(Jointly Administered) |

**FOREIGN REPRESENTATIVE'S OBJECTION TO MOTION FOR
LEAVE TO FILE AMICUS CURIAE BRIEF FILED BY ASSOCIAÇÃO
BRASILEIRA DE SPECIAL SITUATIONS E LITIGATION FINANCE**

---

[1] The debtors in the above-captioned cases (the "**Chapter 15 Cases**"), along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

1

Rodrigo Caldas de Toledo Aguiar (the "**Petitioner**" or "**Foreign Representative**"), the duly-authorized foreign representative with respect to the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**")[2] of Oi S.A. – Em Recuperação Judicial ("**Oi**"), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial ("**Coop**"), and Portugal Telecom International Finance B.V. – Em Recuperação Judicial ("**PTIF**") (collectively, the "**Chapter 15 Debtors**" and, together with their non-debtor affiliates, the "**Oi Group**" or the **"Company"**), commenced on March 1, 2023, under Law No. 11,101 of February 9, 2005, as amended (the "**Brazilian Bankruptcy Law**") of the laws of the Federative Republic of Brazil before the 7th Business Court of the City and State of Rio de Janeiro, Brazil (the "**Brazilian RJ Court**"), respectfully submits this objection to the *Motion for Leave to File Brief of Amicus Curiae Brazilian Association of Special Situations and Litigation Finance in Opposition to Oi's Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* [ECF No. 90] (the "**Amicus Brief Motion**"), pursuant to which *Associação Brasileira de Special Situations e Litigation Finance* (the "**Association**") requests leave to file an amicus curiae brief in opposition to the *Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* [ECF No. 46] (the "**Motion**").[3]

## OBJECTION

1.  The filing of amicus curiae briefs in a United States bankruptcy court is unusual, and even more so in an inactive chapter 15 where the requested relief is limited to the termination of recognition and dismissal of the cases. The timing and the content of the Amicus Brief Motion

---

[2] The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0090940-03.2023.8.19.0001 (formerly 0809863-36.2023.8.19.0001).

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

is suspicious to say the least. Indeed, while the Association claims to be a non-partisan, non-profit entity focused on developments in Brazil's special situations and litigation finance markets, the first sponsor listed on its website is Banco BTG Pactual S.A. ("**BTG**"), which is the ultimate owner and controlling shareholder of V.tal – Rede Neutra de Telecomunicações S.A. and BCG Fibra Participações S.A. (collectively, "**V.tal**")—the sole objector to the Motion. Suspicions aside, as set forth herein, the Amicus Brief Motion is untimely, biased, duplicative, and based on illogical arguments that lack evidentiary support. Therefore, the Amicus Brief Motion should be denied.

I.   **The Amicus Brief Motion Is Procedurally Improper**

2.   The Amicus Brief Motion was filed only a few hours before the August 14, 2025 evidentiary hearing (the "**Hearing**") and 14 days after the objection deadline. The Amicus Brief Motion offers no explanation—let alone justification—for the Association's two-week delay. The Association's failure to respect the objection deadline, standing alone, constitutes sufficient grounds to deny the Amicus Curiae Motion. *See Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739 (LAP), 2022 WL 3536117, at *1 (S.D.N.Y. Aug. 18, 2022) ("[C]ourts in this district routinely reject untimely filed amicus briefs.") (citations omitted).

3.   Procedural deadlines, including the Court's established objection deadline, are critical to the orderly and efficient administration of these Chapter 15 Cases. Allowing a late-filed amicus brief in the absence of any explanation or good cause would undermine the Court's scheduling framework and risk encouraging disregard for court-ordered deadlines in these cases and future proceedings.

4.   Additionally, the Amicus Brief Motion fails to disclose that the Association is affiliated with BTG,[4] the ultimate majority owner and controlling shareholder of V.tal (the sole

---

[4]   BTG is a "Diamond Sponsor" of the Association's 2nd Congress on Special Situations and Litigation Finance. *See 2º Congresso de Special Situations e Litigation Finance [2nd Congress on Special Situations and Litigation*

3

objector to the Motion). An amicus curiae brief is only helpful to the Court to the extent it reflects a neutral, impartial interest—not where it merely reiterates the interests of its related party. *See Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011) ("While there is certainly no requirement that *amici* be totally disinterested, 'the partiality of an *amicus* is a factor to consider in deciding whether to allow participation.'") (citations omitted); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 256 (Bankr. S.D.N.Y. 2016) ("An *amicus* is not a party to the litigation, but participates only to assist the court.") (citations omitted); *Cosgrove v. Sears, Roebuck & Co.*, No. 81 Civ. 3482 (AGS), 1996 WL 99390, at *2 (S.D.N.Y. Mar. 7, 1996) ("The role of an *amicus curiae* is that of an impartial friend of the court, not an adversarial party in interest."). Here, the Association's connections with BTG and V.tal suggest that the Association is not actually a neutral, disinterested amicus curiae, but instead is merely advancing V.tal's and BTG's position and strategic interests.

5.     Moreover, the content of the Association's attached "amicus curiae" brief is essentially identical to the positions taken by V.tal in its filings and the statements made by its witness at the Hearing.[5] Courts routinely deny leave to file amicus curiae briefs where, as is the case here, the parties' interests are adequately represented and the proposed submissions would not materially assist the court's evaluation of the requested relief. *See, e.g.*, *United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992) (denying leave where the party's interests were

---

*Finance*], https://specialsituations.org.br/site/ (last visited Aug. 17, 2025). The opening lecture at this Congress will feature the Association's president (Mr. Guilherme Setoguti) and BTG's chief economist (Mr. Mansueto de Almeida). *See Programação* [*Schedule*], https://specialsituations.org.br/site/programacao/ (last visited Aug. 17, 2025).

[5] *See Objection and Opposition to Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* [ECF No. 58]; *Declaration of Thiago Braga Junqueira in Support of V.tal's Opposition to Oi's Motion to Terminate Chapter 15 Recognition* [ECF No. 59]; *Declaration of Daniel Carnio Costa in Support of V.tal's Opposition to Oi's Motion to Terminate Chapter 15 Recognition* [ECF No. 83]; *see also* Aug. 14, 2025 Hr'g Tr. at 170:19–25, 171–197.

4

"adequately represented by . . . counsel" and the amicus brief "would not aid [the] Court's evaluation"); *Enron Corp. v. J.P. Morgan Sec.*, Case No. 03-92677, ECF No. 1855 at 4 (Bankr. S.D.N.Y. May 20, 2008) (denying leave where the amicus curiae was "not adding any unique view that is not already before the Court"); *Madoff*, 550 B.R. at 256 ("The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties.") (citations omitted). Consequently, given that the Association offers no unique perspective and its positions are cumulative of materials already before the Court, its participation is unnecessary and unhelpful.

## II. The Association's Brief Espouses Unsupported and Illogical Conclusions

6. The opinions asserted in the Association's attached "amicus curiae" brief concerning the postpetition financing market in Brazil are fundamentally flawed and reflect a misunderstanding of the applicable legal framework. The Association contends that granting the Motion would eliminate "the judicial certainty that a DIP loan may not be restructured within five years under Brazilian insolvency law." Amicus Brief Motion at 5. This is illogical and easily refuted by the actual facts and applicable law.

7. First, the Motion merely seeks to terminate recognition and dismiss these Chapter 15 Cases. That limited request—*i.e.*, the removal of ancillary relief provided in the U.S.—cannot impact the Chapter 15 Debtors' secured exit financing approved under the Brazilian RJ Plan. Rather, the Association has the same complaint as V.tal—that a *future* chapter 11 case *might* impact the Chapter 15 Debtors' exit facility. But the Oi Group has not filed chapter 11. So, that issue is not currently before the Court.

8. Second, the Association's assertion that a possible chapter 11 filing within five years from confirmation of the Brazilian RJ Plan would undermine recent Brazilian Bankruptcy Law reforms designed to incentivize postpetition lending is illogical. Importantly, the 2020

5

amendments to the Brazilian Bankruptcy Law did not impose a five-year moratorium on RJ filings by companies that obtain DIP financing; rather, that limitation *already existed* in the Brazilian Bankruptcy Law since its enactment. *See* Law No. 11,101, art. 48 (Feb. 9, 2005) (Braz.). In fact, those amendments did enhance the protections for DIP lenders, such as expanding collateral rights and reducing the scope of appellate review of DIP approval orders, which are all aspects of the law that are consistent with chapter 11. *See* Law No. 11,101, arts. 69-A to 69-F (Feb. 9, 2005) (Braz.), as amended by Law No. 14,112 (Dec. 24, 2020) (Braz.).[6] Therefore, any potential chapter 11 filing by the Oi Group would not contravene the spirit or purpose of the 2020 reforms.[7]

9.      Third, the Bankruptcy Code does not include a time limitation on the filing of subsequent bankruptcy cases, but the U.S. has nevertheless maintained a robust and well-functioning DIP financing market for nearly five decades. The success of postpetition financing in the U.S. is primarily due to the enhanced creditor protections and the certainty provided by limited appellate review, which are the very changes made to the Brazilian Bankruptcy Law in 2020. By analogy, the more reasonable conclusion is that prospective lenders prioritize credit protections—especially collateral packages—and certainty, and there is nothing to suggest that a potential chapter 11 filing will harm the Brazilian postpetition financing market.

10.     Fourth, the Association's position is further undermined by the fact that an RJ debtor can enter a *falência* liquidation in Brazil at any time after the approval of its RJ plan.

---

[6] Also, the Brazilian Bankruptcy Law allows a debtor to file for an extrajudicial restructuring (*recuperação extrajudicial* or "**EJ**") within *two years* from confirmation of an RJ plan. *See* Law No. 11,101, art. 161, § 3 (Feb. 9, 2005) (Braz.). Although EJs do not have the same debtor protections compared to RJs, they do allow the debtor to restructure virtually all claims that would be subject to an RJ, with certain limited exclusions. *See id.*, art. 161, § 1; *see also* Aug. 14, 2025, Hr'g Tr. at 158:22–25, 159:1–3 (Aug. 14, 2025). This means that postpetition financing obligations could be restructured in Brazil as early as two years following the confirmation of an RJ plan.

[7] Indeed, as explained by V.tal's Brazilian legal expert, the Brazilian Bankruptcy Law provisions regarding postpetition financing, particularly as amended in 2020, were expressly modeled on and influenced by the U.S. chapter 11 regime. *See* Aug. 14, 2025, Hr'g Tr. at 182:20–25, 183:1–12.

Presumably, lenders are most interested in being repaid on their postpetition loans on a timely basis. It defies logic that prospective lenders *would prefer* that a Brazilian debtor's only option following approval of its RJ plan is to enter a liquidation—particularly given the material delays (on average, between six and sixteen years) and diminished recoveries associated with a *falência*.[8] Rather, the more reasonable conclusion would be that prospective lenders should prefer that a distressed borrower has access to a restructuring procedure under which it can more effectively protect asset values and provide timely, materially higher recoveries to its creditors—including its secured exit financing lenders.

11. Finally, the Association's concerns regarding a restructuring of postpetition financing secured by "fiduciary liens" demonstrates a fundamental misunderstanding of the rights of secured creditors under the Bankruptcy Code. While the Brazilian Bankruptcy Law excludes certain claims, including fiduciary liens, from restructurings in Brazil[9] that would be subject to restructuring in a U.S. chapter 11 case, the Bankruptcy Code provides a robust set of statutory protections for secured creditors that Brazilian Bankruptcy Law largely lacks.[10] A debtor cannot "misuse the DIP financing mechanism" in chapter 11. Amicus Brief Motion at 5. To the contrary, the Bankruptcy Code vehemently respects and protects the interests of creditors in their collateral.[11] Among other things, secured creditors are entitled to "adequate protection" (which

---

[8] *See* Aug. 14, 2025, Hr'g Tr. at 118:19–25, 119:1–6, 119:20–25, 120:1–5, 136:16–18, 138:5–20, 139:13–25, 140:1–25, 141:1–25, 142:1–16, 143:21–24, 145:1–25, 146:1–3, 146:14–25, 147:1–20 (discussing impact of *falência* proceedings, including on recoveries); *id*. at 137:2–21 (discussing timeline for *falência* proceedings).

[9] Certain claims, including, among others, claims secured by fiduciary liens and/or guarantees and certain postpetition claims arising out of executory take-or-pay contracts, are excluded from the scope of a Brazilian RJ proceeding under Brazilian Bankruptcy Law. *See* Padis Decl. [ECF No. 47] ¶¶ 21, 24. *See also* Aug. 14, 2025, Hr'g Tr. at 150:9–25, 151:1–3.

[10] *See, e.g.*, 11 U.S.C §§ 361, 362(d), 363(e), 363(k), 364, 506, 507, 552(b), 1111(b), 1129(b); *see also* Aug. 14, 2025, Hr'g Tr. at 147:15–17.

[11] *See supra* note 10.

7

may take the form of periodic cash payments, postpetition interest or fees, or the granting of additional or replacement liens) [12] to safeguard their interest in collateral during the chapter 11 case, and most importantly, secured creditors are entitled to receive the full value of their collateral under any chapter 11 plan.[13] Accordingly, the Bankruptcy Code ensures that secured creditors' interests are fully preserved, dispelling any baseless suggestion that a chapter 11 proceeding poses undue risks to lenders or uncertainty in the broader DIP financing market.

## CONCLUSION

12. For the foregoing reasons, the Foreign Representative respectfully requests that the Court deny the Amicus Brief Motion.

---

[12] *See* 11 U.S.C. § 361.
[13] *See* 11 U.S.C. § 1129(b)(2)(A).

Dated: August 18, 2025
      New York, New York

Respectfully submitted,

By:   */s/ Philip M. Abelson*
      Philip M. Abelson

**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
Claire M. Campbell (*pro hac vice* pending)
Peter Strom (*pro hac vice* pending)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar, as Petitioner and Foreign Representative*