# EXHIBIT A

*Translated from Portuguese*

**Hearing for Noncompliance with a Constitutional Principle (ADPF) 1.178**

Federal District

| | |
|---|---|
| **Reporting Judge** | : Justice FLÁVIO DINO |
| **Petitioner(s)** | : BRAZILIAN MINING INSTITUTE (IBRAM) |
| **Attorney(s)** | : WALFRIDO JORGE WARDE JUNIOR |
| **Attorney(s)** | : CELSO CALDAS MARTINS XAVIER |
| **Attorney(s)** | : RAFAEL RAMIRES ARAUJO VALIM |
| **Attorney(s)** | : DANIEL KAUFMAN SCHAFFER |
| **Respondent(s)** | : MUNICIPALITY OF ACAIACA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ACAIACA |
| **Respondent(s)** | : MUNICIPALITY OF AÇUCENA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF AÇUCENA |
| **Respondent(s)** | : MUNICIPALITY OF AIMORÉS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF AIMORÉS |
| **Respondent(s)** | : MUNICIPALITY OF ALPERCATA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ALPERCATA |
| **Respondent(s)** | : MUNICIPALITY OF ALVINÓPOLIS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ALVINÓPOLIS |
| **Respondent(s)** | : MUNICIPALITY OF BARRA LONGA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BARRA LONGA |
| **Respondent(s)** | : MUNICIPALITY OF BELO ORIENTE |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BELO ORIENTE |
| **Respondent(s)** | : MUNICIPALITY OF BOM JESUS DO GALHO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BOM JESUS DO GALHO |
| **Respondent(s)** | : MUNICIPALITY OF BUGRE |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BUGRE |

*Translated from Portuguese*

| | |
|---|---|
| **Respondent(s)** | : MUNICIPALITY OF CONSELHEIRO PENA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF CONSELHEIRO PENA |
| **Respondent(s)** | : MUNICIPALITY OF CORONEL FABRICIANO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF CORONEL FABRICIANO |
| **Respondent(s)** | : MUNICIPALITY OF CÓRREGO NOVO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF CÓRREGO NOVO |
| **Respondent(s)** | : MUNICIPALITY OF DIONÍSIO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF DIONÍSIO |
| **Respondent(s)** | : MUNICIPALITY OF ENGENHEIRO CALDAS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ENGENHEIRO CALDAS |
| **Respondent(s)** | : MUNICIPALITY OF FERNANDES TOURINHO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF FERNANDES TOURINHO |
| **Respondent(s)** | : MUNICIPALITY OF GALILÉIA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF GALILÉIA |
| **Respondent(s)** | : MUNICIPALITY OF GOVERNADOR VALADARES |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF GOVERNADOR VALADARES |
| **Respondent(s)** | : MUNICIPALITY OF IPABA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF IPABA |
| **Respondent(s)** | : MUNICIPALITY OF IPATINGA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF IPATINGA |
| **Respondent(s)** | : MUNICIPALITY OF ITUETA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ITUETA |
| **Respondent(s)** | : MUNICIPALITY OF MARIANA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF MARIANA |

*Translated from Portuguese*

**Respondent(s)** : MUNICIPALITY OF MATIPÓ

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF MATIPÓ

**Respondent(s)** : MUNICIPALITY OF NAQUE

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF NAQUE

**Respondent(s)** : MUNICIPALITY OF OURO PRETO

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF OURO PRETO

**Respondent(s)** : MUNICIPALITY OF PERIQUITO

**Attorney(s)**

: PUBLIC ATTORNEY OF THE MUNICIPALITY OF PERIQUITO

**Respondent(s)** : MUNICIPALITY OF PINGO D'ÁGUA

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF PINGO D'ÁGUA

**Respondent(s)** : MUNICIPALITY OF RAUL SOARES

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF RAUL SOARES

**Respondent(s)** : MUNICIPALITY OF RESPLENDOR

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF RESPLENDOR

**Respondent(s)** : MUNICIPALITY OF RIO DOCE

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF RIO DOCE

**Respondent(s)** : MUNICIPALITY OF SANTA CRUZ DO ESCALVADO

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SANTA CRUZ DO ESCALVADO

**Respondent(s)** : MUNICIPALITY OF SÃO DOMINGOS DO PRATA

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SÃO DOMINGOS DO PRATA

**Respondent(s)** : MUNICIPALITY OF SÃO JOSÉ DO GOIABA

**Attorney(s)** : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SÃO JOSÉ DO GOIABA

**Respondent(s)** : MUNICIPALITY OF SÃO PEDRO DOS FERROS

*Translated from Portuguese*

| | |
|---|---|
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SÃO PEDRO DOS FERROS |
| **Respondent(s)** | : MUNICIPALITY OF SEM-PEIXE |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SEM-PEIXE |
| **Respondent(s)** | : MUNICIPALITY OF SOBRÁLIA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SOBRÁLIA |
| **Respondent(s)** | : MUNICIPALITY OF TUMIRITINGA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF TUMIRITINGA |
| **Respondent(s)** | : MUNICIPALITY OF ARACRUZ |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ARACRUZ |
| **Respondent(s)** | : MUNICIPALITY OF BAIXO GUANDU |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BAIXO GUANDU |
| **Respondent(s)** | : MUNICIPALITY OF COLATINA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF COLATINA |
| **Respondent(s)** | : MUNICIPALITY OF CONCEIÇÃO DA BARRA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF CONCEIÇÃO DA BARRA |
| **Respondent(s)** | : MUNICIPALITY OF MARILÂNDIA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF MARILÂNDIA |
| **Respondent(s)** | : MUNICIPALITY OF SÃO MATEUS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SÃO MATEUS |
| **Respondent(s)** | : MUNICIPALITY OF ALCOBAÇA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ALCOBAÇA |
| **Respondent(s)** | : MUNICIPALITY OF CARAVELAS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF CARAVELAS |

*Translated from Portuguese*

| | |
|---|---|
| **Respondent(s)** | : MUNICIPALITY OF NOVA VIÇOSA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF NOVA VIÇOSA |
| **Respondent(s)** | : MUNICIPALITY OF PRADO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF PRADO |
| **Respondent(s)** | : MUNICIPALITY OF ANTONIO DIAS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ANTONIO DIAS |
| | |
| **Respondent(s)** | : MUNICIPALITY OF GONZAGA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF GONZAGA |
| | |
| **Respondent(s)** | : MUNICIPALITY OF IAPU |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF IAPU |
| **Respondent(s)** | : MUNICIPALITY OF PONTE NOVA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF PONTE NOVA |
| **Respondent(s)** | : MUNICIPALITY OF RIO CASCA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF RIO CASCA |
| | |
| **Respondent(s)** | : MUNICIPALITY OF SOORETAMA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SOORETAMA |
| | |
| **Respondent(s)** | : MUNICIPALITY OF MUCURI |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF MUCURI |
| **Respondent(s)** | : MUNICIPALITY OF BRUMADINHO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BRUMADINHO |
| **Respondent(s)** | : MUNICIPALITY OF MARIO CAMPOS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF MARIO CAMPOS |
| **Respondent(s)** | : MUNICIPALITY OF BARÃO DE COCAIS |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF BARÃO DE COCAIS |

*Translated from Portuguese*

| | |
|---|---|
| **Respondent(s)** | : MUNICIPALITY OF ITABIRA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ITABIRA |
| **Respondent(s)** | : MUNICIPALITY OF ITABIRITO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF ITABIRITO |
| **Respondent(s)** | : MUNICIPALITY OF NOVA LIMA |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF NOVA LIMA |
| **Respondent(s)** | : MUNICIPALITY OF SÃO GONÇALO DO RIO ABAIXO |
| **Attorney(s)** | : PUBLIC ATTORNEY OF THE MUNICIPALITY OF SÃO GONÇALO DO RIO ABAIXO |
| **Amicus Curiae** | : NATIONAL ASSOCIATION OF PEOPLE AFFECTED BY DAMS |
| **Attorney(s)** | : MANOEL CAETANO FERREIRA FILHO |
| **Amicus Curiae.** | : ASSOCIATION OF MUNICIPALITIES OF THE STATE OF MINAS GERAIS - AMM |
| **Attorney(s)** | : ACACIO WILDE EMILIO DOS SANTOS |
| **Amicus Curiae.** | : INSTITUTO CLIMA DE INOVACAO E TECNOLOGIA LTDA |
| **Attorney(s)** | : MARIA TEREZA UILLE GOMES ET AL. |
| **Amicus Curiae.** | : PUBLIC CONSORTIUM FOR THE DEFENSE AND REVITALIZATION OF THE DOCE RIVER |
| **Attorney(s)** | : JOSE EDUARDO MARTINS CARDOZO |
| **Amicus Curiae.** | : GENERAL LABOR UNION (CUT) |
| **Attorney(s)** | : JOSE EYMARD LOGUERCIO |
| **Amicus Curiae.** | : BRAZILIAN CONFEDERATION OF MUNICIPALITIES |
| **Attorney(s)** | : MÁRTIN PERIUS HAEBERLIN |
| **Amicus Curiae.** | : BRAZILIAN CONFEDERATION OF MANUFACTURERS (CNI) |
| **Attorney(s)** | : CASSIO AUGUSTO MUNIZ BORGES |
| **Amicus Curiae.** | : ASSOCIATION OF DESCENDANT QUILOMBOLA AND RURAL FAMILY FARMERS IN SAO DOMINGOS - SAPE DO NORTE CONCEICAO DA BARRAES |

6

*Translated from Portuguese*

| | |
|---|---|
| **Amicus Curiae.** | : ASSOCIATION OF QUILOMBO DESCENDANTS OF RURAL HOUSEHOLD FARMERS AND FISHERS. OF THE COMMUNITY OF M.DA ONCA-SAPE DO NORTE CONC. DA BARRA-ES-ARMO |
| **Attorney(s)** | : ANTONIO CARLOS DE ALMEIDA CASTRO |
| **Amicus Curiae.** | : FEDERATION OF MANUFACTURERS OF THE STATE OF ESPIRITO SANTO |
| **Attorney(s)** | : RODRIGO AMORIM CRISTELLO |
| **Amicus Curiae.** | : FEDERATION OF MANUFACTURERS OF THE STATE OF MINAS GERAIS (FIEMG) |
| **Attorney(s)** | : LETICIA DE OLIVEIRA LOURENCO ET AL. |
| **Amicus Curiae.** | : TUPINIKIM INDIGENOUS ASSOCIATION OF ALDEIA AREAL (AITAA) |
| **Attorney(s)** | : CELSO CORDEIRO DE ALMEIDA E SILVA ET AL. |

Docusign Envelope ID: 5214A581-3E1F-4B72-ABCA-B7C4C0ED076A

*Translated from Portuguese*

**DECISION:**

**Constitutional Law. National Sovereignty. Brazil is not subject to court decisions, laws, decrees, executive orders and the like issued by a foreign state. As a rule, such acts cannot be effective in Brazilian territory without the due incorporation and agreement of the sovereign bodies governed by the Brazilian constitution and laws. Legal entities and natural persons are prohibited from acting in Brazilian territory in disagreement with article 17 of the Introductory Act of the Rules of Brazilian Law (LINDB). Decision for the case at hand, with grounds that extend to all similar cases. Legal certainty. Rationale for the decision is binding and enforceable against all.**

**THE HON. JUSTICE FLÁVIO DINO:**

1. The present action, brought by the Brazilian Mining Institute (IBRAM), has as its object "the (unconstitutional) legal interpretation, which has been adopted by several Brazilian municipalities, that they could litigate directly in foreign jurisdictions, to the detriment of Brazilian jurisdiction, regarding facts that occurred in Brazil and are governed by Brazilian legislation" (e-doc. 1).

2. The plaintiff claims that this practice undermines national sovereignty by allowing sub-national entities (municipalities) to submit to the jurisdiction of foreign states, renouncing the immunity of the Brazilian state from the jurisdiction of other national states. Thus, by litigating in foreign jurisdictions, municipalities are, in theory, undermining the federative pact, as they are exceeding the powers granted to them by the Constitution, which do not include powers to act internationally.

3. By acting in this way - as if they were endowed with international legal personality - the municipalities allegedly violate the fundamental precepts governing **national sovereignty** (arts. 1, I; 4, I and V; 13; and 21, I, of the Brazilian Constitution), the **federative pact** (arts. 1, introductory paragraph; 18, introductory paragraph; and 30, of the Brazilian Constitution), **the organization and powers attributed to the Brazilian Judiciary** (arts. 2; 5, XXXV, LIII, LIV, LV and LXXVIII; 93, IX; 127; 129; and 134, of the Brazilian Constitution) and **the rules and principles that guide the actions of the Public Administration, especially that of municipalities** (arts. 5, II, XIV and XXXIII; 37, introductory paragraph; 52, V; 131; and 132, introductory paragraph, of the Brazilian Constitution) (e-doc. 1).

4. The applicant wants this Supreme Court to establish the following Thesis:

> "A legal interpretation that authorizes Brazilian municipalities to perform acts that enable, determine or promote their own participation (either as plaintiffs or as interested parties) in lawsuits before foreign jurisdictions is unconstitutional, due to violation of articles: 1, introductory paragraph and part I; 2, 4, parts I and V; 5, parts XIV, XXXIII, XXXV, LIII, LIV, LV and LXXVIII; 13; 18, introductory paragraph; 21, part I; 30; 37, introductory paragraph; 52, part V; 93, part IX; 127; 129; 131; 132, introductory paragraph; and 134; all of the Constitution" (e-doc. 1).

5. On **24-Jun-2024**, I adopted the summary proceeding set forth in art. 12 of Law No. 9.868/99 (e-doc. 47).

6. As a result, municipalities in the states of Minas Gerais, Espírito Santo and Bahia, listed in the complaint (e-docs. 1 and 4), submitted their respective information.

7. In turn, based on **Opinion No. 00393/2024/PGU/AGU**, of the National Prosecutor's Office for International Affairs – PNAI, the Office of the Federal Attorney General (AGU) argued that the contested legal interpretation violates the Federal Constitution for the following reasons:

8

*Translated from Portuguese*

"a) first, for **violating national sovereignty, the federal pact and the organization of the Brazilian State**, since a municipal federative entity **is not empowered by the Constitution to act in a foreign court**, due to the violation of articles 1, introductory paragraph and part I; 18, introductory paragraph, 21, I, 30 and 84, VII, of the Brazilian Constitution;

b) second, also for violation of national sovereignty, but this time in its internal aspect, because it is not permitted for a federal entity to submit legal claims to a foreign court as a way of institutionally **avoiding the Brazilian Judiciary** and the other institutions set forth in the Federal Constitution, in violation of articles 2; 5, parts XXXV, LIII, LIV, LV, LX and LXXVIII; 93, part IX; 109, part II; and127 of the Brazilian Constitution." (e-doc. 373)

8. Through Petition No. 130.472/2024, IBRAM reported a new violation allegedly found in contracts between municipalities and law firms based in other countries: the signing of hazardous contracts, based on success fees, with a provision of remuneration for lawyers at high percentages of the compensation amount, exposing the Treasury and the victims of socio-environmental disasters to an immense risk of economic damage (e-doc. 428).

9. In view of this, on **12-Oct-2024**, I granted a precautionary measure (e- doc. 438) in this action, which was **endorsed by the on-line plenary session of the Federal Supreme Court (STF)** held from 25-Oct-2024 to 05-Nov-2024 (e-docs. 661 and 743):

"It is pertinent to assess the conditions in which Brazilian municipalities litigate before foreign courts, since this aspect has consequences for a portion of Brazilian public assets and for the effective and full reparation of damages perpetrated on Brazilian soil.

Accordingly, I order the municipalities listed in these proceedings as having filed lawsuits in foreign courts to submit any contracts they may have signed with law firms in other countries.

I also order that these municipalities under no circumstances pay fees related to legal actions in foreign courts without the prior examination of legality by the sovereign bodies of the Brazilian State, especially this Federal Supreme Court (STF)" (e-doc. 743).

10. On **17-Oct-2024**, the municipalities named in the lawsuit requested that a **Public Hearing** be called, based on articles 6, paragraph 1 of Law No. 9.882/99 and art. 21, XVII, of the Rules of Court of the STF, in view of "the important consequences of the judgment of this ADPF for the effective exercise of the political autonomy of subnational entities, not only in relation to the Petitioners, but for the very constitutional design of the Brazilian Federation, in view of the inter-federative and international institutional relations of the political entities" (e-doc. 506).

11. In a single-judge decision on **05-Mar-2025**, I stated:

"6. As they are public entities that are part of the Brazilian federal state, the municipalities are bound by the STF's decisions to a higher degree if they wish to adhere to the ratified agreement. **Any other commitments made, or even the consequences of foreign judgments, are subordinate to Brazil's sovereign bodies, especially as this case concerns part of national public property, under the management of federated units. They are autonomous, but not sovereign, according to the basic rule that applies here.**" (e-doc. 785)

9

*Translated from Portuguese*

12. The plaintiff requested on **22-Feb-2025**:

"a) suspension of the effectiveness of all contracts, addenda and equivalent legal instruments entered into between the Municipalities indicated in the list under ID No. 33c32db7 and any third parties, national or foreign, whether law firms or not, whose purpose is to advise, represent, defend and/or finance any lawsuits in progress or to be filed in foreign jurisdictions;

b) successively, it is requested that the effectiveness of all clauses that authorize the collection of any amounts from the Municipalities, especially related to legal fees and basic fees, be suspended in the event of the execution of an agreement on the national level, a request for discontinuance, or termination of the engagements." (e-doc. 779)

13. On **06-Mar-2025**, through **Petition No. 26.976/2025**, the Municipalities of Ouro Preto, Mariana, Aimorés, Baixo Guandu, Bom Jesus do Galho, Coronel Fabriciano, Ipaba, Marilândia and Resplendor **reported that they had obtained an injunction from the English Court against IBRAM**. The decision orders "a) that IBRAM withdraw the new request for temporary injunction; b) that in its motion for discontinuance, IBRAM expressly recognize and record that, if granted, the new request for temporary injunction would cause serious and irreparable harm to the Plaintiff Municipalities' ability to participate in the English Action, violating their right to a fair trial." They report that "the precautionary measure was granted in favor of the Municipalities on March 3, 2025 and **takes effect immediately**" (e-doc. 787).

14. In addition, by means of **OFFICIAL LETTER 026/2025/GE/BHE, of May 5, 2025**, Federal Deputy Greyce de Queiroz Elias requested:

"Considering that the action before the English courts was brought by a series of municipalities, by their own representative bodies, in an autonomous way, based on this decision issued in the ADPF 1178 case, it is clear that the Municipalities will not be able to receive any amounts from the English courts. This is a new fact subsequent to Your Honor's decisions.

...

In view of this backdrop, the municipalities' adherence to the Renegotiation Agreement is vital for the petitioners and their citizens, since without financial resources the achievement of extremely important public policies will be severely compromised. In view of the above, due to a new fact arising from the ADPF 1178 case file, we ask that Your Honor, for the benefit of all residents of the municipalities, grant a 60-day extension of the deadline for municipalities to adhere to the Renegotiation Agreement." (e-doc. 811)

15. Finally, Petition No. 55.234/2025, the National Front for Mayors (FNP) asked to be admitted as an amicus curiae, on the basis of article 138 of the Code of Civil Procedure (CPC); 7, paragraph 2, of Law No. 9.868/99 and 21, XVIII, of the Rules of Court of the STF (e-doc. 806).

This is the summarized statement of facts. **Here is my analysis.**

16. When this ADPF was filed, I believed there was no urgent need for a more exhaustive judicial ruling on the issues brought before the STF.

17. However, in this period of just over a year, the empirical support for this controversy has changed significantly, especially **with the strengthening of waves of imposition of force by certain nations on others. In practice, this has undermined the essential postulates of international law**. Multilateral

*Translated from Portuguese*

institutions are absolutely ignored. International treaties are openly flouted, including those for the protection of civilian populations in terrible armed conflicts, including the elderly, children, people with disabilities and women. **Different types of protectionism and neo-colonialism are used against the weakest peoples, without adequate bilateral dialogues or submission to supranational bodies.**

18. In this context, Brazil has been the target of various sanctions and threats aimed at imposing thoughts that can only be "ratified" by the bodies that exercise national sovereignty.

19. Thus, on the basis of art. 139, IV, of the Code of Civil Procedure (CPC) and art. 21, II, of the Rules of Court of the STF, this decision comes in response to **Petition No. 26.976/2025, dated 06-Mar-2025 - referred to above -, which communicates the granting of a precautionary measure by the English courts, for the benefit of Municipalities interested in this case**, under the following terms:

"BE IT ORDERED THAT:

1. The **Defendant petitioned the STF to drop its request for provisional urgent injunctive relief** to suspend the "effectiveness of all contracts, addenda and equivalent legal instruments entered into between the municipalities listed under ID. No. 33c32db7 and any third parties, national or foreign, whether law firms or not, whose purpose is to advise, represent, defend and/or finance any lawsuits in progress or to be filed in foreign jurisdictions", and the effectiveness of all clauses that authorize the collection of any amounts from the Municipalities, especially related to legal fees and basic fees, be suspended in the event of the execution of an agreement on the national level, a request for discontinuance, or termination of the engagements."

2. The Defendant's petition in paragraph 1 above must expressly acknowledge and record that, in the event that the relief sought in paragraph 1 above is granted before the conclusion of the English Action (Action Number: HT-2022-000304), it would likely cause serious and irremediable harm to the ability of the Plaintiff Municipalities to participate in the English Action (Action Number: HT-2022-000304) and would violate their right to a fair trial." (e-doc. 792)

20. This fact makes it necessary to address the following **question**: Is the aforementioned decision by a British body binding on public and private legal entities based and/or operating in Brazil? The answer is **no**, for the following reasons.

21. Notwithstanding a more detailed assessment of the matter when the merits of this ADPF are adjudged, it should be pointed out that the submission of one national state to the jurisdiction of another constitutes an authentic "act by right of dominion" (acto jure imperii), understood as an exercise of its sovereign prerogatives. In this respect, as the illustrious retired Justice of the Supreme Court, **Ellen Gracie**, explains in an opinion attached to the case record:

"30. **The fact that a Brazilian municipality initiates a legal action in a foreign court implies subjecting Brazil to the sovereignty of another country, which is forbidden to municipalities by the principle of sovereign equality**. Thus, in line with the authoritative legal teachings and caselaw of the STF, I believe that the acts questioned in the ADPF filed under No. 1.178 simultaneously constitute an excess of municipal autonomy and a violation of national sovereignty. " (e-doc. 113)

22. In the same vein, I would like to highlight an excerpt from Professor **Daniel Sarmento**'s opinion, attached to the case record:

*Translated from Portuguese*

"The central foundation of immunity from jurisdiction is the protection of sovereignty, which, as seen above, is constitutionally protected. **As the state is sovereign, it must not submit to judgments made by other states, as this would imply recognizing a subjection that is incompatible with the idea of sovereignty**. In addition, jurisdictional immunity is based on equality between states - which, in Brazil, is also a constitutional principle (art. 4, part V, of the Brazilian Constitution/88) - because **if there is equality, then one state must not submit to the power of another**. Hence the saying that inspired the institution: *par in parem non habet imperium* (between equals there is no empire). " (e-doc. 120)

23. In addition to sovereignty - the foundation of the Republic, according to art. 1, I, of the Brazilian Constitution - there is equality between states (art. 4, V, of the Brazilian Constitution), which makes it impossible for the Brazilian state to submit to the jurisdiction of another, since **peers cannot judge other peers**. It is in this light that Petition No. 26.976/2025 should be analyzed: the undeniable compatibility with national sovereignty and equality between national states.

24. In fact, this English precautionary decision shows that, at the current juncture, there is a very high risk that lawsuits brought by sub-national entities in foreign courts will serve as a vehicle or pretext for sanctions and measures against Brazilian public property.

25. It is worth highlighting this Court's decision in **ADC 51**, in which it declared the constitutionality of the direct petition model set forth by art. 11 of Law No. 12.965/2014 - Brazilian Civil Rights Framework for the Internet and art. 18 of the Budapest Convention (Decree No. 11.491/2023), which define the obligation of internet connection and application providers to submit to national legislation, **based on national sovereignty**:

"DECLARATORY ACTION FOR CONSTITUTIONALITY. RULES OF INTERNATIONAL LEGAL COOPERATION. OBTAINING INFORMATION. COMPANIES LOCATED ABROAD. DECREE No. 3.810/2001; ART. 237, II OF THE CODE OF CIVIL PROCEDURE (CPP); ARTS. 780 AND 783 OF THE CODE OF CRIMINAL PROCEDURE (CPP); ART. 11 OF THE BRAZILIAN CIVIL RIGHTS FRAMEWORK FOR THE INTERNET; ART. 18 OF THE BUDAPEST CONVENTION. CONSTITUTIONALITY. ACTION ADC ADMITTED FOR PROCESSING. REQUEST PARTIALLY GRANTED. 1. The constitutional controversy raised in the ADC is, strictly speaking, broader than simply declaring the validity of the use of letters rogatory and MLAT treaties for criminal investigation purposes. The scope of the declaratory action includes not only examining the constitutionality of the provisions invoked by the plaintiffs, but also of the rule set out in art. 11 of the Brazilian Civil Rights Framework for the Internet and art. 18 of the Budapest Convention. 2. Article 11 of the Brazilian Civil Rights Framework for the Internet, which is supported by article 18 of the Budapest Convention, is a specific rule in relation to the general rules of the MLAT. This provision ensures the application of Brazilian law in relation to activities involving the collection, storage, safekeeping and processing of records, data and electronic communications that take place in national territory, provided that at least one of the acts or terminals is in national territory, even if the legal entity that holds this information is located or stores it abroad. 3. **The cases of direct requisition provided for in art. 11 of the Brazilian Civil Rights Framework for the Internet and art. 18 of the Budapest Convention reaffirm the principles of sovereignty and national independence, giving concrete form to the state's duty to protect the fundamental rights and public safety of Brazilian citizens or residents.** 4. Constitutionality of the provisions of the MLAT, the CPC and the CPP that deal with international legal cooperation and the issuance of letters rogatory, in cases where the communication activity or the provision of such services did not take place in national territory. 5. These provisions coexist with the

*Translated from Portuguese*

possibility of directly requesting data, records and electronic communications in the cases of art. 11 of the Brazilian Civil Rights Framework for the Internet and art. 18 of the Budapest Convention. 6. Request granted in part to declare the **constitutionality** of the provisions indicated and of the **possibility for Brazilian authorities to directly request data and electronic communications from technology companies in cases of data collection and processing activities in Brazil, possession or control of data by a company with representation in Brazil and crimes committed by individuals located in Brazilian territory**." (ADC 51, reporting judge Justice Gilmar Mendes, plenary session, published in Electronic Court Journal (DJe) of 28-Apr-2023)

26. As can be seen, **the precedent affirms the criterion of territoriality**, determining that the Brazilian authority has jurisdiction over data collected and processed in the country, thus reiterating that **extraterritoriality, in the legal sphere, is absolutely exceptional**. That's why **art. 17 of the LINDB** is correct in stating that:

"**No laws, acts, and judgments of another country, and no declarations of will, will be valid** in Brazil if they violate national sovereignty, public policy, and proper ethics".

## CONCLUSIONS:

27. It is therefore important to <u>clarify</u> that:

I) the injunction granted by the English courts, referred to in e-doc. 787, is declared ineffective, as it infringes the Brazilian Constitution (art. 1, I) and art. 17 of the LINDB;

II) Foreign court decisions can only be enforced in Brazil through the **appropriate ratification** process, or observance of international judicial cooperation mechanisms, according to articles 105, I, "i", of the Federal Constitution, and 26 and 27 of the CPC;

III) foreign laws, administrative acts, executive orders and similar texts do not produce effects in relation to: a) natural persons for acts in Brazilian territory; b) legal relationships entered into in Brazil; c) property located, deposited or stored in Brazil, and d) companies operating here. A different understanding requires an express provision in Brazilian domestic law and/or a decision by the competent Brazilian judicial authority;

IV) any violation of parts II and III constitutes a violation of national sovereignty, public policy and proper customs. Therefore, **the ineffectiveness of such laws, acts and sentences originating in a foreign country is presumed**. This presumption can only be overturned, from now on, by an express decision of the STF, in the context of a Constitutional Complaint, offered by an aggrieved party, or other appropriate legal action, subject to the jurisdiction set forth in art. 105, I, "i", of the Brazilian Constitution; and

V) Brazilian states and municipalities are henceforth prevented from filing new lawsuits before foreign courts, out of respect for national sovereignty and the powers granted to the Brazilian Judiciary by the Constitution.

28. **These grounds and rules, which are effective and binding on all, apply to the controversy portrayed in these cases and in all others in which a foreign jurisdiction - or another body of a foreign state - seeks to impose unilateral acts, in Brazilian territory, over the authority of Brazil's sovereign bodies. This clarification aims to remove serious and current threats to legal certainty in Brazilian territory.**

13

*Translated from Portuguese*

29. Thus, impositions, restrictions on rights or instruments of coercion carried out by legal entities organized under Brazilian law and having their headquarters and management in Brazil, as well as those with a subsidiary or any professional, commercial or intermediary activity in the Brazilian market, arising from determinations contained in foreign unilateral acts, are prohibited.

30. I accept the request made in e-doc. 506 to CALL a **Public Hearing**, pursuant to articles 932, VIII, of the CPC; 6, paragraph 1. of Law No. 9.882/99 and 21, XVII, of the Rules of Court of the STF, given the presence of relevant public interest in the case, in order to allow this Court to move forward in the discussion of the merits in this ADPF, with all the complexities portrayed in this decision. The schedule and other details of the Public Hearing, to be chaired by this reporting judge and coordinated by judge Amanda Thomé, will be published in a supplementary Order in due course.

31. Considering the fulfillment of the requirements of significance of the disputed constitutional issue and adequate representativeness (art. 7, paragraph 2, Law No. 9.868/99 and art. 6, paragraph 2, of Law No. 9.882/99), I GRANT the request for the National Front of Mayors (e-doc. 806) to join the case as an amicus curiae.

Notify the following persons of this decision:

a) the parties and the amici curiae;

b) the President of the Republic and the Presidents of the Federal Senate and the Chamber of Deputies, since the case is related to the matter of national sovereignty; and

c) the Governors' Forum, the National Confederation of Municipalities (CNM) and the National Front of Mayors (FNP), due to federative issues.

In view of the risks and possibilities of undue operations, transactions and impositions **involving the Brazilian Financial System**, I order the following persons to be notified: the Central Bank; the Brazilian Federation of Banks (Febraban); the National Confederation of Financial Institutions (CNF) and the National Confederation of General Insurance, Private Pension and Life, Supplementary Health and Capitalization Companies (CNseg). **Transactions, operations, cancellations of contracts, blocking of assets, transfers abroad (or from abroad) by a foreign state, <u>in disagreement with the terms of this decision</u>, require the express authorization of this Court, within the scope of this ADPF**.

Notify the Office of the Chief Public Attorney of Brazil (PGR).

Send to the Secretariat of Justice (SEJ) for measures to be taken.

Publish this decision.

Brasília, August 18, 2025.

Justice FLÁVIO DINO

Reporting Judge

*Document signed electronically*

Document signed digitally according to Provisional Decree (MP) No. 2.200-2 of 24-Aug-2001. This document can be accessed at the website http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp by entering the code 4600-4785-8952-3FD4 and password 5737-D961-639B-D8B9

*Translated from Portuguese*

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**CERTIFICATION**

This is to certify that the foregoing translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "2025.8.18 - ADPF - Decisão Monocrática Dino.pdf," which was written in Portuguese. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 19, 2025.

WILLIAM RICHARD FELIX STEINMETZ

Email: william.steinmetz@pm.me

DocuSigned by:

044497E575D84B0...

15