# EXHIBIT B

ARGUIÇÃO DE DESCUMPRIMENTO DE PRECEITO FUNDAMENTAL 1.178
DISTRITO FEDERAL

| | |
|---|---|
| RELATOR | : MIN. FLÁVIO DINO |
| REQTE.(S) | : INSTITUTO BRASILEIRO DE MINERACAO IBRAM |
| ADV.(A/S) | : WALFRIDO JORGE WARDE JUNIOR |
| ADV.(A/S) | : CELSO CALDAS MARTINS XAVIER |
| ADV.(A/S) | : RAFAEL RAMIRES ARAUJO VALIM |
| ADV.(A/S) | : DANIEL KAUFMAN SCHAFFER |
| INTDO.(A/S) | : MUNICÍPIO DE ACAIACA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE ACAIACA |
| INTDO.(A/S) | : MUNICÍPIO DE AÇUCENA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE AÇUCENA |
| INTDO.(A/S) | : MUNICÍPIO DE AIMORÉS |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE AIMORÉS |
| INTDO.(A/S) | : MUNICÍPIO DE ALPERCATA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE ALPERCATA |
| INTDO.(A/S) | : MUNICÍPIO DE ALVINÓPOLIS |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE ALVINÓPOLIS |
| INTDO.(A/S) | : MUNICÍPIO DE BARRA LONGA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE BARRA LONGA |
| INTDO.(A/S) | : MUNICÍPIO DE BELO ORIENTE |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE BELO ORIENTE |
| INTDO.(A/S) | : MUNICÍPIO DE BOM JESUS DO GALHO |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE BOM JESUS DO GALHO |
| INTDO.(A/S) | : MUNICÍPIO DE BUGRE |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE BUGRE |
| INTDO.(A/S) | : MUNICÍPIO DE CONSELHEIRO PENA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE CONSELHEIRO PENA |
| INTDO.(A/S) | : MUNICÍPIO DE CORONEL FABRICIANO |

**ADPF 1178 / DF**

| | |
|---|---|
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE CORONEL FABRICIANO |
| INTDO.(A/S) | : MUNICÍPIO DE CÓRREGO NOVO |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE CÓRREGO NOVO |
| INTDO.(A/S) | : MUNICÍPIO DE DIONÍSIO |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE DIONÍSIO |
| INTDO.(A/S) | : MUNICÍPIO DE ENGENHEIRO CALDAS |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE ENGENHEIRO CALDAS |
| INTDO.(A/S) | : MUNICÍPIO DE FERNANDES TOURINHO |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE FERNANDES TOURINHO |
| INTDO.(A/S) | : MUNICÍPIO DE GALILÉIA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE GALILÉIA |
| INTDO.(A/S) | : MUNICÍPIO DE GOVERNADOR VALADARES |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE GOVERNADOR VALADARES |
| INTDO.(A/S) | : MUNICÍPIO DE IPABA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE IPABA |
| INTDO.(A/S) | : MUNICÍPIO DE IPATINGA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE IPATINGA |
| INTDO.(A/S) | : MUNICÍPIO DE ITUETA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE ITUETA |
| INTDO.(A/S) | : MUNICÍPIO DE MARIANA |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE MARIANA |
| INTDO.(A/S) | : MUNICÍPIO DE MATIPÓ |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE MATIPÓ |
| INTDO.(A/S) | : MUNICÍPIO DE NAQUE |
| ADV.(A/S) | : PROCURADOR-GERAL DO MUNICÍPIO DE NAQUE |
| INTDO.(A/S) | : MUNICÍPIO DE OURO PRETO |

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

| | |
|---|---|
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE OURO PRETO |
| **INTDO.(A/S)** | : MUNICÍPIO DE PERIQUITO |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE PERIQUITO |
| **INTDO.(A/S)** | : MUNICÍPIO DE PINGO D'ÁGUA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE PINGO D'ÁGUA |
| **INTDO.(A/S)** | : MUNICÍPIO DE RAUL SOARES |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE RAUL SOARES |
| **INTDO.(A/S)** | : MUNICÍPIO DE RESPLENDOR |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE RESPLENDOR |
| **INTDO.(A/S)** | : MUNICÍPIO DE RIO DOCE |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE RIO DOCE |
| **INTDO.(A/S)** | : MUNICÍPIO DE SANTA CRUZ DO ESCALVADO |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SANTA CRUZ DO ESCALVADO |
| **INTDO.(A/S)** | : MUNICÍPIO DE SÃO DOMINGOS DO PRATA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SÃO DOMINGOS DO PRATA |
| **INTDO.(A/S)** | : MUNICÍPIO DE SÃO JOSÉ DO GOIABA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SÃO JOSÉ DO GOIABA |
| **INTDO.(A/S)** | : MUNICÍPIO DE SÃO PEDRO DOS FERROS |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SÃO PEDRO DOS FERROS |
| **INTDO.(A/S)** | : MUNICÍPIO DE SEM-PEIXE |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SEM-PEIXE |
| **INTDO.(A/S)** | : MUNICÍPIO DE SOBRÁLIA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SOBRÁLIA |

3

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

| | |
|---|---|
| **INTDO.(A/S)** | : MUNICÍPIO DE TUMIRITINGA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE TUMIRITINGA |
| **INTDO.(A/S)** | : MUNICÍPIO DE ARACRUZ |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE ARACRUZ |
| **INTDO.(A/S)** | : MUNICÍPIO DE BAIXO GUANDU |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE BAIXO GUANDU |
| **INTDO.(A/S)** | : MUNICÍPIO DE COLATINA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE COLATINA |
| **INTDO.(A/S)** | : MUNICÍPIO DE CONCEIÇÃO DA BARRA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE CONCEIÇÃO DA BARRA |
| **INTDO.(A/S)** | : MUNICÍPIO DE MARILÂNDIA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE MARILÂNDIA |
| **INTDO.(A/S)** | : MUNICÍPIO DE SÃO MATEUS |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE SÃO MATEUS |
| **INTDO.(A/S)** | : MUNICÍPIO DE ALCOBAÇA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE ALCOBAÇA |
| **INTDO.(A/S)** | : MUNICÍPIO DE CARAVELAS |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE CARAVELAS |
| **INTDO.(A/S)** | : MUNICÍPIO DE NOVA VIÇOSA |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE NOVA VIÇOSA |
| **INTDO.(A/S)** | : MUNICÍPIO DE PRADO |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE PRADO |
| **INTDO.(A/S)** | : MUNICÍPIO DE ANTONIO DIAS |
| **ADV.(A/S)** | : PROCURADOR-GERAL DO MUNICÍPIO DE ANTONIO DIAS |

4

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

INTDO.(A/S)   : MUNICÍPIO DE GONZAGA
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE
         GONZAGA
INTDO.(A/S)   : MUNICÍPIO DE IAPU
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE IAPU
INTDO.(A/S)   : MUNICÍPIO DE PONTE NOVA
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE PONTE
         NOVA
INTDO.(A/S)   : MUNICÍPIO DE RIO CASCA
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE RIO
         CASCA
INTDO.(A/S)   : MUNICÍPIO DE SOORETAMA
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE
         SOORETAMA
INTDO.(A/S)   : MUNICÍPIO DE MUCURI
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE MUCURI
INTDO.(A/S)   : MUNICÍPIO DE BRUMADINHO
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE
         BRUMADINHO
INTDO.(A/S)   : MUNICÍPIO DE MARIO CAMPOS
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE MARIO
         CAMPOS
INTDO.(A/S)   : MUNICÍPIO DE BARÃO DE COCAIS
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE BARÃO
         DE COCAIS
INTDO.(A/S)   : MUNICÍPIO DE ITABIRA
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE ITABIRA
INTDO.(A/S)   : MUNICÍPIO DE ITABIRITO
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE
         ITABIRITO
INTDO.(A/S)   : MUNICÍPIO DE NOVA LIMA
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE NOVA
         LIMA
INTDO.(A/S)   : MUNICÍPIO DE SÃO GONÇALO DO RIO ABAIXO
ADV.(A/S)    : PROCURADOR-GERAL DO MUNICÍPIO DE SÃO

5

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

|  |  |
|---|---|
|  | GONÇALO DO RIO ABAIXO |
| AM. CURIAE. | : ASSOCIACAO NACIONAL DOS ATINGIDOS POR BARRAGENS |
| ADV.(A/S) | : MANOEL CAETANO FERREIRA FILHO |
| AM. CURIAE. | : ASSOCIACAO MINEIRA DE MUNICIPIOS - AMM |
| ADV.(A/S) | : ACACIO WILDE EMILIO DOS SANTOS |
| AM. CURIAE. | : INSTITUTO CLIMA DE INOVACAO E TECNOLOGIA LTDA |
| ADV.(A/S) | : MARIA TEREZA UILLE GOMES E OUTRO(A/S) |
| AM. CURIAE. | : CONSORCIO PUBLICO PARA DEFESA E REVITALIZACAO DO RIO DOCE |
| ADV.(A/S) | : JOSE EDUARDO MARTINS CARDOZO |
| AM. CURIAE. | : CENTRAL UNICA DOS TRABALHADORES-CUT |
| ADV.(A/S) | : JOSE EYMARD LOGUERCIO |
| AM. CURIAE. | : CONFEDERACAO NACIONAL DE MUNICIPIOS |
| ADV.(A/S) | : MÁRTIN PERIUS HAEBERLIN |
| AM. CURIAE. | : CONFEDERACAO NACIONAL DA INDUSTRIA |
| ADV.(A/S) | : CASSIO AUGUSTO MUNIZ BORGES |
| AM. CURIAE. | : ASSOCIACAO DOS REMAN.DOS QUILOMBOS DE PRODUTORES E PRODUTORAS RURAIS DA AGRIC.FAMILIAR DA COM.DE SAO DOMINGOS-SAPE DO NORTE CONCEICAO DA BARRAES |
| AM. CURIAE. | : ASSOCIACAO DOS REMANESCENTES DOS QUILOMBOS DE PROD.RURAIS DA AGRIC. FAMILIAR E PESQ. DA COM.DO M.DA ONCA-SAPE DO NORTE CONC. DA BARRA-ES-ARMO |
| ADV.(A/S) | : ANTONIO CARLOS DE ALMEIDA CASTRO |
| AM. CURIAE. | : FEDERACAO DAS INDUSTRIAS DO ESTADO DO ESPIRITO SANTO |
| ADV.(A/S) | : RODRIGO AMORIM CRISTELLO |
| AM. CURIAE. | : FEDERACAO DAS INDUSTRIAS DO ESTADO DE MINAS GERAIS - FIEMG |
| ADV.(A/S) | : LETICIA DE OLIVEIRA LOURENCO E OUTRO(A/S) |
| AM. CURIAE. | : ASSOCIACAO INDIGENA TUPINIKIM DA ALDEIA AREAL - AITAA |

6

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

**ADV.(A/S)**                  : CELSO  CORDEIRO  DE  ALMEIDA  E  SILVA  E
                              OUTRO(A/S)

## DECISÃO:

> **Direito  Constitucional.  Soberania
> Nacional. Inexistência de subordinação do
> Brasil a decisões judiciais, leis, decretos,
> ordens  executivas  e  similares,  emanadas
> de Estado estrangeiro. Não existe, como
> regra, eficácia de tais atos no território
> brasileiro,  sem  a  devida  incorporação  e
> concordância  dos  órgãos  de  soberania
> regrados  pela  Constituição  e  pelas  leis
> nacionais. Vedação a que pessoas jurídicas
> e naturais atuem no território do Brasil em
> desacordo  com  o  artigo  17  da  Lei  de
> Introdução às normas do Direito Brasileiro
> (LINDB). Decisão para o caso concreto,
> com fundamentos que se estendem a todos
> os  casos  similares.  Segurança  jurídica.
> *"Ratio decidendi"* com efeito vinculante e
> *erga omnes*.

## O SENHOR MINISTRO FLÁVIO DINO:

1.        A presente ação, proposta pelo Instituto Brasileiro de
Mineração (IBRAM), tem por objeto *"a interpretação jurídica
(inconstitucional), que vem sendo adotada por diversos Municípios brasileiros, de*

7

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

*que eles poderiam litigar diretamente perante jurisdições estrangeiras, em detrimento da jurisdição brasileira, sobre fatos ocorridos no Brasil e regidos pela legislação brasileira"* (e-doc. 1).

2.           O autor alega que a referida prática compromete a soberania nacional ao permitir que entes subnacionais (Municípios), submetam-se à jurisdição de Estados estrangeiros, renunciando à imunidade de jurisdição do Estado brasileiro em face de outros Estados nacionais. Assim, ao litigar em jurisdições estrangeiras, os Municípios atentam, em tese, contra o pacto federativo, porquanto extrapolam as competências que lhes foram atribuídas pela Constituição, as quais não abarcam poderes para atuação no âmbito internacional.

3.           Ao agir de tal modo - como se dotados de personalidade jurídica internacional - os Municípios supostamente violam os preceitos fundamentais que regem a **soberania nacional** (arts. 1º, I; 4º, I e V; 13; e 21, I, da CF), o **pacto federativo** (arts. 1º, *caput*; 18, *caput*; e 30, da CF), **a organização e as competências atribuídas ao Poder Judiciário brasileiro** (arts. 2º; 5º, XXXV, LIII, LIV, LV e LXXVIII; 93, IX; 127; 129; e 134, da CF) e **as regras e os princípios que norteiam a atuação da Administração Pública, sobretudo da municipal** (arts. 5º, II, XIV e XXXIII; 37, *caput*; 52, V; 131; e 132, *caput*, da CF)  (e-doc. 1).

4.           O requerente pretende que esta Suprema Corte fixe a seguinte Tese:

> *"É inconstitucional interpretação jurídica que autorize Municípios brasileiros a praticarem atos que possibilitem, determinem ou promovam a própria participação (seja como autores, seja como interessados) em ações judiciais perante jurisdições estrangeiras, por violação aos artigos: 1º, caput e inciso I; 2º, 4º, incisos I e V; 5º, incisos XIV, XXXIII, XXXV, LIII, LIV, LV e LXXVIII; 13; 18, caput; 21, inciso I; 30; 37, caput; 52, inciso V; 93, inciso IX; 127; 129; 131; 132, caput; e 134; todos da Constituição"* (e-doc. 1).

8

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

5.       Em **24/06/2024**, adotei o rito sumário de que trata o art. 12 da Lei nº. 9.868/99 (e-doc. 47).

6.       Em face disso, Municípios dos Estados de Minas Gerais, Espírito Santo e Bahia, indicados na petição inicial (e-docs. 1 e 4), apresentaram suas respectivas informações.

7.       Por sua vez, com base no **Parecer nº. 00393/2024/PGU/AGU**, da Procuradoria Nacional da União de Assuntos Internacionais – PNAI, a Advocacia-Geral da União sustentou que a interpretação jurídica impugnada viola a Constituição Federal pelas seguintes razões:

> *"a) primeiro, por **ofensa à soberania nacional, ao pacto federativo e à organização do Estado brasileiro**, uma vez que um ente federativo municipal **não possui competência conferida pela Carta Maior para comparecer em juízo em foro estrangeiro**, em violação aos artigos 1º, caput e inciso I; 18, caput, 21,I, 30 e 84, VII, da CRFB;*

> *b) segundo, também por **ofensa à soberania nacional**, mas desta vez em sua feição interna, em razão de não ser conferido a um ente federativo submeter pretensões jurídicas em foro estrangeiro como forma de **esvaziar institucionalmente o Poder Judiciário brasileiro** e as demais instituições previstas na Constituição Federal, em violação aos artigos 2º; 5º, incisos XXXV, LIII, LIV, LV, LX eLXXVIII; 93, inciso IX; 109, inciso II; e 127 da CRFB."* (e-doc. 373)

8.       Por meio da Petição nº. 130.472/2024, o IBRAM noticiou nova irregularidade supostamente constatada no âmbito dos contratos celebrados entre os Municípios e os escritórios de advocacia sediados em outros países: a celebração de contratos de risco, baseados em honorários de êxito ("taxa de sucesso"), com previsão de remuneração dos causídicos mediante elevados percentuais do valor indenizatório, expondo o Erário e as vítimas dos desastres socioambientais a imenso risco de lesão

9

**ADPF 1178 / DF**

econômica (e-doc. 428).

9.　　　Em face disso, em **12/10/2024**, deferi medida cautelar (e-doc. 438) na presente ação, **referendada pelo Plenário do STF** na sessão virtual de 25/10/2024 a 05/11/2024 (e-docs. 661 e 743):

> "É pertinente a aferição quanto às condições em que Municípios brasileiros litigam diante de Tribunais estrangeiros, uma vez que este aspecto possui consequências para parcela do patrimônio público nacional e para a efetiva e integral reparação de danos perpetrados em solo brasileiro.
>
> Dessa forma, determino que os Municípios relacionados nestes autos, como sendo os proponentes de demandas em Tribunais estrangeiros, exibam os contratos porventura celebrados com os escritórios de advocacia em outros países.
>
> Determino também que tais Municípios, em nenhuma hipótese, efetuem pagamento de honorários relativos às ações judiciais perante tribunais estrangeiros sem o prévio exame da legalidade por parte das instâncias soberanas do Estado brasileiro, sobretudo este STF" (e-doc. 743)

10.　　　Em **17/10/2024**, Municípios habilitados nos autos postularam a convocação de **Audiência Pública**, com fulcro nos arts. 6º, § 1º da Lei nº. 9.882/99 e no art. 21, XVII, do RISTF, tendo em vista *"os importantes desdobramentos do julgamento desta ADPF para o efetivo exercício da autonomia política dos entes subnacionais, não apenas com relação aos ora Peticionantes, mas para o próprio desenho constitucional da Federação brasileira, tendo em perspectiva as relações institucionais interfederativas e internacionais dos entes políticos"* (e-doc. 506).

11.　　　Em decisão monocrática de **05/03/2025**, consignei:

> "6. Em se cuidando de entes públicos integrantes do Estado Federal Brasileiro, os municípios acham-se vinculados,

10

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

em grau hierárquico mais elevado, às decisões do STF, caso desejem aderir ao acordo homologado. **Quaisquer outros compromissos assumidos, ou mesmo consequências advindas de sentenças estrangeiras, são subordinados aos órgãos de soberania do Brasil, especialmente por se tratar de parcela do patrimônio público nacional, sob a gestão de unidades federadas. Estas são autônomas, mas não soberanas, conforme basilar preceito cuja invocação é pertinente.**" (e-doc. 785)

12.      O autor requereu em **22/02/2025**:

"*a) a suspensão da eficácia de todos os contratos, termos aditivos e instrumentos jurídicos equivalentes celebrados entre os Municípios indicados na lista do Id. nº 33c32db7 e quaisquer terceiros, nacionais ou estrangeiros, escritórios de advocacia ou não, que tenham por objeto o aconselhamento, a representação, a defesa e/ou o financiamento de quaisquer ações em curso ou a serem ajuizadas perante jurisdições estrangeiras;*

*b) sucessivamente, requer-se a suspensão da eficácia de todas as cláusulas que autorizam a cobrança em desfavor dos Municípios de quaisquer valores, sobretudo relacionados a honorários advocatícios e taxas básicas, em caso de celebração de acordo no âmbito nacional, de pedido de desistência ou rescisão das contratações.*" (e-doc. 779)

13.      Em **06/03/2025**, por meio da **Petição nº. 26.976/2025**, os Municípios de Ouro Preto, Mariana, Aimorés, Baixo Guandu, Bom Jesus do Galho, Coronel Fabriciano, Ipaba, Marilândia e Resplendor **noticiaram a obtenção de provimento cautelar na Corte Inglesa em face do IBRAM**. A decisão determina "*a) que o IBRAM retirasse o novo pedido liminar; b) que em sua petição de desistência, o IBRAM reconhecesse expressamente e registrasse que, caso concedido, o novo pedido liminar causaria um prejuízo grave e irreparável à capacidade dos Municípios Autores de participar da Ação inglesa,*

11

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

*violando seu direito a um julgamento justo"*. Informam que *"a medida cautelar foi concedida em favor dos Municípios no dia 03 de março de 2025 e **tem efeito imediato"**(e-doc. 787).

14.          Ademais, por meio do **OFÍCIO 026/2025/GE/BHE, de 05 de maio de 2025**,  a Deputada Federal Greyce de Queiroz Elias, requereu:

> *"Considerando que a ação perante a justiça inglesa foi movida por uma série de municípios, por seus próprios órgãos de representação, de forma autônoma, a partir desta decisão exarada nos autos da ADPF 1178, resta claro que os Municípios não poderão receber quaisquer valores oriundos da justiça inglesa. Trata-se de fato novo e superveniente às decisões de V. Excelência.*
>
> *...*
>
> *Diante deste cenário, a adesão dos municípios ao Acordo de Repactuação é vital aos peticionantes e seus cidadãos, pois sem recursos financeiros a realização de políticas públicas importantíssimas será duramente comprometida. Ante o exposto, em virtude de fato novo e superveniente oriundo dos autos da ADPF 1178, requer-se à V. Excelência, em benefício de todos os munícipes, a reabertura de prazo, por 60 (sessenta) dias, para que os municípios possam aderir ao Acordo de Repactuação."* (e-doc. 811)

15.          Por fim, na Petição de nº. 55.234/2025, a Frente Nacional de Prefeitas e Prefeitos (FNP) pleiteou o ingresso feito na condição de *amicus curiae*, com fundamento nos arts. 138 do CPC; 7º, § 2º, da Lei nº. 9.868/99 e 21, XVIII, do RISTF (e-doc. 806).

É o breve relatório. **Examino**.

16.          Quando da propositura desta ADPF, considerei que não havia urgência de provimento judicial mais exauriente acerca dos temas trazidos à apreciação do STF.

12

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

17.　　　Contudo, nesse período de pouco mais de um ano, o suporte empírico dessa controvérsia se alterou significativamente, sobretudo **com o fortalecimento de ondas de imposição de força de algumas Nações sobre outras. Com isso, na prática, têm sido agredidos postulados essenciais do Direito Internacional**. Instituições do multilateralismo são absolutamente ignoradas. Tratados internacionais são abertamente desrespeitados, inclusive os que versam sobre a proteção de populações civis em terríveis conflitos armados, alcançando idosos, crianças, pessoas com deficiência, mulheres. **Diferentes tipos de protecionismos e de neocolonialismos são utilizados contra os povos mais frágeis, sem diálogos bilaterais adequados ou submissão a instâncias supranacionais.**

18.　　　<u>Nesse contexto, o Brasil tem sido alvo de diversas sanções e ameaças, que visam impor pensamentos a serem apenas "ratificados" pelos órgãos que exercem a soberania nacional.</u>

19.　　　Assim, com fundamento no art. 139, IV, do CPC c/c o art. 21, II, do RISTF, a presente decisão vem em resposta à **Petição nº. 26.976/2025, datada de 06/03/2025 - acima referida -, que comunica a concessão de medida cautelar pela Justiça inglesa, em benefício de Municípios interessados neste feito,** nos seguintes termos:

> "*ORDENA-SE QUE*:
>
> *1. O **Réu peticione ao STF para desistir de seu pedido de tutela provisória de urgência** para a suspensão da "eficácia de todos os contratos, termos aditivos e instrumentos jurídicos equivalentes celebrados entre os Municípios indicados na lista do Id. nº 33c32db7 e quaisquer terceiros, nacionais ou estrangeiros, escritórios de advocacia ou não, que tenham por objeto o aconselhamento, a representação, a defesa e/ou o financiamento de quaisquer ações em curso ou a serem ajuizadas perante jurisdições estrangeiras", e a suspensão da "da eficácia de todas as cláusulas que autorizam a cobrança em desfavor dos Municípios de quaisquer valores, sobretudo relacionados a*

13

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

> *honorários advocatícios e taxas básicas, em caso de celebração de acordo no âmbito nacional, de pedido de desistência ou rescisão das contratações".*
>
> *2. A petição do Réu, do parágrafo 1, acima, deverá reconhecer e registrar expressamente que, caso a tutela pleiteada no parágrafo 1 acima seja concedida antes da conclusão da Ação inglesa (Ação Número: HT-2022-000304) provavelmente causaria um prejuízo grave e irremediável à capacidade dos Municípios Autores de participar da Ação inglesa (Ação Número: HT-2022-000304), violando seu direito a um julgamento justo."* (e-doc. 792)

20.     Tal fato impõe o enfrentamento da seguinte **questão**: a citada decisão de órgão da Inglaterra tem eficácia em relação a pessoas jurídicas de Direito Público e de Direito Privado sediadas e/ou com atuação no Brasil?. A resposta é **negativa**, pelas razões a seguir expostas.

21.     Sem prejuízo de uma avaliação mais detida da matéria quando do julgamento de mérito da presente ADPF, cabe assinalar que a submissão de um Estado nacional à jurisdição de outro constitui um autêntico "ato de império" (*acto jure imperii*), assim compreendido como exercício de suas prerrogativas soberanas. Nesse passo, conforme esclarece a ilustre Ministra aposentada deste STF, **Ellen Gracie**, em Parecer juntado aos autos:

> *"30. **O fato de um Município brasileiro iniciar ação judicial em um tribunal estrangeiro implica em sujeitar o Brasil à soberania de outro país, o que é vedado a Municípios pelo princípio da igualdade soberana**. Assim, na esteira da abalizada doutrina e da jurisprudência do STF, entendo que os atos questionados na ADPF atuada sob o nº 1.178 configuram, simultaneamente, excesso da autonomia municipal e violação da soberania nacional. "* (e-doc. 113)

14

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

22.       No mesmo sentido, destaco trecho do Parecer da lavra do Professor **Daniel Sarmento**, juntado aos autos:

> *"O fundamento central da imunidade de jurisdição é a proteção da soberania, que, como visto acima, é tutelada constitucionalmente. **Como o Estado é soberano, ele não deve se submeter a julgamentos realizados por outros Estados, pois isso implicaria reconhecer uma sujeição incompatível com a ideia de soberania**. Além disso, a imunidade jurisdicional funda-se na igualdade entre os Estados – que, no Brasil, também é princípio constitucional (art. 4º, inciso V, da CF/88) –, pois **se há igualdade, um Estado não deve se submeter ao poder do outro**. Daí o brocardo que inspirou o instituto: par in parem non habet imperium (entre iguais não há império). "* (e-doc. 120)

23.       À soberania - fundamento da República, conforme o art. 1º, I, da CF - soma-se a igualdade entre os Estados (art. 4º, V, da CF), do que resulta a impossibilidade de submissão do Estado brasileiro à jurisdição de outro, pois **iguais não podem julgar iguais**. É sob essa ótica que deve ser examinada a Petição nº. 26.976/2025: a inafastável compatibilidade com a soberania nacional e com a igualdade entre os Estados nacionais.

24.       Em verdade, tal decisão cautelar inglesa evidencia que, na atual conjuntura, há altíssimo risco de demandas patrocinadas por entes subnacionais em tribunais estrangeiros servirem de veículo ou pretexto para sanções e medidas contra o patrimônio nacional.

25.       Pertinente sublinhar a decisão desta Corte na **ADC 51**, na qual declarada a constitucionalidade do modelo de requisição direta definido pelo art. 11 da Lei nº 12.965/2014 - Marco Civil da Internet e pelo art. 18 da Convenção de Budapeste (Decreto nº. 11.491/2023), que definem a obrigatoriedade de os provedores de conexão e de aplicações de *internet* submeterem-se à legislação pátria, **com fundamento na soberania**

15

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

**nacional**:

> "*AÇÃO DECLARATÓRIA DE CONSTITUCIONALIDADE. NORMAS DE COOPERAÇÃO JURÍDICA INTERNACIONAL. OBTENÇÃO DE DADOS. EMPRESAS LOCALIZADAS NO EXTERIOR. DECRETO Nº 3.810/2001; ART. 237, II DO CPC; ARTS. 780 E 783 DO CPP; ART. 11 DO MARCO CIVIL DA INTERNET; ART. 18 DA CONVENÇÃO DE BUDAPESTE. CONSTITUCIONALIDADE. ADC CONHECIDA. PEDIDO JULGADO PARCIALMENTE PROCEDENTE. 1. A controvérsia constitucional veiculada na ADC é, a rigor, mais ampla do que a simples declaração de validade do uso das cartas rogatórias e dos acordos MLAT para fins de investigação criminal. O escopo da ação declaratória compreende não apenas o exame de constitucionalidade dos dispositivos invocados pelos requerentes, como também da norma prevista no art. 11 do Marco Civil da Internet e art. 18 da Convenção de Budapeste. 2. O art. 11 do Marco Civil da Internet, que encontra respaldo no art. 18 da Convenção de Budapeste, é norma específica em relação às regras gerais do MLAT. O referido dispositivo assegura a aplicação da legislação brasileira em relação a atividades de coleta, armazenamento, guarda e tratamento de registros, dados e comunicações eletrônicas ocorridas em território nacional, desde que pelo menos um dos atos ou terminais se encontrem em território nacional, mesmo que a pessoa jurídica portadora dessas informações esteja localizada ou armazene tais informações no exterior. 3. As hipóteses de requisição direta previstas no art. 11 do Marco Civil da Internet e no art. 18 da Convenção de Budapeste reafirmam os princípios da soberania e da independência nacional, concretizando o dever do Estado de proteger os direitos fundamentais e a segurança pública dos cidadãos brasileiros ou residentes no país. 4. Constitucionalidade dos dispositivos do MLAT, do CPC e do CPP que tratam da cooperação jurídica internacional e da emissão de cartas rogatórias, nos casos em que a atividade de comunicação ou a prestação de tais serviços não*

16

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

> *tenham ocorrido em território nacional. 5. Dispositivos que convivem com a possibilidade de solicitação direta de dados, registros e comunicações eletrônicas nas hipóteses do art. 11 do Marco Civil da Internet e do art. 18 da Convenção de Budapeste. 6. Pedido julgado parcialmente procedente para declarar a **constitucionalidade** dos dispositivos indicados e da **possibilidade de solicitação direta de dados e comunicações eletrônicas das autoridades nacionais a empresas de tecnologia nos casos de atividades de coleta e tratamento de dados no país, de posse ou controle dos dados por empresa com representação no Brasil e de crimes cometidos por indivíduos localizados em território nacional."**(ADC 51, Rel. Min. Gilmar Mendes, Tribunal Pleno, DJe 28/04/2023)*

26.        Como se verifica, **o precedente afirma o critério da territorialidade**, determinando a incidência da autoridade brasileira sobre dados coletados e tratados no país, de modo que se reitera que **a extraterritorialidade, no âmbito jurídico, é absolutamente excepcional**. Daí porque tem razão o **art. 17 da LINDB**, ao dispor:

> *"As leis, atos e sentenças de outro país, bem como quaisquer declarações de vontade, <u>não terão eficácia</u> no Brasil, quando ofenderem a <u>soberania nacional</u>, a ordem pública e os bons costumes."*

## <u>CONCLUSÕES:</u>

27.        Assim, urge <u>esclarecer</u> que:

I) fica declarada a ineficácia, em território nacional, da medida cautelar concedida pela Justiça inglesa, referida no e-doc. 787, por afronta à Constituição (art. 1º, I) e ao art. 17 da LINDB;

17

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

II) decisões judiciais estrangeiras só podem ser executadas no Brasil mediante a **devida homologação**, ou observância dos mecanismos de cooperação judiciária internacional, conforme arts. 105, I, "i", da Constituição Federal, e 26 e 27 do CPC;

III) leis estrangeiras, atos administrativos, ordens executivas e diplomas similares não produzem efeitos em relação a: a) pessoas naturais por atos em território brasileiro; b) relações jurídicas aqui celebradas; c) bens aqui situados, depositados, guardados, e d) empresas que aqui atuem. Entendimento diverso depende de previsão expressa em normas integrantes do Direito Interno do Brasil e/ou de decisão da autoridade judiciária brasileira competente;

IV) qualquer violação aos itens II e III constitui ofensa à soberania nacional, à ordem pública e aos bons costumes, portanto **presume-se a ineficácia de tais leis, atos e sentenças emanadas de país estrangeiro.** Tal presunção só pode ser afastada, doravante, mediante deliberação expressa do STF, em sede de Reclamação Constitucional, ofertada por algum prejudicado, ou outra ação judicial cabível, ressalvada a competência disposta no art. 105, I, "i", da CF; e

V) Estados e Municípios brasileiros estão, doravante, impedidos de propor novas demandas perante tribunais estrangeiros, em respeito à soberania nacional e às competências atribuídas ao Poder Judiciário brasileiro pela Constituição.

28.      **Tais fundamentos e comandos, revestidos de efeito *erga omnes* e vinculante, incidem sobre a controvérsia retratada nestes autos e em todas as demais em que jurisdição estrangeira - ou outro órgão de Estado estrangeiro - pretenda impor, no território nacional, atos unilaterais por sobre a autoridade dos órgãos de soberania do Brasil.**

18

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

ADPF 1178 / DF

Esse esclarecimento visa afastar graves e atuais ameaças à segurança jurídica em território pátrio.

29.        Desse modo, ficam vedadas imposições, restrições de direitos ou instrumentos de coerção executados por pessoas jurídicas constituídas sob as leis brasileiras e que tenham sua sede e administração no País, bem como aquelas que tenham filial ou qualquer atividade profissional, comercial ou de intermediação no mercado brasileiro, decorrentes de determinações constantes em atos unilaterais estrangeiros.

30.        Acolho o pedido formulado no e-doc. 506 para CONVOCAR **Audiência Pública**, na forma dos arts. 932, VIII, do CPC; 6º, § 1º. da Lei nº. 9.882/99 e 21, XVII, do RISTF, dada a presença de relevante interesse público no feito, de modo a permitir a esta Corte avançar na discussão de mérito na presente ADPF, com todas as complexidades retratadas nesta decisão. O cronograma e as demais especificações da Audiência Pública, a ser presidida por este Relator e coordenada pela juíza Amanda Thomé, serão oportunamente divulgados em Despacho complementar.

31.        Considerando a presença dos requisitos da relevância da questão constitucional controvertida e da representatividade adequada (art. 7º, § 2º, Lei nº. 9.868/99 e art. 6º, § 2º, da Lei nº. 9.882/99), DEFIRO o pedido de ingresso da Frente Nacional de Prefeitas e Prefeitos (e-doc. 806) na qualidade *amicus curiae*.

Esta decisão deve ser comunicada:

a) às partes e aos *amici curiae*;

b) ao Exmo. Presidente da República e aos Exmos. Presidentes do Senado Federal e da Câmara dos Deputados, em face da vinculação ao tema da soberania nacional; e

c) ao Fórum de Governadores, a Confederação Nacional de Municípios (CNM) e à Frente Nacional de Prefeitas e Prefeitos (FNP), por força dos temas federativos.

19

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001. O documento pode ser acessado pelo endereço
http://www.stf.jus.br/portal/autenticacao/autenticarDocumento.asp sob o código 4600-4785-8952-3FD4 e senha 5737-D961-639B-D8B9

**ADPF 1178 / DF**

Tendo em vista os riscos e possibilidades de operações, transações e imposições indevidas **envolvendo o Sistema Financeiro Nacional**, determino a ciência do Banco Central; da Federação Brasileira de Bancos (Febraban); da Confederação Nacional das Instituições Financeiras (CNF) e da Confederação Nacional das Empresas de Seguros Gerais, Previdência Privada e Vida, Saúde Suplementar e Capitalização (CNseg). **Transações, operações, cancelamentos de contratos, bloqueios de ativos, transferências para o exterior (ou oriundas do exterior) por determinação de Estado estrangeiro, em desacordo aos postulados dessa decisão, dependem de expressa autorização desta Corte, no âmbito da presente ADPF.**

Dê-se ciência à PGR.

À SEJ para providências.

Publique-se.

Brasília, 18 de agosto de 2025.

Ministro FLÁVIO DINO
Relator
*Documento assinado digitalmente*

20