**FIRST CHAMBER OF PRIVATE LAW OF THE SUPREME COURT OF THE STATE OF RIO DE JANEIRO (TJRJ)**

**Interlocutory Appeal No. 0070880-41.2025.8.19.0000**

**Appellant: V.TAL - Rede Neutra de Telecomunicações S.A.**

**Appellee: OI S.A. – in judicial recovery, et al.**

**Reporting judge: Justice Mônica Maria Costa**

## DECISION

1. This is an interlocutory appeal against part of the decision on pp. 117.355–117.359 (specifically p.117.356), issued by the Judge of the 7th Business Court of the Judicial District of the Rio de Janeiro, State of Rio de Janeiro (RJ), which, in an incidental proceeding filed in connection with the judicial reorganization of the OI Group (No. 0090940-03.2023.8.19.0001), in view of the upcoming hearing that is part of the Chapter 15 discontinuance procedure initiated by the Oi Group before the Federal Bankruptcy Court of the United States, Southern District of New York, analyzing requests made by V.Tal. (ID Nos. 116.966, 117.289 and 117.339), declared that it "will not order anyone to refrain from filing a lawsuit (judicial procedure) before any jurisdiction", on the grounds that a cornerstone of the democratic rule of law is that no one shall be denied access to the Judiciary.

The appellant contends that the appealed decision refers to Oi's request to file a primary restructuring proceeding under Chapter 11 of the United States Bankruptcy Code ("Chapter 11"), before the US courts if the appellee's Chapter 15 petition, currently pending before the Bankruptcy Court of the Southern District of New York, is granted.

The appellant went on to say that the Oi Group's stated intention was for Chapter 11 to be processed concurrently with the Judicial Reorganization process currently underway before the Reorganization Court.

It argues that the appealed decision ended up implicitly rejecting the request made by V.Tal for the reorganization court to also assess the legality surrounding the alleged Chapter 11, including after hearing the Bankruptcy Trustees and a representative of the Public Prosecutor's Office.

It points out that the appealed decision not only failed to exercise the indispensable control of legality over the intended Chapter 11, but also set a dangerous precedent by legitimizing

1

a blatantly illegal maneuver that is incompatible with the Brazilian rule of law and corrodes to the authority of this Court.

It alleges that the appealed decision must be overturned so that the Brazilian court, after hearing the Bankruptcy Trustees and the member of the Public Prosecutor's Office, can acknowledge and notify the New York Court (167-P, Bankruptcy and Reorganization Act - LFR) that any Chapter 11 proceeding to be filed by the Oi Group is materially illegal and incompatible with the Judicial Reorganization, based on the following arguments:

> (a) violation of the rule of law, since the LFR prohibits the filing of a new request for judicial reorganization within 5 (five) years of the decision approving the respective judicial reorganization plan (article 48, II, LFR). It states that this is a rule of law, which reflects policies chosen by the national legislators as part of the structure of economic incentives that underpins the LFR, pointing out that the Oi Group had its plan approved just over 15 (fifteen) months ago. It notes that the duplication of domestic and foreign primary proceedings is not permitted under Brazilian law. It clarifies that investors who finance debtors in judicial reorganization in Brazil rely on the applicable provisions of the LFR for risk assessment and pricing of funding, and it was based on this predictability and confidence in the protection of credit rights that V.Tal (through its affiliated company) disbursed the equivalent of USD 150 million in DIP Financing to Oi. It emphasizes that, when making the investment, V.Tal believed that the Judicial Reorganization Court would be the only one with competent jurisdiction to process the reorganization of the Oi Group and, therefore, that (i) the fiduciary guarantees linked to the DIP Financing (e.g., the liens on the shares issued by V.Tal) could be enforced in any scenario, in accordance with applicable Brazilian law and the guarantee instrument; and (ii) Oi could not file a new judicial reorganization within 5 (five) years from the ratification of the Plan - so that the Oi Group would have to pay in full the DIP Financing before that deadline, since it matures in 2027, i.e., within that quarantine period. It argues that if the Brazilian courts authorize the Oi Group, after having benefited from investments and protections made possible and granted to it by the Judicial Reorganization, under Brazilian law, as authorized by the Brazilian creditors and the Judiciary, to file a Chapter 11 in parallel with the Judicial Reorganization in Brazil to restructure extrajudicial obligations in the US jurisdiction, would be altering the logic and incentives conferred by the Brazilian legal system, so that investors who finance companies in judicial reorganization would include such elements in their risk analyses. Furthermore, when making the decision to approve the judicial reorganization plan, the creditors who have successive commercial relationships with the debtor in judicial reorganization take into account the terms of payment of

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

their claims in conjunction with the expectations of payment for the deliveries in future years, which will be made possible with the approval of the plan and the recovery of the debtor. It emphasizes that the negative impacts on the sector resulting from this reckless precedent have even been addressed by the Brazilian Association of Special Situations and Litigation Finance in its Amicus Brief submitted within the Chapter 15 proceeding. It points out that the damaging effects of this strategy on the market as a whole were also recognized by the Oi Group's advisors at the Chapter 15 hearing, according to whom the Brazilian market would have to adapt to this new reality.

(b) The impossibility of for Chapter 11 to restructure credits that are not subject to Judicial Reorganization, given that the transnational insolvency rules included in the LFR (articles 167-A et seq.) prohibit (in the context of the Oi Group) recognition of a foreign proceeding that restructures credits that are not subject to judicial reorganization (articles 167-M, paragraph 3, 167-S, I, and 167-B, III, all of the LFR). It notes that, given the existence of the Judicial Reorganization and the fact that the Oi Group's center of main interests is admittedly (including by a final decision) in Rio de Janeiro, Chapter 11 cannot be recognized by the Brazilian courts since the Oi Group's stated objective is precisely to affect extrajudicial credits and circumvent the prohibition on a new restructuring request in a period of less than five years. It concludes that, if Oi were to file Chapter 11, the restructuring of the Oi Group's post-petition obligations would not be able to be recognized and enforced in Brazil, since the LFR establishes a five (5) year quarantine for a new petition for judicial reorganization to be filed (article 48, II, LFR). It notes that the statements made by Marcelo Milliet at the Chapter 15 hearing imply that Chapter 11 may also interfere in the sphere of pre-petition claims that are under the protection of the Reorganization Court and of this court and that should be maintained exclusively subject to Brazilian jurisdiction. It also reveals that the Oi Group is seeking to obtain debtor-in-possession financing under Chapter 11, which would have priority over both post-petition claims held against the Oi Group and pre-petition claims that are already being restructured in the Judicial Reorganization, which would change the order of payments and priority of cash distribution established in the Judicial Reorganization, in the Plan already approved by the Brazilian jurisdiction. It thus concluded that the Oi Group intends, through Chapter 11, to subvert the Brazilian rule of law from the outside in, by restructuring credits that Brazilian law expressly excludes from reorganization, creating new priority debts that surpass pre-petition creditors and rewriting the cascade of payments already approved by the Brazilian judiciary.

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

(c) The risk of conflicting decisions, given the coexistence of two main insolvency proceedings, which is an unprecedented measure in Brazil. It argues that Judicial Reorganization and a so-called Chapter 11 not only protect the restructuring of certain credits, but also the rights, duties, limitations and prerogatives of debtors and creditors subject to them, and that the risk of such rules and consequent court decisions conflicting with each other is certain, as has already been recognized by the New York Court and by Oi, and that such a measure could generate countless losses for various stakeholders. It points out that it is uncertain to what extent a Chapter 11 would potentially impact labor and tax creditors and claims owed to the Brazilian regulatory authorities, and how Oi intends to implement in Brazil any decisions handed down by the US courts in view of the existence and continuity of the Judicial Reorganization, notably in light of articles 167-A et seq. of the LFR. It signals that, in the undesirable scenario in which the Judicial Reorganization is converted into bankruptcy in view of the non-compliance with the Plan and the deterioration of the Oi Group's financial situation, as already reported by the Bankruptcy Trustees and the Watchdog, it would be up to the Judicial Reorganization Court and this Court to implement the rules for collection and disposal of assets in the event of the liquidation of the Appellees, noting that, at the same time, however, the New York Court may also adopt (potentially conflicting) measures that would prevent the disposal of the Oi Group's assets, within the scope of the Chapter 11 proceeding.

(d) The need to maintain Chapter 15, given its necessity for the purposes of implementing the Judicial Reorganization. It states that the judicial reorganization process and plan have not yet been implemented and the Oi Group recently submitted an addendum to the plan, in which, among other things, it intends to sell its main asset (UPI V.Tal) and affect guarantees granted to major creditors with connections in the United States. It argues that the scenario of uncertainty is substantial and indisputable, and it is likely that any decisions to be handed down by the reorganization court will have to be confirmed within the scope of the Chapter 15; otherwise, the reorganization court's jurisdiction will be rendered null, which is why the conclusion of that ancillary procedure is premature and inappropriate. It notes that the New York Court itself recognized that, in the current situation of the Judicial Reorganization, it is important that Oi keeps the Chapter 15 proceeding open and active in New York.

Finally, it states that so far the Oi Group has not been able to refute the allegations of illegality surrounding the filing of a Chapter 11 proceeding or clarify uncertainties reiterated by the New York Court itself about the impossibility of Chapter 11 and Judicial Reorganization

4

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

coexisting, in addition to not even having presented any study or analysis on the possible results of a Chapter 11, the recoverability of claims in such a context, and the impacts on creditors or the guarantees to be offered. It emphasizes that it has also been demonstrated in Chapter 15 that the Oi Group does not have the slightest indication that it will obtain DIP financing under Chapter 11, in addition to estimating that more than USD 100 million (i.e., more than half a billion reais) would be spent on advisors' fees to conduct a Chapter 11 proceeding. It affirms that the announced Chapter 11 petition would be a disastrous, unfounded measure that would jeopardize the entire restructuring of the Oi Group, the result of practically a decade of efforts by creditors and the Brazilian Judiciary, since:: (i) it would violate rules and principles of Brazilian law; (ii) it would create a reckless precedent for the entire Brazilian insolvency system and conflicts of jurisdiction that would make its processing unfeasible from a practical point of view; (iii) it lacks any credible analysis of its financial viability; (iv) it would (further) increase litigation involving the Oi Group; (v) it would drain more than half a billion reais in lawyers' and advisors' fees; (vi) it would jeopardize the Oi Group's main asset, impacting the execution of the Plan itself; and (vii) it would reduce the value of the guarantee provided to various creditors under the Plan.

It asks for the effects of the appeal to be granted in advance and that the court order the following: (a) if the first interlocutory appeal is recognized as having been rendered null, the terms of the decision with suspensive effect issued therein must be validated and fully maintained, so that any decision regarding the request to close Chapter 15 must await the decisions of the reorganization court regarding the Oi Group's failure to comply with the Plan and the processing of the amendment to the plan; (b) in line with the duties of cooperation and communication that guide the transnational insolvency provisions of the LFR, this Court issue a supplementary communication to the New York Court, informing that, in a summary judgment, (a) the filing of Chapter 11 would violate the Brazilian rule of law; (b) the effects of Chapter 11 on post-petition creditors cannot be recognized in Brazil given the existence of the Judicial Reorganization; and (c) the maintenance of Chapter 15 is necessary to implement the decisions to be handed down under and by virtue of the Judicial Reorganization.

Finally, it requests that the appeal be granted, ratifying the requests for early relief made above and reversing the appealed decision, for all legal purposes and effects.

This is the statement of facts. Here is my decision.

2. According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an interlocutory appeal is permitted against all interlocutory decisions handed down in

5

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

court-supervised reorganization proceedings and bankruptcy proceedings, by virtue of art. 1,015, sole paragraph, of the Code of Civil Procedure (CPC)".

Thus, the intrinsic requirement for admissibility of appeals (suitability) has been met.

Having addressed the admissibility of the form of procedure, I will now analyze the appellant's request for a preliminary injunction.

Pursuant to art. 1019, I, of the CPC, when the interlocutory appeal is received by the court and assigned immediately, if art. 932, parts III and IV, do not apply, the reporting judge may, within 5 (five) days, grant suspensive effect to the appeal or grant early relief, wholly or in part, in connection with the request made in the appeal and notify the judge of his decision.

The granting of suspensive effect or injunctive relief to temporarily vacate the judgment a quo is subject to the fulfillment of two requirements, namely a prima facie right in connection with the allegations and a threat of irreparable or difficult-to-repair harm(article 995, sole paragraph, of the Code of Civil Procedure).

Here is the legal theory regarding the matter:[1]

> "The conditions for granting suspensive effect in appeals are, in our opinion, typically precautionary: the risk of serious harm that is impossible or difficult to repair and the likelihood of the appeal being approved. Namely, imminent irreparable harm and a prima facie right.
>
> Such harm, whose likelihood must be demonstrated in order to obtain the suspensive effect of the appeal, is not necessarily identified with impairment of the substantive right claimed in the appeal. The party need only demonstrate that the harm will be aggravated if the measure is not granted.
>
> The law does not mention the possibility of the opposite happening: the appeal has suspensive effect by express provision and the appellant needs the effectiveness of the decision. Having demonstrated the likelihood of the appeal being approved and of the occurrence of harm, we believe that the appellant is entitled to the measure corresponding to the temporary granting of the relief sought in the appeal. This injunctive relief to temporarily vacate the judgment a quo or advance injunctive relief is not expressly provided for, but is allowed in the system in relation to all appeals with suspensive effect, for identical reasons. It can be granted in cases where appeals do not have suspensive effect".

---

[1] Comentário ao novo Código de Processo Civil / coordinators Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, p. 1473;

ZapSign   532c1756-62d8-49fb-8d23-a41a4472e13f.   Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

In summary cognizance, at this point I do not envision a colorable right in connection with the appellant's allegations to demonstrate the likelihood of the appeal being partially upheld.

Before examining the relief sought, a brief chronological digression of the facts is necessary.

Originally, the reorganization debtors submitted an addendum to the approved reorganization plan, requesting publication of a notice to convene a Creditors' Meeting to vote on it, and requesting the granting of early injunctive relief to suspend, for 180 days, the enforceability of the obligations set forth in the plan, including removal of the consequences of default and judicial restrictions on their assets.

In their petition on pages 113,147–113,190 of the original record, they state that after the approval, on May 28, 2024, of the reorganization plan approved by the creditors on April 19, 2024, despite the fact that they have been implementing various measures provided for therein that are necessary to restructure their liabilities, maintain their working capital and make their new strategic business plan viable, with a significant reduction in their net debt and clear development of the strategic operating activities indicated as their current "core business", they have nevertheless faced a serious cash crisis.

They claim that the assumptions that served as the basis for the economic rationale of the various payment obligations assumed in the reorganization plan were not verified after it was ratified by the Reorganization Court: (i) the sale of UPI ClientCo would result in the receipt of BRL 7.3 billion in cash in the 2024-2025 biennium; (ii) they would drastically reduce the costs of maintaining the infrastructure needed to provide Switched Fixed Telephone Service by adapting the concession to the authorization model as of June 2024; and (iii) disbursements to cover labor liabilities would remain at historical levels.

They argue that the New Management began to consider alternatives in an attempt to address the pressure for immediate liquidity and, consequently, ensure the continuity of its reorganization, in observance of the principle of the social function and preservation of enterprises, concluding that it is necessary to approve the proposed amendment to the Plan, as follows: (i) change in the conditions for payment of the Claims held by Labor Creditors (section 4.1), Partner Supplier Creditors (section 4.2.6), Take or Pay Creditors with Guarantee (section 4.2.8), Take or Pay Creditors without Guarantee - Option I (section 4.2.9), Take or Pay Creditors without Guarantee - Option II (section 4.2.10), and Participating Post-Petition Creditors (section 4.10); (ii) the use of appeal bonds to obtain immediate funds and pay creditors (section 5.4); and (iii) the possibility of hiring a specialized company to manage the Properties through a vehicle to be created for this purpose (section 5.3.5).

The court a quo deemed it necessary to first hear the Bankruptcy Trustees, the Watchdog (appointed to act in the case according to the decision under ID 114.162) and the

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

Prosecution and Defense Service (MP) regarding the legality of the terms of the amendment and whether or not the company has sufficient financial viability (ID 114.138, of the original record).

In a subsequent petition (ID.115 .354 of the original record), the Reorganization Debtors state that, in addition to the need to amend the reorganization plan in order to overcome their temporary short-term cash flow difficulties, they consider resorting to judicial measures abroad, with the aim of restructuring credits that will not be settled in the amendment, by initiating the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America ("Chapter 11"), before the United States Bankruptcy Court for the Southern District of New York. They also state that, in order to prepare for a potential Chapter 11 filing, the Reorganization Debtors filed, on the same date, a request to discontinue the Chapter 15 proceeding, which will be decided in due course by the US Court.

They justify the need for this strong measure on the grounds that a significant part of GRUPO OI's debts is currently made up of claims that were not covered by the present reorganization process and were incurred, almost in their entirety, during the mandate of the former trustee of the reorganization debtors. They point out that, in order to ensure the continuity of their operations, they are considering resorting to legal measures abroad, with the aim of dealing with these debts in an organized manner, since they cannot be included in the court-supervised reorganization process in Brazil.

With regard to the addendum and clarifications requested by the lower court, the Watchdog stated the following (ID.115.773):

Regarding the request for amendment, the Bankruptcy Trustee also commented on the request for an amendment (ID. 115.999 of the original record).

The Prosecution and Defense Service (MP) offered an opinion, based on summary cognizance, under ID.116.114, highlighting, from the outset, the existence of illegalities in the addendum presented, which it believes must be corrected before any resolution is made at a General Meeting of Creditors, according to art. 35, I, "a" of Law 11,101/2005, with regard to the following clauses: "a) section 4.1 et seq: impossibility of creating subclasses of labor creditors with claims below 150 times the monthly minimum wage; b) sections 4.2.6, 4.2.7 and 4.2.8: a substantial change in the form of payment for supplier partners and take-or-pay creditors; and c) section 5.4: withdrawal of labor appeal bonds".

After the above-referenced statements, the court a quo rendered the decision on pages 116.202–116.209 of the original record, evaluating the claim made by the OI Group on pp. 113.147–113.190 of this same case, consisting of the publication of a notice calling on creditors to submit an amendment to the plan for court-supervised reorganization approved

ZapSign   532c1756-62d8-49fb-8d23-a41a4472e13f.   Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

in March 2024 and the granting of temporary injunctive relief ordering the suspension of the enforceability of outstanding obligations set forth in the reorganization plan for 180 days, without this leading to a situation of bankruptcy or any restrictions on assets in the meantime, as follows:

> "(...) In view of the context thus defined, I consider it essential that the Prosecution and Defense Service (MP), the joint Bankruptcy Trustees, and the Watchdog (already appointed) first give their opinion -- even if only briefly -- on the submitted amendment to the reorganization plan and the accompanying documents, within a common period of five (5) calendar days, regarding its legality and whether or not the submitted AMENDMENT is sufficiently viable from an economical and financial standpoint. Including in light of the reports drafted by the reorganization debtor and attached starting with ID 113.679, in possible comparison with the Bankruptcy Trustee Reports (Bankruptcy Trustee Reports) presented by the Bankruptcy Trustees.
>
> Please also include a statement addressing the following:
>
> (1) With regard to the Joint Bankruptcy Trustees:
>
> a) clarify, clearly and objectively, whether the subparagraphs of article 22, part II, of the Reorganization and Bankruptcy Act ("LRF") have been complied with and observed;
>
> b) state whether or not the approved plan for court-supervised reorganization has been effectively complied with through the date of the petition for AMENDMENT (July 1, 2025) and whether or not it is feasible to maintain its compliance for the three months following the indicated date;
>
> c) itemize the values of the assets and liabilities of the reorganized company at the beginning of the 2nd court-supervised reorganization (here considered to be the case assignment of the preparatory precautionary order) and on July 1, 2025 (date of filing of the AMENDMENT, in a preliminary analysis). The quantification must be based both on the amount computed both with the deductions in connection with the plan for court-supervised reorganization and without such deductions (i.e., the amount resulting from the resumed enforceability of the original debts);
>
> d) provide a breakdown of the cash flow on the date of the filing of the 2nd court-supervised reorganization (here considered to be the case assignment of the preparatory precautionary measure) and on July 1, 2025 (date of the filing of the AMENDMENT, in a preliminary analysis);

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

e) itemize the number of direct and indirect employees of the reorganization debtor on the date of the application for the 2nd court-supervised reorganization (here considered to be the case assignment of the preliminary injunction) and on July 1. 2025 (date of filing of the AMENDMENT, in a preliminary analysis).

f) itemize the amounts paid to CLASS I labor creditors and to secured and unsecured partner creditors in the past three months and the amounts to be paid in the next three (here considered to be whole months, i.e., we are in the month of June 2025 and the three preceding months are: May, April and March 2025; this is how the projection will be made for future months).

(2) As for the watchdog, I order it to prioritize, at this time, the statement regarding the request for an amendment to the plan filed in this main proceeding, focusing on the results of the reorganized company for the past six months and on the projections for the next three months, in light of what is contained in the case record as well as any and all documents and information that it deems necessary to access. The watchdog is expressly authorized to request them directly from the Reorganization Debtor, which must deliver them. The watchdog is also vested with all the powers listed in sections 7.2.2 and 7.2.3 of the ratified plan for court-supervised reorganization. If the information and documents are protected by confidentiality or under seal (sections 7.2.4.1 and 7.2.4.1.1 of the ratified plan), the watchdog must submit them to the court after requesting that they be attached in a confidential incidental proceeding.

Since the watchdog is vested in such powers, it must request from the Reorganization Debtor information on any substantial changes in remuneration (including bonuses) made in the past six months (with upward or downward fluctuations) in favor of its managers, Executive Committee, Board of Directors, and senior management bodies ("New Management"), including sums directed to legal entities that may be part of it, and indicate whether such changes were reported to the Bankruptcy Trustees in the period. These findings should be included in the statement.

Please note that the following persons are invited to comment within a common period of five calendar days: Bankruptcy Trustees, Watchdog and the Public Prosecutor's Office ("MP") (the latter must cooperate in issuing its opinion within the common deadline, both due to the delimitation of the object of evaluation established above and because this is an electronic proceeding that makes this possible, especially due to the alleged urgency.

Notify all persons urgently, including by telephone and email.

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

Also issue unequivocal notice of the AMENDMENT TO THE PLAN FOR COURT-SUPERVISED REORGANIZATION submitted by OI Group in reorganization and of the filing of the petition for court-supervised reorganization of two subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO).

Therefore, I allow the reorganized company, within the same period, to express its opinion on any exercise of the option set out in section 4.2.12, d, of the plan for court-supervised reorganization.

Finally, this court is aware of ID 114.123 (letter from the 1st Chamber of Private Law, regarding actions taken with regard to the reorganization debtor's lawyers). In this regard, the court has issued its own decision, in part VI of ID 113141. In turn, the court registrar's office certified that the procedural representation in the case underway in this first instance was proper (ID 114136).

I return the complete case record for IMMEDIATE compliance with all that is contained herein. (pp.114.138-114.142)"

---

"In light of the foregoing:

1. I order the Recovering Company to address the conclusion of the Bankruptcy Trustee Report ("RMA") of July 2025 that points to substantial nonperformance of the obligations in the approved reorganization plan and justifies and provides evidence of any allegations made;

2. Subsequently, the Reorganization Debtor must state whether it will exercise the option set forth in section "4.2.12, "d", of the reorganization plan;

3. Then, the Bankruptcy Trustees (including regarding the duty provided in part II, subparagraph "b" of the Reorganization and Bankruptcy Act - LRE);

4. Then, the Prosecution and Defense Service (MP) regarding all that was added;

5. Notify the watchdog to IMMEDIATELY begin the task entrusted to and accepted by the watchdog, and provide an estimation of fees for this purpose, in view of the extension established herein;

6. I suspend the payment of bonuses to the Reorganization Debtor's senior management, keeping, for the time being, their remuneration set at the meeting held on April 29, 2025;

11

*Translated from Portuguese*

> 7. I order any sale or encumbrance of assets to be preceded by judicial authorization, under penalty of ineffectiveness of any act that fails to comply with such authorization;
>
> 8. I order the Bankruptcy Trustees to send notice, duly translated into English, to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages 115.744 et seq.), informing it that "the 7th Business Court of Rio de Janeiro, RJ, is processing the court-supervised reorganization of the Oi Group, in which the Reorganization Debtor has failed to fulfill obligations assumed in June 2025, without any justification provided to date. (116.202-116.209, part IV)"

V.Tal, the appellant in this case, filed an interlocutory appeal against such decision, processed under No. 0059754-91.2025.8.19.0000, in which the request for preliminary injunctive relief was partially granted, as follows: (i) to amend the communication to be issued by the Bankruptcy Trustee to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages 115,744 et seq.), with the recommendation to the NY Court that, before issuing any decision in Oi Group's Chapter 15 proceeding, it await (a) the decision of the Brazilian Court on the verification and consequences of the previously reported non-compliance with the Plan for Court-Supervised Reorganization (PRJ), reported earlier, and (b) the request for amendment of the PRJ in the main proceeding underway in Brazil; (ii) to forward a copy of such decision to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on pp. 115.744 et seq.), with the reservation that there is no judicial pronouncement by this jurisdiction agreeing to the initiation of other proceedings involving the restructuring of OI Group in other jurisdictions. (iii) in view of the Voluntary Settlement (Settlement) signed for the concession contracts to be adapted to the authorization regime, I order unequivocal notice of the Amendment to the PRJ presented by OI Group - in reorganization and of the filing of the request for court-supervised reorganization of two subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER S.A. - TAHTO) to be issued to the Secretariat for External Control of Consensual Resolution and Dispute Prevention (SecexConsenso) of the Brazilian General Accounting Office (TCU) and to the Brazilian Securities and Exchange Commission (CVM); and (iv) finally, I order, ex officio, that the CVM be sent notice attaching a copy of the last two Bankruptcy Trustee Reports (RMA). The referenced appeal is still pending a decision on the merits.

Under ID 116.966 of the original record, V.Tal filed a statement requesting the court a quo to order the summons of the Bankruptcy Trustees and the representative of the Public Prosecutor's Office so that they can comment on the possibility of filing a restructuring petition with the US courts (Chapter 11) and its consequences for this Judicial

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

Reorganization process, in light of Brazilian law and the other facts and considerations brought up in this brief.

On p. 117.289 of the original case record, repeated in ID. 117.339, the appellant filed another petition in the original case record requesting that the Bankruptcy Court of the Southern District of New York be notified: (i) that the deadline for the Public Prosecutor's Office to comment on any non-compliance with the Plan by the Debtors according to Decision No. 2 will only expire on August 14, 2025, and that any decision by this Court will only be issued after the expiration of this deadline; (ii) that there is no current deadline for the parties to file a statement in the Incidental Proceeding regarding the Amendment to the Plan, and so it is not even possible to establish as of which date this Court will be able to decide on the amendment to the Plan submitted by the Oi Group; and (iii) in observance with what was determined by the Supreme Court of Rio de Janeiro (TJRJ), to reiterate (a) the recommendation that the US Court wait until a decision has been issued by this court on the verification and consequences of non-compliance with the Plan, as well as the request for an Amendment to the Plan before issuing any decision in the scope of the Chapter 15 proceeding; and (b) that this Court has never made any formal statement in support of the filing of a Chapter 11 by the Oi Group.

Regarding the above petition, the OI Group made a statement in ID.117.335.

Then the appealed decision was issued (pp. 117.355–117.359,) which, among other orders, declared that it was impossible to order anyone to refrain from filing a lawsuit (judicial procedure) in any jurisdiction.

The appellant wishes to be granted early injunctive relief, determining that: (i) the anticipatory decision issued in the interlocutory appeal, filed under No. 0059754¬91.2025.8.19.0000, be confirmed and fully upheld, should its harmful nature be recognized due to the present insubordination; (ii) supplementary communication be sent to the New York court, informing it that: (a) filing for Chapter 11 would violate the Brazilian rule of law; (b) the effects of Chapter 11 on post-petition creditors cannot be recognized in Brazil given the existence of the Judicial Reorganization; and (c) the maintenance of Chapter 15 is necessary to implement the decisions to be handed down under and by virtue of the Judicial Reorganization.

In this case, as already emphasized by this reporting judge, associated with the unquestionable uniqueness of this judicial reorganization with regard to the inevitable public interest that arises from the provision of services to the community by the OI Group, there is a need to fully meet the obligations agreed to in the reorganization plan approved by the creditors and ratified in court, subject to oversight during the period of judicial supervision.

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

However, the Reorganization Debtors filed a request to suspend payment of the obligations assumed in this reorganization process for a period of 180 days, in addition to filing an addendum to the plan, due to a serious cash crisis in order to honor them, with the aim of reaching the originally excluded labor creditors, renegotiating the conditions and payment terms of suppliers, partner creditors, and take or pay creditors with and without guarantee.

In a statement in the original proceedings, the Reorganization Debtors claim that these measures would not be enough to stop the current economic and financial situation that has arisen, which is why it is still necessary to initiate reorganization proceedings in the US Court (Chapter 11), in which they intend to negotiate debts not covered by the present court-supervised reorganization.

Under ID 118.495, of the original case record, the Reorganization Debtors informed the court a quo that, during the Chapter 15 hearing held on August 18, 2025, after hearing the parties' statements, the US Court recommended the opening of mediation proceedings between the Reorganization Debtors and V. TAL Rede Neutra de Telecomunicações S.A.

The process underway in the Brazilian jurisdiction has been expressly recognized by the Oi Group and the competent authorities as the main process.

Part of the decisions that established Brazilian jurisdiction for the processing of the first and second court-supervised reorganization of the debtor companies are transcribed below:

> "The issue is new and deserves to be addressed.
>
> The first point worth highlighting in this analysis is that FINCO and PTIF are merely financial vehicles created by the OI Group to raise funds abroad in order to finance its production activities. They are wholly owned subsidiaries, created in the Netherlands, without any operational activity.
>
> The Oi Group's operational activity is in Brazil. This is the main establishment for the companies in reorganization; this is where the activity that generates wealth is located, the center of interest that justifies, in theory and in practice, the creation of a system of protection for companies. This is the appropriate forum for the reorganization process.
>
> And, for this reason, I find that all issues relating to the holding company and its subsidiaries must be decided in accordance with Brazilian law. Brazilian law does not allow any concurrent jurisdiction of a foreign judicial authority or equivalent when the insolvent debtor has its primary establishment in Brazil."
>
> ---

14

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

"**JURISDICTION AND PROCEDURAL CONSOLIDATION**

This request for court-supervised reorganization was made by Oi S.A., PTIF and Oi Coop. PTIF and Oi Coop are non-operational companies that, in the past, were used as vehicles to raise funds from abroad to finance the Oi Group's activities in Brazil. The obligations of PTIF and Oi Coop, although originally contracted abroad through the issuance of bonds, have always been fulfilled in Brazil, backed by the Brazilian operations of its parent company Oi.

It should be recalled that, when the first court-supervised reorganization of the Oi Group was processed, the jurisdiction of this court to process the court-supervised reorganization of the Dutch subsidiary Oi Coop was even questioned in the context of the procedure established on the basis of Chapter 15 of the US Bankruptcy Code, whose judgment handed down by the Southern District of New York, in the United States, confirmed that it is in Brazil that the center of the main interests of Oi Coop and the Oi Group is located.

When admitting the first court-supervised reorganization, this Court had already understood that: "And, insofar as the companies that make up the OI GROUP operate in a coordinated and integrated manner in the Brazilian telecommunications system, and under single corporate, operational, financial, administrative and managerial control - exercised by the controlling company OI - including in relation to the non-operational financial vehicle companies incorporated abroad - judicial protection must reach the conglomerate as a whole." (p. 89496–89525 of case No. 020371165.2016.8.19.0001).

At the time, this was a veritable leading case, since there was little or nothing about transnational insolvency in the Brazilian courts, nor did the applicable law deal with this hypothesis. The Judiciary has been called upon to fill the legal gap through a systematic and analytical interpretation of the legal system and, in particular, the applicable constitutional principles. Subsequently, Law 14,112/2020 added the Transnational Insolvency chapter (VI-A) to Law 11.101/2005 to regulate this hypothesis.

At that time, procedural consolidation had not yet been regulated, which occurred with the changes brought about by Law 14,112/2020, according to art. 69-G: Debtors who meet the requirements set out in this Law and are part of a group under common corporate control may apply for court-supervised reorganization under procedural consolidation.

15

> As a result, the requirements for procedural consolidation have been met, as prescribed by article 69-G of Law 11,101/05.
>
> It is indisputable that there is a single corporate, operational, financial, administrative and managerial control exercised by the controlling company Oi S.A. in relation to the non-operational financial vehicle companies incorporated abroad, and it is evident that there is an economic group in fact and in law, with all the Plaintiffs having presented documentation individually, which allows for active joint litigation for the purposes of filing the Court-Supervised Reorganization.
>
> Thus, reiterating the terms of the decision granting early relief issued under ID 44532251 of Antecedent Precautionary Relief No. 080986336.2023.8.19.0001, procedural consolidation is a measure that should be applied to the present case."

As noted in this latest edition, when the first court-supervised reorganization of the Oi Group was processed, the jurisdiction of the court a quo to process the court-supervised reorganization of the Dutch subsidiary Oi Coop was even questioned in the context of the procedure established on the basis of Chapter 15 of the US Bankruptcy Code, whose judgment handed down by the Southern District of New York, in the United States, confirmed that it is in Brazil that the center of the main interests of Oi Coop and the Oi Group is located.

There is therefore no doubt that all of the OI Group's operational activity is located in Brazil, as is the center of core interests of the debtor (COMI).

The prevalence of Brazilian jurisdiction in this case is also supported by the legal interests involved, which are strongly linked to issues of public law, the provision of a public communication service, social issues and the Oi Group's social function, including its obligations to the TCU and public bodies on various levels of the Brazilian federation.

This is the OI Group's second Judicial Reorganization, and the judicial reorganization plan presented, after successive suspensions of the meeting, was approved by the creditors on 18-Apr-2024 and 19-Apr-2024, by 79.87% of the votes ("per head") and 56.15% by value of the unsecured claims with voting rights.

And, in a decision dated May 28, 2024, the judicial reorganization plan approved by the creditors at the General Meeting of Creditors was judicially ratified in favor of OI S.A. - In Judicial Reorganization ("Oi" or "Company"), PORTUGAL TELECOM INTERNATIONAL FINANCE B.V. - In Judicial Reorganization ("PTIF") and OI BRASIL HOLDINGS COÖPERATIEF U.A. - In Judicial Reorganization ("Oi Coop"), with the exception of clauses 9.1, 9.2 and 9.3.5, so that the dismissal of the obligations towards the co-obligor(s) and the suppression of the guarantees only take effect for the creditor(s) who approved the judicial reorganization plan, without any exceptions.

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

*Translated from Portuguese*

The appellant, V.Tal, is an Isolated Production Unit, originating from the OI Group's recovery plan, and holds a 27.5% equity interest.

In fact, according to the notice of filing and hearing, dated February 13, 2023, sent by the United States Bankruptcy Court, Southern District of New York, it is clear that case No. 23-10193-JPM refers to recognition of temporary injunctive relief in preparation for a judicial reorganization process, which is still underway in Brazil.

Pre-petition claims, including those subject to the effects of the first Judicial Recovery (Case No. 0203711-65.2016.8.19.0001), are being paid according to the Plan approved in the second Judicial Reorganization (case No. 0809863¬36.2023.8.19.0001).

The plan approved and ratified by the courts is in the process of being complied with and under judicial supervision, and there is no list in the case file of the post-petition claims that are part of the restructuring sought by the Recovering Companies before the foreign courts.

Nor are we aware of the presentation of any study analysis on the possible results of a Chapter 11, within the context of the present judicial reorganization, notably with regard to the protection and maximization of the value of the debtors' assets, the impacts on creditors or the guarantees offered.

In another step, there is a request to amend the judicial reorganization plan approved in the second judicial reorganization, as well as a request to process the judicial reorganization of two wholly-owned subsidiaries.

On the other hand, we are currently awaiting the decision of the judge of first instance on the request to amend the plan submitted.

In this context, it is essential and important for the Brazilian Court to maintain Chapter 15 for the effectiveness of the decisions handed down in the context of the Judicial Reorganization in this Court of Justice, as well as for compliance with the judicial reorganization plan approved and ratified in court, and analysis of any amendments.

It is important to note that, in view of the legal proceedings regarding the performance of the Real Estate Lease Agreement signed between the parties, I designated the establishment of a judicial mediation procedure to attempt an amicable settlement, under the supervision of the Bankruptcy Trustee, on the platform, in interlocutory appeal No. 0069445¬32.2025.8.19.0000.

In light of this scenario, as a precaution, it is necessary to ratify the communication issued to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages 115,744 et seq.), with the recommendation to the NY Court that, before issuing any decision in Oi Group's Chapter 15 proceeding, it await (a) the decision of the

ZapSign   532c1756-62d8-49fb-8d23-a41a4472e13f.   Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

Brazilian Court on the verification and consequences of the previously reported non-compliance with the Plan for Court-Supervised Reorganization (PRJ), reported earlier, and (b) the request for amendment of the PRJ in the main proceeding underway in Brazil, thus accepting the request for early injunctive relief made by the Appellant in part 103(i).

However, the appellant's other claims in part 103 (ii) (a) and (b) of the appeal go beyond the duties of international cooperation between different jurisdictions and which guide the implementation of assistance and coordination measures, set out in articles 167-A, 167-P, 167-Q and 167-T, all of Law 11.101/05, articles 6, 67 to 69 of the Code of Civil Procedure (CPC) and Resolution 350 of October 27, 2020 of the Administrative Office of Brazilian Courts (CNJ), at this procedural moment, and the equality of judicial sovereignty must be observed.

3. In light of the foregoing, **I GRANT, in part, the request for a preliminary injunctive relief** only: (i) to ratify the communication already issued to the Federal Bankruptcy Court of the United States, Southern District of New York (procedure on pages 115,744 et seq.), with the recommendation to the NY Court that, before issuing any decision in Oi Group's Chapter 15 proceeding, it await (a) the decision of the Brazilian Court on the verification and consequences of the previously reported non-compliance with the Plan for Court-Supervised Reorganization (PRJ), reported earlier, and (b) the request for amendment of the PRJ in the main proceeding underway in Brazil; (ii) and, in line with the need for cooperation between jurisdictions and the duties of communication and assistance that guide the provisions of international insolvency, to note that the continuation of Chapter 15 is necessary and essential for the effectiveness of the decisions handed down within the scope of the Judicial Reorganization in this Court of Justice, as well as for compliance with the judicial reorganization plan approved and ratified by the courts, and analysis of any amendments.

4. Nevertheless, **IMMEDIATELY** forward a copy of this decision to the United States Bankruptcy Court, Southern District of New York, **by email**, at the following address: JPM.chambers@nysb.uscourts.gov, which must contain the following information in the message:

Re: Case No. 23-10193 (JPM) – Chapter 15

To the Honorable Judge John P. Mastando III

5. Urgently notify the Trustee to attach a proper translation of the minutes of the hearings held before the United States Bankruptcy Court, Southern District of New York, within the scope of the Chapter 15 proceeding, as well as the documents presented in the discovery, for a better analysis of the matter.

6. Send urgent notice to the court a quo of this decision, requesting information.

7. Notify the Bankruptcy Trustee.

8. Notify the Office of Bankruptcy Estate Trustees.

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

9. Notify the appellees to submit a reply within the legal period of 15 days set forth in art. 1019, II, of the Code of Civil Procedure (CPC).

10. Then, notify the Attorney General's Office.

Rio de Janeiro, _____ ___, 2025.

**Monica Maria Costa**

**Reporting Judge**

[Digitally signed by Monica Maria Costa di Piero, 29835, August 29, 2025 13:57:01]

[All pages digitally stamped and numbered by the Supreme Court of the State of Rio de Janeiro (TJRJ)]

**CERTIFICATION**

This is to certify that the foregoing translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "Decisão Agravo.pdf," which was written in Portuguese. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 29, 2025.

WILLIAM RICHARD FELIX STEINMETZ

Email: william.steinmetz@pm.me

*William Richard Felix Steinmetz* (signature)

Assinado digitalmente na ZapSign por William Richard Felix Steinmetz
Data: 29/08/2025 21:33:05.071 (UTC-0300)

19

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.

# Relatório de Assinaturas

Datas e horários em UTC-0300 ( America/Sao_Paulo)
Última atualização em 29 Agosto 2025, 21:33:05



**Status:** Assinado
**Documento:** Decisão Agravo_EN2.Pdf
**Número:** 532c1756-62d8-49fb-8d23-a41a4472e13f
**Data da criação:** 29 Agosto 2025, 21:30:38
**Hash do documento original (SHA256):** 43f039e52c3f4b0d2cf344efe3bb80a4a083b789b3c68cd6d32b38a1b87dca21

## Assinaturas

1 de 1 Assinaturas

| Assinado  via ZapSign by Truora | Assinatura |
|---|---|
| **WILLIAM RICHARD FELIX STEINMETZ**  Data e hora da assinatura: 29/08/2025 21:33:05  Token: 5980fef7-2eaa-4cba-b306-fd6fa6efad2c | *William Richard Felix Steinmetz*  William Richard Felix Steinmetz |

**Pontos de autenticação:**

Telefone: + 5511982261221
E-mail: william.steinmetz@pm.me
Nível de segurança: Validado por código único enviado por e-mail

Localização aproximada: -23.520870, -46.641971
IP: 179.209.44.0
Dispositivo: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/139.0.0.0 Safari/537.36

---

## INTEGRIDADE CERTIFICADA - ICP-BRASIL

Assinaturas eletrônicas e físicas têm igual validade legal, conforme MP 2.200-2/2001 e Lei 14.063/2020.
Confirme a integridade do documento aqui.



Este Log é exclusivo e parte integrante do documento número 532c1756-62d8-49fb-8d23-a41a4472e13f, segundo os Termos de Uso da ZapSign, disponíveis em zapsign.com.br

ZapSign  532c1756-62d8-49fb-8d23-a41a4472e13f.  Documento assinado eletronicamente, conforme MP 2.200-2/2001 e Lei 14.063/2020.