**FIRST CHAMBER OF PRIVATE LAW OF THE COURT OF JUSTICE OF THE STATE OF RIO DE JANEIRO**

**Instrument Appeal No. 0071515-22.2025.8.19.00000**

**Aggravating factors: OI SA – IN JUDICIAL RECOVERY, PORTUGAL TELECOM INTERNATIONAL FINANCE BV – IN JUDICIAL RECOVERY and OI BRASIL HOLDINGS COOPERATIEF UA – IN JUDICIAL RECOVERY**

**Rapporteur: Des. Monica Maria Costa**

### DECISION

**This is an appeal on the merits**, filed by OI SA, PORTUGAL TELECOM INTERNATIONAL FINANCE BV and OI BRASIL HOLDINGS COOPERATIEF UA, all under judicial recovery, **against the decision on pages 118,173 to 118,176 (indexer No. 118,173)**, handed down by the Court of the 7th Business Court of the Capital District in case file of Process No. 0090940-03.2023.8.19.0001, **what: (I) suspended the enforceability of the obligations inherent in the amendment to the judicial recovery plan presented by the companies under recovery, for the period between 13/08/2025 and 31/08/2025**; (II) **determined that by the end of the established term, ANATEL and TCU must express their views in the records on any transition for the purpose of preventing the interruption of continuity in the public services provided by the OI Group**; (III) **It imposed on the recovering companies the duty to present a transition plan for the public services provided and to exercise, if they deem it appropriate, the option provided for in clause 4.2.12, 'd', of the PRJ.**

In the draft on fls. 02 to 49 (index no. 02), the appellants describe the extraordinary circumstances that led them to submit an addendum to the recovery plan approved on 28/05/2024. They highlight the significant reduction in net debt, from R$25.4 billion to R$9.8 billion between the first quarter of 2024 and May 2025, as well as the payment of an additional R$2.8 billion in accordance with the RMA of July 2025. However, they emphasize that some basic premises for the economic rationale of some payment obligations assumed in the PRJ were not verified after judicial approval. They point out that (a) the value sought by the former administration for the sale of the *UPI ClientCo* did not adapt to market reality and, as a result, the financial asset was sold in February 2025 for non-pecuniary financial consideration of R$5.7 billion; (b) the costs for maintaining the infrastructure necessary for the provision of STFC telephone services continued to be imposed by ANATEL until November 2024, for 5 (five) months after the originally projected period, giving rise to relevant expenses not previously envisaged by the OI Group; (c) labor liabilities fell from R$808.4 million to only R$803.9 million, between May 2024 and May 2025, a reduction much lower than that projected when the recovery plan was prepared. Before

of such circumstances beyond the control of its new governance, which put pressure on the cash flow of the companies under recovery and make it difficult to fulfill short-term financial obligations assumed, they presented the amendment, determined to find a solution that would allow the continuation of payments, overcome temporary cash flow difficulties and preserve operational businesses, all without forgetting the social function and the preservation of the company. Below, they briefly detail the terms of the amendment, presented on July 1, 2025, highlighting its viability and the need for approval to be deliberated at a new General Meeting of Creditors, the call for which is based on art. 35, I, item 'a', of Federal Law No. 11,101/2005, as well as in clauses 9.6, 9.6.1 and 9.6.2 of the recovery plan. They mention doctrine regarding the possibility of amending judicial recovery plans and case law precedents on the legitimacy of a measure that aims to suspend the enforceability of related obligations. They once again highlight the substantial fulfillment of the obligations of the recovery plan and the efforts made in favor of its recovery project. They outline their role for society and the necessary protection of their activities, which involve thousands of direct and indirect jobs generated by them, as well as essential services of notable public interest at the national level, such as emergency services (190, 192 and 193) and those provided to the Integrated Air Defense and Air Traffic Control System (CINDACTA). Having weighed the facts, they understand that the suspension period set by the Court *a quo* is insufficient to reach a consensus among creditors regarding the amendment to the recovery plan, especially given the complexities involving new restructuring of relevant credits and obligations of the OI Group. They advocate for the extension of the aforementioned term for another 120 (one hundred and twenty) days, noting that the procedure inherent to the addendum has not yet been triggered, requiring prior clarification to the Recovery Court of the real financial viability of the recovering companies, a duty assigned to the *Watchdog* named. They also emphasize that the requirement to present a transition plan for public services provided goes against the conclusions of the *Watchdog* and the Joint Judicial Administrator, both in the sense that, once the liabilities of the companies under recovery have been settled, the capacity for operational profit and the maintenance of activities in a sustainable manner emerges. Furthermore, the presentation of a transition plan is unnecessary at this time, as they are not bankrupt, and there are a series of structural, operational, contractual, regulatory and economic reasons to be observed in the event of a transition of the services provided. They point out that in the Autocomposition Term already signed to regulate the transition from the STFC regime of the OI Group to the private regime of provision of telecommunications services, ANATEL established as a fundamental premise the continuity of services by the OI Group itself, and not their replacement or definitive and/or total transition to any third party. They assert the forecast of investments in infrastructure and maintenance of voice services in the amount of R$5.8 billion, which, together with the other forecasts specified in the Self-Composition Term, was seen by ANATEL itself as a factor that would bring security to the telecommunications sector in a disruptive context of technological transition in the telecommunications sector. Finally, they list 13 (thirteen) reasons to highlight the probability of the alleged right, on pages 40 to 43 (index no. 02), they point out the *periculum in mora* in the fact that its short-term obligations are currently compromised, there is a risk of requests for conversion of the judicial recovery into bankruptcy, as well as of

constraints on the assets of the OI Group and termination of contracts, and also highlight the risk of irreparable damage due to severe pressures on cash flow, which even made it essential to present a request for the sale of credit rights, which was granted at the source.

Based on such arguments, they argue for the anticipation of the effects of the appeal, in accordance with art. 1,019, I, of the Code of Civil Procedure, so that they are: **(I)** suspended, for at least 120 (one hundred and twenty) days, the enforceability of the obligations provided for in the PRJ relating to credits or obligations subject to the AMENDMENT, with the subsequent prohibition of alleging non-compliance and/or filing bankruptcy or execution actions against the OI Group; **(II)** prohibited, for at least 120 (one hundred and twenty) days, any retention, arrest, seizure, sequestration, search and seizure and judicial and/or extrajudicial constraint on the assets of the recovering parties, arising from judicial and/or extrajudicial demands whose credits or obligations are subject to the AMENDMENT; **(III)** the interruption of any essential services to the OI Group is prohibited for at least 120 (one hundred and twenty) days, based on non-compliance with obligations set forth in the PRJ relating to credits or obligations subject to the AMENDMENT; **(IV)** prevented, for at least 120 (one hundred and twenty) days, the declaration of default in the presentation of the AMENDMENT (clauses *ipso fact*).

They also seek the attribution of a suspensive effect, in order to suspend the other terms of the appealed decision, particularly the presentation, by the recovering parties, ANATEL and the TCU, of a service transition plan, until the final judgment of this instrument.

This is the report. I'll decide.

**2.** According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an appeal on points of law is admissible against all interlocutory decisions issued in judicial recovery proceedings and bankruptcy proceedings, by force of art. 1,015, sole paragraph, CPC".

Thus, the intrinsic requirement of admissibility of appeal is present (fitness).

Having overcome the formal regularity, I will now proceed to analyze the request for advance relief from the appeal filed by the appellant.

Based on art.1019, I, of the CPC, the appeal instrument is received in court and distributed immediately, if it is not the case of application of art.932, paragraphs III and IV, the rapporteur, within 5 (five) days, may grant a suspensive effect to the appeal or grant, in advance of protection, totally or partially, the appeal claim, communicating his decision to the judge.

The granting of the suspensive or active effect is subject to the presence of two requirements, namely, the plausibility of the allegations and the risk of irreparable or difficult to repair damage (article 995, sole paragraph, of the Code of Civil Procedure).

It is worth collating doctrine on the subject[1]:

> "The prerequisites for granting a suspensive effect to appeals are, in our understanding, typically precautionary: risk of serious damage, of impossible or difficult reparation and probability of the appeal being granted. In other words, periculum in mora and fumus boni iuris.
>
> This damage, the likelihood of which must be demonstrated to obtain the suspensive effect of the appeal, is not necessarily identified with the compromise of the substantive right that is claimed to exist in the appeal. It is sufficient for the party to demonstrate that the damage will be aggravated if the measure is not granted.
> The law does not mention the possibility of the opposite situation occurring: the appeal has a suspensive effect by express provision and the appealing party needs the effectiveness of the decision. Having demonstrated the likelihood of the appeal being granted and the occurrence of damage, we understand that the appellant is indeed entitled to the measure corresponding to the provisional advancement of the appeal's granting. This is what is called the active effect or the preliminary injunction, not expressly provided for, but admitted in the system, in relation to all appeals with suspensive effect, for identical reasons. It can be granted in cases where the appeals do not have a suspensive effect."

I believe that the requirements justifying the partial granting of the preliminary injunction requested are present, given that, at least in terms of summary cognition, the likelihood of the final granting of the appeal filed is evident.

This is an appeal filed against the decision on fls. 118,173 to 118,176 (index no. 118,173), issued by the Court of the 7th Business Court of the Capital District, which: (I) suspended the enforceability of the obligations inherent in the amendment to the judicial reorganization plan submitted by the companies under reorganization, for the period between August 13, 2025, and August 31, 2025; (II) determined that, by the end of the established term, ANATEL and the TCU must express their opinion in the records on any transition for the purpose of ensuring that there is no interruption to the continuity of the public services provided by the OI Group; (III) imposed on the companies under reorganization the duty to submit a transition plan for the public services provided and to exercise, if they deem appropriate, the option included in clause 4.2.12, 'd', of the PRJ.

---

[1] Commentary on the new Code of Civil Procedure/ coordination Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forensic, 2015, p. 1473;



In fact, as established in the appealed decision, it is an undisputed fact that the Companies Under Reorganization have been failing to comply, punctually, with the obligations established in the Judicial Recovery Plan, as well as with the extra-bankruptcy credits.

There is a proposal to amend the PRJ based on the supervening of facts that allegedly made its execution unfeasible, with the aim of reaching the originally excluded labor creditors, renegotiating the conditions and payment terms of suppliers, partner creditors, *take or pay* with and without guarantee, supposedly reaching the specific unfulfilled obligations provided for in the plan.

In parallel, the Debtors intend to initiate the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America ("*Chapter 11*"), before the Hon. Judge of the United States Bankruptcy Court for the Southern District of New York (*United States Bankruptcy Court for the Southern District of New York*), with the objective of restructuring credits that will not be addressed in the addendum and that cannot be included in the judicial recovery process in Brazil.

Supported by the news of default, there are already requests for conversion of the judicial recovery into bankruptcy made by creditors in the incident instituted by the judge *a quo*.

In view of this scenario, weighing the need to combine several factors, notably with regard to the preservation of the company and its social relevance, the creditors, the determination of the extent of damages that may result from the interruption of very important and essential public services provided to the country, as well as the need for prior clarification of the real financial viability of the Companies Under Reorganization, the judge determined *a quo*, based on the general precautionary power provided for in art. 300 of the CPC and, as suggested by the AJ, the suspension of the enforceability of the obligations provided for in the PRJ relating to credits or obligations subject to the amendment, also preventing the establishment of constraints on the debtors' assets, in the period from 08/13/2025 to August 31, 2025.

The first instance judge also determined that until the end of the established suspension period, ANATEL (ID 117,461) and the TCU must be notified to comment on the case, including regarding any transition so that there is no interruption in the continuity of the public services provided.

It also established that the Recovering Party must present a transition plan for the public services provided and exercise, if it deems it appropriate, the option included in clause "4.2.12, "d" of the PRJ.

The Companies Under Recovery are against this decision, arguing, in summary, that although they submitted a request for an amendment to the Plan of

In a Judicial Reorganization involving a new restructuring of the OI Group's relevant credits and obligations, due to extraordinary circumstances that ultimately impacted compliance with the JRP, the MM. Reorganization Court granted a suspension of the OI Group's obligations for a period that is not compatible with the complexity of the issues addressed in the amendment, nor with the risks that the OI GROUP will be exposed to if it is required to comply with obligations without considering the amended terms.

They highlight that, despite the correctness of the appealed decision, the Oi Group will not be able to reach a consensus with its creditors in just 18 days regarding the amendment.

They add that the new administration has been taking essential measures to replenish cash and enable the recovery of the Companies Under Reorganization; however, the success of the recovery depends on the extension, for a period of no less than 120 days, of the obligations that are the subject of the amendment, in order to ensure that the OI GROUP can conclude these negotiations and submit the proposal to the General Meeting of Creditors ("AGC") for deliberation.

In view of such facts, it is requested that the effects of the appeal be brought forward so that the period of suspension of obligations determined by the appealed decision is extended for at least 120 days, until the final judgment of this appeal, thus ensuring the useful result sought by the Companies Under Reorganization.

Notwithstanding the extension of the term requested above, the appealed decision regarding the presentation, by the Recovering Parties, ANATEL and the TCU, of a service transition plan is requested to be suspended until the final judgment of this instrument.

It should not be lost sight of the fact that the general power of caution is a corollary of the constitutional guarantee of adequate judicial protection (art. 5, XXXV, of the CRFB/88) and must be understood with the necessary breadth to ensure its effectiveness, including the guarantee of the effectiveness of the decision to be handed down.

It is clear that the general power of caution was maintained by the New Code of Civil Procedure, as can be seen from Statement No. 31 of the Permanent Forum of Civil Proceduralists: "The general power of caution is maintained in the CPC".

In this sense, art. 301 of the CPC lists, by way of example, the measures to ensure the right:

"Urgent protection of a precautionary nature may be carried out through arrest, sequestration, inventory of assets, registration of protest against the alienation of assets and any other suitable measure to ensure the right."



Regarding the aforementioned legal device, the following are the teachings of Nelson Nery and Rosa Maria de Andrade Nery:

> "2. Unnamed precautionary measure. The following remains unchanged: *general power precautionary,* conferred to the judge by CPC 297. But that could already be deduced from the fact that there is no longer a specification of precautionary procedures for certain cases, so that the possibilities are broad for both the person under jurisdiction and the judge". (Commented Code of Civil Procedure and extravagant legislation, publisher Revista dos Tribunais. São Paulo, 16th edition, p.921).

In view of such considerations, the judge is entitled, based on the general power of caution, to adopt the necessary measures for the full effectiveness of the jurisdictional activity and which is within the discretion of the judge.

For the doctrinaire Humberto Teodoro Júnior (*Law Course Civil Procedure*, vol. 2, 49th ed. Rio de Janeiro: Forense, 2014, p. 532/533):

> "The precautionary function is instrumental, because it is not linked to the declaration of law, nor does it promote its eventual realization; and it only meets, provisionally and urgently, a need for security, in the face of a situation that is relevant for future definitive jurisdictional action."

In this case, the measure determined by the judge a quo is based on the preservation of the legal order, the security of relationships, the magnitude of the current judicial recovery, its numerous developments, the *stakeholders* involved, the vast range of credits, the need to preserve the company and its social function, to assess and mitigate the extent of damages that may result from the interruption of public services provided, as well as the essential need for detailed clarification of the actual financial viability of the Recovering Party, with the opinion of the auxiliary agents of the court, the state bodies involved and the Public Prosecutor's Office.

At this stage of the proceedings, the decision of the first instance judge regarding the request to amend the plan presented by the debtors is awaited.

However, the Companies Under Reorganization report that the deadline established by the original court (18 days) is too short to reach a negotiation solution with the creditors and the complexities involved in the restructuring do not allow for a definitive solution in such a short space of time.

As emphasized by the Judicial Administration, in its opinion of id.117,336, of the original records, the Recovering Companies carry out activities that enable the continuity and regularity of public services, that is, activities that transcend

strictly private interests and take on a public dimension, as they are linked to meeting the fundamental rights of the population.

In turn, the Recovering Parties report in ID 116,517 that the "OI GROUP network supports around 70% of the Integrated Air Defense and Air Traffic Control System (CINDACTA), being fundamental for the control and monitoring of the country's airspace".

THE relevance of the services executed he was highlighted in the decision fought:

> "(...) On the other hand, however, it is also true that the Company under Recovery still provides extremely important public services to the country, allowing thousands of locations access to the fixed telephone network, supporting the so-called "three-digit" services (SAMU, police support and many others) and around 70% of the CINDACTA system".

In fact, given the need to continue providing essential services to Brazilian society, Anatel's action and intervention are necessary so that any transition takes place in a safe, structured and organized manner.

In another step, the Judicial Administration established the need for further clarification from the Companies Under Reorganization, given that the insufficiency of elements would not have allowed an assessment of the viability of the continuity of the business and the new proposed restructuring (id.117.336)

It is clear that ANATEL, in its statement in id. 117,461, requested an extension of the deadline for making a statement in the records, in relation to the request for an amendment to the Judicial Recovery Plan presented by the OI Group (decision on fls. 114,138), in addition to the filing of a request for judicial recovery of 2 (two) subsidiaries (case no. 0892154-25.2025.8.19.0001), given the complexity and relevance of the matter for the telecommunications sector, with no subsequent statement emerging from the records, notably regarding the measures requested by the contested judicial provision.

Likewise, the TCU's statement regarding any transition to prevent a break in the continuity of the public services provided was not found in the original records.

Furthermore, the appealed decision itself provided for the possibility of the suspension period established - until 31.08.2025 - being extended, depending on what came to light during the course of the proceedings.

Given this state of affairs, notably the relevance of the interests involved, given the essential public services provided by the Companies Under Reorganization,



completion of the term set by the court *a quo*, the need for ANATEL and TCU to express their views in the process, as well as a more accurate examination of the matter, the likelihood of partial granting of the appeal is evident, combined with the demonstration of irreparable damage to justify the granting of the preliminary injunction.

**3.** For all the above, **I GRANT, IN PART**, the anticipation of the effects of the appeal protection only for **extend the suspension period established in the decision defendant** (id.118173) **until the request for amendment to the plan presented by the debtors is assessed by the first instance judge, also applying the aforementioned term, regarding the implementation of the measures directed to ANATEL (ID 117,461) and the TCU, as well as to the Recovering Companies, regarding the presentation of a transition plan for the public services provided and exercising, if deemed appropriate, the faculty inserted in clause "4.2.12, "d" of the PRJ.**

**4.** Request information from the court *a quo*, in accordance with art.1018, of the CPC.

**5.** The aggrieved parties must submit a response within the legal period of fifteen days, as provided for in art. 1019, II, of the CPC.

**6**. To the Judicial Administrator and the Mass Curatorship.

**7.** To d. Public Prosecutor's Office.

Rio de Janeiro, ____ of _____, 2025.

**MONICA MARIA COSTA**
**Reporting Judge**

