**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
Claire M. Campbell (admitted *pro hac vice*)
David Kim
Peter Strom (admitted *pro hac vice*)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 23-10193 (LGB) |
| Oi S.A., *et al.*,[1] | ) |
| | ) Chapter 15 |
| Debtors in a Foreign Proceeding. | ) (Jointly Administered) |
| | ) |

**FOREIGN REPRESENTATIVE'S STATEMENT PURSUANT TO**
**11 U.S.C. § 1518 AND RESPONSE TO AUGUST 30, 2025 NOTICE FILED BY V.TAL**

---

[1]   The debtors in the above-captioned cases (the "**Chapter 15 Cases**"), along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

Rodrigo Caldas de Toledo Aguiar (the "**Petitioner**" or "**Foreign Representative**"), the duly-authorized foreign representative with respect to the jointly-administered judicial reorganization (*recuperação judicial* or "**RJ**") proceeding (the "**Brazilian RJ Proceeding**")[1] of Oi S.A. – Em Recuperação Judicial ("**Oi**"), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial, and Portugal Telecom International Finance B.V. – Em Recuperação Judicial (collectively, the "**Chapter 15 Debtors**" or "**RJ Debtors**" and, together with their non-debtor affiliates, the "**Oi Group**" or the "**Company**"), commenced on March 1, 2023, under Law No. 11,101 of February 9, 2005, as amended, of the laws of the Federative Republic of Brazil before the 7th Business Court of the City and State of Rio de Janeiro, Brazil (the "**Brazilian RJ Court**"), respectfully submits this statement (the "**Statement**") pursuant to section 1518 of title 11 of the United States Code (the "**Bankruptcy Code**"), to provide the United States Bankruptcy Court for the Southern District of New York (the "**Court**") with an update on the Brazilian RJ Proceeding, and also responds to *V.tal's Notice of Filing of August 29, 2025 Rulings* [ECF No. 116] ("**V.tal Notice**") filed by BCG Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A. ("**V.tal**").

## STATEMENT AND RESPONSE

1.      The Foreign Representative respectfully submits the Statement to inform this Court of two rulings recently issued by Appellate Judge Monica Maria Costa di Piero of the Court of Justice of the State of Rio de Janeiro (the "**Brazilian Appellate Court**") on August 29, 2025.

2.      The first ruling was entered on the docket of an appeal filed by V.tal (the "**V.tal Appeal**") seeking to prevent the Chapter 15 Debtors from pursuing further restructuring relief in

---

[1]     The case number for the Brazilian RJ Proceeding before the Brazilian RJ Court is 0090940-03.2023.8.19.0001 (formerly 0809863-36.2023.8.19.0001).

the United States (the "**August 29 Temporary Injunction Ruling**").[2]  The August 29 Temporary Injunction Ruling (i) denied V.tal's request for a preliminary injunction to bar the Chapter 15 Debtors from seeking to dismiss these Chapter 15 Cases and potentially filing for chapter 11, and (ii) partially granted V.tal's request for emergency relief to reiterate the Brazilian Appellate Court's July 25[3] recommendation that this Court await further orders from the Brazilian RJ Court regarding the Chapter 15 Debtors' compliance with the Brazilian plan of reorganization ("**Brazilian RJ Plan**") and their request to amend the Brazilian RJ Plan before deciding on the Chapter 15 Debtors' request to modify the order granting recognition and dismissing the Chapter 15 Cases.  Ex. A-2 at 17.  The August 29 Temporary Injunction Ruling also suggests that "the maintenance of Chapter 15" is needed for the Brazilian RJ Proceeding.  *Id.*

3.    As permitted by Brazilian law, the August 29 Temporary Injunction Ruling was issued by the Brazilian Appellate Court on a preliminary, *ex parte* basis, relying solely on submissions made by V.tal without affording the Chapter 15 Debtors an opportunity to be heard. Indeed, the Oi Group was not aware of this particular filing by V.tal until the issuance of the August 29 Temporary Injunction Ruling, as V.tal had not yet served the V.tal Appeal on the Company.  The Chapter 15 Debtors are currently preparing their response to the V.tal Appeal.  The August 29 Temporary Injunction Ruling, therefore, is not a final order and the Chapter 15 Debtors may request that the Brazilian Appellate Court further clarify, modify, or fully withdraw the decision.

---

[2]    The August 29 Temporary Injunction Ruling is attached hereto as **Exhibit A** both in its original form and in English translation.  The Foreign Representative will provide the Court with a certified translation of the August 29 Temporary Injunction Ruling as soon as it is available.

[3]    *See* [ECF Nos. 55-57].

4.      The second ruling was entered on the docket of an appeal filed by the Oi Group with respect to the stay imposed by the Brazilian RJ Court (the "**August 29 Stay Ruling**,"[4] and together with the August 29 Temporary Injunction Ruling, the "**August 29 Rulings**") of the claims subject to the proposed amendment to the Brazilian RJ Plan (the "**Brazilian RJ Plan Amendment**").  The August 29 Stay Ruling determined that the stay imposed by the Brazilian RJ Court be extended until the Brazilian RJ Court rules on whether the Brazilian RJ Plan Amendment is admissible. The August 29 Stay Ruling also extended the deadline for the submission of a transition plan for public services by the Oi Group until the decision on the admissibility of the Brazilian RJ Plan Amendment.  The Oi Group views the entry of the August 29 Stay Ruling as a positive development, as the stay request has been extended beyond its initial August 31, 2025 limitation.

5.      Given that the Brazilian courts have issued multiple decisions and V.tal continues to file statements advancing its parochial interests and positions, the Foreign Representative believes that an explanation of the chronology of these decisions provides helpful context to understanding the August 29 Rulings and responds below to correct the incomplete and misleading picture presented in the V.tal Notice.

## I.      Background of the Brazilian Courts' Recent Decisions

6.      On July 25, 2025, in response to an appeal filed by V.tal seeking to enjoin the Chapter 15 Debtors from pursuing a chapter 11 filing in the U.S., the Brazilian Appellate Court rejected that request but recommended that this Court delay deciding on the *Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases* [ECF No. 46] (the "**Termination**

---

[4]      The August 29 Stay Ruling is attached hereto as **Exhibit B** both in its original form and in English translation. The Foreign Representative will provide the Court with a certified translation of the August 29 Stay Ruling as soon as it is available.

**Motion**") until the Brazilian RJ Court ruled on (i) the RJ Debtors' alleged non-compliance with the Brazilian RJ Plan, and (ii) the RJ Debtors' request to amend the Brazilian RJ Plan. *See* [ECF Nos. 55–57].

7.        Similarly, on August 4, 2025, the Brazilian RJ Court entered a ruling (the "**RJ Court August 4 Ruling**") denying the request by V.tal to enjoin the RJ Debtors from seeking restructuring relief in the United States, including the dismissal of these Chapter 15 Cases and commencement of cases under chapter 11 of the Bankruptcy Code.[5]

8.        On August 8, 2025, the Brazilian RJ Court entered a ruling noting that the recommendation to delay a decision on the Termination Motion originated from the Brazilian Appellate Court, and the Brazilian RJ Court, as a lower court, could not modify that recommendation. *See* [ECF No. 81].

9.        In response to the Chapter 15 Debtors' request to clarify its July 25th recommendation, the Brazilian Appellate Court issued a ruling on August 18, 2025 (the "**August 18 Ruling**"),[6] confirming that the Chapter 15 Debtors' request to dismiss these Chapter 15 Cases and potentially seek relief under chapter 11 of the Bankruptcy Code falls exclusively within the jurisdiction of this Court. The August 18 Ruling makes clear that no order of any Brazilian court, including the Brazilian Appellate Court itself, presents an obstacle to this Court's consideration or adjudication of those matters.

---

[5]     *See Statement Notifying the Court of Developments in the Brazilian RJ Proceeding Pursuant to 11 U.S.C. § 1518* [ECF Nos. 72, 74].

[6]     *See Statement Notifying the Court of Developments in the Brazilian RJ Proceeding Pursuant to 11 U.S.C. § 1518* [ECF No. 96].

10.      On August 26, 2025, V.tal filed the V.tal Appeal to seek a modification of the RJ Court August 4 Ruling,[7] and requested another similar injunction from the Brazilian Appellate Court to prevent the Chapter 15 Debtors from pursuing restructuring relief in the United States. Three days later, the Brazilian Appellate Court entered the August 29 Temporary Injunction Ruling that (i) once again denied V.tal's request to enjoin the Chapter 15 Debtors from seeking any relief in the United States, but (ii) partially granted V.tal's request for emergency relief, and reiterated the Brazilian Appellate Court's prior recommendation from July 25[8]—advising that this Court await further orders from the Brazilian RJ Court on the Chapter 15 Debtors' alleged non-compliance with the Brazilian RJ Plan and their request to amend the Brazilian RJ Plan—before deciding on any matters in the Chapter 15 Cases. *See* Ex.A-2 at 17. Additionally, the Brazilian Appellate Court further suggests that "the maintenance of Chapter 15" is needed for the Brazilian RJ Proceeding. *Id.*

11.      Although the August 29 Temporary Injunction Ruling was issued three days after the filing of the V.tal Appeal, the Chapter 15 Debtors received no notice of the V.tal Appeal prior to the entry of that ruling. The August 29 Temporary Injunction Ruling was issued by the Brazilian Appellate Court on a preliminary, *ex parte* basis, and the Oi Group still has not received formal notice of either that ruling or the appeal. Under Brazilian law, V.tal has three business days from the date of filing to notify the Brazilian RJ Court and other parties in interest, including the Chapter 15 Debtors, of the appeal. The Chapter 15 Debtors shall then have 15 days to respond to the V.tal Appeal on the merits. In parallel, the Chapter 15 Debtors will also have the opportunity to seek modification of the August 29 Temporary Injunction Ruling. The Chapter 15 Debtors shall have

---

[7]      The V.tal Appeal is attached hereto as **Exhibit C** both in its original form and in English translation. The Foreign Representative will provide the Court with a certified translation of the V.tal Appeal as soon as it is available.

[8]      *See* [ECF Nos. 55-57].

five business days to file a motion for clarification, or 15 business days to appeal the August 29 Temporary Injunction Ruling. The Chapter 15 Debtors are therefore preparing the appropriate responses to the V.tal Appeal and the August 29 Temporary Injunction Ruling and will submit them to the Brazilian Appellate Court in due course.

12.     Separately, the Brazilian Appellate Court entered the August 29 Stay Ruling in connection with an appeal by the Oi Group regarding the stay of the obligations subject to the Brazilian RJ Plan Amendment imposed by the Brazilian RJ Court until August 31, 2025. The August 29 Stay Ruling determined that such stay be extended until the Brazilian RJ Court rules on whether the Brazilian RJ Plan Amendment is admissible. *See* Ex. B-2 at 12.

**II.     V.tal Distorts the Import of the August 29 Rulings for Its Own Purposes**

13.     Shortly after the entry of the August 29 Temporary Injunction Ruling, V.tal filed the V.tal Notice the next day on August 30. But the V.tal Notice fails to properly explain the full context and nature of the August 29 Temporary Injunction Ruling and improperly claims that the August 29 Stay Ruling requires the implementation of a transition plan for public services and somehow minimizes the urgency of the Oi Group's financial situation.

14.     With respect to the August 29 Temporary Injunction Ruling, V.tal never mentions in its statement to this Court that the Brazilian Appellate Court only issued a ***preliminary*** ruling. As explained, Brazilian law provides deadlines by which parties can seek clarification or modification of preliminary rulings, and the Chapter 15 Debtors are still well within those periods. In other words, the August 29 Temporary Injunction Ruling is not final and may well be modified after the Chapter 15 Debtors have an opportunity to present their case to the Brazilian Appellate Court.

15.     Further, V.tal fails to note that the Brazilian Appellate Court issued the August 29 Temporary Injunction Ruling on a wholly *ex parte* basis without any prior notice to the Chapter 15 Debtors or an opportunity for them to be heard on the request.  As such, the Brazilian Appellate Court based its decision solely on V.tal's version of the story.  For example, the V.tal Appeal repeats V.tal's incorrect claim that the Chapter 15 Cases need to remain open to effectuate the Brazilian RJ Proceeding.[9]  The Brazilian Appellate Court accepted V.tal's representation without hearing from the Oi Group that the Foreign Representative requires no further chapter 15 relief to implement any remaining provision of the Brazilian RJ Plan and the Brazilian RJ Plan Amendment.[10]  Similarly, while pointing out to the Brazilian Appellate Court that the Chapter 15 Debtors have proposed the Brazilian RJ Plan Amendment,[11] V.tal failed to mention that none of the creditors subject to that amendment hold U.S. law-governed debt and that there is no need to enforce the Brazilian RJ Court's order in the United States.[12]

---

[9]    The V.tal Appeal incorrectly stated that "Chapter 15 is and continues being necessary for the purposes of implementing the Judicial Recovery [RJ]" and that the Brazilian RJ Plan "ha[s] not yet been implemented[.]"  Ex. C-2 at 10.  But that position simply cannot be reconciled with the evidence presented to this Court that the portion of the Brazilian RJ Plan requiring assistance from the United States courts (*i.e.*, the restructuring of the NY Notes) has already been fully implemented.  *See* Ex. C-2 at 32-33; Aug. 14, 2025 Hr'g Tr. at 75:22–77:15.

[10]    As previously explained, these Chapter 15 Cases were commenced and relief sought in the United States so that the Oi Group could implement portions of the Brazilian RJ Plan related to creditors holding N.Y. law-governed securities.  *See* [ECF No. 42] (FFE Order) ¶¶ 3–4, 12.  All of these plan provisions have been implemented.  *See* Aug. 18, 2025 Hr'g Tr. at 34:9–35:8, 148:8–10, 148:17–21.  And section 10.3.1 of the Brazilian RJ Plan still only requires enforcement of the Brazilian RJ Plan outside of Brazil where necessary for its implementation.  *See* [ECF 38-1] ¶ 10.3.1 ("[T]he Companies under Reorganization undertake to adopt the measures that are within their reach and are necessary for this Plan to be recognized as effective, enforceable and binding in the applicable foreign jurisdictions, *to the extent that such recognition is necessary for the implementation of the measures provided for in this Plan concerning the respective Creditors*.") (emphasis added).

[11]    *See* V.tal Appeal at 33, 41.

[12]    There is no requirement or need for the amendment to be granted full force and effect in the United States through continued chapter 15 proceedings.  *See* Aug. 18, 2025 Hr'g Tr. at 147:21–148:10.  The V.tal Appeal alludes to an intercreditor agreement that, according to V.tal, requires an order from this Court to impose modifications to accommodate the Brazilian RJ Plan Amendment, considering that certain creditors that are parties to the agreement are located in the United States *see* Ex. C-2 at 34–35, but omitted that this agreement allows for consensual modifications without need for any court order.  *See* Intercreditor Agreement (JX-004) § 11.03(b).

16.     Fortunately, the Oi Group will have the opportunity to present its response and clarify the record, [13] and the Brazilian Appellate Court can if it deems appropriate modify the August 29 Temporary Injunction Ruling in whole or in part in due course.[14]

17.     With respect to the August 29 Stay Ruling, the V.tal Notice completely ignores the most important aspect of the decision—the continuation of the stay until the Brazilian RJ Court rules on the Brazilian RJ Plan Amendment.  Instead, V.tal concludes that, because the stay could expire upon the submission of a transition plan by the Chapter 15 Debtors and Brazilian governmental authorities, the August 29 Stay Ruling is evidence that the Brazilian courts are actually focused on a transition plan *falência* and that therefore there is no urgent need for relief in the Chapter 15 Cases.  Neither is true.

18.     First, as correctly pointed out in the August 29 Stay Ruling, the Chapter 15 Debtors and Brazilian governmental authorities have yet to submit their views in the Brazilian RJ Proceeding on whether a transition plan for the critical services provided by the Oi Group is possible and appropriate.  Ex. B-2 at 10–12.  As such, there are currently no court orders approving

---

[13]   As another example, the V.tal Appeal relies upon the unsubstantiated arguments regarding the potential negative impacts to the market for post-petition financing in Brazil made in the amicus brief filed by the Brazilian Association of Special Situations and Litigation Finance, *see* Ex. C-2 at 16–17, but fails to disclose that this Court denied leave for the filing thereof in these Chapter 15 Cases.  *See* [ECF No. 98].

[14]   The August 29 Temporary Injunction Ruling also instructed judicial administrators appointed in the Brazilian RJ Proceeding (the "**Judicial Administrators**") to file, with the Brazilian Appellate Court, "duly translated…minutes of the hearings held before [this Court]," as well as "the documents presented in the discovery, for a better analysis of the matter."  Ex. A-2 at 17.  V.tal inappropriately argues that the Chapter 15 Debtors shall *immediately* provide an arbitrary list of documents to the Judicial Administrators and reserves its right to seek modification of the *Stipulated Confidentiality Agreement and Protective Order* [ECF No. 85] (the "**Protective Order**") if the Chapter 15 Debtors fail to do so.  V.Tal Notice at 4 n.2.  There is no need for this Court to modify its Protective Order, however, as nothing therein prevents the Chapter 15 Debtors from providing information to the Judicial Administrators.  Nor does the August 29 Temporary Injunction Ruling implicate or require V.tal's participation.  And while the Chapter 15 Debtors intend to clarify certain aspects of the direction that are unclear with the Brazilian Appellate Court, as always, the Chapter 15 Debtors will comply with the orders of the Brazilian courts.

or imposing any transition plans for Oi's critical services, and there is no indication of whether such a transition plan would be possible or how long it would take for its implementation."

19.     Second, the fact that the August 29 Stay Ruling contains a reference to a possible transition plan does not mean that the urgent need of the Chapter 15 Debtors for further restructuring has been resolved, or that the serious risks of harm caused by a potential conversion of the Brazilian RJ Proceeding to a *falência* have been mitigated.   As the record shows, a liquidation of the Chapter 15 Debtors—which could occur imminently, even before any hypothetical transition plans could be concluded and implemented—would likely cause disruptions to the public services as well as terminate thousands of jobs and significantly prejudice the recoveries of the Oi Group's creditors and other stakeholders.   *See* [ECF No. 47] (Padis Declaration) ¶ 14.   Nothing in the August 29 Stay Ruling contradicts the Oi Group's urgent need for the relief currently sought by the Foreign Representative.

*-*-*-*

[*Remainder of Page Intentionally Left Blank*]

9

Dated: September 2, 2025
New York, New York

Respectfully submitted,

By:    */s/ Philip M. Abelson*
      Philip M. Abelson

**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
Philip M. Abelson
Ricardo M. Pasianotto
Claire M. Campbell (admitted *pro hac vice*)
David Kim
Peter Strom (admitted *pro hac vice*)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, IL 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Rodrigo Caldas de Toledo Aguiar,*
*as Petitioner and Foreign Representative*