## Exhibit A

**August 29 Temporary Injunction Ruling**

## Exhibit A-1

**August 29 Temporary Injunction Ruling (Portuguese)**

**PRIMEIRA CÂMARA DE DIREITO PRIVADO DO TRIBUNAL DE JUSTIÇA DO ESTADO DO RIO DE JANEIRO**

**Agravo de instrumento nº 0070880-41.2025.8.19.0000**

**Agravante: V.TAL - Rede Neutra de Telecomunicações S.A.**
**Agravado: OI S.A. - em recuperação judicial e outros**

**Relatora: Des. Mônica Maria Costa**

<u>DECISÃO</u>

**1.** Trata-se de agravo de instrumento interposto contra parte da decisão de fls. 117.355/117.359 (especificamente f.117.356), proferida pelo MM Juízo da 7ª Vara Empresarial da Comarca da Capital do Rio de Janeiro que, em incidente autuado por dependência à recuperação judicial do Grupo OI (nº 0090940-03.2023.8.19.0001), diante da iminência da realização de audiência integrante de procedimento de desistência ao *Chapter 15* deflagrado pelo Grupo Oi junto a Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York, analisando requerimentos formulados pela V.Tal. (ids. 116.966, 117.289 e 117.339), declarou que "não irá determinar a quem quer que seja que se abstenha de distribuir ação (procedimento judicial) perante qualquer jurisdição", ao fundamento de que a inafastabilidade do Judiciário é pedra fundamental de um Estado Democrático de Direito.

Insurge-se a parte agravante, afirmando que a decisão agravada faz referência ao pedido de ajuizamento de um processo principal de reestruturação pretendido pela Oi, na forma do capítulo 11 do Código de Falências dos Estados Unidos ("*Chapter 11*"), a ser apresentado perante o Poder Judiciário americano, caso seja deferido o pedido de encerramento do *Chapter 15* das Agravadas, em curso perante o Tribunal de Falências da Corte do Distrito Sul do Estado de Nova Iorque.

Prossegue aduzindo que a pretensão declarada pelo Grupo Oi seria de que o *Chapter 11* tramitasse de forma concomitante ao processo de Recuperação Judicial atualmente em curso perante o Juízo da Recuperação.

Argumenta que a decisão agravada acabou por rejeitar, implicitamente, o pedido formulado pela V.tal para que o Juízo da Recuperação também apreciasse a legalidade em torno do pretenso *Chapter 11*, inclusive após oitiva dos i. Administradores Judiciais e representante do Ministério Público.

Pontua que a decisão recorrida não apenas deixou de exercer o indispensável controle de legalidade sobre o pretendido *Chapter 11*, como abriu perigoso precedente de legitimação a um expediente flagrantemente ilegal, incompatível com a ordem pública brasileira e corrosivo a autoridade deste E. Tribunal.



MONICA MARIA COSTA DI PIERO:29835    Assinado em 29/08/2025 13:57:01
Local: GAB. DES(A). MONICA MARIA COSTA DI PIERO



57

Defende a necessidade de reforma da decisão agravada para que a jurisdição brasileira, após a oitiva dos i. Administradores Judiciais e do membro do Ministério Público, reconheça e comunique ao Juízo de Nova Iorque (167-P, LFR) que um eventual *Chapter 11* a ser ajuizado pelo Grupo Oi é materialmente ilegal e incompatível com a Recuperação Judicial, escorado nos seguintes argumentos:

(a) *violação à ordem pública*, uma vez que a LFR veda o ajuizamento de novo pedido de recuperação judicial no prazo de 5 (cinco) anos contados da decisão de homologação do plano de recuperação judicial respectivo (artigo 48, II, LFR). Afirma que se trata de norma de ordem pública, que reflete políticas eleitas pelo legislador nacional como parte da estrutura de incentivos econômicos que fundamenta a LFR, destacando que o Grupo Oi teve seu plano homologado há pouco mais de 15 (quinze) meses. Assinala que a duplicidade de processos principais, nacional e estrangeiro, não é admitido pelo ordenamento jurídico brasileiro. Esclarece que os investidores que financiam devedores em recuperação judicial no Brasil se baseiam nas disposições aplicáveis previstas na LFR para a avaliação de riscos e precificação dos financiamentos e, foi apoiado nessa previsibilidade e na confiança na tutela do direito de crédito, que a V.tal (por meio de sua sociedade afiliada), a desembolsar o equivalente a US$ 150 milhões em Financiamento DIP para a Oi. Destaca que, ao fazer o investimento, a V.tal acreditava que o D. Juízo da Recuperação Judicial seria o único competente para processar a reorganização do Grupo Oi e, portanto, que (i) as garantias fiduciárias atreladas ao Financiamento DIP (e.g., as onerações sobre as ações de emissão da V.tal) poderiam ser excutidas em qualquer cenário, de acordo com a lei nacional de regência e o instrumento de garantias; e (ii) a Oi não poderia ajuizar uma nova recuperação judicial dentro do prazo de 5 (cinco) anos contados da homologação do Plano – de modo que o Grupo Oi deveria necessariamente adimplir integralmente o Financiamento DIP antes de tal prazo, na medida em que aquele vence em 2027, ou seja, dentro de tal quarentena. Argumenta que, caso a Justiça brasileira autorize o Grupo Oi, depois de ter se beneficiado de investimentos e proteções viabilizados e conferidos a ele pela Recuperação Judicial, na forma da legislação nacional, conforme autorização dos credores brasileiros e do Poder Judiciário, a ajuizar um *Chapter 11* paralelamente à Recuperação Judicial no Brasil para reestruturar obrigações extraconcursais na jurisdição norte-americana, estaria alterando a lógica e os incentivos conferidos pelo ordenamento jurídico nacional, de modo que os investidores que financiam empresas em recuperação judicial passariam a incluir tais elementos em suas análises de risco. Acresce que, ao tomar a decisão de aprovar o plano de recuperação judicial, os credores que mantêm relações comerciais de trato sucessivo com o devedor em recuperação judicial levam em consideração os termos de pagamentos de seu crédito concursal em conjunto com as expectativas de pagamento dos fornecimentos nos anos futuros, que serão viabilizados com a aprovação do plano e o soerguimento do devedor. Acentua que os impactos negativos ao setor decorrentes desse precedente temerário, inclusive, foram endereçados pela Associação Brasileira





58

de *Special Situations e Litigation Finance* em sua petição de Amicus Brief apresentada no âmbito do *Chapter 15*. Ressalta que os efeitos deletérios dessa estratégia para o mercado como um todo também foram reconhecidos pelos assessores do Grupo Oi na audiência no âmbito do *Chapter 15*, segundo os quais o mercado brasileiro teria de se adaptar a essa nova realidade.

(b) *impossibilidade de o Chapter 11 reestruturar créditos que não se sujeitam à Recuperação Judicial*, tendo em vista que as regras de insolvência transnacional incluídas na LFR (artigos 167-A e seguintes) vedam (no contexto do Grupo Oi) o reconhecimento de um processo estrangeiro que venha a reestruturar créditos que não se sujeitam a uma recuperação judicial (artigos 167-M, §3º, 167-S, I, e 167-B, III, todos da LFR). Assinala que, diante da existência da Recuperação Judicial e o fato de que o centro de interesses principais do Grupo Oi ser reconhecidamente (inclusive, por decisão transitada em julgado) no Rio de Janeiro, o *Chapter 11* não poderá ser reconhecido pela jurisdição brasileira dado que o objetivo declarado pelo Grupo Oi é justamente afetar créditos extraconcursais e burlar a vedação ao novo pedido de reestruturação em um período inferior a cinco anos. Conclui que, caso a Oi venha a ajuizar o *Chapter 11*, a reestruturação das obrigações de natureza extraconcursal do Grupo Oi não seria passível de reconhecimento e aplicação de efeitos no Brasil, uma vez que a LFR consagra quarentena de 5 (cinco) anos para que um novo pedido de recuperação judicial seja ajuizado (artigo 48, II, LFR). Afirma que as declarações prestadas pelo Sr. Marcelo Milliet, na Audiência do *Chapter 15*, dão a entender que o *Chapter 11* pode interferir também na esfera de créditos concursais que estão sob a tutela do D. Juízo da Recuperação e desse E. Tribunal e que deveriam ser mantidos exclusivamente sujeitos à jurisdição brasileira, bem como revela que o Grupo Oi busca obter um financiamento na modalidade *debtor-in-possession*, no âmbito do *Chapter 11*, que teria prioridade tanto sobre créditos extraconcursais detidos contra o Grupo Oi, tanto quanto sobre os créditos concursais que já estão sendo reestruturados na Recuperação Judicial, o que alteraria a ordem de pagamentos e prioridade de distribuição de caixa estabelecida na Recuperação Judicial, no Plano já homologado pela jurisdição brasileira. Concluiu, dessa forma, que o Grupo Oi intenta por meio do *Chapter 11* subverter, de fora para dentro, a ordem pública brasileira, por meio da reestruturação de créditos que a lei nacional expressamente exclui da recuperação, criando novas dívidas prioritárias que atropelam credores concursais e reescrevendo a cascata de pagamentos já homologada pelo Judiciário brasileiro.

(c) *risco de decisões conflitantes*, diante da coexistência de dois processos de insolvência principal, o que se afigura medida inédita no Brasil. Alega que a Recuperação Judicial e um pretenso *Chapter 11* não tutelam só a reestruturação de determinados créditos, mas também direitos, deveres, limitações e prerrogativas de devedores e credores a eles submetidos, sendo certo que o risco de tais regras e consequentes decisões judiciais serem conflitantes entre si é certo, conforme inclusive já reconhecido pelo Juízo de Nova Iorque e pela Oi,



23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A
August 29 Temporary Injunction Ruling    Pg 6 of 39

59

podendo tal medida gerar prejuízos incontáveis para diversos *stakeholders.* Assinala que é incerto em que medida um *Chapter 11* potencialmente impactaria credores trabalhistas, tributários e aqueles devidos às autoridades regulatórias brasileiras, e como a Oi pretende dar efetividade no Brasil às decisões eventualmente proferidas pela justiça americana em vista da existência e continuidade da Recuperação Judicial, notadamente à luz dos artigos 167-A e seguintes da LFR. Sinaliza que, no indesejado cenário, em que a Recuperação Judicial seja convolada em falência diante dos descumprimentos do Plano e da deterioração da situação financeira do Grupo Oi, já noticiada pelos I. Administradores Judiciais e pelo *Watchdog*, caberia ao D. Juízo da Recuperação Judicial e a esse E. Tribunal dar eficácia às regras de arrecadação e alienação de ativos no caso de liquidação das Agravadas, destacando que, simultaneamente, no entanto, o Juízo de Nova Iorque poderá também adotar medidas (potencialmente conflitantes) que impedirão a alienação de ativos do Grupo Oi, em prol do *Chapter 11.*

(d) *necessidade de manutenção do Chapter 15,* diante da sua necessidade para fins de implementação da Recuperação Judicial. Afirma que o processo e o plano de recuperação judicial ainda não foram implementados e o Grupo Oi, recentemente, apresentou aditamento ao plano, no qual, dentre outros, pretende alienar seu principal ativo (a UPI V.tal) e afetar garantias concedidas a credores relevantes com conexões nos Estados Unidos. Assevera que o cenário de incerteza é substancial e indiscutível, sendo provável que eventuais decisões a serem proferidas pelo Juízo da Recuperação deverão ser confirmadas no âmbito do *Chapter 15*, sob pena de esvaziamento da jurisdição do Juízo da Recuperação, razão pela qual o encerramento daquele procedimento auxiliar, portanto, é prematuro e inapropriado. Informa que o próprio Juízo de Nova Iorque reconheceu que, na atual conjuntura da Recuperação Judicial, é importante que a Oi permaneça com o *Chapter 15* aberto e ativo em Nova Iorque.

Por fim, afirma que até o momento o Grupo Oi não foi capaz de refutar as alegações de ilegalidade envolvendo a proposição de um *Chapter 11*, bem como esclarecer as incertezas reiteradas pelo próprio Juízo de Nova Iorque acerca da impossibilidade de coexistência do *Chapter 11* e da Recuperação Judicial, além de não ter apresentado sequer um estudo ou análise sobre os possíveis resultados de um *Chapter 11*, a recuperabilidade os créditos em um contexto como esse, os impactos sobre os credores ou as garantias a serem ofertadas. Destaca que também ficou demonstrado no âmbito do *Chapter 15* que o Grupo Oi não possui a mínima indicação de que obterá um financiamento DIP no âmbito do *Chapter 11,* além de estimar que seriam despendidos mais de US$ 100 milhões (i.e., mais de meio bilhão de reais) em honorários de assessores para condução de um procedimento de *Chapter 11.* Assegura que o anunciado pedido de *Chapter 11* seria uma medida desastrada, sem fundamento e que colocaria em risco toda a reestruturação do Grupo Oi, resultado de praticamente uma década de esforços dos credores e do Poder Judiciário Nacional, uma vez que:: (i) violaria princípios de ordem pública da lei Brasileira; (ii) criaria precedente temerário a todo o





sistema de insolvência nacional e conflitos de jurisdição que tornaria seu processamento inviável do ponto de vista prático; (iii) é desprovido de qualquer análise crível sobre a sua viabilidade financeira; (iv) aumentaria (ainda mais) a litigiosidade envolvendo o Grupo Oi; (v) drenaria mais de meio bilhão de reais em honorários de advogados e assessores; (vi) prejudicaria o principal ativo do Grupo Oi, impactando a execução do próprio Plano; e (vii) reduziria o valor da garantia ofertada a diversos credores sob o Plano.

Pede seja concedida a antecipação dos efeitos da tutela recursal, determinando-se que: (a) caso o primeiro agravo de instrumento tenha sua perda de objeto reconhecida, os termos da decisão de efeito suspensivo ali proferida sejam convalidados e integralmente mantidos, de forma que eventual decisão a respeito do pedido de encerramento do *Chapter 15* aguarde as decisões do Juízo da Recuperação a respeito do descumprimento do Plano pelo Grupo Oi e do processamento do aditamento ao plano; (b) em linha com os deveres de cooperação e comunicação que norteiam as disposições de insolvência transnacional da LFR, esse E. Tribunal expeça comunicação complementar ao Juízo de Nova Iorque, informando que, em juízo de cognição sumária, (a) o ajuizamento do *Chapter 11* violaria a política pública brasileira; (b) os efeitos do *Chapter 11* sobre credores extraconcursais não poderiam ser reconhecidos no Brasil dada a existência da Recuperação Judicial; e (c) a manutenção do *Chapter 15* é necessária para dar efetividade às decisões a serem proferidas no âmbito e por força da Recuperação Judicial.

Pede, ao final, seja provido o recurso, ratificando-se os pedidos de antecipação dos efeitos da tutela recursal formulados acima e revertendo a decisão agravada, para todos os fins e efeitos de direito.

É o relatório. Passo a decidir.

**2.** Nos termos do decidido pela Segunda Seção do Superior Tribunal, no julgamento do Recurso Especial 1707066/MT, submetido ao rito dos recursos repetitivos (Tema 1022), "é cabível agravo de instrumento contra todas as decisões interlocutórias proferidas nos processos de recuperação judicial e nos processos de falência, por força do art. 1.015, parágrafo único, CPC".

Deste modo, presente o requisito intrínseco de admissibilidade recursal (cabimento).

Ultrapassada a regularidade formal, passo à análise do pedido de antecipação da tutela recursal formulado pelo recorrente.

Com arrimo no art.1019, I, do CPC, recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art.932, incisos III e IV, o relator, no prazo de 5 (cinco) dias poderá atribuir efeito suspensivo ao recurso ou deferir em antecipação de tutela, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão.





61

A concessão do efeito suspensivo ou ativo submete-se à presença de dois requisitos, quais sejam, a verossimilhança das alegações e perigo de dano irreparável ou de difícil reparação (artigo 995, parágrafo único, do Código de Processo Civil).

Vale colacionar doutrina acerca do tema[1]:

"Os pressupostos para a concessão de efeito suspensivo aos recursos são, em nosso entender, tipicamente cautelares: risco de dano grave, de impossível ou de difícil reparabilidade e probabilidade de provimento do recurso. Ou seja, periculum in mora e fumus boni iuris.

Este dano, cuja probabilidade deve ser demonstrada para obtenção do efeito suspensivo do recurso, não se identifica necessariamente com o comprometimento do direito material que se afirma ter no recurso. Basta que a parte demonstre que o dano será agravado, se a medida não for concedida.

A lei não menciona a hipótese de que ocorra situação inversa: o recurso tem efeito suspensivo por disposição expressa e a parte recorrente precisa da eficácia da decisão. Demonstrada a probabilidade de provimento do recurso e de ocorrência de dano, entendemos que o recorrente faz, sim, jus à providência correspondente ao adiantamento provisório do provimento do recurso. É o que se chamou de efeito ativo ou de tutela antecipada recursal, não expressamente prevista, mas admitida no sistema, em relação a todos os recursos com efeito suspensivo, por identidade de razões. É possível ser concedida nos casos de os recursos não tem terem efeito suspensivo".

Em sede de cognição sumaríssima, não vislumbro, de plano, a verossimilhança nas alegações do agravante a justificar a concessão integral da antecipação da tutela recursal pretendida.

Antes de se ingressar no exame da tutela recursal pleiteada, necessária uma breve digressão cronológica dos fatos.

Na origem, as recuperandas apresentaram aditamento ao PRJ homologado, pugnando pela publicação de edital para convocação de Assembleia de Credores para sua votação, requerendo, ainda, a concessão de tutela de urgência para que seja suspensa, por 180 dias, a exigibilidade das obrigações previstas no PRJ, com

---

[1] Comentário ao novo Código de Processo Civil/ coordenação Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, pág. 1473;





afastamento de consequências do inadimplemento, inclusive constrições judiciais sobre seu patrimônio.

Em seu petitório de fls.113.147/113.190, dos autos originários, afirmam que posteriormente à homologação, em 28.05.2024, do PRJ aprovado pelos credores em 19.04.2024, a despeito de vir implementando diversas medidas nele previstas necessárias à reestruturação de seu passivo, manutenção do capital de giro e à viabilização de seu novo plano estratégico de negócios, com expressiva redução de sua dívida líquida e franco desenvolvimento das atividades operacionais estratégicas apontadas como o seu atual "core busines", se depararam, contudo, com grave crise de caixa.

Alegam que as premissas que serviram de base para o racional econômico das diversas obrigações de pagamento assumidas no PRJ, não foram verificadas após sua homologação pelo Juízo Recuperacional, dentre elas: (i) a alienação da UPI ClientCo acarretaria no recebimento de R$ 7.3 bilhões em dinheiro no biênio de 2024-2025; (ii) que reduziriam drasticamente os custos de manutenção da infraestrutura necessária à prestação dos serviços de telefonia STFC com a adaptação da concessão para o modelo de autorização a partir de junho de 2024; e (iii) o desembolso em função do passivo trabalhista se manteria nos níveis históricos.

Defendem que a Nova Governança passou a estudar alternativas na busca de equacionar a pressão por liquidez imediata e, por conseguinte, assegurar a continuidade do seu soerguimento, em respeito ao princípio da função social e da preservação da empresa, concluindo pela necessidade de aprovação do aditamento ao Plano apresentado, mediante a seguinte proposta: (i) a alteração das condições de pagamento dos Créditos detidos por Credores Trabalhistas (Cláusula 4.1), Credores Fornecedores Parceiros (Cláusula 4.2.6), Credores Take or Pay com Garantia (Cláusula 4.2.8), Credores Take or Pay sem Garantia – Opção I (Cláusula 4.2.9), Credores Take or Pay sem Garantia – Opção II (Cláusula 4.2.10) e Credores Extraconcursais Aderentes (Cláusula 4.10); (ii) a utilização de depósitos recursais para a obtenção de recursos imediatos e pagamento dos credores (Cláusulas 5.4); e (iii) a possibilidade de contratação de empresa especializada para gerir os Imóveis por meio de veículo a ser criado para esse fim (Cláusula 5.3.5).

O juízo *a quo* reputou necessária a prévia oitiva da Administração Judicial, do WatchDog (nomeado para atuar no feito consoante decisão de id. 114.162, dos autos originários) e do órgão do Ministério Público acerca da legalidade dos termos do aditivo e da mínima viabilidade financeira da empresa (id. 114.138, dos autos originários).

Em petição posterior (id.115.354, dos autos originários), sustentam as Recuperandas que, além da necessidade de aditamento ao PRJ para viabilizar a superação de suas dificuldades temporárias de fluxo de caixa de curto prazo, consideram recorrer a medidas judiciais no exterior, com o objetivo na reestruturação de créditos que não serão equacionados no aditamento, mediante a instauração do procedimento previsto no Capítulo 11 da Lei de Falências dos Estados Unidos da América ("*Chapter* 11"), perante o MM. Juízo do Tribunal de Falências dos Estados Unidos do Distrito Sul de Nova





York (*United States Bankruptcy Court for the Southern District of New York*). Informam, ainda, que de forma se preparar para o potencial ajuizamento do *Chapter* 11, ajuizaram, na mesma data, pedido de desistência do *Chapter* 15, o qual será oportunamente decidido pela Corte Americana.

Justificam a necessidade medida forte no argumento de que parte significativa das dívidas do GRUPO OI é atualmente composta por créditos que não foram abarcados pelo presente processo recuperacional, as quais foram incorridas, em sua quase totalidade, durante a gestão da antiga administração das recuperandas. Pontuam que, de forma a assegurar a continuidade de suas operações, considera recorrer a medidas judiciais no exterior, com o objetivo de tratar tais débitos de forma organizada, uma vez que não podem ser incluídos no processo de recuperação judicial no Brasil.

Em relação ao aditamento e esclarecimentos solicitados pelo juízo *a quo*, se manifestou o Watchdog no id.115.773.

Acerca do pedido de aditamento, também se manifestou o Administrador Judicial no id 115.999, dos autos originários.

O Ministério Público ofertou parecer, em sede de cognição sumária, no id.116.114, destacando, desde logo, a existência de ilegalidades no aditivo apresentado, as quais devem ser superadas até a eventual deliberação em AGC, nos termos do art. 35, I, "a" da Lei 11.101/2005, no que diz respeito às seguintes cláusulas: "a) cláusula 4.1 e seguintes: impossibilidade de criação de subclasses de credores trabalhistas com créditos inferiores à 150 salários-mínimos; b) cláusulas 4.2.6, 4.2.7 e 4.2.8: mudança substancial na forma de pagamento dos credores fornecedores parceiros e credores take or pay; e c) cláusula 5.4: levantamento de depósitos recursais trabalhistas".

Após a vinda das manifestações acima relatadas, a magistrada *a quo* proferiu decisão a fls. 116.202/116.209, dos autos originários, apreciando a pretensão deduzida pelo Grupo OI a fls.113.147/113.190, desse mesmo feito, consistente na publicação de edital de convocação de credores para apresentação de aditamento ao plano de recuperação judicial aprovado em março/2024 e de concessão de medida liminar a fim de que se determine a suspensão da exigibilidade de obrigações vincendas previstas no PRJ, pelo período de 180 dias, sem que incida em situação de falência, assim como de eventuais constrições patrimoniais no interregno, nos seguintes termos:

> "(...) Diante do contexto assim definido, reputo imprescindível a prévia manifestação - ainda que breve - do órgão do Ministério Público, da Administração Judicial conjunta e, também, do Observador Judicial, já nomeado, acerca do aditamento ao PRJ apresentado, e os documentos que o instruem, no prazo comum de 05 (cinco) dias corridos, sob o aspecto de sua legalidade e mínima viabilidade econômico-financeira do ADITAMENTO apresentado. Inclusive à luz dos relatórios elaborados pela recuperanda e juntados a partir de ID 113.679, em possível cotejo com os RMAs apresentados pela AJ.





Além disso, deverá vir manifestação acerca do seguinte:

(1) Relativamente à Administração Judicial Conjunta, deverá:

a) esclarecer, clara e objetivamente, o cumprimento e observância das alíneas do inciso II do art. 22 da LRF;

b) afirmar, ou não, o efetivo cumprimento do PRJ homologado até a data da petição de ADITAMENTO (01.07.2025) e a viabilidade de manutenção de seu cumprimento pelos 3 meses a seguir da apontada data;

c) discriminar os valores do ativo e do passivo da recuperanda no início da 2ª RJ (aqui considerada distribuição da cautelar preparatória) e em 01.07.2025 (data da protocolização do ADITAMENTO em análise prefacial). Para a quantificação, deverá se basear tanto no valor computado com abatimentos decorrentes do PRJ e, também, sem este abatimento (ou seja, o valor decorrente da exigibilidade dos débitos originários retomada);

d) discriminar fluxo de caixa na data do ajuizamento da 2ª RJ (aqui considerada distribuição da cautelar preparatória) e em 01.07.2025 (data da protocolização do ADITAMENTO em análise prefacial);

e) discriminar a quantidade de funcionários diretos e indiretos da recuperanda na data de requerimento da 2ª RJ (aqui considerada distribuição da cautelar preparatória) e em 01.07.2025 (data da protocolização do ADITAMENTO em análise prefacial)

f) discriminar valores pagos aos credores trabalhistas CLASSE I e aos credores parceiros com e sem garantia, pagos nos últimos 3 meses, e o que deverá ser pago nos próximos 3 meses (aqui considerados meses inteiros; ou seja, estamos em curso do mês de junho/2025 e os 3 meses antecedentes são: maio, abril e março/2025, e assim se fará a projeção dos meses futuros).

(2) Quanto ao watchdog, fica determinado que priorizará, neste momento, a manifestação relativa ao pedido de aditamento ao plano deduzido neste processo principal, com foco nos resultados da recuperanda dos últimos 6 meses imediatamente passados e, ainda, nas projeções dos 3 meses imediatamente futuros, à luz do contido nos autos, assim como de todo e qualquer documento e informação a qual reputar necessário acessar. Ficando expressamente autorizado a solicitá-los diretamente à Recuperanda, que deverá entregá-los. Bem como investido em todos os poderes elencados nas cláusulas 7.2.2 e 7.2.3 do PRJ homologado, devendo, caso se configure situação de sigilo/confidencialidade de informações (cláusulas 7.2.4.1 e 7.2.4.1.1 do PRJ homologado), apresentá-las ao Juízo após requerimento de juntada em incidente sigiloso.



23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A
August 29 Temporary Injunction Ruling    Pg 12 of 39

65

Assim investido, deverá o Observador judicial requisitar da Recuperanda informação sobre eventual alteração substancial remuneratória (inclusive bônus) praticada em prol de seus gestores nos últimos 6 meses (com oscilações para cima ou para baixo), Diretoria, Conselho Administrativo e seus órgãos gerenciais superiores ("Nova Gestão"), inclusive valores direcionados a pessoas jurídicas que possam integrar, bem como se tais alterações foram noticiadas à Administração Judicial no período. Estas constatações deverão constar de sua manifestação

Destaco que são instados os seguintes personagens a se manifestarem em prazo comum de cinco dias corridos: Administração Judicial, Watchdog e Ministério Público, solicitando este Juízo, a este último, a colaboração de emitir seu parecer no prazo comum, tanto em razão da delimitação do objeto de avaliação acima estabelecida como por se cuidar de processo eletrônico que isto viabiliza, notadamente em razão da urgência alegada.

Intimem-se todos, com urgência, inclusive por telefone e e-mail.

Intime-se também, dando-se ciência inequívoca do ADITAMENTO AO PRJ apresentado pelo Grupo OI em recuperação, assim como do ajuizamento do pedido de recuperação judicial de 2 subsidiárias (SEREDE e BRASIL TELECOM CALL CENTER S.A. - TAHTO), a ANATEL e ao CADE.

Destarte, faculto à recuperanda, no mesmo prazo, manifestar-se sobre eventual exercício da faculdade inserida na cláusula 4.2.12, d, do PRJ.

Por fim, ciente quanto ao ID 114.123 (ofício de e. 1ª Câmara de Direito Privado, sobre providencias adotadas quanto aos patronos da recuperanda). A respeito, este Juízo já adotou deliberação própria, no item VI de ID 113141. Por sua vez, a r. Serventia certificou a regularidade da representação processual no âmbito do processo em curso nesta primeira instancia (ID 114136).

Devolvo os autos da conclusão para cumprimento IMEDIATO de todo aqui contido. (fls.114.138/114.142)"

"Por todo o exposto:

1. Diga a Recuperanda sobre a conclusão do RMA de julho de 2025 que aponta para o descumprimento substancial de obrigações do PRJ homologado, justificando e trazendo comprovação de eventual alegação deduzida;

2. Sucessivamente, diga a Recuperanda se exercerá opção prevista na cláusula "4.2.12, "d"" do PRJ;





3. Em seguida, a AJ (inclusive sobre o dever inserto no inciso II, inciso "b" da LRE);

4. Então, ao Ministério Público sobre todo o acrescido;

5. Intime-se o WatchDog para início IMEDIATO do múnus que lhe foi incumbido e aceito, estimando honorários para tanto, ante ampliação aqui estabelecida;

6. Suspendo o pagamento de bonificações em prol da Alta Administração da Recuperanda, mantendo, por hora, suas remunerações fixadas em assembléia de 29 de abril de 2025;

7. Determino que toda e qualquer alienação ou oneração de ativos será necessariamente precedida de autorização judicial, sob pena de ineficácia de ato que isto deixe de observar;

8. Determino expedição de comunicação, pela Administração Judicial, devidamente traduzida para a língua inglesa, à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), informando que "se encontra em tramitação perante este Juízo da 7ª Vara Empresarial do Rio de Janeiro, RJ, processo de recuperação judicial do Grupo Oi, no qual a Recuperanda deixou de cumprir obrigações assumidas no mês de junho de 2025, sem justificativa para tanto, até o presente momento. (116.202/116.209 -item IV)"

Contra a referida decisão a V.Tal, ora agravante, interpôs agravo de instrumento, autuado sob nº 0059754-91.2025.8.19.0000, no qual foi deferido, parcialmente, o pedido de antecipação da tutela recursal a fim de que: (i) seja aditada a comunicação a ser expedida pela Administração Judicial à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), com a recomendação ao Juízo da Corte de NY, para que, antes de proferir qualquer decisão no processo relacionado ao Chapter 15 do Grupo Oi, aguarde a decisão do Juízo brasileiro tanto com relação à verificação e consequências do descumprimento do PRJ, já noticiado, quanto do pedido de Aditamento ao PRJ do processo principal em trâmite no Brasil; (ii) seja encaminhada cópia da referida decisão à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), com a ressalva de que não há, por parte desta jurisdição, qualquer pronunciamento judicial assentindo com a deflagração de outros procedimentos que envolvam a reestruturação do Grupo OI em outras jurisdições; (iii) por conta da assinatura do Termo de Autocomposição (Acordo) para a adaptação dos contratos de concessão para o regime de autorização, determinou-se a intimação, dando-se ciência inequívoca do Aditamento ao PRJ apresentado pelo Grupo OI em recuperação, assim como do ajuizamento do pedido de recuperação judicial de 2 subsidiárias (SEREDE e BRASIL TELECOM CALL CENTER S.A. - TAHTO), a Secretaria de Controle Externo de Solução Consensual e Prevenção de Conflitos (SecexConsenso) do Tribunal de Contas da União (TCU), e a Comissão de Valores Mobiliários (CVM); e (iv) por fim, determino, de ofício, seja oficiada à Comissão de Valores





Mobiliários (CVM), encaminhando-se, outrossim, a cópia dos 2 (dois) últimos RMA´s. O referido recurso ainda pende de decisão de mérito.

No id. 116.966, dos autos originários, a V.Tal apresentou manifestação nos autos, requerendo a magistrado *a quo* que se digne determinar a intimação dos i. Administradores Judiciais e do representante do Ministério Público para que se manifestem sobre a possibilidade de ajuizamento do pedido de restruturação no judiciário norte-americano (Chapter 11) e suas consequências para este processo de Recuperação Judicial, à luz da legislação brasileira e dos demais fatos e considerações trazidos no âmbito desta manifestação.

No 117.289, dos autos originários, reiterado no id.117.339, peticionou a agravante, mais uma vez, nos autos originários, requerendo que se determine seja oficiado o Tribunal de Falências do Distrito Sul de Nova York, a fim de: (i) informar que o prazo para manifestação do Ministério Público a respeito de eventual descumprimento do Plano pelas Devedoras na forma da Decisão nº 2 se encerrará somente em 14.8.2025 sendo que eventual decisão deste D. Juízo será proferida apenas após o decurso de tal prazo; (ii) informar que não há prazo em curso para as partes se manifestarem no Incidente a respeito do Aditamento ao Plano, de forma que sequer é possível estabelecer a partir de qual data este D. Juízo poderá decidir a respeito do aditamento ao Plano apresentado pelo Grupo Oi; e (iii) em observância ao quanto determinado pelo E. TJRJ, reiterar (a) a recomendação para que o Tribunal Americano aguarde até que seja proferida decisão por este D. Juízo acerca da verificação e consequências do descumprimento do Plano, bem como do pedido de Aditamento ao Plano antes de proferir qualquer decisão no âmbito do Chapter 15; e (b) que este D. Juízo jamais proferiu qualquer manifestação formal em apoio ao ajuizamento de um Chapter 11 pelo Grupo Oi.

Acerca da petição supra, o Grupo OI se manifestou no id.117.335.

Sobreveio, assim, a decisão recorrida (fls. 117.355/117.359) que, dentre outras determinações, declarou a impossibilidade de determinar a quem quer que seja que se abstenha de distribuir ação (procedimento judicial) perante qualquer jurisdição.

Pretende a recorrente seja concedida a antecipação dos efeitos da tutela recursal, determinando-se que: (i) seja convalidada e integralmente mantida a decisão antecipatória proferida no agravo de instrumento, autuado sob nº 0059754-91.2025.8.19.0000, caso venha a ser reconhecida sua prejudicialidade em razão da presente insubordinação; (ii) seja expedida comunicação complementar ao Juízo de Nova Iorque, informando que: (a) o ajuizamento do *Chapter 11* violaria a política pública brasileira; (b) os efeitos do *Chapter 11* sobre credores extraconcursais não poderiam ser reconhecidos no Brasil dada a existência da Recuperação Judicial; e (c) a manutenção do *Chapter 15* é necessária para dar efetividade às decisões a serem proferidas no âmbito e por força da Recuperação Judicial.

No caso, consoante já ressaltado por essa Relatora, associada a inquestionável singularidade que envolve a presente recuperação judicial no que tange ao



Rel. Des. Mônica Maria Costa

12



inexorável interesse público que decorre da prestação dos serviços à coletividade pelo Grupo Oi, está a necessidade satisfação pontual das obrigações pactuadas no PRJ aprovado pelos credores e homologados judicialmente, submetido a fiscalização durante o período de supervisão judicial.

Todavia, as Recuperandas apresentaram pedido de suspensão do pagamento das obrigações assumidas no processo recuperacional pelo prazo de 180 dias, além de ter apresentado aditivo ao plano, em razão de grave crise de caixa para honrar com as mesmas, com o escopo de alcançar os originariamente excluídos credores trabalhistas, repactuar as condições e prazos de pagamento de fornecedores, credores parceiros, *take or pay* com e sem garantia.

Em manifestação nos autos originários, afirmam as Recuperandas que tais medidas não seriam suficientes para estancar a atual situação econômico-financeira que se delineou, razão pela qual se faz, ainda, necessária, a deflagração de procedimento de recuperação em Corte Norte Americana (*Chapter 11*), no qual pretende negociar débitos não compreendidos pela presente recuperação judicial.

No id. 118.495, dos autos originários, as Recuperandas informaram ao juízo *a quo* que, durante a audiência realizada em no âmbito do Chapter 15, em 18 de agosto de 2025, após ouvir as manifestações das partes, o MM. Juízo da Corte Americana recomendou a instauração de procedimento de mediação entre as Recuperandas e a V. TAL Rede Neutra de Telecomunicações S.A.

O processo em trâmite perante a Jurisdição Brasileira foi expressamente reconhecido pelo Grupo Oi e pelas autoridades competentes como o processo principal.

Por oportuno, transcreve-se parte das decisões que assentaram a jurisdição nacional para o processamento da primeira e da segunda recuperação judicial das empresas devedoras, *in verbis*:

"O tema é novo e merece enfrentamento.

O primeiro ponto que merece destaque nesta análise é que as empresas FINCO e PTIF são meros veículos financeiros criados pelo Grupo Oi para captação de recursos no exterior de forma a financiar suas atividades produtivas. São subsidiárias integrais, criadas na Holanda, sem qualquer atividade operacional.
A atividade operacional do Grupo Oi está no Brasil. É aqui o principal estabelecimento das empresas em Recuperação; aqui está situada a atividade geradora de riqueza, o centro de interesses que justifica, na teoria e na prática, a criação de um sistema de proteção a empresas. Este é o foro apropriado para o trâmite do processo de reorganização.
E, por isso, entendo que todas as questões relativas à holding e suas subsidiárias devem ser decididas de acordo com a legislação brasileira. O direito brasileiro não permite qualquer jurisdição

Rel. Des. Mônica Maria Costa                                                    13





69

concorrente de autoridade judiciária estrangeira ou equivalente quando o devedor insolvente possui o seu estabelecimento principal no Brasil".

**"JURISDIÇÃO E CONSOLIDAÇÃO PROCESSUAL**

O presente pedido de recuperação judicial foi formulado por Oi S.A., PTIF e Oi Coop. PTIF e Oi Coop são sociedades não operacionais que, no passado, foram utilizadas como veículos para captação de recursos a partir do exterior, voltados ao financiamento das atividades do Grupo Oi no Brasil. As obrigações da PTIF e da Oi Coop, apesar de contraídas originalmente no exterior mediante a emissão de *bonds*, sempre foram cumpridas no Brasil, com lastro nas operações brasileiras de sua controladora Oi.

Relembre-se que, quando do processamento da 1ª recuperação judicial do Grupo Oi, a competência desse juízo para processar a recuperação judicial da subsidiária holandesa Oi Coop chegou a ser questionada no âmbito do procedimento instaurado com base no *Chapter* 15 do Código de Falências Norte Americano, cujo julgamento proferido pelo juízo do Distrito Sul de Nova York, nos Estados Unidos, confirmou que é no Brasil que está localizado o centro de principais interesses da Oi Coop e do Grupo Oi.

Ao deferir o processamento da 1ª recuperação judicial, este Juízo já havia entendido que: "*E, na medida em que as empresas integrantes do GRUPO OI atuam de forma coordenada e integrada no sistema brasileiro de telecomunicações, e sob controle societário, operacional, financeiro, administrativo e gerencial único - exercido pela sociedade controladora OI - inclusive com relação às sociedades-veículos financeiros não operacionais constituídas no exterior - a proteção judicial deve alcançar ao conglomerado como um todo.*" (fls, 89496-89525 do processo nº 0203711-65.2016.8.19.0001).

Tratou-se, na época, de verdadeiro *leading case*, pois pouco ou nada havia de insolvência transnacional nos tribunais brasileiros e nem a legislação em vigor tratava dessa hipótese. O Poder Judiciário foi demandado a suprir a lacuna legal, através da interpretação sistemática e analítica do ordenamento e, notadamente, dos princípios constitucionais aplicáveis. Posteriormente, a Lei 14.112/2020 trouxe à Lei 11.101/2005 o capítulo da Insolvência Transnacional (VI-A) para regulamentar a hipótese.

Naquela ocasião, também a consolidação processual ainda nem estava normatizada, o que ocorreu com as alterações trazidas pela Lei 14.112/2020, nos termos do art. 69-G: *Os devedores que atendam aos*





*requisitos previstos nesta Lei e que integrem grupo sob controle societário comum poderão requerer recuperação judicial sob consolidação processual.*

Pelo exposto, mostram-se atendidos os requisitos para a consolidação processual, nos termos do art. 69-G da Lei nº 11.101/05.

Indiscutível que há controle societário, operacional, financeiro, administrativo e gerencial único exercido pela sociedade controladora Oi S.A. em relação às sociedades-veículos financeiros não operacionais constituídas no exterior, sendo evidente a existência de um grupo econômico de fato e direito, tendo todas as Requerentes apresentado documentação individualmente, o que permite o litisconsórcio ativo para fins de ajuizamento da Recuperação Judicial.

Assim, reiterando os termos da decisão antecipatória proferida no ID 44532251 da Tutela Cautelar Antecedente nº 0809863-36.2023.8.19.0001, a consolidação processual é medida que deve ser aplicada ao presente caso".

Conforme assinalado nesta última decisão, quando do processamento da 1ª recuperação judicial do Grupo Oi, a competência do juízo *a quo* para processar a recuperação judicial da subsidiária holandesa Oi Coop chegou a ser questionada no âmbito do procedimento instaurado com base no *Chapter* 15 do Código de Falências Norte Americano, cujo julgamento proferido pelo juízo do Distrito Sul de Nova York, nos Estados Unidos, confirmou que é no Brasil que está localizado o centro de principais interesses da Oi Coop e do Grupo Oi.

Não há dúvidas, portanto, de que toda a atividade operacional do Grupo OI se encontra localizada no Brasil, sendo aqui o centro de interesses principais do devedor (COMI).

A prevalência da jurisdição brasileira, no presente caso, encontra respaldo também nos interesses jurídicos envolvidos, fortemente vinculados a questões de ordem pública, prestação de serviço público de comunicação, questões sociais e função social do Grupo Oi, inclusive com obrigações perante o TCU e órgãos públicos de vários níveis da federação nacional brasileira.

Estamos diante da segunda Recuperação Judicial do Grupo OI, tendo sido o plano de recuperação judicial apresentado, após sucessivas suspensões da assembleia, aprovado pelos credores, em 18.04.2024 e 19.04.2024, por 79,87% dos votos ("por cabeça") e 56,15% por valor dos créditos votantes da classe quirografária.

E, em decisão datada de 28.05.2024, o plano de recuperação judicial aprovado pelos credores em AGC foi homologado judicialmente em favor de OI S.A. - Em Recuperação Judicial ("Oi" ou "Companhia"), PORTUGAL TELECOM INTERNATIONAL





71

FINANCE B.V. - Em Recuperação Judicial ("PTIF") e OI BRASIL HOLDINGS COÖPERATIEF U.A. - Em Recuperação Judicial ("Oi Coop"), com a ressalva das cláusulas 9.1, 9.2 e 9.3.5, para que a (s) extinção (ões) das obrigações em face do(s) coobrigado(s) e a supressão das garantias somente surtam seus efeitos ao(s) credor(es) que aprovaram o plano de recuperação judicial, sem nenhuma ressalva.

A recorrente, V.Tal, consiste em uma UPI, oriunda do plano de recuperação do Grupo OI, sendo detentora de participação acionária de 27,5%.

De fato, nos termos do aviso de protocolo e audiência, datado de 13 de fevereiro de 2023, encaminhado pela Egrégia Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York, evidencia-se que o processo nº 23-10193-JPM refere-se a um reconhecimento de tutela cautelar provisória em preparação a um processo de recuperação judicial, que ainda se encontra em trâmite no Brasil.

Os créditos concursais, incluindo aqueles submetidos aos efeitos da primeira Recuperação Judicial (Proc. nº 0203711-65.2016.8.19.0001), estão sendo pagos na forma do Plano aprovado na segunda Recuperação Judicial (proc. nº 0809863-36.2023.8.19.0001).

O plano aprovado e homologado judicialmente está em fase de cumprimento e sob supervisão judicial e não há nos autos a relação dos créditos extraconcursais que fazem parte da reestruturação pretendida pelas Recuperandas perante a Justiça Estrangeira.

Tampouco se tem ciência da apresentação de qualquer análise de estudo sobre os possíveis resultados de um *Chapter 11*, dentro do contexto da presente recuperação judicial, notadamente no que tange à proteção e a maximização do valor dos ativos das devedoras, os impactos sobre os credores ou das garantias ofertadas.

Noutro passo, há pedido de aditamento do plano de recuperação judicial aprovado na segunda recuperação judicial, além de pedido de processamento da recuperação judicial de duas subsidiárias integrais.

Por outro lado, nesse momento, aguarda-se a decisão da juíza de 1ª instância acerca do pedido de aditamento ao plano apresentado.

Neste contexto, é imprescindível e importante ao Juízo Brasileiro a manutenção do *Chapter 15* para a efetividade das decisões proferidas no âmbito da Recuperação Judicial nesta Corte de Justiça, assim como para o cumprimento do plano de recuperação judicial aprovado e homologado judicialmente, e análise de eventual aditamento.

Impende assinalar que, diante da judicialidade no âmbito do cumprimento do Contrato de Comodato de Imóveis firmado entre as partes, designei a instauração de procedimento de mediação judicial para tentativa de composição amigável, sob supervisão





da Administração Judicial, em plataforma, no agravo de instrumento nº 0069445-32.2025.8.19.0000.

Diante desse cenário, por cautela, se faz necessário ratificar a comunicação expedida à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), com a recomendação ao Juízo da Corte de NY, para que, antes de proferir qualquer decisão no processo relacionado ao Chapter 15 do Grupo Oi, aguarde a decisão do Juízo brasileiro tanto com relação à verificação e consequências do descumprimento do PRJ, já noticiado, quanto do pedido de aditamento ao PRJ do processo principal em trâmite no Brasil, acolhendo-se, assim, o pedido de tutela antecipada recursal formulado pela Recorrente em seu item 103, (i).

Todavia, as demais postulações da parte recorrente no item 103, (ii), alíneas *a* e *b*, da peça recursal, extravasam os deveres de cooperação internacional entre diferentes jurisdições e que norteiam a implementação de medidas de assistência e coordenação, positivados no arts.167-A, 167-P, 167-Q e 167-T, todos da Lei nº 11.101/05, arts. 6º, 67 a 69, do CPC e Resolução nº 350, de 27.10.2020, do CNJ, nesse momento processual, devendo ser observada a igualdade da soberania judicial.

**3.** Por todo o exposto, **DEFIRO, parcialmente, o pedido de antecipação da tutela recursal** apenas para: **(i)** ratificar a comunicação já expedida à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York (procedimento de fls. 115.744 ss.), com a recomendação ao Juízo da Corte de NY, para que, antes de proferir qualquer decisão no processo relacionado ao *Chapter 15* do Grupo Oi, aguarde a decisão do Juízo brasileiro tanto com relação à verificação e consequências do descumprimento do PRJ, já noticiado, quanto do pedido de Aditamento ao PRJ do processo principal em trâmite no Brasil; **(ii)** e, em alinho com a necessidade de cooperação entre as jurisdições e aos deveres de comunicação e assistência que norteiam as disposições de insolvência transnacional, informar que a manutenção do *Chapter 15* é necessária e imprescindível para a efetividade das decisões proferidas no âmbito da Recuperação Judicial nesta Corte de Justiça, assim como para o cumprimento do plano de recuperação judicial aprovado e homologado judicialmente, e análise de eventual aditamento.

**4.** Sem prejuízo, encaminhe-se, __IMEDIATAMENTE__, cópia da presente decisão à Vara Federal de Falências dos Estados Unidos, Distrito Sul de Nova York, **por e-mail**, no endereço eletrônico: JPM.chambers@nysb.uscourts.gov, o qual deve conter as seguintes informações na mensagem:

Re: Case No. 23-10193 (JPM) – Chapter 15
To the Honorable Judge John P. Mastando III

**5.** Oficie-se, com urgência, ao Administrador Judicial a fim de que providencie a juntada, devidamente traduzida, das atas das audiências realizadas perante a United States Bankruptcy Court Southern District of New York, no âmbito do *Chapter* 15, assim como dos documentos apresentados no *discovery*, para melhor análise da questão.





**6.** Oficie-se, com urgência, ao juízo *a quo*, dando-lhe ciência desta decisão e solicitando informações;

**7.** Intime-se o Administrador Judicial;

**8.** Intime-se a Curadoria de Massas;

**9.** Aos agravados para apresentarem resposta, no prazo legal de quinze dias, previsto no art.1019, II, do CPC;

**10.** Após, a douta Procuradoria de Justiça.

Rio de Janeiro, ___ de _____ de 2025.

**Monica Maria Costa**
**Desembargadora Relatora**



## <u>Exhibit A-2</u>

**August 29 Temporary Injunction Ruling (English)**

Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 22 of 39

Tribunal de Justiça do Estado do Rio de Janeiro
Página
**56**
Certificado Eletronicamente

**FIRST CHAMBER OF PRIVATE LAW OF THE STATE COURT OF JUSTICE
FROM RIO DE JANEIRO**

**Instrumental appeal no. 0070880-41.2025.8.19.0000**

**Appellant: V.TAL - Neutral Telecommunications Network SA
Defendant: OI SA - in judicial recovery and others**

**Rapporteur: Judge Monica Maria Costa**

<u>**DECISION**</u>

       **1.** This is an appeal filed against part of the decision on fls. 117,355/117,359 (specifically f.117,356), handed down by the Honorable Judge of the 7th Business Court of the Capital of Rio de Janeiro, in an incident registered due to dependence on the judicial recovery of the OI Group (no. 0090940-03.2023.8.19.0001), in view of the imminent holding of a hearing as part of the *Chapter 15* withdrawal proceedings initiated by the Oi Group with the United States Bankruptcy Court, Southern District of New York, analyzing requests made by V.Tal. (ids. 116,966, 117,289 and 117,339), declared that "it will not determine anyone to refrain from filing an action (judicial procedure) before any jurisdiction", on the grounds that the inalienability of the Judiciary is a cornerstone of a Democratic State of Law.

       The appellant objects, stating that the appealed decision refers to the request for the filing of a main restructuring proceeding sought by Oi, pursuant to Chapter 11 of the United States Bankruptcy Code *("Chapter* 11"), to be presented before the American Judiciary, if the request for closure of *Chapter 15* of the Appellees, currently pending before the Bankruptcy Court of the Southern District of the State of New York, is granted.

       It continues by arguing that the intention declared by the Oi Group would be for *Chapter 11* to proceed concurrently with the Judicial Recovery process currently underway before the Recovery Court.

       It argues that the appealed decision ended up implicitly rejecting the request made by V.tal for the Recovery Court to also assess the legality surrounding the alleged *Chapter 11,* including after hearing the Judicial Administrators and the representative of the Public Prosecutor's Office.

       It points out that the appealed decision not only failed to exercise the indispensable control of legality over the intended *Chapter 11,* but also set a dangerous precedent of legitimizing a blatantly illegal procedure, incompatible with Brazilian public order and corrosive to the authority of this E. Court.



Machine Translated by Google

23-10193-lgb Doc 117-1 Filed 09/02/25 Entered 09/02/25 12:17:13 Exhibit A - August 29 Temporary Injunction Ruling Pg 23 of 39



Tribunal de Justiça do Estado do Rio de Janeiro
Página
57
Certificado Eletronicamente

Defends the need to reform the appealed decision so that the Brazilian jurisdiction, after hearing the Judicial Administrators and the member of the Public Prosecutor's Office, recognizes and communicates to the New York Court (167-P, LFR) that a possible *Chapter 11* to be filed by the Oi Group is materially illegal and incompatible with the Judicial Recovery, supported by the following arguments:

(a) *violation of public order,* since the LFR prohibits the filing of a new request for judicial recovery within 5 (five) years from the decision to approve the respective judicial recovery plan (article 48, II, LFR).

It states that this is a public policy rule, reflecting policies chosen by the national legislature as part of the economic incentive structure that underpins the LFR, highlighting that the Oi Group's plan was approved just over 15 months ago. It notes that duplication of main proceedings, both domestic and foreign, is not permitted under Brazilian law. It clarifies that investors financing debtors under judicial reorganization in Brazil rely on the applicable provisions set forth in the LFR for risk assessment and pricing of financing, and it was based on this predictability and confidence in the protection of credit rights that V.tal (through its affiliated company) disbursed the equivalent of US$150 million in DIP Financing for Oi. It highlights that, when making the investment, V.tal believed that the Judicial Reorganization Court would be the only one competent to process the reorganization of the Oi Group and, therefore, that (i) the fiduciary guarantees linked to the DIP Financing (e.g., the encumbrances on the shares issued by V.tal) could be executed in any scenario, in accordance with the governing national law and the guarantee instrument; and (ii) Oi could not file for a new judicial reorganization within five (5) years from the Plan's approval – meaning that the Oi Group would necessarily have to fully pay off the DIP Financing before that deadline, as it matures in 2027, that is, within the quarantine period. The claim is that if the Brazilian courts authorize the Oi Group, after benefiting from investments and protections made possible and granted to it by the Judicial Reorganization, in accordance with Brazilian law, as authorized by Brazilian creditors and the Judiciary, to file a *Chapter 11* proceeding concurrently with the Judicial Reorganization in Brazil to restructure its non-bankruptcy obligations in the United States, this would alter the logic and incentives provided by the Brazilian legal system, so that investors financing companies in judicial reorganization would include such elements in their risk analyses. Furthermore, when deciding to approve the judicial reorganization plan, creditors who maintain a successive business relationship with the debtor undergoing judicial reorganization take into account the payment terms of their bankruptcy credits along with the expected payment for supplies in future years, which will be made possible by the approval of the plan and the recovery of the debtor. It emphasizes that the negative impacts on the sector resulting from this reckless precedent have even been addressed by the Brazilian Association of Reorganization.



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 24 of 39



Special *Situations and Litigation Finance* in its Amicus Brief filed under *Chapter 15*. It emphasizes that the deleterious effects of this strategy for the market as a whole were also recognized by the Oi Group's advisors at the *Chapter 15 hearing,* according to which the Brazilian market would have to adapt to this new reality.

(b) *the impossibility of Chapter 11 to restructure debts that are not subject to Judicial Reorganization,* given that the cross-border insolvency rules included in the LFR (articles 167-A et seq.) prohibit (in the context of the Oi Group) the recognition of a foreign proceeding that restructures debts that are not subject to judicial reorganization (articles 167-M, §3, 167-S, I, and 168-B, III, all of the LFR). It notes that, given the existence of Judicial Reorganization and the fact that the Oi Group's main center of interests is recognized (including by final and binding decision) in Rio de Janeiro, *Chapter 11* cannot be recognized by the Brazilian courts, given that the Oi Group's stated objective is precisely to affect first-in-bankruptcy debts and circumvent the prohibition on new restructuring requests within a period of less than five years. It concludes that, if Oi files *Chapter 11,* the restructuring of the Oi Group's extra-bankruptcy obligations would not be subject to recognition and application of effects in Brazil, since the LFR establishes a 5 (five)-year quarantine period for a new request for judicial recovery to be filed (article 48, II, LFR). It states that the statements made by Mr. Marcelo Milliet, at the *Chapter 15 Hearing,* suggest that *Chapter 11* may also interfere in the sphere of bankruptcy credits that are under the guardianship of the D. Reorganization Court and this E. Court and that should be kept exclusively subject to Brazilian jurisdiction, as well as revealing that the Oi Group seeks to obtain financing in the *debtor-in-possession modality,* within the scope of *Chapter 11,* which would have priority both over extra-bankruptcy credits held against the Oi Group, as well as over the bidding credits that are already being restructured in the Judicial Reorganization, which would change the order of payments and priority of cash distribution established in the Judicial Reorganization, in the Plan already approved by the Brazilian jurisdiction. It concluded, therefore, that the Oi Group intends, through *Chapter 11,* to subvert, from the outside in, the Brazilian public order, by restructuring credits that national law expressly excludes from recovery, creating new priority debts that overwhelm bankruptcy creditors and rewriting the payment cascade already approved by the Brazilian Judiciary.

(c) *risk of conflicting decisions,* given the coexistence of two main insolvency proceedings, which appears to be an unprecedented measure in Brazil. The claimant claims that Judicial Reorganization and a potential *Chapter 11* not only protect the restructuring of certain debts, but also the rights, duties, limitations, and prerogatives of debtors and creditors subject to them, and that the risk of such rules and consequent judicial decisions conflicting with each other is certain, as already recognized by the New York Court and by Oi.





such a measure could generate countless losses for various *stakeholders.*
It notes that it is uncertain to what extent a *Chapter 11* would potentially impact
labor and tax creditors, and those owed to Brazilian regulatory authorities, and
how Oi intends to enforce in Brazil any decisions eventually handed down by
the American courts regarding the existence and continuation of the Judicial
Reorganization, particularly in light of Articles 167-A et seq. of the LFR. It
indicates that, in the undesirable scenario in which the Judicial Reorganization
is converted into bankruptcy due to noncompliance with the Plan and the
deterioration of the Oi Group's financial situation, as already reported by the I.
Judicial Administrators and the *Watchdog,* it would be up to the D. Judicial
Recovery Court and this E. Court to give effect to the rules for collecting and
selling assets in the event of liquidation of the Respondents, highlighting that,
simultaneously, however, the New York Court may also adopt measures
(potentially conflicting) that will prevent the sale of assets of the Oi Group, in
favor of *Chapter 11.*

(d) *the need to maintain Chapter 15,* given its necessity for implementing
Judicial Reorganization. The claim states that the judicial reorganization process
and plan have not yet been implemented, and the Oi Group recently submitted
an amendment to the plan, in which, among other things, it intends to divest its
main asset (UPI V.tal) and affect guarantees granted to relevant creditors with
connections in the United States. The claim asserts that the scenario of
uncertainty is substantial and indisputable, and that any decisions to be handed
down by the Reorganization Court will likely be confirmed within the scope of
*Chapter 15,* otherwise the Reorganization Court's jurisdiction will be exhausted.
Therefore, the termination of that ancillary proceeding is premature and
inappropriate. The claim states that the New York Court itself recognized that,
in the current context of the Judicial Reorganization, it is important for Oi to
maintain *Chapter 15* open and active in New York.

Finally, it states that to date the Oi Group has not been able to refute the
allegations of illegality involving the filing of a *Chapter 11,* as well as clarify the
uncertainties reiterated by the New York Court itself regarding the impossibility of *Chapter
11* and Judicial Recovery coexisting, in addition to not having presented even a study or
analysis on the possible results of a *Chapter 11,* the recoverability of credits in a context
like this, the impacts on creditors or the guarantees to be offered. It highlights that it was
also demonstrated within the scope of *Chapter 15* that the Oi Group has no indication
whatsoever that it will obtain DIP financing within the scope of *Chapter 11,* in addition to
estimating that more than US$100 million (i.e., more than half a billion reais) would be
spent on advisors' fees to conduct a *Chapter 11* proceeding. It asserts that the announced
*Chapter 11* request would be a disastrous, unfounded measure that would jeopardize
the entire restructuring of the Oi Group, the result of practically a decade of efforts by
creditors and the National Judiciary, since: (i) it would violate public order principles of
Brazilian law; (ii) it would create a reckless precedent for the entire



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 26 of 39



national insolvency system and jurisdictional conflicts that would make its processing unfeasible from a practical point of view; (iii) is devoid of any credible analysis of its financial viability; (iv) would (further) increase litigation involving the Oi Group; (v) would drain more than half a billion reais in attorney and advisor fees; (vi) would harm the Oi Group's main asset, impacting the execution of the Plan itself; and (vii) would reduce the value of the guarantee offered to various creditors under the Plan.

The request is that the preliminary effects of the appeal be granted, ordering that: (a) if the first interlocutory appeal is recognized as having lost its purpose, the terms of the decision with suspensive effect issued therein be validated and fully maintained, so that any decision regarding the request to close *Chapter 15* awaits the decisions of the Reorganization Court regarding the Oi Group's non-compliance with the Plan and the processing of the amendment to the plan; (b) in line with the duties of cooperation and communication that guide the cross-border insolvency provisions of the LFR, this E. Court issue a supplementary communication to the New York Court, informing that, in a summary judgment, (a) the filing of *Chapter 11* would violate Brazilian public policy; (b) the effects of *Chapter 11* on extra-bankruptcy creditors could not be recognized in Brazil given the existence of the Judicial Reorganization; and (c) the maintenance of *Chapter 15* is necessary to give effect to the decisions to be made within the scope and by virtue of the Judicial Recovery.

Finally, it is requested that the appeal be granted, ratifying the requests for advance effects of the appeal protection formulated above and reversing the appealed decision, for all legal purposes and effects.

This is the report. I'll decide.

**2.** According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an appeal on points of law is admissible against all interlocutory decisions issued in judicial recovery proceedings and bankruptcy proceedings, by virtue of art. 1,015, sole paragraph, CPC".

Thus, the intrinsic requirement of admissibility of appeal is present (fitness).

Having overcome the formal regularity, I move on to analyzing the request for anticipation of the appeal filed by the appellant.

Based on art.1019, I, of the CPC, once the appeal instrument has been received by the court and distributed immediately, if it is not the case for the application of art.932, items III and IV, the rapporteur, within a period of 5 (five) days, may attribute a suspensive effect to the appeal or grant in advance of protection, totally or partially, the appeal claim, communicating his decision to the judge.

Machine Translated by Google

23-10193-lgb   Doc 117-1   Filed 09/02/25   Entered 09/02/25 12:17:13   Exhibit A -
August 29 Temporary Injunction Ruling   Pg 27 of 39



Tribunal de Justiça do Estado do Rio de Janeiro
Página
**61**
Certificado Eletronicamente

The granting of the suspensive or active effect is subject to the presence of two requirements, namely, the plausibility of the allegations and the risk of irreparable or difficult to repair damage (article 995, sole paragraph, of the Code of Civil Procedure).

It is worth collating doctrine on the topic1 :

"The prerequisites for granting a stay of appeals are, in our understanding, typically precautionary: risk of serious damage, of impossible or difficult reparation, and likelihood of the appeal being granted. In other words, periculum in mora and fumus boni iuris.

This damage, the likelihood of which must be demonstrated to obtain the suspensive effect of the appeal, is not necessarily identified with the compromise of the substantive right that is claimed to exist in the appeal.
It is sufficient for the party to demonstrate that the damage will be aggravated if the measure is not granted.

The law does not mention the opposite situation: the appeal has a suspensory effect by express provision, and the appellant needs the decision to be effective. Having demonstrated the likelihood of the appeal being granted and the occurrence of damages, we understand that the appellant is indeed entitled to the measure corresponding to the provisional advancement of the appeal's granting. This is what is called an active effect or preliminary relief, not expressly provided for but admitted in the system, in relation to all appeals with suspensory effect, for identical reasons. It can be granted in cases where the appeals do not have suspensory effect.

In terms of summary cognition, I do not see, at first glance, any plausibility in the appellant's allegations to justify the full granting of the requested preliminary relief.

Before entering into the examination of the requested appeal protection, it is necessary a brief chronological digression of the facts.

Initially, the recovering parties submitted an addendum to the approved PRJ, seeking the publication of a notice to call a General Meeting.
Creditors for their vote, also requesting the granting of urgent relief to suspend, for 180 days, the enforceability of the obligations provided for in the PRJ, with

---

1 Commentary on the new Code of Civil Procedure/ coordination Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, p. 1473;



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 28 of 39



Tribunal de Justiça do Estado do Rio de Janeiro

Página

62

Certificado Eletronicamente

removal of consequences of default, including judicial restrictions on assets.

In their petition on fls.113,147/113,190, of the original records, they state that after the approval, on 05/28/2024, of the PRJ approved by creditors on 04/19/2024, despite implementing several measures provided therein necessary for the restructuring of its liabilities, maintenance of working capital and the viability of its new strategic business plan, with a significant reduction in its net debt and full development of the strategic operational activities identified as its current "core business", they faced, however, a serious cash crisis.

They claim that the premises that served as the basis for the economic rationale of the various payment obligations assumed in the PRJ were not verified after their approval by the Recovery Court, among them: (i) the sale of UPI ClientCo would result in the receipt of R$7.3 billion in cash in the 2024-2025 biennium; (ii) that they would drastically reduce the maintenance costs of the infrastructure necessary for the provision of STFC telephone services with the adaptation of the concession to the authorization model starting in June 2024; and (iii) the disbursement due to labor liabilities would remain at historical levels.

They argue that the New Governance began to study alternatives in order to address the pressure for immediate liquidity and, therefore, ensure the continuity of its recovery, in compliance with the principle of social function and preservation of the company, concluding that it is necessary to approve the amendment to the presented Plan, through the following proposal: (i) the change in the payment conditions of Credits held by Labor Creditors (Clause 4.1), Partner Supplier Creditors (Clause 4.2.6), Take or Pay Creditors with Security (Clause 4.2.8), Take or Pay Creditors without Security – Option I (Clause 4.2.9), Take or Pay Creditors without Security – Option II (Clause 4.2.10) and Adhering Extra-Bankruptcy Creditors (Clause 4.10); (ii) the use of recourse deposits to obtain immediate resources and payment of creditors (Clauses 5.4); and (iii) the possibility of hiring a specialized company to manage the Properties through a vehicle to be created for this purpose (Clause 5.3.5).

The court *a quo* deemed it necessary to previously hear the Judicial Administration, the WatchDog (appointed to act in the case according to the decision of id. 114,162, of the original proceedings) and the Public Prosecutor's Office regarding the legality of the terms of the addendum and the minimum financial viability of the company (id. 114,138, of the original proceedings).

In a subsequent petition (id.115,354, of the original case), the Debtors argue that, in addition to the need to amend the PRJ to enable them to overcome their temporary short-term cash flow difficulties, they are considering resorting to legal measures abroad, with the objective of restructuring credits that will not be addressed in the amendment, through the institution of the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America *("Chapter* 11"), before the Honorable Judge of the United States Bankruptcy Court for the Southern District of New York.



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 29 of 39



York *(United States Bankruptcy Court for the Southern District of New York).* They also inform that in order to prepare for the potential filing of *Chapter* 11, they filed, on the same date, a request to withdraw from *Chapter* 15, which will be decided in due course by the American Court.

They justify the need for a strong measure by arguing that a significant portion of the OI GROUP's debts currently consist of credits that were not covered by the current reorganization process, and which were almost entirely incurred during the management of the former administration of the companies under reorganization. They point out that, in order to ensure the continuity of its operations, it is considering seeking legal action abroad to address these debts in an orderly manner, since they cannot be included in the judicial reorganization process in Brazil.

Regarding the addition and clarifications requested by the court *a quo,* the Watchdog stated in id.115.773.

Regarding the request for an amendment, the Judicial Administrator also expressed his opinion in id 115.999, of the original proceedings.

The Public Prosecutor's Office offered an opinion, in the form of summary cognition, in id.116,114, highlighting, from the outset, the existence of illegalities in the presented addendum, which must be overcome until the eventual deliberation in AGC, in accordance with art. 35, I, "a" of Law 11.101/2005, with regard to the following clauses: "a) clause 4.1 and following: impossibility of creating subclasses of labor creditors with credits less than 150 minimum wages; b) clauses 4.2.6, 4.2.7 and 4.2.8: substantial change in the form of payment of partner supplier creditors and take-or-pay creditors; and c) clause 5.4: withdrawal of labor appeal deposits".

After the above-mentioned demonstrations, the judge *a quo* issued a decision at fls. 116,202/116,209 of the original proceedings, assessing the claim submitted by the OI Group at fls. 113,147/113,190 of the same case, consisting of the publication of a notice calling creditors to submit an amendment to the judicial reorganization plan approved in March 2024 and granting a preliminary injunction to determine the suspension of the enforceability of obligations falling due under the PRJ for a period of 180 days, without incurring a bankruptcy situation, as well as any possible asset constraints in the interim, in the following terms:

> "(...) In view of the context thus defined, I consider it essential that the Public Prosecutor's Office, the joint Judicial Administration and, also, the Judicial Observer, already appointed, provide a prior statement - albeit brief - regarding the amendment to the PRJ presented, and the documents that support it, within the common period of 05 (five) calendar days, from the aspect of its legality and minimum economic-financial viability of the AMENDMENT presented. Including in light of the reports prepared by the recovering party and attached as of ID 113,679, in possible comparison with the RMAs presented by the AJ.





Tribunal de Justiça do Estado do Rio de Janeiro
Página
**64**
Certificado Eletronicamente

In addition, there should be a statement regarding the following:

(1) In relation to the Joint Judicial Administration, you must:

a) clarify, in a clear and objective manner, compliance with and observance of the provisions of item II of art. 22 of the LRF;

b) affirm, or not, the effective compliance with the PRJ approved until the date of the AMENDMENT petition (01.07.2025) and the feasibility of maintaining its compliance for the 3 months following the indicated date; c) discriminate the values of the assets and liabilities of the debtor at the beginning of the 2nd RJ (here considered the distribution of the preparatory precautionary measure) and on 01.07.2025 (date of filing of the AMENDMENT in prefatory analysis). For the quantification, it should be based both on the value computed with deductions resulting from the PRJ and, also, without such deduction (that is, the value resulting from the enforceability of the original debts resumed);

d) detail cash flow on the date of filing of the 2nd RJ (here considered distribution of the preparatory precautionary measure) and on 01.07.2025 (date of filing of the ADDENDUM in prefatory analysis);

e) specify the number of direct and indirect employees of the company under recovery on the date of request for the 2nd RJ (here considered distribution of the preparatory precautionary measure) and on 01.07.2025 (date of filing of the ADDENDUM in preliminary analysis)

f) itemize amounts paid to CLASS I labor creditors and partner creditors with and without guarantee, paid in the last 3 months, and what should be paid in the next 3 months (here considered whole months; that is, we are in the month of June/2025 and the 3 previous months are: May, April and March/2025, and this is how the projection of future months will be made).

(2) As for the watchdog, it is determined that it will prioritize, at this time, the statement regarding the request for an amendment to the plan submitted in this main proceeding, focusing on the results of the recovering company for the last 6 months immediately past and, also, on the projections for the 3 months immediately to come, in light of the content in the records, as well as any and all documents and information that it deems necessary to access.

Being expressly authorized to request them directly from the Recovering Party, which must deliver them. As well as invested with all the powers listed in clauses 7.2.2 and 7.2.3 of the approved PRJ, and must, in the event of a situation of secrecy/ confidentiality of information (clauses 7.2.4.1 and 7.2.4.1.1 of the approved PRJ), present them to the Court after requesting attachment in a confidential incident.



Machine Translated by Google

23-10193-lgb Doc 117-1 Filed 09/02/25 Entered 09/02/25 12:17:13 Exhibit A -
August 29 Temporary Injunction Ruling Pg 31 of 39



Tribunal de Justiça do Estado do Rio de Janeiro
Página
65
Certificado Eletronicamente

Once invested, the Judicial Observer must request information from the Recovering Party regarding any substantial changes in remuneration (including bonuses) made to its managers in the last 6 months (with upward or downward fluctuations), the Board of Directors, the Administrative Council and its higher management bodies ("New Management"), including amounts directed to legal entities that may be part of it, as well as whether such changes were reported to the Judicial Administration during the period. These findings must be included in its statement.

I emphasize that the following entities are urged to express their views within a common period of five consecutive days: Judicial Administration, Watchdog and Public Prosecutor's Office, with this Court requesting the latter to collaborate in issuing its opinion within the common period, both due to the delimitation of the object of evaluation established above and because it is an electronic process that this makes possible, notably due to the alleged urgency.

Inform everyone urgently, including by telephone and email.

Also notify, giving unequivocal notice of the AMENDMENT TO THE PRJ presented by the OI Group in recovery, as well as the filing of the request for judicial recovery of 2 subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER SA - TAHTO), ANATEL and CADE.

Therefore, the recovering party is entitled, within the same period, to express its opinion on the possible exercise of the right included in clause 4.2.12, d, of the PRJ.

Finally, aware of ID 114,123 (letter from the 1st Private Law Chamber, regarding measures adopted regarding the lawyers of the debtor). In this regard, this Court has already adopted its own deliberation, in item VI of ID 113,141. In turn, the r. Registry certified the regularity of the procedural representation within the scope of the ongoing proceedings in this first instance (ID 114,136).

I return the records of the conclusion for IMMEDIATE compliance with everything contained herein. (fls.114,138/114,142)"

"For all the above:

1. Tell the Recovering Party about the conclusion of the RMA of July 2025, which points to substantial non-compliance with obligations of the approved PRJ, justifying and providing proof of any allegation made;

2. Next, tell the Recovering Party whether it will exercise the option provided for in clause "4.2.12, "d"" of the PRJ;



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 32 of 39



3. Then, the AJ (including the duty inserted in section II, section "b" of the LRE);

4. Then, to the Public Prosecutor's Office regarding all the additions; 5. Notify the WatchDog to IMMEDIATELY begin the task that was assigned to him and accepted, estimating fees for this purpose, given the expansion established here;

6. I suspend the payment of bonuses in favor of the Senior Management of the Company Under Reorganization, maintaining, for now, their remuneration set at the meeting of April 29, 2025;

7. I determine that any and all disposal or encumbrance of assets will necessarily be preceded by judicial authorization, under penalty of ineffectiveness of any act that fails to observe this;

8. I order the issuance of a communication, by the Judicial Administration, duly translated into English, to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on fls. 115,744 et seq.), informing that "a judicial recovery process of the Oi Group is currently underway before this Court of the 7th Corporate Court of Rio de Janeiro, RJ, in which the Recovering Party has failed to fulfill obligations assumed in June 2025, without justification for this, to date. (116,202/116,209 - item IV)"

Against the aforementioned decision, V.Tal, now the appellant, filed an appeal on points of procedure, filed under number 0059754-91.2025.8.19.0000, in which the request for preliminary injunction was partially granted so that: (i) the communication to be issued by the Judicial Administration to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on fls. 115,744 et seq.) be amended, with the recommendation to the Court of the Court of NY, so that, before issuing any decision in the proceedings related to Chapter 15 of the Oi Group, it awaits the decision of the Brazilian Court both regarding the verification and consequences of the non-compliance with the PRJ, already reported, and the request for Amendment to the PRJ of the main proceedings in progress in Brazil; (ii) a copy of the aforementioned decision be forwarded to the United States Bankruptcy Court, Southern District of New York (proceeding on fls. 115,744 et seq.), with the proviso that there is no judicial pronouncement on the part of this jurisdiction agreeing to the initiation of other procedures involving the restructuring of the OI Group in other jurisdictions; (iii) due to the signing of the Self-Composition Term (Agreement) for the adaptation of the concession contracts to the authorization regime, the summons was determined, giving unequivocal notice of the Amendment to the PRJ presented by the OI Group in recovery, as well as the filing of the request for judicial recovery of 2 subsidiaries (SEREDE and BRASIL TELECOM CALL CENTER SA - TAHTO), the Secretariat for External Control of Consensual Resolution and Conflict Prevention (SecexConsenso) of the Federal Court of Auditors (TCU), and the Securities and Exchange Commission (CVM); and (iv) finally, I determine, ex officio, that the Securities and Exchange Commission be notified





Machine Translated by Google

Securities and Exchange Commission (CVM), forwarding, in addition, a copy of the last 2 (two) RMAs. The referred appeal is still pending a decision on its merits.

In id. 116,966, of the original proceedings, V.Tal presented a statement in the proceedings, requesting that the judge *a quo* be so kind as to order the notification of the i.
Judicial Administrators and the representative of the Public Prosecutor's Office to express their views on the possibility of filing a restructuring request in the North American judiciary (Chapter 11) and its consequences for this Judicial Recovery process, in light of Brazilian legislation and other facts and considerations brought up within the scope of this statement.

In 117,289, of the original proceedings, reiterated in id. 117,339, the appellant petitioned, once again, in the original proceedings, requesting that the Bankruptcy Court of the Southern District of New York be notified, in order to: (i) inform that the deadline for the Public Prosecutor's Office to respond regarding any non-compliance with the Plan by the Debtors, as per Decision No. 2, will only end on August 14, 2025, and that any decision by this D. Court will only be issued after the expiration of said deadline; (ii) inform that there is no current deadline for the parties to respond in the Incident regarding the Amendment to the Plan, so that it is not even possible to establish from what date this D. Court may decide regarding the amendment to the Plan presented by the Oi Group; and (iii) in compliance with the determination of the E. TJRJ, reiterate (a) the recommendation that the American Court wait until a decision is issued by this D. Court regarding the verification and consequences of non-compliance with the Plan, as well as the request for Amendment to the Plan before issuing any decision within the scope of Chapter 15; and (b) that this D. Court has never issued any formal statement in support of the filing of a Chapter 11 by the Oi Group.

Regarding the above petition, the OI Group expressed its opinion in id.117.335.

Thus, the appealed decision (fls. 117,355/117,359) was handed down, which, among other determinations, declared the impossibility of ordering anyone to refrain from filing an action (judicial procedure) before any jurisdiction.

The appellant requests that the effects of the appeal be granted in advance, ordering that: (i) the anticipatory decision issued in the appeal, registered under no. 0059754-, be validated and fully maintained.
91.2025.8.19.0000, if its prejudicial nature is recognized due to the present insubordination; (ii) a supplementary communication be issued to the New York Court, informing that: (a) the filing of *Chapter 11* would violate Brazilian public policy; (b) the effects of *Chapter 11* on extra-bankruptcy creditors could not be recognized in Brazil given the existence of the Judicial Reorganization; and (c) the maintenance of *Chapter 15* is necessary to give effect to the decisions to be rendered within the scope and by virtue of the Judicial Reorganization.

In this case, as already highlighted by this Rapporteur, associated with the unquestionable singularity that involves the present judicial recovery with regard to



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 34 of 39



Tribunal de Justiça do Estado do Rio de Janeiro
Página
68
Certificado Eletronicamente

inexorable public interest arising from the provision of services to the community by the OI Group is the need for timely satisfaction of the obligations agreed upon in the PRJ approved by creditors and judicially ratified, subject to inspection during the period of judicial supervision.

However, the Debtors submitted a request to suspend payment of the obligations assumed in the reorganization process for a period of 180 days, in addition to having submitted an addendum to the plan, due to a serious cash crisis to honor them, with the aim of reaching the originally excluded labor creditors, renegotiating the conditions and terms of payment of suppliers, partner creditors, *take or pay* with and without guarantee.

In a statement in the original proceedings, the Recovering Parties state that such measures would not be sufficient to stem the current economic and financial situation that has emerged, which is why it is still necessary to initiate recovery proceedings in the North American Court *(Chapter* 11), in which they intend to negotiate debts not covered by the current judicial recovery.

In id. 118,495, of the original proceedings, the Debtors informed the *lower* court that, during the hearing held within the scope of Chapter 15, on August 18, 2025, after hearing the parties' statements, the Honorable Judge of the American Court recommended the establishment of a mediation proceeding between the Debtors and V.
TAL Neutral Telecommunications Network SA

The process underway before the Brazilian Jurisdiction was expressly recognized by the Oi Group and the competent authorities as the main process.

For the purposes of this article, we transcribe part of the decisions that established national jurisdiction for the processing of the first and second judicial recovery of debtor companies, *verbatim:*

"The topic is new and deserves to be addressed.

The first point worth highlighting in this analysis is that FINCO and PTIF are merely financial vehicles created by the OI Group to raise funds abroad to finance its production activities. They are wholly-owned subsidiaries, established in the Netherlands, with no operational activity whatsoever.

The Oi Group's operational activities are in Brazil. This is the main location for the companies undergoing recovery; it is the wealth-generating activity, the center of interests that justifies, in theory and in practice, the creation of a corporate protection system.
This is the appropriate forum for the processing of the reorganization process.
Therefore, I understand that all matters relating to the holding company and its subsidiaries must be decided in accordance with Brazilian law. Brazilian law does not allow for any jurisdiction.





competitor of a foreign judicial authority or equivalent when the insolvent
debtor has its main establishment in Brazil".

---

### "JURISDICTION AND PROCEDURAL CONSOLIDATION

This judicial reorganization request was filed by Oi SA, PTIF, and Oi Coop.
PTIF and Oi Coop are non-operating companies that were previously used as
vehicles for raising funds from abroad to finance the Oi Group's activities in
Brazil. PTIF and Oi Coop's obligations, although originally incurred abroad
through the issuance of *bonds,* have always been met in Brazil, backed by the
Brazilian operations of their parent company, Oi.

It should be remembered that, during the processing of the 1st judicial recovery
of the Oi Group, the jurisdiction of this court to process the judicial recovery of
the Dutch subsidiary Oi Coop was questioned within the scope of the procedure
instituted based on *Chapter* 15 of the North American Bankruptcy Code,
whose judgment handed down by the court of the Southern District of New
York, in the United States, confirmed that the center of main interests of Oi
Coop and the Oi Group is located in Brazil.

When granting the processing of the 1st judicial recovery, this Court had
already understood that: *"And, to the extent that the companies that make up
the OI GROUP operate in a coordinated and integrated manner in the Brazilian
telecommunications system, and under single corporate, operational, financial,
administrative and managerial control - exercised by the controlling company
OI - including in relation to non-operational financial vehicle companies
incorporated abroad - judicial protection must reach the conglomerate as a
whole."* (fls. 89496-
89525 of process no. 0203711-65.2016.8.19.0001).

At the time, this was a true *leading case,* as there was little or no cross-
border insolvency practice in Brazilian courts, and the current legislation did
not address this issue. The Judiciary was called upon to fill the legal gap
through a systematic and analytical interpretation of the legal system and,
notably, of the applicable constitutional principles. Subsequently, Law
14.112/2020 incorporated the chapter on Cross-Border Insolvency (VI-A) into
Law 11.101/2005 to regulate this issue.

At that time, procedural consolidation had not yet been standardized, which
occurred with the changes brought by Law 14,112/2020, under the terms of
art. 69-G: *Debtors who meet the*



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 36 of 39



Página
**70**

> requirements set forth in this Law and which are part of a group under
> common corporate control may request judicial recovery under procedural
> consolidation.
>
> Based on the above, the requirements for procedural consolidation are
> met, in accordance with Article 69-G of Law No. 11,101/05.
>
> It is indisputable that there is sole corporate, operational, financial,
> administrative and managerial control exercised by the controlling company
> Oi SA in relation to the non-operational financial vehicle companies
> incorporated abroad, with the existence of a de facto and de jure economic
> group being evident, with all Claimants having presented documentation
> individually, which allows for active joinder of parties for the purposes of
> filing for Judicial Recovery.
>
> Thus, reiterating the terms of the anticipatory decision issued in ID
> 44532251 of the Precautionary Injunction No. 0809863-
> 36.2023.8.19.0001, procedural consolidation is a measure that must be
> applied to the present case."

As noted in this latest decision, during the processing of the 1st judicial
recovery of the Oi Group, the jurisdiction of the court *a quo* to process the judicial recovery of
the Dutch subsidiary Oi Coop was questioned within the scope of the procedure instituted based
on *Chapter* 15 of the North American Bankruptcy Code, whose judgment handed down by the
court of the Southern District of New York, in the United States, confirmed that the center of
main interests of Oi Coop and the Oi Group is located in Brazil.

There is no doubt, therefore, that all of the OI Group's operational activity is
located in Brazil, which is the debtor's (COMI) main center of interests.

The prevalence of Brazilian jurisdiction, in this case, is also supported by the
legal interests involved, which are strongly linked to issues of public order, provision of public
communication services, social issues and the social function of the Oi Group, including
obligations before the TCU and public bodies at various levels of the Brazilian national federation.

We are facing the second Judicial Recovery of the OI Group, with the judicial
recovery plan presented, after successive suspensions of the meeting, having been approved
by the creditors, on 18.04.2024 and 19.04.2024, by 79.87% of the votes ("per capita") and
56.15% by value of the voting credits of the unsecured class.

And, in a decision dated May 28, 2024, the judicial recovery plan approved by
creditors at the AGC was judicially approved in favor of OI SA - In Judicial Recovery ("Oi" or
"Company"), PORTUGAL TELECOM INTERNATIONAL





FINANCE BV - In Judicial Recovery ("PTIF") and OI BRASIL HOLDINGS COÖPERATIEF UA -
In Judicial Recovery ("Oi Coop"), subject to clauses 9.1, 9.2 and 9.3.5, so that the extinction(s) of
obligations towards the co-obligor(s) and the suppression of guarantees only have their effects on
the creditor(s) that approved the judicial recovery plan, without any reservation.

The appellant, V.Tal, consists of a UPI, originating from the plan of
recovery of the OI Group, holding a 27.5% shareholding.

In fact, according to the notice of filing and hearing, dated February 13, 2023,
forwarded by the Honorable Federal Bankruptcy Court of the United States, Southern District of
New York, it is evident that case number 23-10193-JPM refers to a recognition of provisional
precautionary relief in preparation for a judicial recovery process, which is still in progress in Brazil.

The bidding credits, including those subject to the effects of the first Judicial
Recovery (Proc. No. 0203711-65.2016.8.19.0001), are being paid in accordance with the Plan
approved in the second Judicial Recovery (Proc. No. 0809863-
36.2023.8.19.0001).

The plan approved and judicially ratified is in the compliance phase and under
judicial supervision and there is no list in the records of the extra-bankruptcy credits that are part
of the restructuring sought by the Recovering Parties before the Foreign Court.

Nor is there any knowledge of the presentation of any study analysis on the
possible results of a *Chapter 11,* within the context of the current judicial recovery, notably with
regard to the protection and maximization of the value of the debtors' assets, the impacts on
creditors or the guarantees offered.

In another step, there is a request to amend the judicial recovery plan approved
in the second judicial recovery, in addition to a request to process the judicial recovery of two
wholly-owned subsidiaries.

On the other hand, at this time, the decision of the first instance judge regarding
the request to add to the submitted plan is awaited.

In this context, it is essential and important for the Brazilian Court to maintain
*Chapter 15* for the effectiveness of the decisions handed down within the scope of the Judicial
Recovery in this Court of Justice, as well as for compliance with the judicial recovery plan
approved and ratified by the court, and analysis of any amendments.

It is important to note that, given the judiciality within the scope of compliance
with the Real Estate Loan Agreement signed between the parties, I designated the establishment
of judicial mediation proceedings in an attempt to reach an amicable settlement, under supervision.



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 38 of 39



of the Judicial Administration, on the platform, in the appeal instrument no. 0069445-32.2025.8.19.0000.

In view of this scenario, as a precaution, it is necessary to ratify the communication issued to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on fls. 115,744 et seq.), with the recommendation to the Court of the NY Court, so that, before issuing any decision in the proceedings related to Chapter 15 of the Oi Group, it awaits the decision of the Brazilian Court both in relation to the verification and consequences of the non-compliance with the PRJ, already reported, and the request for amendment to the PRJ of the main proceedings in progress in Brazil, thus accepting the request for preliminary injunction filed by the Appellant in its item 103, (i).

However, the other claims of the appellant in item 103, (ii), paragraphs *a* and b, of the appeal, go beyond the duties of international cooperation between different jurisdictions and which guide the implementation of assistance and coordination measures, set out in arts. 167-A, 167-P, 167-Q and 167-T, all of Law No. 11,101/05, arts. 6, 67 to 69, of the CPC and Resolution No. 350, of 10/27/2020, of the CNJ, at this procedural moment, and the equality of judicial sovereignty must be observed.

**3.** In view of all the above, **I partially GRANT the request for preliminary relief on appeal** only to: **(i)** ratify the communication already sent to the Federal Bankruptcy Court of the United States, Southern District of New York (proceeding on fls. 115,744 et seq.), with the recommendation to the Court of the Court of NY, so that, before issuing any decision in the proceedings related to *Chapter 15* of the Oi Group, it awaits the decision of the Brazilian Court both in relation to the verification and consequences of the non-compliance with the PRJ, already reported, and the request for Amendment to the PRJ of the main proceedings in progress in Brazil; **(ii)** and, in line with the need for cooperation between jurisdictions and the communication and assistance duties that guide the provisions of cross-border insolvency, inform that the maintenance of *Chapter 15* is necessary and essential for the effectiveness of the decisions handed down within the scope of the Judicial Recovery in this Court of Justice, as well as for compliance with the judicial recovery plan approved and ratified by the court, and analysis of any amendment.

**4.** Without prejudice, **IMMEDIATELY** forward a copy of this decision to the United States Bankruptcy Court, Southern District of New York, **by email,** at the following address: JPM.chambers@nysb.uscourts.gov, which must contain the following information in the message:

Re: Case No. 23-10193 (JPM) – Chapter 15
To the Honorable Judge John P. Mastando III

**5.** Urgently notify the Judicial Administrator to arrange for the attachment, duly translated, of the minutes of the hearings held before the United States Bankruptcy Court Southern District of New York, within the scope of *Chapter* 15, as well as the documents presented in the *discovery,* for a better analysis of the matter.



Machine Translated by Google

23-10193-lgb    Doc 117-1    Filed 09/02/25    Entered 09/02/25 12:17:13    Exhibit A -
August 29 Temporary Injunction Ruling    Pg 39 of 39



Página

**73**

**6.** Urgently notify the court *a quo,* informing it of this decision and requesting information;

**7.** Notify the Judicial Administrator;

**8.** Inform the Mass Curatorship;

**9.** To the aggrieved parties to submit a response within the legal period of fifteen days, provided for in art.1019, II, of the CPC;

**10.** Afterwards, the learned Public Prosecutor's Office.

Rio de Janeiro, ___ of _____ of 2025.

**Monica Maria Costa**

**Reporting Judge**

