## **Exhibit B**

**August 29 Stay Ruling**

## **Exhibit B-1**

**August 29 Stay Ruling (Portuguese)**



**PRIMEIRA CÂMARA DE DIREITO PRIVADO DO TRIBUNAL DE JUSTIÇA DO ESTADO DO RIO DE JANEIRO**

**Agravo de Instrumento n.º 0071515-22.2025.8.19.00000**

**Agravantes: OI S.A. – EM RECUPERAÇÃO JUDICIAL, PORTUGAL TELECOM INTERNATIONAL FINANCE B.V.  – EM RECUPERAÇÃO JUDICIAL e OI BRASIL HOLDINGS COOPERATIEF U.A. – EM RECUPERAÇÃO JUDICIAL**

**Relatora: Des. Mônica Maria Costa**

<u>**DECISÃO**</u>

        **Trata-se de agravo de instrumento**, interposto por OI S.A., PORTUGAL TELECOM INTERNATIONAL FINANCE B.V. e OI BRASIL HOLDINGS COOPERATIEF U.A., todas em recuperação judicial, **contra a decisão de fls. 118.173 a 118.176 (indexador n.º 118.173)**, proferida pelo Juízo da 7ª Vara Empresarial da Comarca da Capital nos autos do Processo n.º 0090940-03.2023.8.19.0001, **que:** (I) **suspendeu a exigibilidade das obrigações inerentes ao aditamento ao plano de recuperação judicial apresentado pelas empresas recuperandas, pelo período compreendido entre 13/08/2025 e 31/08/2025**; (II) **determinou que até o encerramento do prazo fixado devam a ANATEL e o TCU se manifestar nos autos sobre eventual transição para fins de inocorrência de solução da continuidade nos serviços públicos prestados pelo Grupo OI**; (III) **imputou às recuperandas o dever de apresentação de plano de transição dos serviços públicos prestados e o exercício, se assim entenderem adequado, de facultada inserta na cláusula 4.2.12, 'd', do PRJ.**

        Na minuta de fls. 02 a 49 (indexador n.º 02), as recorrentes narram as circunstâncias extraordinárias que as levaram à apresentação de aditamento ao plano recuperatório homologado aos 28/05/2024. Destacam a ocorrência de expressiva redução de dívida líquida, de R$ 25.4 bilhões para R$ 9.8 bilhões entre o primeiro trimestre de 2024 e maio de 2025, bem como o pagamento de mais R$ 2.8 bilhões conforme o RMA de julho de 2025. Não obstante, salientam que algumas premissas base para o racional econômico de algumas obrigações de pagamento assumidas no PRJ não foram verificadas após a homologação judicial. Apontam que (a) o valor pretendido pela antiga administração para a venda da *UPI ClientCo* não se adequou à realidade do mercado e, como resultado, o ativo financeiro foi alienado em fevereiro de 2025 mediante contrapartidas financeiras não pecuniárias de R$ 5.7 bilhões; (b) os custos para a manutenção da infraestrutura necessária à prestação dos serviços de telefonia STFC continuaram a ser impostos pela ANATEL até novembro de 2024, por 05 (cinco) meses após o período projetado originariamente, o que fez surgir despesas relevantes não vislumbradas antes pelo Grupo OI; (c) o passivo trabalhista caiu de R$ 808.4 milhões para apenas R$ 803.9 milhões, entre maio de 2024 e maio de 2025, redução muito inferior à projetada quando da elaboração do plano recuperatório. Diante

de tais circunstâncias alheias à vontade de sua nova governança, que pressionam o caixa das recuperandas e dificultam o cumprimento de obrigações financeiras de curto prazo assumidas, apresentaram o aditamento, firmes na busca de solução a permitir a continuidade dois pagamentos, superação das dificuldades temporárias de fluxo de caixa e a preservação dos negócios operacionais, tudo sem olvidar da função social e da preservação da empresa. A seguir, detalham resumidamente os termos do aditamento, apresentado ao 1º de julho de 2025, ressaltando sua viabilidade e a necessidade de aprovação a ser deliberada em nova Assembleia Geral de Credores, cuja convocação encontra fundamento no art. 35, I, alínea 'a', da Lei Federal n.º 11.101/2005, bem como nas cláusulas 9.6, 9.6.1 e 9.6.2 do plano recuperatório. Mencionam doutrina a respeito da possibilidade de aditamento de planos de recuperação judicial e precedentes jurisprudenciais sobre a legitimidade de medida que visa à suspensão da exigibilidade das obrigações a ele relacionadas. Volvem a destacar o cumprimento substancial das obrigações do plano recuperatório e os esforços enviados em prol do seu projeto de soerguimento. Gizam seu papel para a sociedade e a necessária proteção de suas atividades que envolvem milhares de empregos diretos e indiretos por ele gerados, bem como serviços essenciais e de notório interesse público no âmbito nacional, tais como os serviços de emergência (190, 192 e 193) e os prestados ao Sistema Integrado de Defesa Aérea e Controle de Tráfego Aéreo (CINDACTA). Sopesados os fatos, entendem que o prazo de suspensão fixado pelo Juízo *a quo* é insuficiente para se alcançar o consenso dos credores a respeito do aditamento ao plano recuperatório, mormente diante das complexidades envolvendo reestruturação nova sobre créditos e obrigações relevantes do Grupo OI. Advogam pela prorrogação do referido prazo por mais 120 (cento e vinte) dias, observado que o procedimento inerente ao aditamento ainda não foi deflagrado, havendo necessidade de prévia elucidação ao Juízo Recuperacional da real viabilidade financeira das recuperandas, encargo atribuído ao *Watchdog* nomeado. Salientam também que a determinação para apresentação de plano de transição dos serviços públicos prestados vai na contramão das conclusões do *Watchdog* e da Administradora Judicial Conjunta, ambas no sentido de que, equacionado o passivo das recuperandas, exsurge a capacidade de lucro operacional e a manutenção das atividades de maneira sustentável. Acrescem ser despicienda a apresentação de plano de transição neste momento, pois não estão falidas, além do que existe uma série de razões estruturais, operacionais, contratuais regulatórias e econômicas a ser observada na hipótese de transição dos serviços prestados. Gizam que no Termo de Autocomposição já celebrado para disciplinar a transição do regime de STFC do Grupo OI para o regime privado de prestação de serviços de telecomunicação, a ANATEL estabeleceu como premissa fundamental a continuidade dos serviços pelo próprio Grupo OI, e não a sua substituição ou transição definitiva e/ou total para qualquer terceiro. Asseveram a previsão de investimentos em infraestrutura e manutenção de serviços de voz no valor de R$ 5.8 bilhões, o que, em conjunto com as demais previsões especificadas no Termo de Autocomposição, foi visto pela própria ANATEL como fator que traria segurança ao setor de telecomunicações num contexto disruptivo de transição tecnológica do setor de telecomunicações. Por derradeiro, listam 13 (treze) razões para destacar a probabilidade do direito alegado, às fls. 40 a 43 (indexador n.º 02), apontam o *periculum in mora* no fato de que suas obrigações de curto prazo estão atualmente comprometidas, há risco de pedidos de convolação da recuperação judicial em falência, bem como de

constrições no patrimônio do Grupo OI e rescisão de contratos, e, ainda, ressaltam o perigo de dano irreparável diante de pressões severas no fluxo de caixa, o que, inclusive, tornou imprescindível a apresentação de pedido de venda de direitos creditórios, deferido na origem.

Calcadas em tais argumentos, pugnam pela antecipação dos efeitos da tutela recursal, na forma do art. 1.019, I, do Código de Processo Civil, a fim de que sejam: **(I)** suspensa, por no mínimo 120 (cento e vinte) dias, a exigibilidade das obrigações previstas no PRJ relativas a créditos ou obrigações sujeitas ao ADITAMENTO, com a subsequente proibição de alegação de descumprimento e/ou ajuizamento de ações de falência ou de execuções contra o Grupo OI; **(II)** proibida, por no mínimo 120 (cento e vinte) dias, qualquer retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial e/ou extrajudicial sobre os bens das recuperandas, oriunda de demandas judiciais e/ou extrajudiciais cujos créditos ou obrigações sujeitem-se ao ADITAMENTO; **(III)** vedada, por no mínimo 120 (cento e vinte) dias, a interrupção de quaisquer serviços essenciais ao Grupo OI, com fundamento no inadimplemento de obrigações previstas no PRJ relativas a créditos ou obrigações sujeitas ao ADITAMENTO; **(IV)** impedida, por no mínimo 120 (cento e vinte) dias, a decretação de inadimplemento na apresentação do ADITAMENTO (cláusulas *ipso facto*).

Querem também a atribuição de efeito suspensivo, a fim de sustar os demais termos da decisão agravada, mormente a apresentação, pelas recuperandas, ANATEL e pelo TCU, de plano de transição de serviços, até o julgamento definitivo do presente instrumental.

É o relatório. Passo a decidir.

**2.** Nos termos do decidido pela Segunda Seção do Superior Tribunal, no julgamento do Recurso Especial 1707066/MT, submetido ao rito dos recursos repetitivos (Tema 1022), "é cabível agravo de instrumento contra todas as decisões interlocutórias proferidas nos processos de recuperação judicial e nos processos de falência, por força do art. 1.015, parágrafo único, CPC".

Deste modo, presente o requisito intrínseco de admissibilidade recursal (cabimento).

Ultrapassada a regularidade formal, passo à análise do pedido de antecipação da tutela recursal formulado pelo recorrente.

Com arrimo no art.1019, I, do CPC, recebido o agravo de instrumento no tribunal e distribuído imediatamente, se não for o caso de aplicação do art.932, incisos III e IV, o relator, no prazo de 5 (cinco) dias poderá atribuir efeito suspensivo ao recurso ou deferir em antecipação de tutela, total ou parcialmente, a pretensão recursal, comunicando ao juiz sua decisão.

A concessão do efeito suspensivo ou ativo submete-se à presença de dois requisitos, quais sejam, a verossimilhança das alegações e perigo de dano irreparável ou de difícil reparação (artigo 995, parágrafo único, do Código de Processo Civil).

Vale colacionar doutrina acerca do tema[1]:

> "Os pressupostos para a concessão de efeito suspensivo aos recursos são, em nosso entender, tipicamente cautelares: risco de dano grave, de impossível ou de difícil reparabilidade e probabilidade de provimento do recurso. Ou seja, periculum in mora e fumus boni iuris.

> Este dano, cuja probabilidade deve ser demonstrada para obtenção do efeito suspensivo do recurso, não se identifica necessariamente com o comprometimento do direito material que se afirma ter no recurso. Basta que a parte demonstre que o dano será agravado, se a medida não for concedida.
> A lei não menciona a hipótese de que ocorra situação inversa: o recurso tem efeito suspensivo por disposição expressa e a parte recorrente precisa da eficácia da decisão. Demonstrada a probabilidade de provimento do recurso e de ocorrência de dano, entendemos que o recorrente faz, sim, jus à providência correspondente ao adiantamento provisório do provimento do recurso. É o que se chamou de efeito ativo ou de tutela antecipada recursal, não expressamente prevista, mas admitida no sistema, em relação a todos os recursos com efeito suspensivo, por identidade de razões. É possível ser concedida nos casos de os recursos não tem terem efeito suspensivo".

Vislumbro presentes os requisitos a justificar a concessão parcial da antecipação da tutela recursal pleiteada, tendo em vista que, ao menos em sede de cognição sumaríssima, evidencia-se a probabilidade de provimento final do agravo de instrumento interposto.

Cuida-se de recurso interposto contra a decisão de fls. 118.173 a 118.176 (indexador n.º 118.173), proferida pelo Juízo da 7ª Vara Empresarial da Comarca da Capital, que: (I) suspendeu a exigibilidade das obrigações inerentes ao aditamento ao plano de recuperação judicial apresentado pelas empresas recuperandas, pelo período compreendido entre 13/08/2025 e 31/08/2025; (II) determinou que até o encerramento do prazo fixado devam a ANATEL e o TCU se manifestar nos autos sobre eventual transição para fins de inocorrência de solução da continuidade nos serviços públicos prestados pelo Grupo OI; (III) imputou às recuperandas o dever de apresentação de plano de transição dos serviços públicos prestados e o exercício, se assim entenderem adequado, de facultada inserta na cláusula 4.2.12, 'd', do PRJ.

---

[1] Comentário ao novo Código de Processo Civil/ coordenação Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, pág. 1473;





64

Com efeito, consoante assentado na decisão recorrida, é fato incontroverso que as Recuperandas vêm deixando de cumprir, pontualmente, as obrigações estabelecidas no Plano de Recuperação Judicial, assim como os créditos extraconcursais.

Há proposta de aditamento ao PRJ com fundamento na superveniência de fatos que supostamente teriam inviabilizado a sua execução, com o escopo de alcançar os originariamente excluídos credores trabalhistas, repactuar as condições e prazos de pagamento de fornecedores, credores parceiros, *take or pay* com e sem garantia, alcançando, supostamente, as obrigações pontuais inadimplidas previstas no plano.

Em paralelo, pretendem as Recuperandas instaurar o procedimento previsto no Capítulo 11 da Lei de Falências dos Estados Unidos da América ("*Chapter 11*"), perante o MM. Juízo do Tribunal de Falências dos Estados Unidos do Distrito Sul de Nova York (*United States Bankruptcy Court for the Southern District of New York*), com o objetivo de reestruturação de créditos que não serão equacionados no aditamento e que não podem ser incluídos no processo de recuperação judicial no Brasil.

Escorado às notícias de inadimplemento, já há pedidos de convolação da recuperação judicial em falência formulados por credores no incidente instaurado pelo magistrado *a quo*.

Diante desse cenário, sopesando a necessidade de conjugação de diversos fatores, notadamente no que tange à preservação da empresa e sua relevância social, os credores, a apuração da extensão de danos que pode decorrer da interrupção dos serviços públicos prestados importantíssimos e essenciais prestados ao país, assim como da necessidade de prévia elucidação da real viabilidade financeira das Recuperandas, determinou a magistrada *a quo*, com base no poder geral de cautela previsto no art. 300 do CPC e, conforme sugestão da AJ, a suspensão da exigibilidade das obrigações previstas no PRJ relativas a créditos ou obrigações sujeitas ao aditamento, impedindo, ainda, o estabelecimento de constrições sobre o patrimônio das devedoras, no período de 13/08/2025 a 31 de agosto de 2025.

Determinou, ainda, a juíza de 1ª instância que até o encerramento do prazo de suspensão estabelecido, deverá ser intimada a ANATEL (ID 117.461) e o TCU para que se manifestem nos autos, inclusive para dizerem a respeito de eventual transição para que não ocorra solução de continuidade nos serviços públicos prestados.

Estabeleceu, também, que a Recuperanda deverá apresentar plano de transição dos serviços públicos prestados e exercer, se assim entender adequada, a faculdade inserta na cláusula "4.2.12, "d" do PRJ.

Contra essa decisão se insurgem as Recuperandas, defendendo, em resumo, que embora tenham apresentado pedido de aditamento ao Plano de



Recuperação Judicial que envolve restruturação nova sobre créditos e obrigações relevantes do Grupo OI, por conta de circunstâncias extraordinárias que acabaram por impactar o cumprimento do PRJ, o MM. Juízo Recuperacional deferiu medida de suspensão de obrigações ao Grupo OI em prazo que não é compatível com a complexidade dos temas tratados no aditamento, nem com os riscos que o GRUPO OI será submetido caso seja instado ao cumprimento de obrigações sem considerar os termos aditados.

Destacam que, não obstante o acerto da decisão agravada, o Grupo Oi não será capaz de entrar em consenso com os seus credores em apenas 18 dias a respeito do aditamento.

Acrescentam que a nova administração vem tomando providências essenciais para a recomposição do caixa e a viabilização do soerguimento das Recuperandas, no entanto, o sucesso do soerguimento depende da extensão, por prazo não inferior a 120 dias, das obrigações que são objeto do aditamento, a fim de garantir que o GRUPO OI possa concluir essas negociações e submeter a proposta à Assembleia Geral de Credores ("AGC") para deliberação.

Diante de tais fatos, requer a antecipação dos efeitos da tutela recursal para que seja prorrogado o prazo de suspensão das obrigações determinado pela r. decisão agravada, por pelo menos 120 dias, até o julgamento definitivo do presente recurso, assegurando-se, assim, o resultado útil almejado pelas Recuperandas.

Não obstante a dilação do prazo acima pleiteada, pede seja sustada a decisão agravada no tocante a apresentação, pelas Recuperandas, ANATEL e pelo TCU, de plano de transição de serviços, até o julgamento definitivo do presente instrumental.

Não se perde de vista que o poder geral de cautela é corolário da garantia constitucional da tutela jurisdicional adequada (art.5º, XXXV, da CRFB/88) e deve ser entendido com a amplitude necessária a assegurar a sua eficácia, incluindo-se a garantia da efetividade da decisão a ser prolatada.

Bem de ver que o poder geral de cautela foi mantido pelo Novo Código de Processo Civil, conforme se depreende do Enunciado nº 31 do Fórum Permanente de Processualistas Civis: "O poder geral de cautela está mantido no CPC".

Nesse sentido, o art.301, do CPC, enumera de forma exemplificativa, as medidas para a assecuração do direito:

> "A tutela de urgência de natureza cautelar pode ser efetivada mediante arresto, sequestro, arrolamento de bens, registro de protesto contra alienação de bem e qualquer outra medida idônea para assecuração do direito."



Sobre o referido dispositivo legal, seguem os ensinamentos de Nelson Nery e Rosa Maria de Andrade Nery:

> "2. Medida cautelar inominada. Resta inalterado o *poder geral cautelar*, conferido ao juiz pelo CPC 297. Mas isso já poderia ser deduzido a partir do fato de que não há mais especificação de procedimentos cautelares para determinados caso, de forma que as possiblidades são amplas tanto para o jurisdicionado como para o juiz". (Código de Processo Civil Comentado e legislação extravagante, editora Revista dos Tribunais. São Paulo, 16ª edição, p.921).

Diante de tais considerações, é facultado ao magistrado com fundamento no poder geral de cautela adotar as medidas necessárias de eficácia plena da atividade jurisdicional e que se encontra inserida à discricionariedade do julgador.

Para o doutrinador Humberto Teodoro Júnior (*Curso de Direito Processual Civil*, vol. 2, 49ª ed. Rio de Janeiro: Forense, 2014, p. 532/533):

> "É instrumental a função cautelar, porque não se liga à declaração de direito, nem promove a eventual realização dele; e só atende, provisória e emergencialmente, a uma necessidade de segurança, perante uma situação que se impõe como relevante para a futura atuação jurisdicional definitiva."

Na hipótese, a providência determinada pelo magistrado a quo encontra assento na preservação da ordem jurídica, na segurança das relações, na magnitude da presente recuperação judicial, dos seus inúmeros desdobramentos, dos *stakeholders* envolvidos, da vasta gama de créditos, da necessidade de preservação da empresa e de sua função social, de se aquilatar e atenuar a extensão de danos que pode decorrer da interrupção dos serviços públicos prestados, bem como da imprescindibilidade de elucidação pormenorizada da real viabilidade financeira da Recuperanda, com a manifestação dos agentes auxiliares do juízo, dos órgãos estatais envolvidos e do Ministério Público.

Nesse momento processual, aguarda-se a decisão da juíza de 1ª instância acerca do pedido de aditamento ao plano apresentado pelas devedoras.

Todavia, noticiam as Recuperandas que o prazo estabelecido pelo juízo originário (18 dias) é exíguo para alcançar uma solução de negociação com os credores e as complexidades envolvidas na reestruturação não permitem uma solução definitiva em tão curto espaço de tempo.

Conforme enfatizado pela Administração Judicial, em seu parecer de id.117.336, dos autos originários, as Recuperandas exercem atividades que viabilizam a continuidade e regularidade de serviços públicos, ou seja, atividades que transcendem



67

os interesses estritamente privados e assumem dimensão pública, por estarem atreladas ao atendimento de direitos fundamentais da população.

Por sua vez, noticiam as Recuperandas no id 116.517, que a "rede do GRUPO OI sustenta cerca de 70% do Sistema Integrado de Defesa Aérea e Controle de Tráfego Aéreo (CINDACTA), sendo fundamental para o controle e o monitoramento do espaço aéreo do país".

A relevância dos serviços executados foi ressaltada na decisão combatida:

> "(...) De outro lado, porém, também é certo que a Recuperanda ainda presta importantíssimos serviços públicos ao país, permitindo a milhares de localidades acesso a rede telefônica fixa, sustentando serviços dos denominados "três dígitos" (SAMU, suporte policial e tantos outros) e cerca de 70% do sistema CINDACTA".

De fato, diante da necessidade da continuação do fornecimento de serviços essenciais à sociedade brasileira, se faz necessária a atuação e intervenção da Anatel, a fim de que eventual transição se opere de forma segura, estruturada e organizada.

Noutro passo, a Administração Judicial assentou a necessidade de maiores esclarecimentos pelas Recuperandas, tendo em vista que a insuficiência de elementos não teria permitido uma avaliação quanto à viabilidade da continuidade dos negócios e da nova reestruturação proposta (id.117.336)

Bem de ver que a ANATEL, em sua manifestação de id. 117.461, requereu a dilação de prazo para manifestação nos autos, em relação ao requerimento de aditamento ao Plano de Recuperação Judicial apresentado pelo Grupo OI (decisão de fls. 114.138), além do ajuizamento de pedido de recuperação judicial de 2 (duas) subsidiárias (processo n° 0892154-25.2025.8.19.0001), diante da complexidade e a relevância do assunto para o setor de telecomunicações, não exsurgindo dos autos qualquer manifestação posterior, notadamente quanto as providências solicitadas pelo provimento judicial combatido.

De igual forma não se localizou nos autos originários a manifestação do TCU para informar a respeito de eventual transição para que não ocorra solução de continuidade nos serviços públicos prestados.

Ademais, a própria decisão recorrida previu a possibilidade de o prazo de suspensão estabelecido - até 31.08.2025 – ser dilatado, de acordo com o que viesse a se apresentar no curso do processo.

Diante deste estado de coisas, notadamente da relevância dos interesses envolvidos, ante serviços públicos essenciais prestados pelas Recuperandas, da





68

ultimação do termo fixado pelo juízo a quo, da necessidade de manifestação da ANATEL e do TCU no processo, bem como de exame mais acurado sobre o tema, resta evidenciada a probabilidade de provimento parcial do recurso aliada à demonstração de dano irreparável a justificar o deferimento da antecipação da tutela recursal.

**3.** Por todo o exposto, **DEFIRO, EM PARTE**, a antecipação dos efeitos da tutela recursal apenas para **dilatar o prazo de suspensão estabelecido na decisão recorrida** (id.118173) **para até que seja apreciado o pedido de aditamento ao plano apresentado pelas devedoras pela juíza de 1ª instância, aplicando-se, também, o referido termo, no tocante à implementação das providências direcionadas à ANATEL (ID 117.461) e ao TCU, assim como às Recuperandas, quanto à apresentação de plano de transição dos serviços públicos prestados e exercer, se assim entender adequada, a faculdade inserta na cláusula "4.2.12, "d" do PRJ.**

**4.** Solicitem-se as informações ao juízo *a quo*, na forma do art.1018, do CPC.

**5.** Às agravadas para apresentar resposta, no prazo legal de quinze dias, previsto no art.1019, II, do CPC.

**6.** Ao Administrador Judicial e a Curadoria de Massas.

**7.** À d. Procuradoria de Justiça.

Rio de Janeiro, _____ de _____ de 2025.

**MÔNICA MARIA COSTA**
**Desembargadora Relatora**



## <u>Exhibit B-2</u>

**August 29 Stay Ruling (English)**

**FIRST CHAMBER OF PRIVATE LAW OF THE COURT OF JUSTICE OF THE STATE OF RIO DE JANEIRO**

**Instrument aggravating no. 0071515-22.2025.8.19.00000**

**AGGRAVATING: OI S.A. – IN JUDICIAL RECOVERY, PORTUGAL TELECOM INTERNATIONAL FINANCE B.V. – IN JUDICIAL RECOVERY AND OI BRASIL HOLDINGS COOPERATIEF U.S.A. – IN JUDICIAL RECOVERY**

**Rapporteur: Des. Monica Maria Costa**

<u>DECISION</u>

**This is an instrument problem** filed by OI S.A., Portugal TELECOM INTERNATIONAL Finance B.V. and OI BRASIL Holdings COOPERATIEF U.A.,
All in judicial recovery**, against the decision of Fls. 118,173 to 118,176 (indexer no. 118,173**) , issued by the judgment of the 7ª Corporate Court of the Comarca of Capital in the records of case no. 0090940-03.2023.8.19.0001**, which:** (I) **suspended the enforceability of the obligations inherent in the addition to the judicial recovery plan submitted by the recovering companies for the period 13/08/2025 to 31/08/2025**; (II) **has determined that until the end of the fixed period ANATEL and TCU should manifest themselves in the files on any transition to the purpose of the solution of continuity in public services provided by the OI Group**; (III) **The obligation to submit a transition plan for public services provided is charged to the recovery authorities and the exercise, if deemed appropriate, as provided in clause 4.2.12, 'd', of the PRJ.**

In draft Fls 02 to 49 (indexer no. 02), the applicants report the extraordinary circumstances that led them to the submission of an addition to the recovery plan approved on 28/05/2024. Highlights the occurrence of significant net debt reduction, from$ R 25.4 9.8 billion to R$ 2024 billion between the first quarter of 2025 and May 2.8, as well as the payment of an additional R$ 2025 billion according to the RMA of July. Nevertheless, they point out that some basic premises for the economic rational of some payment obligations assumed in the PRJ were not verified after judicial approval. Point out that (a) the value intended by the former administration for the sale of *UPI ClientCo* did not fit the market reality and, as a result, the financial asset was disposed of in February 2025 through non-cash financial counterparts of$ R 5.7 billion; (B) the costs for maintaining the infrastructure necessary for the provision of STFC telephony services continued to be imposed by ANATEL until November 2024, for five (05) months after the originally designed period, resulting in relevant expenses not anticipated by the OI Group; (C) Labour liabilities fell from R$
808.4 million to only$ R 803.9 2024 million, between May 2025 and May, a much lower reduction than projected when preparing the recovery plan. On

MONICA MARIA COSTA DI PIERO:29835    Signed on 29/08/2025 17:03:30
LOCATION: GAB. DES(A). MONICA MARIA COSTA DI PIERO

From such circumstances beyond the will of its new governance, which pressure the box of recoveries and hinder the fulfillment of short-term financial obligations assumed, presented the addition, firm in the search for a solution to allow the continuity of two payments, overcoming the temporary difficulties of cash flow and the preservation of operational businesses, all without forgetting the social function and preservation of the company. They briefly detail the terms of the addendum, presented on July 1, 2025, highlighting its viability and the need for approval to be decided in a new General Meeting of Creditors, whose convocation is based on article 35, I, point 'a', of Federal Law no. 11,101/2005, as well as in clauses 9.6, 9.6.1 and 9.6.2 of the recovery plan. They mentioned doctrine regarding the possibility of adding judicial recovery plans and jurisprudential precedents on the legitimacy of a measure aimed at suspending the enforceability of the obligations related to it. It highlights the substantial fulfillment of the obligations of the recovery plan and the efforts made in support of its recovery project. They give their role to society and the necessary protection of their activities involving thousands of direct and indirect jobs generated by it, as well as essential services and notorious public interest at the national level, such as emergency services (190, 192 and 193) and those provided to the Integrated System of Air Defense and Air Traffic Control (CINDACTA). In spite of the facts, they understand that the suspension period fixed by the judgment *a quo* is insufficient to reach the creditors' consensus regarding the addition to the recovery plan, especially in the face of the complexities involving new restructuring on relevant claims and obligations of the OI Group. They advocate the extension of the said deadline for another 120 (one hundred and twenty) days, observed that the procedure inherent to the addition has not yet been triggered, requiring prior clarification to the Recuperational Judgement of the real financial viability of the recoveries, a charge attributed to *the* appointed *Watchdog*. They also point out that the determination to present a transition plan for the public services provided goes against the conclusions of the *Watchdog and* the Joint Judicial Administrator, both in the sense that, considering the liabilities of the recoveries, the operational profit capacity and the maintenance of activities in a sustainable way emerges. In addition, the presentation of a transition plan at this time is not broken, besides that there are a series of structural, operational, regulatory and economic reasons to be observed in the hypothesis of transition of the services provided. Gizam that in the Term of Self-Composition already concluded to discipline the transition from the OI Group STFC regime to the private system of provision of telecommunication services, ANATEL established as a fundamental premise the continuity of services by the OI Group itself, and not their permanent and/or total replacement or transition to any third party. They maintained the forecast of investments in infrastructure and maintenance of voice services in the amount of$ R 5.8 billion, which, together with the other forecasts specified in the Term of Self-Composition, it was seen by ANATEL itself as a factor that would bring security to the telecommunications sector in a disruptive context of technological transition in the telecommunications sector. Lastly, they list 13 (thirteen) reasons to highlight the probability of the alleged right, to FLS. 40 to 43 (indexer no. 02), point out *periculum in mora in* fact that its short-term obligations are currently compromised, there is a risk of claims for bankruptcy judicial recovery, as well as



Constrictions in the OI Group's equity and termination of contracts, and also highlight the danger of irreparable damage due to severe cash flow pressures, which even made it essential to submit a request for the sale of credit rights, granted at the origin.

Based on such arguments, they strive for the anticipation of the effects of recursal guardianship, in the form of article 1,019, I, of the Code of Civil Procedure, in order that they are: **(I)** suspended for at least 120 (one hundred and twenty) days the enforceability of the obligations laid down in the PRJ relating to claims or obligations subject to the ADDITION, with the subsequent prohibition of allegation of non-compliance and/or prosecution of bankruptcy or executions against the OI Group; **(II)** prohibited, for at least one hundred and twenty (120) days, any retention, attachment, abduction, search and seizure and judicial and/or extrajudicial constriction on the assets of the recoveries, arising from judicial and/or extrajudicial demands whose credits or obligations are subject to THE ADDITION; **(III)** the interruption of any essential services to the OI Group for at least 120 (one hundred and twenty) days on the basis of the failure to comply with obligations under the PRJ relating to claims or obligations subject to THE amendment; **(IV)** The decree of default in the presentation of THE ADDENDUM (*ipso facto* clauses) is prevented for at least 120 (one hundred and twenty) days.

They also want the attribution of suspensive effect, in order to suppress the other terms of the aggravated decision, especially the presentation, by the recoveries, ANATEL and the TCU, of service transition plan, until the definitive judgment of the present instrumental.

That is the report. I will decide.

**2.** According to the ruling by the Second Section of the Superior Court, in the judgment of the Special Appeal 1707066/MT, submitted to the rite of repetitive appeals (Theme 1022), "an instrument must be aggravated against all interlocutory decisions made in judicial recovery proceedings and in bankruptcy proceedings pursuant to Art. 1,015, single paragraph, CPC."

Thus, present the intrinsic requirement of recursal admissibility (fitting).

After the formal regularity, I proceed to the analysis of the request for anticipation of the recursal tutelage formulated by the applicant.

With reference to Article 1019, I of the CPC, received the instrument aggravation in the court and distributed immediately, if not the case of application of Art. 932, paragraphs III and IV, the rapporteur, within five (5) days may assign suspensive effect to the appeal or file in anticipation of protection, in whole or in part, the recursal claim, communicating to the judge his decision.

The granting of the suspensive or active effect is subject to the presence of two requirements, namely, the likelihood of the claims and the danger of irreparable or difficult repair damage (Article 995, sole paragraph, of the Code of Civil Procedure).

It is worth collating doctrine on[theme 1]:

> "The assumptions for granting suspensive effect to resources are, in our opinion, typically cautious: Risk of serious damage, of impossible or difficult repairability and probability of the provision of the appeal. That is, periculum in mora and fumus boni iuris.
>
> This damage, the probability of which must be demonstrated to obtain the suspensive effect of the appeal, does not necessarily identify with the compromise of the material law that is claimed to have in the appeal. It is enough for the party to demonstrate that the damage will be aggravated if the measure is not granted.
> The law does not mention the hypothesis that there is an inverse situation: The appeal has suspensive effect by express provision and the appellant Party needs the effectiveness of the decision. As demonstrated the likelihood of the appeal and of the occurrence of damage, we believe that the applicant does, yes, justice to the action corresponding to the provisional advance of the action. This is what was called an active effect or an early recursal protection, not expressly foreseen, but admitted in the system, in relation to all resources with suspensive effect, for the identity of reasons. It is possible to be granted in cases where resources have no suspensive effect."

I present the requirements to justify the partial concession of the anticipation of the recursal tutelage pleaded, considering that, at least in terms of very high cognition, it is evident the probability of final provision of the problem of an instrument brought.

An appeal against the decision of Fls. 118,173 A is taken care of 118,176 (indexer no. 118,173), issued by the judgment of the 7ª Corporate Court of Comarca of Capital, which: (I) suspended the enforceability of the obligations inherent in the addition to the judicial recovery plan presented by the recovered companies, for the period from 13/08/2025 to 31/08/2025; (II) has determined that until the end of the fixed period ANATEL and TCU should manifest themselves in the files about any transition to the purpose of the solution of continuity in public services provided by the OI Group; (III) The obligation to submit a transition plan for public services provided is charged to the recovery authorities and the exercise, if deemed appropriate, as provided in clause 4.2.12, 'd', of the PRJ.

---

[1] Comment to the new Civil Procedure Code / Coordination Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forensics, 2015, p. 1473;



In fact, as established in the contested decision, it is an uncontroversial fact that the Recuperandas have failed to comply, on time, with the obligations established in the Judicial Recovery Plan, as well as the extra-concursal credits.

There is a proposal to add to the PRJ on the basis of the overvenience of facts that supposedly would have made its execution impossible, with the scope of reaching the originally excluded labor creditors, to resettle the conditions and deadlines of payment of suppliers, partner creditors*, take or* pay with and without guarantee, reaching, supposedly, the incidental obligations provided for in the plan.

In parallel, the Recuperandas intend to refer the procedure provided for in Chapter 11 of the Bankruptcy Law of the United States of America (" Chapter 11"), before THE Court of Bankruptcy of the United States of New York South District *( United States Bankruptcy Court for the Southern District of New*York ), with the aim of restructuring credits that will not be equated in the addendum and that cannot be included in the judicial recovery process in Brazil.

After the reports of incompliance, there are already requests for bankruptcy judicial recovery filed by creditors in the incident initiated by the magistrate *A QUO*.

Given this scenario, adding to the need to combine several factors, especially regarding the preservation of the company and its social relevance, creditors, the calculation of the extent of damages that may result from the interruption of public services rendered extremely important and essential to the country, as well as the need for prior elucidation of the real financial viability of the Recuperandas, determined the magistrate  aquo, based on the general power of caution provided for in article 300 of the CPC and, as suggested by the AJ, the suspension of the enforceability of the obligations provided for in the PRJ relating to claims or obligations subject to the addition, also preventing the establishment of constraints on the assets of the debtor, from 13/08/2025 to 31 August 2025.

It also determined the judge of 1ª instance that until the end of the established suspension period, ANATEL (ID 117,461) and the TCU should be filed to manifest themselves in the proceedings, even to say about the possible transition so that there is no continuity solution in the public services provided.

It also established that Recuperanda should present a plan for the transition of public services provided and exercise, if appropriate, the faculty inserted in clause "4.2.12, "d" of the PRJ.

Against this decision, the Recuperandas arise, arguing, in short,    that although they  have  submitted a request   for addition  to  the Plan  of

Judicial recovery involving new restructuring of credit and relevant obligations of the OI Group, due to extraordinary circumstances that ultimately impact the performance of the PRJ, THE Court of Appeal granted a measure of suspension of obligations to the OI Group within a time limit which is not compatible with the complexity of the issues dealt with in the addendum, nor with the risks that THE OI GROUP will be subjected if it is called upon to comply with obligations without regard to the added terms.

They point out that, despite the settlement of the aggravated decision, the Oi Group will not be able to reach consensus with its creditors in just 18 days regarding the addition.

They add that the new administration has made essential arrangements for the recomposition of the box and the viability of the uplifting of the Recuperandas, however, the success of the uplifting depends on the extension, for a period not less than 120 days, of the obligations that are the subject of the amendment, in order to ensure that the OI GROUP can conclude these negotiations and submit the proposal to the General Meeting of Creditors ("AGC") for deliberation.

In view of such facts, it requires the anticipation of the effects of the recursal tutelage to extend the period of suspension of the obligations determined by r. Decision aggravated, for at least 120 days, until the final judgment of the present appeal, thus ensuring the useful result desired by the Recuperandas.

Despite the delay of the above deadline, the decision is to be upheld with regard to the presentation, by Recuperandas, ANATEL and the TCU, of a service transition plan, until the final judgment of the present instrument.

It is not lost in view that the general power of caution is corollary of the constitutional guarantee of adequate judicial protection (Art. 5, XXXV, CRFB/88) and must be understood with the extent necessary to ensure its effectiveness, including the guarantee of the effectiveness of the decision to be profiled.

Well to see that the general power of caution was maintained by the New Code of Civil Procedure, as can be seen from the statement No. 31 of the Permanent Forum of Civil Proceedings: "The general power of caution is maintained in the CPC."

In this sense, the article 301 of the CPC lists, for example, the measures for the ascertainment of the law:

> "The injunction of urgency of a precautionary nature can be effected by means of arrest, kidnapping, plundering of property, registration of protest against alienation of good and any other appropriate measure to ensure the right."



About the said legal device, follow the teachings of Nelson Nery and Rosa Maria de Andrade Nery:

> 2 ". Injunctive measure innominated. The *precautionary general power* conferred on the judge by CPC 297 remains unchanged. But this could already be deduced from the fact that there is no more specification of precautionary procedures for certain cases, so that the possibilities are broad for both the court and the judge." (Code of Commented Civil Procedure and Fancy Legislation, editor Revista dos Tribunais. 16ª Paulo, 2nd edition, p.921).

Given such considerations, it is provided to the magistrate on the basis of the general power of caution to adopt the necessary measures of full effectiveness of the judicial activity and that is inserted in the discretion of the judge.

For the doctrinal Humberto Teodoro Junior ( *Civil Procedural Law* Course , vol. 2, 49ª ed. Rio de Janeiro: Forensics, 2014, p. 532/533):

> "The precautionary function is instrumental, because it does not link to the declaration of law, nor does it promote the eventual realization of it; and it only meets, provisional and emergency, a need for security, in view of a situation that is imposed as relevant for the future definitive judicial action."

In the hypothesis, the providence determined by the magistrate A QUO is based on the preservation of the legal order, the security of relations, *the* magnitude of the present judicial recovery, its numerous developments, the *stakeholders* involved, the wide range of credits, the need to preserve the company and its social function, to settle and mitigate the extent of damages that may arise from the interruption of public services provided, as well as the indispensability of detailed elucidation of the real financial viability of Recuperanda, with the manifestation of auxiliary agents of the court, the State agencies involved and the Public Prosecutor's Office.

At this procedural moment, the judge of 1ª instance is awaiting the decision of the judge on the request for addition to the plan presented by the debtor.

However, the Recuperandas reported that the deadline set by the original judgment (18 days) is very short to reach a settlement of negotiations with creditors and the complexities involved in restructuring do not allow a definitive solution in such a short time.

As emphasized by the Judicial Administration, in its opinion of id.117,336, of the original files, the Recuperandas carry out activities that enable the continuity and regularity of public services, that is, activities that transcend

the strictly private interests and assume a public dimension, because they are linked to the fulfillment of fundamental rights of the population.

In turn, the Recuperandas reported in id 116,517, that the "OI GROUP network supports about 70% of the Integrated Air Defense and Air Traffic Control System (CINDACTA), being fundamental for the control and monitoring of the country's airspace."

A relevance dos services executed it was highlighted no. decision

fought:

> "(...) On the other hand, however, it is also certain that Recuperanda still provides important public services to the country, allowing thousands of localities access to the fixed telephone network, supporting services of the so-called "three digits" (SAMU, police support and so many others) and about 70% of the CINDACTA" system.

In fact, given the need to continue providing essential services to Brazilian society, it is necessary to act and intervene Anatel, in order that eventual transition operates in a safe, structured and organized way.

In another step, the Judicial Administration based the need for further clarification by the Recuperandas, since the lack of elements would not have allowed an evaluation as to the viability of business continuity and the proposed new restructuring (id.117,336)

Well to see that ANATEL, in its manifestation of id. 117,461, requested the deadline for filing in the files, in relation to the request for addition to the Judicial Recovery Plan presented by the OI Group (FI Decision 114,138), in addition to the filing of a request for judicial recovery of two (2) subsidiaries (Case No 0892154-25.2025.8.19.0001), faced with the complexity and relevance of the subject to the telecommunications sector, no subsequent manifestation of the proceedings, especially regarding the measures requested by the judicial provision fought.

Likewise, the manifestation of the TCU was not located in the original documents to inform about any transition so that there is no continuity solution in the public services provided.

Moreover, the contested decision itself provided for the possibility of the suspension period established - until 31.08.2025 - to be extended, according to what would be presented in the course of the process.

Faced with this state of affairs, notably the relevance of the interests involved, before essential public services provided by Recuperandas, DA



Finalization of the term fixed by the judgment to quo, the need for manifestation of ANATEL and TCU in the process, as well as more accurate examination on the subject, it remains evident the probability of partial provision of the appeal allied to the demonstration of irreparable damage to justify the acceptance of the anticipation of recursal tutelage.

**3.** 1ª all the above, **I** partially **defer** the anticipation of the effects of recursal protection only to **extend the suspension period established in the contested decision** (id.118173**) until the request for addition to the plan submitted by the debtor by the judge of the second instance is assessed, and also applies to the this term, regarding the implementation of the measures directed to ANATEL (ID 117,461) and the TCU, as well as the Recuperandas, regarding the presentation of a plan for transition of public services provided and exercise, if appropriate, the faculty inserted in clause "4.2.12, "d" of the PRJ.**

**4.** The information is requested to the judgment *a quo*, in the form of art. 1018, of the CPC.

**5.** To those aggravated to submit a response within the legal period of fifteen days, provided for in article 1019, II, of the CPC.

**6.** To the Judicial Administrator and the Mass Curator.

**7.** To d. Attorney's Office.

Rio de Janeiro, _____from _____from 2025.

**MONICA MARIA COSTA**
**Desembargador Rapporteur**

