## Exhibit C

**Certified Translation of the V.tal Appeal**



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 312



262.604(001) Livro 1759 Fl. 312-384

**I, SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER SIGNED BELOW, APPOINTED BY THE PRESIDENT OF THE TRADE BOARD OF THE STATE OF RIO DE JANEIRO (JUCERJA), LICENSED IN THE FOLLOWING LANGUAGES: ENGLISH, FRENCH, AND SPANISH UNDER PERMIT 243 ---------- HEREBY CERTIFY IN GOOD FAITH ------------------------------------------------------------ THAT ON THIS DATE A DOCUMENT WAS PRESENTED TO ME WRITTEN IN PORTUGUESE, WHICH I NOW TRANSLATE INTO THE ENGLISH IDIOM WITH THE BEST OF MY KNOWLEDGE AND IN GOOD FAITH, AS COMMANDED BY MY OFFICIAL DUTY, AS FOLLOWS:--------------------------------------------------------**

 ------------------------------------------------------------

*(Electronic stamp on all pages of the document submitted)* -

 ------------------------------------------------------------

**PINHEIRO NETO** ------------------------------------------------

ADVOGADOS ----------------------------------------------------

 ------------------------------------------------------------

**SÃO PAULO** ---------------------------------------------------

R. Hungria, 1100 --------------------------------------------

01455-906 ---------------------------------------------------

São Paulo - SP ----------------------------------------------

t. +55 (11) 3247 8400 ---------------------------------------

 ------------------------------------------------------------

**RIO DE JANEIRO** -----------------------------------------------

R. Humaítá, 275 ---------------------------------------------

16° andar ---------------------------------------------------

22261-005 ---------------------------------------------------

Rio de Janeiro - RJ -----------------------------------------

t +55 (21) 2506 1600 ----------------------------------------

 ------------------------------------------------------------

**BRASILIA** -----------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 313

SAFS. Quadra 2 Bloco B ------------------------------------

Ed. Via Office – 3° andar --------------------------------

70070-600 -------------------------------------------------

Brasília - DF ---------------------------------------------

t +55 (61) 3312 9400 -------------------------------------

 ---------------------------------------------------------

**PALO ALTO** --------------------------------------------

228 Hamilton Avenue, -------------------------------------

3rd floor ------------------------------------------------

CA 94301 USA ---------------------------------------------

t. +1 650 798 5068 ---------------------------------------

 ---------------------------------------------------------

**TOKYO** ------------------------------------------------

1-6-2 Marunouchi, ----------------------------------------

Chiyoda-ku, 21st floor -----------------------------------

100-0005 -------------------------------------------------

Tokyo - Japan --------------------------------------------

t. +81 (3) 3216 7191 -------------------------------------

 ---------------------------------------------------------

To the Honorable First Vice-President of the Court of
Justice of the State of Rio de Janeiro --------------------

**Original Case No. 0090940-03.2023.8.19.0001** ---------------

**Distribution by prevention to the First Chamber of Private
Law** ------------------------------------------------------

**V.TAL - REDE NEUTRA DE TELECOMUNICAÇÕES S.A,** a company
registered with the CNPJ under No. 02.041.460/0001-93,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 314

with registered offices at Rua Casa do Ator, No. 919, Vila Olímpia, city of São Paulo, State of São Paulo, CEP 04546-003 ("V.tal" or "Appellant"), by its attorneys (**docs. nos. 1 and 2**), respectfully and in due time, on the basis of articles 1.015 et seq. of the Code of Civil Procedure ("CPC"), files this ---------------------------------------

**INTERLOCUTORY APPEAL** ---------------------------------------

**with request for a preliminary injunction** -----------------

against the decision of pages 117.355/117.359 ("Agreed Decision") (**doc. no. 3**), handed down in the Court-Supervised Reorganization proceedings[1] ("Court-Supervised Reorganization") of **OI S.A.** and **Other** ("Appellees" or "Grupo Oi" or "Companies under Reorganization"), for the following reasons of fact and law. ------------------------

1. **Timeliness.** On **8.7.2025**, the Appealed Decision was made available in the Electronic Justice Gazette, and was therefore published on **8.8.2025**. Thus, the 15 (fifteen) business day period provided for in article 1.003, §5 of the CPC for filing this appeal ends on **8.29.2025**, and the appeal filed on this date (**8.26.2025**) is manifestly timely. -------------------------------------------------

2. **Prevention.** The First Chamber of Private Law of this E. Court of Justice of the State of Rio de Janeiro ("TJRJ"), which is chaired by the eminent Judge Mônica Maria Costa Di Piero, is prevented from hearing this appeal, pursuant to article 930, sole paragraph, of the CPC, insofar as it





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 315

has been judging appeals arising from Court-Supervised Reorganization[2]. ------------------------------------------

3. **Appropriateness of the Interlocutory Appeal.** As this is an appeal against a decision handed down in the context of Court-Supervised Reorganization, it is clear that this interlocutory appeal is appropriate, under the terms of art. 1.015, sole paragraph, of the CPC, art. 189, §1, II, of Law No. 11.101/05 ("LRF") and Theme 1.022 of the Superior Court of Justice ("STJ")[3]. -----------------------

4. **Discovery of the Appeal**. In compliance with article 1.017 of the CPC, although the case file from which this appeal was taken is electronic, which would mean that it would not need to be filed, these reasons for appeal are accompanied by all the mandatory copies, including powers of attorney granted to the parties, Appealed Decisions and proof of payment of procedural costs (**doc. n° 4**). Should this Court deem it necessary to submit any additional documents, the Appellant requests that time be granted for the documentation to be supplemented, under the terms of article 1.017, paragraph 3, of the CPC. -------------------

5. **Declaration of Authenticity.** The lawyers of the Appellant, signatories of this appeal, under the terms of article 1.017, II, of the CPC, declare that the copies of the documents that instruct the appeal are authentic. -----

6. **Procedural Representation**. Pursuant to Article 1.016, IV, of the CPC, the Appellant informs the names and





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 316

addresses of the Appellant's, the Respondents' and the Judicial Administrator's attorneys, as follows: -----------
**(i) For the Appellant:** the lawyers *Thiago Braga Junqueira,* enrolled with the OAB/SP under No. 286.786, *João Guilherme Thiesi Da Silva,* enrolled with the OAB/SP (Brazilian Bar Association/São Paulo reg.) under No. 410.293, *Maria Fernanda Marchesan Del Grande,* registered with the OAB/SP under No. 493.904 and *Sophia Weinschenker Bollmann,* registered with the OAB/SP under No. 519.960, all with business addresses at Rua Hungria, 1. 100, Jardim Europa, São Paulo/SP (**doc. no. 2**); and --------------------------
**(ii) For the Appellees:** the lawyers *Marcos Pitanga Ferreira,* enrolled with the OAB/RJ under No. 144.825, *Luiz Carlos Malheiros França,* enrolled with the OAB/RJ under No. 163.989, *João Felipe Lynch Meggiolaro,* registered with the OAB/RJ under no. 216.273, *Fernanda Anuda,* registered with the OAB/RJ under no. 241.307, *Diana Lise Freitas,* registered with the OAB/RJ under no. 256.584, *Thiago Peixoto Alves,* registered with the OAB/RJ under no. 301.049, *João Felipe Martins de Almeida,* registered with the OAB/RJ under no. 200.664, *Helena Acker Caetano,* registered with the OAB/RJ under no. 230.206, *Edson Bossonaro Júnior,* registered with the OAB/RJ under No. 264.022, and *Luís Fellipe Freitas,* registered with the OAB/RJ under No. 261.146, all members of the law firm Ferro, Castro Neves, Daltro e Gomide Advogados, with





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

professional address at Av. Rio Branco, n° 85, 13°, 15°, 17° and 18° floors, Centro, Rio de Janeiro/RJ, CEP 20040-004; as well as the lawyers *Paulo Padis,* registered with the OAB/RJ under n° 139.860-A, *Talitha Aguillar Leite,* registered with the OAB/SP under n° 344.859, and *Mariana Leoni Beserra,* registered with the OAB/SP under No. 443.636, the latter members of the Padis Mattar Advogados law firm, with professional address at Av. Brigadeiro Faria Lima, n° 1.663, 12° andar, Jardim Paulistano, São Paulo/SP, CEP 01452-001. (**doc. no. 5 and 6**); --------------
(**iii**) **By the Judicial Administrator:** *Wald Administração De Falências E Empresas Em Recuperação Judicial Ltda.,* represented by Arnoldo Wald Filho, registered with the OAB/RJ under No. 58.789, and Adriana Campos Conrado Zamponi, registered with the OAB/RJ under No. 92.831, both with professional addresses at Rua General Venâncio Flores, n° 305, 10° andar, Leblon, Rio de Janeiro; *K2 Consultoria Econômica,* represented by João Ricardo Uchoa Viana, with headquarters at Rua Primeiro de Março, n° 23, 14° andar, Centro, Rio de Janeiro; and *Preserva-Ação Administração Judicial,* represented by Bruno Rezende, registered with the OAB/RJ under 124.405, with registered offices at Avenida Rio Branco, 116, 15th floor, Centro, Rio de Janeiro (**doc. no. 7**); ----------------------------------
7. **Subpoenas**. The Appellant requests that the subpoenas relating to this appeal be made exclusively and jointly in





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 318

the name of the attorneys who sign this appeal, under penalty of nullity, pursuant to article 272, paragraph 5, of the CPC. -------------------------------------------------

In these terms, Grant is requested ------------------------

São Paulo, August 26, 2025. -------------------------------

*(Blank)* ---------------------------------------------------

**Thiago Braga Junqueira** --------------------------------------

**OAB/SP No. 286.786** ---------------------------------------

 ---------------------------------------------------------------

*(Blank)* ---------------------------------------------------

**Maria Fernanda M. Del Grande** -----------------------------

**OAB/SP No. 493.904** ---------------------------------------

 ---------------------------------------------------------------

*(Blank)* ---------------------------------------------------

**João Guilherme Thiesi da Silva** ----------------------------

**OAB/SP No. 410.293** ---------------------------------------

 ---------------------------------------------------------------

*(Blank)* ---------------------------------------------------

**Sophia Weinschenker Bollmann** ------------------------------

**OAB/SP No. 519.960** ---------------------------------------

 ---------------------------------------------------------------

**ANNEX I** ----------------------------------------------------

**List of Mandatory and Optional Documents** ------------------

 ---------------------------------------------------------------



| Doc. no. 1 | V.tal Corporate Documents |
| Doc. no. 2 | Power of Attorney from V.tal to its Lawyers |
| Doc. no. 3 | Decision Appealed |
| Doc. no. 4 | Guide and Proof of Payment of Court Costs |



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 319

| Doc. no. 5 | Oi Group Corporate Documents |
|---|---|
| Doc. no. 6 | Oi Group Powers of Attorney to its Lawyers |
| Doc. no. 7 | Decisions Appointing the Judicial Administrator |
| Doc. no. 8 | Request to close *Chapter 15* |
| Doc. no. 9 | First Decision |
| Doc. no. 10 | Second Decision |
| Doc. no. 11 | Suspensive Effect Decision |
| Doc. no. 12 | Opinion Professor Daniel Carnio Costa |
| Doc. no. 13 | *Amicus Brief* |
| Doc. no. 14 | Hearing *Chapter 15* - 8.18.2025 |
| Doc. no. 15 | Hearing *Chapter 15* - 8.14.2025 |
| Doc. no. 16 | Decision Establishment |
| Doc. no. 17 | Decision Brazilian Jurisdiction |
| Doc. no. 18 | Intercreditor Agreement |

---------------------------------------------------------

**E. Court of Justice of the State of Rio de Janeiro**
("TJRJ") ----------------------------------------------------

**Aggravating factor:** V.tal - Rede Neutra De
Telecomunicações S.A. ("V.tal" or "Appellant") ------------

**Appellees:** Oi S.A. and Others ("Appellees" or "Grupo Oi"
or --------------------------------------------------------
"Companies under Reorganization") -----------------------

**Judicial Administrator:** Wald Administração De Falências E
Empresas em Recuperação Judicial Ltda., K2 Consultoria
Econômica and Preserva-Ação Administração Judicial (all
together, "Judicial Administrator or Trustee") ------------

**REASONS FOR INTERLOCUTORY APPEAL** --------------------------

Honorable Court, ------------------------------------------

**I. THE RISK OF VALIDATING THE RELIEF OF DISCREDIT** ---------

*P: You know - you're not sure how, sir. Padis, but you
recognize, don't you, that if Oi successfully restructures*





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 320

*the debtor-in-possession financing in the US Bankruptcy Court, this could affect the DIP financing market in Brazil, isn't it, sir?* -------------------------------------

R: *I think the market will have to adapt.* -----------------

8. What we see in this case is not just an infringement of the letter of the law, but the reappearance of an old feature of our history: the belief that the legal order is always malleable, always negotiable, always subject to being twisted in favor of the one is considered stronger. Since colonial times, the law has often been treated as an ornament - something that is displayed when convenient and discarded when it gets in the way. Now, this old expedient is gaining ground in the Brazilian competition environment, precisely in the area where predictability and credit protection should be most sound. ---------------

9. The Oi Group is trying to repeat this pattern here: it has benefited from the Court-Supervised Reorganization regime twice, reaped its rewards and, before it has even fulfilled the commitments it has made, it announces that it will go to a foreign jurisdiction to seek new protection, despite the restrictions imposed by Brazilian law. It doesn't do it on the sly, but with aplomb, almost as an ostentatious display. Its advisors say, loud and clear, that the Brazilian legal system *"will have to adapt"*, in a brutal admission of contempt - not just for creditors, but for the judiciary itself. ------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 321

10. To admit the possibility of this maneuver is to open the door for any company undergoing restructuring in Brazil to see abroad the opportunity to break all its commitments legitimately assumed with national creditors, under the supervision of the Brazilian Judiciary. It is a clear sign that crossing borders is enough to undermine guarantees, frustrate pacts and reduce freely concluded agreements and conventions to nothing. It is the consecration of a kind of amnesty for persistent debtors, dressed up as an international strategy. It's the antithesis of Court-Supervised Reorganization: instead of restoring confidence, discredit is instilled. -------------

11. It is this logic of indifference, of shrugging off the rules, that silently erodes trust in the law. And trust, here, is not a detail: it is the cement that supports the entire bankruptcy edifice. When trust is broken, when the pact signed between the debtor, creditors and the state is trivialized, there can be no reorganization. What remains is cynicism turned into a method, a repetition of an old vice - now projected onto a system that cannot survive without integrity, an indispensable prerequisite for cooperation to take place. --------------------------------

12. That is why V.tal is filing this appeal: it is not just a matter of correcting a decision in a specific case, but of affirming that the Brazilian insolvency system is not a stage for rash strategies and that insolvency law





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 322

does not exist as an ornament, empty rhetoric, or a gracious concession to those who use it. It is a law based on a very important public policy, an institutional commitment. To allow a foreign insolvency proceeding to overlap with an ongoing Court-Supervised Reorganization would be to renounce the very authority of this Court and signal to the market that Brazil has become a no man's land. It is therefore up to this Court to put things right and restore the trust that underpins the entire Brazilian bankruptcy system. ---------------------------------------

**II. SUBJECT OF THIS APPEAL - SUMMARY OF THE GROUNDS FOR REFORM** ----------------------------------------------------

13. **Agreed Decision - Oi's intention to file *Chapter 11*.** This is an interlocutory appeal filed against the decision issued by the Judge of the 7th Business Court of the District Court of Rio de Janeiro, State of Rio de Janeiro ("Reorganization Court") which, among other points, stated that "*it will not (....) order anyone to refrain from filing a lawsuit before any jurisdiction*" ("Appealed Decision"). -----------------------------------------------

14. A r. The Appealed Decision refers to Oi's request to file a main restructuring proceeding under Chapter 11 of the United States Bankruptcy Code *("Chapter 11"),* to be filed with the U.S. Judiciary, in the event that its request to close the *Chapter 15* of the Appellees[4] is granted ("Petition to Close *Chapter 15*" - **doc. No. 8**),





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 323

pending before the Bankruptcy Court for the Southern District of New York ("New York Court"). The Oi Group's stated intention would be for the *Chapter 11* to be processed concurrently with the Court-Supervised Reorganization process currently underway before the Reorganization Court. ------------------------------------

15. **Rejection of V.tal's Request - Illegalities of *Chapter 11*.** The Appealed Decision thus implicitly rejected the request formulated by V.tal for the Reorganization Court to also assess the legality surrounding the alleged *Chapter 11,* including after hearing the i. Judicial Administrators and representative of the Federal Prosecutor's Office.[5] Said Decision under appeal, however, should be reformed so that the Brazilian jurisdiction, after hearing the i. Judicial Administrators and the member of the Federal Prosecutor's Office, recognize and communicate to the New York Court (167-P, LFR) that a possible *Chapter 11* to be filed by the Oi Group is materially illegal and incompatible with the Court-Supervised Reorganization, because, briefly, it appears as

• Violation of Public Order: The LFR prohibits the filing of a new request for Court-Supervised Reorganization within 5 (five) years of the decision approving the respective Court-Supervised Reorganization plan (article 48, II, LFR). This is a rule of public policy, which reflects policies chosen by the national legislator as





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 324

part of the structure of economic incentives on which the LFR (Bankruptcy and Reorganization Law) is based. The Oi Group had its plan approved just over <u>15 (fifteen) months ago</u>. To allow the filing of *Chapter 11* (a procedure analogous to Court-Supervised Reorganization) is therefore to violate a fundamental rule of the LFR and of public order; ----------------------------------------------------

• <u>Impossibility for *Chapter 11* to Restructure Credits that **are not** subject to Court-Supervised Reorganization</u>: The transnational insolvency rules included in the LFR (articles 167-A et seq.) prohibit (in the context of the Oi Group) the recognition of foreign proceedings that restructure claims that are not subject to Court-Supervised Reorganization. This is what articles 167-M, §3, 167-S, I, and 167-B, III, all of the LFR, together provide. Given the existence of the Court-Supervised Reorganization and the fact that the Oi Group's *center of main interests* is admittedly (including by a final and unappealable decision) in Rio de Janeiro, the *Chapter 11* cannot be recognized by the Brazilian jurisdiction given that the Oi Group's stated objective is precisely to affect non-bankruptcy credits and circumvent the prohibition on a new restructuring request in a period of less than five years; -------------------------------------

• <u>Risk of Conflicting Decisions</u>: The coexistence of two main insolvency proceedings is an unprecedented measure in





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 325

Brazil. Court-Supervised Reorganization and a so-called *Chapter 11* not only protect the restructuring of certain credits, but also the rights, duties, limitations and prerogatives of debtors and creditors subject to them. The risk of these rules and consequent court decisions conflicting with each other is certain, as the New York court and Oi have already acknowledged. Such an undesirable measure, which can cause untold damage to various stakeholders, must be curbed and eliminated; and --

- <u>Maintenance requirement for *Chapter 15*</u>: The *Chapter 15* is and remains necessary for the purposes of implementing Court-Supervised Reorganization. The Court-Supervised Reorganization process and plan have not yet been implemented - on the contrary; the Oi Group recently submitted an amendment to the plan, in which, among other things, it intends to sell its main asset (UPI V.tal) and affect guarantees granted to relevant creditors with connections in the United States. The scenario of uncertainty is substantial and indisputable. It is likely that any decisions to be handed down by the reorganization court will have to be confirmed within the scope of *Chapter 15,* otherwise the reorganization court's jurisdiction will be depleted. The termination of that auxiliary procedure is therefore premature and inappropriate. -------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 326

16. As you can see, the Appealed Decision not only failed to exercise the indispensable control of legality over the intended *Chapter 11,* but also set a dangerous precedent legitimizing a flagrantly illegal expedient, incompatible with Brazilian public order and corrosive of the authority of this Court. It is in this context that we must move on, in the next chapter, to reconstitute the main relevant procedural acts, without which we cannot understand the extent of the litigation and the real contours of the maneuver attempted by Oi, whose unprecedented nature in itself already denounces its legal impropriety. -----------

III. **NECESSARY INITIAL OBSERVATIONS** ------------------------

17. **Current Situation of the Appellees.** For almost 10 (ten) uninterrupted years, the Defendants have been using the restructuring processes provided for in the LFR to maintain their activities. Currently, in the Court-Supervised Reorganization of origin (the second requested by the Oi Group), the default of the Court-Supervised Reorganization plan proposed by the Oi Group ("Plan") has become public, as reported by the I. ----------------------
Court Administrators[6] in the Monthly Activity Report for June 2025. ------------------------------------------------

18. **Request for Amendment to the Plan and First Decision.** In this scenario, on July 1, 2025, the Appellees submitted an amendment to the Plan within the scope of the Court-Supervised Reorganization ("Amendment to the Plan"), for





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 327

deliberation by the creditors at a general meeting of creditors. On **7.9.2025**, before deciding on the processing of the Amendment to the Plan, the D. The reorganization court ordered *"the prior pronouncement - albeit brief - of the Federal Prosecutor's Office, the joint Judicial Administration and also the Judicial Observer, already appointed, regarding the amendment to the PRJ (Court-Supervised Reorganization Plan) presented, and the documents that instruct it",* in addition to the summons of ANATEL and CADE ("<u>First Decision</u>" - **doc. no. 9**). ----------
19. **Closing request for** *Chapter 15.* On July 7, 2025, the Appellees informed the Reorganization Court of the Request for Closure of Chapter 15, with the intention of filing Chapter 11, which would be justified for two reasons: *(i)* Brazilian law does not allow them to file a new Court-Supervised Reorganization until **5.28.2029**; and *(ii)* the intention to novate credits which, by virtue of article 49, *caput* and §3° of the LFR, are not subject to Court-Supervised Reorganization. -------------------------------
20. In the brief presented before the New York Court for the closing of *Chapter 15,* the representatives of the Oi Group pointed out, based on statements made by Mr. Marcelo Milliet, Oi's current CEO, said that if Oi filed a Chapter 11 lawsuit, it would have the support of the reorganization court and the Rio de Janeiro Court of





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 328

Justice, although there had been no brief or decision to that effect. ------------------------------------------------
21. **Second Decision - Letter to the New York Court.** On July 18, 2025, the Bankruptcy Court issued a decision, inter alia, (i) suspending the payment of bonuses to the administrators of the Respondents, given that, according to the understanding expressed in the decision, the recent increase in the remuneration of the Respondents' management would be inappropriate and inadequate; (ii) ordered the Watchdog to submit a report on the recent activities of the Appellants, including any depletion of assets; and (iii) ordered the issuance of a letter to the New York Court, informing it that "a Court-Supervised Reorganization proceeding, in which the Reorganizing Party has failed to fulfill its obligations assumed in June 2025, without justification, to date, is pending before this 7th Business Court of Rio de Janeiro, RJ " ("Second Decision" - doc. no. 10). ---------------------------------
22. **First interlocutory appeal.** On **7.23.2025,** the Appellant filed an interlocutory appeal against the First Decision and the Second Decision, in view of the fact that such decisions would have failed to (i) exercise legality control over the filing of a possible *Chapter 11* in the United States of America; and (ii) order the subpoena of the Brazilian Securities and Exchange Commission ("CVM") and the Federal Court of Auditors ("TCU") with whom Oi





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 329

entered into an agreement to migrate the service provision regime - from a concession under the public regime to an authorization under the private regime ("<u>First Interlocutory Appeal</u>"). ----------------------------------

23. **Suspensive effect.** On **7.25.2025**, Your Honor granted suspensive effect to the First Interlocutory Appeal. granted suspensive effect to the First Interlocutory Appeal, determining, among other points, the complementation of the communication to the New York Court, so that *"before making any decision in the process related to Chapter 15 of the Oi Group, await the decision of the Brazilian Court both in relation to the verification and consequences of non-compliance with the JRP, already reported, and the request for an Amendment to the JRP of the main proceeding in Brazil'* ("<u>Decision of Suspensive Effect</u>" - **doc. n° 11**). ------------------------

24. **Brief of the Appellant.** On **7.30.2025**, in the face of the Oi Group's allegations within the scope of *Chapter 15* that a decision by the Court-Supervised Reorganization Court regarding the Amendment to the Plan was imminent – while, in reality, there were several deadlines in progress for third parties to comment on the matter ---, the Appellant filed a statement in the Court-Supervised Reorganization, requesting the Court-Supervised Reorganization Court to clarify the procedural stages of the Court-Supervised Reorganization clarify the procedural





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 330

stages of the Court-Supervised Reorganization and supplement this information to the New York Court, in order to demonstrate that a decision on the Amendment to the Plan required the completion of procedural stages that were still open. ------------------------------------------

25. **The Appealed Decision.** On **8.4.2025**, the reorganization court handed down the Appealed Decision, which, among other determinations, declared the impossibility of prohibiting the Oi Group from filing *Chapter 11.* In so deciding, *d.m.v,* the reorganization court rejected V.tal's request to analyze the legality of the potential filing of a *Chapter 11* by the Oi Group and, consequently, failed to adopt the measures necessary to preserve, in Brazil, the rights and remedies of those creditors that Oi intends to subject to the foreign procedure, but which, by virtue of the provisions of the LFR, could not be affected in Brazil. It is against this decision that V.tal now appeals. --------------------------------------------------

**IV. REASONS FOR CANCELLING THE APPEALED DECISION ----------**

*(a)* *Violation of Public Order - Chapter 11 Request that* *Cannot Be Recognized in Brazil* ----------------------------

26. The LFR <u>is not</u> designed to be a legal instrument for eternal and continuous restructuring. On the contrary: the LFR provides for **(i)** a period of up to two (2) years for the debtor to remain in Court-Supervised Reorganization as of the approval of the Court-Supervised Reorganization





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 331

plan (article 61 of the LFR)[7] and **(ii)** a five (5) year grace period as of the approval of the Court-Supervised Reorganization plan to request the processing of a new Court-Supervised Reorganization (article 48, II, of the LFR).[8] To allow the Oi Group to use *Chapter 11* to circumvent this prohibition would be, in simple and direct terms, to legitimize fraud under the guise of *procedural internationalization.* -------------------------------------

27. As recognized in the Appealed Decision, it is not disputed that Brazilian companies may, in certain circumstances, avail themselves of restructuring mechanisms abroad, including the filing of a *Chapter 11.* This is the specific case of Brazilian airlines that have successfully restructured by filing Chapter 11 proceedings. In these cases, however, there was <u>not</u> a main Court-Supervised Reorganization proceeding concurrently underway in Brazil - here, what is intended is unprecedented: the duplication of main proceedings, national and foreign, something that is not admitted by the Brazilian legal system. -------------------------------

28. In this sense, Professor Daniel Carnio Costa, in an opinion prepared in light of the factual elements of this case (**doc. n° 12**), concluded that "*the circumstances of the specific case indicate (...) that <u>a decision granting the Oi Group Court-Supervised Reorganization in the USA could not be recognized in Brazil, as it represents a</u>*





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 332

*manifest violation of national public order,* even using the most rigorous standard of analysis imposed on the transnational insolvency system" (emphasis added). In other words, even if subjected to the strictest technical scrutiny, Oi's *Chapter 11* does not pass through the sieve of Brazilian legality. ------------------------------------

29. Allowing the Oi Group to file *Chapter 11* in the United States of America would consummate a true <u>inversion of incentives provided for in the LFR</u>, with the potential to affect the entire insolvency practice in Brazil. Although this is an incontrovertible fact because it has been publicly assumed by both Oi's CEO and its legal advisors, V.tal considers it pertinent to provide some clarifications that support this statement. We would be faced with a precedent that, as well as being reckless, would undermine the logic of Brazilian court proceedings by rewarding the persistent debtor and punishing diligent creditors. -------------------------------------------------

30. Investors who finance debtors in Court-Supervised Reorganization in Brazil rely on the applicable provisions of the LFR when assessing risks and pricing of financing. Among these provisions are **(i)** the impossibility of restructuring debts secured by fiduciary alienation in Court-Supervised Reorganization proceedings (article 49, paragraph 3, LFR); and **(ii)** the impossibility of the debtor filing a future Court-Supervised Reorganization





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 333

within a minimum period of 5 (five) years from the decision granting its current Court-Supervised Reorganization (article 48, II, LFR). --------------------
31. The predictability of these legal frameworks is not a technical detail: it is the anchor of the entire credit system. Breaking with it is tantamount to setting the ship adrift. The entire logic of corporate financing in Brazil rests on the certainty that legal guarantees and prohibitions will not be relaxed at the convenience of the debtor. And it was precisely this confidence in the protection of credit rights that led V. tal (through its affiliated company) to disburse the equivalent of **US$ 150 million** in DIP Financing to Oi. --------------------------
32. When making the investment, V.tal had the legitimate expectation, based on statements by Oi itself and pronouncements by the Judiciary, that the LFR would be the legislation that would exclusively govern Oi's main lawsuit. Therefore, V.tal believed that the Court-Supervised Reorganization Court would be the only one competent to process the reorganization of the Oi Group and, therefore, that **(i)** the fiduciary guarantees linked to the DIP Financing (*e.g.,* the encumbrances on the shares issued by V.tal) could be exercised in any scenario, in accordance with the governing national law and the guarantee instrument; and **(ii)** Oi could not file a new Court-Supervised Reorganization within the period of 5





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 334

(five) years from the approval of the Plan – so that the Oi Group would necessarily have to fully comply with the DIP Financing before such period, since it expires in 2027, that is, within such quarantine. --------------------

33. With all due respect, if the Brazilian courts authorize the Oi Group, after having benefited from investments and protections made possible and conferred on it by the Court-Supervised Reorganization, in the form of national legislation, as authorized by the Brazilian creditors and the Judiciary, to file a *Chapter 11* in parallel with the Court-Supervised Reorganization in Brazil to restructure extrajudicial obligations in the US jurisdiction, would be <u>altering the logic and incentives conferred by the national legal system</u>, so that investors who finance companies in Court-Supervised Reorganization would include elements in their risk analysis. ------------

34. This means that, in all likelihood, the interest rates associated with financing for the benefit of debtors in Court-Supervised Reorganization would be increased, which would make access to credit for companies in Court-Supervised Reorganization even more scarce and costly. ----

35. The negative impacts on the sector resulting from this precedent will even be feared, were addressed by the Brazilian Association of Special Situation Litigation Finance in its petition for an *Amicus Brief* submitted in





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 335

the context of *Chapter 15* (**doc. no. 13**). According to the Association: ---------------------------------------------

Oi's intention to restructure its liabilities before this Court, while its second Court-Supervised Reorganization is pending before the Brazilian judiciary, **constitutes an attempt to circumvent Brazilian law,** which prevents it from taking such measures in that jurisdiction. The reorganization plan in the case in question - Oi's second Court-Supervised Reorganization - was confirmed on May 28, 2024, which means that, according to Brazilian law, the filing of another Court-Supervised Reorganization request - the third of its kind - would only be possible as of May 28, 2029. **Allowing Oi to file requests to restructure its non-bankruptcy liabilities in another jurisdiction within the legal prohibition period would therefore amount to a violation of Brazilian law**. ------------------------------

**If this precedent is established, it will have serious implications for the Brazilian DIP financing market**, which is still new and underdeveloped compared to that of the United States, in view of the recent change in Brazilian insolvency law that gives creditors the guarantees they need to offer DIP financing. If Oi's plan is allowed to go ahead, the legal certainty that a DIP loan cannot be restructured within five years, according to Brazilian insolvency law, would no longer exist. **Some lenders may pull out of the market completely, while others may only**





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 336

**offer credit to insolvent companies on much less favorable terms. While such uncertainty will undoubtedly affect the specific DIP financing sector that the Association represents, the most significant impacts would be felt not only by creditors, but also by future Brazilian debtors**. Law No. 14.112/20 facilitated the DIP financing market, generating important positive impacts for borrowers throughout Brazil, and resolved historical issues that limited access to capital for decades before its approval. Before this law, DIP financing was rarely available to Brazilian debtors because there was no legal mechanism to guarantee that the debt could not be restructured, or to offer additional protections to this debt. If Oi is allowed to come to the United States to do what it could not do in Brazil, this risks reverting to the regime prior to Law No. 14,112/20, when debtors suffered from the inability to secure the necessary financing on acceptable terms. ------------------------------------------------------

For these reasons, the Association pronounces in this proceeding to express its concern about the effects that granting Oi's request would have on the institutional structure of the Brazilian insolvency system and, consequently, on the country's business environment (free translation; emphasis added - **doc. n° 13**). ----------------

36. But that's not all. The deleterious effects of this strategy for the market as a whole were also recognized by





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 337

the Oi Group's advisors at the hearing in the context of *Chapter 15,* according to whom the Brazilian market *would have to adapt* to this new reality: ------------------------ P: You know - you're not sure how, sir. Padis, but you recognize, don't you, that if Oi successfully restructures the debtor-in-possession financing in the US Bankruptcy Court, this could affect the DIP financing market in Brazil, isn't it, sir? R: <u>I think the market will have to adapt</u>. ----------------------------------------------------- P: The market can adapt, but it can certainly have an impact, right? R: That's fair to say. --------------------- P: And just to be clear, Mr. Padis, you don't know once that a US Bankruptcy Court restructured the financing of the Brazilian DIP at least within five years of a confirmed RJ plan, correct? R: I don't know. That's right. (free translation – **doc. no. 14**)[9] ------------------------ 37. The statement is astonishing. It is an admission that they intend to submit the entire Brazilian competition system - carefully constructed by the legislature, the courts and economic agents - to a legal experiment of convenience. It's saying, loud and clear, that Brazilian law can be trampled underfoot and that creditors, investors and workers will simply have to resign themselves to chaos. -------------------------------------- 38. Under the cloak of international restructuring, what is hidden is a crystal-clear message: Oi intends to





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 338

rewrite the rules of the game and, as a result, all the other players - including this Court - "*will have to adapt1'*. Institutional blackmail dressed up as a legal strategy. --------------------------------------------------

39. Oi's negligence, however, is not limited to the credit market and the lenders who, assuming a controlled risk (based on the LFR analysis), granted Oi a DIP. It goes further and affects all of Oi's other non-bankruptcy creditors, whose claims are to be restructured in the United States. --------------------------------------------

40. Like the financiers of the DIP, the various creditors who approved the Plan and who maintain commercial relations with Oi whose triggering event is subsequent to the filing of the Court-Supervised Reorganization, took this measure in support of the Plan trusting that their non-bankruptcy claims would not be restructured by a judicial restructuring process in at least the next five (5) years from the date the Plan was ratified. ------------

41. In other words, when making the decision to approve the Court-Supervised Reorganization plan, the creditors who have successive commercial relationships with the debtor in Court-Supervised Reorganization take into account the terms of payment of their claims in conjunction with the expectations of payment for supplies in future years, which will be made possible with the approval of the plan and the recovery of the debtor. ------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 339

42. This is the case, for example, with Oi Group's partner supplier creditors, who accepted the restructuring of their tender credits under the terms of clause 4.2.6 et seq. of the Plan, confident that the supplies contracted after the request for Court-Supervised Reorganization would not be impacted by a future restructuring process - or, at least, for the next 5 (five) years. If such creditors were to learn that their non-bankruptcy claims would be subject to restructuring in a future *Chapter 11,* it is reasonable to assume that their vote in support of the Plan could be different from that computed in April 2024. ------------------------------------------------------

43. Court-Supervised Reorganization is, first and foremost, a pact of trust between the debtor, creditors and the judiciary. When the debtor, after obtaining the approval of his plan and reaping the legal and economic benefits arising from it, tries to subvert this pact by filing a *Chapter 11,* what is broken is not only the expectation of the creditors, but the very credibility of the Brazilian competition process. Without trust, there is no possible negotiation; without predictability, there is no credit; and without credit, there is no sustainable restructuring. ---------------------------------------------

44. In this regard, it should be noted that, during the hearings within the scope of *Chapter 15,* the Oi Group's intention to restructure debts contracted by Oi with





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 340

partner suppliers, after the beginning of the Court-Supervised Reorganization, became public. This is the case, for example, with the companies that own transmission towers and satellites - which underpin Oi's obligations in the agreement signed with the TCU (Federal Court of Accounts): ---------------------------------------

P. The *"high line" creditors,* those are also tower creditors, correct? ---------------------------------------

R. Correct. -------------------------------------------------

P. And under RJ, there are 712 million reais of credits *"high line"* that cannot be restructured by RJ, right? -----

R. Right. ---------------------------------------------------

P. And Oi believes that these credits can be restructured by a Court-Supervised Reorganization process in the form of *Chapter 11* in column two, correct? ---------------------

R. Correct. -------------------------------------------------

P. Another category of credits that Oi believes cannot be restructured in RJ are post-recovery suppliers, correct? --

R. Correct. -------------------------------------------------

P. And Oi believes that at least part of them can be restructured through the Court-Supervised Reorganization process in the form of *Chapter 11* in the second column, correct? ---------------------------------------------------

R. Correct. (free translation - **doc. no. 15**) --------------

45. The measure sought by Oi, as highlighted in the opinion prepared by Professor Daniel Carnio Costa,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 341

*"reveals the Oi Group's unequivocal intention to* dribble a structural limitation of the Brazilian insolvency system*: the filing of the third Court-Supervised Reorganization without the five-year period having elapsed since the second reorganization was granted and without the case having been closed,"* so that *"this* pretension of Oi could not be recognized and applied by the Brazilian court as it constitutes a clear and manifest violation of Brazilian public order, *since, in practice, it seeks to file a third request for Court-Supervised Reorganization before the legal deadline of five years, by means of an international strategy that circumvents an essential procedural rule"* (**doc. no. 12** - emphasis added). --------------------------

***(b) Transnational Insolvency Rules Prohibiting the Restructuring of Credits Not Affected by Court-Supervised Reorganization in Brazil*** --------------------------------

46. **Model Law.** Since 2021, Brazil has adopted the rules inspired by the UNCITRAL Model Law on Transnational Insolvency under the LFR (articles 167-A et seq.). In this context, the Brazilian legislator chose to provide clear rules regarding foreign insolvency proceedings that may be filed by a debtor in Court-Supervised Reorganization, as is the case with Oi through the potential filing of *Chapter 11* in the United States of America. ---------------

47. **Relevant Classifications.** To this end, the LFR establishes the following classifications relevant to the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

analysis of this case: (i) <u>foreign proceedings</u> [article. 167b, item I] - any judicial or administrative proceedings, of a collective nature, including those of a precautionary nature, opened in another country in accordance with provisions relating to insolvency in force therein, in which the assets and activities of a debtor are subject to a foreign authority, for the purposes of reorganization or liquidation; (ii) <u>main foreign proceedings</u> [article. 167-B, item II] - any foreign proceeding opened in the country where the debtor has the center of its main interests; and (iii) <u>non-main foreign proceeding</u> [article. 167b(III)] - any foreign proceeding other than a foreign main proceeding opened in a country in which the debtor has an establishment or assets. -------

48. In other words, Oi can only have a foreign main proceeding recognized in Brazil if Oi's center of main interest is located in such foreign jurisdiction. On this subject, specialized doctrine establishes objective criteria for defining the center of main interest: --------

"The main thing is the foreign proceeding that takes place in the center of the debtor's main interests, which is presumed to be its administrative headquarters or the domicile of the individual entrepreneur at the time of the foreign proceeding, unless that headquarters has been transferred or manipulated to alter the jurisdiction. In this regard, **the country where the debtor's interests are**





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 343

**administered and which would be readily recognized by the group of creditors**, regardless of its registered office, at the time of the commencement of the foreign proceedings, must be verified." (SACRAMONE, Marcelo Barbosa. Comentários à Lei de Recuperação de Empresas e Falência. 2. ed. São Paulo: Saraiva Educação, 2021. p. 640-641- emphasis added) ---------------------------------

49. **Eventual *Chapter 11* - Non-mainstream Foreign Proceedings**. In this case, since it is clear that Oi does not have its center of main interest in the United States of America, notably because it opted <u>twice</u> to file for Court-Supervised Reorganization in Brazil. As expressly recognized by Oi in the context of the petitions for filing and closing of *Chapter 15*[10], as well as in the hearings in the context of *Chapter 15*, its main center of interest is in Brazil, since all its operations and source of revenue are located in Brazilian territory[11]. -----------

50. **Center of Main Interests in Brazil since the First RJ (Court-Supervised Reorganization)**. In addition, as part of the First RJ, the Oi Group also revealed that its main center of interest was in Brazil. During that process, Oi Coop and PTIF had their *suspension of payments* processed, while the First RJ was ongoing in Brazil. In view of the parallelism between the Dutch and Brazilian processes, the D. Judgment of Reorganization stated that there was "*a need for the adoption of effective measures by this*





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 344

*reorganization court, with a view to protecting the UNIVERSALITY OF CREDITORS INVOLVED"* and *"that it is the responsibility of the Court-Supervised Reorganization court to decide on all matters involving the assets of companies in Court-Supervised Reorganization, even if they are not directed towards the payment of creditors"* (**doc. n° 16**). ---------------------------------------------------

51. Therefore, at the time Coop and PTIF were declared bankrupt by the Amsterdam Court of Appeal, the D. Reorganization Court declared that *"the Brazilian jurisdiction and competence of this Court for the Court-Supervised Reorganization of the companies of the OI Group remain unshaken,"* as well as determining the prevalence of the First RJ over the Dutch bankruptcy procedure, imposing a fine on the Dutch judicial administrators if they carry out measures against the determination of this Court (**doc. No. 17**). -------------------------------------------------

52. In this sense - and similarly to what was adopted in the First RJ - any *Chapter 11* filed in the United States of America would be classified as a non-main foreign proceeding of the Oi Group, under the terms of the LFR (article 167-B, III of the LFR), preserving the status of the Court-Supervised Reorganization as the main restructuring proceeding of the Oi Group. -----------------

53. **Concomitant Processes.** In the event that a debtor decides to file a foreign proceeding concurrently with a





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 345

Court-Supervised Reorganization proceeding in Brazil, the LFR establishes that the judge must seek cooperation and coordination between these proceedings. Specifically, the LFR establishes that "if the proceedings in Brazil are already underway when the request for recognition of the foreign proceedings has been filed, any measure of assistance determined by the judge under the terms of arts. 167-L[12] or 167-N[13] of the LFR must be compatible with the Brazilian proceedings, and the provisions of Article 167-M of this Law shall not apply if the foreign proceedings are recognized as the main proceedings" (Article 167-S, I of the LFR). ----------------------------

54. In view of this, should Grupo Oi eventually file a *Chapter 11* lawsuit in the United States of America and seek its recognition in Brazil, it is known that: (i) the *Chapter 11* cannot be recognized as a foreign main proceeding, given that Oi filed for Court-Supervised Reorganization in Brazil and, therefore, assumed that its center of main interest of the Oi Group is not in the United States of America; and (ii) any cooperation measure to be adopted by the Court of Reorganization must be compatible with the Court-Supervised Reorganization. Notably, given that *Chapter 11* would not be the Oi Group's main foreign proceeding, the provisions of article 167-M of the LFR will apply, in view of the provisions at the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 346

end of article 167-S, I of the LFR (copied immediately above). ---------------------------------------------------

55. In turn, article 167, M, paragraph 3 of the LFR states that "the measures provided for in this article [(*i.e.,* suspension of constrictive acts against the debtor)] **do not affect** the **creditors who are not subject** to Court-Supervised Reorganization proceedings (...)." In other words, in the event that the Oi Group files *Chapter 11,* the resulting effects on credits not subject to Court-Supervised Reorganization cannot be recognized and applied by the Brazilian jurisdiction. ----------------------------

56. In view of the above - and by means of a simple interpretative exercise of the express provisions contained in the LFR and the history of this Court-Supervised Reorganization - the following main conclusions are reached: ----------------------------------------------

• Any request for *Chapter 11* by the Oi Group in the United States of America would be classified in Brazil as a non main foreign proceeding (article 167-B, II of the LFR), given that the Oi Group's center of main interest is not in the United States of America, as already recognized in the context of the Oi Group's successive requests for Court-Supervised Reorganization in Brazil, in the petitions presented in *Chapter 15* and in the hearings in the context of *Chapter 15;* --------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 347

• Considering that any *Chapter 11* of the Oi Group would be a foreign proceeding <u>not</u> the main one, by recognizing the measures adopted in *Chapter 11* in Brazilian territory, the D. Reorganization Court should cooperate with the New York Court, provided that such cooperation and assistance are compatible with the provisions of the LFR, given that the *Chapter 11* would be filed while the Court-Supervised Reorganization was in progress (article 167-S, I of the LFR); and --------------------------------------------------

• The effects of a *Chapter 11* on credits not subject to Court-Supervised Reorganization in Brazil <u>would not be recognizable</u> and enforceable in Brazil (article 167-S, I, final part and article 167-M, § 3, LFR). ------------------

57. **Preservation of the Appellant's Extrajudicial Obligations.** Therefore, it can be concluded that if Oi were to file the *Chapter 11* - which is admissible only for argumentative purposes - the restructuring of the Oi Group's non-bankruptcy obligations would not be able to be recognized and enforced in Brazil. ------------------------

58. What the Oi Group intends to do through *Chapter 11* is precisely to restructure credits that would not be subject to Court-Supervised Reorganization in Brazil. And such credits cannot be restructured in Brazil *inter alia* because the LFR establishes a five (5) year quarantine for a new Court-Supervised Reorganization petition to be filed (article 48, II, LFR). Therefore, the Oi Group's alleged





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 348

and presumed attempt to seek recognition of the effects of such *Chapter 11* is, by definition, a stillborn initiative.

59. **Impact on Bankruptcy Claims.** As if the manifestly illegal intention to restructure credits that would not be subject to Court-Supervised Reorganization were not enough, the statements made by Mr. Marcelo Milliet at the *Chapter 15 Hearing,* hints that the Oi Group's strategy is not restricted to this objective. When asked about the extent of the intended restructuring, Mr. Marcelo Milliet admitted that *Chapter 11* would have a direct impact on credits that are already being restructured in Brazil under Court-Supervised Reorganization. --------------------

60. Grupo Oi recognizes, therefore, that *Chapter 11* may also interfere in the sphere of concurrent credits that are under the tutelage of the Judge of the Reorganization and of this Court and should remain exclusively subject to Brazilian jurisdiction. ----------------------------------

P. Mr. Milliet, do you agree that a request for Court-Supervised Reorganization as per the filing of *Chapter 11* would have a direct impact on the credits being restructured in Brazil, correct? --------------------------

R. Credits that could not be restructured in Brazil. ------

P. It would also have an impact on the credits that are being restructured at RJ, correct? -----------------------

R. Through negotiations, yes. Okay. But our aim here is to recover credits that cannot be recovered in Brazil. -------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 349

P. Mr. Milliet, I would ask you to turn to page 44 of the transcript of your deposition, please. --------------------

R. The first volume? ---------------------------------------

P. Yes. Let me know when you find it. Starting on Line 19, I asked: could the filing of Chapter 11 have a direct impact on the credits being recovered in the JR? ----------

R. I agreed that it has an impact. Okay. But the impact isn't just negative, it's positive too. Did I read that correctly? -------------------------------------------------

R. Yes. Yes. (free translation - **doc. no. 15**) -------------

61. **New Priority Debts - Subordination of Tender Credits.** The same deposition reveals that the Oi Group is seeking to obtain financing in the form of *debtor-in-possession,* within the scope of *Chapter 11,* which would have priority over both non-bankruptcy credits held against the Oi Group and the tender credits that are already being restructured in the Court-Supervised Reorganization. -------------------

62. The Oi Group therefore admits that it intends to use a foreign process to change the order of payments and priority of cash distribution established in the Court-Supervised Reorganization, in the Plan already ratified by the Brazilian jurisdiction. Such recognition is particularly serious, as it means imposing, through a foreign non-main proceeding, yet another loss to the bankruptcy creditors of the Court-Supervised





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 350

Reorganization, who may not even be able to be heard and defend themselves before the US courts. --------------------

P. And with regard to the request for Court-Supervised Reorganization pursuant to the filing of *Chapter 11,* you are seeking DIP financing pursuant to *Chapter 11,* correct?

R. Correct. -------------------------------------------------

P. And any DIP financing pursuant to the filing of *Chapter 11* would be prioritized over the credits currently being restructured in Brazil, correct? --------------------------

R. Probably, yes. -----------------------------------------

P. And any DIP financing pursuant to the filing of *Chapter 11* would also be prioritized over credits that cannot be restructured in Brazil, correct? --------------------------

R. Correct. (free translation - **doc. no. 15**) --------------

63. In short, what the Oi Group is trying to do through *Chapter 11* is to subvert the Brazilian public order from the outside in: to restructure credits that national law expressly excludes from reorganization, to create new priority debts that run over concurrent creditors and to rewrite the cascade of payments already approved by the Brazilian judiciary. ---------------------------------------

*(c) Risk of Conflicting Decisions - Legal Uncertainty Also Recognized by the New York Court* --------------------------

64. If the Oi Group were to file a *Chapter 11,* the reorganization court and this Court would face an unprecedented situation in the national insolvency regime,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 351

in which the same debtor proposes a Court-Supervised Reorganization and a *Chapter 11* at the same time. This is a scenario that is not permitted under Brazilian law and which, if tolerated, would pave the way for an unprecedented degree of institutional disorganization. ----

65. In this regard, in the context of the *Chapter 15* Hearing, the New York Court has already indicated that there are a number of doubts as to how the processing of a *Chapter 11* in the United States of America could even be carried out in Brazil, given the problems of recognizing the decisions handed down in *Chapter 11* in Brazilian territory: -------------------------------------------------

THE COURT: They [the Brazilian court] are aware of this, but I don't think you'll get an order saying so: "Okay, have fun. Go to New York and file the Chapter 11 case." I don't think you'll ever receive a request like that. ------

WITNESS: We - -------------------------------------------

THE COURT: **I'd be shocked**. I mean, I'm waiting to see what the Brazilian courts say. But it's more a concern about what it could be. But I don't think you'll ever get a clear direction. **I would be shocked if the court said that this works well**. (...) And I can't - I just - there are too many factors to consider, so that's why I'm asking the question. Because, obviously, I don't think you know any more than I do about what would happen. -------------------

WITNESS: That's fair enough. -----------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 352

THE COURT: (...) **but I'm going to say that I don't think any of us know how it would end that way. I don't**. (...) (emphasis added; **doc. no. 15**) -----------------------------

66. This external recognition, therefore, is not the result of an isolated mistrust: it is the American justice system itself that admits that Oi's attempt would be a leap in the dark, a shaky ground on which no one - not even the foreign court - knows how to tread. In fact, the New York court even recognized that the correlation between an alleged *Chapter 11* and the Court-Supervised Reorganization would be a veritable "no man's land": ------

THE COURT: I think you're really - The circumstance would be interesting, that's all I'm saying, for sure. **Because all our guidelines wouldn't necessarily apply and we'd almost be going back to what we had to do before we had them.** That's how I see it. Because I'm not going to have - you're not going to have the provisions of the Model Law that allow the interface between the two courts, the JIN guidelines are really mainly focused on 15. I'm not sure that they couldn't be used for something else, but - and I say this as the JIN representative for our district. **But I... You know, you're in a no-man's land, I guess, in a way.** (**doc. no. 14** - highlights added) ---------------------

67. It is symptomatic that the foreign court itself, which would be the forum for the maneuver, describes it as a "no man's land". There is no more precise definition of the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 353

legal chaos that Oi intends to create. And, in fact, there are several potentially controversial points that will arise in the concomitant coexistence of two main restructuring processes, including the issuance of orders by the foreign jurisdiction that potentially conflict with the decisions of the reorganization court and of this Court. In this sense: ------------------------------------
• During the Court-Supervised Reorganization, the Oi Group may not **dispose of or encumber assets of its fixed assets** except as authorized by the Court-Supervised Reorganization Court or provided for in the Plan (article 66, LFR).[14] In the event that *Chapter 11* involves the disposal or encumbrance of assets from the Oi Group's non-current assets (either to the extent authorized by the foreign court, or because provided for in the respective reorganization plan), this measure will potentially be incompatible with the existing restriction under the LFR; -
• Likewise, a **post-bankruptcy financing** only benefits from the protections contained in the LFR and can only count on real or fiduciary guarantees if approved by the Court-Supervised Reorganization Court (or if provided for in the subsequently approved Plan - article 69-A et seq, LFR). In the event that Oi Group seeks to obtain post-bankruptcy financing with guarantees under the *Chapter* and such an arrangement is authorized by the foreign jurisdiction, the implementation of such financing would not be reconcilable





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 354

with the rules of the LFR, mainly because such financing could not override the DIP financing already taken in accordance with the provision of the PRJ, nor could it take advantage of guarantees that have already been granted to other creditors in Brazil - as the Oi Group has already announced that it intends to do; and --------------

• The LFR establishes that the Court-Supervised Reorganization Court must, during the course of the Court-Supervised Reorganization, determine the **removal of the Oi Group's management** if certain hypotheses are verified (article 64 et seq., LFR). The Oi Group's management, of course, will be the same as that which will propose the eventual *Chapter 11* and, consequently, will be supervised and supervised according to the rules of that procedure, which adopts the system of *Debtor in Possession* (i.e. the debtor remains in charge of the business). Should the reorganization court order the removal of the Oi Group's management, such a measure would be incompatible with *Chapter 11* (or even should the foreign court order the maintenance of the Oi Group's management). In other words, these determinations will be conflicting and potentially irreconcilable. -------------------------------------------

• The Oi Group's Court-Supervised Reorganization plans, approved and ratified by the Reorganization Court, provide for and regulate various contracts entered into in the context of judicial reorganizations (*e.g.,* loan contracts,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 355

use of copper infrastructure, among others). If the foreign court, in the context of any *Chapter 11,* were to authorize the rejection of such contracts, the measure would constitute a direct affront to the Brazilian judicial decisions that (directly or indirectly) homologated and attributed validity and effectiveness to such contractual obligations. This situation would generate, in practice, a rescission effect on contracts and obligations already consolidated by final and unappealable decisions in Brazil, in clear violation of the jurisdiction of the reorganization court and in total incompatibility with the LFR. -----------------------------
68. In fact, it is uncertain how the two main restructuring procedures would be reconciled. At no time did Oi itself provide any clarification in this regard to the Court-Supervised Reorganization, restricting itself to superficially inform that it would be evaluating the possibility of submitting a request for the establishment of *Chapter 11.* Oi's eloquent silence is revealing: those who have a legitimate strategy explain, those who plot maneuvers hide. In the same vein, in the context of the *Chapter 15 Hearing,* the Oi Group's own representatives and the New York Court made it clear that, at the moment, the conciliation of both cases is limited to exercises in **futurology**: ---------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 356

THE COURT: (...) All right, so I'm going to ask you my last question here, (...) do you envisage that the company might need any action from the Brazilian courts if it were to go ahead and file a lawsuit, except with regard to the amendment of the plan? ------------------------------------

The reason I'm asking you this question is that you were talking about a sales process. This is not just an amendment to the plan. The plan provides for that, I understand. But I wasn't sure if there was anything else you could expect, since you were involved in discussions about a Chapter 11 case where someone would need to go back to court for some of the reasons I just expressed some concerns about. ----------------------------------------

WITNESS: Not related to the RJ amendment, Your Honor? -----

THE COURT: Yes, not related. ------------------------------

WITNESS: At this point, as you rightly said, Your Honor, **it's a bit of futurology. I can't** - ----------------------

THE COURT: **Yes, it's all futurology. I agree with that. That's a good word for it** (free translation; emphasis added - **doc. n° 15**). ----------------------------------------

69. In the opinion of V.tal, to accept that the progress of the Oi Group's Court-Supervised Reorganization is subject to exercises of **futurology** due to the filing of *Chapter 11* - as proposed by the Oi Group's legal advisor - would be an endless lack of responsibility that could compromise the various *stakeholders* involved, including





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 357

workers and business partners with activities of public interest, such as V. tal.. It's turning judicial restructuring, which should be the *apex of predictability,* into a *casino of random results.* --------------------------

70. Among the unclear aspects, it is uncertain **(i)** to what extent a *Chapter 11* would potentially impact labor creditors, tax creditors and those owed to Brazilian regulatory authorities; and **(ii)** how Oi intends to give effect in Brazil to the decisions eventually handed down by the American courts in view of the existence and continuity of the Court-Supervised Reorganization, notably in light of articles 167-A et seq. of the LFR. ------------

71. Furthermore, in the (undesirable) scenario in which the Court-Supervised Reorganization is converted into bankruptcy due to the non-compliance with the Plan and the deterioration of the Oi Group's financial situation, already reported by the I. Judicial Administrators and the Watchdog, it would be up to the Court-Supervised Reorganization Court and this Egregious Court to give effectiveness to the rules of collection and disposal of assets in the scenario of liquidation of the Appellees. Simultaneously, however, the New York Court may also adopt (potentially conflicting) measures that will prevent the sale of Oi Group assets, in favor of the *Chapter 11.* ------

72. The establishment of the *Chapter 11,* therefore, would cause an inevitable conflict of rules, incompatibility of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA N° 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 358

procedures and substantial legal uncertainty for the restructuring of the Oi Group and for the entire Brazilian insolvency system. Such a measure, in addition to being irreconcilable with this Court-Supervised Reorganization and the possible consequences thereof, is not in the best interests of any party involved in the Court-Supervised Reorganization. There is no winner in this scenario: the creditor loses, the investor loses, the worker loses and the state loses. Only the debtor wins - and he wins because he cheated. --------------------------------------

73. In fact, a precedent like this would have the potential to shake up the entire Brazilian insolvency system, stripping away the protections afforded to creditors willing to offer financing and/or services in the course of Court-Supervised Reorganization proceedings and dramatically reducing the availability of resources for financing companies in crisis in Brazil. After all, it is uncertain whether any financier would be willing to make any disbursement to a debtor undergoing Court-Supervised Reorganization in Brazil in the knowledge that the guarantees and protections afforded by the LFR could later be stripped away by the initiation of foreign restructuring proceedings. --------------------------------

*(d) Necessary Maintenance of Chapter 15* -------------------

74. **Chapter 15.** Similar to Chapter VI-A of the LFR, *Chapter 15* is based on the UNCITRAL Model Law on





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 359

Transnational Insolvency and aims to implement foreign restructurings --- such as Court-Supervised Reorganization --- in the territory of the United States of America. In the case of the Defendants, the importance of *Chapter 15* derives especially from the Oi Group's debt issues traded on the US capital market (and governed by the laws of the state of New York) and the number of foreign creditors based in the United States of America. --------------------

75. **Benefits of *Chapter 15* for Oi.** For no other reason, Oi decided to file for *Chapter 15* in its two judicial recoveries over the last decade. By recognizing Court-Supervised Reorganization as a main foreign proceeding under *Chapter 15,* the following measures are made possible: --------------------------------------------------

• <u>Implementation of the Court-Supervised Reorganization</u>: the *Chapter 15* serves as a procedural tool for Oi (through its foreign representative) to implement the measures of the Court-Supervised Reorganization in the territory of the United States of America, with the support of the New York Court. In this regard, for example, the Plan establishes the issuance of new debts and contracts governed by the laws of the state of New York, such as the agreement between creditors ("<u>Agreement between Creditors or Intercreditor Agreement</u>" - **doc. No. 18),** which establishes the terms and conditions of the sharing of the guarantees provided for in the Plan between the non-





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 360

bankruptcy creditors (lenders of the DIP Financing) and the bankruptcy creditors (such as the Creditors of the Reinstated Non-bankruptcy ToP Debt - Option I and the holders of the Roll-Up Debt). -----------------------------

• Asset protection: *Chapter 15* promotes the suspension of acts of execution and constriction of Oi's assets in the United States of America, reflecting the terms of article 6 of the LFR in that jurisdiction. This measure is essential so that creditors with access to US justice are prevented from executing the Oi Group in the United States, promoting equal treatment between these creditors and creditors with limited access to Brazilian justice. ---

• Enforcement and Novation of Bankruptcy Claims: the *Chapter 15* also serves as a tool for implementing the Plan in the United States of America and the effects arising from such implementation, such as the *discharge* of claims held by creditors who did not approve the Plan. This measure prevents creditors who may not have approved the Plan from expressly contesting the restructuring promoted by the Court-Supervised Reorganization in the future, which brings stability to the process not only for Oi, but for the benefit of all investors and creditors who believed in the discharge of the credit of the collective of creditors promoted in the Court-Supervised Reorganization. -------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 361

76. **Importance of *Chapter 15* Reinforced with the Amendment to the Plan**. The importance of *Chapter 15* does not end with the supposed "substantial implementation" of the Plan, as alleged by the Appellees in the Request for Termination of *Chapter 15* (**doc. n° 8**). In fact, *Chapter 15* is even more relevant when the defendants intend to submit the Amendment to the Plan for deliberation by the creditors and, in this way, substantially alter the terms of its restructuring. -------------------------------------

77. In this regard, the Amendment to the Plan proposes that a substantial part of the Appellees' bankruptcy debts be paid by **12.31.2038**.[15] In this way, there is a long period of payment to creditors that may require restructuring measures whose implementation by the New York Court is necessary. ----------------------------------

78. In addition, the Amendment to the Plan provides that a large part of the bankruptcy debt will be paid through the proceeds from the sale of real estate.[16] However, the rules on the destination of the proceeds from the sale of real estate provided for in the Amendment to the Plan[17] <u>are different</u> from those established in the Intercreditor Agreement (governed by the laws of the state of New York):[18] -------------------------------------------------------



| Amendment to the Plan (clause 5.3.4) | Intercreditor Agreement[19] |
|---|---|
| "As a condition to the allocation of the Net Proceeds from the Sale of Properties in the payment order below, <u>the Company will endeavor to</u> amend, as applicable, the payment rules (waterfall) and related documents with the creditors holding the guarantees whose objects are | "With regard to the sum of Real Estate Resources in Ordinary Course that exceed R$ 400,000,000.00 at any time: (A) first, on a *pro rata* and *pari passu*, basis for the payment of all outstanding ToP Obligations, until all ToP Obligations have been fully |



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

| the Properties or receivables arising from the sale of the Properties:<br>(i) Net Revenue from the Sale of Real Estate limited to R$ 600,000,000.00. [...] will be used 100% (one hundred percent) by Oi for investments in its own activities or those of its Affiliates;<br>(ii) Net Revenue from the Sale of Real Estate above R$ 600,000,000.00, limited to R$ 1,600,000.00. [...] will be used to pay, pro rata to the respective Claims, the following Creditors:<br>(1.1) Creditors Suppliers Partners;<br>(1.2) ToP Debt with Reinstated Guarantee;<br>(1.3) Reinstated non-bankruptcy ToP debt - Option I;<br>(1.4) Reinstated non-bankruptcy ToP debt - Option II;<br>(1.5) Adhering Non-bankruptcy creditors. | paid;<br>(B) second, on a *pro rata* and *pari passu*, basis for the payment of all outstanding Permitted Liquidity Obligations, until all Permitted Liquidity Obligations have been paid in full;<br>(C) third, on a pro rata and pari passu basis, to each First Priority Representative, for application to the payment of all outstanding First Priority Obligations *[New Financing]*, until all First Priority Obligations have been paid in full;<br>(D) fourth, to the Trustee of the Roll-Up Notes, for application in payment of all outstanding Roll-Up Notes, until all Roll-Up Notes have been fully paid; and<br>(E) fifth, to the Company.<br>(free translation) |

------------------------------------------------------------

79. Thus, the Amendment to the Plan presupposes that the Intercreditor Agreement is added so that its rules become compatible with those provided for in the Amendment to the Plan, otherwise the Intercreditor Agreement will be breached and debts may fall due early. --------------------

66. Given that the Intercreditor Agreement is a post-bankaruptcy agreement entered into between Oi and bankruptcy and non-bankruptcy creditors - including (i) foreign lenders of the DIP Financing, (ii) holders of the Roll-Up Debt and (iii) Reinstated Non-bankruptcy ToP Debt Creditors - Option I, based in the United States of America -, Oi Group depends on the consent of creditors located in the United States of America for the amendment of a contract not subject to Court-Supervised Reorganization, in order to guarantee the feasibility of implementing the Amendment to the Plan. In this sense, the Oi Group itself proposes language in the Amendment to the Plan that the Creditors of the Reinstated Non-bankruptcy ToP Debt - Option I should commit to amending the Intercreditor Agreement.[20] --------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 363

80. Thus, the maintenance of *Chapter 15* to recognize the execution of the Amendment to the Plan in the territory of the United States of America is essential to (i) promote the <u>stability of the restructuring</u> of the Debtors for the coming years - the terms of which the Debtors have proposed to substantially alter --- and (ii) ensure the feasibility of implementing the Amendment to the Plan, in view of the fact that the Amendment to the Plan depends on the allocation of the rights of foreign creditors, based on a post-bankruptcy agreement governed by the laws of the State of New York. ----------------------------------------

81. **Recognition by the New York Court.** In this sense, the New York Court itself recognized that, in the current context of the Court-Supervised Reorganization, it is important that Oi remains with *Chapter 15* open and active in New York: ----------------------------------------------

THE COURT: (...) You have an ongoing RJ that will remain for a few more years, regardless of whether the company was in financial difficulty, the process would still be ongoing. You have an amendment pending before the Brazilian Court in relation to this, so it certainly doesn't seem that the [reasons for *Chapter 15*] have ceased to exist. ------------------------------------------------

(...) My job as an Ancillary Court is to be there to help the main process. (...) you know, that's why this is the ancillary process. (...) I would never want to be absent





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 364

if the Brazilian court felt it was necessary. That's for sure. And I think (...) that our Court would try to avoid this in any state, because we are the ancillary process here. The reason for this is that the Representative The foreigner thought it would help to come to the United States and get cooperation, but sometimes it's also because the main court would find it necessary according to the circumstances. -------------------------------------
(...) So the question is, you know, is there anything really pending that the [Brazilian] Court would say to us that we would like to be there? We wouldn't want to not be there for them. --------------------------------------------
(...) when I look at cooperation, I think we've already agreed on that. But does that mean there is no need for more cooperation? I think that's the question. And I think the only person who can answer me that in a non-biased way is probably the Court in Brazil (emphasis added; free translation - **doc. n° 14**). --------------------------------
82. Thus, the Appellant maintains, with all due respect, that the maintenance of *Chapter 15* before the New York Court is not a mere convenience, but a real condition of possibility for the Reorganization Court to fully exercise its jurisdiction. This is an extremely important measure to implement the necessary restructuring measures, provide stability to the process and ensure the effectiveness of





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 365

the Plan --- and the Amendment to the Plan, should it be processed and approved. ------------------------------------

*(e) Clumsy, Empty and Unsustainable Strategy* --------------

83. So far Grupo Oi has not been able to refute the allegations of illegality surrounding the filing of a *Chapter 11.* The Oi Group was also unable to clarify the uncertainties reiterated by the New York Court itself regarding the impossibility of the coexistence of *Chapter 11* and the Court-Supervised Reorganization. ---------------

84. What's more, the Oi Group has not even presented a study or analysis on the possible results of a *Chapter 11,* the recoverability of credits in such a context, the impacts on creditors or the guarantees to be offered. In reality, the presentation of an adventurous restructuring proposal unaccompanied by any serious and credible analysis of its financial viability seems to be the recurring conduct of this management, which was also identified by the reorganization court when analyzing the report that accompanied the Amendment: --------------------

"The data provided by the company also inferred weaknesses in the asset valuations it uses as a basis for estimating its ability to honor commitments, including those projected over time. In addition to the use of identical guarantees to secure multiple obligations. ----------------
There is, for example, no formal valuation of the huge asset that is the holdings of the Company under





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 366

Reorganization's 27.5% stake in VTal. Nor is there any certainty about judicial deposits to be used (not only in terms of their amounts, but also their very existence), or about claims arising from lawsuits or arbitration, the extent of which is unpredictable. ------------------------ Furthermore, **due to indications that the information provided by the Party under Reorganization was improper, WatchDog was appointed to act in the case** (in the records of the RMA incident, a copy of which is attached to these main records), as a preclusive decision. All the more reason now, after the arrival of technical reports – albeit brief ones - it is essential for this Judicial Observer to intervene directly within the Company under Reorganization, in order to ascertain the truthfulness of the data it has provided relating to the numbers and operations practiced, as well as any possible abuse or fraud." -------------------------------------------------- "With regard to the assets, considering the fragility pointed out in several of the valuations adopted, it is determined that their sale and/or encumbrance must be previously authorized by the Court, which will be notified by the WatchDog. Therefore, as of the publication of this document, any sale or encumbrance of assets that is not expressly and previously granted by the Court will be ineffective." (fls. 116202/116209 of the Court-Supervised Reorganization). ------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 367

85. It has also been shown in the context of *Chapter 15* that (i) the Oi Group does not have the slightest indication that it will obtain DIP financing in the context of *Chapter 11* (possibly due to the uncertainties and illegalities surrounding the strategy presented to potential financiers); and (ii) the Oi Group estimates that more than **US$ 100 million** *would be spent (i.e.,* more than half a billion reais) in advisors' fees for conducting a *Chapter 11* procedure: ------------------------

P: In fact, the amount of professional fees Oi has estimated it will incur in a Chapter 11 is more than $100 million more in fees than in a Chapter 11 scenario, correct? ----------------------------------------------------

R: Correct (free translation - **doc. nº 15**). ----------------

* * * -----------------------------------------------------

P. No one agreed to provide DIP funding, correct? ---------

R. Yes. They weren't against it, but they haven't given us the "okay" yet. ---------------------------------------------

P. There are currently no draft DIP financing contracts being prepared, correct? ----------------------------------

R. Correct. We don't have the commercial conditions yet. --

[...] -------------------------------------------------------

P. None of these negotiations for DIP financing progressed beyond you making a presentation to a potential investor, correct? --------------------------------------------------

R. Yes. It's not finished yet. ----------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 368

P. None of these discussions or negotiations "got heated", right? ----------------------------------------------------

R. As I mentioned yesterday, no. By "heating up" I mean being very close to closing a deal. (free translation - **doc. no. 15**) -------------------------------------------------

86. It's symptomatic: without investors willing to finance it, and with more than half a billion reais expected to be sucked up in fees alone, *Chapter 11* is nothing more than a drain on resources - a luxury that only interests those who profit from the crisis. --------------------------------

87. In short, the announced request for *Chapter 11* is a clumsy, unfounded measure that jeopardizes the entire restructuring of the Oi Group, the result of practically a decade of efforts by creditors and the National Judiciary.

73. And that's because: **(i)** would violate public order principles of Brazilian law; **(ii)** would create a reckless precedent for the entire national insolvency system and conflicts of jurisdiction that would make its processing unfeasible from a practical point of view; **(iii)** is devoid of any credible analysis of its financial viability; **(iv)** would (further) increase litigation involving the Oi Group; **(v)** would drain more than half a billion reais in lawyers' and advisors' fees; **(vi)** would damage the Oi Group's main asset, impacting the execution of the Plan itself; and **(vii)** would reduce the value of the guarantee offered to several creditors under the Plan. --------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 369

88. In fact, the Oi Group's managers and advisors seem to be the only ones to benefit from this adventurous and irresponsible strategy in a foreign jurisdiction, which would apparently only serve to cause turmoil and confusion in the process and drain more resources from Oi without any efficiency. ------------------------------------------

89. In this regard, it should be noted that any possible *Chapter 11* would also depend on the approval of a plan before a foreign court - and it is hardly credible that creditors, even after successive support actions, will again consent to a new restructuring marked by illegalities and legal uncertainty. The reality is that the Oi Group is already incurring significant costs without presenting any minimally substantiated plan. In this sense, in your respectful opinion, the lack of concern for the costs incurred is reprehensible given the state of crisis in which the company finds itself. --------

**V. THE NEED TO GRANT SUSPENSIVE EFFECT TO THIS APPEAL** -----

90. To date, the merits of the Request for Closure of *Chapter 15* have not been heard by the New York Court. Thus, at any time, the New York Court may authorize the closure of *Chapter 15* and Oi may implement the measures sought in the United States of America, putting the rights of the Appellant and the collectivity of creditors at risk, through a potential process of *Chapter 11.* ----------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 370

91. In this sense, the Appellant respectfully believes that it is essential to grant <u>emergency relief to this Interlocutory Appeal</u>, so that: ----------------------------

**(i)** in the event that the First Interlocutory Appeal is recognized as having lost its purpose, <u>under the terms of the Decision of Suspensive Effect be validated and fully maintained</u>, so that any decision regarding the Request for Closure of *Chapter 15* await the decisions of the Reorganization Court regarding the already recognized non-compliance with the Plan by the Oi Group and the processing of the Amendment to the Plan, exactly in the terms of the Suspensive Effect Decision; and --------------

**(ii)** in line with the duties of cooperation and communication that guide the transnational insolvency provisions of the LFR, <u>this E. Court to issue a supplementary communication to the New York Court</u>, informing that, *in a summary judgment,* (a) the filing of *Chapter 11* would violate Brazilian public policy; (b) the effects of *Chapter 11* on non-bankruptcy creditors <u>could not</u> be recognized in Brazil given the existence of the Court-Supervised Reorganization; and (c) the maintenance of *Chapter 15* is necessary to give effect to the decisions to be handed down under and by virtue of the Court-Supervised Reorganization. --------------------------------

**(a) *Probability of the Law*** --------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 371

92. **Violation of Public Order**. The LFR does not offer debtors a continuous and uninterrupted restructuring instrument. On the contrary, the LFR establishes that the debtor only has the right to file a new petition for Court-Supervised Reorganization once at least five (5) years have passed since the date on which its Court-Supervised Reorganization plan was ratified (article 47, II, LFR). This is a basic rule in the LFR, part of the public order of Brazilian law (as recognized by Professor Daniel Carnio Costa - **doc. n° 12**), which dictates the incentives of the Court-Supervised Reorganization process, given that it gives creditors the guarantee that their post-bankruptcy credits (including DIP financing) due during these years cannot be restructured until the end of this quarantine. -------------------------------------------

93. Oi's attempt to file *Chapter 11* and thereby restructure post-bankruptcy and non-bankruptcy credits in the United States of America, just over one (1) year after the Court-Supervised Reorganization was granted, is a measure that circumvents the LFR and violates public order, which demands the interference of the Court-Supervised Reorganization Court and of this E. Tribunal. Court. -------------------------------------------------

94. **Impossibility of Restructuring Non-bankruptcy-Credits**. In addition, the LFR does not allow post and non-bankruptcy credits to be restructured within the scope of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 372

a possible *Chapter 11* of Oi. This is because a possible *Chapter 11* would not be classified as a main foreign proceeding for the restructuring of Oi, given that the Oi Group filed for Court-Supervised Reorganization and therefore recognized that its center of main interest is not in the United States of America (but in Brazil). ------

79. Therefore, the implementation measures eventually achieved in *Chapter 11* could be recognized by the Reorganization Court, provided that such measures are compatible with the Brazilian proceedings (article 167-S, I of the LFR). In addition, any suspension of rights and constrictive acts obtained within the scope of *Chapter 11* could not affect non-bankruptcy creditors (articles 167-S, I, and 167-M, § 3 of the LFR). ----------------------------

95. **Maintenance of *Chapter 15.*** Finally, the current situation of the Court-Supervised Reorganization does not allow the Oi Group to dispense with the usefulness of the *Chapter 15*process. This is because the Amendment to the Plan provides for a series of restructuring measures that extend until at least the end of 2038. --------------------

80. In addition, the Amendment to the Plan is based on the assumption that foreign creditors - both bankruptcy and non-bankruptcy - will consent to the main rules of payment set out in the Amendment to the Plan (i.e. the destination of the proceeds from the sale of real estate), by means of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 373

an amendment to a post-bankruptcy agreement governed by the laws of the State of New York. ------------------------ 81. Thus, the maintenance of the *Chapter 15* proceedings is fundamental for the Oi Group, the reorganization court, this Court and the creditor community to have stability and confidence in the viability of the Amendment to the Plan. ------------------------------------------------------

*(b) Existence of Actual Danger of Harm and Risk to the Useful Outcome of the Proceedings* ------------------------- 96. **Imminent Risk.** If the First Interlocutory Appeal is recognized as having lost its object, the Preliminary Injunction may cease to have effect and, consequently, the New York Court may at any time issue a decision granting the Request for Termination of *Chapter 15* and, therefore, enabling the filing of *Chapter 11* by Oi. ------------------ 81. It is known that, with the filing of *Chapter 11,* there is an automatic stay of actions and executions against Oi in the United States of America *(automatic stay),* independent of any decision by the New York Court. In addition, *Chapter 11* would grant Oi the prerogative to affect contracts related to non-bankruptcy and (even) bankruptcy credits, which could not be affected in the Court-Supervised Reorganization *(e.g.,* the possibility of unilaterally terminating non-bankruptcy contracts). ------- 97. Thus, the Appellant - together with all the other non-bankruptcy and bankruptcy creditors of the Oi Group -





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish - Portuguese

p. 374

suffers danger of damage with the imminent filing of *Chapter 11,* which could enable measures by Oi that are contrary to public order and prohibited by the LFR, as explained above. In this scenario, the success of the Court-Supervised Reorganization could be compromised, since the fundamental rights and interests of the Oi Group and its creditors and business partners would be under the tutelage of a foreign jurisdiction concurrently with the Brazilian proceedings. ------------------------------------

98. **Danger of Conflict between Jurisdictions.** In addition, there is a serious risk that the restructuring measures made possible by the potential *Chapter 11,* as well as the orders to be eventually issued by the New York Court, will conflict with the provisions of the LFR and the orders of the Reorganization Court and this E. Court, causing a real conflict of jurisdiction and instability in the proceedings. Such a conflict could jeopardize the effectiveness of the measures adopted in the Court-Supervised Reorganization, which represents the main restructuring process of the Oi Group, processed in its center of main interest. ------------------------------------

*(c) Reversibility of the Measure* --------------------------

99. As demonstrated in this interlocutory appeal, the potential filing of *Chapter 11* by Oi could significantly affect the rights and interests of creditors and relevant business partners of the Oi Group. Therefore, the legality





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 375

and extent of the effects of such a measure should be discussed with caution before the reorganization court and this Court. ----------------------------------------------

100. In this context, on August 12, 2025, the reorganization court ordered the suspension of actions against the assets of the Defendants until August 31, 2025, which "may be extended, according to what may arise in the course of the proceedings" (fls. 118,173/118,176 of the Court-Supervised Reorganization). An environment of momentary stability has therefore been created so that the discussion on the Amendment to the Plan can be debated in the Court-Supervised Reorganization with the caution that the matter requires. --------------------------------------

101. In the same vein, this E. Court has acted with caution in ordering the supplementation of the letter to the New York Court, recommending that it wait for a decision to be handed down on the Amendment to the Plan, before deciding on the Request for Closure of *Chapter 15,* under the terms of the rulings. Suspensive Effect Decision. ------------------------------------------------

102. All these precautionary measures have been taken on the basis that communication and cooperation between the reorganization and New York courts - and the time that this requires - will not cause any irreversible damage to the Oi Group. Thus, any recommendations and communications to be maintained and sent by this E. Court to the New York





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 376

Court will not cause any prejudicial measure of impossible reversibility for the Respondents --- on the contrary: it will only contribute to the legal certainty and stability of the restructuring measures to be pursued. --------------

**VI. CONCLUSION AND REQUESTS** -------------------------------

103. For all the above reasons, you trust that, under the terms of article 1.019, I, of the CPC, this i. The Court of Appeal will grant, *inaudita altera parte,* the bringing forward of the effects of the appeal, determining that: ---

**(i)** in the event that the First Interlocutory Appeal is recognized as having lost its purpose, <u>under the terms of the Decision of Suspensive Effect be validated and fully maintained</u>, so that any decision regarding the Request for Closure of *Chapter 15* <u>guarantees the decisions of the Reorganization Court regarding the already recognized non-compliance with the Plan by the Oi Group and the processing of the Amendment to the Plan</u>, exactly in the terms of the Suspensive Effect Decision; and --------------

**(ii)** in line with the duties of cooperation and communication that guide the transnational insolvency provisions of the LFR, <u>this E. Court to issue a supplementary communication to the New York Court</u>, informing that, *in a summary judgment,* (a) the filing of *Chapter 11* would violate Brazilian public policy; (b) the effects of *Chapter 11* on non-bankruptcy creditors <u>could not</u> be recognized in Brazil given the existence of the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 377

Court-Supervised Reorganization; and (c) the maintenance of *Chapter 15* is necessary to give effect to the decisions to be handed down under and by virtue of the Court-Supervised Reorganization. --------------------------------
104. Having granted the urgent relief requested above, the Appellant claims that, in the end, this appeal will be granted, ratifying the requests for bringing forward the effects of the appeal relief formulated above and reversing the decision of the Court of Appeal. Decision under appeal, for all legal intents and purposes. ---------
In these terms, Grant is requested ------------------------
São Paulo, August 26, 2025. ------------------------------
*(Blank)* -----------------------------------------------
**Thiago Braga Junqueira** ------------------------------------
**OAB/SP No. 286.786** ------------------------------------
 -------------------------------------------------------
*(Blank)* -----------------------------------------------
**Maria Fernanda M. Del Grande** -----------------------------
**OAB/SP No. 493.904** ------------------------------------
 -------------------------------------------------------
*(Blank)* -----------------------------------------------
**João Guilherme Thiesi da Silva** --------------------------
**OAB/SP No. 410.293** ------------------------------------
 -------------------------------------------------------
*(Blank)* -----------------------------------------------
**Sophia Weinschenker Bollmann** ------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 378

OAB/SP No. 519.960 ----------------------------------------

 -----------------------------------------------------------

JUR_SP - 55617456v5 - 5769054.524399 ----------------------

TJRJ  202500773578  26/08/2025  21:36:27  EM@I  Electronic

Complaint -------------------------------------------------

 -----------------------------------------------------------

[1] Proceeding No. 0090940-03.2023.8.19.0001, in progress
before the 7th Corporate Court of the Capital District of
the State of Rio de Janeiro ("Reorganization Court"). -----

[2] Interlocutory appeals nos. 0069602-39.2024.8.19.0000;
0069530-52.2024.8.19.0000; 0069733- 14.2024.8.19.0000; and
0072455-21.2024.8.19.0000. --------------------------------

[3] "An interlocutory appeal may be filed against all
interlocutory decisions handed down in Court-Supervised
Reorganization and bankruptcy proceedings, pursuant to
art. 1.015, sole paragraph, CPC". -------------------------

[4] The Debtors' Chapter 15 proceeding, currently underway
before the New York Court, seeks the recognition of this
Court-Supervised Reorganization as the Debtors' main
restructuring process and the effectiveness of the
provisions of the Debtors' Court-Supervised Reorganization
plan, approved on April 19, 2024 ("Plan"), in the United
States of America. Such proceedings are governed by
Chapter 15 of the US Bankruptcy Code and are non-
mainstream transnational insolvency proceedings, in





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 379

accordance with the principles established by the UNCITRAL Model Law on Transnational Insolvencies. ------------------

[5] In fact, you requested that: "Your Honor, please order the summoning of the i. Judicial Administrators and the representative of the Federal Prosecutor's Office to express their opinion on the possibility of filing a restructuring petition in the US courts (Chapter 11) and its consequences for this Court-Supervised Reorganization process, in light of Brazilian legislation and the other facts and considerations brought up in the context of this brief". (fls. 116.966/116.978 of the Court-Supervised Reorganization - original highlights) ---------------------

[6] The I. Judicial Administrators reported that "the Companies under Reorganization have failed to prove full compliance with the obligations set out in the Court-Supervised Reorganization Plan" (fls. 116.028 of the Court-Supervised Reorganization). ------------------------

[7] Art. 61, LFR: Once the decision provided for in Article 58 of this Law has been handed down, the judge may order that the debtor be kept in Court-Supervised Reorganization until all the obligations provided for in the plan that fall due up to a maximum of two (2) years after the Court-Supervised Reorganization is granted have been fulfilled, regardless of any grace period. ----------------------------

[8] Art. 48, LFR: A debtor may apply for Court-Supervised Reorganization if, at the time of the application, the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 380

debtor has been regularly carrying on business for more than two (2) years and meets the following requirements, cumulatively: II - have not been granted Court-Supervised Reorganization for less than 5 (five) years. --------------
[9] The Appellant clarifies that the sworn translation of the document will be presented in due course. -----------------
[10] "On March 29, 2023, the Court held a hearing to consider the Verified Petition and issued a decision which, among other things, concluded that the center of main interest of each of the Chapter 15 Debtors is in Brazil and recognized the Brazilian RJ Proceeding as a "foreign main proceeding" of each of the Chapter 15 Debtors." (doc. no. 8). --------------------------------------------------------
[11] "Q. And when Oi filed its second RJ case, Oi's registered office was in Brazil, correct? -----------------
R. Correct. ------------------------------------------------
P. And when Oi filed its Chapter 15 petition before this Court, Oi's registered office was in Brazil, correct? -----
R. Correct. ------------------------------------------------
P. And sitting here today, Mr. Padis, you represent Oi now. Oi's headquarters remain in Brazil, correct? ---------
R. That's my understanding." (doc. no. 15). ---------------
[12] Art. 167-L. Following the filing of the request for recognition of the foreign proceeding, and prior to its decision, the judge may grant preliminary injunctions, based on urgency or evidence, necessary for compliance





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 381

with this Law, for the protection of the bankruptcy estate or for the efficiency of the administration. --------------
§ 1 Except in the case of the provisions of item IV of the main body of Article 167-N of this Law, provisional measures shall end with the decision on the application for recognition. -------------------------------------------
§ 2 The judge may refuse to grant provisional assistance measures that may interfere with the administration of the main foreign proceedings. ---------------------------------
[13] Art. 167-N. With the decision recognizing the foreign proceeding, both principal and non-principal, the judge may order, at the request of the foreign representative and provided they are necessary for the protection of the debtor's assets and in the interests of the creditors, among others, the following measures: ---------------------
I - the ineffectiveness of the transfer, encumbrance or any form of disposition of assets of the debtor's non-current assets carried out without prior judicial authorization, if they have not automatically resulted from the recognition provided for in article 167-M of this Law; -------------------------------------------------------
II - the hearing of witnesses, the gathering of evidence or the provision of information relating to the debtor's assets, rights, obligations, liability and activities; ----





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 382

III - the authorization of the foreign representative or other person to manage and/or realize the debtor's assets, in whole or in part, located in Brazil; -------------------

IV - the conversion of any provisional assistance measure previously granted into a definitive one; -----------------

V - the granting of any other measure that may be necessary. -------------------------------------------------

§ 1 With the recognition of the foreign proceeding, both main and non-main, the judge may, at the request of the foreign representative, authorize him, or another person appointed by him, to promote the destination of the debtor's assets, in whole or in part, located in Brazil, provided that the interests of creditors domiciled or established in Brazil are adequately protected. -----------

§ 2 When granting the assistance measure provided for in this article requested by the foreign representative of a non-main foreign proceeding, the judge must ensure that the measures to effect it relate to assets which, under Brazilian law, must be subject to the discipline applicable to the non-main foreign proceeding, or ensure that they relate to information required therein. ---------

[14] Art. 66, LFR: After the petition for Court-Supervised Reorganization has been filed, the debtor may not sell or encumber assets or rights from its non-current assets, including for the purposes provided for in Article 67 hereof, except with the authorization of the judge, after





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 383

hearing the Committee of Creditors, if any, with the exception of those previously authorized in the Court-Supervised Reorganization plan. ----------------------------

[15] Vide: 4.2.6, 4.2.7, 4.2.8 e 4.2.9. ------------------------

[16] See: clauses 4.2.6, 4.2.7, 4.2.8 and 4.2.9. --------------

[17] See clause 5.3.4 and 5.3.4.1 of the Amendment to the Plan. -------------------------------------------------------

[18] See clause 12.01 of the Intercreditor Agreement. --------

[19] The Appellant informs that the document presented here corresponds to Annex 4.2.2.1.1(f)(iii) of the Plan. The final version of the Intercreditor Agreement was concluded privately between the parties on 8.8.2024 (in the context of the disbursement of the DIP Financing) and reflects the terms of the document presented here in all material respects. --------------------------------------------------

[20] "The Non-bankruptcy Take or Pay Creditors - Option I hereby agree to amend the respective Guarantee Instruments and the Intercreditor Agreement entered into with the Recovering Companies and the applicable Creditors in order to incorporate the changes necessary to implement the provisions of Clauses 5.3.4 and 5.3.4.1" (clause 4.2.8.3(a) of the Amendment to the Plan - fl. 113.342 of the Court-Supervised Reorganization)." --------------------

--------------------------------------------------------------

**AND WITH NOTHING FURTHER TO BE TRANSLATED FROM THE ABOVE DOCUMENT, I HEREBY FINISH THE TRANSLATION AND SIGN ON THIS DATE.** --------------------------------------------------------------
**PAULO FERNANDO SANTOS DE LACERDA, Ph.D** -------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish - Portuguese

p. 384

**SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER PERMIT #243** --------------------------------------------------------------------------------------------------------
**September 2, 2025.** -------------------------------------------------------------------------------------------------------------

PAULO
FERNANDO
SANTOS DE
LACERDA:297
09644734

Assinado de forma digital por
PAULO FERNANDO SANTOS DE
LACERDA:29709644734
DN: c=BR, o=ICP-Brasil,
ou=Secretaria da Receita Federal
do Brasil - RFB, ou=RFB e-CPF A1,
ou=AC VALID RFB V5, ou=AR
CERTSEC, ou=Videoconferencia,
ou=09282241000145, cn=PAULO
FERNANDO SANTOS DE
LACERDA:29709644734
Dados: 2025.09.02 14:08:11 -03'00'

