**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

Oi S.A. *et al.*,

    Debtors in a Foreign Proceeding.

**FOR PUBLICATION**

Case No. 23-10193 (LGB)

Chapter 15
(Jointly Administered)

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO TERMINATE AND DISMISS**

*A P P E A R A N C E S :*

WHITE & CASE LLP
*Counsel for the Foreign Representative of Oi S.A. and affiliated debtors*
1221 Avenue of the Americas
New York, NY 10020
By:    Jason N. Zakia
        Richard S. Kebrdle
        Ricardo M. Pasianotto
        Jade Yoo
        Ashley Chase


QUINN EMANUEL URQUHART & SULLIVAN, LLC
*Counsel for BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A*
295 5th Avenue, 9th Floor
New York, NY 10016
By:    Benjamin I. Finestone
        Mario Gazzola
        K. John Schaffer
        Jeremy Baldoni

DAVIS POLK & WARDWELL LLP
*Counsel to the Ad Hoc Group*
450 Lexington Avenue
New York, New York 10017
By:    David Schiff

**LISA G. BECKERMAN**
**UNITED STATES BANKRUPTCY JUDGE**

The Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases (the "Motion," ECF No. 46) was filed by Rodrigo Caldas de Toledo Aguiar in his capacity as the authorized foreign representative (the "Foreign Representative") of the debtors in the above-captioned cases (the "Chapter 15 Debtors," together with their non-debtor affiliates, the "Oi Group" or the "Company"). The Company is the subject of a jointly-administered judicial reorganization (*recuperação judicial* or "RJ") proceeding pursuant to Federal Law No. 11.101 of February 9, 2005, as amended (the "Brazilian Bankruptcy Law") of the laws of the Federative Republic of Brazil before the 7th Business Court of the City and State of Rio de Janeiro, Brazil (the "RJ Court"). In support of the Motion, the Foreign Representative submitted the Declaration of Paulo Calil Franco Padis (the "Padis Declaration," ECF No. 47) and the Declaration of Marcelo Jose Milliet (the "Milliet Declaration," ECF No. 48). The Motion seeks termination of the recognition order (the "Recognition Order," ECF No. 30) entered by this Court on March 29, 2023, as well as dismissal of the Chapter 15 Debtors' cases (the "Chapter 15 Cases").

On July 30, 2025, BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A. ("V.tal") filed the Objection and Opposition to Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases (the "Objection," ECF No. 58). In support of the Objection, V.tal submitted the Declaration of Thiago Braga Junqueira (the "Junqueira Declaration," ECF No. 59) and the Declaration of Daniel Carnio (ECF No. 83).

On August 4, 2025, the Foreign Representative filed the Reply in Support of Motion to Terminate the Recognition Order and Dismiss the Chapter 15 Cases (the "Reply," ECF No. 69).

On August 14 and 18, 2025, this Court conducted an evidentiary hearing, including oral argument on the Motion (the "Hearing"). All four declarants appeared and were subject to cross-examination. Joint exhibits were admitted into evidence at the Hearing (JX001-JX033), as were excerpts from depositions of Padis, Milliet, Junqueira, and the Foreign Representative.

1. **BACKGROUND**

   a. **Company Overview and History of their Brazilian RJ Proceedings**

The Oi Group is one of the world's largest telecommunications services companies, providing digital services, business process outsourcing, network maintenance, and customer experience services for call centers. Motion ¶ 36. The Company employs ~14,000 people and generates over R$3.3 billion in revenue per year. *Id.* The Oi Group operates almost exclusively in Brazil. Petitioner's Declaration and Verified Petition (the "Verified Petition"), at 2, ECF No. 3.

Since 2016, the Company or its affiliates have been involved in two RJ proceedings. The Company commenced their first RJ proceeding in 2016 (the "2016 RJ Proceeding") which resulted in the confirmation of an RJ plan in 2018 (the "2018 RJ Plan"). Motion ¶ 9. This Court gave full force and effect to the 2018 RJ Plan in a separate Chapter 15 case on July 9, 2018. *See In re Oi. S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. July 9, 2018) (ECF No. 280). Following confirmation of the 2018 RJ Plan, the Company faced continued pressure on their operations. Verified Petition ¶ 18. To address these issues, the Company amended the 2018 RJ Plan on October 5, 2020. *Id.* ¶ 19. The 2016 RJ Proceeding concluded on December 14, 2022, and the corresponding Chapter 15 cases were closed on February 6, 2023. *Id.* ¶¶ 20-21.

Following the conclusion of the 2016 RJ Proceeding, the Company encountered unanticipated weakness in their business. *See id.* ¶ 22. This necessitated the filing of a second

RJ proceeding on March 1, 2023 (the "2023 RJ Proceeding"). Motion ¶ 10. Before filing the

2023 RJ Proceeding, the Company sought provisional relief from this Court. *See id.* ¶ 10. This

necessitated the filing of the pending Chapter 15 Cases on February 8, 2023. *See id.* ¶ 13. On

March 29, 2023, this Court entered the Recognition Order which recognized the 2023 RJ

Proceeding as a Foreign Main Proceeding, as defined under the Bankruptcy Code, and found that

Brazil was the center of main interests of each of the Chapter 15 Debtors. Recognition Order at

4.

On May 28, 2024, the RJ Court entered an order confirming a formal reorganization plan

(the "2024 RJ Plan"). Motion ¶ 12. This Court entered an order (the "Enforcement Order," ECF

No. 42) giving full force and effect to the 2024 RJ Plan on June 17, 2024. Enforcement Order at

8. The Enforcement Order recognized, granted comity, and gave full force and effect, to the

2024 RJ Plan. *Id.*

**b. Implementation of 2024 RJ Plan**

Following the entry of the Enforcement Order, the Oi Group began implementing the

2024 RJ Plan. The Company completed the restructuring of its capital structure, as required by

the 2024 RJ Plan, on August 8, 2024. Motion ¶ 20. The appointment of a new board of

directors, also required by the 2024 RJ Plan, was completed on December 11, 2024. *Id.* ¶ 22.

The management of the Company has changed. Hr. Tr. 76:13-14, Aug. 14, 2025 [ECF No. 103].

In addition, the 2024 RJ Plan provided for the sale of certain key assets known as "Isolated

Production Units" or "UPIs." Milliet Declaration ¶ 12. Some of these sales have already taken

place, while others remain outstanding. *See* Motion ¶ 27.

**c. Events Following Confirmation**

The Company's performance following the RJ Court's confirmation of the 2024 RJ Plan has shown that the 2024 RJ Plan relied on overly optimistic projections of proceeds from UPIs, revenue, fixed costs, and the macroeconomic climate.  *See id.* ¶¶ 29-32.  As a result, the Company faces severe liquidity constraints and is unable to meet all their debt obligations as they come due.  Certified Translation of the July 18, 2025 RJ Court Order, ECF No. 54, Ex. A., at 8.  To address this liquidity shortfall and preserve the Company as a going concern, management has explored various restructuring options.  *See* Motion ¶ 36.  One of these options is the filing of an amendment to the 2024 RJ Plan.  *See* Padis Declaration ¶ 25.

On July 1, 2025, the Oi Group filed a motion with the RJ Court to amend the 2024 RJ Plan (the "Proposed Plan Amendment").  *Id.*  The Proposed Plan Amendment seeks to "realign the short-time payment terms for local labor creditors and small suppliers with updated cash flow projections, and to impose an additional stay of at least 180 days with respect to such creditors." *Id.*  At least six creditors have filed objections to the Proposed Plan Amendment, and at least six other creditors have filed motions with the RJ Court seeking additional time to respond to the motion for the Proposed Plan Amendment.  Junqueira Declaration ¶ 86.

On July 9, 2025, the RJ Court issued a summons that appointed a watchdog (the "Watchdog").  The summons requested that the Watchdog, the court appointed trustee (*administrador judicial* or "Trustee")[1], and the Public Prosecutor's Office comment on the Proposed Plan Amendment.  *See id.* ¶ 84.  Those entities issued their respective reports on July 15, 2025.  *Id.*  Importantly, the Watchdog's report found that the Company was unable to satisfy its short-term obligations, including obligations under the 2024 RJ Plan.  *Id.*  The Trustee found

---

[1] The Trustee performs an oversight function in a RJ proceeding.  It is subject to the supervision of the RJ court, Public Prosecutor's Office, the debtor, and creditors.  The Trustee acts on behalf of the judiciary and must act in the interest of the overall RJ proceeding.  *Id.* ¶ 26.

that the Oi Group failed to fully comply with its obligations under the 2024 RJ Plan and noted

that the Company would likely be unable to meet all its obligations over the next three months.

*Id.* The report from the Public Prosecutor's Office described concerns over the legality of certain

provisions in the Proposed Plan Amendment. *Id.*

On July 18, 2025, the RJ Court issued an order that directed the Oi Group to provide

additional information in connection with the reports and ordered the Trustee to inform this

Court that the 2023 RJ Proceeding remains pending, and the Company is not in compliance with

all its obligations under the 2024 RJ Plan. *See* Statement Notifying the Court, ECF No. 52, ¶ 7;

Certified Translation of the July 18, 2025 RJ Court Order, ECF No. 54, Ex. A., at 8. As of the

date of this Opinion, the RJ Court has not issued a final ruling on the Proposed Plan Amendment

or the Company's compliance with the 2024 RJ Plan.

On July 25, 2025, Judge Monica Maria Costa di Piero of the First Chamber of Private

Law of the Supreme Court of the State of Rio de Janeiro (the "Brazilian Appellate Court") issued

an order (the "July 25 Appellate Order," ECF No. 56) recommending that this Court await the

decisions of the RJ Court on (i) the verification and consequences of Oi Group's non-compliance

with the 2024 RJ Plan and (ii) the request for the Proposed Plan Amendment before ruling on the

Motion. July 25 Appellate Order, ECF No. 56, Ex. A, at 16-17.

On August 12, 2025, the RJ Court issued an order (the "August 12 RJ Order," ECF No.

89) implementing a stay, until August 31, 2025, on the enforcement of obligations that the

Company sought to include in the Proposed Plan Amendment. August 12 RJ Order, ECF No. 89,

Ex. B, at 2. In addition, the August 12 RJ Order requested that the Company and Oi Group's

regulators prepare reports on a potential transition plan to avoid interruptions in public services

should the 2023 RJ Proceeding be converted to a liquidation. *Id.*

On August 29, 2025, the Brazilian Appellate Court issued a preliminary *ex parte* order (the "August 29 Temporary Injunction Order") that (i) ratified the July 25 Appellate Order's request for this Court to await a ruling on the Motion until the RJ Court's decisions are made on non-compliance with the 2024 RJ Plan and viability of the Proposed Plan Amendment and (ii) stated that the continuation of the Chapter 15 Cases is necessary and essential for the effectiveness of the 2023 RJ Proceeding.  August 29 Temporary Injunction Order, ECF No. 118, Ex. A, at 33-34.

On August 29, 2025, the Brazilian Appellate Court issued a second order (the "August 29 Stay Order") that extended the stay imposed by the August 12 RJ Order until the RJ Court issues a decision on the Proposed Plan Amendment and the Oi Group's regulators present the public service transition plan.  August 29 Stay Order, ECF No. 118, Ex. B, at 18.

On September 2, 2025, the Chapter 15 Debtors sought reconsideration of the August 29 Temporary Injunction Order.  On September 4, 2025, the Brazilian Appellate Court issued an order (the "September 4 Order") that did not seem to address the Company's request that the Brazilian Appellate Court retract its recommendations contained in the July 25 Appellate Order with respect to this Court and the Chapter 15 Cases.  *See* September 4 Order, ECF No. 121, Ex. A-2, at 4-6.

### d.  The Motion

The Motion argues that the Proposed Plan Amendment is insufficient to properly restructure the Company's outstanding obligations, and Brazilian Bankruptcy Law does not offer any suitable alternatives for an appropriate restructuring of the debts incurred by the Company since the time that the 2023 RJ Proceedings were commenced.  Motion ¶ 2.

Brazilian Bankruptcy Law prohibits the Company from filing a new RJ proceeding for five years following confirmation of the 2024 RJ Plan. *Id.* This prohibition prevents the Company from achieving a comprehensive restructuring of their obligations through a new plenary proceeding under Brazilian Bankruptcy Law since the 2024 RJ Plan was confirmed approximately 14 months ago. *See id.*

Within the five-year period following confirmation of an RJ plan, Brazilian Bankruptcy Law only provides a debtor with two options for restructuring their obligations—the RJ debtor may propose an amendment to their RJ plan or convert the RJ proceeding into a judicial liquidation proceeding (*falência*). *See id.* The Company is currently pursuing the first of these options through the Proposed Plan Amendment. However, the Proposed Plan Amendment is insufficient to fully address the Company's liquidity shortfall. *Id.*

Brazilian Bankruptcy Law does not allow an amendment to the 2024 RJ Plan to restructure a "considerable portion" of the Company's debt obligations. *Id.* Under Brazilian Bankruptcy Law, amendments are unable to modify, defer, or discharge post-petition debts and certain categories of liabilities. *See* Padis Declaration ¶ 22. Post-petition debts are debts that arose after the commencement of the RJ proceeding. *Id.* Further, other types of liabilities are also excluded from the scope of an RJ proceeding ("Exempt Claims"). *Id.* ¶ 21. These types of liabilities include tax claims, fiduciary liens (*alienações fiduciárias*)[2], and financial leases, among other categories. *See* Junqueira Declaration ¶ 14. Holders of Exempt Claims may enforce their claims notwithstanding an ongoing RJ proceeding, and an amendment to an RJ plan cannot modify Exempt Claims. *See* Padis Declaration ¶ 21-22. In addition, under Brazilian Bankruptcy Law, executory contracts and leases for property and services must be paid in full.

---

[2] Fiduciary liens are a form of security interest. Padis Declaration ¶ 21.

*Id.* ¶ 24.  The Company's post-petition indebtedness, Exempt Claims, and executory contracts

and leases represent a significant portion[3] of the Company's outstanding obligations such that an

amendment to the 2024 RJ Plan cannot sufficiently restructure the Company's obligations.  *Id.* ¶

25.

 Another option for the Company to restructure under Brazilian Bankruptcy Law would be

to convert the 2023 RJ Proceedings to a *falência*.  However, the Company believes that a

*falência* would be value-destructive and lead to job losses.  Motion ¶ 35; Padis Declaration ¶ 14.

As a result, the Company is exploring a potential filing of chapter 11 cases under the Bankruptcy

Code.  Motion ¶ 39.  A chapter 11 filing, it is argued by the Foreign Representative, could allow

the Company to restructure the post-petition indebtedness, Exempt Claims, and executory

contracts and leases that cannot be restructured under Brazilian Bankruptcy Law.  *Id.* ¶ 37.

Without relief from this Court, however, the Company would be unable to pursue this process

due to 11 U.S.C. § 1528 ("Section 1528").  *Id.* ¶ 3.

 Section 1528 provides that the effects of a chapter 11 case commenced after "recognition

of a foreign main proceeding" shall be "restricted to the assets of the debtor that are within the

territorial jurisdiction of the United States . . . ."  This provision may not allow for the type of

"global" restructuring envisioned by the Company if the Chapter 15 Cases remain open because

this Court previously recognized the 2023 RJ Proceeding as a Foreign Main Proceeding.  *See id.*

¶ 42.  The Motion seeks to remove the restriction potentially imposed by Section 1528 by

terminating the Recognition Order and dismissing the Chapter 15 Cases.  *Id.* ¶ 43.

### i.  Terminating Recognition

---

[3] Post-petition claims represent R$1.51 billion of indebtedness.  Milliet Declaration ¶ 22.  Exempt Claims represent
R$17.2 billion of indebtedness.  Padis Declaration ¶ 22.  Executory contracts and leases represent a three-year go-
forward cost of R$1.3 billion.  *Id.* ¶ 24.  The Company's total liabilities, as of March 31, 2025, is R$26.7 billion.
Milliet Declaration ¶ 19.

The Motion argues that terminating the Recognition Order is appropriate under 11 U.S.C. § 1517(d) ("Section 1517(d)").  Section 1517(d) allows "modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist."  The Foreign Representative argues that the reasons justifying the original filing of the Chapter 15 petition no longer exist, and so the Court should terminate the Recognition Order.  *See id.* ¶ 45.  The Motion also asserts that the Chapter 15 Debtors do not need any further relief from this Court.  *Id.*  ("[T]he Chapter 15 Debtors' need for chapter 15 relief no longer exists . . . ."); Hr. Tr. 135:3-8, Aug. 14, 2025.  In addition, it is argued that changed circumstances now affirmatively support terminating the Recognition Order since (i) termination would provide an opportunity for the RJ Debtors to restructure US $5.07 billion through chapter 11, (ii) no creditors that relied on the recognition order would be negatively impacted by its termination, and (iii) the Company is unable to restructure appropriately in Brazil.  *See* Motion ¶ 47.

In the alternative, the Motion argues that terminating the Recognition Order is appropriate under 11 U.S.C. §§ 1507 ("Section 1507") and 105(a) ("Section 105(a)").  *Id.* ¶ 48.  Section 1507 enables the Court to provide the Foreign Representative with "additional assistance" that is consistent with the factors outlined under Section 1507(b).  In turn, Section 105(a) allows the Court to issue orders, processes, or judgments that are necessary or appropriate to carry out the provisions of title 11.  Read in conjunction, the Motion argues that Sections 1507 and 105(a) permit the Court to terminate recognition since doing so would "maximize[] value for all of [the Company's] stakeholders," improve Oi Group's liquidity, maintain employment, and ensure a fair and orderly alternative to a liquidation.  *Id.* ¶ 51.

### ii.  Dismissing the Chapter 15 Cases

In addition to terminating the Recognition Order, the Motion seeks to dismiss the Chapter 15 Cases pursuant to 11 U.S.C. §§ 305 ("Section 305") and 1521 ("Section 1521"). Section 305(a) purportedly allows a chapter 15 case to be dismissed if doing so would be in the best interests of creditors and the debtor and if the purposes of chapter 15 would be best served by dismissal. *Id.* ¶ 53. The Motion seemingly argues that Section 305 is imputed to chapter 15 through Section 1521. *See id.* Section 1521(a) enables the Court to provide "any appropriate relief" and the Motion argues that dismissal under Section 305 would qualify as appropriate relief. *See id.* ¶ 4. In addition, relief under Section 1521 must be consistent with 11 U.S.C. § 1522 ("Section 1522"). Section 1522 states that relief under Section 1521 may only be provided if the interests of "creditors and other interested entities, including the debtor, are sufficiently protected." The Motion argues that dismissal of the Chapter 15 Cases would be consistent with this requirement. *Id.* ¶ 53.

### e. The Objection

The Objection argues that the Motion has not demonstrated a sufficient basis for terminating the Recognition Order under Section 1517(d). Section 1517(d) purportedly allows the Court to terminate recognition only when one of the three grounds for granting recognition described in Section 1517(a) cease to exist. *See* Objection at 14. Those three grounds are (1) the foreign proceeding for which recognition sought is a foreign main proceeding or foreign nonmain proceeding, (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515. *Id.* V.tal argues that none of these three grounds have ceased to exist—the 2023 RJ Proceeding is still the foreign main proceeding, the foreign representative is a person, and the petition satisfied Section 1515. *Id.* at 15. Since

11

these three grounds still exist, V.tal argues that the Court should deny relief under Section
1517(d). *Id.*

The Objection also argues that relief under Section 1517(d) should be denied because
terminating the Recognition Order would prejudice V.tal and offend principles of comity. *Id.* at
16. Section 1517(d) requires the Court to consider whether terminating the Recognition Order
would "prejudice . . . parties that have relied upon the order granting recognition." V.tal argues
that it extended post-petition financing to the Company in reliance upon the Recognition Order
and the Enforcement Order. *Id.* Further, terminating the Recognition Order would offend
principles of comity since doing so would allow the Oi Group to file a plenary chapter 11
proceeding. *Id.* at 19. The Objection argues that allowing this to occur would be an
"inappropriate usurpation by [Oi Group], through United States courts, of the Brazilian courts'
extensive, ongoing administration of [Oi Group's] bankruptcy." *Id.* This alone justifies denying
the Motion. *Id.*

The Objection argues that relief under provisions other than Section 1517(d), such as
Sections 305, 1507, and 1521, should be denied since Section 1517(d) is the exclusive provision
that governs termination of a recognition order. *Id.* at 25.

### f. The Reply

The Reply argues that the standard for terminating recognition under Section 1517(d) is
not as rigid as the interpretation proffered by the Objection. Reply ¶ 2. It is argued that relief
under Section 1517(d) is discretionary and not the exclusive basis for terminating recognition.
*Id.* ¶ 7. However, the Company purportedly satisfies even the more restrictive interpretation of
Section 1517(d) presented by the Objection since the circumstances underlying the Recognition
Order have fundamentally changed. *Id.* ¶ 13. For example, the debt outstanding at the time of

the Recognition Order has now been completely restructured, and the purpose of the 2023 RJ

Proceeding is now to monitor the RJ Debtors. *See id.* As a result, the nature of the 2023 RJ

Proceeding has changed since entry of the Recognition Order—the 2023 RJ Proceeding is no

longer pending "for the purpose of reorganization or liquidation" and therefore is not a "foreign

proceeding" as required under Section 1517. *Id.*

Further, the Reply argues that V.tal will not be prejudiced if the Court terminates the

Recognition Order since V.tal did not rely on the Recognition Order. *Id.* ¶ 14. V.tal did not

participate in any of the U.S. cases, and the documents governing their financing agreements do

not mention U.S. proceedings. *Id.*

The Reply also rejects the Objection's characterization of whether the relief sought in the

Motion would contravene principles of comity. *Id.* ¶ 17. The sole issue is whether the

termination of the Recognition Order would be prejudicial to V.tal—not whether a hypothetical

chapter 11 filing would be prejudicial to V.tal. *Id.*

## 2. <u>LEGAL STANDARD</u>

Section 1517 states the requirements for granting recognition to a foreign proceeding. It

reads,

> (a) Subject to section 1506, after notice and a hearing, an order
> recognizing a foreign proceeding shall be entered if—
> > (1) such foreign proceeding for which recognition is sought
> > is a foreign main proceeding or foreign nonmain
> > proceeding within the meaning of section 1502;
> > (2) the foreign representative applying for recognition is a
> > person or body; and
> > (3) the petition meets the requirements of section 1515.
> (b) Such foreign proceeding shall be recognized—
> > (1) as a foreign main proceeding if it is pending in the
> > country where the debtor has the center of its main
> > interests; or

(2) as a foreign nonmain proceeding if the debtor has an
establishment within the meaning of section 1502 in the
foreign country where the proceeding is pending.

(c) A petition for recognition of a foreign proceeding shall be
decided upon at the earliest possible time. Entry of an order
recognizing a foreign proceeding constitutes recognition under this
chapter.

(d) The provisions of this subchapter do not prevent modification
or termination of recognition if it is shown that the grounds for
granting it were fully or partially lacking or have ceased to exist,
but in considering such action the court shall give due weight to
possible prejudice to parties that have relied upon the order
granting recognition. A case under this chapter may be closed in
the manner prescribed under section 350.

11 U.S.C. § 1517.

"Section 1521(a) outlines the discretionary relief a court may order upon recognition of a

foreign proceeding, whether main or non-main . . . . The discretion that is granted is 'exceedingly

broad' since a court may grant 'any appropriate relief' that would further the purposes of chapter

15 and protect the debtor's assets and the interests of creditors." *In re Odebrecht Engenharia e*

*Construção S.A. - Em Recuperação Judicial*, 669 B.R. 457, 465 (Bankr. S.D.N.Y. 2025) (quoting

*In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009)).  Section 1521 states,

(a) Upon recognition of a foreign proceeding, whether main or
nonmain, where necessary to effectuate the purpose of this chapter
and to protect the assets of the debtor or the interests of the
creditors, the court may, at the request of the foreign
representative, grant any appropriate relief, including—
(1) staying the commencement or continuation of an
individual action or proceeding concerning the debtor's
assets, rights, obligations or liabilities to the extent they
have not been stayed under section 1520(a);
(2) staying execution against the debtor's assets to the
extent it has not been stayed under section 1520(a);
(3) suspending the right to transfer, encumber or otherwise
dispose of any assets of the debtor to the extent this right
has not been suspended under section 1520(a);
(4) providing for the examination of witnesses, the taking
of evidence or the delivery of information concerning the
debtor's assets, affairs, rights, obligations or liabilities;

14

> (5) entrusting the administration or realization of all or part
> of the debtor's assets within the territorial jurisdiction of
> the United States to the foreign representative or another
> person, including an examiner, authorized by the court;
> (6) extending relief granted under section 1519(a); and
> (7) granting any additional relief that may be available to a
> trustee, except for relief available under sections 522, 544,
> 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

Courts determining what relief is available under the "any appropriate relief" clause of

Section 1521 look to the relief available under the now repealed 11 U.S.C. § 304. *Odebrecht*,

669 B.R. at 465. Courts may only provide relief under Section 1521 if "the interests of the

creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C.

§ 1522(a).

In addition to Section 1521, the Foreign Representative may seek relief under Section

1507. Section 1507 states,

> (a) Subject to the specific limitations stated elsewhere in this
> chapter the court, if recognition is granted, may provide additional
> assistance to a foreign representative under this title or under other
> laws of the United States.
> (b) In determining whether to provide additional assistance under
> this title or under other laws of the United States, the court shall
> consider whether such additional assistance, consistent with the
> principles of comity, will reasonably assure—
>> (1) just treatment of all holders of claims against or
>> interests in the debtor's property;
>> (2) protection of claim holders in the United States against
>> prejudice and inconvenience in the processing of claims in
>> such foreign proceeding;
>> (3) prevention of preferential or fraudulent dispositions of
>> property of the debtor;
>> (4) distribution of proceeds of the debtor's property
>> substantially in accordance with the order prescribed by
>> this title; and
>> (5) if appropriate, the provision of an opportunity for a
>> fresh start for the individual that such foreign proceeding
>> concerns.

15

11 U.S.C. § 1507.

Section 105(a), cited in the Motion, allows the Court to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(a).  However, a Court exercising discretion under Section 105(a) may not

"contravene specific statutory provisions."  *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188,

1194 (2014).  The exercise of Section 105(a) must "be tied to another Bankruptcy Code section

and not merely to a general bankruptcy concept or objective."  *New England Dairies, Inc. v.*

*Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86,

92 (2d Cir. 2003) (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[1]); *Purdue Pharma, L.P. v. City*

*of Grande Prairie (In re Pharma L.P.)*, 69 F.4th 45, 73 (2d Cir. 2023), *rev'd on other grounds*,

603 U.S. 204.

Section 305 is entitled "Abstention."  11 U.S.C. § 305.  It states,

> (a) The court, after notice and a hearing, may dismiss a case under
> this title, or may suspend all proceedings in a case under this title,
> at any time if—
>> (1) the interests of creditors and the debtor would be better
>> served by such dismissal or suspension; or
>> (2)
>>> (A) a petition under section 1515 for recognition of
>>> a foreign proceeding has been granted; and
>>> (B) the purposes of chapter 15 of this title would be
>>> best served by such dismissal or suspension.
> (b) A foreign representative may seek dismissal or suspension
> under subsection (a)(2) of this section.
> (c) An order under subsection (a) of this section dismissing a case
> or suspending all proceedings in a case, or a decision not so to
> dismiss or suspend, is not reviewable by appeal or otherwise by the
> court of appeals under section 158(d), 1291, or 1292 of title 28 or
> by the Supreme Court of the United States under section 1254 of
> title 28.

*Id.*  "The decision to abstain, either by suspension or dismissal, is committed to the Court's

discretion."  *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 433 (Bankr. S.D.N.Y.

2007).  "Although abstention under [Section 305] is considered an extraordinary remedy, the

pendency of a foreign insolvency proceeding alters the balance by introducing considerations of

comity into the mix. The Second Circuit, in this regard, has frequently underscored the

importance of judicial deference to foreign bankruptcy proceedings." *Id.* at 434 (internal

citations omitted).

Of particular relevance for this Opinion is Section 305(a)(2).  Read together with Section

305(a), Section 305(a)(2) allows the Court to dismiss a "case under [title 11]" if "(A) a petition

under section 1515 for recognition . . . has been granted; and (B) the purposes of chapter 15 of

this title would be best served by such dismissal or suspension." 11 U.S.C. § 305(a)(2).  The

"purposes of chapter 15," in turn, are provided by 11 U.S.C. § 1501(a) ("Section 1501(a)").

Section 1501(a) states,

> The purpose of this chapter is to incorporate the Model Law on
> Cross-Border Insolvency so as to provide effective mechanisms for
> dealing with cases of cross-border insolvency with the objectives
> of—
>     (1) cooperation between—
>         (A) courts of the United States, United
>         States trustees, trustees, examiners, debtors, and debtors in
>         possession; and
>         (B) the courts and other competent authorities of foreign
>         countries involved in cross-border insolvency cases;
>     (2) greater legal certainty for trade and investment;
>     (3) fair and efficient administration of cross-border
>     insolvencies that protects the interests of all creditors, and other
>     interested entities, including the debtor;
>     (4) protection and maximization of the value of the debtor's
>     assets; and
>     (5) facilitation of the rescue of financially troubled businesses,
>     thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

### 3.  **DISCUSSION**

In enacting Chapter 15, Congress incorporated the Model Law on Cross-Border Insolvency (the "Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"). *See* 11 U.S.C. § 1501(a); H.R. Rep. No. 109-31, pt. 1, at 105 (2005) (the "House Report") ("Section 801 introduces chapter 15 to the Bankruptcy Code, which is the [Model Law] promulgated by [UNCITRAL] at its Thirtieth Session on May 12–30, 1997.").

The Model Law was designed to be adopted universally by countries with both common law and civil law legal systems. U.N. Comm'n on Int'l Trade L., UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation, U.N. Sales No. E.14.V.2, at 19 (2014) (the "UNCITRAL Guide") ("The [Model Law] . . . is designed to assist [s]tates to equip their insolvency laws with a modern, harmonized and fair framework to address more effectively instances of cross-border proceedings concerning debtors experiencing severe financial distress or insolvency."). As a result, Section 1517, and specifically Section 1517(d), exists to support cooperation with countries that have civil law legal systems. H.R. Rep. No. 109-31, pt. 1, at 113 (2005) ("Consistent with the position of various civil law representatives in the drafting of the Model Law, recognition creates a status with the effects set forth in section 1520, so those effects are not viewed as orders to be modified, as are orders granting relief under sections 1519 and 1521."). To this Court's knowledge, no court has fleshed out the differences between terminating recognition and dismissing a chapter 15 case. As a result, this Opinion treats both as independent forms of relief.

### a. Whether to terminate recognition

#### i. Section 1517(d)

Section 1517(d) provides the relevant standard for modifying or terminating a recognition order.  *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 203 (Bankr. S.D.N.Y. 2017) [the "*2017 Oi Decision*"] ("[Section 1517(d)] provides the standard for a request to terminate or modify recognition—a discretionary standard that examines where there was a mistake in the initial grant of recognition or has been a subsequent change in circumstances. As such, there is no need for Rule 60(b) to fill a gap in the statutory standard.").  Section 1517(d) states, "[t]he provisions of [chapter 15, subchapter III] do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition."  11 U.S.C. § 1517(d). Therefore, Section 1517(d) requires the Court to take a three-step inquiry.  First, the Court must consider whether the grounds for granting recognition were fully or partially lacking or have ceased to exist.  Second, the Court must consider the prejudice that would result to parties that relied upon the Recognition Order.  Third, the Court must consider whether any other reasons exist for not terminating the Recognition Order since relief under Section 1517(d) is permissive—not mandatory.

The first inquiry under Section 1517(d) requires the Court to determine whether (i) the grounds for granting the initial recognition order were fully or partially lacking, or (ii) the grounds for granting the initial recognition order have ceased to exist.  These are two separate prongs.  *2017 Oi Decision*, 578 B.R. at 196.  The first prong "looks backwards to see whether the basis for recognition previously presented to the Court was flawed in some way."  *Id.* at 197. The second prong "looks forwards to whether something has changed since recognition."  *Id.* Here, the Motion does not argue that the Recognition Order should be terminated under the first

prong.  Instead, the Motion argues that the Recognition Order should be terminated under the

second prong since "[t]he grounds for granting the Recognition Order have ceased to exist."

Motion ¶ 45.

Courts in this Circuit have not fully identified when the grounds for granting a

recognition order have ceased to exist.  One out-of-circuit court has stated that "[t]he grounds for

recognition of a foreign proceeding are determined under section 1517(a) of the Bankruptcy

Code, which requires a court to recognize a foreign proceeding if 'the proceeding is a foreign

main proceeding or a foreign nonmain proceeding; the foreign representative is a person or body;

and the petition meets the requirements of section 1515 of the Bankruptcy Code.'" *Zhejiang

Topoint Photovoltaic Co. v. Zhi Chen (In re Zhejiang Topoint Photovoltaic Co.)*, 600 B.R. 312,

318 (Bankr. D.N.J. 2019) (internal citation omitted).  This approach has not been explicitly

adopted by courts in this Circuit.  While the factors enumerated under Section 1517(a) are clearly

relevant, it is unclear whether those factors are the sole "grounds" that courts should evaluate for

purposes of the second prong.  *See In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 335

(Bankr. S.D.N.Y. 2014) ("The same factors relevant in determining whether to grant recognition

are therefore *relevant* in determining whether to terminate a recognition order.") (emphasis

added).

The *2017 Oi Decision* suggests that an analysis under Section 1517(d) is different from

the analysis required under Section 1517(a).  In the *2017 Oi Decision*, the movant sought to

"overturn" the prior recognition of foreign proceedings pending in Brazil in order to recognize a

new foreign proceeding pending in a different jurisdiction.  *2017 Oi Decision*, 578 B.R. at 175.

The movants argued that the debtors' center of main interests ("COMI") shifted after the entry of

the initial recognition order, and so the court should terminate the recognition order related to the

20

Brazilian proceedings. *Id.* Although the movants urged the court to conduct a *de novo* review

for recognition pursuant to Section 1517(a), the Court declined to do so. *Id.* at 197 ("While the

Movants look to Section 1517(a) to lobby for a *de novo* COMI determination, it is Section

1517(d) that most directly applies to this situation."). In so holding, the court found that Section

1517(d) provided its own discretionary standard for determining whether to terminate

recognition. *See id.* at 203 ("[Section 1517(d)] provides the standard for a request to terminate or

modify recognition—a discretionary standard that examines where there was a mistake in the

initial grant of recognition or has been a subsequent change in circumstances.").

        The policy and text of Section 1517(d) indicates that a court determining whether to

modify or terminate recognition under the second prong should consider more than just the

factors enumerated by Section 1517(a). The *2017 Oi Decision* noted that "the recognition

process must be sufficiently flexible to achieve the goals of Chapter 15." *Id.* at 203. This

flexibility would seemingly be restricted if a court could only consider whether the three factors

under Section 1517(a) have ceased to exist. "Chapter 15 recognizes that the status of the foreign

proceeding can change, and the change can affect the right to recognition before or after it is

granted." *Id.* (quoting *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 533

(Bankr. S.D.N.Y. 2008)). Further, the text of Section 1517(d) implies that a court may consider

circumstances apart from Section 1517(a)'s three factors. Importantly, Section 1517(d) asks the

Court to consider whether the "grounds" for granting recognition have ceased to exist. It does

not ask the Court to consider whether the factors enumerated under Section 1517(a) have ceased

to exist.

        In the Court's opinion, the grounds for granting recognition are broader than just the

requirements of Section 1517(a). For example, one of the grounds for granting recognition is

that there has been an application for recognition filed by the foreign representative pursuant to 11 U.S.C. § 1515.  An application would only be filed, presumably, if there was a need for recognition in the first place.  Therefore, the general circumstances of a given restructuring appear relevant to a court considering whether to modify or terminate recognition under Section 1517(d).  However, the Court reiterates that the factors enumerated by Section 1517(a) are still relevant to any such analysis.  As a result, the Court will first determine whether those three factors have changed since the Recognition Order was granted.

Section 1517(a) requires the Court to enter a recognition order, subject to 11 U.S.C. § 1506, if three factors are met.  Those factors are that "the proceeding is a foreign main proceeding or a foreign nonmain proceeding; the foreign representative is a person or body; and the petition meets the requirements of section 1515 of the Bankruptcy Code."  *Zhejiang*, 600 B.R. at 318 (internal citation omitted).  Here, the second and third factors are not relevant to the analysis—the Foreign Representative is a person, and the petition met the requirements of 11 U.S.C. § 1515.  At issue is the first factor—whether the 2023 RJ Proceeding has ceased to be a foreign proceeding as defined under 11 U.S.C. § 1502.

The Bankruptcy Code defines a "foreign proceeding" as a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).  The Company argues that the 2023 RJ Proceeding no longer satisfies this description since it is no longer pending "for the purpose of reorganization or liquidation."  Reply ¶ 13.  They argue that the 2024 RJ Plan has already been confirmed, and the 2023 RJ Proceeding only remains open to ensure that the Company complies with the 2024 RJ

Plan.  *Id.*  Since the purpose of the 2023 RJ Proceeding is now "supervisory," it is no longer

pending "for the purpose of reorganization or liquidation."  *Id.*

This analysis fails since it does not comport with the Court's holding in *Comair*.  In

*Comair*, the Court held that a collective judicial proceeding is pending "for the purpose of

reorganization or liquidation" if the proceeding is governed by foreign laws relating to the

adjustment of debt.  *See In re Comair Ltd.*, No. 21-10298 (JLG), 2023 Bankr. LEXIS 363, at *43

(Bankr. S.D.N.Y. Feb. 12, 2023) ("The Provisional Liquidation meets this standard. It is a

collective judicial proceeding governed by the South African Insolvency Act 24 of 1936 and the

Companies Act 61 of 1973, which are laws relating to the adjustment of debt.").  Further, a

foreign proceeding is for the purpose of reorganization or liquidation when there has not been a

final order, and the debtors can still propose a court-approved restructuring agreement.  *See id.* at

*44 (finding that an "interim proceeding" was still for the purpose of reorganization or

liquidation in part because there had not been a final order, and the debtors retained the ability to

propose a court approved restructuring agreement).

Here, the 2023 RJ Proceeding remains pending pursuant to Brazilian Bankruptcy Law—

laws that relate to the adjustment of debt.  *See* July 25 Appellate Order, Ex. A, at 16-17

(Brazilian Appellate Court noting that the 2023 RJ Proceeding remains pending).  Additionally,

while the 2023 RJ Proceeding may have a supervisory element, the Company can still propose a

court approved restructuring agreement.  This is something the Company is pursuing through the

Proposed Plan Amendment.  *See Comair*, 2023 Bankr. LEXIS 363, at *44 (finding that an

"interim proceeding" was still for the purpose of reorganization or liquidation in part because the

debtors retained the ability to propose a court approved restructuring agreement).  Therefore, the

2023 RJ Proceeding is unchanged for purposes of Section 1517(d).  Since the 2023 RJ

Proceeding is still a foreign main proceeding, none of the factors provided by Section 1517(a)

have ceased to exist.  However, as discussed above, this finding does not end the Court's

analysis.

The Court must still determine whether any broader "grounds" for granting the

recognition order have ceased to exist.  The UNCITRAL Guide[4] provides some guidance as to

what "grounds" the Court should consider.  *See Comair*, 2023 Bankr. LEXIS 363, at *26

("Congress has specifically pointed to the [UNCITRAL Guide] as providing historical and

interpretive guidance to the meaning and purpose of the provisions in chapter 15.") (quoting *In

re Black Gold S.A.R.L.*, 635 B.R. 517, 525 (B.A.P. 9th Cir. 2022)).  The UNCITRAL Guide

states,

> Modification or termination of the recognition decision may be a
> consequence of a change of circumstances after the decision on
> recognition, for instance, if the recognized foreign proceeding has
> been terminated or its nature has changed (e.g. a reorganization
> proceeding might be converted into a liquidation proceeding) or if
> the status of the foreign representative's appointment has changed
> or the appointment has been terminated. Also, new facts might
> arise that require or justify a change of the court's decision, for
> example, if the foreign representative disregarded the conditions
> under which the court granted relief.

UNCITRAL Guide § 165.  Therefore, the UNCITRAL Guide instructs the Court to consider the

nature of the foreign proceeding, the status of the foreign representative, and whether the Foreign

Representative disregarded any conditions under which the Court granted the recognition order.[5]

A change in the nature of the foreign proceeding, for example, might provide a basis for a court

to modify a recognition order even where there has not been a change in the foreign proceeding

---

[4] The "UNCITRAL Guide" is first referenced under the introduction to Section III, Discussion.

[5] This factor requires the Court to consider whether the Foreign Representative has "breached conditions on which
relief had been granted."  UNCITRAL Model Law on Cross-Border Insolvency: The Judicial Perspective, U.N.
Comm'n on Int'l Trade L., U.N. Sales No. 23.V.1, at ¶ 61 (2022) (the "UNCITRAL Judicial Guide").

as defined under 11 U.S.C. § 101(23).  *C.f. Comair*, 2023 Bankr. LEXIS 363, at *19 (finding that

a proceeding that was converted from reorganization to liquidation constituted the same "foreign

proceeding" while still allowing an amendment to the recognition order to account for the change

in status.).  Importantly, however, the UNCITRAL Judicial Guide notes that, "a decision to

modify recognition might need to be carefully considered, particularly if any disputed issues

remain subject to foreign court proceedings."  UNCITRAL Judicial Guide ¶ 60 n.91.

        To determine whether the grounds for granting recognition have ceased to exist, the Court

must first "examine what has changed since entry of the Prior Recognition Order."  *See 2017 Oi

Decision*, 578 B.R. at 221.  To date, the Oi Group has implemented certain key aspects required

by the 2024 RJ Plan.  Reply ¶ 13.  It has completed the debt restructuring contemplated by the

2024 RJ Plan.  *Id.*  Further, the Company has appointed a new board of directors and

management, and the new board of directors has completed the sale of certain assets as

contemplated by the 2024 RJ Plan.  Motion ¶ 22-23.  In addition, the Company's liquidity

position has deteriorated significantly since the Recognition Order was entered.  Motion ¶ 46

("Additional circumstances exist to justify the Requested Relief. While the Chapter 15 Debtors

restructured their debts in Brazil under the [2024 RJ Plan] and through these Chapter 15 Cases,

they now lack the liquidity to meet their short-term obligations.").  Ultimately, these changed

circumstances are insufficient to justify terminating the Recognition Order.

        The status of the 2023 RJ Proceedings has arguably changed since the Recognition Order

given the confirmation of the 2024 RJ Plan.  However, any modification to a recognition order

that accounts for a change in the status of the foreign proceeding should seemingly reflect the

change in status.  Here, the Company does not seek to terminate the Recognition Order to reflect

the now supervisory status of the 2023 RJ Proceeding.  The Company, in the Motion, seeks to

terminate the Recognition Order to free itself of the strictures imposed by Section 1528 for a
hypothetical future chapter 11 proceeding.

Likewise, the change in the Company's liquidity position is not a justification for
terminating the Recognition Order.  The Company commenced the 2023 RJ Proceeding and the
accompanying Chapter 15 Cases because it faced significant liquidity concerns.  Verified Petition
at 3 ("In the interim, however, the Company faces significant debt service obligations in the near
term, including the obligation to pay upcoming interest on the 2025 PIK Notes . . . . As a result,
the Company determined that it was necessary to commence the Brazilian Preliminary
Proceeding in anticipation of a potential RJ proceeding to protect their assets, operations, and
their employees.").  If anything, the Company's depleted liquidity is a consistent circumstance
between when the Recognition Order was granted and the date of this Opinion.  The fact that
there are still pending disputes[6] in the 2023 RJ Proceeding also guides the Court against
terminating the Recognition Order.  *See* UNCITRAL Judicial Guide ¶ 61 n.91.

To the extent that the Company seeks to terminate the Recognition Order because it does
not need further relief from this Court—terminating the Recognition Order is procedurally
improper.  *See* Motion ¶ 45 ("[T]he Chapter 15 Debtors' need for chapter 15 relief no longer
exists after (i) the issuance of and subscription to the New Priority Secured Notes, (ii) the
issuance of the roll-up debt, (iii) V.Tal's acquisition of UPI ClientCo, and (iv) the capital increase
converting much of the Company's debt to equity.").  Federal Rule of Bankruptcy Procedure
("Bankruptcy Rule") 5009(c) requires a foreign representative to "file a final report describing
the nature and results of the representative's activities in the court" once the "purpose of a
foreign representative's appearance is completed."  Fed. R. Bankr. P. 5009(c).  If the United

---

[6] The RJ Court still has not decided on the Proposed Plan Amendment or the Company's non-compliance with the
2024 RJ Plan.

States trustee or a party in interest does not file an objection within 30 days, then "the case is presumed to have been fully administered." *See id*.

Unlike Bankruptcy Rule 5009(a), Rule 5009(c) requires a foreign representative to file a report upon the occurrence of an event—the completion of the purpose for the foreign representative's appearance. This requirement is mandatory and not permissive. Fed. R. Bankr. P. 5009(c)(1) ("[W]hen the purpose of the foreign representative's appearance is completed, the representative *must* file a final report . . . .") (emphasis added). Therefore, if the purpose of the Foreign Representative's appearance in the Chapter 15 Cases is completed, then the Foreign Representative must file a final report pursuant to Bankruptcy Rule 5009(c). Here, the Foreign Representative sought chapter 15 protection "to protect the Chapter 15 Debtors and their assets in the United States, given that much of the Chapter 15 Debtors' debt is US-law governed." Verified Petition at 4. Since this debt has now been restructured and the Company asserts that the Foreign Representative does not need further relief from this Court, it is unclear what further purpose exists for the Foreign Representative's appearance.

Important policy goals underlie Rule 5009(c) and the related Section 350. "The purpose of section 350 is to expedite disposition of the case and ensure fair treatment of all interested parties." *In re Lupatech S.A.*, 611 B.R. 496, 503 (Bankr. S.D.N.Y. 2020). Terminating the Recognition Order because the Chapter 15 Debtors do not need further relief from this Court would be an end run around these goals.

Since the Court finds that the Company has not met its burden of proof, that the grounds for granting recognition have ceased to exist, the Court does not proceed with the analysis with respect to the other steps.

### ii.  Sections 1507 and 105(a)

The Company's request to terminate the Recognition Order under other sections of the Bankruptcy Code fails since Section 1517(d) is the exclusive standard governing the modification or termination of a recognition order.  Section 1517(d) "provides the standard for a request to terminate or modify recognition."  *See In re Foreign Econ. Indus. Bank*, 607 B.R. 160, 167 (Bankr. S.D.N.Y. 2019).

Courts have found that certain provisions other than Section 1517(d) are inapplicable to a request to modify or terminate a recognition order.  For example, Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") does not govern a request to modify or terminate a recognition order.  *2017 Oi Decision*, 578 B.R. at 203 ("[Section 1517(d)] provides the standard for a request to terminate or modify recognition—a discretionary standard that examines where there was a mistake in the initial grant of recognition or has been a subsequent change in circumstances. As such, there is no need for Rule 60(b) to fill a gap in the statutory standard.); *In re Foreign Econ. Indus. Bank*, 607 B.R. at 167 ("Bankruptcy courts have found that Rule 60(b) does not apply to vacating orders granting recognition of a foreign proceeding because section 1517(d) of the Bankruptcy Code already provides the standard for a request to terminate or modify recognition.").  Similarly, courts have applied the "antisuperfluous canon" to find that Section 1517(a) does not provide the relevant standard—that standard is provided by Section 1517(d). *See 2017 Oi Decision*, 578 B.R. at 197.

As discussed above, Section 1517(d) already applies a cognizable standard for determining whether to modify or terminate a recognition order.  *2017 Oi Decision*, 578 B.R. at 203.  Since Section 1517(d) provides the relevant standard, there is no need for provisions other than Section 1517(d) to fill a gap in the statutory standard.  *See 2017 Oi Decision*, 578 B.R. at 203 ("[T]here is no need for Rule 60(b) to fill a gap in the statutory standard.").  Sections 1507

and 105(a) do not govern the modification or termination of a recognition order for this reason.
*See 2017 Oi Decision*, 578 B.R. at 198 ("[N]o violence is done to the language of Chapter 15 by
viewing Section 1517(d) as the controlling authority for a request to modify or terminate a prior
order of recognition."). Accordingly, Section 1517(d) is the controlling authority for modifying
or terminating recognition—not Sections 1507 or 105(a).

In so holding, the Court notes that there may be a slight difference of opinion in this
Circuit as to whether a court can modify or terminate a recognition order by applying a standard
other than the one described in Section 1517(d). In *Comair*, the Court amended a recognition
order pursuant to Section 1517(d) and 11 U.S.C. §1522(c) ("Section 1522(c)"). Amended Order
Granting Recognition, Case No. 21-10298, ECF No. 96, ¶ P. The opinion accompanying the
amended recognition order noted that several other courts have amended a recognition order
pursuant only to Section 1522(c).[7] *Comair*, 2023 Bankr. LEXIS 363, at *32. *Comair* did apply
the standard of Section 1517(d) but also modified the recognition order pursuant to Section
1522(c). While not explicitly discussed, the *Comair* court presumably used the affirmative
power to modify or terminate an order provided by Section 1522(c) to amend the recognition
order since Section 1517(d) does not explicitly provide such an affirmative grant.

However, even if a court could modify or terminate a recognition order pursuant only to
Sections 1507 or 105(a), doing so here would be inappropriate. Relief under Section 1507 is
"[s]ubject to the specific limitations stated elsewhere in [chapter 15]." 11 U.S.C. § 1507(a).
Granting relief under Section 1507 that could not be provided under Section 1517(d) would
seemingly offend this restriction. Section 105(a) standing alone also does not provide a basis for
terminating the Recognition Order. Relief under Section 105(a) is only available when

---

[7] Section 1522(c) allows the Court to "modify or terminate" relief "granted under section 1519 or 1521." 11 U.S.C.
§ 1522(c).

appropriate. *2017 Oi Decision*, 578 B.R. at 201. "Under Section 105(a), the standard for appropriate action is whether the exercise of discretion would contravene another section of the Bankruptcy Code." *Id.* Terminating the Recognition Order would directly contravene Section 1517(d). As a result, relief solely pursuant to Section 105(a) is not appropriate.

### b. Whether to dismiss the Chapter 15 Cases

#### i. Sections 305 and 1521

There is a difference in opinion between courts as to whether Section 305 permits a Court to dismiss or suspend a chapter 15 case itself. *See, e.g., In re B.C.I. Fins. Pty Ltd.*, No. 17-11266 (PB), 2025 LEXIS 248827, at *18 n.5 (Bankr. S.D.N.Y. July 8, 2025). This difference of opinion arises from the interplay of Sections 103, 305, 1528, and 1529.[8]

Section 103 is titled "Applicability of chapters," and Section 103(a) states, "[Chapter 1], sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15." 11 U.S.C. § 103(a). Notably, Section 305 is not one of the provisions made applicable to a case under Chapter 15, so Section 103(a) would suggest that Section 305 does not apply to "a case under chapter 15." However, by its terms, Section 305 applies to any case under title 11. It states, "[t]he Court, after notice and a hearing, may dismiss a case under [title 11], or may suspend all proceedings in a case under this title . . . ." 11 U.S.C. § 305(a). Since a chapter 15 case is a "case under [title 11]," relief under Section 305 would seemingly be available. While the generalized nature of Section 305 is not dispositive to the Court's analysis, it does seemingly contradict the text of Section 103(a). Further, Section 305(a)(2) specifically references chapter 15 and Section 1515. This begs the question—*If Congress didn't intend for Section 305 to apply to a chapter 15 case, why would Section 305(a)(2) specifically reference chapter 15 and Section*

---

[8] 11 U.S.C. § 1529 ("Section 1529").

*1515*?  Further complicating the Court's analysis are Sections 1528 and 1529 which specifically

reference Section 305.  Thus, notwithstanding the language of Section 103, it is difficult for this

Court to believe that Congress intended for section 305 to not apply to any circumstance

occurring in a chapter 15 case.  The question for the Court, therefore, is how and when Section

305 applies to a chapter 15 case.  In making this determination, the Court looks to ordinary

principles of statutory interpretation.

      "Statutory enactments should, moreover, be read so as 'to give effect, if possible, to every

clause and word of a statute.'"  *Drawbridge Special Opportunities Fund LP v. Barnet (In re*

*Barnet)*, 737 F.3d 238, 247 (quoting *United States v. DiCristina*, 726 F.3d 92, 96 (2d Cir. 2013));

*see also Nwozuzu v. Holder*, 726 F.3d 323, 328 (2d Cir. 2013) ("[A] statute must be construed to

give effect, if possible, to every clause and word . . . .") (internal quotation marks omitted); *Mary*

*Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) ("One of the most basic

interpretive canons is that a statute should be construed so that effect is given to all of its

provisions, so that no part will be inoperative or superfluous, void or insignificant.") (internal

quotation marks and brackets omitted); *Sebelius v. Cloer*, 569 U.S. 369, 378 (2013) ("[W]here

Congress includes particular language in one section of a statute but omits it in another section of

the same Act, it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion.") (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997)).

In its analysis, the Court is obligated to interpret title 11 as a "coherent scheme" without looking

to certain provisions in isolation.  *See Biden v. Texas*, 597 U.S. 785, 827 (2022) ("We have an

obligation to read the INA as a 'coherent regulatory scheme.'").

31

Because Section 305(a)(2) refers to chapter 15 and because Section 305 is expressly incorporated by reference in sections 1528 and 1529, a comprehensive analysis of the statute as a whole is required.

This Court held in *dicta* that "[Section 305] authorizes the court to abstain from hearing a chapter 15 case, after entry of a recognition order, if 'the purposes of chapter 15 . . . would be best served by such dismissal or suspension.'" *B.C.I. Fins. Pty Ltd.*, 2025 LEXIS 248827, at *17-18. In other instances, this Court has also indicated that Section 305 may apply to the dismissal or suspension of a chapter 15 case. *See In re Millard*, 501 B.R. 644, 652 (Bankr. S.D.N.Y. 2013) ("If the default judgments are found to be valid after appropriate judicial review, and if it then appears—though this would surprise me—that proceedings in the Caymans or this Court would be used to shelter assets in the U.S. without subjecting them to legitimate debts, the Marianas could come back to me to seek dismissal of this chapter 15 case under section 305."); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 375 (Bankr. S.D.N.Y. 2014) (denying request to dismiss chapter 15 case by applying the standard of Section 305(a)(2)); *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 93 (Bankr. S.D.N.Y. 2012) (denying request to abstain from providing an initial recognition order by applying the standard of Section 305(a)(2)). However, none of the cases from this district, apart from *B.C.I. Fins. Pty Ltd.*, discussed whether Section 305 is even applicable to a chapter 15 case in the first instance.

One out-of-circuit court has found that Section 305 is not applicable to a chapter 15 case due to Section 305's omission from Section 103(a). *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 239 (Bankr. S.D. Fla. 2013). The *British Am.* court held that Section 305 still retained a purpose—its inapplicability to chapter 15 proceedings does not render Section 305 void. In that court's view, Section 305 applies to plenary cases under title 11

32

that are filed after a chapter 15 court has already recognized a foreign main proceeding.  *Id.* at

239 n.40.

Some commentators have disagreed with the *British Am.* court's holding—noting that the

*British Am.* court did not address the reference to Section 305 in Section 1529.  Daniel M.

Glosband, *The International Scene, Abstention and Chapter 15*, 39-10 ABIJ 18, 19 n.10 (Oct.

2020).  Those commentators argue that Section 305 is imputed to chapter 15 through Section

1529(4).  *Id.*  Section 1529 states, "[i]f a foreign proceeding and a case under another chapter of

this title are pending concurrently regarding the same debtor, the court shall seek cooperation and

coordination under sections 1525, 1526, and 1527, and the following shall apply . . . ."  11

U.S.C. § 1529.  Section 1529(4), in turn, states, "[i]n achieving cooperation and coordination

under sections 1528 and 1529, the court may grant any of the relief authorized under section

305."  The commentators argue that this reference imputes Section 305 to chapter 15

proceedings.  *See The International Scene*, 39-10 ABIJ at 19.  As stated earlier, this Court also

previously held that Section 305 applies to chapter 15—noting that most decisions finding

Section 305 inapplicable "make no mention of [Section 305(a)(2)] . . . ."  *B.C.I. Fins. Pty Ltd.*,

2025 LEXIS 248827, at *18 n.5.

### 1.  Introduction

The Court has struggled with how to interpret Section 305 within the context of a chapter

15 case.  The text of title 11 and legislative history, however, suggests that the only way to

reconcile Sections 103(a), 305, 1528, and 1529 is to hold that Section 305 does not provide for

the dismissal of a chapter 15 case.

### 2.  Section 1529

As discussed *supra*, commentators point to Section 1529(4) as creating an ambiguity in whether Section 305 applies to chapter 15. This question arises because of a reference to Section 305. Section 1529(4) states, "[i]n achieving cooperation and coordination under Sections 1528 and 1529, the court may grant any of the relief authorized under section 305." The context of Section 1529, however, shows that this reference does not make Section 305 applicable to the dismissal or suspension of chapter 15 cases themselves.

Section 1529 provides guidelines for situations where "a foreign proceeding and a case under another chapter of [title 11] are pending concurrently regarding the same debtor." 11 U.S.C. § 1529. By its terms, subsection (4) only applies "[i]f a foreign proceeding and a case under *another chapter of this title* are pending concurrently regarding the same debtor . . . ." *Id.* (emphasis added). Therefore, subsection (4)'s "grant [of] any of the relief authorized under section 305" only refers to the Court's ability to use Section 305 with respect to a case under another chapter of title 11. Likewise, subsection (4)'s reference to Section 1528 suggests the same finding. In relevant part, Section 1528 states, "[a]fter recognition of a foreign main proceeding, *a case under another chapter of this title* may be commenced only if the debtor has assets in the United States." 11 U.S.C. § 1528 (emphasis added). This context therefore supports the interpretation that Section 305(a)(2) is limited to dismissal or abstention with respect to a case commenced under another chapter of title 11 and is not applicable to dismissal or abstention with respect to the chapter 15 case.[9] While an alternative reading of Section 1528 in isolation may suggest that Section 305 could apply to the dismissal or suspension of the chapter 15 case and not just the other case (as referenced by Section 1528), the broader context of title 11 reflects otherwise.

---

[9] By amending Section 305(a)(2), Congress intended that any dismissal or abstention request where there has been an order for recognition entered be addressed under Section 305(a)(2) and not under Section 305(a)(1).

The purpose of chapter 15 is to "provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). Dismissing a chapter 15 case would leave the foreign main proceeding without these mechanisms. Discussion of some hypothetical situations may help to explain this.

First, if a petition is filed under chapter 15, but the case does not satisfy the standards of Section 1517, then a recognition order should not be granted and relief, for example, under 11 U.S.C. § 1520 does not take effect. The provisions governing the effect of recognition ensure that the relief provided by this Court does not interfere with the pending foreign proceeding.

Second, if a recognition order has been granted, chapter 15 provides a mechanism for concluding or terminating the recognition order through Section 1517(d). This, again, ensures that relief provided from this Court does not conflict with the pending foreign proceeding.

Third, if a recognition order has been entered, chapter 15 does not prevent the Court from providing relief under another chapter of title 11 should the foreign representative seek to commence a case under another chapter of title 11. While Section 1528 limits relief under the non-chapter 15 case to assets within the territorial jurisdiction of the United States, relief could still be provided with respect to "other assets of the debtor that are within the jurisdiction of the court under sections 541(a) of [title 11], and 1334(e) of title 28, to the extent that such other assets are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter." 11 U.S.C. § 1528. This restriction ensures that the title 11 case does not interfere with the pending foreign proceeding, while providing the foreign debtor with access to title 11 relief for assets that are not under the jurisdiction of another court.

Fourth, if the purpose of the foreign representative's appearance is completed, then Rule 5009(c) requires the foreign representative to file a final report. Subject to the requirements of

subsection (2) and (3), the case is then presumed to be fully administered, and the Court should

close the case pursuant to Section 350.  Therefore, Section 5009(c) and Section 350 provide

important procedural restrictions.

Sections 305 and 103(a) therefore reflect Congress' goal that "Section 1509 erect[] a

structure in which the foreign representative must first pass through the bankruptcy court by way

of a foreign proceeding recognition prior to applying to a court in the United States for relief

requiring the comity or cooperation of that court."  *In re Loy*, 380 B.R. 154, 164 (Bankr. E.D. Va.

2007); *see also* H.R. Rep. No. 109-31, pt. 1, at 110 (2005) ("[C]hapter 15 is intended to be the

exclusive door to ancillary assistance to foreign proceedings. The goal is to concentrate control

of these questions in one court. That goal is important in a [f]ederal system like that of the United

States with many different courts, state and federal, that may have pending actions involving the

debtor or the debtor's property.").

### 3.  Section 1334

While Section 305 is titled "[a]bstention" and is frequently thought of in jurisdictional

terms, Section 305 is not a "jurisdictional decree."  *See Stern v. Marshall*, 564 U.S. 462, 480, 131

S. Ct. 2594, 2607 (2011) ("Section 157(b)(5) does not have the hallmarks of a jurisdictional

decree. To begin, the statutory text does not refer to either district court or bankruptcy court

'jurisdiction' . . . .").  Instead, bankruptcy court jurisdiction is governed by Section 1334.  Since

Section 1334 governs abstention, understanding how it interacts with Section 305 could prove

useful to understanding whether the Court's interpretation of Section 305 would interfere with

the statutory scheme underlying chapter 15.

While granting district courts subject matter jurisdiction for cases under title 11, Section

1334(c) also permits district courts to "abstain[] from hearing a particular proceeding arising

36

under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Usually, courts interpret Section 1334(c)(1) as providing the basis for abstaining from a *particular proceeding* while Section 305 provides courts with a basis for abstaining from an entire *case*. 2 COLLIER ON BANKRUPTCY ¶ 305.01 (16th ed. 2025) ("If a party wishes the bankruptcy court to abstain from a particular adversary proceeding, section 1334(c) is the proper vehicle; if it seeks suspension of all proceedings within a case, section 305(a) should be invoked."). Importantly, subsection (c) contains a notable carveout.

Section 1334(c)(1) states, "*[e]xcept with respect to a case under chapter 15 of title 11,* nothing in [Section 1334] prevents a district court . . . from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1) (emphasis added). Therefore, Section 1334(c)(1) does not permit abstention "with respect to a case under chapter 15." *Id.* Courts offer differing interpretation of "[e]xcept with respect to a case under chapter 15 of title 11" (the "Excepting Clause"). If the Excepting Clause does not permit the Court to abstain from a chapter 15 case itself, then the statutory scheme would clearly suggest that Section 305 is inapplicable to the chapter 15 case. Therefore, the Court must consider what is the proper interpretation of the Excepting Clause.

One court has found that subsection (c)(1) permits courts to abstain from hearing actions related to a case under chapter 15 but prohibits abstention from actions arising "under" chapter 15.[10] *Abrams v. Gen. Nutrition Cos.*, No. 06-1820 (MLC), 2006 U.S. Dist. LEXIS 68574, at *22 (D.N.J. Sep. 25, 2006). This approach would seemingly suggest a policy underlying chapter 15 that courts cannot abstain from hearing a chapter 15 case—if Section 305 permitted abstention, then this grant of authority would conflict with Section 1334(c)(1). However, other courts have

---

[10] This court did not discuss whether actions "arising in" a chapter 15 cases are excepted.

interpreted subsection (c)(1) differently by considering the remainder of its text.  Under these opinions, the exception provided by subsection (c)(1) "must refer to matters arising under, arising in or related to a case under chapter 15, *and not the chapter 15 case itself.*"  *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 238 (Bankr. S.D. Fla. 2013) (emphasis added); *accord Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 796 F.3d 520, 526 (5th Cir. 2015) (agreeing with *British Am.* but also finding that Section 1334 applies to a chapter 15 case itself).  Under this interpretation, a chapter 15 case itself may not be subject to the exception provided by Section 1334(c)(1).

The Excepting Clause must be read in the context of subsection (c)(1).  The Excepting Clause modifies a clause that permits abstention with respect to a particular proceeding that arises under title 11 or arises in or relates to a *case* under title 11.  Subsection (c)(1) does not permit abstention with respect to the title 11 case itself.  *British Am.*, 488 B.R. at 238.  Therefore, the phrase, "[e]xcept with respect to a case under chapter 15 of title 11," must mean that abstention is not permitted with respect to particular proceedings that arise under the chapter 15 case or arising in or are related to a chapter 15 case.  Subsection (c)(1) does not permit abstention from a title 11 case itself, so the Excepting Clause does not permit abstention of a chapter 15 case either.  While this finding lends credence to the view that Sections 305's application to chapter 15 does not conflict with Section 1334, it does not show that the plain meaning of Sections 305 and 103(a) is wrong.  As a result, the Court only finds that Section 1334 does not render Sections 103(a) and 305 ambiguous.

### 4.  Other Provisions

The Court's interpretation does not render other provisions of title 11 meaningless.  Of particular importance are the functions of Sections 305(a)(2), 305(b), or 1529(4).

Under the Court's interpretation, Section 305(a) provides two independent standards for dismissal or suspension that apply to different circumstances.  Subsection (a)(1) provides the standard that ordinarily applies to cases commenced under title 11—the Court must weigh the interests of creditors and the debtor.  Subsection (a)(2), however, provides the applicable standard once a foreign proceeding has been recognized under chapter 15.  That standard requires the Court to consider whether abstention would further the purposes of chapter 15. There is good reason for Congress to adopt a different standard in this context.  Once a foreign proceeding has been recognized, the Court must consider how its actions could interfere with the proceedings occurring overseas.  If Section 305 does not allow the Court to dismiss or suspend the chapter 15 case, subsection (a)(2) then governs situations where a court granted recognition of a foreign proceeding and the Court subsequently is considering whether to dismiss a non-chapter 15 case concerning the same debtor.

Section 305(b) also retains a purpose.  Subsection (b) states, "[a] foreign representative may seek dismissal or suspension under subsection (a)(2) of this section."  11 U.S.C. § 305(b). This subsection provides the foreign representative with the affirmative ability to seek the dismissal or suspension of the non-chapter 15 case.  Section 305(b), therefore, avoids ambiguity as to whether dismissal or suspension of a case is available to the foreign representative.[11] Alternatively, Section 305(b) could seemingly alleviate any concerns over the foreign representative's standing to pursue Section 305 relief once a chapter 15 case has been closed. Similarly, Section 1529(4) still retains a purpose under the Court's interpretation.  It also exists to avoid any ambiguity over Section 305's applicability to non-chapter 15 cases that may arise due

---

[11] In addition, 11 U.S.C. § 1509 allows courts to impose "limitations" on a foreign representative.  Section 305(b) therefore overrides any limitation that a court may impose on the foreign representative to pursue relief under Section 305(a)(2).

to Section 103(a).  The legislative history of chapter 15's implementing statute, discussed *infra*,

furthers this interpretation.

### 5.  Legislative History

In 2005, Congress made a number of changes to title 11 and the United States Code

through passage of the Bankruptcy Abuse Prevention and Consumer Protection Act

("BAPCPA").  Of relevance to this discussion, BAPCPA (i) repealed 11 U.S.C. § 304 and

replaced it with chapter 15; (ii) amended Section 103(a); (iii) amended Section 305; and (iv)

amended 28 U.S.C. § 1334 ("Section 1334").  The amendment to Section 103(a) was done "to

clarify the provisions of the Bankruptcy Code that apply to chapter 15 and to specify which

portions of chapter 15 apply in cases under other chapters of title 11."  H.R. Rep. No. 109-31, pt.

1, at 118 (2005).  Notably, Section 103(a) was changed to make 11 U.S.C. §§ 307 and 362(n)

applicable to chapter 15.  Second, Section 305 amended Section 305(a)(2).  Prior to the

enactment of BAPCPA, Section 305(a)(2) read, "[t]he court, after notice and a hearing, may

dismiss a case under this title, or may suspend all proceedings in a case under this title, at any

time if— . . . (2)(A) there is pending a foreign proceeding; and (B) the factors specified in

section 304(c) of this title warrant such dismissal or suspension."  H.R. Rep. No. 109-31, pt. 1, at

186 (2005).  BAPCPA implemented today's Section 305(a)(2) which states, "[t]he court, after

notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a

case under this title, at any time if— . . . (2)(A) a petition under section 1515 for recognition of a

foreign proceeding has been granted; and (B) the purposes of chapter 15 of this title would be

best served by such dismissal or suspension."  *Id.*  Third, Section 1334(c)(1) was amended, in

relevant part, by substituting, "[e]xcept with respect to a case under chapter 15 of title 11,

nothing in" for "[n]othing in."  *Id.* at 328.  BAPCPA modified the relevant provisions to this

discussion at the same time and through the same act and this lends further support for the

argument that there is a clear statutory scheme to limit Section 305's applicability in chapter 15

cases.  *See Drawbridge*, 737 F.3d at 250.

In explaining chapter 15's purpose, the House Report states,

> Cases brought under chapter 15 are intended to be ancillary to
> cases brought in a debtor's home country, unless a full United
> States bankruptcy case is brought under another chapter. Even if a
> full case is brought, the court may decide under section 305 to stay
> or dismiss the United States case under the other chapter and limit
> the United States' role to an ancillary case under this chapter. If the
> full case is not dismissed, it will be subject to the provisions of this
> chapter governing cooperation, communication and coordination
> with the foreign courts and representatives.

H.R. Rep. No. 109-31, pt. 1, at 106 (2005).  This statement implies that Section 305 is only

intended to apply to cases other than chapter 15—"even if a full case is brought, the court may

decide under section 305 to stay or dismiss the *United States case* under *the other chapter*." *See

id.* (emphasis added).  The House Report reiterates this interpretation in its description of 11

U.S.C. § 1504 ("Section 1504"):

> The title "ancillary" in the title of [Section 1504] and in the title of
> [chapter 15] emphasizes the United States policy in favor of a
> general rule that countries other than the home country of the
> debtor, where a main proceeding would be brought, *should usually
> act through ancillary proceedings in aid of the main proceedings,
> in preference to a system of full bankruptcies (often called
> "secondary" proceedings) in each state where assets are found.*
> Under the Model Law, notwithstanding the recognition of a foreign
> main proceeding, full bankruptcy cases are permitted in each
> country (see sections 1528 and 1529). *In the United States, the
> court will have the power to suspend or dismiss such cases where
> appropriate under section 305*.

*Id.* at 108 (emphasis added).  This description therefore notes that Section 305 gives courts the

ability to suspend or dismiss "full bankruptcy cases,"—not chapter 15 cases themselves.  *Id.*

41

This seemingly furthers the United States policy of preventing a "system of full bankruptcies . . .

in each state where assets are found." *Id.*

In describing Section 1529, the House Report states,

> [Section 1529] follows the Model Law almost exactly, but
> subsection (4) adds a reference to section 305 to make it clear the
> bankruptcy court may continue to use that section, as under present
> law, to dismiss or suspend a United States case as part of
> coordination and cooperation with foreign proceedings. *This
> provision is consistent with United States policy to act ancillary to
> a foreign main proceeding whenever possible.*

*Id.* at 117 (emphasis added).  This quote helps to explain Section 305's reference in Section

1529.  Use of Section 305 is permitted to dismiss a United States case to further coordination and

cooperation with foreign proceedings.  The "United States case" seemingly refers to cases other

than chapter 15 since the House Report notes that permitting Section 305 is "consistent with

United States policy to act ancillary to a foreign main proceeding whenever possible." *Id.*  It is

unclear how dismissing a chapter 15 case could ever result in a situation where a United States

court acts "ancillary" to a foreign main proceeding.  Indeed, chapter 15 is titled "Ancillary and

Other Cross-Border Cases"—its purpose is to "provide effective mechanisms for dealing with

cases of cross-border insolvency."  11 U.S.C. § 1501(a).  As a result, dismissing a chapter 15

case pursuant to Section 305 would be inconsistent with a stated purpose of chapter 15.  Chapters

7, 11 and 13 of the Bankruptcy Code each contain specific provisions for dismissal of cases

under those chapters.  But, chapter 15 does not contain a specific dismissal provision.  Perhaps

that is additional evidence that Congress did not intend for a chapter 15 case to be subject to

dismissal.

Finally, the Court does not believe that it can dismiss or suspend a chapter 15 case

through Section 1521.  Section 1521(a) only allows the Court to grant "any appropriate relief" if

doing so is "necessary to effectuate the purpose of [chapter 15]."  Prohibiting abstention from

chapter 15 furthers a purpose of chapter 15. *See Firefighters' Ret. Sys.*, 796 F.3d at 525-26 ("The 2005 amendment to § 1334(c)(1), which limits a court's ability to permissively abstain from Chapter 15 cases, is consistent with Chapter 15's emphasis on concentrating the resolution of cases involving foreign bankruptcies in one court system."). Section 1501(a) states the purpose of chapter 15—"[t]he purpose of [chapter 15] is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency . . . ." 11 U.S.C. § 1501(a).

Section 305(a)(2) is not a part of the Model Law and is not part of chapter 15 except for sections 1528 and 1529 which the Court has previously addressed. Therefore, it is unclear how, other than in the context of sections 1528 and 1529, the Court could find that abstention or dismissal from an ancillary case is provided for in the Model Law. As discussed above, the only way that this Court was able to harmonize sections 103, 305(a)(2), 1528 and 1529 of the Bankruptcy Code, given the legislative history, and 28 U.S.C. §1334, results in the interpretation that Congress did not intend Section 305(a)(2) be utilized to suspend or dismiss a chapter 15 case. Therefore, it would be difficult for this Court to find that abstention or dismissal of a chapter 15 case is necessary to effectuate the purpose of chapter 15.

Nevertheless, if Section 1521(a) allowed the Court to dismiss or abstain from a chapter 15 case, doing so here would not be appropriate. Relief under Section 1521(a) is only available when it is necessary to effectuate the purpose of chapter 15—dismissing these Chapter 15 Cases is not necessary to effectuate the purpose of chapter 15. As discussed above, Section 1501(a) provides that the purpose of chapter 15 is to incorporate the Model Law "so as to provide effective mechanisms for dealing with cases of cross-border insolvency." Section 1501(a) then

43

provides a list of objectives that the use of chapter 15 is meant to achieve.  11 U.S.C. § 1501(a).

Those are:

> (1) cooperation between—
>     (A) courts of the United States, United
>     States trustees, trustees, examiners, debtors, and debtors in
>     possession; and
>     (B) the courts and other competent authorities of foreign
>     countries involved in cross-border insolvency cases;
> (2) greater legal certainty for trade and investment;
> (3) fair and efficient administration of cross-border
> insolvencies that protects the interests of all creditors, and other
> interested entities, including the debtor;
> (4) protection and maximization of the value of the debtor's
> assets; and
> (5) facilitation of the rescue of financially troubled businesses,
> thereby protecting investment and preserving employment.

*Id.*

Dismissing these Chapter 15 Cases would not satisfy subsections (1) and (3).  The

Brazilian Appellate Court has requested that the Chapter 15 Cases remain open.  On August 29,

2025, Judge Costa of the Brazilian Appellate Court issued a decision that ratified its prior July 25

Appellate Order regarding this request.  July 25 Appellate Order, ECF No. 56, Ex. A, at 16-17;

August 29 Temporary Injunction Order, ECF No. 118, Ex. A., at 33-34. In justifying this

recommendation, the Brazilian Appellate Court stated that, "[i]n this context, it is essential and

important for the [RJ Court] to maintain Chapter 15 for the effectiveness of the decisions handed

down in the context of [the 2023 RJ Proceeding], as well as for compliance with the judicial

reorganization plan approved and homologated in court, and analysis of any amendments."

August 29 Temporary Injunction Order, Ex. A., at 33.  While the Company sought

reconsideration of this recommendation, the Brazilian Appellate Court did not seem to retract its

recommendation in its September 4 Order.  *See* September 4 Order, ECF No. 121, Ex. A, at 13-

14 (noting Brazilian Appellate Court's "position on the limits of international cooperation has

been clarified" through its reasoning in the August 29 Temporary Injunction Order). These communications suggest that Judge Costa of the Brazilian Appellate Court clearly wants this Court to continue to cooperate with the Brazilian courts and wants the Chapter 15 Cases to continue. Accordingly, the Court does not find that subsection (1) of Section 1501(a) supports dismissal of the Chapter 15 Cases.

It is also unclear that dismissing the Chapter 15 Cases would promote the "fair and efficient administrations of cross-border insolvencies that protect the interests of all creditors, and other interested entities, including the debtor." *See* 11 U.S.C. § 1501(a)(3). While the Company argues in the Motion that dismissal of the Chapter 15 Cases would further subsection (3) since dismissal would permit a hypothetical future chapter 11 filing, Motion ¶ 56, it is not a certainty that the Company would file a chapter 11 case or that a future chapter 11 filing would be successful if the Company pursued it. The proper framing for purposes of subsection (3) is whether dismissal of the Chapter 15 Cases—not a hypothetical future chapter 11 filing—would promote the fair and efficient administration of the case that protects the interests of creditors and other interested parties. Here, dismissing the Chapter 15 Cases would not accomplish this objective since it is possible that the Company could need further relief from this Court.

The Company argues in the Motion that the "Chapter 15 Debtors' need for chapter 15 relief no longer exists after (i) the issuance of and subscription to the New Priority Secured Notes, (ii) the issuance of the roll-up debt, (iii) V.Tal's acquisition of UPI ClientCo, and (iv) the capital increase converting much of the Company's debt to equity"—all of which have been completed. *See* Motion ¶ 45; *see also* Hr. Tr. 135:3-8, Aug. 14, 2025 (Padis stating that the Proposed Plan Amendment would not require cooperation or orders from this Court). However, the Court must also consider certain statements of Mr. Padis during cross-examination and the

statements of the Brazilian Appellate Court. *See* Hr. Tr. 166:15-167:3, Aug. 14, 2025 (Padis

stating that it is possible the Company could seek recognition from this Court for hypothetical

new notes issued under the 2024 RJ Plan and that the hypothetical lenders may even require the

Company to do so); August 29 Temporary Injunction Order, Ex. A. at 35 ("[T]he maintenance of

Chapter 15 is necessary and essential for the effectiveness of the decisions handed down in the

context of Judicial Recovery in this Court of Justice, as well as for compliance with the judicial

recovery plan approved and homologated by the courts, and analysis of any amendments."). In

contrast, the filing of a future chapter 11 case is only speculative. The Court notes that parties

may not be able to attain such relief from this Court if the Chapter 15 Cases were dismissed. *See*

Hr. Tr. 166:15-167:3, Aug. 14, 2025. The 2023 RJ Proceeding is active and the Company is

currently pursuing a Proposed Plan Amendment to the 2024 RJ Plan which this Court already

gave full force and effect to. *See id.*

Further, the Court finds that dismissing the Chapter 15 Cases alone is unlikely to further

the objectives provided by subsections (4), "protection and maximization of the value of the

debtor's assets" and (5), "facilitation of the rescue of financially troubled businesses, thereby

protecting investment and preserving employment." The Company's arguments for why

dismissing the Chapter 15 Cases furthers these objectives center on how a future chapter 11

filing would maximize the value of the Company, *see* Motion ¶ 56; 11 U.S.C. § 1501(a)(4), and

facilitate the rescue of a financially troubled business, *see* Motion ¶ 57; 11 U.S.C. § 1501(a)(5).

The Court notes that there is no question that the Company is in dire financial condition.

Hr. Tr. 62:2-14, Aug. 14, 2025 (Milliet stating that the Company has "very restricted cash" and

expects to end August 2025 with only R$30 million); *see also* Joint Ex. 17, Houlihan Lokey Oi

S.A. July 2025 DIP Discussion Materials, at 1. It has not been making certain payments under

the 2024 RJ Plan for some months.  Hr. Tr. 63:9-13, Aug. 14, 2025.  The Brazilian law experts all

agree that there is no way under Brazilian Bankruptcy Law to further restructure the Company

other than through a consensual arrangement and/or an amendment of the 2024 RJ Plan to

sufficiently alter the terms of the 2024 RJ Plan.  Certain types of claims, and the debts incurred

after the commencement of the 2023 RJ Proceeding, cannot be compromised except

consensually under Brazilian Bankruptcy Law.  And the Company cannot file a third RJ

proceeding until after 5 years have passed from the date that the 2024 RJ Plan was confirmed by

the RJ Court.  *See* Hr. Tr. 87:24-88:2, Aug. 14, 2025.

The Company is a systemically important corporation which employs approximately

14,000 employees.  *See* Milliet Declaration ¶ 23; Hr. Tr. 71:5-24, Aug. 14, 2025.  Clearly, a

successful rescue of the Company would be a better outcome than a liquidation that would occur

over six plus years.  *See* Hr. Tr. 137:2-14, Aug. 14, 2025 (Padis stating that *falências* usually last

between six and 16 years).  However, as discussed above, the relevant question is whether

dismissing the Chapter 15 Cases would further these objectives—not whether a speculative

chapter 11 case would further these objectives.

Dismissal of the Chapter 15 Cases alone will not maximize value or facilitate the rescue

of the Company.  The objective provided by Section 1501(a)(5) is the "facilitation of the rescue

of financially troubled businesses, thereby *protecting investment and preserving employment*."

11 U.S.C. § 1501(a)(5) (emphasis added).  Dismissal of the Chapter 15 Cases may not protect

investment and preserve employment.  Instead, dismissal would leave the RJ Court and parties to

the 2023 RJ Proceeding without means to seek relief from this Court should they need it.  The RJ

Court still has the tools provided by Brazilian Bankruptcy Law to deal with these objectives in

this difficult situation.  It is also possible that the Brazilian government may provide assistance

47

with the formulation and/or implementation of solutions to deal with the operational and

financial challenges that the Company faces, given the Company's systemic importance.

Even if the Court were to broaden its consideration of the requested relief so as to assume

that the Company would file under chapter 11 if the Chapter 15 Cases were dismissed, the

challenges of any future chapter 11 show that dismissing the Chapter 15 Cases would not

necessarily maximize value or facilitate the rescue of the Company.  If the Court were to dismiss

the Chapter 15 Cases and the Company were to subsequently file under chapter 11 in the United

States, the chapter 11 filing might protect and maximize the value of the debtor's assets and

result in a confirmed plan of reorganization which resolves treatment of Exempt Claims,

executory contracts, and debts incurred after the filing of the 2023 RJ Proceeding.

But it also might not.  All of the assets of the Company are part of the estate under

supervision of the RJ Court and are located in Brazil.  If a chapter 11 case were to be filed for the

Company, these assets may also be part of the estate under the supervision of the United States

Bankruptcy Court.  If neither proceedings are ancillary proceedings, the Model Law and chapter

15 will likely not provide a basis for resolving any disputes that arise regarding any sales of

assets, dueling jurisdiction over claims, the treatment of Exempt Claims, debts incurred after the

filing of the 2023 RJ Proceeding and executory contracts, the granting and enforcement of

debtor-in-possession financing and related liens, requests to dismiss or abstain with respect to the

chapter 11 case, and the recognition and enforcement of orders entered by the United States

Bankruptcy Court in Brazil, to name just a few issues that might arise.

The RJ Court and the United States Bankruptcy Court might be able to work these

complex issues out so that the restructuring process works and results in a successful

restructuring of the Company.  But, they also may not be able to do so.  So, the success of a

chapter 11 case, and thus the protection and maximization of the value of the assets, under these facts is simply not certain.

However, even if the Court were to find that dismissal of the Chapter 15 Cases furthered the objectives provided by subsections (4) and (5), this alone is not a sufficient basis under section 1521(a) for the Court to dismiss the Chapter 15 Cases, in light of the failure to satisfy the purposes set forth in subsections (1) and (3).

The Court has been deferential to the Brazilian Appellate Court's request to wait until the RJ Court rules on the Proposed Plan Amendment and compliance with the 2024 RJ Plan for several months. However, given that the Court's ruling will not alter the *status quo*, the Court has determined to issue its ruling now, rather than wait. The Court hopes that both the RJ Court and the Brazilian Appellate Court understand that no disrespect is intended with respect to either Court.[12]

Having considered the contradiction between Section 103 and Section 305(a)(2) by reviewing title 11, including the legislative history of the applicable provisions, the Court finds that there is not a basis to grant dismissal of the Chapter 15 Cases.

### 6.  Conclusion

While there may be policy goals underlying different interpretations, the role of the Court is to interpret the meaning of the statute as Congress intended. As a result, the Motion is denied.

Dated: October 1, 2025
       New York, New York

                          */s/ Lisa G. Beckerman*_____
                          THE HONORABLE LISA G. BECKERMAN
                          UNITED STATES BANKRUPTCY JUDGE

---

[12] The Court appreciates the Brazilian Appellate Court keeping this Court apprised about developments in its court and the mediation ordered by such court between the Company and V.tal. The best way to send email to this Court is Beckerman.Chambers@nysb.uscourts.gov.