# EXHIBIT F

23-10193-lgb    Doc 130-6    Filed 10/02/25    Entered 10/02/25 15:25:14    Exhibit F - Judge Costa October 1 Ruling (machine translation)    Pg 2 of 10

Machine Translated by Google

FIRST CHAMBER OF PRIVATE LAW OF THE COURT OF JUSTICE
OF THE STATE OF RIO DE JANEIRO

Instrument Appeal No. 0083339-75.2025.8.19.0000

Appellants: OI SA – IN JUDICIAL RECOVERY, PORTUGAL TELECOM INTERNATIONAL FINANCE BV – IN JUDICIAL RECOVERY and OI BRASIL HOLDINGS COOPERATIEF UA – IN JUDICIAL RECOVERY

Rapporteur: Judge Monica Maria Costa

**DECISION**

**This is an appeal** filed by OI SA, PORTUGAL TELECOM INTERNATIONAL FINANCE BV and OI BRASIL HOLDINGS COOPERATIEF UA, all under judicial recovery, **against the index decision no. 230551050,** issued by the Court of the 7th Business Court of the Capital District, in incident no. 0960108-88.2025.8.19.0001, charged with dependence on the main judicial reorganization proceeding (no. 0090940-03.2023.8.19.0001), **which: (1) determined the lifting of the judicial secrecy attributed to the proceeding; (2) ordered its charging as an "INCIDENT OF TRANSITION OF ESSENTIAL PUBLIC SERVICES"; (3) partially anticipated the effects of the liquidation to: (3.1): suspend the extra-bankruptcy obligations, due and falling due, for a period of 30 (thirty) days; (3.2) remove from the management of the companies, Oi Group and subsidiaries Serede and Tahto, its CEO, Mr. Marcelo Millet; (3.3) determine that no business be conducted through the company Íntegra; (3.4) decree the unavailability of NIO shares and the amount of the arbitration subject to the transaction between Oi, V.Tal and Anatel, with the TCU, drawing up the respective term; (4) appointed Dr. Bruno Rezende to carry out the public services transition process and intervene, in part, in the Oi Group, as established above; (5) appointed Dr.**

**Tatiana Binato to carry out the transition process of the public services underlying those provided by Oi, through Serede and Tahto, and to intervene, in part, in the two subsidiaries, as set forth above; 6) ordered the attachment of a copy of this petition to the judicial reorganization records of the Oi Group and its subsidiaries Serede and Tahto; 7) notified the Public Prosecutor's Office. Finally, it ordered the subpoena of Anatel, CADE, TCU, and the Ministry of Aeronautics.**

In addition to the previous decision, judicial provision **No. 230551050 was issued,** thus clarifying that: (1) the employees of the companies involved: Oi Group, Serede and Tahto, will continue to perform their duties and, naturally, receive their salaries during the period of management exercised by the Judicial Administration; (2) the Group's Administration has now been dismissed.



Machine Translated by Google

23-10193-lgb    Doc 130-6    Filed 10/02/25    Entered 10/02/25 15:25:14    Exhibit F -
Judge Costa October 1 Ruling (machine translation)    Pg 3 of 10

Página 45

(Board of Directors and Board of Directors) is obliged to provide the Judicial Administrators - Managers with any and all information requested of them, as well as to provide access to any and all equipment containing the necessary information; (3) all the above resolutions ensure the continuity of the activities of the companies involved, including with regard to the responsibility of the removed administrators to provide the means to achieve this, always with due regard to the continuity of the public service provided.

In the draft on fls. 02 to 36 (index no. 02), the appellants initially raise the nullity of the appealed decision, arguing that it would be *extra petita* and out of step with the principle of no surprise, initiating, in practice, an unprecedented process of "transition of essential public services", through an improper means, in addition to creating a type of liquidation not provided for by law.
They point out that the appealed decision, by modifying the purpose of the original incident, allocating it to "processing the transition of public services provided by the Oi Group," failed to comply with the ruling of this Rapporteur in interlocutory appeal No. 0071515-22.2025.8.19.0000, which suspended all actions related to the transition plan for essential services provided by the Oi Group until the amendment to the judicial reorganization plan was reviewed. They emphasize that the adoption of such burdensome measures against the Companies Under Reorganization could not have been decided without reviewing the amendment to the judicial reorganization plan. They emphasize that, just five days ago, they provided considerations to the first report presented by the Judicial Observer (Watchdog) in the proceedings of incident No. 0073596-38.2025.8.19.0001, providing information on the strategic projects of their operations currently underway, with a focus on optimizing activities and reducing liabilities.
They emphasize that there is no evidence of misconduct that could lead to the conclusion of asset depletion. They emphasize that the main reason why the findings of alleged "asset depletion" fail is the fact that the alleged "substantial liquidation" (art. 73, item VI, of the LRE), resulting from asset sales, is solely based on the sales of assets that were expressly provided for in the judicial reorganization plan or that were expressly authorized by the Honorable Reorganization Court. Regarding the sale of the UPI ClientCo, they assert that it is not possible to conclude that the sale of this asset, even without monetary consideration, constitutes any evidence of substantial liquidation, since: (i) despite the lack of inflow of financial resources, the sale of the UPI ClientCo resulted in a significant financial gain for the Oi Group; (ii) the entire competitive bidding process was conducted in strict compliance with Clauses 5.2.2.1.2, "iii", 5.2.2.1.3, "ii", and 5.2.2.1.5, "i" and "iii", of the judicial reorganization plan, and the proposal met all the conditions of Clause 5.2.2.1.5 and was ratified and approved by CADE and ANATEL without restrictions. They emphasize that the failure to meet a financial expectation of the Oi Group, due to market conditions, does not resemble a measure of asset disposal in a substantial liquidation of assets. They emphasize that the UPI ClientCo had a totally loss-making operation, which had been draining Oi's cash, and that



The discontinuation of this operation resulted in an average monthly decrease of R$532 million in costs and expenses. They clarify that, regarding real estate, they recently submitted a new property appraisal report in the main proceedings, having a broad portfolio of 7,921 properties, valued at approximately R$5.8 billion; of these, 7,219 are effectively available for sale, totaling approximately R$4.8 billion, according to recent appraisals (E&Y).

They state that, despite the provisional cash mismatch scenario and the difficulty in reporting positive operating results due to legacy liabilities, Oi continues to generate significant operating revenue, primarily from its strategic "Oi Soluções" front, which is a surplus activity when analyzed as a business unit. They note that, in addition to the thousands of properties, "Oi Soluções," and the various other assets through which it provides private and public telecommunications services to dozens of key Brazilian agencies, the Oi Group owns several other assets of significant value, listing them in their reasons.

They note that the removal of the Board of Directors and the Executive Board should not continue, as it is a drastic and extremely burdensome measure, without legal basis (art. 64 of the LRE), under penalty of significant losses to the Oi Group's activities, which would be left without management capable of making decisions, to the detriment of its recovery process and the collective creditors. They emphasize that there is no evidence of abusive, willful, or unlawful conduct on the part of the Oi Group's Executive Board to justify the measure, with the New Management making every effort to fulfill the short-term obligations assumed in the judicial reorganization plan prepared by the former management, as well as to negotiate financial relief measures with creditors, including through the submitted amendment. Regarding the hiring of professionals, they state that this is an absolutely natural and necessary measure for the proper advice of the Companies Under Reorganization and was always undertaken with Oi's best interests in mind.

They argue that, regarding Íntegra's removal, the debtor was not afforded an opportunity for adversarial proceedings, providing the Debtors with a clear view of the matter, and that the relevant documents for adopting such a drastic and burdensome measure were not examined. They allege that Íntegra never received any fee linked to the sale of the Debtors' assets, and its compensation was always limited to fixed monthly fees, as established in Clause 2.1 of Annex I to the agreement, without any amount tied to the sales. There is no hidden interest or undue advantage in the provider's actions, which always benefited the Oi Group during the judicial reorganization. They emphasize that the fact that one of Íntegra's partners also serves as a director at Oi does not, in itself, constitute any impediment, revealing the natural convergence between the Oi Group's leadership and the team responsible for structuring cash projections, organizing sensitive information, and supporting the financial reporting to the MM. The appeals were filed with the Reorganization Court, the Joint Judicial Administration, the Fiscal Council, and the Board of Directors. Finally, they argue that the appealed decision contains an error of premise in determining the unavailability of the arbitration amount subject to the settlement between Oi, V.Tal, and Anatel, with the TCU, since such rights were fiduciously transferred to the creditors upon approval of the plan.



23-10193-lgb   Doc 130-6   Filed 10/02/25   Entered 10/02/25 15:25:14   Exhibit F - Judge Costa October 1 Ruling (machine translation)   Pg 5 of 10

Machine Translated by Google

Página 47

of judicial recovery of the Companies Under Reorganization, approved by the Honorable Recovery Court, ceasing to be part of the assets of the Oi Group.

Based on these arguments, they seek the granting of a suspensive effect for the specific purpose of suspending (i) the initiation of the transition process of essential public services provided by the Oi Group and the anticipation of the effects of the liquidation of the Companies Under Reorganization; and (ii) the order for the removal of the Board of Directors and the Board of Directors for a minimum period necessary to facilitate the management transition. They emphasize that, in any case, they do not oppose the maintenance of Dr. Bruno Rezende and Dr.
Tatiana Binato monitoring her activities.

On the merits, they request the granting of the appeal in order to revoke the initiation of the transition process of essential public services provided by the Oi Group, as well as the anticipation of the effects of the liquidation of the Companies Under Reorganization, with the revocation of items 2, 3.2, 3.3, 3.4, 4 and 5 of the appealed decision.

This is the report. I'll decide.

**2.** According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an appeal on points of law is admissible against all interlocutory decisions issued in judicial recovery proceedings and bankruptcy proceedings, by virtue of art. 1,015, sole paragraph, CPC".

Thus, the intrinsic requirement of admissibility is present
appeal (applicability).

Having overcome the formal regularity, I will now proceed to analyze the request for advance relief from the appeal filed by the appellants.

Based on art.1019, I, of the CPC, once the appeal instrument has been received by the court and distributed immediately, if it is not the case for the application of art.932, items III and IV, the rapporteur, within a period of 5 (five) days, may attribute a suspensive effect to the appeal or grant in advance of protection, totally or partially, the appeal claim, communicating his decision to the judge.

The granting of the suspensive or active effect is subject to the presence of two requirements, namely, the plausibility of the allegations and the risk of irreparable or difficult to repair damage (article 995, sole paragraph, of the Code of Civil Procedure).

It is worth collating doctrine on the topic[1] :

---

[1] Commentary on the new Code of Civil Procedure/ coordination Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, p. 1473;



Machine Translated by Google

23-10193-lgb    Doc 130-6    Filed 10/02/25    Entered 10/02/25 15:25:14    Exhibit F - Judge Costa October 1 Ruling (machine translation)    Pg 6 of 10

"The prerequisites for granting a stay of appeals are, in our understanding, typically precautionary: risk of serious damage, of impossible or difficult reparation, and likelihood of the appeal being granted. In other words, periculum in mora and fumus boni iuris.

This damage, the likelihood of which must be demonstrated to obtain the suspensive effect of the appeal, does not necessarily equate to the impairment of the substantive right claimed in the appeal. It is sufficient for the party to demonstrate that the damage will be aggravated if the measure is not granted.

The law does not mention the opposite situation: the appeal has a suspensory effect by express provision, and the appellant needs the decision to be effective. Having demonstrated the likelihood of the appeal being granted and the occurrence of damages, we understand that the appellant is indeed entitled to the measure corresponding to the provisional advancement of the appeal's granting. This is what is called an active effect or preliminary relief, not expressly provided for but admitted in the system, in relation to all appeals with suspensory effect, for identical reasons. It can be granted in cases where the appeals do not have suspensory effect.

In terms of cursory cognition, there are no elements in the records that make it possible to assess the probability of the appeal plan being granted, in order to enable the granting of the suspensive effect to the appeal at this procedural stage.

Originally, this is an incident initiated due to dependence on the main judicial recovery process, through which the recovering companies seek (i) to determine the suspension of the enforceability of their extra-bankruptcy obligations for an initial period of sixty days; (ii) as well as to authorize the monetization of the 6 thousand tons of scrap from underground copper cables owned by them, already extracted and currently stored in V.tal's distribution centers, through reimbursement to the latter for the extraction costs, in the amount of R$ 7.60 per kilogram, since the obligations provided for in the LTLA Agreement will be suspended.

The appealed decision granted the suspension of the extra-bankruptcy obligations, based on a different and determining basis, by logical consequence, for the other measures determined, ex officio, by the judge *a quo,* in view of the gravity of the scenario that emerged in the judicial recovery process and its numerous developments.

There is no need to speak of the decision being null and void due to violation of the adversarial principle, full defense and the prohibition of surprise decisions.



Indeed, the case law of the Superior Court of Justice is established that the judge may determine, ex officio, any measure that he deems appropriate and necessary for the useful outcome of the proceedings, making use of the general power of caution. (Precedents: AgInt in AREsp 975.206/BA, rapporteur Justice Isabel Gallotti, Fourth Panel, decided on 4/27/2017, DJe 5/4/2017; AgInt in EDcl in REsp 1634558/RJ, rapporteur Justice Og Fernandes, Second Panel, decided on 11/28/2017, DJe 12/5/2017)

It should not be lost sight of the fact that the general power of caution is a corollary of the constitutional guarantee of adequate judicial protection (art. 5, XXXV, of the CRFB/88) and must be understood with the necessary breadth to ensure its effectiveness, including the guarantee of the effectiveness of the decision to be handed down.

The general power of caution was maintained by the New Code of Civil Procedure, as can be seen from Statement No. 31 of the Permanent Forum of Civil Proceduralists: "The general power of caution is maintained in the CPC".

In this sense, art. 301 of the CPC lists, by way of example, the measures to ensure the right: "Urgent protection of a precautionary nature may be carried out through arrest, sequestration, inventory of assets, registration of protest against the alienation of assets and any other suitable measure to ensure the right."

Regarding the aforementioned legal device, the teachings of Nelson Nery and Rosa Maria de Andrade Nery[2] :

> "2. Unnamed precautionary measure. The general precautionary power, conferred to the judge by CPC 297, remains unchanged. However, this could already be deduced from the fact that there is no longer a specification of precautionary procedures for certain cases, so that the possibilities are broad for both the person under jurisdiction and the judge." (

Therefore, the judge is entitled, based on the general power of caution, to adopt the necessary measures for the full effectiveness of the jurisdictional activity, which is within the discretion of the judge.

Furthermore, according to the case law of the STJ, "it is not possible to claim surprise if the result of the dispute is objectively foreseen in the disciplinary order of the procedural instrument used and falls within the scope of the possible and natural causal unfolding of the controversy" (REsp n. 1,823,551/AM, Rapporteur Minister Herman Benjamin, Second Chamber, tried on

---

[2] Annotated Code of Civil Procedure and extravagant legislation, published by Revista dos Tribunais. Paulo, 16th edition, p.921.



Machine Translated by Google

23-10193-lgb    Doc 130-6    Filed 10/02/25    Entered 10/02/25 15:25:14    Exhibit F -
Judge Costa October 1 Ruling (machine translation)    Pg 8 of 10

Página 50

17/9/2019, DJe 11/10/2019), and (ii) there is no need to speak of a violation of the prohibition of a surprise decision when the judge, examining the facts set out in the initial complaint, together with the request and the cause of action, applies the legal understanding that is considered coherent for the case" (AgInt in REsp no. 1,838,563/SP, rapporteur Minister Luis Felipe Salomão, Fourth Panel, tried on 5/23/2022, DJe of 5/27/2022.)

It is emphasized that the unequivocal knowledge of the recovering parties regarding the failure to comply with the duties assumed, which even generated the need for urgent judicial intervention, given the nature of the services provided and their implications for the life and safety of the population.

Finally, there is no need to talk about an *extra petita decision,* since, in accordance with art.61 of Law 11.101, it is the judge's responsibility to exercise judicial supervision within the legal two-year period, with the decision being taken in the exercise of the legal powers conferred upon him to achieve the purposes legally entrusted to him, being an emergency measure of an exceptional nature.

Furthermore, the decision is solidly founded and supported by numerous documents, reports and statements from the court's assistants, with the measures adopted by the judge *a quo* falling within the scope of the necessary development to preserve legal certainty, public order and the interests of the creditors' collective.

It should be noted that the decision handed down by the court *a quo,* as well as the other judicial provisions issued throughout this recovery and which were returned to this appeal court, were always guided by the relevance of the essential services provided by the recovering parties responsible for providing numerous essential services to the Brazilian population.

And, with the aim of ensuring the continuity of essential services provided, notably in view of the need to preserve national security, due to the assumed impossibility of honoring financial commitments by the Recovering Party, and already reported by numerous creditors in the original proceedings, it was determined that a service transition process be carried out.

It is clear that the presentation of a transition plan for these services does not conflict with the determination issued by this *ad quem body,* in the appeal instrument no. 0071515-22.2025.8.19.0000, notably in view of the supervening statements of the auxiliary bodies in the original proceedings.

As already highlighted, it is an undisputed fact that the Companies Under Reorganization have been failing to comply with the obligations established in the Judicial Recovery Plan, as well as the extra-bankruptcy credits.



23-10193-lgb Doc 130-6 Filed 10/02/25 Entered 10/02/25 15:25:14 Exhibit F - Judge Costa October 1 Ruling (machine translation) Pg 9 of 10

Machine Translated by Google

Página 51

There is a proposal to amend the PRJ based on the supervening of facts that allegedly made its execution unfeasible, with the aim of reaching the originally excluded labor creditors, renegotiating the payment conditions and terms of suppliers, partner creditors, *take or pay* with and without guarantee, supposedly reaching the specific unfulfilled obligations provided for in the plan.

In parallel, the Debtors expressed their intention to initiate the proceedings provided for in Chapter 11 of the United States Bankruptcy Law *("Chapter 11"),* before the Honorable Judge of the United States Bankruptcy Court for the Southern District of New York *(United States Bankruptcy Court for the Southern District of New York),* with the objective of restructuring credits that will not be addressed in the amendment and that cannot be included in the judicial reorganization process in Brazil.

Thus, in addition to the bankruptcy credits subject to the judicial recovery plan, it is essential to note, as reported by the recovering companies in the original proceedings, the existence of a relevant extra-bankruptcy liability, estimated at R$1.5 billion.

Supported by news of default, there are already requests for conversion of judicial recovery into bankruptcy formulated by creditors.

In turn, there is inconsistency in the information on the assets of the companies under reorganization, notably in relation to fixed assets, as determined by the *Watchdog,* in the incident for the presentation of the Monthly Management Reports, evidencing the existence of a significantly smaller number of real estate assets still registered in the name of the Companies under Reorganization or their subsidiaries.

The severity of the deficit in the economic and financial situation of the companies under recovery was determined by the Watchdog and the Judicial Administration, in light of their financial statements, compromising their operational activities and regular expenses.

It is therefore necessary to assume that the information provided by the recovered companies does not match the facts and documents presented by the court assistants, moving in a completely different direction from that agreed in the judicial recovery plan.

Therefore, the anticipation of the effects of the liquidation, supported by the court's general power of caution, seeks, in fact, to equalize the impacts of the transition of the public service, ensuring its continuity, as well as the viability, even if minimal, of the company's continuity, and allowing the companies under recovery, during this time, to negotiate with their creditors, substantiating *the fumus boni iuris* and the periculum in mora.



Machine Translated by Google

23-10193-lgb    Doc 130-6    Filed 10/02/25    Entered 10/02/25 15:25:14    Exhibit F - Judge Costa October 1 Ruling (machine translation)    Pg 10 of 10

Therefore, the appellant's allegations do not appear to be credible enough to allow the granting of the relief sought at this stage of the proceedings.

On the other hand, there is no sign of irreparable damage to justify the granting of the preliminary injunction at that time.

The danger of irreparable damage, this is exactly the protection of the function social of the company under recovery.

And as the appealed decision rightly observes, the reports presented both by the judicial observer and the RMAs, presented by the Judicial Administration, converge towards the emptying of the assets, in a more serious way from December 2024, notably, a period related to the current administration.

There is material evidence, which will inevitably result in the compromise of the provision of invaluable essential services to the population.

**3.** For all the above reasons, I deny the suspensive effect of the appeal.

Considering at this time the complexity of the allegations brought in this appeal, *ad cuidadom,* I order the judicial managers, within 48 hours, to indicate the maintenance of statutory directors of the company under recovery, for the purposes of assistance only in transitional acts, within the limits of the appealed decision, being certain that they may not exceed the number of four.

**4.** Request information from the court *a quo,* in accordance with art. 1018 of the CPC.

**5.** To the aggrieved parties to present a response, within the legal period of fifteen days, provided for in art.1019, II, of the CPC.

6. To the Judicial Administrator and the Mass Curatorship.

**7.** To the Public Prosecutor's Office.

Rio de Janeiro,     ___    of    _____    of 2025.

**MONICA MARIA COSTA**
**Reporting Judge**

