# EXHIBIT A

**FIRST CHAMBER OF PRIVATE LAW OF THE SUPREME COURT OF THE STATE OF RIO DE JANEIRO (TJRJ)**

**Interlocutory Appeal No. 0083339-75.2025.8.19.0000**

**Appellants: OI S.A. – UNDER JUDICIAL REORGANIZATION, PORTUGAL TELECOM INTERNATIONAL FINANCE B.V. – EM RECUPERAÇÃO JUDICIAL e OI BRASIL HOLDINGS COOPERATIEF U.A. – UNDER JUDICIAL REORGANIZATION**

**Reporting judge: Justice Mônica Maria Costa**

## DECISION

**This is an interlocutory appeal** filed by OI S.A., PORTUGAL TELECOM INTERNATIONAL FINANCE B.V. and OI BRASIL HOLDINGS COOPERATIEF U.A., all in judicial reorganization, **against the decision under index No. 230551050**, issued by the 7th Business Court of the Judicial District of Rio de Janeiro, in incidental proceeding No. 096010888.2025.8.19.0001, assigned in connection with the main judicial reorganization proceeding (No. 0090940-03.2023.8.19.0001), which: **(1) ordered that the seal of confidentiality assigned to the case be lifted; (2) ordered the case to be filed as an "INCIDENTAL PROCEEDING FOR TRANSITION OF ESSENTIAL PUBLIC SERVICES"; (3) anticipated, in part, the effects of the liquidation: (3.1) to suspend overdue and outstanding post-petition obligations for a period of 30 (thirty) days; (3.2) to remove the CEO, Marcelo Millet, from the management of Grupo Oi and its subsidiaries Serede and Tahto; (3.3) to order that no business be conducted through Íntegra; (3.4) to decree that a block be placed on NIO's shares and the amount of the arbitration that was the subject of the settlement between Oi, V.Tal and Anatel, at the Brazilian General Accounting Office (TCU), and that the respective instrument be drafted; (4) appointed Bruno Rezende to carry out the public services transition process and to intervene, in part, in Grupo Oi, as established above; (5) appointed Tatiana Binato to carry out the transition process for the public services supporting those provided by Oi, through Serede and Tahto, and to intervene, in part, in both subsidiaries, as established above; 6) ordered that a copy of this document be attached to the record of the judicial reorganization of Grupo Oi and its subsidiaries Serede and Tahto; 7) informed the Public Prosecutor's Office of the decision. Finally, the court ordered that the Brazilian Telecommunications Agency (Anatel), the Administrative Economic Defense Council (CADE), the Brazilian General Accounting Office (TCU), and the Ministry of Aeronautics be summoned.**

In addition to the previous decision, court order **No. 230551050** was issued, clarifying that: (1) The employees of the companies involved: Grupo Oi, Serede and Tahto, will continue to perform their duties and will naturally receive their pay during the period of management exercised by the Bankruptcy Trustees; (2) The Management removed from the Group

(Executive Committee and Board of Directors) is required to provide the Bankruptcy Trustees - Managers with any and all information they request and to provide access to any and all equipment on which the necessary information can be found; (3) All of the above decisions ensure the continuity of the activities of the companies involved and the responsibility of the removed managers to provide the proper means for such continuity, so that the public service in question can continue to be provided at all times.

In the draft on pages 02 to 36 (index No. 02), the appellants initially allege that the appealed decision is null, arguing that it was outside the scope of the request (extra petita) and in disagreement with the principle of "no surprises", initiating, in practice, an unprecedented process of "transition of essential public services", through improper means, in addition to creating a type of liquidation not provided for by law. They point out

that—by changing the purpose of the original incidental proceeding to "the processing of the transition of public services provided by the Grupo Oi"—the appealed decision failed to observe this reporting judge's order in interlocutory appeal No. 0071515-22.2025.8.19.0000, which suspended all acts related to the transition plan for essential services provided by Grupo Oi until the addendum to the judicial reorganization plan was assessed. They emphasize that it would not be possible to decide that measures so burdensome to the Reorganization Debtors should be taken without examining the addendum to the judicial reorganization plan. They stress that, only five days ago, they submitted considerations to the first report submitted by the Watchdog in incidental proceeding No. 0073596- 38.2025.8.19.0001, providing information about the strategic projects of their operations currently underway, with a focus on optimizing activities and reducing liabilities. They emphasize that there is no evidence of misconduct that could lead to the conclusion that any asset stripping has occurred. They stress that the main reason why the alleged findings of asset stripping do not hold up is the fact that the alleged "substantial liquidation" (art. 73, part VI, of the Business Reorganization Act), resulting from asset disposals, is based solely on sales of assets that were expressly provided for in the judicial reorganization plan or whose sale was expressly authorized by the reorganization court. With regard to the sale of UPI ClientCo, they say it is not possible to conclude that the sale of this asset, even without monetary consideration, constitutes any evidence of material liquidation, since: (i) although no funds were received, the sale of UPI ClientCo led to a significant financial gain for the Grupo Oi; (ii) the entire competitive process was conducted in absolute compliance with sections 5.2.2.1.2, "iii", 5.2.2.1.3, "ii", and 5.2.2.1.5, "i" and "iii", of the judicial reorganization plan, and the proposal met all the conditions of sections 5.2.2.1.5 and was ratified and approved by CADE and ANATEL without restrictions. They emphasize that the failure to meet a financial expectation of the Grupo Oi, due to market conditions, is not the same as a disposal of assets in a substantial liquidation of assets. They point out that UPI ClientCo had a totally loss-making operation, which had been draining Oi's cash, and that the

discontinuation of this operation resulted in an average monthly decrease of BRL 532 million in costs and expenses. They clarify that, with regard to the real properties, they recently presented a new real estate appraisal report in the main case, and they have an extensive portfolio of 7,921 properties, valued at around BRL 5.8 billion; of these, 7,219 are effectively available for sale, totaling around BRL 4.8 billion, according to recent valuations (E&Y). They say that, despite the provisional scenario of cash mismatch and the difficulty of posting positive operating results due to legacy liabilities, Oi continues to have significant operating revenues, mainly resulting from its strategic "Oi Soluções" front, which is a surplus activity when analyzed as a business unit. They note that, in addition to the thousands of properties, "Oi Soluções", and the various other assets through which it provides private and public telecommunication services to dozens of bodies that are important for the country to function, Grupo Oi owns various other assets of significant value, and lists them in its brief. They point out that the removal of the Executive Committee and the Board of Directors should not stand, as it is a drastic and extremely burdensome measure not supported by law (art. 64 of the Business Reorganization Act), and could cause great harm to Grupo Oi, which would be left without management to make decisions, to the detriment of its reorganization process and all creditors. They emphasize that there is no evidence of abusive, malicious or unlawful conduct on the part of Grupo Oi's executive management to justify the court order, and that the New Governance is making every effort to comply with the short-term obligations assumed in the judicial reorganization plan prepared by the former management, and is negotiating financial relief measures with creditors, including through the amendment presented. Regarding the hiring of professionals, they state that this is an absolutely natural and necessary measure to provide proper assistance to the Reorganization Debtors and was always carried out with Oi's best interests in mind. They argue that, with regard to the removal of Íntegra, the Reorganization Debtors

were denied access to adversary procedure and were not given the opportunity to be heard or to comment on the matter, nor were the relevant documents examined for the adoption of such a drastic and burdensome measure. They claim that Íntegra has never received any fees linked to the sale of the Reorganization Debtors' assets and that its remuneration has always been restricted to fixed monthly fees, as established in section 2.1 of Attachment I of the agreement, without any amount linked to the sales, and that there is no hidden interest or undue advantage in the performance of the provider, which has always acted for the benefit of Grupo Oi within the scope of the judicial reorganization. In addition, the fact that one of Íntegra's partners also holds the position of director at Oi does not in itself constitute any impediment, revealing the natural convergence between the Grupo Oi's leadership and the team responsible for structuring cash projections, organizing sensitive information and subsidizing the rendering of accounts to the Reorganization Court, the Joint Bankruptcy Trustees, the Audit Committee and the Board of Directors. Finally, they maintain that the appealed decision contains an error of assumption in ordering the freeze of "the amount of the arbitration that was the subject of settlement between Oi, V.Tal and Anatel, at the TCU, since these rights were assigned in a fiduciary capacity to the creditors upon approval of the

Reorganization Debtors' judicial reorganization, ratified by the Reorganization Court, and ceased to be part of Grupo Oi's assets.

Based on these arguments, they are asking that suspensive effect be granted for the specific purpose of halting (i) the initiation of the process of transition of the essential public services provided by Grupo Oi as well as anticipation of the effects of the liquidation of the Reorganization Debtors; and (ii) the order for the removal of the Executive Committee and the Board of Directors for a minimum period necessary to enable the transition of management. They stress that, in any case, they are not opposed to Bruno Rezende and Tatiana Binato continuing to monitor their activities.

Regarding the merits, they request that the appeal be granted in order to revoke the initiation of the transition process for the essential public services provided by Grupo Oi and the anticipation of the effects of the liquidation of the Reorganization Debtors, with the revocation of sections 2, 3.2, 3.3, 3.4, 4 and 5 of the appealed decision.

This is the statement of facts. Here is my decision.

2. According to the decision of the Second Section of the Superior Court, in the judgment of Special Appeal 1707066/MT, submitted to the repetitive appeals procedure (Theme 1022), "an interlocutory appeal is permitted against all interlocutory decisions handed down in court-supervised reorganization proceedings and bankruptcy proceedings, by virtue of art. 1,015, sole paragraph, of the Code of Civil Procedure (CPC)".

Thus, the intrinsic requirement for admissibility of appeals (suitability) has been met.

Having addressed the admissibility of the form of procedure, I will now analyze the appellants' request for early relief.

Pursuant to art. 1019, I, of the CPC, when the interlocutory appeal is received by the court and assigned immediately, if art. 932, parts III and IV, do not apply, the reporting judge may, within 5 (five) days, grant suspensive effect to the appeal or grant early relief, wholly or in part, in connection with the request made in the appeal and notify the judge of his decision.

The granting of suspensive effect or injunctive relief to temporarily vacate the judgment a quo is subject to the fulfillment of two requirements, namely a prima facie right in connection with the allegations and a threat of irreparable or difficult-to-repair harm(article 995, sole paragraph, of the Code of Civil Procedure).

Here is the legal theory regarding the matter[1]:

> "The conditions for granting suspensive effect in appeals are, in our opinion, typically precautionary: the risk of serious harm that is impossible or difficult to repair and the likelihood of the appeal being approved. Namely, imminent irreparable harm and a prima facie right.
>
> Such harm, whose likelihood must be demonstrated in order to obtain the suspensive effect of the appeal, is not necessarily identified with impairment of the substantive right claimed in the appeal. The party need only demonstrate that the harm will be aggravated if the measure is not granted.
>
> The law does not mention the possibility of the opposite happening: the appeal has suspensive effect by express provision and the appellant needs the effectiveness of the decision. Having demonstrated the likelihood of the appeal being approved and of the occurrence of harm, we believe that the appellant is entitled to the measure corresponding to the temporary granting of the relief sought in the appeal. This injunctive relief to temporarily vacate the judgment a quo or advance injunctive relief is not expressly provided for, but is allowed in the system in relation to all appeals with suspensive effect, for identical reasons. It can be granted in cases where appeals do not have suspensive effect".

Based on summary cognizance, there are no elements in the case record that would allow for assessment of the likelihood of the appeal being granted, in such a way as to make it feasible to grant suspensive effect to the appeal at this procedural moment.

In the origin case, this is an incidental proceeding filed in relation to the main judicial reorganization proceeding, through which the reorganization debtors seek (i) suspension of the enforceability of their post-petition obligations for an initial period of sixty days; and (ii) authorization of the monetization of the 6,000 metric tons of underground copper cable scrap it owns, already extracted and currently stored in V.Tal's distribution centers, by reimbursing the latter for the extraction costs, in the amount of BRL 7.60 per kilo, since the obligations under the LTLA agreement will be suspended.

The appealed decision granted suspension of the post-petition obligations, based on different grounds and determining, as a logical consequence, the other measures ordered ex officio by the judge a quo, given the severity of the scenario that has emerged in the judicial reorganization process and its countless consequences.

There is no nullity in the decision to speak of in connection with any violation of the right to adversary procedure and a legal defense and the prohibition on surprise decisions.

In fact, the case law of the Federal Appeals Court (STJ) is consolidated in the sense that the judge can order, ex officio, any measure that seems appropriate and necessary for the useful outcome of the process, using the general power of precaution. (Precedents: Internal Interlocutory Appeal (AgInt) in Motion in Special Appeal (AREsp) 975.206/BA, reporting judge Justice Isabel Gallotti, Fourth Panel, adjudged on 27-Apr-2017, published in the Electronic Court Journal (DJe) on 4-May-2017; Internal interlocutory appeal in Motion for Clarification of Judgment (EDcl) in Special Appeal (REsp) 1634558/RJ, reporting judge Justice Og Fernandes, Second Panel, adjudged on 28-Nov-2017, published in DJe of 05-Dec-2017).

We must not lose sight of the fact that the court's general precautionary power is a corollary of the constitutional guarantee of adequate judicial protection (art. 5, XXXV, of the Brazilian Constitution of 1988) and must be understood with the necessary scope to ensure its effectiveness, including the guarantee of the effectiveness of the decision to be issued.

---

[1] Comentário ao novo Código de Processo Civil / coordinators Antonio do Passo Cabral, Ronaldo Cramer – Rio de Janeiro: Forense, 2015, p. 1473.

The general power of precaution was maintained by the New Code of Civil Procedure, as can be seen in Court-Declared Precedent No. 31 of the Permanent Forum of Civil Procedure Practitioners: "The general power of precaution is maintained in the CPC".

Accordingly, art. 301 of the CPC illustratively lists the measures for securing the right: "Urgent protective measures of a precautionary nature can be carried out by means of seizure, sequestration, pledge of assets, registration of an administrative protest against the sale of assets and any other suitable measure to secure the right."

Nelson Nery and Rosa Maria de Andrade Nery2 teach the following regarding this legal provision[2]:

> "2. Precautionary measure. The general precautionary power conferred on the judge by CPC 297 remains unchanged. But this could already be deduced from the fact that there are no longer specific precautionary procedures for certain cases, so that the possibilities are wide-ranging for both the court and the judge."

Accordingly, the judge is permitted, using the general power of precaution, to adopt the measures necessary for the full effectiveness of the judicial activity, which is within the discretion of the judge.

Furthermore, according to the case law of the STJ, "it is not possible to allege surprise if the outcome of the dispute is objectively foreseen in the rules governing the procedural instrument used and falls within the scope of the causal, possible and natural developments of the controversy" (Special Appeal (REsp) No. 1.823.551/AM, reporting judge Justice Herman Benjamin, Second Panel, adjudged on 17-Sep-2019, published in the DJe on 11-Oct-2019), and (ii) there is no violation of the prohibition on surprise decisions to speak of when the judge, examining the facts set out in the initial application, together with the request and the cause of action, applies the legal understanding that is considered coherent for the case" (Internal interlocutory appeal (AgInt) in special appeal (REsp) No. 1.838.563/SP, reporting judge Justice Luis Felipe Salomão, Fourth Panel, adjudged on 23-May-2022, published in DJe on 27-May-2022).

It should be emphasized that the reorganization debtors are unequivocally aware of the breaches of their assumed duties, which have even led to the need for urgent judicial intervention, given the nature of the services provided and their implications for the life and security of the population.

Finally, there is no extra petita decision to speak of, since, according to article 61 of Law 11.101, it is the judge's responsibility to exercise judicial review within the two-year period defined by law, and the decision was made in the exercise of the legal powers conferred on him in order to achieve the purposes legally entrusted to the courts, as this is an emergency measure of an exceptional nature.

Furthermore, the decision is solidly grounded and supported by numerous documents, reports and statements from the court's assistants, and the measures adopted by the court a quo fall within the scope necessary to preserve legal certainty, public order and the interests of the group of creditors.

It should be noted that the decision handed down by the court a quo, as well as the other court rulings issued during this reorganization and which were returned to this appellate court, have always been guided by the importance of the essential services provided by the reorganization debtors, which are responsible for providing countless essential services to the Brazilian population.

And, in order to ensure the continuity of essential services provided, especially in view of the need to preserve national security, due to the assumed impossibility of honoring financial commitments by the Reorganization

---

[2] Código de Processo Civil Comentado e legislação extravagante, Editora Revista dos Tribunais. São Paulo, 16. ed., p. 921.

Debtor, as reported by numerous creditors in the original case record, the court ordered a process of transition of services to be carried out.

It should also be noted that the presentation of a transition plan for these services does not conflict with the determination issued by this court ad quem in interlocutory appeal No. 0071515-22.2025.8.19.0000, especially in view of the subsequent statements made by the advisory bodies in the original case record.

As already pointed out, it is an undisputed fact that the Reorganization Debtors have been failing to meet the obligations established in the Judicial Reorganization Plan, including the post-petition credits.

There is a proposal to amend the Reorganization Plan on the grounds that facts have arisen that supposedly make its execution unfeasible, with the aim of reaching the originally excluded labor creditors, renegotiating the conditions and payment terms of suppliers, partner creditors, take or pay with and without guarantees, supposedly reaching the specific defaulted obligations provided for in the plan.

At the same time, the Reorganization Debtors expressed their intention to initiate the procedure provided for in Chapter 11 of the United States Bankruptcy Law ("Chapter 11"), with the United States Bankruptcy Court for the Southern District of New York, with the aim of restructuring credits that will not be settled in the amendment and that cannot be included in the judicial reorganization process in Brazil.

Thus, in addition to the debts subject to the judicial reorganization plan, it should be noted that the reorganization debtors report in the original case record the existence of a significant extrajudicial liability, estimated at BRL 1.5 billion.

As a result of the reports of default, creditors are already asking for the judicial reorganization to be converted into bankruptcy.

In turn, there is inconsistency in the information on the assets of the reorganization debtors, especially in relation to fixed assets, as verified by the Watchdog, in the incidental proceeding for the presentation of the Monthly Trustee Reports, evidencing the existence of a significantly smaller number of real properties still registered in the name of the Reorganization Debtors or their subsidiaries.

The severity of the reorganization debtors' loss-making economic and financial situation was ascertained by the Watchdog and the Bankruptcy Trustees, in light of their financial statements, jeopardizing their operating activities and regular expenses.

It must therefore be assumed that the information provided by the reorganization debtors does not tally with the facts and documents presented by the court's assistants, going in a completely different direction from what was committed to in the judicial reorganization plan.

Therefore, the anticipation of the effects of the liquidation, backed by the court's general power of precaution, seeks, in fact, to equalize the impacts of the transition of the public service, ensuring its continuity, as well as the minimal viability of the company's continuity, and allowing the reorganization debtors, during this time, to negotiate with their creditors, substantiating the existence of a prima facie right and imminent irreparable harm.

Thus, the applicant's allegations do not appear to be credible enough to allow the relief sought at this stage of the proceedings to be granted.

On the other hand, there is no evidence of irreparable damage that would justify granting early relief at this time.

The threat of imminent irreparable harm relates precisely to protection of the social function of the reorganization debtor.

And, as the appealed decision correctly notes, the reports presented by both the watchdog and the Bankruptcy Trustees, converge to indicate a dissipation of assets, in a more serious manner since December 2024, notably, a time correlated with the current management.

There is material evidence, which will inevitably compromise the provision of essential services to the population.

3. In light of the foregoing, I deny suspensive effect to the appeal.

Considering at this point the complexity of the allegations brought to this appeal, as a precaution, I order the bankruptcy trustees to indicate, within 48 hours, maintenance of the officers of the reorganization debtor, for the purpose of assisting only in transitional acts, within the limits of the appealed decision, and it is certain that they may not exceed the number of four.

4. Information should be requested from the court a quo, in accordance with article 1018 of the CPC.

5. Notify the appellees to submit a reply within the legal period of 15 days set forth in art. 1019, II, of the CPC;

6. Notify the Bankruptcy Trustee and the Office of the Public Prosecutor for the Protection of Bankruptcy Estates.

7. Notify the Office of the General Attorney.


Rio de Janeiro. […] […], 2025.

**Monica Maria Costa**

**Reporting Judge**


[Digitally signed by Monica Maria Costa di Piero, 29835, October 1, 2025 20:07:43]


[All pages stamped and numbered by the court.]


CERTIFICATION

This is to certify that the foregoing translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "Decisão Agravo Oi - stay.pdf," which was written in Portuguese.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2025.

WILLIAM STEINMETZ

Email: william.steinmetz@pm.me