Alan J. Lipkin
Erin E. Valentine
Marcel Engholm
CHAFFETZ LINDSEY LLP
1700 Broadway
New York, New York 10019
Telephone: (212) 257-6960
Facsimile: (212) 257-6950

*Attorneys for Foreign Representative
and Chapter 15 Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 15** |
| **Oi S.A.** *et al.,* | **Case No. 23-10193 (LGB)** |
| **Debtors in Foreign Proceeding**[1] | **Jointly Administered** |

**STATEMENT OF CHAPTER 15 DEBTORS AND FOREIGN REPRESENTATIVE
REGARDING MARCH 10, 2026 STATUS CONFERENCE**

In anticipation of the Status Conference in this case now set for March 10, 2026, at 3:00 P.M. [ECF No. 137] (the "**Status Conference**"), and due to the filing of the Statement of the Ad Hoc Group of Secured Noteholders and (UMB Bank N.A. as) Indenture Trustee (together, the "**Noteholder Parties**") Regarding Developments in the Brazilian RJ Proceeding [ECF No. 133] (the "**Noteholders Statement**"), Oi S.A. ("**Oi**"), Oi Brasil Holdings Oi Brasil Holdings Coöperatief U.A. ("**Coop**"), and Portugal Telecom International Finance B.V. ("**PTIF**," together with Oi and Coop, the "**Chapter 15 Debtors**"), and the newly appointed foreign representative in

---

[1] The debtors in the above-captioned cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

this case for the Chapter 15 Debtors, Fabio Wagner (the "**Foreign Representative**"), submit this Statement to facilitate the Status Conference.

## INTRODUCTION

1. This Statement covers certain significant recent developments in these chapter 15 cases. Specifically, this Statement updates the Court on: (i) the anticipated attendees at the Status Conference; (ii) the nature of the Judicial Administrator's recent "*ex parte*" communication to the Court; and (iii) recent developments in the Oi Debtors' Brazilian judicial reorganization (the "**Brazilian RJ Proceeding**").

2. Additionally, to a limited extent, this Statement addresses the Statement recently filed by the Noteholder Parties regarding the Brazilian RJ Proceeding and certain related concerns of the Noteholder Parties. As there is no pending motion by the Noteholder Parties, this Statement only briefly addresses the concerns they raise, including their argument that the auction of UPI V.tal might not comport with the Oi Debtors' judicial reorganization plan ("**RJ Plan**") so that there purportedly could be a basis for the Noteholder Parties to seek urgent relief in these cases.

## ANTICIPATED STATUS CONFERENCE ATTENDANCE

3. The Court's Status Conference Orders [ECF No. 135; ECF No. 137] directed the appearance of, among others, the Judicial Administrator and the Chapter 15 Debtors' Foreign Representative. As a point of clarification, and as discussed further below, the RJ Court appointed two Judicial Administrators to serve as agents of the RJ Court to oversee and report to the RJ Court on the Debtors' activities, creditors, and financial situation (among other things): Mr. Bruno Rezende (through his company Preserva Ação Administração Judicial) and Ms. Adriana Campos Conrado Zamponi (through her company Wald Administração de Falência e Empresas em Recuperação Judicial) ("**Wald**"). The Chapter 15 Debtors and Foreign Representative understand

2

that Judicial Administrator Wald will attend the conference. Notably, counsel to the Chapter 15 Debtors and the Foreign Representative does not represent the Judicial Administrators.

4. The RJ Court appointed Mr. Rezende to also serve as the Debtors' Judicial Manager, which acts as the legal representative of the company undergoing judicial reorganization and takes over management of the Debtor companies (in a manner similar to a bankruptcy trustee in the U.S.). Mr. Rezende's mandate includes ensuring (i) compliance with orders of the RJ Court; (ii) continuation of Oi's operations; and (iii) the provision of essential services provided by Oi to the Brazilian population.

5. Mr. Fabio Wagner, acting as the new Foreign Representative, and Mr. Rezende, in his capacity as Judicial Manager, will attend the Status Conference on behalf of the Chapter 15 Debtors. Two of the Chapter 15 Debtors' Brazilian counsel, Thiago Peixoto Alves and João Felipe Lynch Meggiolaro from the law firm Ferro, Castro Neves, Daltro & Gomide Advogados, will attend the conference as well in case their input is needed.

6. While Mr. Wagner is relatively fluent in English, Mr. Rezende and Ms. Zamponi are not. As a result, the Chapter 15 Debtors have arranged for an interpreter to join the Status Conference to aid Mr. Rezende, Ms. Zamponi, and, if necessary, Mr. Wagner. We note that the need for an interpreter might require some pauses in the conference to enable Ms. Zamponi and Mr. Rezende to keep up.

7. Further, as Chaffetz Lindsey LLP has just been retained as counsel for the Chapter 15 Debtors and the Foreign Representative, attorneys from that firm will attend the Status Conference. White & Case LLP, prior counsel for the Chapter 15 Debtors and the former foreign representative, will attend only if this Court has not yet approved the Stipulation for the Substitution of Counsel filed on March 6, 2026 [ECF No. 142].

## THE JUDICIAL ADMINISTRATOR WALD'S FEBRUARY 20, 2026 COMMUNICATION

8. As noted above, the two Judicial Administrators were appointed by the RJ Court to serve as agents of that Court in overseeing and reporting to the RJ Court on the Oi Group Debtors' activities. Judicial Administrator Wald, which is acting for the RJ Court and not the Chapter 15 Debtors or Foreign Representative (and is not represented by their counsel), sent the February 20, 2026, email, mentioned in the Court's first Status Conference Order, informing this Court of a decision by the Rio de Janeiro Business Court, issued on February 19, 2026 (the "**Interim Order**"). That decision stemmed from an action filed by Oi against 48 entities that collectively had held the majority of Oi's shares in mid-2025. Oi alleges that these defendants, when acting in their former capacities as majority shareholders of Oi, appointed members to Oi's (now dissolved) Executive Board and Board of Directors who proceeded to manage Oi to benefit those specific shareholders while, among other things, depleting Oi's assets and causing it to default on certain obligations under the RJ Plan.[2] The Rio de Janeiro Business Court issued the Interim Order enabling Oi to seize, pending resolution of the underlying litigation, all secured and unsecured credits (i.e., claims) of the shareholder entities. Such seizure does not prevent those entities from voting those credits regarding the auction as discussed below.

9. Notably, the Interim Order also ordered that a copy of the Interim Order be sent to this Court. *See* Interim Order, at 25. To comply with that Order, Judicial Administrator Wald, acting as an agent of the RJ Court, sent the email to this Court on February 20, 2026. The Chapter 15 Debtors and Foreign Representative understand Wald believed the email communication to be permissible because: (a) that email was in the nature of a court-to-court communication as Wald,

---

[2] *See* Interim Order, at 3-4.

as Judicial Administrator, acts as an officer of the RJ Court; and (b) Wald previously had made similar such communications in other chapter 15 cases without any *ex parte* communication issues having been raised.

10. While Oi's action for abuse of control pending in the Rio de Janeiro Business Court is under seal, *see* Interim Order, "II – The Confidentiality of Justice", the Interim Order itself is not, *see* Interim Order, at 26, item VI. Thus, the Interim Order itself and the Judicial Administrator's communication sharing it are not confidential and may be posted to the docket in this administratively consolidated case.[3]

## UPDATE ON THE UPI V.TAL AUCTION AND THE RJ PROCEEDING

### A.    UPI V.TAL AUCTION

11. On January 28, 2026, the RJ Court issued a decision approving the judicial sale of UPI V.tal, which is Oi's equity stake in V.tal Rede Neutra de Telecomunicações S.A. ("**V.tal**") held by Oi S.A. in Judicial Reorganization and by its wholly-owned subsidiary Rio Alto Investimentos e Participações. S.A. ("**Rio Alto**"). The V.tal equity stake is part of the collateral for the credits (i.e., claims) held by, among others, the Noteholder Parties, and scheduling the sale's competitive bidding process to begin with the opening of sealed bids on March 5, 2026. The RJ Court's call for bids ("*edital*") for the sale process required cash bids at or above a minimum price of R$12,315,977,451.75 (the "**Minimum Price**"), consistent with the RJ Plan, and directed the auction's timing.

12. As conceded in the Noteholders Statement, "there is nothing per se problematic" about Oi's sale of UPI V.tal. [ECF No. 133, ¶ 13]. The auction was conducted in strict compliance

---

[3] The defendants filed a motion for reconsideration of the Interim Order. On March 3, 2026, that Court denied the motion for reconsideration. The Chapter 15 Debtors are obtaining a certified English translation of the March 3, 2026 decision and will file it on the record should this Court so direct.

5

with the RJ Plan, proceeded on the timeline ordered by the RJ Court, and was carried out with the RJ Court judge presiding.

13. At the March 5, 2026, auction, Oi received no qualifying offers meeting all the RJ Plan's requirements. Oi did receive one cash bid from a qualified bidder in an amount less than the Minimum Price set by the RJ Plan. The terms of that bid are under seal.

14. As such, the auction did not produce a bid conforming to the RJ Plan's initial sale requirements.

### B.    POST-AUCTION PROCESS

15. As no conforming bid was received, the sale process for UPI V.tal is now proceeding as contemplated by the RJ Plan—the non-conforming bid is being submitted for review to Creditors of Restructuring Option I, a group of Oi creditors that include the Noteholder Parties (the "**Option I Creditors**"). *See* [ECF No. 47-1 at 290, §5.2.2.2.4; ECF No. 133 at 12, ¶ 2]. Specifically, Judicial Administrator Wald has presented or will present the Option I Creditors with the non-conforming bid today, March 9, 2026. Pursuant to the RJ Plan, the Option I Creditors have ten days from receipt of the bid(s), i.e., until March 19, 2026, to approve or reject a bid. *See* [ECF No. 47-1 at 290, § 5.2.2.2.4(a)]. Should the Option I Creditors reject the bid, the RJ Court ordered that the Judicial Administrator, Judicial Manager, a watchdog appointed by the court, and the bidder will have the opportunity to submit an opinion on the bid. In addition, the Public Prosecutor's Office, which attended the auction, will submit an opinion to the RJ Court. The RJ Court has scheduled a Court conference on March 30, 2026, when the auction will resume, and the RJ Court will address any issues that arise out of the Option I Creditors' review of the non-conforming bid and the opinions submitted thereafter.

16. The Noteholder Parties' (and other Option I Creditors') consent rights and other protections under the RJ Plan and the Intercreditor Agreement remain intact.[4] The Option I Creditors retain the initial right to accept or reject any proposals below the Minimum Price. In addition, to the extent the Option I Creditors' decision is the subject of litigation in the Brazilian RJ Proceeding, the Noteholder Parties, as some of those creditors, retain their rights to object and otherwise pursue their positions in that forum. Indeed, the Noteholder Parties already have preemptively filed objections before the Brazilian RJ Court, as reflected in Exhibit A to the Noteholder Parties' Statement. *See* [ECF No. 133, ¶ 4; *Id.* at 12, ¶ 2].

17. In short, the Brazilian RJ Proceeding is functioning as intended and the Noteholder Parties' rights are being preserved through the RJ Plan and in the Brazilian RJ Court. In particular, the Noteholder Parties have received all requisite notice and have had opportunities to be heard. Further, as reflected in the Noteholder Parties' Motion filed in Brazil that is annexed to the Noteholder Parties' Statement, their objections rely on provisions of the RJ Plan, which is being actively implemented by the Brazilian RJ Court. *See* [ECF No. 133, pp. 12-25].

## **LIMITED RESPONSE TO NOTEHOLDER PARTIES' STATEMENT**

18. The Noteholder Parties' Statement includes extensive argument on an unfiled request for relief in this Court that might never be filed. Accordingly, the Chapter 15 Debtors and the Foreign Representative do not address most of the Noteholders Statement here. Nonetheless, the Chapter 15 Debtors and the Foreign Representative note a few facts below to supply some key omissions from and/or correct some misleading aspects of the Noteholders Statement.

19. Preliminarily, we note that in contrast to the thrust of the Noteholders Statement, this Court's role in these chapter 15 cases is, as a matter of comity, to assist the Brazilian RJ

---

[4] Oi sought to remove certain consent rights, however the Brazil Court rejected that request.

Proceeding and the Brazilian Court in which the Brazilian RJ Proceeding is pending (the "**RJ Court**") and not to treat these cases as free standing chapter 11 cases for the Chapter 15 Debtors or to act as a Brazilian appellate court that independently reviews each ruling of the RJ Court. Indeed, the nature of these chapter 15 cases is well-documented through this Court's own precedent and prior orders. For example, this Court's Order Granting Full Force and Effect to the Brazilian RJ Plan (the "**FFE Order**") [ECF No. 42], issued to bind the Chapter 15 Debtors' U.S. creditors to the Brazilian RJ Plan, expressly recognizes this Court's role as one of cooperation and assistance to the Brazilian RJ Proceeding. Thus, the FFE Order found the Foreign Representative and Chapter 15 Debtors "are entitled to this Court's cooperation under section 1525(a) of the Bankruptcy Code in implementing the Brazilian RJ Plan" [*Id.* at ¶ F] and that "[a]bsent the relief granted [by the Court], the Brazilian RJ Proceeding and the efforts of the Chapter 15 Debtors, their creditors, and other parties in interest to consummate the Brazilian RJ Plan could be impeded or harmed . . . ." [*Id.* at ¶ H]. Similarly, the FFE Order confirmed that recognition by this Court was "necessary and appropriate in the interests of international comity . . . ." [*Id.* at ¶ T].

20. Consistent with these findings, the FFE Order directed all parties to "take any and all lawful actions necessary to give effect to and implement the Brazilian RJ Plan and restructuring transactions approved by the Brazilian Confirmation Order." [*Id.* at ¶ 4]. Further, the FFE Order permanently enjoined all entities from "commencing, continuing, or taking any action or asserting any claim that is in contravention or inconsistent with, or would interfere with, or impede the administration, implementation and/or consummation of the Brazilian RJ Plan, the Brazilian Confirmation Order, or the terms of this Order." [*Id.* at ¶ 7]. In short, the purpose of these chapter 15 cases is to support and give effect to the Brazilian RJ Proceeding — not to provide a parallel forum for parties to relitigate matters properly before the RJ Court.

21. Notably, the Brazilian RJ Proceeding is functioning exactly as intended. The auction of UPI V.tal was noticed by the RJ Court through the *edital* (call for bids), a formal court announcement, and that *edital* adhered to the letter of the RJ Plan. While the Noteholder Parties take issue with aspects of Mr. Rezende's execution of the auction, the auction not only was conducted consistent with the RJ Court's directed process, but was held in the RJ Court itself, with the Brazilian Judge presiding.

22. As no conforming bid was received on the opening of the auction, the Judicial Administrator sent (or will send) on March 9, 2026 the non-conforming bid to the Option I Creditors for approval as directed by the RJ Plan. And the RJ Court has set a further conference date regarding the sale for March 30, 2026, after those Option I Creditors have reviewed and advised whether they approve or reject the bid received. This process precisely follows the procedures in the RJ Plan and is exactly how the Brazilian RJ Proceeding is designed to function— with the RJ Court supervising the process, the Judicial Manager conducting the sale in accordance with the RJ Plan, and the applicable creditors exercising their bargained-for rights at the appropriate stage.[5]

23. Further, all issues raised by the Noteholder Parties are governed by the RJ Plan— which is precisely why the Noteholder Parties themselves have filed a motion raising their concerns before the RJ Court and citing the RJ Plan almost exclusively. *See* [ECF No. 133, pp. 12-25]. The Noteholder Parties have had and will continue to have ample notice of, and opportunities to object to or otherwise participate in, each of the matters about which they now express concern. They preemptively filed objections before the RJ Court, which, we understand,

---

[5] Significantly, the RJ Plan, including its provisions governing the sale of UPI V.tal, was negotiated by, among others, the Noteholder Parties. Moreover, neither the RJ Plan nor any other potentially relevant document includes requirements for the elements now mentioned by the Noteholder Parties, such as the use of an investment banker, the length and timing of the marketing effort, or the availability of credit bidding.

have been placed on the record and will be addressed by the RJ Court at or after the March 30 conference.  The Noteholder Parties were present at the auction before the RJ Court and raised objections at that proceeding, which we understand were reflected in the RJ Court's record.  Now, on March 9, 2026, the non-conforming, but still highest, bid has already been (or will be) provided to Option I Creditors for approval—consistent with the protections afforded under the RJ Plan.  Thus, the Noteholder Parties' rights under the RJ Plan and the Intercreditor Agreement are intact and being respected.

24.     While Noteholder Parties suggest action by this Court might be necessary, they have filed no motion.  As the RJ Court is actively and competently managing the Oi Group's main insolvency proceedings in Brazil regarding the Chapter 15 Debtors' Brazil assets, there appears to be no basis for the Noteholder Parties' veiled invitation for this Court to usurp the RJ Court's authority.  Instead, the RJ Court is the proper forum for resolving disputes arising under the RJ Plan, and the Noteholder Parties, who have received all requisite notice and had multiple opportunities to be heard, are actively availing themselves of that forum.  Hence, this Court's role should continue to be to support the Brazilian RJ Proceeding and assist the RJ Court.

*\*\**

Dated: March 9, 2026　　　　　　　　　　　　Respectfully submitted,
 New York, New York

　　　　　　　　　　　　　　　　　　　　　　*/s/ Alan J. Lipkin*_____
　　　　　　　　　　　　　　　　　　　　　　**CHAFFETZ LINDSEY LLP**
　　　　　　　　　　　　　　　　　　　　　　1700 Broadway, 33rd Floor
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　　　　　　　　　　　Alan J. Lipkin
　　　　　　　　　　　　　　　　　　　　　　Erin E. Valentine
　　　　　　　　　　　　　　　　　　　　　　Marcel Engholm
　　　　　　　　　　　　　　　　　　　　　　a.lipkin@chaffetzlindsey.com
　　　　　　　　　　　　　　　　　　　　　　e.valentine@chaffetzlindsey.com
　　　　　　　　　　　　　　　　　　　　　　m.engholm@chaffetzlindsey.com

　　　　　　　　　　　　　　　　　　　　　　*Counsel for the Foreign Representative*
　　　　　　　　　　　　　　　　　　　　　　*and Chapter 15 Debtors*