quinn emanuel trial lawyers | new york

295 Fifth Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7341**

WRITER'S EMAIL ADDRESS
**benjaminfinestone@quinnemanuel.com**

April 9, 2026

**By ECF Filing**

Hon. Lisa G. Beckerman
U.S. Bankruptcy Judge
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re: *In re Oi S.A., et al.* Case No. 23-10193 (LGB)

Dear Your Honor:

We write on behalf of our clients BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A. (collectively, "V.tal"), in advance of the status conference scheduled for April 10, 2026, to facilitate the Court's review of the decision of the Brazilian RJ Court (the "RJ Court") approving the sale of Oi's equity interest in V.tal (the "Brazil Sale Order"), which was entered on April 1, 2026 by Judge Simone Gastesi Chevrand. A copy of the Brazil Sale Order is attached hereto.[1] V.tal will file a response to the Ad Hoc Group's Motion on April 11.[2] However, V.tal believes the Brazil Sale Order is a sufficiently important ruling, warranting independent review.

As is apparent, the Brazil Sale Order is a thoroughly well-reasoned opinion issued in accordance with Brazilian Law, after providing due process and after carefully considering an extensive evidentiary record and the views and arguments presented by a long list of interested parties, including the Ad Hoc Group and its trustee (UMB), the Debtor, other creditors, the Judicial Observer (Watchdog), the Judicial Manager, the Public Prosecutor's Office and the Judicial Administrator.

First, the RJ Court stated that the sale of the equity in V.Tal "is *imperative*: it is provided for in the approved Judicial Reorganization Plan, to be carried out in 2026, and it was likewise

---

[1]   The Brazil Sale Order was attached to the Ad Hoc Group's Motion, but it was located within 765 pages attached to the Ad Hoc Group's foreign law declaration. *See* ECF 164 at 182/765, Exhibit 9.

[2]   The Motion does not identify the members of the Ad Hoc Group and it appears that the constitution of the Ad Hoc Group is shifting. *See* Mot. at ¶ 6 (referring to "three non-Brazilian *former* members of the Ad Hoc Group" potentially subject to shareholder liability) (emphasis added).

determined by a decision of a higher court that established priority for the orderly sale of assets upon the resumption of the judicial reorganization." Ex. A at 193 (emph. added).

Second, the RJ Court noted that "the sale was launched through a public notice with broad market awareness," "the market was widely informed of the sale and could participate in the bidding process," and "the asset was broadly offered to the market through a public competitive process," which ". . . is the most transparent available, as it directly offers the market, in a broad and public manner, the opportunity to compete freely." *Id.* at 902. The RJ Court also noted what it described as the "unavoidable reality," that "there is only one proposal submitted" "for the sale of Oi's interest in V.Tal." *Id.*

Third, regarding the adequacy of the price, the RJ Court noted that an independent valuation was conducted by G5 (described by the RJ Court as "the largest independent financial services firm in Brazil in asset management, M&A advisory, and regularly responsible for issuing 'fairness opinions' in company selection processes"), which concluded that the BTG Proposal price was "fair" and "reasonable", including because it exceeded the asset valuation under four valuation methods[3]. *Id.* at 903-04. By contrast, the RJ Court noted that the Ad Hoc Group's value proposition was unsupported by expert analysis and was "established 2 years ago", and further noted that the Ad Hoc Group's asserted value "with due respect, does not hold, as it is evident that shares are not valued based on monetary adjustment rules or historical numerical metrics, but rather reflect the market in which they trade." *Id*. at 903.

Fourth, the Brazilian Court considered all the objections raised by the Ad Hoc Group and its trustee (UMB), and found that:

a)  "although UMB now challenges the competitive process initiated on the grounds that it contains 'restrictive conditions,' the fact is that it expressly agreed to" the public notice of sale and "therefore . . . has no standing to now allege the existence of purported restrictive conditions—not even specified—that would have limited access to broad competition." *Id.* at 902.

b)  "All UMB's allegations would carry greater credibility and reliability had it concretely presented alternatives to the admission of the sale it now challenges; had it sought valuations of the asset by recognized firms in the field; or had it demonstrated efforts to identify other interested purchasers. However, it has presented none of these. Its allegations lack any evidentiary support and are therefore devoid of substance." *Id.*

c)  UMB alleged what the court described as "pocket nullities," consisting of "purported defects that, in practice, seek to hinder the progress of the case by creating obstacles that are either nonexistent or irrelevant, as they produce no consequence other than delaying the proceeding." *Id.*

---

[3] G5 analyzed the V.tal stake using four distinct methodologies: discounted cash flow analysis (which yielded a range of approximately R$2.555 billion to R$3.356 billion), comparable public company multiples (R$1.42 billion to R$1.772 billion), precedent transaction multiples (R$1.61 billion to R$2.004 billion), and net asset value (approximately R$4.487 billion). Under each methodology, the BTG Bid price of R$4.5 billion was at or above the indicated range. G5 expressly concluded that the minimum price established in the Edital—R$12.315 billion—was "outdated and no longer reflects current reality."

d) "With all due respect to the representatives of the objecting parties, this Court must acknowledge that they failed, even minimally, to substantiate their allegations." *Id.* at 904.

e) "[T]he rejection expressed by the [Ad Hoc Group] Creditors under Restructuring Option I and their representatives amounted to an exercise of economic irrationality, thereby tainting it with abusiveness and lack of good faith." *Id.* at 906.

Respectfully,

/s/ *Benjamin I. Finestone*
Benjamin I. Finestone
Counsel to BGC Fibra Participações S.A. and
V.tal – Rede Neutra de Telecomunicações S.A.