**Hearing Date and Time: April 15, 2026 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: April 11, 2026 at 4:00 p.m. (Prevailing Eastern Time)**
**Reply Date and Time: April 13, 2026 at 4:00 p.m. (Prevailing Eastern Time)**
**Ref. Docket No.: 163**

**FAEGRE DRINKER BIDDLE & REATH LLP**
Laura E. Appleby
Kyle R. Kistinger
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
Telephone: (212) 248-3140
laura.appleby@faegredrinker.com
kyle.kistinger@faegredrinker.com

*Counsel to UMB Bank, N.A., as Indenture Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Oi S.A., et al.,[1] | Case No. 23-10193 (LGB) |
| Debtors in Foreign Proceeding. | (Jointly Administered) |

**JOINDER OF UMB BANK, N.A., AS INDENTURE TRUSTEE, IN SUPPORT OF THE AD HOC GROUP OF SECURED NOTEHOLDERS' MOTION FOR AN ORDER TO (I) ENFORCE THIS COURT'S PRIOR ORDER GRANTING FULL FORCE AND EFFECT TO THE BRAZILIAN RJ PLAN IN THE UNITED STATES AND (II) GRANTING RELATED RELIEF**

UMB Bank, N.A., as indenture trustee (the "**Indenture Trustee**") for the 10.000% /

13.500% PIK Toggle Senior Secured Notes due 2027 (the "**NPSD Notes**") and the 8.50% PIK

Subordinated Secured Notes due 2028 (the "**RUD Notes**," and together with the NPSD Notes,

the "**Notes**"), respectfully submits this joinder in support of the *Motion for an Order to (I)*

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. – Em Recuperação Judicial (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. – Em Recuperação Judicial (8447 – Netherlands), Portugal Telecom International Finance B.V. – Em Recuperação Judicial (5023 – Netherlands).

*Enforce this Court's Prior Order Granting Full Force and Effect to the Brazilian RJ Plan in the United States and (II) Granting Related Relief* [Docket No. 163] (the "**AHG Motion**"), filed on behalf of the ad hoc group of secured noteholders (the "**Ad Hoc Group**"). In support of the requested relief, the Indenture Trustee states:

### JOINDER TO REQUESTED RELIEF[2]

1.      The Indenture Trustee respectfully joins in the relief sought by the Ad Hoc Group in the AHG Motion. The parties—Oi and its creditors—expressly negotiated and agreed to New York law-governed transaction documents, including the Indentures and Intercreditor Agreement, with the understanding that these contracts would be honored and enforced in accordance with their terms. Oi's current efforts in the RJ Court, which attempt to sidestep this Court's FFE Order, and the contractual protections embedded in the Postpetition Transaction Documents, undermine both the integrity of cross-border restructuring and the expectations of market participants. While comity is a cornerstone of international insolvency practice, its purpose is to facilitate mutual respect between jurisdictions—not to enable a party to disregard the orders of this Court or the foundational principles of fairness that underpin global capital markets. Oi's actions, which rely on a Brazilian court order that ignores the prior rulings of this Court, threaten to destabilize the trust that creditors place in New York law and in this Court's authority to enforce its own orders. The Indenture Trustee submits that this Court should not allow such disregard to stand.

2.      Simply put, the Notes were issued pursuant to the terms of New York-law governed indentures. *See* Indentures § 13.08.[3] Oi consented to the jurisdiction of the courts in New York to

---

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the AHG Motion or the Indentures, as applicable.

[3] As used herein, the "**Indentures**" means (a) that certain Indenture, dated as of August 8, 2024, among Oi S.A. – in judicial reorganization, a corporation (*sociedade anônima*) organized and existing under the laws of the Federative Republic of Brazil ("**Oi**"), each of the subsidiary guarantors from time to time party thereto, and UMB Bank, N.A., as Indenture Trustee, pursuant to which the NPSD Notes were issued (the "**NPSD Indenture**") and (b) the Indenture, dated as of August 8, 2024, among Oi, each of the subsidiary guarantors from time to time party thereto, and the

resolve any disputes concerning the Notes and Indentures. *See id* § 13.14. The Intercreditor Agreement[4] is also governed by New York law and the parties thereto likewise consented to the jurisdiction of the courts in New York to resolve any disputes arising thereunder. *See* Intercreditor Agreement § 11.08.

3.      Upon the happening and during the continuance of an Event of Default, as has occurred here, the role of the Indenture Trustee is to prudently protect and enforce the rights of the Noteholders pursuant to applicable law and the terms of the Indentures. As this Court is aware, the Indenture Trustee has been present and active, both in these Chapter 15 Cases and in the proceedings in Brazil. The Indenture Trustee's efforts are aimed at protecting and enforcing the rights of *all* Noteholders. By disregarding the contractual rights afforded under the NPSD Indenture, and seeking to override the collective will of the Noteholders, the Brazil Sale Order has effectively disenfranchised the entire class of NPSD Noteholders, undermining creditor protections and the reliability of the capital markets that depend on the enforcement of such kind of agreements.

4.      For the parties involved in the day-to-day ongoings in Brazil, the Indenture Trustee's position with respect to the present dispute is abundantly clear. Given, however, that the Noteholders comprise a broad and diverse group of investors, the Indenture Trustee finds it necessary to hereby formally join in support of the relief requested in the AHG Motion to ensure the community of rights of the Noteholders are adequately represented and protected.

---

Indenture Trustee, pursuant to which the RUD Notes were issued. The holders of the Notes issued under the Indentures are referred to herein as the "**Holders**" or "**Noteholders**". The NPSD Indenture is included as Exhibit 10 to the *Declaration of Guilherme Vaz Leal da Costa* [Docket No. 164].

[4] As used herein, the "**Intercreditor Agreement**" means that certain Intercreditor Agreement, dated as of August 8, 2024, among Oi, GLAS Americas, LLC, as Intercreditor Agent and Collateral Agent (in such capacities, the "**Collateral Agent**") and the grantors and other parties from time to time party thereto [Docket No. 150-1].

5.    The Indenture Trustee will not burden the Court with a lengthy recitation of its support for each of the arguments raised by the Ad Hoc Group but wishes only to highlight three highly relevant points.

6.    *First*, the facts underlying the AHG Motion are clear and undisputed: 92.08% of the NPSD Notes voted to reject the BTG Bid; only 6.22% voted to accept, and 1.70% abstained from voting. The overwhelming rejection is not the act of a single group of Noteholders, but a collective decision of over 92 percent the NPSD Noteholders generally, exercised through their bargained-for voting rights (none of which voting rights have been impaired, limited or modified—whether in the United States or Brazil—as a result of the "prejudgment attachment" granted by the RJ Court in the Oi Suit against the Named Defendants).

7.    The requirement that Oi obtain consent from at least 60% of the NPSD Noteholders to proceed with the BTG Bid is not merely a creature of the RJ Plan; it is an express requirement of the New York-law governed NPSD Indenture.[5] It is also an agreement that the NPSD Noteholders bargained for when voting in favor of the RJ Plan. Oi's disregard for this core consent requirement not only harms **all** NPSD Noteholders, but also risks eroding the trust and predictability that underpin the global capital markets, by permitting a party to circumvent contractually mandated protections fundamental to investor confidence.

8.    The NPSD Indenture provides that Oi may only sell its interest in V.tal (the "**V.tal Stake**") if the transaction qualifies as a "Permitted V.tal Sale." To qualify as a "Permitted V.tal Sale, the transaction must (i) be for an amount at least equal to the Minimum Price and approved

---

[5]    Indeed, the 6.22% of NPSD Noteholders who voted to accept the sale, in any calculation, is substantially less than the at least 75% of NPSD Noteholders that would have been required to amend the Indenture in this circumstance and less than the at least 50% of NPSD Noteholders that would have been required to amend the RJ Plan.  (NPSD Indenture, §9.02.)  Simply put, Oi cannot rely on the Indenture amendment provisions as a crux on which to argue that the V.tal Stake sale was accepted by NPSD Noteholders.

by a majority of Holders, (ii) generate enough proceeds to fully repay all outstanding NPSD Notes in full, or (iii) be consented to by Holders of at least 60% of the outstanding principal amount of the NPSD Notes. *See* NPSD Indenture §§ 1.01, 4.16(1)(ii).

9.     None of these requirements have been satisfied: The proposed sale price is significantly less than the Minimum Price; the proceeds will not be sufficient to pay the NPSD Notes in full; and Oi has not obtained the consent of at least 60% of the NPSD Noteholders—in fact, it has not even come close.

10.     Moreover, although the Ad Hoc Group and other NPSD Noteholders have provided rational and well-reasoned bases for their decision to vote against the proposal, the NPSD Indenture imposes no requirement that a Noteholder justify their decision.  Each NPSD Holder's right to accept or reject a bid below the Minimum Price is absolute and unqualified; a fundamental protection that stands apart from the merits of any particular rationale and lies at the heart of the bargain struck between Oi and its creditors.

11.     ***Second***, as the AHG Motion discusses at length in Section II.B., the Indentures require that the proceeds of any sale of collateral be applied in accordance with the Intercreditor Agreement. *See* Indentures § 4.16. In turn, the Intercreditor Agreement sets forth a waterfall for the proceeds from a sale of the V.tal Stake. *See* Intercreditor Agreement §§ 5.03, 7.02. Under the waterfall in Section 7.02 of the Intercreditor Agreement, the proceeds from a sale of the V.tal Stake must be distributed first to the Collateral Agent, and second to each "First Priority Representative" (which includes the Indenture Trustee), for application to the payment of all outstanding "First Priority Obligations," which obligations include the claims in respect of the NPSD Notes and the V.tal Debentures, until those obligations are paid in full.

12.     If Oi withholds a portion of the sale proceeds from distribution to the Collateral Agent based on the injunctive relief obtained against the Named Defendant in Brazil, it will have wide ranging and far reaching "downstream" consequences.  These consequences affect *all* NPSD Noteholders.

13.     In such a scenario, and as the AHG Motion accurately describes:

> The Collateral Agent will have received insufficient proceeds from the sale of the V.tal Stake, and will, after deducting permissible fees and expenses, provide them to the next party in the waterfall, the "First Priority Representative," which is the Indenture Trustee under the NPSD Notes (UMB Bank N.A.). The Indenture Trustee will then, in turn, be required to distribute proceeds to DTC. DTC will distribute proceeds to the custodians holding the NPSD Notes for all beneficial owners, in accordance with the waterfall established by section 7.02 of the Intercreditor Agreement and section 4.16(2) of the Indentures.

> But, because part of the sale proceeds will have been withheld at the Oi level of the waterfall, the preceding parties in this chain will be forced to decide whether to make payments pro rata—which will ensure that *every* beneficial owner is paid less than their contractual entitlements as a result of Oi's improper withholding—or to attempt some reconciliation to account for the fact that the amounts available for distribution have been reduced by Oi in an attempt to withhold proceeds specifically from the Named Defendants. However, because the purported attachment of Notes has not been domesticated in the United States and has no legal effect here, there is no authority and no practical means by which the DTC payment system could withhold proceeds from the accounts of the Named Defendants, even if parties wanted to do so. And the waterfall and turnover provisions of the Intercreditor Agreement require ratable distribution of proceeds. In any event, the likely result for all holders of the NPSD Notes would be some combination of (a) receiving substantially less than they are contractually entitled and/or (b) becoming enmeshed in a lengthy and complex turnover litigation to address the deficiency of proceeds. At each step in this reticulated process, Oi's (and BTG's) disregard for and override of the Postpetition Transaction Documents will create greater and greater risk of a cascading set of additional impermissible overrides in violation of this Court's FFE Order.

AHG Motion ¶¶ 73–74.

14.     ***Third***, the parties were deliberate and intentional in electing New York law to govern the Indentures and related agreements. The choice was not incidental: New York law is the

6

backbone of international capital markets, providing consistency, predictability, and enforceability for cross-border transactions. In effect, the Brazil Sale Order is an attempt to amend the NPSD Indenture and to override its contractual protections without compliance with New York law. To disregard the requirements of the Indentures in this manner undermines the foundation of the capital markets, introduces substantial uncertainty among its participants, and threatens the enforceability of financial contracts globally.

## CONCLUSION

For the foregoing reasons, among others, the Indenture Trustee joins in the AHG Motion and respectfully urges the Court to grant the requested relief, preserving the rights of the Noteholders, enforcing the terms of the Indentures and FFE Order, and upholding the integrity of cross-border capital markets.

The Indenture Trustee reserves all rights to supplement this Joinder and to respond to any filing of Oi, the Foreign Representative, the Judicial Manager, the Judicial Administrator, or any other party in interest in these Chapter 15 Cases. The Indenture Trustee further reserves the right to respond to any order with respect to the AHG Motion.

Dated: April 11, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Laura E. Appleby*
Laura E. Appleby
Kyle R. Kistinger
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141
laura.appleby@faegredrinker.com
kyle.kistinger@faegredrinker.com

*Counsel to UMB Bank, N.A., as Indenture Trustee*