**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
Benjamin I. Finestone
Mario O. Gazzola
Jeremy Baldoni
Julia T. Rodrigues
295 5th Avenue, 9th Floor
New York, NY 10016
benjaminfinestone@quinnemanuel.com
mariogazzola@quinnemanuel.com
jeremybaldoni@quinnemanuel.com
juliarodrigues@quinnemanuel.com
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

K. John Shaffer (*pro hac vice*)
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017
johnshaffer@quinnemanuel.com
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for BGC Fibra Participações S.A. and V.tal – Rede Neutra de Telecomunicações S.A.*

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Oi S.A. *et al.*,<br><br>Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Jointly Administered<br><br>Case No. 23-10193 (JPM) |

**RESPONSE TO THE STATEMENT OF GLAS AMERICAS, LLC [ECF 179] AND THE
JOINDER OF UMB BANK, N.A. [ECF 184]**

---

[1]   The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Oi S.A. (01-43 – Brazil), Oi Brasil Holdings Coöperatief U.A. (8447 – Netherlands), and Portugal Telecom International Finance B.V. (5023 – Netherlands) ("Oi Group" or "Oi").

BGC Fibra Participações S.A. ("BCG") and V.tal – Rede Neutra de Telecomunicações S.A. (collectively, "Objectors") respectfully submit this response to two filings made on April 11, 2026: (i) the Statement of GLAS Americas, LLC ("GLAS" and "Statement") [ECF 179] and (ii) the Joinder of UMB Bank, N.A. ("UMB" and "UMB Joinder") [ECF 184].[2]

## STATEMENT

1.     GLAS does not advance the analysis of the matters before the Court. GLAS states that it "does not believe it is currently in a position to take any action" under the Intercreditor Agreement. Statement ¶ 2. This statement has nothing to do with whether this Court should order any injunctive relief concerning the Sale Transaction as the Ad Hoc Group has requested—and, it should not. Indeed, the RJ Court has already recognized that issues concerning the distributions of sale proceeds do "not appear capable of being asserted against the bidder [and that] arrangements underlying the distribution of value arising from enforcement of the collateral must be addressed not only among the respective interested parties (beneficial owners and their collateral agents), but also between them and the debtor." *See* Brazil Sale Order, [ECF 164, Ex. 9], at pg. 198.[3] Concerns about distributions of sale proceeds are simply not ripe.

2.     Nor is there any reason for GLAS to be concerned about a lack of "clarity." Statement ¶¶ 3,4. Indeed, the Bid approved by the Sale Order expressly provides that "[t]he Purchase Price will be paid by the Bidders . . . through the transfer of immediately available funds to the Escrow Account," and must thereafter (within one business day after closing) be allocated "under the terms and in accordance with the payment order established [in the RJ Plan] and in

---

[2]   Objectors previously filed the Objection to the Ad Hoc Group's April 6, 2026 Motion (respectively the "Objection" and "Motion") [ECF 180].

[3]  As described in the Objection, as it relates to matters concerning enforcement of collateral, the Intercreditor Agreement provides for exclusive jurisdiction in "the Courts of the City of Rio de Janeiro, State of Rio de Janeiro, Brazil." [ECF 150, § 11.08(b)].

clause 12.02 of the Intercreditor Agreement (collectively, 'Cash Sweep') . . ." Bid at § 4.1(i).[4]

The Bid also establishes as conditions precedent to closing the sale that (i) Oi has opened the

escrow account; (ii) Oi has entered into an escrow agreement; and (iii) a "fiduciary assignment

agreement for the [escrow account] was entered into . . . which must have been duly registered

with the competent registry offices for deeds and documents . . . and *which must stipulate that the*

*proceeds from the sale of UPI V.tal will be used to pay the applicable creditors through a Cash*

*Sweep.*" Bid at § 5.1(v) (emphasis added).

3.      In other words, the sale proceeds will be paid by the purchaser to the seller (Oi);

into an escrow account; a fiduciary lien will attach to such escrow account to the benefit of the

lenders; the proceeds will be released by the escrow agent to secured parties pursuant to the

fiduciary lien; all in accordance with the waterfall upon closing and all pursuant to the terms of

the RJ Plan and the Intercreditor Agreement. Oi serves a limited ministerial role, providing the

Escrow Agent with the beneficiary information necessary to execute the Cash Sweep (to the

secured parties), not to exercise any discretion over the allocation of proceeds (and the fiduciary

lien over the escrow account ensures this). It is difficult to understand what is the problem here.[5]

4.      Nor is there any "inconsistency between the Sale Order and the terms of the

Intercreditor Agreement" in respect of the payment mechanics. Statement ¶ 4. GLAS asserts its

"understanding" that the Sale Order provides that "Oi, and not GLAS, is responsible for directing

---

[4]  A copy of the original Portuguese version of the approved Bid is attached hereto as **Exhibit A**.
A Google Translate machine translation of the approved Bit is attached hereto as **Exhibit B**.

[5]  Indeed, GLAS should be especially comfortable, because the Intercreditor Agreement provides
that "[e]ach of the Intercreditor Agent and the Collateral Agent is authorized to obey and comply
with all writs, orders, judgments or decrees issued by any court or administrative agency of
competent jurisdiction affecting any money, documents or things held by it," and that "[n]either
the Collateral Agent nor the Intercreditor Agent shall be liable to any Person by reason of its
compliance with such writs, orders, judgments or decrees, notwithstanding such writ, order,
judgment or decree is later reversed, modified, set aside or vacated." ECF 150, § 10.02(g) at 56.

the distribution of sale proceeds." Statement ¶ 3. But, GLAS is referring to the mechanics concerning how the proceeds will be released from escrow to GLAS in the first place, not distribution by GLAS thereafter. GLAS fail to point to any contractual provision in the Intercreditor Agreement (or elsewhere) granting GLAS the right to instruct how the proceeds get released from the escrow agent to the secured parties in the first place—because no such provision exists. Section 5.03 of the Intercreditor Agreement, cited by GLAS [Statement, at ¶ 3], concerns distribution of proceeds *after* GLAS receives sale proceeds, not how proceeds get from the escrow account to GLAS. ECF 150, § 5.03, at 43 (proceeds: "shall be paid, or distributed, to [GLAS] for application in accordance with Article 7 of this Agreement."). In other words, Section 5.03 requires that GLAS receive the proceeds and apply them according to the contractual waterfall— it says nothing about who instructs the escrow agent to release funds upon closing. GLAS and UMB are conflating the mechanism by which proceeds reach GLAS with GLAS' independent obligation to apply those proceeds once received.

5.      GLAS and UMB have long been aware of all of this. In a letter sent by BCG on behalf of the bidders on March 9th, 2026, BCG informed GLAS and UMB that "the Binding Offer involves the payment of a cash consideration, in one installment, into *an escrow account* held by the Company and *encumbered under fiduciary lien in favor of the Secured Parties*," and that "[t]he sale proceeds to be deposited into such escrow account shall be applied for the payment of the Secured Parties, as set forth in Section 12.02 of the Intercreditor Agreement and in Clause 5.3.2 of the RJ Plan." *See* ECF 148-1, at pg. 12 (emphasis added). Thus, GLAS's concerns about violating the Intercreditor Agreement are unfounded. Statement ¶ 3.

6.      The UMB Joinder also is without merit and suffers from the same material omissions as the Motion. UMB references the fact that the Indentures and Intercreditor Agreement

3

are "governed" by New York law (which concerns matters of interpretation), UMB Joinder at ¶2, but omits to mention that matters concerning collateral, such as a sale of, and fiduciary lien-release concerning, the V.tal shares are subject to the *exclusive* jurisdiction of Brazilian courts.[6]  *See* n.3 *infra*.

7.      Remarkably, UMB, like the Ad Hoc Group before it, cites a violation to the Indenture provision concerning a "Permitted V.tal Sale" (which would in turn allegedly cause a violation of § 17 of the FFE Order), *conspicuously omitting* the fact that the Minimum Price under the Indenture is subject to adjustment based on market value.  Joinder ¶ 8; ECF 164, at pg. 228, NPSD Indenture § 1.01.  As noted in the Objection at 2, the RJ Court determined that the market was "widely informed of the sale" and "the asset was broadly offered to the market through a public competitive process", which resulted in the determination of a fair and reasonable price for the asset.  It is thus clear:  the sale is a Permitted V.tal Sale.

8.      Nothing in the Statement or the Joinder alters the inescapable conclusion.  The Motion should be denied.

---

[6]   And it's not surprising that the parties agreed to the *exclusive* jurisdiction of Brazilian courts for these issues.  The "V.tal Collateral" is a fiduciary assignment registered with Brazil's local registry of deeds and documents, a category of collateral does not exist under New York law, and is subject to specific rules under Brazilian law for issuance, registration and release.

Dated: April 13, 2026
     New York, New York

**Quinn Emanuel Urquhart &
Sullivan, LLP**

*/s/  Benjamin I. Finestone*
Benjamin I. Finestone
Mario O. Gazzola
Jeremy Baldoni
Julia T. Rodrigues
295 5th Avenue, 9th Floor
New York, NY 10016
benjaminfinestone@quinnemanuel.com
mariogazzola@quinnemanuel.com
jeremybaldoni@quinnemanuel.com
juliarodrigues@quinnemanuel.com
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

K. John Shaffer (*pro hac vice*)
865 S Figueroa St, 10th Floor
Los Angeles, CA 90017
johnshaffer@quinnemanuel.com
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel to BGC Fibra Participações S.A. and
V.tal – Rede Neutra de Telecomunicações S.A.*