# EXHIBIT B

State of Rio de Janeiro — Judiciary
Court of Justice
Judicial District of the Capital
Clerk's Office of the 7th Business Court
Av. Erasmo Braga, 115 — Central Wing, Suite 706 — Zip Code: 20020-903 — Centro — Rio de Janeiro — RJ — Tel.: 3133 2185 —
E-mail:  cap07vemp@tjrj.jus.br

Class/Subject: Judicial Reorganization – Concourse of Creditors / Judicial Reorganization and Bankruptcy
Petitioner: OI S.A.
Petitioner: PORTUGAL TELECOM INTERNATIONAL FINANCE B.V.
Petitioner: OI BRASIL HOLDINGS COOPERATIEF U.A.
Judicial Administrator: WALD ADMINISTRAÇÃO DE FALÊNCIAS E EMPRESAS EM ADMINISTRAÇÃO
JUDICIAL LTDA
Judicial Administrator: PRESERVAR ADMINISTRAÇÃO JUDICIAL, PERÍCIA E CONSULTORIA
EMPRESARIAL LTDA
Interested Party: BANCO BTG PACTUAL S.A.
Interested Party: VITAL S/A
Interested Party: LIGGA TELECOMUNICAÇÕES S.A.
Amicus Curiae: NATIONAL FEDERATION OF TELECOMMUNICATIONS COMPANY WORKERS AND
TELEPHONE SWITCHBOARD OPERATORS
Expert: PINTO MACHADO ADVOGADOS ASSOCIADOS

On this date, I submit the case file to the Honorable Judge.
Simone Gastesi Chevrand

April 14, 2026

Decision
Case No. 0090940-03.2023.8.19.0001
- I - TENDA'S SUBMISSION (Indices 132.435 and 134.102)

They allege a material error, on the grounds that the term "SBA" appeared in the challenged decision instead of "TENDA." Furthermore, they assert an omission regarding the amounts to be borne by the petitioner, as well as a contradiction concerning the necessity of issuing a new court order to finalize the sale.

They request that "the amounts demonstrably expended by TENDA for the regularization of the property—including those arising from debts encumbering the asset—be taken into account for the purpose of deducting them from the outstanding balance of the purchase price, as already acknowledged in the submissions of the debtor-in-recovery and the Judicial Administrator; the determination of the exact amount shall be conditional upon adequate evidentiary proof within the case records or in a separate ancillary proceeding; (...)" as well as that "the contradiction

1

existing in the challenged decision regarding the necessity of issuing a new court order to finalize the sale be remedied, clarifying that the alienation of the property has already been duly authorized (p. 96.987); furthermore, making the finalization of the property sale conditional upon the issuance of a new court order contradicts the terms contractually agreed upon and previously ratified by this Court, in addition to rendering the transaction unfeasible, given that the court order is a prerequisite to—rather than a subsequent step following—the execution of the deed and payment."

Submissions by the debtors-in-recovery appear at Index 130.282, and by the Judicial Administrator at Indices 128.117 and 130.055.

The Public Prosecutor's Office submitted its opinion at Index 131.908. This concludes the report. I DECIDE.

Preliminarily, it is incumbent upon the Court to acknowledge the material error regarding the name of the acquirer.

...of the asset, such that it shall be read as TENDA. Furthermore, the embargant is well-founded in their arguments.

Clauses 3.5.2 and 3.5.3 of the private promise of purchase and sale agreement stipulate that the amounts expended by TENDA up to that point—as well as those yet to be expended—totaling R$ 825,314.89, shall be deducted from the price to be paid.

For their part, the Judicial Administrator and the Judicial Manager raised no objection to TENDA's initial request (filed under indices 124.010 and 124.072); however, they conditioned said price deduction upon proof that the expenditures had actually been incurred, as evidenced by indices 128.127 and 130.058.

In light of the foregoing, I hereby take cognizance of the motions for clarification (*embargos*), as they were filed in a timely manner; as to the merits, I GRANT them to correct a material error, such that the decision recorded under index 132.249 (Item V) shall be read as "TENDA" instead of "SBA."

Furthermore, I attribute *infringing effects* to these motions—thereby modifying the substance of the prior decision—to ensure that the amounts demonstrably expended by TENDA (specifically regarding costs associated with the asset's encumbrances/unavailability and ongoing operational expenses)—pursuant to the Private Instrument of Promise of Purchase and Sale executed between the parties—are deducted from the outstanding balance of the acquisition price. The exact amount of said deduction remains conditional upon TENDA providing documentary proof thereof within these case records, which proof must be corroborated by the Judicial Manager and subjected to oversight by both the WatchDog and the Judicial Manager.

It should be emphasized that the final settlement of accounts must adhere to the contractual "Escrow account" mechanism, pursuant to the prior decision which has since become final and unappealable.

Referred to the JUDICIAL MANAGER to assess the feasibility of utilizing the court disbursement order (*alvará*) that has already been issued, notwithstanding the current lack of a precise quantification of the "deductions." - II - STATEMENT BY CONCOURSE TELECOMUNICAÇÕES (INDEX 134.066)

The creditor requests that the General List of Creditors (QGC) be rectified and updated, pursuant to a judgment of merit already rendered in the credit challenge proceedings.

ORDER: Let the aforementioned petition be removed from the case file, as it is not pertinent to the judicial reorganization proceedings. The Judicial Administrator shall take cognizance of the need for rectification within the credit challenge proceedings themselves and shall take appropriate measures.

Any failure to comply in that regard must be reported within those specific proceedings.

- III - JOINT STATEMENT BY THE JUDICIAL ADMINISTRATOR AND THE JUDICIAL MANAGER (Index 134.070)

a)      Equatorial Pará Distribuidora de Energia S.A. (Index 132.335)

In a brief summary, it asserts that, in light of the default, the concessionaire interrupted the power supply on October 29, 2025. However, it contends that the company undergoing reorganization clandestinely reconnected the power supply on multiple occasions.

The Manager submitted a statement at Index 134.005. The Judicial Administrator submitted a statement at Index 134.070.

The WatchDog submitted a statement at Index 134.091, deeming the issue resolved and opining in favor of the "removal of the service line and the pursuit—before TIM S/A—of the collection of amounts inherent to the usage of the unit, including compensation for any damages resulting therefrom, through appropriate legal channels."

The Companies Under Reorganization submitted a statement at Index 134.109, on the grounds that they do not oppose the removal of the service line, while noting that they did not interfere in any way with the electrical installations.

ORDER: Notwithstanding the previous decision—which directed that the statements be transferred to the ancillary proceeding regarding essential public services—let the proceedings await the statement of the Public Prosecutor's Office, which has already been notified at Index 134.132.

b)      AMDOCS BRASIL LTDA (Index 132.368)

It reports that the amount paid to AMDOCS does not correspond to the total historical value of its insolvency claim. It requests that the Judicial Administrator and the Companies Under Reorganization be notified to submit proof of payments made to all creditors, as well as the criteria used for each of said payments.

The Manager submitted a statement at Index 134.005, clarifying the amounts of the pro rata distributions. The Judicial Administrator filed a statement at Index 134.070, requesting that the creditor be notified of the clarifications previously provided.

WatchDog, for its part, deems it essential "that the payment vouchers be attached to the present proceedings, in order to confirm the information contained therein."

4

...in the Detailed Schedule," (see pp. 134,095). The Public Prosecutor's Office [opined] on this topic.

ORDER: I accept the opinion of the Judicial Administrator and hereby order that the creditor be notified—via publication in the Official Electronic Gazette (DJEN)—regarding the clarifications provided by the Judicial Manager.

Furthermore, considering that the Judicial Management team has reported that it is already coordinating with the debtor company's responsible departments to submit the payment details, let the proceedings be suspended for thirty days.

Once the documents are filed, grant access to the Watchdog for its information and, if applicable, to raise any pertinent points.

c)      ORACLE DO BRASIL SISTEMAS (INDEX 132,515)

Filed motions for clarification (*embargos de declaração*), on the grounds that it was excluded from the distribution plan approved by the Court at pp. 126,653–126,655.

The Judicial Management team submitted its statement, while the Judicial Administrator (AJ) submitted its statement at Index 134,070. The Debtor Companies endorsed the statement submitted by the Judicial Manager.

The Public Prosecutor's Office remained silent on the matter.

ORDER: The Judicial Administrator reported that the movant did not hold any outstanding installments at the time of the distribution; for this reason, it was not included in the proposed payment plan.

In addition to finding no grounds for relief under Article 1022 of the Code of Civil Procedure, the creditor's allegations lack merit, insofar as it did not hold any overdue installments at the moment the distribution took place.

I take cognizance of the motions for clarification, as they were filed in a timely manner; however, on the merits, I DENY them, for the reasons set forth above.

d)      ANDERSON DOUGLAS FALI FALLEIROS and ECKER ADMINISTRAÇÃO (Index 132.378)

The former alleges that, notwithstanding the proper acquisition of real estate owned by Oi S.A., several measures—which depend on the Judicial Manager—have not yet been taken.

The Manager submitted a statement at Index 134.005, and the Judicial Administration did likewise at Index 134.070.

5

The Watchdog did not oppose the granting of the request and moved that the Manager notify the Court, within these case records, once the definitive public deeds of purchase and sale have been signed (Index 134.091).

The Public Prosecutor's Office did not submit a statement regarding this topic.

ORDER: Considering that this Court has already ordered the issuance of a judicial authorization to permit the alienation and registration of both properties (Indices 132.433 and 132.668), it is incumbent upon the Judicial Manager to adopt the measures necessary for the definitive transfer of said properties—specifically, the signing of the public deeds.

Indeed, this was the tenor of the Manager's statement submitted at Index 134.005.

Although due recognition is given to the efforts being undertaken by the Judicial Administration to fulfill the Judicial Reorganization Plan (PRJ) and the rulings of this Honorable TJRJ (Court of Justice of Rio de Janeiro), it is imperative that a deadline be established for the fulfillment of this objective. Third parties who placed their trust in this judicial reorganization process—despite being fully aware of all the difficulties and unique circumstances inherent herein—must not be prejudiced by the sheer magnitude of this proceeding.

Accordingly, having weighed the interests of the purchasers as well as those of the companies undergoing reorganization—and ever mindful of the volume of obligations and directives that the Judicial Manager is required to fulfill—I hereby establish a deadline of two months for the signing of the deeds; notification of said signing must be submitted to the case records as soon as the process is finalized. Upon verification of the execution of the deeds, notify Judicial Management and the Public Prosecutor's Office; furthermore, ensure public notice is provided via DJEN.

IV - CADE STATEMENT (INDEX 134.325)

ORDER: CADE reports that it has no interest in the UPI. Noted. Notify the parties to this proceeding and the Public Prosecutor's Office for their information.

V - EMBARGOS DE DECLARAÇÃO FILED BY UMB BANK (INDEX 134.364)

The companies undergoing reorganization filed their response at Index 134.528.

The petitioner asserts the existence of the following defects in the decision identified as ID 134048:

1)      Contradictions regarding the central premises: value maximization and limits of control.

judicial administration: rejection by 92.08% of the creditors regarding Restructuring Option I, and the failure to allocate the proceeds from the sale to bolster the cash reserves of the debtor companies;

2)      Contradictions regarding the evidentiary basis adopted: the decision was based on a single expert report presented by the judicial administration, without analyzing the methodology of the report submitted by G5;

3)      Omission, obscurity, and contradiction regarding existing alternatives: the "credit bid" mechanism, a new competitive bidding round, and the debtor companies' duty to maximize asset value—specifically, the *ad hoc* group raised the possibility of a credit bid as an alternative to a proposal falling below the minimum price;

4)      Contradiction and omissions regarding concretely demonstrated losses and the alleged "economic irrationality" of the rejection (the rejection was supported by 92.08% of the creditors and was opposed by the Public Prosecutor's Office);

5)      Omission and errors of premise regarding fiduciary guarantees and factual assumptions concerning the creditors (approval was rejected by an absolute majority of creditors—a rejection that cannot be deemed illegitimate);

6)      Omissions and errors of premise regarding violations of the Judicial Reorganization Plan (PRJ) and debt instruments: the decision failed to analyze the grounds for the refusal, particularly given that the BTF proposal violates both the PRJ and the restructuring instruments;

7)      Omission regarding future transactions: the decision imposed an obligation not to conduct an IPO for a period of 24 months but failed to establish the terms of indemnification in the event that an asset sale is executed outside of a stock exchange environment;

8)      Requests that suspensive effect be granted to the interlocutory appeal (*agravo*) in order to "stay" the effects of the contested decision pending a review of the merits—either by this Court or by the TJRJ (Rio de Janeiro Court of Justice);

9)      Notes that any eventual consummation of the asset sale shall be deemed ineffective against third parties, including the BTG group.

DECISION:

There is not a single defect in the challenged decision that appears even remotely discernible in light of the arguments put forth by the petitioner. None of these arguments constitute omissions, contradictions, or obscurities; nor does the decision require any supplementation. Rather, the arguments merely reflect evident dissatisfaction with the substance of the ruling.

Consequently, there is nothing to be remedied, as the decision proves to be clear and effective in resolving the issues raised within the proceedings.

In truth, the petitioner persists in attempting to uphold his rejection of the submitted proposal and, furthermore, seeks to justify his failure to provide any evidence that he explored alternatives

7

to the sale—a measure contemplated in the Judicial Reorganization Plan (PRJ). He even goes so far as to revisit the possibility of conducting a "credit bid"—despite having expressly stated within the proceedings that he had no intention of doing so, and having reiterated this position during a hearing where he not only affirmed it verbatim but also insisted that it be formally recorded. Such conduct could give rise to a presumption of bad faith.

Moreover, the petitioner seeks to impose a new penalty upon the proponent—who is also the prospective acquirer—in addition to the existing prohibition on conducting an Initial Public Offering (IPO) for a period of 24 months. This latter restriction was imposed solely on the initiative of this Court and could—indeed, should—have been advocated by the current petitioner at an earlier stage, naturally, as an alternative to the potential ratification of the proposal.

Accordingly, the unjustified resistance to the natural progression of the proceedings—manifested through an insistence on advancing his legal theory via a motion for clarification rather than through the appropriate appellate remedy—underscores the procedural impropriety of the path chosen.

And that is not all. The situation warrants the non-cognizance of the motion and the immediate finality of the rendered decision.

This approach aligns with the established guidance of the nation's highest court—the Honorable Supreme Federal Court—which, in such instances, has consistently declared the immediate *res judicata* (finality) of decisions challenged by motions for clarification that are manifestly inadmissible. Incidentally:

AR 2802 AgR-ED

Adjudicating Body: Full Court | Rapporteur: Justice LUIZ FUX | Judgment: 11/13/2023 | Publication: 11/23/2023 | Syllabus

SYLLABUS: MOTION FOR CLARIFICATION REGARDING AN INTERLOCUTORY APPEAL IN A RESCISSORY ACTION. ABSENCE OF OMISSION. LACK OF ANY DEFECT SUFFICIENT TO TRIGGER ANY OF THE GROUNDS FOR FILING A MOTION FOR CLARIFICATION. ATTEMPT TO

REVISITING MATTERS ALREADY DECIDED. SUBSTANTIVE EFFECTS. IMPERMISSIBILITY. MOTION FOR CLARIFICATION DENIED. CERTIFICATION OF FINALITY AND IMMEDIATE REMAND OF CASE FILES, IRRESPECTIVE OF THE PUBLICATION OF THE

APPELLATE DECISION. 1. Motions for clarification are admissible when there is ambiguity, obscurity, contradiction, or omission in the judgment or appellate decision, pursuant to Art. 619 of the Code of Criminal Procedure. In the absence of any such defects, a motion for clarification is not admissible. 2. *In casu*, the attempt to revisit the entire substantive matter addressed in the rescissory action is unfeasible within the narrow scope of a motion for clarification, particularly when there is no defect to be remedied. 3. Motion for clarification denied, with a determination for the certification of finality and the consequent immediate remand of the case files, irrespective of the publication of the appellate decision.

Decision:

The Court, unanimously, denied the motion for clarification and ordered the certification of finality, with the consequent immediate remand of the case files, irrespective of the publication of the appellate decision, in accordance with the vote of the Reporting Justice. Plenary Session, Virtual Session held from November 3, 2023, to November 10, 2023.

In light of the foregoing, I DECLINE TO TAKE COGNIZANCE of the motion for clarification, which is manifestly inadmissible, and I declare that the right to challenge the present decision has been forfeited (*preclusão*) with respect to this movant.

This Court shall remain attentive to the procedural conduct of the aforementioned petitioner; should such conduct appear inappropriate, it shall be duly assessed and reprimanded.

- VI – STATEMENT BY THE JUDICIAL ADMINISTRATOR (INDEX 134.490)

ORDER: Forward to the Public Prosecutor's Office, with a suggestion for urgent review of the requested measure, in light of the allegations raised therein.

Without prejudice thereto—and seeking to ensure the effectiveness of the urgent resolution required—I hereby order, as an atypical measure, the personal service of notice upon the official responsible for the designated Notary Office, directing said official to effect the cancellation of the encumbrance recorded against the Judicial Administrator within two hours. Failure to comply shall place said official in a situation of flagrant non-compliance with a judicial order, liable to result in their detention by the officer performing the service—who is hereby apprised that, for the purpose of this official duty, they shall be accompanied by a police authority. Let the corresponding writ be issued.

-       VII - MOTION FOR CLARIFICATION FILED BY BTG ("THE PROPONENTS") (INDEX 134.545)

The movant asserts the need for clarifications regarding the decision identified as ID 134048.

9

The movant is entirely correct; for this reason, any statement from other parties is, in fact, unnecessary, given that the requested clarifications are integral to the challenged decision—being implicit therein—and constitute the effects that naturally flow therefrom.

I shall, therefore, proceed to explicitly set them forth.

The need for clarification stems from the premise that this Court imposed penalties upon the Proponent in the event of an IPO being conducted within the 24-month period immediately following the acquisition of the equity stake, as well as in the event of a withdrawal of the submitted proposal.

Regarding the first penalty—being a restrictive measure that was effectively imposed—it naturally does not admit of an expansive interpretation. Consequently, the obligation to refrain is strictly limited to the specific scenario textually designated as the triggering event: the conduct of an IPO within the 24-month period. It does not extend to any other form of sale transaction other than an initial public offering (listing) on a stock exchange. In other words, it does not apply to sale transactions, asset sales, mergers, spin-offs, corporate amalgamations, or share exchanges—regardless of whether such transactions involve a company whose securities are already admitted to trading on a regulated market—nor to business combination transactions (even if involving a publicly held company or pre-listed investment vehicles, and even if resulting in the admission of V.Tal shares or securities to trading on a regulated market), nor to any other form of admission to trading on a regulated market that does not arise from a public offering for the distribution of securities, pursuant to the applicable regulations. Given that a 27.5% equity stake in V.Tal was acquired through a UPI, should the scenario expressly prohibited by the Court—namely, the holding of an IPO within 24 months—come to pass, the stipulated indemnity shall apply exclusively to the percentage of shares divested. Evidently, it cannot apply to a percentage exceeding the portion sold, as such excess was not the subject of the competitive bidding process.

Finally, regarding the imposition of a penalty upon the bidder in the event that an IPO is conducted within 24 months,

...specifically and precisely established by the Court, applies solely to the triggering event so defined. This constitutes a penalty distinct from—and not to be conflated with—the earn-out established for other contingencies (as set forth in the proposal). In other words, the penalty—consisting of 90% of the proceeds derived from the 27.5% equity stake to be received upon an IPO within 24 months—applies exclusively and does not accumulate with the earn-out provision contained in the proposal.

I THEREFORE GRANT the motions for clarification to incorporate the foregoing clarifications into the challenged decision.

-        VIII - MOTIONS FOR CLARIFICATION FILED BY SC LOWY (INDEX 135.523):

The movant asserts the existence of the following defects in the decision identified as ID 134048:

1)       The decision was based on a single expert appraisal report as proof of the asset's valuation, notwithstanding the express waiver of any asset revaluation within the scope of the Judicial Reorganization Plan (PRJ); furthermore, what is arguably the most valuable asset was sold for merely one-third of its appraised value;

2)       The attachment (seizure) of assets referenced in the decision does not extend to all creditors falling under Restructuring Option I; even if said creditors were taken into account, the proposal would nonetheless have been rejected by 60% of the creditors;

3)       The BTG proposal fails to comply with the terms of the Judicial Reorganization Plan (PRJ);

4)       The movant requests the granting of suspensive effect.

DECISION:

There is not a single defect in the challenged decision that appears even remotely ascertainable in light of the arguments put forth by the petitioner. In reality, the grounds presented—by a petitioner who, moreover, failed to fulfill the duty to challenge the terms of the competitive process at the appropriate juncture (naturally, following the publication of the sale notice, or at the very least, after the proceedings had advanced)—possess an eminently subversive intent: to re-litigate the decision. Such a challenge must be pursued through an appropriate appeal, distinct from merely resubmitting to the very same court that rendered the decision the arguments that originally led to the adopted resolution. Indeed, it should be noted that the grounds underpinning the challenged decision are sufficient and do not crumble under the argument that the attachment fails to encompass all "Restructuring Option I" creditors.

There are no defects to be remedied; the decision stands as clear and effective in resolving the matters previously submitted to the court.

And that is not all. The situation warrants a refusal to take cognizance of the petition, resulting in the immediate finality of the rendered decision.

This approach aligns precisely with the guidance of the country's highest court—the Honorable Supreme Federal Court—which, in this regard, has consistently declared the immediate *res judicata* (finality) of decisions "challenged" by means of motions for clarification that are manifestly inadmissible. In this regard:

AR 2802 AgR-ED

Adjudicating Body: Full Court | Reporting Justice: Min. LUIZ FUX | Judgment: 11/13/2023 | Publication: 11/23/2023 | Headnote

HEADNOTE: MOTION FOR CLARIFICATION REGARDING AN INTERLOCUTORY APPEAL IN A RESCISSORY ACTION. ABSENCE OF OMISSION. LACK OF ANY DEFECT SUFFICIENT TO TRIGGER ANY OF THE GROUNDS FOR FILING A MOTION FOR CLARIFICATION. ATTEMPT TO REARGUE MATTERS ALREADY DECIDED. REQUEST FOR SUBSTANTIVE ALTERATION OF THE RULING (INFRINGING EFFECTS). IMPOSSIBILITY. MOTION FOR CLARIFICATION DENIED. CERTIFICATION OF FINALITY OF JUDGMENT AND IMMEDIATE REMAND OF THE CASE FILES, IRRESPECTIVE OF THE PUBLICATION OF THE

ACÓRDÃO (APPELLATE DECISION). 1. Motions for clarification are admissible when there exists, within the judgment or the appellate decision, any ambiguity, obscurity, contradiction, or omission, pursuant to Art. 619 of the Code of Criminal Procedure. In the absence of any such defects, a motion for clarification cannot be deemed admissible. 2. *In casu*, the attempt to reargue the entire substantive matter underlying the rescissory action is unfeasible within the narrow scope of a motion for clarification, particularly when there is no defect requiring rectification. 3. Motion for clarification denied, with a determination for the certification of the finality of judgment and the consequent immediate remand of the case files, irrespective of the publication of the appellate decision.

Decision:

The Court, unanimously, denied the motion for clarification and ordered the certification of the finality of judgment, with the consequent immediate remand of the case files,

...regardless of the publication of the appellate judgment, in accordance with the Reporting Justice's vote. Plenary Virtual Session held from November 3, 2023, to November 10, 2023.

In light of the foregoing, I DECLINE TO TAKE COGNIZANCE of the motions for clarification, which are manifestly unfounded, and I declare that the right to challenge the present decision has been forfeited with respect to this movant.

- X - MOTIONS FOR CLARIFICATION – PIMCO FUNDS (INDEX 135,566):

The movant asserts the existence of an internal contradiction regarding the assessment of the creditors' conduct, the principle of private autonomy, and the expert evidence produced in the case file; as well as relevant omissions concerning central issues raised by the parties—issues indispensable for assessing the legality of the creditors' resolution and the very soundness of the asset disposal procedure.

The movant further contends that the decision remains silent on crucial aspects of the case—notably: (i) the absence of effective competition in the asset disposal procedure;

(ii) the potential characterization of the acquisition price for the disposed asset as a "grossly inadequate price" (*preço vil*); and (iii) the paradox of invoking the crisis scenario to justify relaxing the standard of caution otherwise required for the disposal of an asset characterized as the Company's "crown jewel"—as highlighted by the Public Prosecutor's Office of the State of Rio de Janeiro.

Although this Court holds immense admiration for the style of legal argumentation set forth in the defense brief—distinguished by the elegance typically observed in submissions authored by the signatory—it finds no evidence of any of the alleged defects that would vitiate the challenged decision.

Indeed, even in this instance, a clear intent to infringe upon the ruling is evident—specifically, an attempt to force the Embargant's conclusions to prevail over the underlying legal theses already decided. However, the challenged decision did address these issues, albeit reaching a different conclusion; while this may warrant potential review by a higher court, it does not fall within the purview of the very court that rendered the decision.

This case also concerns a creditor who—much like the other two Embargants (whose motions for clarification were rejected above)—waited until after the alienation process had concluded to lodge an objection. This party failed to contribute proactively to the public procedure once it was initiated, choosing instead to merely dispute its outcome without offering any independent evidentiary support to rebut the findings.

Consequently, an identical resolution must be adopted in this instance.

Given that no defect can be attributed to the challenged decision—but rather an evident intent to infringe upon the ruling—the proper course of action is to decline to take cognizance of the

13

motion, as previously explained, thereby rendering the decision now being issued immediately final and unappealable.

In light of the foregoing, I DECLINE TO TAKE COGNIZANCE of these motions for clarification, deeming them manifestly unfounded, and I hereby declare the present decision to be final and unappealable with respect to this specific Embargant.

Rio de Janeiro, April 14, 2026.

Simone Gastesi Chevrand – Presiding Judge

Case files received from the Honorable Judge Simone Gastesi Chevrand

On      /        /